

**FILED**

FEB 2 2 2010
Feb 22. 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

NATHSON E. FIELDS,

                Plaintiff,

       -vs-

CITY OF CHICAGO, COUNTY OF COOK,
OFFICE OF COOK COUNTY STATE'S
ATTORNEY, FORMER AND CURRENT
STATE'S ATTORNEYS OF COOK COUNTY,
RICHARD M. DALEY, ANITA ALVAREZ,
RICHARD A. DEVINE, JACK O'MALLEY,
FORMER AND CURRENT ASSISTANT
STATE'S ATTORNEYS, BRIAN SEXTON,
DAVID KELLY, RANDY RUECKERT,
LAWRENCE WHARRIE, RENEE GOLDFARB,
JAMES FITZGERALD, FORMER AND
CURRENT CHICAGO POLICE
SUPERINTENDENTS, FRED RICE,
MATT L. RODRIGUEZ, TERRY G. HILLIARD,
PHILIP J. CLINE, LEROY MARTIN,

1:10-cv-01168
Judge Matthew F. Kennelly
Magistrate Judge Geraldine Soat Brown

) $360,000,000.00 Plus In Damages

) Title 42 U.S.C. Section 1983

) Monell Claims

) Malicious Prosecution

) Brady Claim

) Denial of Due Process

) Deprivation of Fair Trial

) Conspiracy Claim

) Rico Claim

) Failure To Intervene

) Denial of Equal Protection

) Eighth Amendment Claim

) Intentional Infliction of Emotional

) Distress

) Civil Conspiracy

) Respondeat Superior

) Indemnification

JODY WEIS, FORMER AND CURRENT ) Title 42 U.S.C. Section 1988

CHICAGO POLICE OFFICERS, )

DETECTIVE DAVID O'CALLAGHAN, )

DETECTIVE THOMAS RICHARDSON, )

DETECTIVE STEPHEN CASTO, DETECTIVE )

J. MINOGUE, DETECTIVE JOSEPH )

BOGDALEK, DETECTIVE JOSEPH MURPHY, )

DETECTIVE STEVEN HOOD, JAMES )

DELANEY, DETECTIVE ROBERT EVANS, )

DETECTIVE DAN BRANNIGAN, DETECTIVE )

JOHN ROBERTSON, DETECTIVE RICH )

KOBEL, DETECTIVE KOLOVITZ, )

FRATERNAL ORDER OF POLICE –CHICAGO )

LODGE 7, JOHN DOES, 1 THROUGH 100, )

INCLUSIVE. )

## CIVIL COMPLAINT AND JURY DEMAND

NOW COMES, plaintiff, namely Nathson E. Fields, appearing in his own proper person and files this civil action seeking redress for defendants knowingly, deliberately, intentionally and with purposeful reckless disregard and calculated indifference, deprived plaintiff of his constitutionally protected rights, thereby subjecting plaintiff to long-term wrongful imprisonment inclusive of facing the death penalty for crimes which he did not commit.

-2-

## PROLOGUE

**1.** In June of 1985, Nathson E. Fields (hereinafter, **"plaintiff"**) was arrested and indicted for the April 28, 1984, shooting deaths of Talman Hickman and Jerome Smith. Defendants knew directly and through imputed knowledge from an eyewitness to the shootings, namely Sandra Langston, that plaintiff **did not** fit the description of the gunmen. **See, Exhibit A - Attached Hereto** Notably, Sandra Langston told police that assailants were both "light complected" and in their "early 20's," however, plaintiff is unmistakably dark-skinned and was 31 years old when shootings occurred. Defendants acting in concerted effort and pursuant to policies, practices, customs and unconstitutional actions proceeded with the prosecution of the plaintiff, before former Judge Thomas J.. Maloney, (in which, such judge was eventually convicted in federal court of taking bribes in murder cases and sentenced to **15 years** in prison) culminating in a wrongful conviction, a sentence of death and nearly twenty years of imprisonment for crimes which he had no involvement with whatsoever. Legal representatives for the State of Illinois fought for years urging the Illinois Supreme Court, Circuit Court of Cook County and the Illinois Appellate Court to uphold plaintiff's conviction and sentence of death, to deny plaintiff any relief, although through direct and imputed knowledge, such legal representatives were aware that plaintiff did not fit the description of the assailants as told to police by Sandra Langston! In effect, defendants individually and collectively set the legal machinery into motion with clear intent to murder plaintiff, under guise of a lawful execution, by virtue of making a continuous conscious decision to urge and push the courts for plaintiff's execution, despite knowing that exonerating evidence existed to pellucidly demonstrate that plaintiff did not fit the description of either assailant.

2. Upon learning that the trial judge, namely Thomas J. Maloney, was the most corrupt judge in the history of the State of Illinois and the United States of America, the plaintiff was granted a new trial to the chagrin of defendants. Consequently, defendants persisted in endeavoring to murder plaintiff, through use of the death penalty, by appealing Judge Deborah M. Dooling's decision to afford plaintiff a new trial. Ultimately, plaintiff's new trial withstood legal appellate challenges by defendants. Interlocutory appeals pursued by defendants delayed plaintiff's retrial for a significant number of years. On retrial, defendants made a sweetheart deal with the individual originally tried as a co-defendant, namely Earl Hawkins, consisting of allowing a guilty plea to *"two counts of armed violence, receive a sentence of 43 years and dismissal of the double murder charge, all in exchange to testify against plaintiff."* The 43 year sentence is to run consecutive to Earl Hawkins' federal sentence of 60 years imprisonment. Plaintiff was **acquitted** on April 8, 2009 of the shootings deaths of Talman Hickman and Jerome Smith. The acquittal of plaintiff brought an "end" to the unconstitutional odyssey of **twenty-four years** of wrongful imprisonment and entanglement with the Criminal Justice System of Cook County. Subsequently, plaintiff filed a Petition For Certificate of Innocence which was granted in December of 2009.

## JURISDICTION AND VENUE

3. This civil action is instituted pursuant to 42 U.S.C. Section 1983, 18 U.S.C. Section 1962 (c) and 18 U.S.C. Section 1962(d) to rectify the deprivation under color of law of plaintiff's constitutional rights, as secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution as well as violations of the

-4-

federal RICO statute. This court is conferred jurisdiction pursuant to Title 28 U.S.C. Section 1331, Title 28 U.S.C. Section 1343(3), Title 18 U.S.C. Section 1964 and supplemental jurisdiction to entertain State law claims under Title 28 U.S.C. Section 1367. The venue of this court is proper under Title 28 U.S.C. Section 1291(b) and Title 18 U.S.C. Section 1965 since events forming the basis for the claims advanced herein occurred within this judicial district and a substantial number, if not all, of the defendants reside in this judicial district.

## PARTIES TO THE CASE

## PLAINTIFF:

**4.** Currently, plaintiff is a resident of the City of Chicago. Nathson E. Fields is a citizen of the United States and was living in Chicago at the time of his arrest.

## DEFENDANTS:

**5.** The City of Chicago is a municipal corporation operating and existing within The State of Illinois. The City of Chicago is responsible for the acts of its employees while acting within the scope of their employment.

**6.** The County of Cook is a governmental entity operating within the State of Illinois.

**7.** The Office of the Cook County State's Attorney is a governmental entity

charged with the responsibility of prosecuting criminal offenses occurring within the jurisdiction of Cook County.

**8.** Richard M. Daley, at all times relevant to his involvement in this action, was State's Attorney of Cook County and charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the total day-to-day operations of said office. Richard M. Daley acted under color of law and within the purview of his employment. Richard M. Daley is being sued in his individual capacity.

**9.** Anita Alvarez, at all times relevant to her involvement in this action, is the current State's Attorney of Cook County and charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said office. Anita Alvarez acted under color of law and within the sphere of her employment. Anita Alvarez is being sued in her individual capacity.

**10.** Richard A. Devine, at all times relevant to his involvement in this action, was the State's Attorney of Cook County and charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said office. Richard A. Devine acted under color of law and within the ambit of his employment. Richard A. Devine is being sued in his individual capacity.

**11.** Jack O'Malley, at all times relevant to his involvement in this action, was the State's Attorney of Cook County and charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said office. Jack O'Malley acted under color of law and within the breadth of his employment. Jack O'Malley is being sued in his individual capacity.

**12.** Brian Sexton, at all times relevant to his involvement in this action, is an Assistant State's Attorney employed by the Office of the Cook County State's Attorney that led the prosecution team during the retrial of plaintiff and in opposing plaintiff's Petition For Certificate of Innocence. Brian Sexton acted under color of law and within the range of his employment. Brian Sexton is being sued in his individual capacity.

**13.** David Kelly, at all times relevant to his involvement in this action, is an Assistant State's Attorney employed by the Office of the Cook County State's Attorney that co- anchored the prosecution team during the retrial of plaintiff and in opposing plaintiff's Petition For Certificate of Innocence. David Kelly acted under color of law and within the range of his employment. David Kelly is being sued in his individual capacity.

**14.** Randy Rueckert, at all times relevant to his involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney

that led the prosecution team during the original trial of plaintiff. Randy Rueckert acted under color of law and within the scope of his employment. Randy Rueckert is being sued in his individual capacity.

15. Lawrence Wharrie, at all times relevant to his involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney that co-anchored the prosecution team during the original trial of plaintiff. Lawrence Wharrie acted under color of law and within the compass of his employment. Lawrence Wharrie is being sued in his individual capacity.

16. Renee Goldfarb, at all times relevant to her involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney, supervising and writing appellate legal briefs and was involved with the legal appeals germane to plaintiff's case. Renee Goldfarb acted under color of law and within the area of her employment. Renee Goldfarb is being sued in her individual capacity.

17. James Fitzgerald, at all times relevant to his involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney, supervising and writing appellate legal briefs and was involved with the legal appeals pertinent to plaintiff's case. James Fitzgerald acted under color of law and within the scope of his employment. James Fitzgerald is being sued in his individual capacity.

-8-

**18.** Fred Rice, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Fred Rice acted under color of law and within the span of his employment. Fred Rice is being sued in his individual capacity.

**19.** Matt L. Rodriguez, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Matt L. Rodriguez acted under color of law and within the width of his employment. Matt L. Rodriguez is being sued in his individual capacity.

**20.** Terry G. Hilliard, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Terry G. Hilliard acted under color of law and within the bounds of his employment. Terry G. Hilliard is being sued in his individual capacity.

**21.** Leroy Martin, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Leroy Martin acted under color of law and within the bounds of his employment. Leroy Martin is being sued in his individual capacity.

**22.** Philip J. Cline, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Philip J. Cline acted under color of law and within the parameters of his employment. Philip J. Cline is being sued in his individual capacity.

**23.** Jody Weis, at all times relevant to his involvement in this action, is the Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department. Jody Weis acted under color of law and within the limits of his employment. Jody Weis is being sued in his individual capacity.

-10-

**24.** James Delaney, at all times relevant to his involvement in this civil action, was the Watch Commander for Area One Violent Crimes of the Chicago Police Department and was responsible for the formulation, implementation and administration of policies, practices, procedures, customs, training, supervision and control of all subordinates under his command. James Delaney acted under color of law and within the confines of his employment. James Delaney is being sued in his individual capacity.

**25.** David O'Callaghan, Star No. **14721**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and had a special assignment with the Office of the Cook County State's Attorney. David O'Callaghan acted under color of law and within the scope of his employment. David O'Callaghan is being sued in his individual capacity.

**26.** Detective Thomas Richardson, Star No. **3385**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Detective Richardson acted under color of law and within the purview of his employment. Detective Richardson is being sued in his individual capacity.

**27.** Detective Stephen Casto, Star No. **15489**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Detective Casto acted under

color of law and within the gamut of his employment. Detective Casto is being sued in his individual capacity.

28. J. Minogue, Star No. **13871**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. J. Minogue acted under color of law and within the spread of his employment. J. Minogue is being sued in his individual capacity.

29. Joseph Bogdalek, Star No. **14674**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Joseph Bogdalek acted under color of law and within the extent of his employment. Joseph Bogdalek is being sued in his individual capacity.

30. Joseph Murphy, Star No. **1389**, at all times relevant to his involvement in this action, was employed as a Sergeant with the Chicago Police Department and worked out of Area One Violent Crimes. Joseph Murphy acted under color of law and within the expanse of his employment. Joseph Murphy is being sued in his individual capacity.

31. Steven Hood, Star No. **11885**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked

-12-

out of Area One Violent Crimes. Steven Hood acted under color of law and within the framework of his employment. Steven Hood is being sued in his individual capacity.

32. Robert Evans, Star No. **12754**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Robert Evans acted under color of law and within the boundary of his employment. Robert Evans is being sued in his individual capacity.

33. Dan Brannigan, Star No. 4638, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Dan Brannigan acted under color of law and within the structure of his employment. Dan Brannigan is being sued in his individual capacity.

34. John Robertson, Star No. **13732**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. John Robertson acted under color of law and within the realm of his employment. John Robertson is being sued in his individual capacity.

35. Rich Kobel, Star No. **4383**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Rich Kobel acted under color of law and within the orbit of his employment. Rich Kobel is beng sued in his individual capacity.

**36.** Detective Kolovitz, Star No. **12408**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes. Detective Kolovitz acted under color of law and within the jurisdiction of his employment. Detective Kolovitz is being sued in his individual capacity.

**37.** Fraternal Order of Police - Chicago Lodge 7, at all times relevant to its involvement in this action, is the union representing members of the Chicago Police Department and negotiates the collective bargaining agreement with the City of Chicago, provides legal representation for its members irrespective of whether members have violated the law within the scope of their employment, **inter alia**.

**38.** Plaintiff is unaware of the true names and capacities of defendants sued herein as **JOHN DOES 1 THROUGH 100, INCLUSIVE,** and therefore sues these defendants by such fictitious names. Plaintiff will amend this civil complaint to allege their true names and capacities when ascertained. On information and belief, plaintiff alleges that at all times relevant to this action, each of the defendants sued herein as **JOHN DOES 1 THROUGH 100** was the agent, servant, representative or employee of the remaining defendants and was acting under color of law and within the spectrum of such agency and employment.

**39.** On information and belief, plaintiff allege that each fictitiously named defendant

is responsible in some manner for the occurrences alleged herein and that plaintiff's injuries were proximately caused by their acts.

## STATEMENT OF FACTS:

### A.

### THE SHOOTINGS OF TALMAN HICKMAN AND JEROME SMITH

40. On April 28, 1984, a Saturday morning, at approximately **10:15am.**, Talman Hickman and Jerome "Fuddy" Smith were shot multiple times and died at the scene of the shootings, which was, a public housing complex located at 706 East 39th Street in Chicago. The assailants were wearing **"ski masks"** at the time of the shootings.

41. Jerome "Fuddy" Smith was the leader of a street gang known as the Black Gangster Goon Squad and Talman Hickman was a member of said street gang.

### B.

### FIRST OFFICER AT CRIME SCENE

42. Officer Anthony Michel of the Chicago Police Department was the first law enforcement officer to arrive at the scene of the shootings. Officer Michel testified that none of the people standing around the scene of the shootings were eager to help or give their names. Officer Michel further testified that if Randy Langston, James Langston or Eric Langston would have spoken to him about information of the shootings, he would have included it in his report, but their names are not in his report.

-15-

## C.

## DESCRIPTION OF PERPETRATORS PROVIDED TO POLICE BY

## SANDRA LANGSTON WHO WITNESSED THE SHOOTINGS

**43.** On the same day of the shootings, Sandra Langston told detective J. Bogdalek, and detective J. Minogue "that she was talking to Jerome "Fuddy" Smith from her second floor bedroom window, as Jerome "Fuddy" Smith walked away, she observed two black males, in their early 20's, light-complected, both wearing jackets and one of the men wearing a red ski mask. **See, Exhibit A - Attached Hereto**

**44.** Sandra Langston **was not** called as a witness for the prosecution at the original trial or the retrial of plaintiff, as her description of the assailants would have severely undermined the prosecution case, exposed and derailed their diabolical plan to secure a wrongful conviction against plaintiff.

## D.

## THE ARREST OF PLAINTIFF

**45.** On June 14, 1985, nearly fourteen months after the shooting deaths of Talman Hickman and Jerome "Fuddy" Smith, personnel of the Chicago Police Department effectuated the arrest of the plaintiff. Detective David O'Callaghan swore out criminal complaints alleging that plaintiff shot and killed Talman Hickman and Jerome "Fuddy" Smith. On June 28, 1985, plaintiff was indicted by a Cook County Grand Jury for the shooting deaths of Talman Hickman and Jerome "Fuddy" Smith. No physical evidence

-16-

linked plaintiff to these crimes. There were no written or signed confession. Plaintiff entered a plea of "not guilty" and consistently maintained his innocence throughout this horrendous ordeal.

## E.

## DETECTIVE O'CALLAGHAN'S SUGGESTIVE LINEUP

46. On or about June 18, 1985, detective David O'Callaghan conducted a police lineup with plaintiff included. This particular lineup was viewed by Randy Langston and Gerald Morris. Plaintiff is depicted in lineup photograph as subject number one. **See, Exhibit B - Attached Hereto**.


47. Plaintiff is the only person in the lineup wearing a short sleeves shirt. The lineup show detective O'Callaghan's hand "raising up the sleeve of the shirt worn by plaintiff revealing a tattoo indicating affiliation with the El Rukins," which is, a rival organization of the Black Gangster Goon Squad street gang which decedents belonged.


48. Plaintiff is the only person in the lineup which detective O'Callaghan targeted to raise up his shirt sleeve! This strongly suggested to the viewers of the lineup to select the enemy from the lineup, therefore, resulting in an unduly suggestive lineup.


49. Randy Langston and Gerald Morris both testified they were friends of decedents. Randy Langston and Gerald Morris testified they were both members of the same street gang which decedents belonged.

## F.

## DETECTIVE O'CALLAGHAN'S KNOWING, DELIBERATE AND INTENTIONAL FAILURE TO FOLLOW POLICE PROCEDURE ABOUT SHOWING PHOTO ARRAY

**50.** Detective O'Callaghan testified that he showed a stack of 20 to 25 photos, but he do not know where the photos are now. Detective O'Callaghan testified that he did not inventory the photographs. Detective O'Callaghan testified that it is normal procedure to inventory photos that are used in a photographic show-up.

**51.** Detective O'Callaghan testified that plaintiff, Earl Hawkins, Henry Andrews and George Carter's pictures were included in the photo display.

## G.

## DEFENDANTS' CONCERTED EFFORT TO CAUSE THE WRONGFUL IMPRISONMENT AND EXECUTION OF PLAINTIFF BY ALL MEANS NECESSARY

**52.** Sergeant Joseph Murphy swore out a criminal complaint which charged plaintiff with committing the stabbing and shooting deaths of Joseph White and Dee Eggers Vaughn on or about March 28, 1985. **See, Exhibit C - Attached Hereto** Plaintiff was indicted for the above-mentioned crimes.

**53.** Anthony Sumner testified that he made a deal with prosecuting authorities to testify against plaintiff. Anthony Sumner testified the Office of the Cook County State's

attorney paid for his hotel lodgings, brought him food and paid for his wife and kids to travel across State lines to spend time with him.

54. Anthony Sumner testified he was indicted for the viciously brutal murders of Joseph White and Dee Eggers Vaughn. occurring on March 28, 1985. Anthony Sumner testified that plaintiff and Earl Hawkins were with him when the murders took place.

55. Anthony Sumner testified he knew children were in the apartment during the murders and he personally knew Dee Egger Vaughn's children.

56. Anthony Sumner testified that his deal with the Office of the Cook County State's Attorney would allow him to plea guilty to conspiracy to purchase narcotics, testify truthfully to all activities concerning the El Rukins and dismissal of the double murder charge. Anthony Sumner testified that he tell lies to deceive people including the police.

57. In addition too, Anthony Sumner testifying at plaintiff's trial and the aggravation phase of the death penalty hearing, that plaintiff was involved in the double murder of Joseph White and Dee Eggers Vaughn, the prosecution introduced and vigorously argued the matter during closing argument of the death penalty aggravation/mitigation phase.

58. Earl Hawkins indicted along with plaintiff for the shootings deaths of Talman Hickman and Jerome 'Fuddy" Smith started cooperating with State and federal

-19-

authorities, while he was under a sentence of death.

59. Earl Hawkins told federal prosecutors that it was himself and Anthony Sumner that murdered Joseph White and Dee Eggers Vaughn. Earl Hawkins confessed to federal prosecutors that plaintiff had nothing to do with those murders!

60. In **United States vs. Bingham,** No. 89 CR 909, Earl Hawkins testified that it was himself and Anthony Sumner that killed Joseph White and Dee Eggers Vaughn.

61. In **United States vs. Eddie Franklin & J. L. Houston**, No. 89 CR 908-14, again Earl Hawkins testified that himself and Anthony Sumner committed the murders of Joseph White and Dee Eggers Vaughn.

62. In **United States vs. William Doyle**, No. 89 CR 908, Earl Hawkins testified that it was only himself and Anthony Sumner that murdered Joseph White and Dee Eggers Vaughn.

63. On information and belief, the defendants were apprised by federal authorities that Earl Hawkins had confessed that the real killers of Joseph White and Dee Eggers Vaughn were himself and Anthony Sumner. Therefore, defendants knew or should have known that the testimony given by Anthony Sumner against plaintiff was a material lie, poisoned the waters of the trial and the capital sentencing hearing, inasmuch as depriving plaintiff of a fair trial and capital sentencing hearing.

**64.** Defendants knowingly, deliberately and intentionally with planned indifference and purposeful reckless disregard of plaintiff's constitutional rights, **suppressed** from the Illinois Supreme Court, while plaintiff's case was pending on direct appeal, the information which Earl Hawkins had provided federal authorities which substantially affected the fairness of proceedings in plaintiff case. Instead, defendants forged straight ahead with their scheme to murder plaintiff under the guise of a lawful execution. Moreover defendants did not alert the post-conviction court as to Earl Hawkins' revelation indicative of their unlawful intent to murder plaintiff under the guise of a lawful execution.

**65.** The ABA Standards On Function of Prosecutors as well as the Illinois Code of Professional Conduct mandates that prosecutors are bound to do justice and not merely convict. **See, Rule 308 of Illinois Rules of Professional Conduct** and **Rule** 3.8(b) of **the Illinois Rules of Professional Conduct,** (prosecutor shall not institute or cause to be instituted criminal charges where he knows charges are not supported by probable cause).

## H.
## DEFENDANTS' DELIBERATE AND INTENTIONAL SUPPRESSION OF STREET FILES

**66.** At the time of plaintiff's case, **"Street Files"** were the unofficial reports in the form of written notes composed by detectives during the course of criminal investigations inclusive of the substance of interviews with people, which were not systematically made a part of the official case reports/files, neither in many cases preserved from destruction nor made known and available to defendants facing criminal charges.

-21-

**67.** Undeniably, Randy Rueckert avowed that "Street Files" did <u>exist</u> in plaintiff case. Moreover, several detectives testified that they interviews hundreds of people during the course of the Talman Hickman and Jerome "Fuddy" Smith homicide investigation.

**68.** On January 13, 1986, during a pretrial hearing before the Honorable Themis N. Karnezis, sitting in the absence of Judge Thomas J. Maloney, the court was informed that a **subpoena** had been issued for "Street Files" in the case by attorney Jack Smeeton. **See, Exhibit D - Attached Hereto**

**69.** On January 28, 1986, during a pretrial hearing before Judge Thomas J. Maloney, attorney Jack Smeeton apprised the court that Randy Rueckert had agreed to turn over the "Street Files" on a prior occasion, since he was in possession of them. **See, Exhibit E - Attached Hereto.**

**70.** Attorney Smeeton specifically related to the court that he requested of the Chicago Police Department the **Investigative Street Files** for the Talman Hickman and Jerome "Fuddy" Smith homicides under the **RD Number** listed and what he received was another copy of police reports which are not Street Files! **See, Exhibit F - Attached Hereto**

**71.** On February 27, 1986, during a pretrial hearing before Judge Thomas J. Maloney, attorney Jack Smeeton advised the court that within the past week Randy Rueckert mailed to him "general progress reports and Street Files that only consisted of eight (8) pages of notes **all** dated April 28, 1984." **See, Exhibit G - Attached Hereto**

-22-

72. On April 28, 1984, Joseph Bogdalek and J. Minogue were assigned to conduct follow-up investigation into the Talman Hickman and Jerome "Fuddy" Smith homicides. **See, Exhibit H - Attached Hereto**

73. On April 28, 1984, Robert Evans and Steven Hood were assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith homicides and talked to approximately **one-hundred** people. **See, Exhibit I - Attached Hereto**

74. On May 14, 1985, David O'Callaghan was assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith homicides and interviewed **"hundreds"** of people along with other detectives involved in the investigation. **See, Exhibit I - Attached Hereto**

75. In May of 1985, Joseph Murphy was assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith homicides. **See, Exhibit K - Attached Hereto**

76. Thomas Richardson and Stephen Casto were assigned and/or involved with the investigation of the Talman Hickman and Jerome "Fuddy" Smith homicides.

77. On information and belief, Dan Brannigan, John Robertson, Rich Kobel and Detective Kolovitz were assigned to and/or involved with the investigation of the Talman Hickman and Jerome "Fuddy" Smith homicides as well as the arrests of suspects.

-23-

**78.** On information and belief, there are other unnamed individuals that were involved with the investigation of the Talman Hickman and Jerome "Fuddy" Smith homicides, but plaintiff do not know their names at this juncture. However, their names will be ascertained through utilization of the discovery vehicle.

**79.** At the inception of this case, the City of Chicago through its policymakers engaged in the unconstitutional practice of maintaining a dual filing system, where unofficial reports known as "Street Files" containing exculpatory material and discoverable memoranda that were purposefully concealed from plaintiff and his lawyer and the contents were not produced pursuant to discovery requests or subpoenas involving the investigation of the Talman Hickman and Jerome "Fuddy" Smith homicides.

**80.** Law enforcement officers that were involved and/or assigned to the investigation of the Talman Hickman and Jerome 'Fuddy" Smith homicides interviewed hundred of people, during the course of a **year long** intense investigation, were required by policy of the Chicago Police Department to **"record information gathered during investigations of violent crimes and to preserve and submit unofficial reports known as "Street Files" to their Unit Supervisor for inclusion into an investigative file case folder."**

**81.** Notwithstanding a <u>year long</u> investigation by detectives, plaintiff only received **"8 pages of Street Files All Dated April 28, 1984!"** On information and belief, Randy Rueckert and Lawrence Wharrie individually and/or in concerted effort with all police

-24-

officers involved in the investigation of the Talman Hickman and Jerome "Fuddy" Smith homicides, knowingly, deliberately and intentionally suppressed and destroyed all Street Files compiled after **April 28, 1984"** to prevent the flow of exculpatory information that would lead to utilization of beneficial evidence that would significantly enhance the probability for acquittal of plaintiff at his trial.

## I.

## THE ORIGINAL TRIAL

### Prosecution's Opening Statement:

82. On June 17, 1986, plaintiff's bench trial commenced and Judge Thomas J. Maloney presided. During opening statement of the trial, the prosecution theorized that plaintiff and Earl Hawkins shot and killed Talman Hickman and Jerome "Fuddy" Smith.

83. The prosecution further contend in their opening statement that plaintiff and Earl Hawkins removed their masks so they could be seen by everyone. The prosecution related that on May 18, 1985 that Gerald Morris and Randy Langston view a police lineup and identified Earl Hawkins as one of the shooters. On June 18, 1985, Randy Langston and Gerald Morris viewed a police lineup and identified plaintiff as the second shooter.

### Plaintiff Waives Opening Statement:

84. Attorney Jack Smeeton did not make an opening statement on behalf of plaintiff.

-25-

## Randy Langston's Testimony:

**85.** Admitted to having a robbery conviction and is in custody. Testified he saw two Black men with guns. Testified Earl Hawkins fired first shot striking Talman Hickman and he fell to the ground. Testified other gunman shot Jerome "Fuddy" Smith and he fell to the ground.

**86.** Admitted he was a member of the same gang which decedents belonged and that he sold drugs for Jerome "Fuddy" Smith who was the leader of the Black Gangster Goon Squad. Admitted he smokes dope most of the time.

**87.** Testified gunman had on ski masks, shooters stepped out into the sunlight from the shadows, pulled up masks and looked around for 15 or 20 second and he recognized Earl Hawkins, but not the other gunman.

**88.** Testified when victims were shot the gunmen had ski masks pulled down over their faces.

**89.** Testified after shootings happened, he did not go and talk to any police officers that were on the scene. Testified he did not call the police and report what he supposedly observed took place with his two friends.

**90.** Testified he spoke with police on night of shootings, related to police what he observed and police did not contact him until a year later.

**91.** Testified a year later police showed him some photographs and he picked out pictures of plaintiff and Earl Hawkins. Testified he identified Earl Hawkins and plaintiff from police lineups.

**92.** Testified he know Richard Buckles and did not see him at scene of shootings.

**93.** Testified he did not give police a description of the second shooter, when police spoke with him on night of shooting at his residence. Randy Langston admitted he only saw one shooter with the red ski mask on and that only one person was doing the shooting.

**94.** Testified that Gerald Morris is his brother-in-law and is a member of the Black Gangster Goon Squad. Further testified that Gerald Morris was in house with his sister, namely Sandra Langston, at time of shootings.

**95.** Randy Langston recanted his trial testimony during the aggravation and mitigation phase of plaintiff's capital sentencing hearing. Testified that detective David O'Callaghan told him to pick plaintiff out of lineup!

## **Testimony of Richard Buckles:**

**96.** Testified that he was placed on probation for unlawful use of weapon and convicted of burglary.

**97.** Testified he knew Talman Hickman and Jerome "Fuddy" Smith. Testified he use to be a member of the Black Gangster Goon Squad and the leader was Jerome "Fuddy" Smith.

**98.** Testified Randy Langston and Gerald Morris are members of the Black Gangster Goon Squad.

**99.** Testified he saw two men wearing ski masks with guns came from the back of the breezeway.

**100.** Testified light-skinned gunman had on red jacket. Testified after shootings, gunmen stepped out of breezeway, pulled up ski masks, looked around for thirty second to one minute and he saw faces of shooters and recognized Earl Hawkins. Testified he knew Earl Hawkins from the Ida B. Wells housing projects.

**101.** Testified that gunmen in red jacket shot Talman Hickman and Jerome "Fuddy" Smith.

**102.** Richard Buckles did not recognize nobody in the courtroom as the other gunmen, but thinks plaintiff is him, however, he is not sure.

**103.** Testified he never called police. Testified he never went outside to see or talk to the crowds of police officers that had come to the scene of the shootings. Testified

the first time he spoke to police was about two years after the shootings and two months prior to this trial.

## David O'Callaghan's Testimony:

**104.** Testified in May of 1985, he was detailed to do a follow-up investigation into the Talman Hickman and Jerome "Fuddy" Smith homicides and such assignment was to the Gang Crimes Unit of the Office of the Cook County State's Attorney with a focus upon the El Rukins.

**105.** Testified on May 16, 1985, he interviewed Randy Langston in the Office of the Cook County State's Attorney with detectives Casto and Richardson being present.

**106.** Testified after his conversation with Randy Langston arrest warrants were obtained for plaintiff, Earl Hawkins, George Carter and Henry Andrews.

**107.** Testified he transported plaintiff to Area One Violent Crimes and plaintiff was arrested pursuant to an arrest warrant obtained in May of 1985.

**108.** Testified on June 14, 1985 plaintiff was placed in police lineup and designated as subject number one. Testified People's Exhibit Number 10 is the lineup photo.

**109.** Testified that Randy Langston, Gerald Morris and Eric Langston viewed police lineup and identified plaintiff as one of the shooters. Testified Richard Buckles never viewed a police lineup with plaintiff in it.

-29-

**110.** Eric Langston never testified at plaintiff trial. An objection was sustained as to the identification and viewing of a lineup by Eric Langston.

**111.** Testified May 16, 1985 was first time he talked with Randy Langston and Gerald Morris and he showed them 20 to 25 photographs.

**112.** Testified Gerald Morris identified Earl Hawkins and tentatively identified plaintiff from photographs shown.

**113.** Testified he do not know where photographs are that he shown to Gerald Morris and Randy Langston. Testified it is **normal procedure to inventory photos that are used in a photographic show-up, but he did not inventory photos!**

**114.** Testified he made no notes or list of photographs used. Testified pictures of plaintiff, Earl Hawkins, George Carter and Henry Andrews were included in photographs shown to Randy Langston and Gerald Morris.

**115.** Testified photographs consisted of only individuals identified as El Rukins and stack of photographs were shown to other people in other investigations.

**116.** Testified he talked to **hundreds of people** during course of investigation.

**117.** Testified Randy Langston did give a physical description during the May 16, 1985 interview, but he did not write it down!

**118.** Testified Gerald Morris is not listed in the original police reports concerning the shootings of Talman Hickman and Jerome "Fuddy" Smith.

**119.** Testified Torrence White or Richard Buckles did not view police lineup of plaintiff.

## Testimony of Gerald Morris:

**120.** Testified he is a member of the Black Gangster Goon Squad and the leader was Jerome "Fuddy" Smith.

**121.** Testified Randy Langston is his brother-in-law and Sandra Langston is his girlfriend and they all lived in an apartment together.

**122.** Testified on April 28, 1984 he was looking out the window of his apartment and talking with Jerome "Fuddy" Smith with Sandra Langston. Testified he observed two men walking behind Jerome "Fuddy" Smith after their conversation ended.

**123.** Testified men had nothing in their hands when they first walked pass and he could see their faces, but had guns in hand when they ran pass second time.

**124.** Gerald Morris testified he had a deal with the prosecution for his testimony. Testified that his housing was being paid for by the Office of the Cook County State's Attorney. Testified that detective David O'Callaghan told him where to go to get hired for a job.

**125.** Testified he told police on night of shooting, while at his apartment, that he could identify the guys involved in the shooting if he saw them. Testified police said they would be in contact with him. Testified police contacted him a year later!

**126.** Testified he did not call police. Testified that he did not go up to police and tell what he knew. Testified he did not wait for police. Testified he was not present when police arrived at scene of shootings.

**127.** Testified police were still present when he came back to building, but they were not looking for witnesses!

**128.** Testified a year later police showed him 20 to 25 photos at the Office of the Cook County State's Attorney and he identified three photos. Testified that plaintiff and Earl Hawkins were people he identified.

**129.** Testified on May 16, 1985, police contacted him and he looked at a police lineup and he identified Earl Hawkins. Testified a couple of days later he viewed a second police lineup and identified someone, but does not see that person in court today.

**130.** Testified he viewed a third police lineup and identified plaintiff.

**131.** Testified on May 16, 1985 detective David O'Callaghan showed him some photos and told him that he had information as to the four people that done the killings.

**132.** Testified he identified George Carter from photos as person sitting in the car, but admitted car war too far away for him to see the person!

**133.** Judge Thomas J. Maloney puzzled by the testimony of Gerald Morris asked a question and the following colloquy took place:

> **"The Court: Well, if that is the case, how did you pick out a picture**
>
> **of the man who was in the car if you hadn't seen**
>
> **anybody in the car?**
>
> **The Witness: I don't know.**
>
> **The Court: You don't remember**
>
> **The Witness: Uh-uh."**    **(Tr.335)**

**134.** Testified nobody told him to pick out George Carter, he just did it on his own.

**135.** Testified he did not see any ski masks.

**136.** Testified detective David O'Callaghan was present when he viewed lineup containing plaintiff.

**137.** Testified on May 16, 1985, when he looked at photographs of plaintiff and Earl Hawkins, he was not able to make a positive identification.

**138.** Testified that shooters did not stop and turn around.

**139.** Testified shooters pulled off masks as they were running pass.

**140.** Testified he did not see Richard Buckles at scene of shooting.

## J.

## THE CORRUPTED TRIAL JUDGE

**141.** Plaintiff's case ended up being in Judge Thomas J. Maloney's courtroom on account of the prosecution filing a Motion for Joinder. Thus, plaintiff and Earl Hawkins were tried together for the shooting deaths of Talman Hickman and Jerome "Fuddy" Smith.

**142.** Plaintiff was represented by Jack Smeeton and Earl Hawkins was represented by William Swano. Plaintiff and Earl Hawkins elected to have a bench trial.

**143.** Unbeknownst to plaintiff, William Swano and Judge Maloney had worked together for years fixing murder cases. William Swano would pay Judge Maloney thousands of dollars for acquittal of clients or substantially reduced sentences on lesser charges.

**144.** Neither plaintiff nor his lawyer was aware of the **$10,000.00** bribe which William Swano, at the behest of his Earl Hawkins, had passed along to Judge Maloney through attorney Robert McGee, an intermediary of Judge Thomas J. Maloney.

-34-

**145.** Once the trial of plaintiff and Earl Hawkins got underway, Judge Thomas J. Maloney became suspicious of federal law enforcement authorities watching the case. Judge Thomas J. Maloney returned to bribe money to William Swano and on the same day found plaintiff and Earl Hawkins guilty of the charged offenses.

**146.** On June 26, 1991, Judge Thomas J. Maloney was indicted by a Federal grand jury (**United States vs. Thomas J. Maloney, et al, No 91 CR 477**) for racketeering, conspiracy to commit racketeering, extortion and obstruction of justice. William Swano and Robert McGee were co-defendants of Judge Thomas J. Maloney in the indictment.

**147.** William Swano turned government witness against his co-defendants. On April 16, 1993, Judge Thomas J. Maloney was found guilty at his jury trial and sentenced to **15 years** imprisonment.

**148.** On November 19, 1995, the United States Court of Appeals For the Seventh Circuit affirmed Judge Thomas J. Maloney's convictions and sentence. **See, United States vs. Maloney, 71 F.3d 645 (7th Cir. 1995).**

**149.** The Illinois Appellate Court made the following factual finding concerning plaintiff with respect to the bribing of Judge Thomas J. Maloney:

> **"The evidence with respect to Fields' involvement in the bribe is tenuous at best. The testimony provided by Swanno (sic) at Maloney's federal trial reveal that Swanno (sic) had no actual**

knowledge that Fields had any involvement in the bribery scheme . . . In addition, Swanno's (sic) testimony does not indicate that Fields was a participant in, or aware of, any conversations between Swanno (sic) and Hawkins about the bribe. Also, both Fields and his attorney, Jack Smeeton, filed affidavits in the the postconviction case attesting that they had no knowledge of the bribe until after the trial." See, <u>People vs. Hawkins & Fields</u>, 326 Ill. App.3d 992, 260 Ill. Dec. 780, 762 N.E.2d 46 (2001)."

## K.

## GUILTY FINDING AND SENTENCED TO DEATH

**150.** On June 27, 1986, plaintiff was found guilty of the murders of Talman Hickman and Jerome "Fuddy" Smith. On August 22, 1986, the jury returned a verdict finding no mitigating factors sufficient to preclude imposition of the death penalty.

## L.

## PATTERN OF RACKETEERING ACTIVITY

**151.** The defendants have willfully and wantonly engaged in a well-documented pattern of racketeering, through individual and collective unlawful behavior, ranging from illegality in lineup identification, deliberate suppression of exculpatory evidence, extraction of false confessions via unlawful means, subornation of perjury, torture, perjury, **inter alia.**, all coordinated to produce the wrongful arrest, wrongful conviction and wrongful imprisonment of plaintiff and a hosts of other people, inclusive of, but not limited

too, the following people that have been exonerated after spending years imprisoned for crimes which they did not commit:

" **People vs. Darby Tillis & Perry Cobb**, **People vs. Dennis Williams**, **People vs. Kenneth Adams**, **People vs. Willie Rainge**, **People vs. Omar Aguirre**, **People vs. Santo Duarte**, **People vs. Aaron Patterson**, **People vs. Leroy Orange**, **People vs. Madison Hobley**, **People vs. Stanley Howard**, **People vs. Paul Terry**, **People vs. Ronald Kitchen**, **People vs. Marvin Reeves**, **People vs. Dan Young** **People vs. Angel Rodriguez**, **People vs. Harold Hill**, **People vs. James Newsome**, **People vs. Michael Tillman**, **People vs. Xavier Arcos**, **People vs. David Bates**, **People vs. Paula Gray**, **People vs. Juan Johnson**, **People vs. Walter Godinez**, **People vs. Thaddeus Jimenez**, **People vs. Alton Logan**, **People vs. Anthony Porter**, **People vs. Miguel Castillo**, **People vs. Ronald Jones**, **People vs. Dean Gage**, **People vs. Robert Williams**, **People vs. Larry Ollins**, **People vs. John Willis, Jr.**, **People vs. Marcelia Bradford**, **People vs. Omar Saunders**, **People vs. Marlon Pendleton**, **People vs. Corethian Dion Bell**, **People vs. Derrick Flewellen**, **People vs. Maurice Deloney**, **People vs. Fred Ewing**, **People vs. Gerald Earl**, **People vs. Verneal Jimerson**, **People vs. Eric Gibson**, **People vs. Elton Houston**, **People vs. Robert Brown**, **People vs. Gabriel Solis**, **People vs. Xavier Carton**, **People vs. David Fauntleroy**, **People vs. LaFonso Rollins**, **People vs. Darreal Stokes**, **People vs. Alfonzia Neal**, and **People vs. Steven Manning**."

## M.
## PLAINTIFF BEATEN AND GASSED AT PONTIAC PRISON

152. In March of 1987, plaintiff was physically attacked and chemical agents used upon him at the Pontiac Correctional Center. Resultantly, had defendants **not** acted knowingly, deliberately, intentionally and unlawfully with reckless disregard of plaintiff's constitutional prerogatives, as individuals and/or in collective fashion, to engineer the wrongful imprisonment of plaintiff, then plaintiff would not have been subjected to being in prison and vulnerable to abuse.

## N.
## DIRECT APPEAL TO ILLINOIS SUPREME COURT

153. On February 16, 1990, plaintiff's convictions and death sentence was upheld by the Illinois Supreme Court. Defendants did not come forth and advised the court that Anthony Sumners had perjured himself at plaintiff's trial and capital sentencing hearing by testifying that plaintiff was involved in the brutal murders of Dee Egger Vaughn and Joseph White.

## O.
## PLAINTIFF'S MOTHER PASSES AWAY AND HE IS DENIED OPPORTUNITY TO ATTEND SERVICES TO PAY HIS RESPECT

154. In January of 1996, plaintiff's mother suffered a massive heart attack and died. Plaintiff requested to attend his mother's services, but his request was denied.

155. Plaintiff's mother suffered for years from the psychological and emotional strain of knowing her son was convicted and under a sentence of death for crimes

which he constantly professed to her and other family members that he did not commit or had no involvement with.

**156.** Plaintiff would have been able to attend his mother's funeral services and burial. had defendants not acted knowingly, deliberately, intentionally, unlawfully and with reckless indifference and malicious intent to wrongfully imprison plaintiff for crimes which he did not commit.

## P.
## GRANTING OF NEW TRIAL ON POST-CONVICTION PETITION

**157.** On September 18, 1996, Judge Deborah M. Dooling of the Circuit Court of Cook County granted plaintiff's Petition For Post-Conviction Relief on grounds that the trial judge, namely Thomas J. Maloney, acted as a corrupt jurist during plaintiff's trial, thereby depriving plaintiff of due process of law.

## Q.
## PLAINTIFF BEATEN BY GUARDS AT MENARD PRISON

**158.** In 1997, plaintiff was physically beaten and subjected to chemical agent attack by prison guards and officials at the Menard Correctional Center. At the time of this physical assault plaintiff had been granted a new trial. Providing defendants would not have acted knowingly, deliberately, intentionally, unlawfully and with devil-may-care indifference coupled with vindictive intent, to wrongfully imprison plaintiff for crimes which he did not commit, then the physical assault upon plaintiff would have never occured.

## R.

## PLAINTIFF SEVERELY BEATEN BY GUARDS AT COOK COUNTY JAIL AND HOSPITALIZED

159. In July of 2000, plaintiff was badly beaten by officers at the Cook County Jail while awaiting commencement of his retrial. Plaintiff was transported to the Emergency Room of the Cook County Hospital and admitted for several days. Providing defendants would not have acted knowingly, deliberately, intentionally, unlawfully and with ill-advised indifference combined with cruel intent to wrongfully imprison plaintiff, then plaintiff would not have been subjected to a vicious assault upon his person.

## S.

## PLAINTIFF TRAUMATIZED BY EXECUTIONS

160. While on death row, plaintiff endured the mental and emotional trauma associated with executions, in which, 11 men were put to death during plaintiff's wrongful imprisonment.

## T.

## PLAINTIFF RELEASED ON BOND

161. On May 9, 2003, plaintiff posted bond and was released after spending **17 years and nearly 11 months of continuous wrongful imprisonment.** Plaintiff would remain out on bond for nearly **6 years** before the retrial would get underway.

-40-

## U.

## STATE'S INTERLOCUTORY APPEALS

**162.** Brian Sexton and David Kelly pursued two interlocutory appeals <u>after</u> plaintiff had been granted a new trial, thereby resulting in the retrial being postponed for years and plaintiff's wrongful incarceration and embroilment with the criminal justice system prolonged.

## V.

## DEFENDANTS' DEAL WITH ADMITTED SERIAL KILLER

**163.** In 1986, Randy Rueckert and Lawrence Wharrie prosecuted Earl Hawkins for the murders of Talman Hickman and Jerome "Fuddy" Smith. The prosecution's theory was that Earl Hawkins was one of the shooters. The prosecution's witnesses identified Earl Hawkins as a shooter and some knew him from the neighborhood.

**164.** Prior to the retrial of plaintiff, the prosecution cut a deal with Earl Hawkins inasmuch as dropping a double murder charge and allowing him to plea guilty to armed violence and receive a 43 years prison sentence in exchange for him testifying against plaintiff.

**165.** On information and belief, Earl Hawkins testified that he committed **5 to 10 murders as a youth and 15 murders between 1981 to 1985.** Earl Hawkins testified that he will say anything to get off death row, will say anything to avoid being on death row and will say anything to get out of trouble!

**-41-**

**166.** Earl Hawkins, now a professional State's witness, testified that he was in the car at the time of the Talman Hickman and Jerome "Fuddy" Smith shootings, but <u>24 years earlier</u> prosecutors vehemently maintained that Earl Hawkins was an actual killer.

**167.** At the retrial of plaintiff, other witnesses for the prosecution were adamant about Earl Hawkins being one of the shooters and he was <u>known</u> from the neighborhood where the shootings occurred by Randy Langston, another witness for the prosecution.

**168.** Earl Hawkins admitted that he had lied to a federal grand jury about plaintiff being involved in the brutal murders of Dee Eggers Vaughn and Joseph White. Earl Hawkins is a **"light-complected"** person, which is, consistent with skin-color Sandra Langston told police on day of the shootings.

## <u>W</u>.
## BOUND BY STIPULATION OF WHAT SANDRA LANGSTON
## <u>WOULD SAY IF CALLED TO TESTIFY</u>

**169.** During the retrial of plaintiff, Brian Sexton and David Kelly entered into the following stipulation:

> **Marked Defense Exhibit Number 19, that if Sandra Langston were called to testify, she would testify that just prior to Jerome Smith and Tallman Hickman being shot, she was talking to the victim Smith from her second floor bedroom window and Paul Haley's release from jail.**

-42-

After the conversation ended, Smith said he was going to the front of the building at 706 39th Street and walked away. A time later she heard three shots coming from the front

She would further testify that her mother then came running up to her bedroom and told her that the two victims had been shot.

She would add further that she observed two male blacks following the victim Smith when he walked away from her bedroom window. She would describe the two men as follows. number One, male black in early twenties, light complexion and wearing a red ski mask hat and light jacket. Number Two, male black in early twenties, light complexion and wearing a blue jacket.

MR. KELLEY: So Stipulated, your honor

THE COURT: That stipulation is allowed and moved into evidence."

170. The stipulation is an acknowledgement of what the witness would testify to, if called, and a concomitant decision not to challenge the testimony. The stipulation entered into by the prosecutors at retrial is insulated from attack or contradiction.

# X.

## PLAINTIFF ACQUITTED OF CHARGES AT RETRIAL

171. On April 8, 2009, Judge Vincent M. Gaughan of the Circuit Court of Cook County found plaintiff **"not guilty"** of the shootings death of Talman Hickman and Jerome Smith. In finding plaintiff not guilty, Judge Gaughan made factual findings rejecting the testimony of the State's purported occurrence witnesses as improbable, highly suspect and unworthy of belief, inter alia. **See, Exhibit L - Attached Hereto**


172. Judge Gaughan acknowledged that a veteran appellate prosecutor went before the Illinois Supreme Court and said, "if the court sustain Judge Dooling's Order granting plaintiff a new trial, then the State would be unable to try this case again."


173. Judge Gaughan noted that Randy Langston, a witness for the prosecution, had six to seven felony convictions; had previously recanted his trial testimony and then unrecanted his testimony; that he knew Earl Hawkins and steadfastly maintained Earl Hawkins was a shooter; that on the day of the shooting he told police that there was only one shooter; and over a year after the shootings, he tells police there were two shooters. Judge Gaughan found testimony of Randy Langston worth little, if anything!


174. Judge Gaughan found that Gerald Morris was a member of the same gang as decedents; denied drugs were ever sold from the 706 building which was contradictory to all the other testimony; that he recanted his testimony; that he did not waver in his affidavit about not seeing the faces; that his claim of being interviewed by detective

Bogdalek was impeached by the detective's own testimony: that he did not come forward for approximately one year after the shootings; and his credibility is in serious questionable validity.

175. Judge Gaughan found that Richard Buckles could not identify plaintiff as the shooter; that it was about two years after the shootings that he first spoke to the police; and that two men were in the breezeway and they were in the shadows.

176. Judge Gaughan found that officer Anthony Michel testified that there was shadows in the breezeway.

177. Judge Gaughan found that Earl Hawkins claim to not be one of the shooters, but all the other State witnesses said they knew him and he was one of the shooters; that Earl Hawkins testimony was impeached or inconsistent with the testimony of Randy Langston, Richard Buckles and Gerald Morris; found that Earl Hawkins admitted to committing ten murders between 1982 and 1984; that Earl Hawkins admitted without hesitation to committing five to ten murders before 1982 and that Earl Hawkins have no regard for human life and therefore certainly none for an oath. Judge Gaughan found the testimony of Earl Hawkins to be incredible!

## Y.
## JUDICIAL RECOGNITION OF PLAINTIFF'S INNOCENCE

178. On August 25, 2009, plaintiff filed a **pro se** Petition For Certificate of Innocence with the Circuit Court of Cook County. On December 10, 2009, the

-45-

Honorable Paul P. Biebel, Jr. Presiding Judge of Criminal Division, of the Circuit Court of Cook County, issued an Order granting plaintiff a Certificate of Innocence, which amounted to a **judicial declaration** acknowledging that plaintiff was and is innocent of the shooting deaths of Talman Hickman and Jerome Smith. Brian Sexton, David Kelly, Anita Alvarez and the Office of the Cook County State's Attorney still persist in endeavoring to use the court system to ignore evidence of innocence, ignore not guilty finding, ignore appellate decisions rendered in the case and hold plaintiff responsible for the shooting deaths of Talman Hickman and Jerome "Fuddy" Smith, since these defendants are appealing the Honorable Judge Paul P. Biebel's Order granting plaintiff a certificate of innocence.

## The City of Chicago:

179. The City of Chicago acting by and through its Police Department, Superintendents of Police, Detective Division and its named employees of this suit, had interconnected policies, practices and customs that were utilized so frequently which led to the wrongful arrest of plaintiff and many others; led to unconstitutional suppression of exculpatory evidence; led to deprivation of right to a fair trial; led to deprivation of right to due process of law; led to malicious prosecution; led to conspiracy; led to deprivation of equal protection of the law; led to intentional infliction of emotional distress; led to cruel and unusual punishment; led to wrongful conviction and wrongful imprisonment, in which, police officers within the Detective Division and Gangs Crimes Unit conspire amongst themselves to cause plaintiff and many others to be charged with crimes which they did not commit, in which, the actions amounted to

official policy and the City of Chicago was knowledgeable of what was taking place, but made a conscious decision to not take effective remedial action, thereby permitting unconstitutional conduct to blossom.

## The County of Cook:

180. The County of Cook acting by and through its Office of the Cook County State's Attorney, State's Attorney of Cook County, Assistant State's Attorneys, Investigators, and its named employees of this suit, had interrelated policies, practices and customs that were utilized so frequently which led to the malicious prosecution of plaintiff and many others; led to unconstitutional suppression of exculpatory evidence; led to deprivation of right to a fair trial; led to deprivation of right to due process of law; led to wrongful conviction and wrongful imprisonment; led to conspiracy; led to the infliction of cruel and unusual punishment; led to deprivation of equal protection of the law; led to intentional infliction of emotional distress and led to civil conspiracy, in which, Assistant State's Attorneys within the Felony Trial Division and Gangs Crimes Prosecution Unit conspire amongst themselves to cause plaintiff and many others to be charged and prosecuted for crimes which they did not commit, in which, said actions amounted to official policy and the County of Cook was knowledgeable of what was occurring, but made a conscious decision to not take effective remedial action, thereby allowing unconstitutional conduct to flourish.

## Fraternal Order of Police - Chicago Lodge #7

**181.** The Fraternal Order of Police - Chicago Lodge #7, on information and belief, tolerated, permitted, acquiesced and ratified the unconstitutional practices of its members, inclusive of any of the named defendants which belong to such organization, by ignoring civilian complaints filed and sustained, civil lawsuits filed and won either by verdict or settlement, convictions reversed on appeal due to improper police conduct, withholding and preventing the flow of exculpatory evidence/information and conducting unduly suggestive lineups, through failure of purging unsavory and unscrupulous police officers from it ranks and affording legal representations to wrongdoers, thereby encouraging and promoting acts of unconstitutional nature against plaintiff and others.

## PLAINTIFF'S SUFFERING:

**182.** This long-running nightmarish ordeal has caused excruciating psychological pain, intense emotional distress, physical sickness, humiliation, embarrassment, depression, deprivation of the enjoyment of life, sleep disruption, inability to concentrate, complete distrust and fear of the police, deprivation of employment opportunities and the accumulation of social security work credits, anxiety, shame, compelled to endure many years of wrongful imprisonment including being subjected to degradating prison practices, such as, being strip searched at the whim of prison guards/officials, the need for professional mental and emotional counseling, deprived of paying last respect to his mother, deprived of chance to fulfill his duty and responsibility of being a father to his daughter, etc.

-48-

# LEGAL CLAIMS:

## Count One - 42 U.S.C. Section 1983
## Monell Against City of Chicago

**183.** Plaintiff restates and realleges paragraphs **1 through 178** as if fully set forth herein.

**184.** The City of Chicago, at all times relevant to its involvement in this case, through its Police Department and employees listed as named defendants in this civil action, performed acts pursuant to municipal policies, practices, customs and usages, which ratified, tolerated, acquiesced in, maintained, authorized and permitted the following unconstitutional conduct:

**(a).** The knowing, deliberate and intentional wholesale suppression of exculpatory evidence or information of favorable/impeaching value from plaintiff to use in his defense of serious criminal charges lodged against him, as was done in this case.

**(b).** Allowing police officers involved in homicide investigations to not conduct proper investigation of the case, not memorialize interviews of people providing information about what they observed of the shootings of decedents and to not relinquish notes compiled during the interviews, as was done in this case.

**(c ).** Empowering homicide detectives to conduct unduly suggestive police lineup, as was done in this case.

**(d).** Permitting police officers to engage in action and conduct that violates the constitutional rights of plaintiff to have a fair trial, accorded due process of law and equal protection of the law, as was done in this case.

**(e).** Tolerating police officers to engage in conduct which set the legal machinery into motion to subject plaintiff to wrongful conviction, wrongful imprisonment and cruel and unusual punishment, as was done in this case.

**(f).** Failing to adequately train, supervise, monitor, control and discipline its police officers for engaging in a continuous pattern of shocking misconduct which have led to scores of innocent people, including plaintiff, being arrested, tried, convicted and imprisoned for crimes which they did not commit, but was ultimately exonerated, as was done in this case.

**(g).** Condoning and emboldening named defendants to engage in misconduct, in the belief, they can violate the rights of plaintiff with impunity, safe in the knowledge, that such flagrant conduct will not adversely affect opportunities for job promotion and benefits, as was done in this case.

**(h).** Approval of the Code of Silence whereby police officers refuse to report instances of misconduct and cover-up for their fellow officers or provide untrue and fallacious information to protect themselves or fellow police officers from internal discipline, criminal and civil liability, as was done in this case.

**(I).** Coercing witnesses to identify specific people shown in photographs and using suggestive tactics coupled with providing information to a person or individuals when viewing police lineups, as was done in this case.

**(j).** Refusing to exact discipline upon police officers with demonstrable histories of dishonesty; numerous civilian complaints filed against them; participating in false arrests; acting in concerted effort with other police officers insofar as causing the wrongful prosecution and imprisonment of individuals, such as plaintiff, as was done in this case.

185. Plaintiff's injuries were caused by the policies, practices, customs and usages championed by the City of Chicago and maintained and implemented with deliberate indifference and reckless disregard of plaintiff's constitutional rights.

**WHEREFORE,** Nathson E. Fields, seeks from the City of Chicago:

**(a).** Compensatory damages in the amount of **Forty-Five Million ($45,000,000.00) dollars**.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Two - 42 U.S.C. Section 1983
## <u>Monell Against County of Cook</u>

**186.** Plaintiff restates and realleges paragraphs **1 through 185** as if fully set forth herein.

**187.** The County of Cook, at all times relevant to its involvement in this case, through its Office of the Cook County State's Attorney and employees listed as named defendants in this civil action, performed acts pursuant to municipal policies, practices, customs and usages, which ratified, tolerated, acquiesced in, maintained, authorized and permitted the following unconstitutional conduct:

**(a).** The knowing, deliberate and intentional wholesale suppression of exculpatory evidence or information of favorable/impeaching value from plaintiff and his lawyers to use in his defense of serious criminal charges brought against him, as was done in this case.

**(b).** Allowing Assistant State's Attorneys, working Felony Review, to approve criminal charges based upon fabricated evidenced by police officers that targeted plaintiff for imprisonment and execution, while deliberately and intentionally ignoring descriptive evidence provided to police on same day of shootings, as to identities of the shooters, which such descriptions did not fit plaintiff, as was done in this case.

**(c).** Enabling Assistant State's Attorneys working Felony Trial Division and Gangs Crimes Prosecution Unit to engage in unconstitutional conduct of malicious prosecution

of plaintiff, deliberately undermining plaintiff right to a fair trial, right to due process of law, right to equal protection of the law and the right to prohibition against cruel and unusual punishment, as was done in this case.

**(d).** Permitting Assistant State's Attorneys to purchase or make deals for the perjured testimony of witnesses which was a significant part of the malicious prosecution campaign of plaintiff resulting in his wrongful extended imprisonment

**(e).** Tolerating Assistant State's Attorneys' concealment of information from the courts, as to learning about the testimony given by Anthony Sumners, at plaintiff's trial and capital sentencing hearing, inasmuch as involving plaintiff in the brutal double murders of Dee Eggers Vaughn and Joseph White was wholly false, therefore, depriving plaintiff of a fair trial and capital sentencing hearing, indicative of showing the intent to murder plaintiff under the guise of a lawful execution.

**(f).** Failing to adequately train, supervise, monitor, control and discipline its Assistant State's Attorneys for engaging in a continuous pattern of shocking misconduct which have led to scores of innocent people including plaintiff, being arrested, tried, convicted and imprisoned for crimes which they did not commit, but was ultimately exonerated, as was done in this case.

**(g).** Condoning and emboldening named defendants to engage in misconduct, in the belief, they can violate the rights of plaintiff with impunity, safe in the knowledge, that

-53-

such flagrant conduct will not adversely affect opportunities for job promotion and benefits, as was done in this case.

**(h).** Approval of the Code of Silence whereby employees of the Office of the Cook County State's Attorney refuse to report instances of misconduct and cover-up for their fellow co-worker prosecutors or provide untrue and erroneous information to protect themselves or fellow co-worker prosecutors from internal discipline, Attorney Registration & Disciplinary Commission discipline, as well as criminal and civil liability, as being done in this case.

**(I).** Refusing to impose discipline upon Assistant State's Attorneys with demonstrable histories of engaging in unethical and unprofessional misconduct; prosecuting cases that resulted in the wrongful imprisonment of lots of innocent people including plaintiff; being identified in reviewing courts opinions as violating the rights of the accused; approval of charges where probable cause is lacking for the arrest; acting in concerted effort with other prosecutors insofar as causing the wrongful prosecution and imprisonment of individuals, such as plaintiff, as was done in this case.

**(j).** Allowing Assistant State's Attorneys to engage in subornation of perjury in their quest to secure a conviction, as was done in this case.

**(k).** Countenancing Assistant State's Attorneys handling appeals to urge affirmance of

-54-

conviction and sentence, even if, innocent person has been convicted, as was done in this case.

188. Plaintiff's injuries were caused by the policies, practices, customs and usages espoused by the County of Cook and maintained and implemented with deliberate indifference and reckless disregard of plaintiff's constitutional rights.

**WHEREFORE,** Nathson E. Fields, seeks from the County of Cook:

**(a).** Compensatory damages in the amount of **Forty-Five Million ($45,000,000.00) dollars**.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Three - Title 42 U.S.C. Section 1983
### Brady Claim

189. Plaintiff restates and realleges paragraphs **1 through 188** as if fully set forth herein.

190. Defendants David O'Callaghan, Thomas Richardson, Stephen Casto, J. Minogue, Joseph Bogdalek, Steven Hood, Joseph Murphy, Robert Evans, James Delaney,

Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, Randy Rueckert, Lawrence Wharrie and John Does 1 through 100, inclusive., are sued in their individual capacity, for knowingly deliberately, intentionally with purposeful disregard and calculated indifference violated the constitutional rights of plaintiff, as secured under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

(191). The above named defendants acting individually and jointly suppressed, withheld and prevented to flow of exculpatory evidence/information gathering during the course of investigation inasmuch as conducting interviews and taking notes contemporaneously, but consciously refusing to hand over such handwritten notes, known as **Street Files**, to plaintiff and his lawyer during the normal course of discovery requests or pursuant to subpoena whereas plaintiff could make use of the evidence/information during his original trial and retrial.

(a). **WHEREFORE,** Nathson E. Fields, seeks from the defendants: Compensatory damages in the amount of **Thirty Million ($30,000,000.00) dollars** and **Thirty-Five Million ($35,000,000.00) dollars** in punitive damages.

(b). Attorneys' fees.

(c). Any other relief deemed equitable and appropriate by this court.

-56-

## Count Four - Title 42 U.S. C. Section 1983
## Denial of Due Process Of Law/Fair Trial

**192.** Plaintiff restates and realleges paragraphs **1 through 191** as fully set forth herein.

**193.** Defendants David O'Callaghan, Thomas Richardson, Stephen Casto, J. Minogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, John Robertson, Dan Brannigan, Rich Kobel, Detective Kolovitz, Randy Rueckert, Lawrence Wharrie, Brian Sexton, David Kelly, all named former and current State's Attorneys of Cook County and John Does 1 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately, intentionally with purposeful disregard and calculated indifference violated plaintiff constitutional rights, as secured under the Fourteenth Amendment of the United States Constitution.

**194.** Defendants acting individually and in concerted effort, deliberately withheld exculpatory evidence/information from plaintiff in his original trial and retrial, in which, the intentional failure to tender the "Street Files" deprived plaintiff of his constitutional right to a fair trial under the due process clause of the Fourteenth Amendment.

**(a).WHEREFORE,** Nathson E. Fields, seeks from the defendants:

Compensatory damages in the amount of **Fifteen Million ($15, 000,000.00) dollars** and **Twenty Million ($20,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Five - Title 42 U.S.C. Section 1983
### Denial of Due Process of Law/Fair Trial

**195.** Plaintiff restates and realleges paragraphs **1 through 194** as if fully set forth herein.

**196.** Defendant David O'Callaghan is being sued in his individual capacity for knowingly, deliberately, intentionally with purposeful disregard and calculated indifference violated plaintiff's constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution.

**197.** David O' Callaghan conducted a police lineup with plaintiff being the only person standing in said lineup with a short sleeve shirt and with David O'Callaghan holding up the sleeve to reveal a tattoo, clearly indicating and unduly suggesting to the viewers of the police lineup, who all happen to be in a street gang which considered the organization which plaintiff belonged too, at that time, a rival, thereby constitutionally impermissibly influencing the viewers of the lineup to select plaintiff, which is, what happened.

**198.** Prior to conducting the police lineup, David O'Callaghan had shown

-58-

photographs of plaintiff to the viewers and had stated, "he had information as to the four people that did the killing"

**199.** The unduly suggestive lineup identification of plaintiff was introduced at plaintiff's original trial and retrial. The egregious conduct of David O'Callaghan in conducting an unconstitutional lineup sought to bolster the chance of securing a conviction and death sentence for plaintiff through unlawful means.

**(a).WHEREFORE,** Nathson E. Fields, seeks from the defendant:

Compensatory damages in the amount of **Ten Million ($10,000,000.00) dollars** and **Ten Million ($10,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Six - Malicious Prosecution

**200.** Plaintiff restates and realleges paragraphs **1 through 199** as if fully set forth herein.

**201.** Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J. Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 1 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately, intentionally with purposeful disregard and calculated indifference subjected plaintiff to malicious prosecution as a result of their individual and collective actions, inaction, and omissions as enunciated below:

**(a).** Plaintiff was freed on April 8, 2009 upon being found "not guilty" in a bench trial before Judge Vincent M. Gaughan, of the Circuit Court of Cook County, of the shooting deaths of Talman Hickman and Jerome "Fuddy" Smith.

**(b).** Defendants acting individually, collectively and in conspiracy initiated and/or continued a malicious prosecution against the plaintiff designed to bring about the murder of plaintiff under the guise of a lawful conviction and execution.

**(c).** Defendants knew or should have known that plaintiff did not fit the description of

the shooters given by Sandra Langston to police on the day which the shootings took place.

**(d).** Defendants knew of should have known that David O'Callaghan conducted a police lineup that was photographed depicting him raising up the shirt sleeve of plaintiff, thereby improperly influencing the viewers of the lineup, therefore, resulting in the lineup being unduly suggestive.

**(e).** Defendants knew or should have known that David O'Callaghan did not follow proper police procedure in the inventory of photographs shown to people, therefore, raising a red flag that something wrong is going on.

**(f).** Defendants knew or should have known that suppression of exculpatory evidence deprives plaintiff of due process of law, deprives plaintiff of a fair trial, deprives plaintiff of the ability to mount a defense to the charge, increases the chance of innocent people, such as plaintiff, being wrongfully convicted and obstructs the due administration of justice.

**(g).** Defendants knew or should have known that federal authorities alerted the Office of the Cook County State's Attorney that Earl Hawkins had truthfully confessed that he and Anthony Sumners brutally murdered Dee Eggers Vaughn and Joseph White and plaintiff was not involved whatsoever, thereby making it incumbent upon defendants to alert the Illinois Supreme Court and urge that plaintiff receive a new trial, since Anthony

-61-

Sumners had perjured himself in the original trial and capital sentencing hearing by claiming plaintiff was involved in the killings. Instead, defendants persisted in seeking plaintiff's execution without disclosure to the courts.

**(h).** Defendants knew or should have known that Brian Sexton and David Kelly admitted, through stipulation, at the retrial of plaintiff, that Sandra Langston did tell police on day of shooting that the gunmen were two black males, early twenties and both were light-skinned individuals. This description and stipulation is at direct odds with lineup identifications made of plaintiff by other State witnesses, a year after the shootings happened.

**(I).** Defendants knew or should have known that Randy Langston, Richard Buckles, and Gerald Morris did not come forth and tell police what they purportedly knew and observed on day shootings occurred.

**(j).** Defendants knew or should have known that a "railroading of plaintiff" was taking place, based upon the improbable testimony of State witnesses proclaiming that police officers spoke with them on day of shooting, witnesses told police what they knew and saw, but police said they would get back with them which would a over a year later!

**(k).** Defendants named as former and current State's Attorney and Police Superintendents, knew about the misconduct of other named defendants, but turned a blind eye, approved, facilitated and condoned the misconduct.

-62-

**(L).** Plaintiff spent many years of his wrongful imprisonment on death row constantly worrying about being executed and/or spending the rest of his life imprisoned for cfrimes which he did not commit and being wrongfully deprived of spending time with his siblings, daughter and friends. Plaintiff's mother passed during his wrongful imprisonment and not being allowed to attend her funeral services affected plaintiff profoundly.

**(i). WHEREFORE,** Nathson E. Fields, seeks from the defendants: Compensatory damages in the amount of **Twenty Million ($20,000,000.00) dollars** and **Twenty Million ($20,000,000.00) dollars** in punitive damages.

**(ii).** Attorneys' fees.

**(iii).** Any other relief deemed equitable and appropriate by this court.

## Count Seven - Title 18 U.S.C. 1962(c) and (d)
## RICO CLAIM

**202.** All defendants, excluding the City of Chicago, County of Cook, Office of the Cook County State's Attorney and the Fraternal Order of Police - Chicago Lodge #7, are being sued in their individual capacity for individually, jointly and in conspiracy thereof., to knowingly, deliberately and intentionally engage in a pattern of racketeering activity, as evidenced by the number of cases of wrongful conviction **(See, Par. 151, supra)** in which constitutional rights has been flagrantly violated; defendants corruptly endeavored to influence, obstruct or impede the due administration of justice in violation of **18 U.S.C. Section 1503.** Additionally, defendants have persuaded each other to withhold records, documents or other documentation from an official proceeding and otherwise influenced, obstructed and impeded an official investigation in violation of **Title 18 U.S. C. Section 1512.**

**203.** The Chicago Police Department and Office of the Cook County State's Attorney are enterprises engaged in and whose activities affect interstate commerce. The named **RICO** defendants were previously or currently employed by the above-mentioned enterprises.

**204.** Over a period of time, spanning years, defendants have performed acts, participate in, and carried out activity which have the same or similar purpose, results, method of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events, in which, this racketeering activity consist of deliberate suppression of

exculpatory evidence; coercing false confessions; subornation of perjury; infliction of physical torture; impermissible unduly suggestive police lineups and perjury, which has culminated in innocent people, such as plaintiff, being arrested, tried, convicted and subjected to long-term imprisonment for crimes which they had no involvement with. **See, Par. 151, supra.**

**(a).WHEREFORE,** Nathson E. Fields, seeks from each defendant:
Compensatory damages in the amount of **One Million ($1,000,000.00) dollars** and **One Million ($1,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Eight - Title 42 U.S.C. Section 1983
## Conspiracy

**205.** Plaintiff restates and realleges paragraphs **1 through 201,** as if fully set forth

herein.


**206.** Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack

O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee

Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J.

Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue,

Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan

Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 1 through

100, inclusive, are being sued in their individual capacity for knowingly, deliberately,

intentionally with purposeful disregard and calculated indifference to deprived plaintiff

of his constitutional rights, as a result of their conspiratorial scheme to arrest, place

plaintiff on trial, convict and imprisonment plaintiff for crimes which he did not commit.


**207.** Defendants through their meeting of the minds reached an agreement amongst

themselves to falsely charge plaintiff with the murders of Talman Hickman and Jerome

"Fuddy" Smith; to deprive plaintiff of exculpatory evidence by wholesale suppression of

it; make deals with unsavory individuals that will perjure themselves and implicate

plaintiff in crimes to enhance the probability of obtaining a conviction; to use a

suggestive lineup for purpose of influencing the viewers to select plaintiff thereby

claiming a basis for an arrest warrant; and to murder plaintiff under the guise of a

lawful execution.

-66-

**(a). WHEREFORE,** Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Five Million ($5,000,000.00) dollars** and **Five Million ($5,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Nine - Title 42 U.S.C. Section 1983
## Failure To Intervene

208. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 207** as if fully set forth herein.

209. Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J. Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 34 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately,

-67-

intentionally with purposeful disregard and calculated indifference fail to intercede and stop the violation of plaintiff's constitutional rights.

**(a). WHEREFORE,** Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Five Million ($5, 000,000.00) dollars** and **Seven Million ($7,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Ten
## Intentional Infliction of Emotional Distress

210. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 209,** as if fully set forth herein.

211. Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J. Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue,

Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 1 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately, intentionally with purposeful disregard and calculated indifference caused plaintiff to suffered the intentional infliction of emotional distress, as a direct result of their individual and concerted acts of outrageous misconduct formed and developed to bring about the murder of plaintiff under the guise of a lawful execution, as described in this civil suit.

**212.** Plaintiff suffers from insomnia, nightmares, post-traumatic stress disorder stemming from the years of being wrongfully imprisoned and housed for a significant number of years on death row incessantly worrying about being executed or imprisoned for life. On April 8, 2009, plaintiff was found **not guilty** in his retrial. On December 10, 2009, Judge Paul P. Biebel, Jr., granted plaintiff a **Certificate of Innocence,** but defendants Anita Alvarez, Brian Sexton, David Kelly and the Office of the Cook County State's Attorney decided to file an appeal, thereby continuing to inflict more emotional harm upon plaintiff by casting doubt upon his innocence.

**(a). WHEREFORE,** Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Six Million ($6,000,000.00) dollars** and **Seven Million ($7,000,000.00) dollars** in punitive damages.

-69-

**(b).** Attorneys' fees.


**(c).** Any other relief deemed equitable and appropriate by this court.


### Count Eleven - Title 42 U.S.C. Section 1983
### Cruel And Unusual Punishment

**213.** Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 212,** as if fully set forth herein.


**214.** Defendants Randy Rueckert, Lawrence Wharrie, Renee Goldfarb, James Fitzgerald, Richard M. Daley and Richard A. Devine is being sued in their capacity for knowingly, deliberately and intentionally with purposeful disregard and calculated indifference violated plaintiff's constitutional rights, by subjecting him to cruel and unusual punishment, inasmuch as acting in concerted effort, to conceal from the Illinois Courts the fact that perjured testimony was introduced in plaintiff's trial and capital sentencing hearing, through the testimony of Anthony Sumners, in which, Anthony Sumners testified that plaintiff committed the brutal murders of Dee Eggers Vaughn and Joseph White. Defendants knew from the Office of the United States Attorney that plaintiff was not involved in the murders of Dee Eggers Vaughn and Joseph White. Plaintiff languished on death row while defendants continue in their efforts to murder him under the guise of a lawful execution.

**(a). WHEREFORE,** Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Five Million ($5,000,000.00) dollars** and **Five Million ($5,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Twelve - Title 42 U.S.C. Section 1983
## Equal Protection Of The Law

215. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 214,** as if fully set forth herein.

216. Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J. Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 1 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately,

intentionally with purposeful disregard and calculated indifference violated plaintiff's constitutional rights, by individually, collectively and in conspiracy deprive minority criminal suspects of equal protection of the laws by suppression of exculpatory evidence/information.

**(a).** **WHEREFORE**, Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Five Million ($5, 000,000.00) dollars** and **Five Million ($5,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Thirteen - Civil Conspiracy

217. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 216**, as if fully set forth herein.

**218.** Defendants Richard M. Daley, Richard A. Devine, Anita Alvarez, Jack O'Malley, Brian Sexton, David Kelly, Lawrence Wharrie, Randy Rueckert, Renee Goldfarb, James Fitzgerald, Fred Rice, Matt L. Rodriguez, Terry G. Hilliard, Philip J. Cline, Jody Weis, David O'Callaghan, Thomas Richardson, Stephen Casto, J. Miniogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Dan Brannigan, John Robertson, Rich Kobel, Detective Kolovitz, and John Does 1 through 100, inclusive, are being sued in their individual capacity for knowingly, deliberately, intentionally with purposeful disregard and reckless indifference, committed the act of civil conspiracy, by conspiring through concerted action to accomplish an unlawful purpose by unlawful means, inasmuch as maliciously prosecuting plaintiff and subjecting him to intentional infliction of emotional distress as described in this civil action.

**(a). WHEREFORE**, Nathson E. Fields, seeks from defendants: Compensatory damages in the amount of **Four Million ($4,000,000.00) dollars** and **Six Million ($6,000,000.00) dollars** in punitive damages.

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Fourteen
## Fraternal Order of Police - Chicago Lodge #7

219. Plaintiff restates as realleges paragraphs **1 through 201** and **205 through 218**, as if fully set forth herein

220. Defendant acting in concerted effort with police officers that are members of its organization, approve, condone, Provides advice to its members, advocate job promotion, protect its members by filing grievance opposing disciplinary measures, tolerates unconstitutional acts of its members, afford legal representation to its members, even if, such members are in violation of the law, thereby encouraging members to trample over the constitutional rights of plaintiff and the residents of Chicago.

221. On information and belief, plaintiff believes that some of the named defendants **are or were** members of the Fraternal Order of Police - Chicago Lodge #7, and as such, violated plaintiff's constitutional rights, as described in this civil action, pursuant to the policies, practices, customs and usages of the Fraternal Order of Police - Chicago Lodge #7.

**(a). WHEREFORE**, Nathson E. Fields, seeks from defendants:
Compensatory damages in the amount of **Five Million ($5, 000,000.00) dollars** and **Five Million ($5,000,000.00) dollars** in punitive damages.

-74-

**(b).** Attorneys' fees.

**(c).** Any other relief deemed equitable and appropriate by this court.

## Count Fourteen - Respondeat Superior

222. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 221**, as if fully set forth herein.

223. In committing the acts alleged in the preceding paragraphs, all of the individual defendants were agents, employees, representatives, servants of either the Chicago Police Department, an entity of the City of Chicago, or the Office of The Cook County State's Attorney, an entity of the County of Cook. Defendants were acting within the scope of their employment and under color of law.

224. Defendants City of Chicago and County of Cook are liable as principal for all torts committed by its agents.

## Count Fifteen - Indemnification

225. Plaintiff restates and realleges paragraphs **1 through 201** and **205 through 224**, as if fully set forth herein.

**226.** Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of the employment activities.

**227.** The individual defendants are or were employees of the City of Chicago through its Police Department and the County of Cook through its Office of the Cook County State's Attorney.

**WHEREFORE,** plaintiff, Nathson E. Fields, prays for judgment as follows:

**(a).** For compensatory damages requested in each count of this suit.

**(b).** For punitive damages requested in specific counts of this suit.

**(c ).** For treble damages requested in the RICO count of this suit.

**(d).** For costs of suit incurred in this action.

**(e).** For reasonable attorney's fees and expenses of litigation.

**(f).** For all other relief deemed equitable and appropriate by this court.

**DATED: February 22, 2010**

Respectfully Submitted

/s/ *Nathson Fields*

Nathson E. Fields, **Pro Se**
6815 South Jeffery Avenue, 3rd Floor
Chicago, Illinois 60649
**708.699.3285**

-76-

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Nathson E. Fields, hereby demand trial by jury pursuant to **Rule 38(b)** of the Federal Rules of Civil Procedure.

DATED: February 22, 2010

Respectfully Submitted

/s/ *Nathson E. Fields*

Nathson E. Fields, **Pro Se**
6815 South Jeffery Avenue, 3rd, Floor
Chicago, Illinois 60649
**708.699.3285**

-77-

# EXHIBIT - A

# EXHIBIT - A

DETECTIVE DIVISION                      Page #2                    30 Apr 84
Area One Violent Crimes                                           RD#F-151 922

INTERVIEWS CONTINUED:          LANGSTON, Randy    M/B/15
                               705 E 39th #106      Ph#373-4592

                               LANGSTON, James    M/B/14
                               706 E 39th #106    Ph#373-4592

TO BE INTERVIEWED:             WRIGHT, Lavette   F/B/22
                               706 E 39th St #105    Ph#548-4011


                   WHITE, Minnie was interviewed and related the following in
essence, but not verbatim.  She was inside in her apartment
when she heard several shots,which at first she beleived to be firecrackers.  Upon looking out
her front window she observed the two victims lying on the ground.  She than called the polic
She further added that just prior to the shooting her future daughter-in-law,Lavette Wright
walked into the apartment.  She could add nothing further.

                       LANGSTON, Sandra was interviewed and related the following
                               in essence, but not verbatim.  Just prior to the victims
  being shot,she was talking to the victim Jerome Smith ("Fuddy") from her 2nd floor bedroom
window about Paul (Haley) getting out of jail.  After the conversation ended the victim Smith
said he was going to the front of the building at 706 E 39th St. and walked away.  A short
time later she heard three shots comming from the front of the building.  Her mother than
  came running up to her bedroom and told her that the two victims had been shot.  She furthe
added that she had observed two m/b's following the victim Smith when he walked away from her
  bedroom window.  She described the two m/b's as follows: #1M/B in early 20's, light complex
ion and wearing a red ski mask hat and white jacket.  #2 M/B in early 20's, light complexion
  and wearing a blue jacket.  PERMANENT RETENTION FILE

                   LANGSTON, Randy was interviewed and related the following i
                               essence, but not verbatim.  He was playing baseball accros
the street from 705 E 39th with his brother James and friend Carlos when he observed a man
with a red ski mask shooting at the victims who were standing and continued to shoot as they
ly on the ground.  He than rolled the ski mask up from over his face and ran away.

                   LANGSTON, James was interviewed and related the following i
                               essence, but not verbatim.  He was playing baseball accross
the street from 706 E 39th St with brother Randy and friend Carlos when he heard a man's
voice say " What are you going to do now"?  Upon turning around to see what was going on
he observed a man in a red mask shooting at the victims who were standing in front of 706 E
39th.  After the two victim's fell to tne ground the man with the red ski mask continued to
shoot at the victim's as they ly on the ground.  He heard approximately six shots.  The man
wearing the ski mask than rolled it up from over his face and ran through the breezeway at
706 E 39th St.


    This investigation continues.........

Det J Bogdalek  #14674   612
Det J Minogue   #13871   612                        (621)