IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

2010 APR -1 PM 2: 25
U.S. DISTRICT COURT

| | |
|---|---|
| NATHSON E. FIELDS, | ) |
| Plaintiff, | ) Case No. 10 C 1168 ) |
| -vs.- | ) Judge Kennelly ) U.S. District Judge |
| | ) |
| CITY OF CHICAGO, ET AL., | ) Geraldine Soat Brown ) Magistrate Judge |
| Defendants, | ) ) |

FILED
4-1-2010
APR 01 2010 YM
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NATHSON E. FIELDS' LOCAL RULE 56.1(A)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS COUNTY OF COOK, OFFICE OF COOK COUNTY STATE'S ATTORNEY, ANITA ALVAREZ, LAWRENCE WHARRIE, BRIAN SEXTON, RANDY RUECKERT AND DAVID KELLY WITH REGARD TO COUNTS TWO, THREE AND FOUR OF THE CIVIL COMPLAINT PERTAINING TO THE KNOWING, DELIBERATE AND SUPPRESSION OF EXCULPATORY/STREET FILES EVIDENCE

NOW COMES, plaintiff, Nathson E. Fields, appearing in his own proper person and respectfully submits this Statement of Material Facts pursuant to **Rule 56(b)** of the Federal Rules of Civil Procedure and **Local Rule 56.1(a)(3)** in support of his motion for partial summary judgment.

## **UNDISPUTED FACTS**

**1.** On February 22, 2010, plaintiff filed a lengthy civil complaint against defendants that are the subject of this partial motion for summary judgment and a host of other defendants.

**2.** The United States District Court For The Northern District of Illinois - Eastern Division have jurisdiction to hear this civil action. The venue is proper in this civil action.

**3.** The civil complaint incorporates by reference all preceding paragraphs before Counts Two, Three, and Four of the civil complaint.

**4.** In June of 1985, plaintiff was arrested for the April 28, 1984 murders of Jerome "Fuddy" Smith and Talman Hickman. Plaintiff entered a plea of "not guilty" to the charges.

**5.** On the date of the shooting deaths of the decedents, Sandra Langston informed the police that the shooters were "two Black males, in their early 20's, light-complected, both wearing jackets and one of the men wearing a red ski mask." **See, Exhibit A - Attached Hereto.**

**6.** On March 25, 2009, during plaintiff's retrial, defendants Brian Sexson and David Kelly entered into a **stipulation** that "Sandra Langston would identify the

two Black males following one of Jerome "Fuddy" Smith as being in their early twenties and light complexion." **See, Exhibit No. 2 - Attached Hereto**

7. On April 28, 1984, detectives Bogdalek and J. Minogue were assigned to investigate the homicides of Jerome "Fuddy" Smith and Talman Hickman. **See, Exhibit H - Attached To Civil Complaint.**

8. On April 28 1984, detectives Robert Evans and Steven Hood were assigned to investigate the homicides of Jerome "Fuddy" Smith and Talman Hickman and they talked to approximately **100 people. See, Exhibit I - Attached To Civil Complaint.**

9. At the time of the Jerome "Fuddy" Smith and Talman Hickman homicides and in the wake of **Palmer vs. City of Chicago, 562 F.Supp. 1067, 1078-1080 (N.D. Ill. 1983)** detectives investigating violent crimes were obligated by policy of the Chicago Police Department to:

(a). **record and preserve any relevant information obtained by any detective during the course of a violent crime field investigation.**

(b). **preserve and record information and materials obtained in the course of the investigation to assure not only that information**

and materials indicating the possible guilt of the accused are preserved, but also that any information and materials that may tend to show his possible innocence or aid in his defense is preserved.

(c). Submit all handwritten notes and investigative documents generated or received to the unit supervisor for review and inclusion in the Investigative File Case Folder whenever an Investigative File Case Folder has been initiated.

(d). preserve all handwritten notes and investigative documents generated or received and submit them to the unit supervisor with each supplementary report submitted whenever an Investigative File Case Folder has been initiated.

10. Plaintiff was represented at his original trial by attorney Jack Smeeton.

11. On January 13, 1986, attorney Jack Smeeton informed the judge that a <u>subpoena</u> had been issued for the <u>Street Files</u> in the case. **<u>See, Exhibit D - Attached To Civil Complaint.</u>**

12. Attorney Jack Smeeton informed the court that he requested of the Chicago

Police Department the **Investigative Street Files** for the Talman Hickman and Jerome "Fuddy" Smith homicides under the **RD Number** listed and what he received was another copy of police reports. **See, Exhibit F - Attached To Civil Complaint**.

13. On January 28, 1986, attorney Jack Smeeton informed the court that defendant Randy Rueckert had agreed to turn over the **Street Files** on a prior occasion, since he was in possession of them. **See, Exhibit E - Attached To Civil Complaint**.

14. On February 27, 1986, attorney Jack Smeeton informed the court that defendant Randy Rueckert mailed to him "General Progress Reports and Street Files that **only** consisted of eight pages of notes **all** dated April 28, 1984." **See, Exhibit G - Attached To Civil Complaint**.

15. Defendant David O'Callaghan was assigned to the investigation of the murders of Talman Hickman and Jerome "Fuddy" Smith almost a year after the crimes occurred and he interviewed **hundreds of people** along with other detectives involved in the investigation. **See, Exhibit J - Attached To Civil Complaint**.

16. Plaintiff **never** received a copy of any of the **Street Files/Notes** stemming

from the interviews of "hundreds of people" that defendant David O'Callaghan conducted.

**17.** In May of 1985, almost a year after the murders of Talman Hickman and Jerome "Fuddy" Smith, defendant Joseph Murphy was assigned to investigate the shootings. **See, Exhibit K - Attached To Civil Complaint.**

**18.** Plaintiff **never** received any **Street Files/Notes** concerning the interviews of people conducted by defendant Joseph Murphy.

**19.** Between defendants Joseph Bogdalek, J. Minogue, Robert Evans, Steven Hood, David O'Callaghan, Joseph Murphy and other detectives, **hundreds of people were interviewed** about the murders of Talman Hickman and Jerome "Fuddy" Smith.

**20.** In June of 1986, plaintiff was prosecuted at his original trial by Assistant State's Attorney Lawrence Wharrie and Assistant State's Attorney Randy Rueckert.

**21. Brady vs. Maryland,** 373 U.S. 83 (1963) expressly prohibits the suppression of evidence favorable to the accused.

**22.** The prosecution is chargeable with the knowledge of the police.

23. Information undermining the credibility of a State's witness is within the scope of the **Brady Rule.**

24. Defendant Wharrie was involved in the wrongful prosecution of Elton Houston and Robert Brown, in which, exculpatory evidence was withheld. **See, Houston vs. Partee, 978 F.2d 362 (7th Cir. 1992).**

25. The Office of the Cook County State's Attorney, Chicago Police Department, Office of United States Attorney For The Northern District of Illinois, Office of Federal Bureau of Investigation, Office of Alcohol, Tobacco & Firearms and Office of Drug Enforcement Administration launched a joint large scale investigation of the El Rukn organization before, during and after plaintiff's arrest.

26. Plaintiff is dark-complected.

27. In June of 1986, plaintiff was found guilty for the murders of Talman Hickman and Jerome "Fuddy" Smith and subsequently sentenced to death.

28. Plaintiff was placed on trial without having the benefit of any of the **Street Files/Notes** compiled by detectives assigned to the case stemming from their interviews with hundreds of people excluding the eight pages of notes all dated April 28, 1984 - the date of the murders.

29. In 2009, plaintiff was prosecuted at his **retrial** by Assistant State's Attorney Brian Sexton and Assistant State's Attorney David Kelly.

30. During the retrial, **none** of the "Street Files/Notes" compiled by detectives, assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith murders, stemming from their interviews with **hundreds of people** were turned over to plaintiff, excluding the eight ages of notes all dated April 28, 1984. **See, Exhibit No. 1 - Attached Hereto**.

31. On April 8, 2009, plaintiff was found **not guilty** in his retrial by the Honorable Vincent M. Gaughan. **See, Exhibit No. 1 - Attached Hereto**

32. On December 10, 2009, the Honorable Paul P. Beibel, Jr., Presiding Judge of Criminal Division, of the Circuit Court of Cook County **granted** plaintiff a Certificate of Innocence. **See, Exhibit No. 1 - Attached Hereto**

33. Knowledge and action of concealment of favorable evidence contained in Street Files/Notes by detectives assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith murders is **imputed** to the Office of the Cook County State's Attorney.

34. Knowledge and action of concealment of favorable evidence contained in Street Files/Notes by defendants Randy Rueckert, Lawrence Wharrie, Brian Sexson

and David Kelly is **imputed** to the State's Attorney, Office of the Cook County State's Attorney and the County of Cook.

35. Illinois Rules of Professional Conduct imposes an obligation upon prosecutors to timely disclose evidence to defense counsel, or to the accuse if not represented by counsel, evidence which tends to negate the guilt of the accused.

Respectfully Submitted

/s/ *Nathson C. Fields*

Nathson E. Fields
6815 South Jeffery, 3rd Floor
Chicago, Illinois 60649
(708) 699-3285

# EXHIBIT No. 1

# EXHIBIT No. 1

*"Exhibit No. 1"*

STATE OF ILLINOIS )
COUNTY OF COOK ) SS
CITY OF CHICAGO )

## AFFIDAVIT OF NATHSON E. FIELDS

I, **Nathson E. Fields**, swear under penalty of perjury and states as follows:

1. I am of legal age, sound of mind and competent to testify to all matters set forth in this legal instrument in a court of law.

2. This affidavit is based upon my personal knowledge.

3. During my first trial in the Circuit Court of Cook County before former judge Thomas J. Maloney, my trial attorney, namely Jack Smeeton, was informed by Assistant State's Attorney Randy Rueckert that **"Street Files"** did exists in the case.

4. Jack Smeeton had caused a subpoena to be issued to the Chicago Police Department requesting the **Street Files** for the Talman Hickman and Jerome "Fuddy" Smith homicides and was given another copy of police reports.

5. Assistant State's Attorney Randy Rueckert relinquished via U.S. Mail to Jack Smeeton, eight (8) pages of notes **all dated** April 28, 1984 which is the date of the shooting deaths of the victims.

6. Detective Robert Evans and Steven Hood interviewed approximately **one-hundred people** during their investigation into the Talman Hickman and

*"Exhibit No. 1"*

*"Exhibit No. 1"*

STATE OF ILLINOIS )
COUNTY OF COOK )SS
CITY OF CHICAGO )

## AFFIDAVIT OF NATHSON E. FIELDS

Jerome "Fuddy" Smith murders. The <u>Street Files</u> of these interviews were never turned over to me or attorney Jack Smeeton.

7. Detectives Joseph Bogdalek, J. Minogue, Joseph Murphy, Thomas Richardson, Stephen Casto, Dan Brannigan, John Robertson, Rich Kobel and Detective Kolovitz were all involved with the investigation of the Talman Hickman and Jerome "Fuddy" Smith murders.

8. Detective David O'Callaghan was assigned to investigate the Talman Hickman and Jerome "Fuddy" Smith murders almost one year **after** they occurred and he interviewed **hundreds of people**. The notes (referred to as "Street Files") taken by Det. David O'Callaghan of the hundreds of people he interviewed were never turned over to me or attorney Jack Smeeton.

9. In 1984, the policy of the Chicago Police Department required detectives to **"record information gathered during investigations of violent crimes and to preserve and submit unofficial reports known as "Street Files" to their Unit Supervisor for inclusion into an investigative file case folder."**

10. Prior to the start of my 2009 retrial, **no notes** taken from the hundreds of

*"Exhibit No. 1"*

"*Exhibit No. 1*"

STATE OF ILLINOIS )
COUNTY OF COOK   )SS
CITY OF CHICAGO  )

## AFFIDAVIT OF NATHSON E. FIELDS

interviews with people by detectives that had been involved with the investigation of the murders of Talman Hickman and Jerome "Fuddy" Smith were turned over to me or the lawyers representing me at the retrial, <u>excluding</u> the eight (8) pages of notes that had been turned over **20 plus years earlier and all dated April 28, 1984.**

11. I was found "not guilty" on April 8, 2009 during a bench trial before the Honorable Vincent M. Gaughan.

12. On December 10, 2009, I was granted a Certificate of Innocence by the Honorable Paul P. Biebel, Jr., Presiding Judge of the Criminal Division, of the Circuit Court of Cook County.

I, **Nathson E. Fields**, declares that the aforementioned statements are true and correct in fact and substance.

Subscribed in my presence

this 24th day of March of 2010

/s/ _____
Notary Public

OFFICIAL SEAL
SHEILA M. BRIMAGE
Notary Public - State of Illinois
My Commission Expires Sep 14, 2012

Respectfully Submitted

/s/ *Nathson Fields*
Signature of Nathson E. Fields

-3 of 3-

"*Exhibit No. 1*"

# EXHIBIT No. 2

# EXHIBIT No. 2

THE COURT: That stipulation is allowed and moved into evidence. Proceed.

MS. CONYERS: Defendant's stipulation Number, previously marked Defense Exhibit Number 19, that if Sandra Langston were called to testify, she would testify that just prior to Jerome Smith and Tallman Hickman being shot, she was talking to the victim Smith from her second floor bedroom window about Paul Haley's release from jail.

After the conversation ended, Smith said he was going to the front of the building at 706 39th Street and walked away. A short time later she heard three shots coming from the front are of the building.

She would further testify that her mother then came running up to her bedroom and told her that the two victims had been shot.

She would add further that she observed two male blacks following the victim Smith when he walked away from her bedroom window. She would describe the two men as follows. Number One, male black in early twenties, light complexion and wearing a red ski mask hat and light jacket. Number Two, male black in early twenties, light

"Exhibit No. 2"

159   "Exhibit No. 2"

complexion and wearing a blue jacket.

So stipulated?

MR. KELLEY: So stipulated, your Honor.

THE COURT: That stipulation is allowed and moved into evidence.

MS. CONYERS: Defendant's Exhibit Number 24 for Identification, the trial stipulation regarding the distance between 706 East 39th Street and Oakley Boulevard.

It is stipulated between the parties that the shortest distance between Oakley Boulevard and the entrance to the breezeway of the building, which stood at 706 East 39th Street, as they existed on August 28, 1984 is five hundred feet.

So stipulated?

MR. KELLEY: So stipulated, your Honor.

THE COURT: Thank you. That stipulation is allowed and moved into evidence.

MS. CONYERS: Defendant's Exhibit Number 21 for Identification. If called to testify, Mark Bowers would testify that he was assigned to assist Assistant State's Attorney David Kelley in the trial preparation of this matter. And that Assistant State's Attorney Kelley requested that

# EXHIBIT - A

# EXHIBIT - A

INTERVIEWS CONTINUED:              LANGSTON, Randy      M/B/15
                                   706 E 39th #106     Ph#373-4592

                                   LANGSTON, James      M/B/14
                                   706 E 39th #106     Ph#373-4592

TO BE INTERVIEWED:                 WRIGHT, Lavette     F/B/22
                                   706 E 39th St #105   Ph#548-4011

WHITE, Minnie was interviewed and related the following in essence, but not verbatim. She was inside in her apartment when she heard several shots, which at first she beleived to be firecrackers. Upon looking out her front window she observed the two victims lying on the ground. She than called the polic She further added that just prior to the shooting her future daughter-in-law, Lavette Wright walked into the apartment. She could add nothing further.

LANGSTON, Sandra was interviewed and related the following in essence, but not verbatim. Just prior to the victims being shot, she was talking to the victim Jerome Smith ("Fuddy") from her 2nd floor bedroom window about Paul (Haley) getting out of jail. After the conversation ended the victim Smith said he was going to the front of the building at 706 E 39th St. and walked away. A short time later she heard three shots comming from the front of the building. Her mother than came running up to her bedroom and told her that the two victims had been shot. She furthe added that she had observed two m/b's following the victim Smith when he walked away from her bedroom window. She described the two m/b's as follows: #1M/B in early 20's, light complex ion and wearing a red ski mask hat and white jacket. #2 M/B in early 20's, light complexion and wearing a blue jacket.

**PERMANENT RETENTION FILE**

LANGSTON, Randy was interviewed and related the following i essence, but not verbatim. He was playing baseball accros the street from 705 E 39th with his brother James and friend Carlos when he observed a man with a red ski mask shooting at the victims who were standing and continued to shoot as they ly on the ground. He than rolled the ski mask up from over his face and ran away.

LANGSTON, James was interviewed and related the following i essence, but not verbatim. He was playing baseball accross the street from 706 E 39th St with brother Randy and friend Carlos when he heard a man's voice say " What are you going to do now"? Upon turning around to see what was going on he observed a man in a red mask shooting at the victims who were standing in front of 706 E 39th. After the two victim's fell to the ground the man with the red ski mask continued to shoot at the victim's as they ly on the ground. He heard approximately six shots. The man wearing the ski mask than rolled it up from over his face and ran through the breezeway at 706 E 39th St.

This investigation continues.........

Det J Bogdalek  #14674   612
Det J Minogue   #13871   612

(621)



"Exhibit A"