UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
<u>EASTERN DIVISION</u>

| | | |
|---|---|---|
| NATHSON E. FIELDS,<br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF CHICAGO;<br>COUNTY OF COOK;<br>RICHARD M. DALEY; former Assistant<br>State's Attorneys LARRY WHARRIE and<br>DAVID KELLEY; former and<br>current Chicago Police Superintendents<br>FRED RICE and JODY WEIS;<br>former and current Chicago Police<br>Officers DAVID O'CALLAGHAN<br>THOMAS  RICHARDSON,<br>STEPHEN CASTO, J. MINOGUE,<br>JOSEPH BOGDALEK,<br>JOSEPH MURPHY, STEVEN  HOOD,<br>JAMES DELANEY, ROBERT EVANS,<br>DANIEL BRANNIGAN,<br>JOHN ROBERTSON, RICH KOBEL, and<br>RICHARD KOLOVITZ;<br>JOHN DOES, 1 THROUGH 100,<br>INCLUSIVE,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.  10 CV 1168<br><br>Hon. Matthew F. Kennelly<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

<u>AMENDED COMPLAINT</u>

NOW  COMES  THE  PLAINTIFF,  NATHSON  E.  FIELDS,  by  and  through  his

attorneys,  Leonard  Goodman,  H.  Candace  Gorman,  Molly  Armour  and  Melissa

Matuzak, and complains of the Defendants as follows:

## INTRODUCTION

1.      On June 27, 1986, Nathson E. Fields (hereinafter, "Fields" ) was found guilty of the murders of Talman Hickman and Jerome Smith and two months later was sentenced to death for a double murder that he did not commit. Fields was wrongfully imprisoned for almost eighteen years, most of which he spent on death row. This wrongful conviction was the result of misconduct by the Defendants, who conspired to build a false case against him irrespective of his innocence. Fields has continually maintained his innocence throughout this ordeal.

2.      On September 18, 1996, Fields' Petition For Post-Conviction Relief was granted on the grounds that the trial judge's corrupt practices deprived Fields due process of law. Fields remained imprisoned until he could post bond on May 9, 2003. Although the case against Fields had been exposed as false, the Defendants pressed on with a retrial which concluded on April 8, 2009 with Fields' acquittal on all charges. On December 10, 2009, Fields was granted a Certificate of Innocence. Yet, to this day the Defendants persist in extending Fields' ordeal by challenging his Certificate of Innocence.

3.      Although Fields won back his freedom, he can never regain the decades lost in his life. This lawsuit seeks redress for those injuries.

2

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C. section 1983 to redress the deprivation under color of law of Fields' rights as secured by the United States Constitution.  Supplemental jurisdiction to entertain state law claims arises under title 28 U.S.C. section 1367.

5.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper under 28 U.S.C. § 1391(b).  The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.


## PARTIES TO THE CASE

**PLAINTIFF:**

6.      Nathson E. Fields is a resident of the City of Chicago, State of Illinois.  At the time of his arrest in June of 1985, Fields was 30 years old and a member of the El Rukn street gang. Fields was charged with, found guilty of, and sentenced to death for the double murders of Talman Hickman and Jerome Smith, despite the fact that he was innocent.

**DEFENDANTS:**

7.      The City of Chicago is a municipal corporation operating and existing within The State of Illinois.  The City of Chicago is responsible for the acts of its employees while acting within the scope of their employment.

8.      The County of Cook is a governmental entity operating within the State of Illinois which consists in part of the Cook County State's Attorney's Office.  The County

of Cook is responsible for the acts of its employees while acting within the scope of their employment. Cook County and the Cook County State's Attorney's Office are necessary parties to this lawsuit.

9.     The following Defendants are sued in their individual capacities, and acted under color of law and within the scope of their employment during the investigation and court proceedings of the murders at issue:

    a.     Richard M. Daley, at all times relevant to this action, was the chief administrator for the State's Attorney of Cook County's Office. Daley is not being sued pursuant to his role as a prosecutor and in fact was not a prosecutor in this case, but solely in his political role as head of the State's Attorney's office. Upon information and belief Daley had a personal philosophy at the relevant times to this action that the states attorneys office would do "whatever it takes" to get gang members off the streets of Cook County (regardless of the constitutional rights of those individuals) because *they were probably guilty of something.* Daley followed this policy in order to enhance his political standing and that philosophy permeated the States Attorney's Office at the relevant times and facilitated the misconduct on the part of the other named Defendants.

    b.     Larry Wharrie, at all times relevant to his involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney that co-anchored the prosecution team during the original trial of Fields. Defendant Wharrie is being sued solely for his role in an investigative capacity, including but not limited to, the discovery and suppression of exculpatory evidence from Fields and his attorney after Fields first trial.

    c.     David Kelley, at all times relevant to his involvement in this action, was an Assistant State's Attorney employed by the Office of the Cook County State's Attorney that co-anchored the prosecution team during the second trial of Fields. Defendant Kelley is being sued solely for his role in an investigative capacity, including but not limited to, his actions beginning in or about 1998 to coerce a witness to give false identification testimony against Fields.

d. Fred Rice, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department.

e. Jody Weis, at all times relevant to his involvement in this action, was Superintendent of the Chicago Police Department and was charged with the responsibility of hiring, disciplining, formulating, implementing and administering the policies, practices, procedures, customs, training and supervision as well as the overall day-to-day operations of said department.

f. James Delaney, at all times relevant to his involvement in this civil action, was the Watch Commander for Area One Violent Crimes of the Chicago Police Department and was responsible for the formulation, implementation and administration of policies, practices, procedures, customs, training, supervision and control of all subordinates under his command.

g. David O'Callaghan, Star No. **14721**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and had a special assignment with the Office of the Cook County State's Attorney.

h. Detective Thomas Richardson, Star No. **3385**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

i. Detective Stephen Casto, Star No. **15489**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

j. J. Minogue, Star No. **13871**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

k.  Joseph Bogdalek, Star No. **14674,** at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

l.  Joseph Murphy, Star No. **1389**, at all times relevant to his involvement in this action, was employed as a Sergeant with the Chicago Police Department and worked out of Area One Violent Crimes.

m.  Steven Hood, Star No. **11885**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

n.  Robert Evans, Star No. **12754**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

o.  Daniel Brannigan, Star No. **4638**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

p.  John Robertson, Star No. **13732**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

q.  Richard Kobel, Star No. **4383**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

r.  Detective Richard Kolovitz, Star No. **12408**, at all times relevant to his involvement in this action, was employed as a Detective with the Chicago Police Department and worked out of Area One Violent Crimes.

s.  Fields is unaware of the true names and capacities of certain Defendants sued herein as **JOHN DOES 1 THROUGH 100, INCLUSIVE,** and therefore sues these Defendants by such fictitious names. Fields will amend this civil complaint to allege their true names and capacities when ascertained. On information and belief, Fields alleges that at all times relevant to this action, each of the Defendants sued herein as **JOHN DOES 1 THROUGH 100** was the agent, servant, representative or employee of the remaining Defendants and was acting under color of law and within the spectrum of such agency and employment. On

information and belief, Fields alleges that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein and that Fields' injuries were proximately caused by their act**s**.

## STATEMENT OF FACTS

### A. THE INVESTIGATION

10.    On Saturday morning, April 28, 1984, at approximately 10:15 a.m., Talman Hickman and Jerome "Fuddy" Smith were shot multiple times and died outside 706 East 39th Street, a public housing complex in Chicago.  That day, witnesses told Chicago Police detectives that the victims were standing in front of the building, and that two men with guns came up behind them and shot them in the back of the head.

11.    Jerome "Fuddy" Smith was the leader of a street gang known as the Black Gangster Goon Squad, and his friend Talman Hickman was a member of that same street gang.  At the time of shooting, there was an ongoing gang rivalry between the Goon Squad and the El Rukns.

12.    Soon after the shootings, Chicago Police Detectives Joseph Bogdalek, J. Minogue, Robert Evans, and Steven Hood interviewed eyewitnesses to the shooting including Randy Langston, Sandra Langston, and Gerald Morris.  At this time, the detectives learned that only one of these eyewitnesses, Sandra Langston, had the ability to give any description of the physical appearance of the two shooters.  Sandra Langston told the detectives that she observed, from her second floor bedroom window, that both offenders were black males, both "light complexion," in their "early 20s."  Detectives

7

also learned that one or both of the perpetrators wore ski masks at the time of the shooting.

13.     Fields is a dark-skinned black man.  At the time of the shooting, he was thirty years old.  He did not fit the description of either of the shooters.

14.     From April of 1984 until May of 1985, the investigation persisted.  Defendants interviewed approximately one hundred witnesses.  None of them identified Fields as one of the perpetrators.

15.     On or about January, 1985, the Defendants, in concert with federals agents from the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), began a campaign to target members of the El Rukn Street gang for arrest and prosecution.

16.     On or about May, 1985, Chicago Police Detectives, Assistant State's Attorney Wharrie, and other Defendants, raided an El Rukn "safe house" in Cleveland, Ohio and arrested gang member Anthony Sumner, who had fled there from Chicago.

17.     Defendant Brannigan and others, alongside Assistant State's Attorney Wharrie, used coercive tactics to directly or proximately cause Sumner to falsely implicate Nathson Fields in the Smith/Hickman homicides and to fabricate a story that Fields had confessed his involvement in the murders to Sumner.

18.     The Defendants used similar coercive tactics to directly or proximately cause Sumner to also falsely implicate Fields in the double murders of Joseph White and Dee Eggers Vaughn, a crime which Sumner himself had committed with Earl Hawkins in March 1985.

19.    After causing Sumner to falsely implicate Fields in the Smith/Hickman murders, the Defendants set out to manufacture additional false evidence connecting Fields to these crimes.

20.    From on or about May 1985 through June 1985, Detectives David O'Callaghan, Thomas Richardson, Steven Casto, and other Defendants used suggestive, coercive, and improper tactics to induce Randy Langston and Gerald Morris to falsely identify Nathson Fields as one of the shooters of Smith and Hickman.

21.    These suggestive, coercive and improper tactics included, but were not limited to, showing witnesses a photo of Fields and telling the witness to identify the person depicted in the photo as one of the shooters, directing the witnesses whom to select in a lineup, and lifting up Fields' shirt to display his El Rukn tattoo, which was utterly irrelevant to the identifications.  As a result of these unduly suggestive and improper procedures, Fields was falsely identified, both prior to and then again at trial.

22.    The Defendants knew that these eyewitnesses did not have the ability to identify the shooters of Smith and/or Hickman and that the eyewitness identifications of Fields were false; yet Defendants relied on these false identifications to build a case against Fields.

23.    Further, despite the policy and procedure of the Chicago Police Department to inventory all photographs that are used in a photographic array Detective O'Callaghan and other Defendants did not inventory or preserve the photographs which Defendants showed to the "eyewitnesses."

24.     The coercive tactics which Defendants used to induce witnesses to give false evidence against Fields, included, but were not limited to, physical violence, threats of physical violence, threats of prosecution, inducements such as payment of rent and other expenses for the witness, promises to relocate the witness and/or his or her family out of the projects, promises to get a family member reduced jail time, and promises to defer prosecution for crimes committed by the witness, including the crime of murder.

25.     On June 14, 1985, nearly fourteen months after the shooting deaths of Hickman and Smith, personnel of the Chicago Police Department arrested Fields. Defendants swore out criminal complaints alleging that Fields shot and killed Hickman and Smith regardless of the fact that there was no physical evidence or reliable witness that linked Fields to these crimes, only the manufactured "evidence" that falsely implicated Fields.

26.     This fabrication of evidence violated Fields' constitutional rights.


**B.  THE MALICIOUS PROSECUTIONS**

27.     The Defendants failed to disclose to Mr. Fields or to his lawyers that they had used coercive and suggestive tactics to obtain the evidence implicating him in the murders, despite their constitutional obligation to disclose to the defense any favorable evidence which is material either to guilt, punishment, or impeachment.

28.     Further, on information and belief, Defendants failed to provide Fields and his attorneys with a substantial number of witness reports, "street files," and other material documents, despite repeated and specific requests for such discovery.

29.     Defendants only disclosed to Fields and his defense counsel the general progress reports or "street files" from witness interviews conducted by Defendants on or about April 28, 1984, the date of the murders.    However, during the thirteen-month investigation, Defendants interviewed over one hundred witnesses, and on information and belief, created numerous witness reports and other material documentation.    The Defendants suppressed and secreted these reports and failed to disclose them to Mr. Fields or to the lawyers who defended him on the false murder charges, despite numerous written and oral requests for discovery. On information and belief, these reports contain information revealing that Fields was not involved in this crime.

30.     Defendants also illegally and wrongfully suppressed police reports, including general progress reports and supplemental reports relating to the murders of Joseph White and Dee Eggers Vaughn.    On information and belief, these reports contain information revealing that Fields was not involved in this crime.

31.     Additionally, the Defendants deliberately and affirmatively failed to disclose information pertaining to investigations that established the guilt of individuals other than Fields.    Consistent with that endeavor, Defendants unlawfully suppressed information that would have implicated others and thereby exonerated Fields.

32.     Moreover, the Defendants actively interfered with and impeded the defense's pre-trial investigation.  On July 22, 1985, Sergeant Joseph Murphy and other Defendants learned that the co-defendant's attorney was speaking with witnesses Eric Langston and Randy Langston at the scene of the crime.  Defendants went to the scene, removed Eric Langston and Randy Langston and detained defense counsel and his investigator.

11

## C. THE TRIAL BEFORE THE CORRUPT JUDGE

33.     The Defendants charged three men with the Smith and Hickman murders: Earl Hawkins, George Carter, and Nathson Fields.

34.     On June 17, 1986, Fields and Hawkins proceeded to trial before Judge Thomas J. Maloney, who acted as the trier of fact.

35.     Unbeknownst to Fields or his attorney, the attorney for co-defendant Hawkins, William Swano, had prior to trial paid $10,000 to Judge Maloney to assure a not guilty verdict for Hawkins. Judge Maloney became concerned that he was the subject of a federal investigation and he returned the bribe money. Thereafter, on June 27, 1986, Judge Maloney found Fields and his co-defendant guilty of the charged offenses.

36.     The FBI was indeed secretly recording Judge Maloney's chambers. Federal agents had knowledge that Fields' trial was fundamentally corrupted, and failed to disclose this information, even after Fields was sent to death row.

37.     Fields was convicted of the murders as a proximate result of the misconduct on the part of the Defendants as described above and as discovery will further disclose.

38.     Following his wrongful conviction, the Defendant prosecutors additionally offered false evidence at the penalty phase of Fields' capital trial. In particular, the prosecution offered the false testimony of Anthony Sumner implicating Fields in the murders of Joseph White and Dee Eggers Vaughn, murders which Sumner had himself actually committed with Earl Hawkins in March, 1985.

39.     Also, at the death penalty hearing, prosecution witness Randy Langston admitted under oath that his identification testimony at trial was false and had been coerced by the Defendants.

40.     On August 22, 1986, a jury returned a verdict finding no mitigating factors sufficient to spare Fields' life, and Judge Maloney sentenced Fields to death.  As a direct result of the false testimony presented by the Defendants, Fields was sentenced to death.


**D.  AFTER THE FIRST TRIAL**

41.     Sumner later admitted to the Defendants that he and Earl Hawkins had committed the murders of White and Vaughn, and that his story about Fields' involvement in that crime was wholly fabricated.  Nevertheless, the Defendants ignored their obligation to come forward with this vital information, and instead continued to push for Fields' execution.

42.     Then, on February 16, 1990, Fields' conviction and death sentence were upheld by the Illinois Supreme Court.

43.     In April of 1993, Judge Maloney was convicted in federal district court of conspiracy, racketeering, extortion, and obstructing justice.

44.     On September 18, 1996, Judge Deborah M. Dooling of the Circuit Court of Cook County granted Fields' Petition for Post-Conviction Relief on the grounds that the trial Judge, Thomas Maloney, acted as a corrupt jurist during Fields' trial, thereby depriving Fields of due process of law.

45.     After Fields was granted a new trial, Defendants pursued interlocutory appeals to attempt to save the false conviction and death sentence. These appeals postponed the retrial for several years. During these appeals, Defendants admitted that they lacked evidence to retry Fields.

46.     Beginning in or about 1998, Defendants used coercive tactics to cause witnesses Randy Langston and Gerald Morris to repeat their false identifications from the first trial. Defendants knew that these witnesses had truthfully admitted that they lacked the ability to identify Fields and that their identification testimony from the first trial was false and had been coerced by the Defendants.


**E. THE RETRIAL**

47.     After the Defendants' appeals were denied, rather than admit their mistake, the Defendants pursued the retrial of Fields despite their knowledge that they had no credible evidence that Fields was responsible for the murders.

48.     To improve their chances of winning another false conviction, the Defendants cut a deal with Earl Hawkins, Fields co-defendant and an admitted serial killer. In this deal, the prosecution agreed to dismiss a double-murder charge against Hawkins in exchange for his perjured testimony implicating Fields. The Defendants knew that Hawkins would say anything to get off death row.

49.     The Defendants re-tried Fields in the spring of 2009 for the murders despite his innocence. On April 8, 2009, Cook County Circuit Court Judge Vincent M. Gaughan found Fields not guilty of the shooting deaths of Hickman and Smith. In acquitting

14

Fields, Judge Gaughan made factual findings specifically rejecting the testimony of Hawkins, the State's purported occurrence witnesses, as improbable, highly suspect, and unworthy of belief.

50.     Subsequently, Fields was exonerated when he was granted a Certificate of Innocence in December, 2009.

51.     The Defendants have willfully and wantonly engaged in a well-documented pattern of illegal activity, through individual and collective unlawful behavior, including but not limited to:  illegal and suggestive identification procedures, deliberate suppression of exculpatory evidence, witness coercion to produce false evidence, subornation of perjury, and perjury, all of which was coordinated to produce the wrongful arrest, wrongful conviction, wrongful imprisonment, and execution of Fields.

52.     Fields was not the only individual singled out for this pattern of illegal activity by Defendants, that pattern included a host of other people, inclusive of, but not limited to numerous people who have been exonerated after spending years imprisoned for crimes which they did not commit.[1]

_____

[1] See, e.g., People v. Darby  Tillis & Perry  Cobb, People v. Dennis Williams,  People v. Kenneth Adams, People  v. Willie Rainge, People  v. Omar  Aguirre, People v. Santo Duarte, People v. Aaron Patterson, People v. Leroy Orange, People v. Madison Hobley, People v. Stanley Howard, People v. Paul Terry, People v. Ronald Kitchen, People v. Marvin Reeves, People v. Dan Young, People v. Angel  Rodriguez, People v. Harold Hill, People v. James Newsome, People vs. Michael Tillman, People v. Xavier Arcos, People v. David Bates, People v. Paula Gray, People v. Juan Johnson, People v. Walter Godinez, People v. Thaddeus Jimenez, People v. Alton Logan, People  v. Anthony Porter, People v. Miguel Castillo, People v. Ronald Jones, People v. Dean Gage, People  v. Robert Williams, People  v. Larry Ollins, People  v.John Willis, Jr., People  v. Marcelia Bradford, People v. Omar Saunders, People v. Marlon Pendleton, People v. Corethian Dion Bell, People v. Derrick Flewellen, People v. Maurice Deloney, People  v. Fred Ewing, People v. Gerald Earl, People  v. Verneal Jimerson, People v. Eric Gibson, People v. Elton  Houston, People v. Robert Brown, People v. Gabriel Solis, People v. Xavier Carton, People v. David Fauntleroy,

**F. POLICIES AND PRACTICES: CHICAGO'S "STREET FILES"**

53.    The unconstitutional withholding of exculpatory information from Fields' defense in this case, as well as the possible destruction of the same, was all undertaken pursuant to, and proximately caused by, policies and practices on the part of the Defendants.

54.    Police officers were required by the policy of the Chicago Police Department to record information gathered during investigations of violent crimes and to preserve and submit unofficial reports known as "Street Files" and/or "general progress reports" to their Unit Supervisor for inclusion into an investigative file case folder.

55.    Specifically, at all times relevant hereto, members of the Chicago Police Department, including but not limited to the Defendants in this action, systematically suppressed Brady material by intentionally secreting discoverable information in so-called "street files." As a matter of widespread custom and practice, these clandestine street files were routinely withheld from the State's Attorney's Office and from criminal defendants and many were subsequently destroyed.  Consistent with the municipal policy and practice described in the preceding paragraphs, employees of the City of Chicago, including but not limited to the named Defendants, concealed exculpatory evidence within street files which were never disclosed to Fields' criminal defense.  This withholding of evidence which would have exonerated Fields and was undertaken pursuant to the City's policy and practice in the manner described above.

---

People v. LaFonso Rollins, People v. Darreal Stokes, People v. Alfonzia Neal,  and People v. Steven Manning.

56.     The State's Attorney of Cook County was well aware of the Street files utilized by the City of Chicago police in its investigations but because of the policy and practice of Richard M. Daley to convict street gang members to get them off of the streets, (regardless of guilt or innocence) the States Attorney's office not only looked the other way when the files were missing but actively participated in the misconduct.

57.     The policies and practices described in the foregoing paragraphs was consciously approved at the highest policy-making level for decisions involving the police department, and was a proximate cause of the injuries suffered here by the Fields.


## G.  FURTHER POLICIES AND PRACTICES: MALICIOUS PROSECUTION

58.     In addition to the foregoing, Fields was also the victim of, and his injuries were proximately caused by, a policy and practice on the part of the City of Chicago and the States Attorney's office to secure false convictions through profoundly flawed investigations.

59.     Specifically, throughout the 1970s and 1980s, and continuing thereafter, as part of the flawed investigations a group of Chicago Police Officers, including some or all of the Defendants herein and other unknown officers, engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

60.     In addition, the institutional desire to "solve" crimes more expediently regardless of guilt or innocence was utilized by the officers to enhance their personal

standing in the Department and was known to the command personnel, who themselves participated in the practice.

61. The above-described widespread practices, so well settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem.

62. The purported philosophy of Richard M. Daley was to "do whatever it takes" to get gang members off the streets of Cook County (regardless of guilt or innocence), was well known both within the State's Attorney's Office and the Chicago Police Department and facilitated the malicious prosecutions.

63. The FBI and ATF shared this "whatever it takes" philosophy in targeting Chicago street gangs, especially the El Rukns during the 1980s.

64. The shared institutional desire to "solve" crimes regardless of guilt or innocence was also able to exist because of the willingness of the State's Attorney's office to prosecute the flawed cases despite the fact that it was clear that the police were engaging in misconduct.

65. In addition to Fields, there are now dozens of other known victims of similar abuses, though there may well be many more. At least thirteen criminal defendants victimized by this practice were, like Fields, wrongfully sentenced to death.

66. The widespread practices described in the preceding paragraphs were allowed to take place because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system

for investigating and disciplining police officers accused of the type of misconduct which befell Fields was, and is, for all practical purposes, nonexistent.

67.     Chicago police officers who manufactured criminal cases against individuals such as Fields had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the grievous misconduct at issue in this case.

68.     Cook County State's Attorneys who investigated the manufactured criminal cases against individuals such as Fields also had every reason to know that they too would enjoy *de facto* immunity (if not absolute immunity) from criminal prosecution and/or departmental discipline because they were following the policy of the office in doing whatever it took to keep known gang members off the streets of Chicago, regardless of their guilt or innocence.

## H.     FIELDS' DAMAGES

69.     On May 9, 2003, Fields posted bond and was released after spending 17 years and nearly 11 months of continuous wrongful imprisonment, 11 of those years on death row.  During his many years in prison, Fields was physically attacked and had chemical agents used upon him.  Fields remained out on bond for almost 6 years before the retrial would get underway.

70.     In January of 1996, Fields' mother suffered a massive heart attack and died. Fields requested to attend his mother's services, but his request was denied.

19

71.     While on death row, Fields endured the mental and emotional trauma associated with his pending execution.  Fields was further traumatized at least 11 times when other residents of death row were put to death.

72.     In serving almost eighteen years behind bars and six years awaiting trial to be exonerated, Fields was wrongfully deprived of nearly half of his adult life.  Fields was stripped of the various pleasures of basic human experience, which all free people enjoy as a matter of right.  He missed out on the ability to share holidays, births, funerals, and other life events with loved ones, including watching his daughter grow up.  As a result of his wrongful incarceration, Fields lost his fundamental freedom to live one's life as an autonomous human being, and he must now attempt to rebuild his life outside of prison, all without the benefit of the life experiences that ordinarily equip adults for that task.

73.     This long-running ordeal has caused psychological pain, intense emotional distress, physical sickness, humiliation, embarrassment, depression, deprivation of  the enjoyment of life, sleep disruption, inability to concentrate, complete distrust and fear of the police, deprivation of employment opportunities and the accumulation of Social Security work credits, anxiety, and shame.  He was compelled to endure many years of wrongful imprisonment including being subjected to degrading prison practices, such as being strip-searched at the whim of prison guards/officials.  All of this has caused the need for professional mental and emotional counseling which Fields cannot afford.

74.     Fields seeks redress for his injuries, including compensatory damages, as well as attorneys' fees and costs.

## COUNT I -- 42 U.S.C. § 1983 -- DUE PROCESS

75.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

76.     As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Fields of his constitutional right to a fair trial.

77.     In the manner described more fully above, the Defendants' and its employees and agents engaged in subornation of perjury, perjury, coercion of witnesses to produce false evidence against Fields, and the withholding and/or destroying of exculpatory evidence, thereby misleading and misdirecting the prosecution of Fields.  These individuals also engaged in the unduly suggestive identification procedures, as described above.  Absent the totality of this misconduct, the prosecution of Fields could not and would not have been pursued.

78.     The misconduct of the City defendants could also not have occurred without the specific acquiescence of the Cook County State's Attorney's Office in furtherance of their policy of prosecuting gang members regardless of guilt or innocence.

79.     The above-described misconduct directly resulted in the unjust criminal conviction of Fields, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution.

80.     As a result of this violation of his constitutional right to a fair trial, Fields suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

81.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Fields' constitutional rights.

82.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in concert with the Cook County State's Attorney's Office in the manner described more fully above.   In this way, the City of Chicago and Defendant Daley violated Fields' rights through the actions of its agents by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

83.     As a result of this malicious prosecution, Fields' constitutional rights were violated, and he suffered other injuries, including but not limited to loss of liberty, as is more fully alleged above.


**COUNT II -- 42 U.S.C. § 1983 -- FAILURE TO INTERVENE**

84.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.     In the manner described above, during the constitutional violations described above, one or more of the Defendants and/or other unnamed Chicago Police Officers stood by without intervening to prevent the misconduct.

86.     As a result of the Defendants' failure to intervene to prevent the violation of Fields' constitutional rights, Fields suffered pain and injury, as well as emotional distress, as is more fully alleged above. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

87.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Fields' constitutional rights.

88.     The misconduct described in this Count was undertaken pursuant to the policies and practices of both the City of Chicago and the State's Attorney's office in the manner described in preceding paragraphs.

## COUNT III -- 42 U.S.C. § 1983 -- CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

89.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

90.     After the murder at issue, the Defendants reached an agreement amongst themselves to frame Fields for the crime, and to thereby deprive Fields of his constitutional rights, all as described in the various Paragraphs of this Complaint.

91.     Independently, before and after Fields' convictions, each of the Defendants further conspired, and continue to conspire, to deprive Fields of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

92.     In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of either the Chicago Police Department or the Cook County State's Attorney's Office, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

93.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

94.     As a direct and proximate result of the illicit prior agreement referenced above, Fields' rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

95.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Fields.

96.     The misconduct described in this Count was undertaken pursuant to the policies and practices of both the Chicago Police Department and the Cook County State's Attorney's Office in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for both the City of Chicago and the County of Cook with final policymaking authority.

**COUNT IV — STATE LAW CLAIM -- MALICIOUS PROSECUTION**

97.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

98.     Defendants caused Fields to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and

continued maliciously, resulting in injury, and all such proceedings were terminated in Fields' favor in a manner indicative of innocence.

99.     Defendants accused Fields of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

100.     Prosecutors, even after learning that the accusations were without probable cause not only acquiesced in the continued judicial proceedings but actively prosecuted Fields knowing he was  not guilty of the crimes alleged.

101.     Statements of the Defendants regarding Fields' alleged culpability were made with knowledge that said statements were false and perjured.  In so doing, the Defendants fabricated evidence and withheld exculpatory information.

102.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Fields.

103.     As a result of this misconduct, Fields sustained, and continues to sustain, injuries including pain and suffering, as well as emotional distress, as is more fully alleged above.

## COUNT V -- STATE LAW CLAIM -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

105.    The acts and conduct of the Defendants as set forth above were extreme and outrageous.  The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Fields, as is more fully alleged above.

106.    Said actions and conduct did directly and proximately cause severe emotional distress to Fields, and thereby constituted intentional infliction of emotional distress.

107.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Fields.

108.    As a proximate result of Defendants' wrongful acts, Fields suffered damages, including severe emotional distress and anguish, as is more fully alleged above.


## COUNT VI -- STATE LAW CLAIM -- CIVIL CONSPIRACY

109.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

110.    As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

111.    In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

112.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Fields.

113.    As a proximate result of Defendants' conspiracy, Fields suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VII -- STATE LAW CLAIM -- RESPONDEAT SUPERIOR

114.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

115.    In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department and all were acting at all relevant times within the scope of employment and under color of law.

116.    In committing the acts alleged in the preceding paragraphs, Defendant Daley, Defendant Wharrie, and Defendant Kelley were agents of the Cook County State's Attorneys Office and were acting at all relevant times within the scope of their employment and under color of law.

117.    Both the Defendant City of Chicago and the Defendant County of Cook are liable as principal for all torts committed by its agents.

## COUNT VIII - STATE LAW CLAIM -- INDEMNIFICATION

118.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

119.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

27

120.    The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

121.    Richard M. Daley, Larry Wharrie, and David Kelley were employees of the County of Cook, when committing the misconduct described herein.

WHEREFORE, Plaintiff, Nathson E. Fields, respectfully requests that this Court enter judgment in his favor and against Defendants and other AS-YET UNIDENTIFIED DEFENDANTS, in the amount of $360,000,000 in compensatory damages plus costs and attorneys' fees against the Defendants, as well as any other relief this Court deems appropriate.


## JURY DEMAND

Plaintiff, Nathson E. Fields, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

 /s/   Leonard C. Goodman

One of the Attorneys for Fields

For Fields:

Leonard Goodman                          H. Candace Gorman
Molly Armour                             220 S. Halsted
Melissa Matuzak                          Suite 200
53 W. Jackson Boulevard                  Chicago Illinois 60661
Suite 1650                               312-427-2313
Chicago, Illinois 60604
312-986-1984

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NATHSON E. FIELDS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 10 CV 1168** |
| **CITY OF CHICAGO, et. al** | ) | |
| **Defendants,** | ) | **Hon. Matthew F. Kennelly** |

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

To:     ALL COUNSEL OF RECORD


        PLEASE TAKE NOTICE that on the 28th day of June 2010, I filed with the Court's electronic filing system a copy of Plaintiff's Amended Complaint to be served upon you.


                                        /s/ Leonard C. Goodman
                                        Counsel for Plaintiff




Leonard C. Goodman
53 W. Jackson
Suite 1650
Chicago, Illinois 60604
(312) 986-1984

29