**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NATHSON E. FIELDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 10 C 1168** |
| ) | |
| **CITY OF CHICAGO, COUNTY OF COOK,** ) | |
| **RICHARD M. DALEY, LARRY WHARRIE,** ) | |
| **DAVID KELLEY, DAVID O'CALLAGHAN,** ) | |
| **THOMAS RICHARDSON, STEPHEN** ) | |
| **CASTO, JAMES MINOGUE, JOSEPH** ) | |
| **BOGDALEK, JOSEPH MURPHY, STEVEN** ) | |
| **HOOD, JAMES DELANEY, ROBERT** ) | |
| **EVANS, DANIEL BRANNIGAN, JOHN** ) | |
| **ROBERTSON, RICH KOBEL, and** ) | |
| **RICHARD KOLOVITZ,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nathson Fields has sued the City of Chicago, thirteen City of Chicago police officers,[1] Cook County, former Cook County prosecutors Larry Wharrie and David Kelley, and former Cook County State's Attorney Richard Daley, for claims arising from his wrongful conviction of the murders of Talman Hickman and Jerome Smith. Fields asserts due process, failure to intervene, and conspiracy claims under 42 U.S.C. § 1983, as well as several state law claims. The City of Chicago defendants, Cook

_____

[1] The Chicago police officer defendants are David O'Callaghan, Thomas Richardson, Stephen Casto, James Minogue, Joseph Bogdalek, Joseph Murphy, Steven Hood, James Delaney, Robert Evans, Daniel Brannigan, John Robertson, Rich Kobel, and Richard Kolovitz.

County defendants, and Daley have filed separate motions to dismiss. For the reasons stated below, the Court denies the City of Chicago defendants' motion, grants Daley's motion, and grants the Cook County defendants' motion in part and denies it in part.

**Background**

The Court takes the following facts from the allegations in Fields's third amended complaint. The Court accepts these allegations as true for purposes of the motion to dismiss. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

On April 28, 1984, Talman Hickman and Jerome Smith died from gunshot wounds outside a public housing complex in Chicago. Hickman and Smith belonged to the Black Gangster Goon Squad, a rival of the El Rukn street gang. Witnesses described seeing two men with masks approach Hickman and Smith from behind and shoot them in the back of the head.

The Chicago Police Department investigated the crime from April 1984 until May 1985. The defendant officers and other officers interviewed at least one hundred people, including eyewitnesses Randy Langston, Sandra Langston, and Gerald Morris. None of these people identified Fields or described an offender that matched Fields's characteristics. In addition, many people offered information inconsistent with the charges later brought against Fields. The officers prepared written reports of the interviews.

In January 1985, the Cook County State's Attorney's Office (SAO), former State's Attorney Daley, and the Chicago Police Department began to target members of the El Rukn gang. Fields alleges that they adopted a policy to prosecute members of

the gang for crimes irrespective of guilt or innocence.

In March 1985, Anthony Sumner and Earl Hawkins murdered Joe White and Dee Eggers Vaughn during a drug-related robbery and fled Chicago to avoid arrest. A witness identified Hawkins as one of the offenders. In May 1985, Wharrie and other defendants arrested Sumner during a raid of an El Rukn "safe house" in Ohio. They coerced Sumner to falsely implicate Fields in the Smith/Hickman murders and fabricate a story that Fields had confessed to the murders. They also coerced Sumner to falsely implicate Fields in the White/Vaughn murders. In return, the Chicago Police Department and the SAO agreed not to prosecute Sumner.

In May 1985, the defendant officers used coercive and suggestive tactics to cause Randy Langston and Gerald Morris to falsely identify Fields as one of the perpetrators of the Smith/Hickman murders. The defendants intentionally and maliciously failed to inventory and preserve the photographic array they showed Langston and Morris despite the existence of a Chicago Police Department policy requiring them to do so.

Chicago police officers arrested Fields in June 1985 for the Smith/Hickman murders. Following Fields's arrest, the defendant officers used coercive and suggestive tactics to cause Sandra Langston, Eric Langston, and Gerald Morris to falsely identify Fields from a lineup as a perpetrator of the murders. The defendants coerced the witnesses to give false evidence against Fields using physical violence, threats of physical violence and prosecution, offers to pay rent and other expenses, promises of relocation, and promises to reduce jail time for a family member. The SAO, Daley, and the Chicago Police Department employed these tactics to secure the false conviction of

an El Rukn gang member.

Before Fields's trial, defendants failed to disclose to Fields that coercive and suggestive tactics had been used to obtain the evidence implicating him in the Smith/Hickman murders.  Defendants also withheld witness reports, "street files," and general progress reports that exculpated Fields and inculpated others.  They acted intentionally and with malice to prevent Fields from refuting the false identification testimony at trial.  They also suppressed reports relating to the White/Vaughn murders that proved Fields had not committed that crime.  The withholding of exculpatory information was undertaken as a policy of the Chicago police department with the approval of the SAO.

In July 1985, Sergeant Joseph Murphy and other defendant officers learned that counsel for one of Fields's co-defendants was speaking with witnesses Eric and Randy Langston at the scene of the crime.  Certain defendant officers went to the scene, removed the witnesses, and detained defense counsel and his investigator.

In June 1986, the SAO tried Fields and Hawkins for the Smith/Hickman murders before Judge Thomas Maloney.  The prosecution's theory was that Fields and Hawkins shot the victims and Carter drove the getaway car.  Fields and the other defendants waived a jury for the guilt phase of the trial and for determination of whether they were eligible for the death penalty, while asserting their right to a jury for determination of whether to impose a death sentence.  *See generally People v. Hawkins*, 181 Ill. 2d 41, 45-48, 690 N.E.2d 999, 1001-02 (1998).

During the trial, Hawkins's attorney paid Judge Maloney $10,000 to ensure Hawkins's acquittal.  Judge Maloney returned the bribe after becoming concerned that

he was under investigation. On June 27, 1986, Judge Maloney found both Fields and Hawkins guilty of the charged offenses. Federal law enforcement agents who were secretly recording conversations in Judge Maloney's chambers informed Daley and the Chicago Police Department of the judge's conduct, but defendants did not inform Fields.

Daley and the defendant prosecutors sought the death penalty against Fields. At the penalty phase of Fields's trial, Randy Langston testified that defendant O'Callaghan had coerced his identification testimony. Eric Langston testified that O'Callaghan had likewise coerced him to identify Fields in exchange for assistance to Langston's brother Randy. In support of imposition of a death sentence, defendants offered fabricated evidence, including Sumner's false testimony implicating Fields in the White/Vaughn murders. Daley, the SAO, and the defendant officers knew that Sumner and Hawkins had committed the White/Vaughn murders yet condoned the use of the false evidence.

A jury found the existence of no mitigating factors, and Judge Maloney imposed a death sentence on both Fields and Hawkins. The Illinois Supreme Court upheld Fields's conviction and death sentence in February 1990. *See People v. Fields*, 135 Ill. 2d 18, 552 N.E.2d 791 (1990).

In 1991, Sumner admitted to Assistant United States Attorney William Hogan and unknown others that he had committed the White/Vaughn murders with Hawkins and had fabricated the story of Fields's involvement in the crime. Sumner repeated the admission in a signed statement to representatives of the Chicago Police Department and SAO in January 1992. Fields alleges that the defendants did not come forward

with the information and did not disclose it to him and that they continued to seek his execution as he pursued post-conviction relief.

Judge Maloney was convicted in April 1993 of conspiracy, racketeering, extortion, and obstruction of justice. In September 1996, a state court judge granted Fields's post-conviction petition and ordered a new trial on the ground that Judge Maloney's corruption had deprived Fields of due process. The SAO and individual defendants pursued interlocutory appeals, which postponed Fields's retrial for several years. During that time period, the SAO allegedly conceded that the passage of time and other factors rendered the case against Fields "untriable."

In 1987, while Fields's direct appeal was pending in the Illinois courts, Wharrie and other defendants negotiated a deal to remove Hawkins from death row in exchange for his testimony against other El Rukns. In 1998, and with Sumner dead, defendant Kelley agreed to dismiss the murder charges against Hawkins and agreed not to prosecute him for the White/Vaughn murders, in return for his testimony against Fields at his retrial for the Hickman/Smith murders. Also around 1998, Fields alleges, Kelley and others coerced Randy Langston and Gerald Morris to repeat their false identifications from the first trial despite knowing that both witnesses had since recanted the identifications.

Fields was imprisoned until he could post bond in May 2003. At his retrial in 2009, the prosecution abandoned its theory from Fields's first trial and argued that Fields and Carter – not Fields and Hawkins – had shot Smith and Hickman. In support, the prosecution presented Hawkins's sworn testimony implicating Fields, which the SAO and individual defendants knew to be false. A state court judge rejected

Hawkins's testimony as lacking in credibility and acquitted Fields of the Smith/Hickman murders. In December 2009, after having spent nearly eighteen years in custody and six years on bond, Fields received a certificate of innocence.

Fields asserts three federal claims under section 1983. In count one, he alleges that defendants violated his due process rights to a fair trial by engaging in suggestive identification procedures, deliberately suppressing exculpatory evidence, coercing witnesses to produce false evidence, and suborning perjury. In count two, he alleges that the individual defendants failed to intervene to prevent the violation of his constitutional rights. In count three, he alleges that the individual defendants participated in a conspiracy to frame him for the Smith/Hickman murders. Fields also asserts claims under Illinois law for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, *respondeat superior*, and indemnification.

**Discussion**

Defendants have moved to dismiss Fields's third amended complaint pursuant to Rules 12(b)(6) and 12(b)(1).

**I.    City of Chicago defendants' motion to dismiss**

The City of Chicago defendants make four arguments in support of dismissal. First, they contend that Fields has failed to state a claim for violation of his due process rights pursuant to *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), and *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003). Second, they argue that dismissal of Fields's due process claim necessarily requires dismissal of his failure to intervene and conspiracy claims. Third, they seek dismissal of Fields's failure to intervene and

conspiracy claims on the basis of inadequate factual allegations. Finally, they seek dismissal of the claims against defendants Delaney, Robertson, Kobel, and Kolovitz on the basis of inadequate factual allegations.

The Court begins with defendants' argument that the Court should dismiss Fields's due process claim under the analysis in *Newsome* and *McCann*. In *Newsome*, the Seventh Circuit held that section 1983 does not provide a remedy for malicious prosecution as a constitutional tort or under a substantive due process theory. *Newsome*, 256 F.3d at 751-52. In *McCann*, the Seventh Circuit held that a plaintiff could not bring a section 1983 claim for violation of his substantive due process rights by "combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution." *McCann*, 337 F.3d at 786; *see also Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010).

The Seventh Circuit has unequivocally ruled, however, that section 1983 provides a remedy for government misconduct relating to a criminal trial that amounts to a *procedural* due process violation. *See Newsome*, 256 F.3d at 752 (allegations that defendant officers withheld material exculpatory evidence at trial state a procedural due process claim cognizable under section 1983); *Manning v. Miller*, 355 F.3d 1028, 1032-34 (7th Cir. 2004) (same); *Ienco v. City of Chicago*, 286 F.3d 994, 999 (7th Cir. 2002) (same); *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (plaintiff states a procedural due process claim if "unduly suggestive identification techniques are allowed to taint the trial"). Fields is not stripped of this remedy merely because he asserts allegations that might also conceivably be associated with false

arrest and malicious prosecution claims.  *See, e.g.*, *Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *12 (N.D. Ill. Feb. 2, 2006); *Patterson v. Burge*, 328 F. Supp. 2d 878, 890-91 (N.D. Ill. 2004).  To put it another way, Fields's due process claims do not transmogrify into non-cognizable malicious prosecution or time-barred false arrest claims simply because his allegations could also be used to support such claims.

Fields's allegations make it crystal clear that he is asserting a trial-related procedural due process claim of the type expressly permitted by *Newsome* and its progeny.  Fields alleges that the defendants deprived him of procedural due process "by withholding and/or destroying exculpatory evidence, engaging in subornation of perjury, coercing witnesses to produce false evidence" and by engaging in "unduly suggestive identification procedures."  Third Am. Compl. ¶ 86.  Fields alleges that as a result of this misconduct, false evidence was introduced against him at his criminal trial, and he lacked access to evidence that would have exculpated him.  Fields contends that these actions "directly resulted in [his] being denied the right to a fair trial, being sentenced to death without due process of law, and having his liberty taken away for almost 25 years."  *Id.* ¶ 87.  These allegations, together with the more detailed factual allegations in Fields's third amended complaint, are more than sufficient to state a viable procedural due process claim.

The cases defendants cite in support of dismissal are inapposite.  In *Fox v. Hayes* and *Brooks v. City of Chicago*,  564 F.3d 830 (7th Cir. 2009), the plaintiffs could not assert viable procedural due process claims because they never went to trial.  *See Fox*, 600 F.3d at 832; *Brooks*, 564 F.3d at 831.  Instead, they attempted to recast state

law malicious prosecution or untimely false arrest claims as federal substantive due process claims. *See Fox*, 600 F.3d at 841; *Brooks*, 564 F.3d at 833. The Seventh Circuit rejected these attempts as inconsistent with *McCann* and *Newsome*. *Fox*, 600 F.3d at 841; *Brooks*, 564 F.3d at 833. Nothing in *Fox* or *Brooks* requires dismissal of a claim where, as here, the plaintiff states a viable procedural due process claim. The Court therefore rejects defendants' argument.

The Court next considers defendants' contention that the Court should dismiss Fields's failure to intervene and conspiracy claims. The Court first rejects defendants argument that these claims are deficient because Fields's procedural due process claim is deficient. As the Court has just ruled, Fields has stated a viable procedural due process claim.

Defendants also argue that the failure to intervene and conspiracy claims fail to provide them sufficient notice of the specific allegations against them and fail to include an adequate factual basis. "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a).

The Supreme Court recently clarified the requirements of Rule 8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Erickson v. Pardus*, 551 U.S. 89 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Three requirements follow from these precedents:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual

allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In a section 1983 case, a plaintiff must also "adequately plead[] personal involvement." *Id.* at 582; *see also Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (recognizing that, "[f]or a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation"). In *Brooks*, the Seventh Circuit held that this requirement was satisfied when the plaintiff directed a retaliation claim at "all of the defendants" whom he had sued. *Brooks*, 578 F.3d at 582.

Fields's failure to intervene and conspiracy claims satisfy these requirements. As in *Brooks*, Fields adequately alleges personal involvement by directing his failure to intervene and conspiracy claims against all of the individual defendants. Moreover, the factual allegations in Fields's third amended complaint provide sufficient notice to the individual City of Chicago defendants of the claims asserted against them. *See, e.g.*, *Clark v. City of Chicago*, No. 10 C 1803, 2010 WL 4781467, at *3 (N.D. Ill. Nov. 17, 2010) (declining to dismiss a complaint on similar grounds because it is "not reasonable to expect Plaintiffs to be able to provide a detailed, blow-by-blow recitation of who did what and when" at the pleading stage).

The district court rulings in *Smith v. Village of Dolton*, No. 09 C 6351, 2010 WL 744313 (N.D. Ill. Feb. 25, 2010), and *Choyce v. Friar*, No. 08 C 202, 2008 WL 2567037 (N.D. Ill. June 24, 2008), do not compel a different result. In *Smith*, the court considered a failure to intervene claim asserted against "one or more of the defendant

officers," which included three named detectives, a named sergeant, the chief of police, and other unknown officers. *Smith*, 2010 WL 744313, at *2. The court ruled that the claim could go forward against the three named detectives alleged to be present during the events at issue and dismissed the claim against all other defendants. *Id.* Fields's claims, in contrast, are directed at all of the named individual defendants and thus controlled by the Seventh Circuit's decision in *Brooks*. In *Choyce*, the court dismissed a claim because, after conducting discovery, the plaintiff failed to identify the "unknown officers" listed in her complaint or to explain the role of the two named officers. *Choyce*, 2008 WL 2567037 at *3. In this case, no discovery has yet taken place.[2]

Finally, the Court rejects defendants' argument that the allegations regarding Delaney, Robertson, Kobel, and Kolovitz do not give them fair notice of the claims asserted against them. Fields specifically alleges in his third amended complaint that Delaney personally approved of the withholding of street files that exculpated Fields. Compl. ¶ 9d. Fields also alleges that Robertson, Kobel, and Kolovitz participated in the investigation of the Smith/Hickman murders, fabricated evidence linking Fields to the crime, and suppressed exculpatory evidence. *Id.* ¶ 9n-p. These allegations, coupled with other factual allegations in the complaint, satisfy the requirements of Rule 8.

---

[2] Though not necessary to the decision here, the Court also notes that even when the enhanced pleading requirements of Rule 9(b) apply, those requirements are "relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *See, e.g.*, *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). The Seventh Circuit has applied this role post-*Iqbal*. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). The same rule logically applies in a case like this one in which the less stringent pleading requirements of Rule 8 govern.

## II.     Wharrie, Kelley, and Cook County's motion to dismiss

Defendants Wharrie, Kelley, and Cook County move to dismiss Fields's claims on the grounds that:  (1) the Eleventh Amendment bars Fields's claims against Wharrie and Kelley; (2) absolute or qualified immunity bars Fields's federal claims against Wharrie and Kelley; (3) absolute immunity bars Fields's state law claims against Wharrie and Kelley; (4) sovereign immunity deprives this Court of subject matter jurisdiction over Fields's state law claims; (5) Fields fails to state a "failure to intervene" claim against Wharrie and Kelley; (6) Fields's procedural due process claim fails under *Newsome* and *McCann*; and (7) Fields fails to state a claim against Cook County.  The Court addresses each argument in turn.

The Court begins with defendants' argument that Eleventh Amendment immunity bars Fields's claims against Wharrie and Kelley.  Assistant state's attorneys in Illinois are considered to be officials of the state for purposes of Eleventh Amendment immunity.  *See McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994).  "The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities." *Garcia*, 24 F.3d at 969 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Eleventh Amendment immunity does not, however, bar section 1983 suits against state officials in their individual capacities.  *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).

Notwithstanding defendants' claims to the contrary, it is quite clear from Fields's

complaint that he has sued Wharrie and Kelley exclusively in their individual capacities. *See* Third Am. Compl. ¶ 9. Though the third amended complaint refers to the policies and practices of the SAO, these references do not convert the claims against Wharrie and Kelley into official-capacity claims.

Second, defendants argue that Wharrie and Kelley must be dismissed from the suit on the basis of absolute or qualified immunity. "[A] prosecutor is absolutely immune from § 1993 civil liability when he 'acts an advocate for the state but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings.'" *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (quoting *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003)). "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) ("*Buckley III*"). In addition, a prosecutor's suppression of exculpatory evidence acquired after his "role in the prosecution is finished" has "no connection to [his] role as an advocate for the State." *Houston v. Partee*, 978 F.2d 362, 366-67 (7th Cir. 1992).

A prosecutor not protected by absolute immunity may still be entitled to qualified immunity. "A prosecutor is entitled to qualified immunity if his or her actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hill*, 627 F.3d at 606. In *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994) ("*Buckley IV*"), the Seventh Circuit considered a plaintiff's allegations that prosecutors violated his due process rights by coercing two witnesses to implicate him. *Id.* at 794. The ruling came on remand from *Buckley III*, in which the Supreme Court

had held that the prosecutors were not entitled to absolute immunity because they were acting in an investigative capacity. *Buckley*, 509 U.S. at 271-76. The Seventh Circuit held that the prosecutors were nonetheless entitled to qualified immunity, reasoning as follows:

> [I]f the constitutional entitlement is the right to prevent use of the confession at trial . . . then absolute immunity . . . defeats Buckley's claim. *Obtaining* the confession is not covered by immunity but does not violate any of Buckley's rights; *using* the confession would violate Buckley's rights but would be covered by absolute immunity. . . . the only way Buckley can establish a violation of the Constitution is to plead himself out of court. Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs.

*Id.* at 795 (emphasis in original) (citations omitted); *see also Campos v. City of Chicago*, No. 08 C 2865, 2009 WL 1106975, at *3-6 (N.D. Ill. Apr. 20, 2009) (applying the rule in *Buckley IV* ); *Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *6 (N.D. Ill. June 25, 2009) (same).

Judge Fairchild dissented in *Buckley IV*, reasoning that the rule the majority established in that case inappropriately "brings about absolute immunity for wrongful investigative acts." *Buckley*, 20 F.3d at 801 (Fairchild, J., dissenting). Several circuits have likewise expressed disagreement with the ruling. *See, e.g.*, *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000); *Clanton v. Cooper*, 129 F.3d 1147 (10th Cir. 1997); *McGhee v. Pottawattamie County*, 547 F.3d 922 (8th Cir. 2008). Justice Thomas has also expressed the view that *Buckley IV* was decided incorrectly, in part because it "leaves victims of egregious prosecutorial misconduct without a remedy." *Michaels v. McGrath*, 531 U.S. 1118 (2001) (Thomas, J., dissenting from the denial of certiorari). Until the Seventh Circuit revisits the ruling or Supreme Court overrules it, however, this Court is

compelled to follow it.

Fields's allegations against Wharrie and Kelley are as follows: (a) Wharrie helped secure Sumner's false statements implicating Fields in the Hickman/Smith and White/Vaughn murders before probable cause existed to arrest him; (b) beginning in 1998, and prior to undertaking a prosecutorial role at Fields's retrial, Kelley used coercive tactics to induce witness Randy Langston to reaffirm the false testimony Langston gave at Fields's first trial; and (c) while Fields's appeal was pending and after Wharrie's role as a prosecutor had ended, Wharrie procured Hawkins's false testimony for use at Fields's retrial; and (d) Wharrie and Kelley concealed this information from Fields even though it tended to exculpate him.

The Court begins with Fields's allegations concerning Wharrie's role in obtaining false statements from Sumner before probable cause existed to arrest Fields. Assuming that Wharrie's conduct was not protected by absolute immunity, he is entitled to qualified immunity under the analysis in *Buckley IV*. As the Seventh Circuit ruled in that case, Wharrie's alleged coercion of false statements from Sumner did not violate Fields's constitutional rights – at least none that were clearly established at the time. Additionally, Wharrie's use of the statements and his concealment of exculpatory information at trial are covered by absolute immunity. In sum, Wharrie is entitled to immunity from Fields's federal claims relating to this allegation. *See Buckley*, 20 F.3d at 794.

Fields's allegations against Kelley warrant the same result. Fields alleges that, prior to undertaking a prosecutorial role at Fields's retrial, Kelley coerced false statements from witness Randy Langston. Assuming that this conduct did not merit the

protection of absolute immunity, Kelley is nonetheless entitled to qualified immunity under the analysis in *Buckley IV*.  He is also entitled to absolute immunity regarding his use of the statements at trial and his withholding of exculpatory information.  For these reasons, Kelley cannot be held liable for claims relating to this allegation.

Fields's claims against Wharrie connected with his alleged procurement of false testimony from Hawkins require a different analysis.  Fields alleges that Wharrie procured false statements from Hawkins after the conclusion of Fields's first trial and "after Wharrie's role as a prosecutor had ended."  Third Am. Compl. ¶ 9b.  Under *Buckley IV*, Wharrie's procurement of false statements from Hawkins did not violate Fields's clearly established constitutional rights, thus entitling Wharrie to qualified immunity for that aspect of Fields's claims.  But in contrast to Fields's allegations concerning the obtaining and use of false statements from Sumner, Wharrie is not entitled to absolute immunity for his alleged concealment of the coercion, because he was no longer acting as part of the team that re-prosecuted Fields.  The Seventh Circuit has held that a prosecutor does not act as an advocate in the judicial phase of the criminal process, and thus is not entitled to absolute prosecutorial immunity, when he acquires and suppresses evidence after a prosecution "ha[s] been passed on to others."  *See Houston*, 978 F.2d 362 at 366.  Accordingly, Wharrie is not entitled to absolute immunity for allegations relating to his conduct after his role as a prosecutor is alleged to have ended.

Qualified immunity likewise does not bar Fields's claim against Wharrie for allegedly concealing this evidence.  First, Fields's allegations establish the deprivation of a constitutional right clearly established at the time of Wharrie's alleged conduct.

17

*See Manning*, 355 F.3d at 1034 (recognizing that investigators who withhold exculpatory evidence violate a criminal defendant's clearly established constitutional due process rights) (citing *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985)); *see also Newsome*, 256 F.3d at 752-53. Second, Wharrie is not entitled to qualified immunity under the rule in *Buckley IV*, at least to the extent that this aspect of Fields's claim against Wharrie is based on his concealment of exculpatory evidence as distinguished from his gathering of false evidence.

Next, defendants argue that the Court should dismiss Fields's state law claims against Wharrie and Kelley based on absolute immunity. In response, Fields appears to agree that "Illinois law tracks the federal line of cases as to prosecutorial immunity" and rests on his analysis with respect to the federal claims. Pl.'s Mot. to Clarify Pl.'s Consolidated Resp. 1-2. Because the parties have not specifically addressed the applicability of *Buckley IV* to Fields's state law claims, the Court will require further briefing before it can decide the applicability of prosecutorial immunity under state law. Fields' supplemental brief on this issue is to be filed by April 18, 2011, and the defendants' supplemental brief is to be filed by May 2, 2011.

Fourth, defendants argue that sovereign immunity deprives this Court of subject matter jurisdiction over Fields's state law claims, which they argue may be brought only in the Illinois Court of Claims. "[S]tate rules of immunity are binding in federal court with respect to state causes of action." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (citation and internal quotation marks omitted). The Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, provides that the State of Illinois is immune from suit in any

court, except as provided in the Illinois Court of Claims Act, 705 ILCS 505/8, and other statutes not relevant here. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). The Court of Claims Act vests jurisdiction over state tort claims against the State in the Illinois Court of Claims. *Id.* If a state law claim is deemed to be against the State of Illinois, it cannot be brought in federal court pursuant to the Eleventh Amendment unless the State consents to the suit. *Id.*

Under Illinois law, a claim against individual officers in their personal capacities is considered a claim against the state if three requirements are satisfied: (1) there are no allegations that an agent or employee of the state acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state. *Id.* (citations omitted). An exception to sovereign immunity exists "when it is alleged that the State's agent acted in violation of . . . constitutional law or in excess of his authority" if the state law claims are "dependent on the alleged constitutional violation." *Id.* (citations omitted); *see also Brooks*, 578 F.3d at 580 (same).

In *Richman*, the Seventh Circuit held that a claim against individual sheriff's deputies constituted a claim against the state because: (1) the deputies acted within the scope of their authority when they restrained the plaintiff because their conduct in following a state court order was "of the general kind [they were] authorized to perform" and "motivated, at least in part, by a purpose to serve the principal"; (2) the duty

allegedly breached was owed to the plaintiff by virtue of the deputies' obligation to enforce the court order, not an independent duty to the public; and (3) the deputies acted within their normal duties. *Richman*, 270 F.3d at 442. The court also held that the exception to sovereign immunity did not apply because the plaintiff's state tort claim for malicious prosecution was not dependent on the alleged constitutional violation, but instead on a theory of wilful and wanton negligence. The Seventh Circuit recently reaffirmed *Richman* in *Brooks v. Ross*. *See Brooks*, 578 F.3d at 579-80.

When viewed in the light most favorable to Fields, as required on a motion to dismiss, his state law claims against Wharrie and Kelley do not amount to claims against the State of Illinois. Fields alleges that, during his investigation and prosecution, Wharrie and Kelley knowingly fabricated evidence and withheld exculpatory evidence. Prosecutors act beyond the scope of their authority through wrongful acts when participating in such conduct. Even if motivated by a purpose to serve their employer, such acts are not of the general kind prosecutors are authorized to perform. *See Senn Park Nursing Ctr. v. Miller*, 104 Ill. 2d 169, 470 N.E.2d 1029 (1984) (public aid officer acted in excess of his authority when changing a procedure without complying with statutory prerequisites). *Cf. Sneed v. Howell*, 306 Ill. App. 3d 1149, 1156, 716 N.E.2d 336, 341 (1999) (prosecutor acted within the scope of his authority when "removing a case to a neighboring county . . . to ensure a proper investigation and possible prosecution" because such an act is a "prudent course of action").

In support of a contrary position, defendants cite the Illinois Appellate Court's

decisions in *Price v. State of Illinois*, 354 Ill. App. 3d 90, 820 N.E.2d 104 (2004), and

*White v. City of Chicago*, 369 Ill. App. 3d 765, 861 N.E.2d 1083 (2006). Even if these

rulings arguably cast doubt on the analysis in *Richman* and *Brooks*, Seventh Circuit

rulings on state law are binding on district judges in this circuit until a state's highest

court rules otherwise. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029

(7th Cir. 2004). Though intervening rulings by state appellate courts may persuade the

Seventh Circuit to overrule its precedent, they do not "liberate district judges from the

force of [the Seventh Circuit's] decisions." *Id.* Accordingly, the Seventh Circuit's

interpretation of the law on Illinois sovereign immunity in *Richman* and *Brooks* binds this

Court. The Court concludes that sovereign immunity does not deprive this Court of

subject matter jurisdiction over Fields's state law claims.

Fifth, defendants argue that the Court should dismiss Fields's failure to intervene

claim against Wharrie and Kelley. The Seventh Circuit has recognized that "'police

officers who have a realistic opportunity to step forward and prevent a fellow officer

from violating a plaintiff's right through the use of excessive force but fail to do so' may

be held liable" on a "failure to intervene" theory. *Harper v. Albert*, 400 F.3d 1052, 1064

(7th Cir. 2005) (citations omitted). Defendants argue that the rule in *Harper* does not

extend to a prosecutor's failure to intervene in the conduct of police officers or other

prosecutors, citing *Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009), and *Gordon

v. Devine*, No. 08 C 377, 2008 WL 4594354 (N.D. Ill. Oct. 14, 2008). Fields fails to

respond to this argument and has therefore conceded it. *See Keri v. Bd. of Trustees of

Purdue Univ.*, 458 F.3d 620, 643 n.7 (7th Cir. 2006). The Court accordingly dismisses

Fields's failure to intervene claims against Wharrie and Kelley.

Sixth, defendants argue that the Court should dismiss Fields's due process claim against them on the ground that it is legally deficient. For the reasons the Court described earlier with regard to the Chicago police officer defendants, the Court rejects this argument.

Finally, defendants contend that the Court should dismiss Cook County from the suit because Fields's *respondeat superior* claims in counts 7 and 8 against Cook County fail to state a claim. In his response to defendants' motion, Fields "abandons his *respondeat superior* claim against Cook County." Pl.'s Consolidated Resp. To Defs.' Mot. to Dismiss 25. Defendants concede, however, that Cook County is a necessary party to the suit as an indemnitor. *See* Reply of Defs.' Wharrie, Kelley, and Cook County in Supp. of Mot. to Dismiss 23 ("[T]he ASA Defendants acknowledge that the County may be necessary party . . . in that it may have a duty to indemnify the ASA Defendants."). The Court therefore declines to dismiss Cook County from the suit.

## III.    Daley's motion to dismiss

The Court next considers defendant Daley's motion to dismiss. Daley asserts four arguments in support of his motion: (1) Eleventh Amendment immunity bars Fields's official-capacity claims against him; (2) Daley cannot be held liable on a *respondeat superior* theory for the constitutional misconduct of his subordinates; (3) absolute prosecutorial immunity bars Fields's claims against Daley based on the alleged suppression of exculpatory evidence; and (4) Fields fails to state a "failure to intervene" claim against Daley.

Daley first argues that Eleventh Amendment immunity bars all of Fields's claims against him.  The Court disagrees.  As the Court explained earlier, Eleventh Amendment immunity does not bar section 1983 suits against state officials in their individual capacities.  Fields sues Daley in his individual capacity.  *See* Third Am. Compl. ¶ 9.  Accordingly, the Court declines to dismiss the claims against Daley on Eleventh Amendment grounds.

Second, Daley contends that Fields impermissibly relies on a *respondeat superior* theory of liability in his allegations against Daley.  "Under § 1983, a plaintiff may not rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates."  *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) (citation omitted).  A supervisory official may be held liable, however, if he "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct."  *Id.* at 614-15 (citation omitted).

Contrary to Daley's assertions, Fields's allegations are sufficient to allege his personal involvement in the constitutional violations at issue.  In his third amended complaint, Fields alleges that "Daley was personally involved in the targeting of El Rukns for prosecution and personally approved of the use of the powers of his office to get El Rukns off the street with trumped up charges grounded upon fabricated evidence on the suppression of exculpatory evidence"; Daley was "personally involved in directing or consenting to the fabrication of evidence against Fields as well as the suppression of exculpatory evidence"; and Daley "personally reviewed, consented, and

condoned the misconduct alleged in this complaint in connection with his decision to seek and pursue the death penalty against Fields." Third Am. Compl. ¶ 9a.

Third, Daley argues that absolute prosecutorial immunity protects him from all claims involving the suppression of suppressing exculpatory evidence. Fields counters that he alleges that Daley "was never part of the prosecution team in this case." *Id.*

Daley cites *Van de Kamp v. Goldstein*, 129 S. Ct. 855 (2009), in support of dismissal. The Supreme Court held in *Van de Kamp* that a supervisory prosecutor is entitled to absolute immunity for claims arising from "administrative obligations" such as failing to train subordinates to disclose impeachment material to defendants at trial. *Id.* at 859, 862. The Court determined that absolute immunity protects prosecutors supervising subordinates on an individual case against claims that the supervisors failed to discover and disclose exculpatory material in the case. It reasoned that "[t]he prosecutors' behavior, taken individually or separately, would involve preparation for trial, and would be intimately associated with the judicial phase of the criminal process." *Id.* at 862 (citations, internal punctuation marks, and alteration omitted).

Fields does not rely on supervisory liability but instead claims that Daley directly participated in the unconstitutional conduct at issue. That does not save his claim against Daley. The allegation that a supervisory prosecutor like Daley was directly involved in concealing exculpatory evidence is not materially different for purposes of absolute immunity from the allegation in *Van de Kamp* that a supervisory prosecutor should have discovered and disclosed exculpatory evidence. *See id.* ("[S]upervisory prosecutors are immune in a suit directly attacking their actions related to an individual

24

trial . . . .").

Finally, Daley contends that Fields has not stated a viable "failure to intervene" claim against him.  In support, Daley cites precedents rejecting the proposition that a state's attorney may be held liable on a "failure to intervene" theory.  Fields does not address this argument and has therefore conceded it.  *See Keri*, 458 F.3d at 643 n.7. The Court accordingly dismisses Fields's failure to intervene claim against Daley.

## Conclusion

For the reasons stated above, the Court denies the City of Chicago defendants' motion to dismiss [docket no. 99], grants Daley's motion to dismiss [docket no. 98], and grants in part and denies in part the Cook County defendants' motion to dismiss [docket no. 86].  Specifically, the Court dismisses Fields's federal claims against Wharrie and Kelley except for his *Brady* claim against Wharrie concerning Hawkins' allegedly false testimony, requests supplemental briefing on the whether Fields's state law claims are barred by immunity, and rejects all remaining arguments in the motion.  The case is set for a status hearing on April 19, 2011 at 9:30 a.m. for the purpose of setting a discovery schedule.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  April 4, 2011

25