```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
              Plaintiff,        )   Docket No. 10 C 1168
                                )
         vs.                    )
                                )
CITY OF CHICAGO, et al.,        )   Chicago, Illinois
                                )   August 15, 2012
              Defendants.       )   10:00 a.m.


                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:      LAW OFFICES OF H. CANDACE GORMAN
                            BY:  MS. H. CANDACE GORMAN
                        220 South Halsted Street
                        Suite 200
                        Chicago, Illinois  60661


For the Defendant:      DYKEMA GOSSETT PLLC
                            BY:  MR. DANIEL M. NOLAND
                        10 South Wacker Drive, Suite 2300
                        Chicago, Illinois  60606


                        COOK COUNTY STATE'S ATTORNEY
                            BY:  MR. STEPHEN L. GARCIA
                        500 Richard J. Daley Center
                        Chicago, Illinois  60602




           LAURA M. BRENNAN - Official Court Reporter
             219 South Dearborn Street - Room 2102
                    Chicago, Illinois  60604
                         (312) 435-5785
```

1    (The following proceedings were had in open court:)
2           THE CLERK:  10 C 1168, Fields v. City.
3           MS. GORMAN:  Good morning, your Honor; Candace Gorman
4    for the plaintiff.
5           MR. NOLAND:  Good morning, your Honor; Dan Noland for
6    the City defendants.
7           MR. GARCIA:  And Stephen Garcia for defendants
8    Wharrie and Kelley.
9           THE COURT:  Okay.  So let me just make sure I've got
10   a handle on what's kind of on the agenda here.  So I've got
11   the -- at least as of this moment in time, I've got the
12   plaintiff's motion for rule to show cause and then the motion
13   to renew the motion for rule to show cause.
14          I've got the plaintiff's motion to file under seal.
15   I've got defendants' motion to compel.  I have the status
16   report that Ms. Gorman filed.
17          I know I've got the motion dealing -- or I've got the
18   motion to reconsider, which I think I extended the briefing
19   schedule a little bit.
20          MR. GARCIA:  I did.  And I need a little more time.
21   So I have a motion to file instanter up today.
22          THE COURT:  Okay.  Yes, that has been granted.  You
23   don't need to worry about that.
24          And then the other thing is the issue of supplemental
25   jurisdiction which I had sort of put on pause until after I

1  deal with the motion to reconsider.
2        MR. GARCIA: Correct.
3        THE COURT: Does that sound like a complete list of
4  everything?
5        MR. NOLAND: I think the plaintiff has that motion to
6  continue the discovery cutoff date.
7        THE COURT: Oh, there's that, yes, right. That's
8  exactly correct, okay.
9        All right. And I know I read the status report and
10 maybe even -- was there a supplement to the status report or
11 something like that? I don't remember.
12       MS. GORMAN: No.
13       THE COURT: There was some issue about where's the
14 filing cabinet or something like that. I don't remember what
15 document that was in.
16       Anyway, give me an update on the plaintiff's -- on
17 the underlying subject matter of the plaintiff's motion for
18 rule to show cause.
19       MR. NOLAND: Judge, the --
20       THE COURT: This is the filing cabinet thing.
21       MR. NOLAND: This is the filing cabinet.
22       We have had more conversations and communications and
23 exchanges of drafts, stipulations than either of us would
24 preferred to have had.
25       In my view, we're very, very close, and actually we

1  worked out everything except there's a sentence I wanted to
2  add that Ms. Gorman thinks is unnecessary to the stipulation.
3            THE COURT:  Okay.
4            MR. NOLAND:  And she think it's inappropriate.  I do
5  have a copy of it.  Perhaps the Court could talk it through
6  with us and reach a resolution.
7            THE COURT:  I would be happy to do it.
8            MR. NOLAND:  If that's okay with Ms. Gorman.
9            MS. GORMAN:  I have no objection.
10           MR. NOLAND:  The copy I'm showing you, the sentence
11 in dispute is bolded in paragraph 3.
12           THE COURT:  Okay.
13           MS. GORMAN:  That's assuming you took out the other
14 one.
15           MR. NOLAND:  Actually, no.
16           MS. GORMAN:  So there's two sentences in dispute
17 then.
18           THE COURT:  All right.  Give me just a second to read
19 this.
20      (Brief interruption.)
21           THE COURT:  You said there was a second sentence
22 other than the one that's bolded.  What is the other sentence?
23           MS. GORMAN:  The second sentence is in paragraph 2
24 which discusses the Bates stamps of 943 to 971.
25           THE COURT:  934 to 971?

| | |
|---|---|
| 1 | MS. GORMAN: Correct. |
| 2 | THE COURT: What's the issue on that sentence? |
| 3 | MS. GORMAN: Well, your Honor, the whole purpose for |
| 4 | the stipulation was to address the missing street file, and |
| 5 | defendant has -- |
| 6 | THE COURT: Is that 934 to 971? |
| 7 | MS. GORMAN: No. |
| 8 | THE COURT: No, okay. |
| 9 | MS. GORMAN: That's addressed in paragraph 3, which |
| 10 | is 1028 to 1117. |
| 11 | Defendant has tried to put in other documents in this |
| 12 | stipulation that I don't think is appropriate. I want to keep |
| 13 | it limited to the new street file, which is what we did the |
| 14 | discovery on, which is what we did the depositions on, which |
| 15 | is what led to my rule to show cause and my renewed rule to |
| 16 | show cause. |
| 17 | I don't want to confuse the issue, which is, where |
| 18 | has the street file gone and the fact that the City doesn't |
| 19 | know where it's been for 28 years with other documents that |
| 20 | have been given in discovery. |
| 21 | THE COURT: Okay. And what's the issue about the |
| 22 | sentence at the end of paragraph 3 that is in bold type in the |
| 23 | document that was handed to me? |
| 24 | MS. GORMAN: Same thing, your Honor. |
| 25 | These are documents that were given to us in |

1 April eight months after the new street file.

2     THE COURT: I follow what you're saying.

3     MS. GORMAN: Thank you.

4     THE COURT: So, Mr. Noland, why are those two -- why
5 do you have those two things in there?

6     MR. NOLAND: Your Honor, they're in there, from our
7 view, for purposes of accuracy and completeness, and we don't
8 feel the stipulation is either of those if these are not
9 included.

10     These three, I guess, separate groups of documents
11 really comprise the investigative materials that have been
12 located, which is the premise of this stipulation. And so
13 what happened is that the first group, the sentence in
14 paragraph 2 as to 934 to 971, that's the permanent retention
15 file. So that would be the case reports and the supplementary
16 reports filed by GPRs and things of that nature.

17     THE COURT: Right.

18     MR. NOLAND: So that's what was located.

19     THE COURT: As distinguished from the street file, or
20 what is commonly referred to as the street file, the area
21 file, the detective division file.

22     MR. NOLAND: And --

23     THE COURT: Why is the file called "Double-Smith and
24 Company"? Double is double homicide, I assume?

25     MS. GORMAN: Yes.

1  THE COURT: What is the Smith and Company?
2  MS. GORMAN: Smith was one of the murders.
3  The police have the theory that Smith was the target
4  and this other person was --
5  THE COURT: It was just a matter of curiosity.
6  MR. NOLAND: That's what is written on the outside.
7  THE COURT: I think I get it. Let me ask this
8  question.
9  So, Ms. Gorman, in terms of --
10 I understand why you don't want it in the
11 stipulation. You don't want to clutter it up with what you
12 consider to be extraneous stuff.
13 Do you disagree -- do you have some contention or
14 some dispute about the accuracy of those two sentences?
15 MS. GORMAN: Well, your Honor, when we were talking
16 yesterday, I was in agreement to put in the retention file. I
17 didn't have a problem with that, but I didn't do any discovery
18 yet on this stuff that came in April. I don't know where --
19 THE COURT: That's the 7559 to 7652?
20 MS. GORMAN: Yes.
21 THE COURT: The sentence in paragraph 3.
22 MS. GORMAN: Yes. And I'm really adamant that I'm
23 not going to let that get pushed in here without any discovery
24 as though --
25 THE COURT: So your answer on the first one, the 934

1   to 971, is you don't really contest the accuracy of that.
2         On the second one regarding documents 7559 to 7652,
3   you're saying you don't know enough to know yet.
4         MS. GORMAN: Yes and, you know --
5         THE COURT: All right. Stop for a second.
6         MS. GORMAN: -- later.
7         THE COURT: Stop.
8         MS. GORMAN: Okay.
9         THE COURT: So let me make this suggestion to both of
10   you.
11         First of all, I mean, in terms of whether something
12   clutters something else up or not, I mean, I think that that's
13   a problem that -- that can can get kicked down the road. The
14   reason I say that is this. If you have things that you don't
15   dispute are accurate, there is no harm in putting it in the
16   stipulation. And if we come to a point where something like
17   this has to be read or presented at a trial, it would
18   certainly be open to you to say, this sentence really isn't
19   relevant, it shouldn't be read. And I would absolutely
20   consider that.
21         I don't know whether it's relevant or not. There
22   might be some, you know, relevance in terms of showing context
23   or whatever. But I wouldn't hang this up over something like
24   that.
25         On the second part of it, if Ms. Gorman doesn't have

1 enough information to know, to be comfortable with stipulating
2 to that second sentence, I mean, I guess what I would do, if I
3 was in the defendants' shoes, is either get the information in
4 her hands so that she gets comfortable, or pull it, because, I
5 mean, when somebody is stipulating to something, they're
6 basically taking it out of the case as a factual issue.  And I
7 don't think most lawyers would agree to stipulate to a fact
8 that they're not sure whether it's true or not unless it's
9 something that they don't care about, and this sounds like
10 something that people do care about.  So that would be my
11 suggestion.  Okay.
12         MS. GORMAN:  Thank you.
13         THE COURT:  I think the thing to do is --
14         Augie, can you give this back to Mr. Noland?
15         Let me just continue to table the motion for rule to
16 show cause for a bit until you have hopefully gotten it worked
17 out.
18         MS. GORMAN:  Okay, thank you.
19         THE COURT:  The motion to file under seal, I don't
20 even remember what it involves at this point.
21         MS. GORMAN:  I'm withdrawing that, your Honor.
22         THE COURT:  So the motion to file under seal is
23 withdrawn.  That's document number 239, Augie.
24         On the motion -- we'll come back to the defense
25 motion to compel in a second.

1         As far as the proposal for extending the --
2         We're talking about the fact discovery cutoff date,
3    right?
4         MS. GORMAN:  Correct.
5         THE COURT:  -- to November the 30th, I think is what
6    you said.
7         MS. GORMAN:  Yes, your Honor.
8         THE COURT:  Do you have a problem with that?
9         MR. NOLAND:  No.
10        THE COURT:  Fine.  The fact discovery cutoff date is
11   extended to November the 30th from the current date of August
12   the 31st.  So the agreed motion to extend is granted.  Okay.
13        So on the defendants' motion to compel, and I've got
14   the response here as well, and I've read both of them, but it
15   would help for you to talk me through it a little bit.
16        It's your motion, Mr. Noland.  You go first.
17        MR. NOLAND:  This arises from the plaintiff's --
18        THE COURT:  What is it exactly you want to know, who
19   told her?
20        MR. NOLAND:  Who told her that Brannigan and Kolovitz
21   were intimidating witnesses and what they said to her.
22        THE COURT:  Okay.  And just to be clear, the way I
23   remember this, and I may remember it wrong because I haven't
24   gone back and looked at the original motion -- what I remember
25   is I was told that two of the defendants were contacting

1  witnesses and there was a risk of intimidation because of past
2  history. I don't recall, though it may have been in there,
3  somebody saying they intimidated witnesses when they came out.
4  I'm not saying it's not in there; it's how I remember it.
5      MS. GORMAN: That's not how it was either.
6      THE COURT: Whatever, though. There was an
7  allegation that --
8      At a minimum there was an allegation that Brannigan
9  and Kolovitz, who were both defendants, had contacted
10 witnesses and that there was at least a potential for
11 intimidation. Okay, take it from there.
12     MR. NOLAND: That's really it, and so it's our
13 position, and we do believe that the -- I think the allegation
14 is a little more serious, that they intimidated people. But
15 it's simply our position that by making that allegation in a
16 pleading filed in court that the --
17     THE COURT: If there was a privilege, it has been
18 waived.
19     MR. NOLAND: If there was a privilege, it has been
20 waived. And it would be not only, you know, Ms. Gorman's
21 contact with anybody, you know, her investigator or her --
22 whatever formed the basis for the accusation.
23     THE COURT: Okay. All right, Ms. Gorman, talk to me.
24     MS. GORMAN: Your Honor, this was all in the course
25 of my investigation because I had a discussion with Mr.

1  Noland. I asked him if he was willing to talk with me about
2  what he's been doing in his investigation, and he, of course,
3  said, no, that was privileged and work product. The fact
4  that --

5  He said I waived it because I brought it to the
6  Court's attention, and I think it was necessary to bring this
7  to the Court's attention to try to get the conduct to stop. I
8  never alleged that anybody was intimidated. I alleged that he
9  had tried to contact two individuals, and that could lead to
10 intimidation. I think what I've done in my investigation
11 should be kept confidential.

12 THE COURT: In terms of the underlying information,
13 underlying the contacts or alleged contacts between the two
14 individual defendants and witnesses, or a witness or
15 witnesses, have you gotten by way of these answers to
16 interrogatories the information that you were looking for on
17 that?

18 Basically what it says is that -- what it says is
19 that one of the defendants, it looks like, went to see Earl
20 Hawkins in prison with an assistant state's attorney, and he
21 said in summary the following. And then the same defendant
22 with two --

23 I assume these are private investigators or something
24 like that.

25 MS. GORMAN: The federal agents or retired federal

1 agents.

2 THE COURT: Okay, but they're private investigators
3 currently.

4 MR. NOLAND: They're my investigators.

5 THE COURT: They're your investigators, okay.

6 -- to see somebody else, and that person said the
7 following.

8 I mean, that's the information that you were looking
9 for. And then there was an objection to asking about contacts
10 that others had made on behalf of the defendant because that
11 would include things like lawyer investigation and things like
12 that, and you're not looking for that information, at least at
13 this point.

14 MS. GORMAN: At this point I'm not, your Honor, and I
15 did tell Mr. Noland that what I was looking for was not his
16 investigation, but if Mr. Brannigan or Mr. Kolovitz asked
17 someone else not through the --

18 THE COURT: If Brannigan asked somebody else as
19 opposed to Brannigan's lawyer asking somebody else, what about
20 that?

21 So let's just say what happens is that, you know,
22 defendant X says, yes, probably not a good idea for me to be
23 going out to talk to somebody, so he gets his buddy, another
24 retired former police officer, to go talk to the person.
25 Would that be work product? It wouldn't be any more work

1 product than what you have disclosed, I assume.

2 MR. NOLAND: Right.

3 Initially, I think you may recall a month or so ago,
4 we did have a discussion about this. The Court made its
5 position pretty clear on that.

6 THE COURT: Well, my position is that if a party goes
7 out and talks to a witness, that ain't work product. I mean,
8 it's not work product; it's cross examination material
9 legitimately.

10 And I would think the same would be true if party X
11 asks somebody else, not his lawyer, and the lawyer doesn't do
12 the asking -- the scenario I gave. If party X says, not a
13 good idea for me to go out to talk to somebody, I'm going to
14 get my buddy to go out and talk to him, that person does that,
15 I mean, I don't think that would be attorney work product. I
16 think that if a lawyer says, I want to have somebody go
17 interview a witness, I think that is at least presumptively
18 attorney work product. We have a question of waiver if I flip
19 back over to the other issue, but I think that's at least
20 presumptively attorney work product.

21 So what I'm getting here is that you have got an
22 answer to discovery from Brannigan that talked about his
23 contacts, claimed a privilege on other persons' contacts on
24 his behalf, and then on Kolovitz, the answer was there weren't
25 any, right, basically?

1          MR. NOLAND:  Right.

2          MS. GORMAN:  Although I think we might have the same
3   issue with Mr. Kolovitz.

4          THE COURT:  I understand, the same issue about him
5   asking another person, not his lawyer, to go interview so and
6   so.

7          MS. GORMAN:  Correct.

8          THE COURT:  All right.  So in terms of your contact
9   or contacts or let's just say the attorney or attorneys for
10  the plaintiff's contacts with the persons that led to the
11  original motion being filed to begin with, are those
12  memorialized somewhere?  That's just a yes or no question.  Is
13  there a memo, a note?

14         MS. GORMAN:  No.

15         THE COURT:  Okay.  It's in somebody's head.

16         MS. GORMAN:  Correct.

17         THE COURT:  Would it be your head?

18         MS. GORMAN:  It would be.

19         THE COURT:  So to think out loud here, which is
20  usually a bad thing to do, but I'm going to do it anyway, so
21  Ms. Gorman's point is that, well, wait a second, if I find out
22  something as a lawyer doing an investigation which suggests
23  some form of impropriety, and I'm not adjudicating whether
24  it's an impropriety, I need to do something to bring it to the
25  attention of the Court.  I don't think that waives my work

1 product.

2 I mean, I can see the argument in favor of that. I
3 think I can also see the argument on the other side. I don't
4 know that I have necessarily gotten any law that like zeroed
5 in on that specific issue. I think I can make a relatively
6 educated guess as to who the information came from. But I'm
7 assuming, you know, people on this side of the "v", being no
8 dummies, can probably make the same educated guesses.

9 But I think the thing to do is this. What I would
10 like is to get, at least just to sort of help me along the way
11 here, an in camera disclosure. So I'm going to need you to
12 put some sort of a declaration together, Ms. Gorman, that says
13 this is what I found out, this is how I found it out.

14 MS. GORMAN: Okay.

15 THE COURT: And submit that in camera. Don't file
16 it. You can do it in the form of a letter, whatever. Send it
17 over to chambers, let's say, sometime within the next several
18 days. I will have you come back a few days after that, and I
19 will ponder this waiver issue.

20 And if anybody has got any other law that you want to
21 give me that is directly zeroed in on that, just make sure you
22 get me something before the next status that I'm going to give
23 you.

24 MR. NOLAND: Okay. Your Honor, there is one point I
25 can make as to that.

1         THE COURT: Yes.
2         MR. NOLAND: As you can see in Brannigan's answers to
3 interrogatories, the one person, Edgar Cooksey, is referenced.
4 The plaintiff has noticed or subpoenaed Edgar Cooksey for
5 deposition on Tuesday.
6         THE COURT: Next Tuesday?
7         MR. NOLAND: For this coming Tuesday, and so I would
8 like --
9         THE COURT: I'm assuming that one of the questions
10 that's on your list is: Did you ever say anything to Ms.
11 Gorman about being contacted by Brannigan?
12         MR. NOLAND: The plaintiff has --
13         THE COURT: Cooksey is my educated guess, by the way.
14         MR. NOLAND: Ms. Gorman has taken the deposition, and
15 I would simply like that information in advance of the
16 deposition.
17         THE COURT: Okay.
18         MR. NOLAND: If it is proceeding. I don't know if he
19 has been served.
20         THE COURT: Is it going to go ahead?
21         MS. GORMAN: As far as I know. He's been served.
22         THE COURT: He's been served, okay.
23         All right. So that tells me a little bit about
24 timing. So get me what you're going to get me on Friday, and
25 then come in on Monday, okay. So we'll just call it in camera

1  submission by plaintiff's counsel is to be made by the 17th of
2  August, and the defendants' motion to compel is entered and
3  continued to the 20th of August at 9:30.
4      MS. GORMAN:  Is that Monday?
5      THE COURT:  That's Monday.  Is that okay?  Do you
6  have another dep then?
7      MS. GORMAN:  No.  I'm actually coming in from out of
8  town Monday morning.
9      THE COURT:  Do you want to do it -- I could do it at
10 1:30 in the afternoon.
11     MS. GORMAN:  That would be fine.
12     THE COURT:  Let me just make sure that's okay.  I
13 think that's okay.  Are you going to be here anyway?  Are you
14 involved in the Dean trial?
15     Oh, that's right.  It's an issue.
16     MR. NOLAND:  I hope not.
17     THE COURT:  No, no right.  When you hesitated, that
18 reminded me.  Let's say 1:30 on Monday.
19     MS. GORMAN:  Thank you.
20     THE COURT:  Okay.  All right, see you then.
21     MR. NOLAND:  Thank you.
22     THE COURT:  Was there one other thing?
23     MR. GARCIA:  As far as the motion to reconsider, I
24 believe Mr. Goodman, who is doing the briefing for plaintiff,
25 would like until August 31st for the reply.

1   THE COURT:  On the motion to reconsider, the date for
2   the reply brief is extended to the 31st of August.  Thanks.
3       MR. GARCIA:  Thank you.
4       MS. GORMAN:  Thanks.
5       THE COURT:  Take care.
6
7
8     (Which were all the proceedings had in the above-entitled
9   cause on the day and date aforesaid.)
10          C E R T I F I C A T E
11
12      I hereby certify that the foregoing is a true and
13   correct transcript of the above-entitled matter.
14
15
16  /s/ Laura M. Brennan                    August 29, 2012
17
18  _____       _____
    Laura M. Brennan
19  Official Court Reporter                    Date
    Northern District of Illinois
20
21
22
23
24
25