**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATHSON FIELDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 1168** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Nathson Fields has moved for an order to show cause why defendant

City of Chicago should not be held in contempt or otherwise sanctioned for its failure to

provide proper answers to certain interrogatories that Fields served and for other

actions relating to the subject of those interrogatories.

Fields alleges in this case that the defendants wrongfully caused him to be

prosecuted for murder and in doing so violated his constitutional rights. During the

course of discovery, specifically in September 2011, the City produced about ninety

pages of documents concerning the investigation of the underlying crimes. Fields says

these documents were never produced during his criminal prosecution.

Fields served two interrogatories that sought further information regarding these

documents.[1] These interrogatories (numbers 4 and 5) asked for the whereabouts of the

---

[1] The interrogatories also sought similar information regarding other investigative
documents. The present dispute, however, focuses on the ninety pages or so that were
produced in September 2011.

documents from 1984, when the murders occurred, to September 2011, and who had custody of the documents. In response, the City objected to the interrogatories on various grounds, provided a laundry list of persons who handled documents relating to the murders, and identified the current location of the originals. Fields moved to compel a more complete response, and in April 2012, the Court ordered the City to answer the interrogatories fully. *See* Dkt. No. 214 (order of Apr. 10, 2012).

In the City's amended responses, it again objected to the interrogatories; again identified the current location of the originals; and stated that it was "unable to determine the chronological chain of custody at this time . . . ." Around the same time, the City also responded to two follow-up interrogatories that Fields had served. One of these (interrogatory 7) asked why the documents produced in September 2011 had not been produced to Fields during his criminal prosecution. The City objected that the interrogatory "assume[d] facts not in evidence" and called for speculation but also responded that it lacked sufficient information to state whether the documents had been provided to Fields before 2011.

Each of the City's answers to the pertinent interrogatories was verified for the City by Sergeant Robert Flores of the police department's office of legal affairs. Flores' verification stated that certain of the matters in the interrogatories were not within his personal knowledge; there was no employee of the City who had personal knowledge of everything required to provide answers; and the answers were based on information "assembled by authorized employees and counsel of the City of Chicago."

Fields then took Flores' deposition to learn the information on which he had relied in answering the pertinent interrogatories. Flores testified that he had not performed

any investigation to establish the chain of custody of the files in question but instead had relied entirely on conversations he had with Daniel Noland, an attorney for the City, and a City paralegal, Mary Beth Majka. Noland, who appeared at the deposition, directed Flores not to answer questions about the information he and Majka had provided to Flores, citing the attorney-client and work product privileges.

Fields then moved for an order to show cause and for sanctions. In the motion, Fields' counsel stated that Noland had advised her that "he had himself taken on the personal responsibility of trying to track the whereabouts of the missing street file over the past 28 years." In the motion, Fields sought leave to take the depositions of Noland and Majka regarding the chain of custody of the documents and how they had been located, as well as an order barring them from asserting the attorney-client or work product privileges. Fields also sought further sanctions, including payment of his attorney's fees and costs for the Flores deposition.

At the hearing on Fields' motion, the Court suggested that counsel attempt to work out a stipulation regarding the chain of custody of the pertinent documents and deferred ruling on the motion pending such efforts. Following discussions between the two sides, Fields' attorney sent the City's attorney a proposed chain of custody stipulation. The stipulation went through multiple drafts. The City proposed additions, not directly related to the documents produced in September 2011, that made it unacceptable to Fields. Fields then renewed his motion to show cause.

There is no question that the information Fields sought via the interrogatories and seeks via the proposed depositions is relevant. Specifically, Fields has shown (sufficiently for present purposes) that the documents whose chain of custody he is

seeking to discover were relevant and perhaps exculpatory in connection with the

underlying criminal prosecution, and that they were not produced in connection with the

criminal case. This makes the documents likewise relevant in the present civil case.

Fields has also made a sufficient showing that the whereabouts of this information and

who had custody of it is relevant – indeed, highly relevant, given Fields' allegation that

his constitutional rights were violated in connection with the criminal prosecution due, in

part, to the nondisclosure of this and other information.

The City contends that the information Fields seeks is privileged. The burden of

establishing the applicability of a privilege lies with the party claiming the privilege. *See*

*Shaffer v. Amer. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011); *Smithkline Beecham*

*Corp. v. Apotex Corp.,* 193 F.R.D. 530, 534, 539 (N.D. Ill. 2000). "The mere assertion

of a privilege is not enough; instead, a party that seeks to invoke the attorney-client

privilege has the burden of establishing all of its essential elements." *United States v.*

*BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003).

The City claimed in its written objections to the interrogatories that they sought

information protected by the attorney-client privilege. The record reflects that this

objection was baseless. In responding to Fields' motion, the City does not argue, and it

certainly has made no effort to show, that the information Fields seeks is protected by

that particular privilege. The Court therefore strikes that objection and will impose an

appropriate sanction for the City's interposition of a baseless objection. *See* Fed. R.

Civ. P. 26(b)(5)(A) (requiring a party claiming privilege in response to a discovery

request to set forth the basis for its claim); 26(g)(3) (authorizing imposition of sanctions

for unjustified discovery response); 37(a)(4) (evasive discovery response is treated as a

4

failure to disclose or respond); 37(a)(5) (court granting motion compelling discovery may impose payment of expenses unless nondisclosure or response was substantially justified).

The City contends that the information Fields seeks is protected by the work product doctrine because its attorney Noland gathered the information, presumably together with paralegal Majka.  The Court doubts whether a party can shield relevant evidence (in this case, where and by whom undisclosed information significant to the underlying criminal case was kept) by having its attorney collect that evidence.  But assuming for present purposes that Noland's efforts and the information he gathered are covered by the work product doctrine, that privilege is not absolute.  Federal Rule of Civil Procedure 26(b)(3) provides that work product is discoverable if it is relevant and the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).

Fields has made the necessary showing; the question is not close.  He attempted to obtain the information by interrogatory, and the City responded by objecting.  Even after the Court ordered the City to answer, it repeated its objections, including the baseless attorney-client privilege objection and an objection that providing the information would be unduly burdensome.  Fields then took the deposition of Sergeant Flores, whom the City presented for deposition on these particular points knowing full well that it would interpose a privilege objection when Fields' counsel predictably asked for the sources of the information at issue.  That made Flores useless as a source of information on these points.  Short of deposing everyone in the lengthy laundry list the

City provided identifying the persons who had custody of investigative materials at some point in time, there is no other way for Fields to obtain the information he seeks and legitimately needs. Requiring Fields to take that course would be the very definition of "undue hardship" (indeed, though not necessary to the Court's determination of the point, the City effectively admitted as much in its burdensomeness objections to the interrogatories). Finally, though Rule 26(b)(3)(B) requires a court that orders production of work product to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," nothing of the kind is at issue here – and the City does not argue otherwise.

Fields' proposed course is to take the depositions of Noland and Majka. The deposition by one party of the other side's attorney in the litigation (or, by extension, the attorney's paralegal) is disfavored and should be permitted only if there is no other reasonable means to obtain relevant and significant information that the attorney possesses. *See, e.g., SEC v. Buntrock*, 217 F.R.D. 441, 445 (N.D. Ill. 2003) (collecting cases). Fields is close to that point but is not quite there, at least not yet. The Court again directs the City to make a full and complete disclosure of the information that Fields seeks in interrogatories 4 and 5 with regard to the documents in question (identified as City-NF-001023 through 1117), without interposing any privilege or other objection. The Court also cautions the City that it may not attempt to clutter its response with extraneous information, such as the additional information in the proposed stipulation that prompted Fields to decline to agree to it. The City must provide its supplemental answer by no later than October 23, 2012. If that answer turns

out to be complete and satisfactory, the Court likely will decline Fields' request to take the depositions of Noland and Majka.

The Court will also impose a monetary sanction covering Fields' reasonable attorney's fees in connection with the following: the City's continued failure to completely answer the interrogatory with regard to the particular documents at issue even after the Court ordered it to do so; its imposition of a baseless attorney-client privilege objection; Fields' renewal of the motion for rule to show cause; and the portion of Sergeant Flores' deposition relating to the pertinent interrogatory answers. Fields is directed to submit a statement of his reasonable attorney's fees and expenses for these matters by no later than October 22, 2012, and the City is directed to respond by no later than October 29, 2012.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 15, 2012