| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

1           IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3

4  NATHSON E. FIELDS,      )

5             Plaintiff,  )  Docket No. 10 C 1168
                    )

6         vs.         )

7  CITY OF CHICAGO, et al.,  )  Chicago, Illinois
                    )  May 16, 2012
8         Defendants.  )  10:30 a.m.

9             TRANSCRIPT OF PROCEEDINGS
10     BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
   APPEARANCES:
12

13  For the Plaintiff:   LAW OFFICES OF H. CANDACE GORMAN
                      BY:  MS. H. CANDACE GORMAN
14                    220 South Halsted Street
                    Suite 200
15                    Chicago, Illinois  60661

16
   For the Defendant:   DYKEMA GOSSETT PLLC
17                    BY:  MR. DANIEL M. NOLAND
                    10 South Wacker Drive, Suite 2300
18                    Chicago, Illinois  60606

19
                    COOK COUNTY STATE'S ATTORNEY
20                    BY:  MR. STEPHEN L. GARCIA
                    500 Richard J. Daley Center
21                    Chicago, Illinois  60602

22
                    LEN GOODMAN LAW OFFICE, LLC
23                    BY:  MR. LEONARD C. GOODMAN
                          MS. MELISSA A. MATUZAK
24                    53 West Jackson Boulevard
                    Chicago, Illinois  60604
25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(312) 435-5785

1      (The following proceedings were had in open court:)

2          THE CLERK:  10 C 1168, Fields v. City.

3          MS. GORMAN:  Good morning, your Honor; Candace Gorman

4   for Mr. Fields.

5          MS. MATUZAK:  Good morning, your Honor; Melissa

6   Matuzak and Leonard Goodman for Mr. Fields.

7          MR. NOLAND:  Good morning, your Honor; Dan Noland for

8   the City defendants.

9          MR. GARCIA:  Good morning, your Honor; Steve Garcia

10  for Cook County.

11         THE COURT:  Nothing personal, Mr. Fields.  Have a

12  seat.  I will just have the lawyers up here.

13         Okay.  So we have got the City defendant's motion to

14  bar the Morris affidavits, and then there was a response

15  filed.

16         So, Mr. Noland, honestly, when I read the motion,

17  when you got to the issue of prejudice, which is largely what

18  these things are about, paragraph 18, it was, we'll just say,

19  a tad thin.  You said, well, we wanted to evaluate this before

20  deposing the plaintiff, and, you know, you wanted -- and you

21  also deposed Mr. Lohraff, L-o-h-r-a-f-f.

22         So what would you have done differently?

23         MR. NOLAND:  Judge, there's a series of statements in

24  the Morris affidavit that are different than --

25         THE COURT:  Which Morris affidavit?

1        MR. NOLAND:  The one --

2        THE COURT:  The new ones.

3        MR. NOLAND:  The new ones that are different and

4    separate and in addition to statements that Mr. Morris

5    allegedly made to Mr. Stainthorpe and/or Mr. Lohraff, both of

6    whom I deposed in the case.

7        THE COURT:  Yes.

8        MR. NOLAND:  And my questions would have been phrased

9    certainly differently with the current statements in mind.

10        With respect to the prior statements, things that

11    weren't said to them or presumably weren't said to them that

12    are now being said currently with respect to allegations

13    against my clients with respect to things --

14        THE COURT:  In other words, you might have asked

15    Mr. Stainthorpe or Mr. Lohraff, if you saw the affidavit,

16    well, did Mr. Morris ever say this to you, did Mr. Morris ever

17    say that to you, things like that?

18        MR. NOLAND:  Things of that nature and other things

19    in ways I would have framed the questions.

20        THE COURT:  Okay.  I mean, I suppose you could go

21    back and ask them those questions now, could you not?

22        MR. NOLAND:  I don't think it would be nearly as

23    effective.  It likely wouldn't be effective at all.  I think

24    that I have now lost the opportunity.

25        THE COURT:  So you think they're going to change

1  their testimony about what was said to them based on the fact

2  that they now know that he said something different?

3  MR. NOLAND:  I'm not accusing them, both of them, or

4  people that, you know --

5  I know Mr. Stainthorpe and Mr. Lohraff seem very

6  straightforward.  I'm simply saying that I lose an advantage

7  or I lose the ability to ask the questions in a way that I

8  think that my clients would want me to ask them and to have

9  information.

10  And they had these.  The plaintiff had this

11  information.  I didn't.  It was -- for the life of me, I've

12  never seen a lawyer take the position that they could just sit

13  on it and turn it over afterwards.  So I do believe there is

14  prejudice.

15  THE COURT:  What about --

16  What would you have done differently in your

17  deposition of the plaintiff?  I mean, there's a response here

18  basically saying that he didn't have these things and wasn't

19  aware of them.

20  MR. NOLAND:  That is a general thing that I just felt

21  that, as a matter of background, I should know this before the

22  deposition of plaintiff.

23  THE COURT:  Okay.  So give me the why as to why these

24  things sat in the file for four months.

25  MS. GORMAN:  Your Honor, the main reason was the

1    things that Mr. Morris had told me I wanted to investigate,

2    and we have had an investigator, and I have been doing an

3    investigation, and it's really --

4         THE COURT:  Give me a for instance of the thing that

5    he told you that you wanted to investigate.

6         MS. GORMAN:  Well, one of the things that he told me

7    -- and I'm sorry I didn't review the affidavit coming in here,

8    because that is actually up tomorrow.

9         THE COURT:  Yes.  Well, maybe I don't want to see you

10   guys every day.

11        If you want to borrow this and look at it, I've got

12   my copy here.  I think the affidavit was attached to something

13   here.  Maybe it was attached to something earlier.  I know I

14   had seen something.  Maybe it was attached to that earlier

15   motion.

16        MR. NOLAND:  I have it as well, your Honor.

17        THE COURT:  If you want to take a minute.

18        MS. GORMAN:  Your Honor, if I can just --

19        You know, one of the things that Mr. Morris talked

20   about in the affidavit was the favors that were offered by the

21   police, the security job, and moving his family to Milwaukee.

22   We were trying to get ahold of his ex-wife, Sandra Langston,

23   who was also a witness in this case.  She was actually the

24   only witness that identified by description of the people who

25   actually did the murder.  She identified the two light-skinned

1    individuals.  She was never called as a witness by the state.

2    She was -- we could not -- when I say "we," Mr. Fields'

3    criminal attorneys could not find her for that -- for the

4    first trial.  And for the second trial, I believe she was in

5    jail, and there was a stipulation of her deposition, or her

6    testimony presented at that trial.

7            But I was very interested to try to get to the bottom

8    of why she was not involved in the first trial, and I believed

9    that if I turned over these affidavits that the defendants

10   would be getting to her as well.  I wanted to talk with her.

11   I wanted to talk with her because I thought that there was

12   some misconduct going on regarding her not being at the first

13   trial.  It looked to me like they were paying for her to be

14   somewhere else, so she was not available once they found out

15   she would not identify Mr. Fields.

16           I know there were some other issues, your Honor.  I

17   have been working very hard.

18           THE COURT:  Well, you have given me -- I asked for a

19   for instance.  You have given me a for instance.

20           Do you want to say anything in response to what --

21           MR. NOLAND:  Absolutely, your Honor.

22           THE COURT:  -- Ms. Gorman had to say?

23           MR. NOLAND:  It's interesting, she withheld so she

24   could conduct an investigation.  I should have had them so I

25   could have conducted an investigation.

1    I don't believe there's a provision in the rule that

2    says that she gets to conduct an -- the plaintiff, I'm

3    sorry -- the plaintiff gets to conduct an investigation when

4    the defendants do not, including with respect to potentially

5    Mr. Morris.

6           THE COURT:  Well, but you haven't deposed Mr. Morris

7    yet, right?

8           MR. NOLAND:  He has not been deposed.

9           THE COURT:  Okay.  I mean, you have got the

10   affidavits now.

11          So with regard to Mr. Morris' deposition, you will be

12   able to conduct whatever investigation you want to before

13   that, wouldn't you?

14          MR. NOLAND:  Well, there were four months when

15   Mr. Morris was not represented.  We got a call a few days

16   actually before somehow he was referred to this lawyer in

17   Chicago.  During those entire four months, we would have been

18   investigating what's in the affidavits as well as the

19   plaintiff sat on it.  That is another element of prejudice.

20          THE COURT:  Well, I don't know if it is or it isn't

21   because it's only prejudice if there's something that has

22   disappeared within those four months that isn't available to

23   you now.

24          MR. NOLAND:  Well, I believe there is.

25          THE COURT:  The question of prejudice doesn't have to

1   do with --

2          I mean, in some cases it might have to do with you

3   have lost time that you can't get back, but in this situation,

4   it has to do with, is there something that you have lost

5   basically for all time or that somebody has forgotten

6   something or whatever.  I mean, that's what I'm really not

7   seeing in here.

8          MR. NOLAND:  With respect to that, there is.  We have

9   lost the ability to independently talk to Mr. Morris.  He is

10  now represented.  He has been referred to an attorney, and we

11  have lost that opportunity.

12         MS. GORMAN:  Can I address that, your Honor?

13         THE COURT:  Hang on a second.  I just want to process

14  it here.

15    (Brief interruption.)

16         THE COURT:  Go ahead.

17         MS. GORMAN:  Mr. Morris is petrified of the

18  defendants in this case.  He told me that if he was contacted

19  by them, which he was afraid of after he signed those

20  affidavits, that he --

21         THE COURT:  When you say "the defendants," you don't

22  mean an attorney; you mean the defendants.

23         MS. GORMAN:  Yes, I mean the individual police

24  officers who came down repeatedly to prep him for trial, who

25  threatened him.

1      THE COURT:  Get to the point.

2      MS. GORMAN:  So he was afraid.  He told me if the

3  police came or if he found out that the police were looking

4  for him that he was going to contact us, and he wanted us to

5  find him an attorney, that he did not want to talk to them.

6      THE COURT:  So let me go back to the last date when

7  we had the issue -- it may not have been the last date.  It

8  may have been the date before the last date, but the one where

9  Ms. Winslow was here, whenever that was.

10      Remind me what it was.  Did I say that nobody could

11 contact him or that the defendants; i.e., the parties could

12 not contact him?

13      MR. NOLAND:  Your order is that neither the plaintiff

14 nor the defendant -- obviously, I'm not going to contact -- or

15 the individuals.

16      THE COURT:  What if I were to modify that and say

17 it's okay for you as the lawyer -- I mean, obviously, you

18 would have to go through Ms. Winslow at this point -- it's

19 okay for you to call Ms. Winslow and say, we would like to

20 interview?

21      MR. NOLAND:  That does not ameliorate the issue, your

22 Honor.  Mr. Winslow has now been retained and is his counsel.

23 What I'm talking about is an independent interview through

24 myself or an investigator with Mr. Morris with respect to the

25 things that he's saying in his affidavit and how that was

1  obtained.

2      Of course, I set forth in the motion the history of

3  Mr. Morris.

4      THE COURT:  But you don't know that you wouldn't get

5  an interview.  Again, I'm looking at what prejudice there is

6  at this moment in time.  And, I mean, I don't know that you

7  wouldn't be able to interview him.  I don't know that.

8      MR. NOLAND:  I believe that I have lost the

9  opportunity of an independent interview.

10     THE COURT:  You wanted to be able to interview him

11 cold without a lawyer there, I understand that.  But, again,

12 it's a question of, you know, would something have been said

13 differently, and I don't know.

14     MR. NOLAND:  If I could just respond?

15     THE COURT:  Yes.

16     MR. NOLAND:  The plaintiff has made allegations

17 about -- Ms. Gorman says she had spoke to Mr. Morris, and he's

18 made -- he's allegedly made statements being petrified.  He,

19 of course, has testified under oath that he was scared of the

20 El Rukns.  He knew, and that's why I set forth --

21     THE COURT:  Now you're saying he's scared of the

22 police officers.  I understand, he's scared of everybody.

23     So we can review the bidding of what happened the

24 last time you were here, Mr. Noland.  When I asked whether the

25 defendants, not the defendants' counsel, but the defendants

1   themselves were doing investigation, I got something from you

2   that basically said, well, yes, and there's no problem with

3   that.  And so that was what prompted the ruling, okay.

4           I don't have any problem with any of the lawyers in

5   this case, never have.  I don't have any problem with any of

6   the lawyers in this case interviewing anybody.  I think on one

7   side, although this wasn't the basis for my ruling, that it

8   would be -- and I may have said this at the time -- it would

9   be an incredibly stupid thing for somebody who -- for an

10  individual police officer who is accused of misconduct to now

11  be going out to interviewing people in the case in which he's

12  accused of misconduct.

13          Aside from it being stupid, I precluded it for the

14  reasons that I described there.  But I'm happy to amend that

15  or whatever I need to do to let you interview him.

16          As far as prejudice is concerned, I think that, as I

17  sit here right now, if there was a violation of the discovery

18  rule, it was harmless.  I'm not persuaded that there is any

19  cognizable harm in any way, shape or form at this point.  You

20  can redepose Mr. Lohraff if you need to.  I don't have any

21  reason to believe that Mr. Fields had any knowledge that would

22  have been affected the other way, and I just -- and I've

23  explained the rest of it.

24          And the other problem I have with this is that when

25  you're asking me to bar the affidavits, I mean, isn't this guy

1   going to testify?  He's going to testify, right?  So what good

2   would it do to bar an affidavit?  I'm asking.  It's a

3   question.

4           MR. NOLAND:  Judge, I felt that that was the --

5           THE COURT:  Were you asking me --

6           You weren't asking to bar him from testifying.

7           MR. NOLAND:  I was not.  That was the relief that --

8           In thinking about it, it seemed to make the most

9   sense.

10          THE COURT:  But that was the part that didn't make

11  sense to me, respectfully.  I mean, when you bar an affidavit,

12  does that mean if he comes in and testifies consistent with

13  the affidavit, you're going to say, well, strike his testimony

14  because it's just what he said in the affidavit?

15          MR. NOLAND:  That was not what I was asking.  No, I'm

16  not asking for that.

17          THE COURT:  So you're talking about using the

18  affidavit in response to like a summary judgment motion.

19          MR. NOLAND:  It would be --

20          THE COURT:  I can't imagine any other way in which it

21  would be used.

22          MR. NOLAND:  Potentially examining at the deposition.

23          THE COURT:  In other words, that the person couldn't

24  have the affidavit in front of him and say, didn't you tell me

25  on such and such a date the following?

1    MR. NOLAND:  Yes.

2    THE COURT:  Oh, okay.  I wouldn't have done that

3    anyway.  I mean, that just doesn't make any sense as a remedy,

4    so that is another reason.  So the motion to bar the

5    affidavits is denied.

6         On the other thing --

7    MR. NOLAND:  One thing.  Could I just raise one more

8    point?

9    THE COURT:  On the thing that I just denied?  Sure,

10   go ahead.  Make an oral motion to reconsider.

11   MR. NOLAND:  No, I'm not.  Simply I am concerned that

12   the plaintiff may have other things they're sitting on, other

13   affidavits.

14   THE COURT:  Okay.  Well, actually it's a good segue

15   into something that I was perhaps going to say a bit later in

16   the hearing, but you have got a -- you have got a pending and

17   ongoing request for witness statements, okay.  I can imagine

18   circumstances in which somebody would say, I object to

19   disclosing something because it's work product.  That did not

20   happen.  You cannot do what you did here.  It's a bad idea,

21   okay, because you're just going to generate more issues with

22   this, so don't do it.

23   MS. GORMAN:  Okay.

24   THE COURT:  I'm not saying that you have to turn it

25   over the second that you have it.  The rules provide -- you

1   know, it's 26(e) or 26(f).  You know, it's reasonable,

2   whatever it is, but you need to comply with that.  I'm just

3   saying, a word to the wise.

4         MS. GORMAN:  Okay.

5         THE COURT:  On the other motion, on the motion for

6   rule to show cause, I'm happy to give you time to respond to

7   it if you want.  And I don't -- I wouldn't expect --

8         Let me just make a couple of comments about it.  I

9   wouldn't have expected, and I don't think anybody would have

10  expected there to be any one person who could come in and say,

11  this is where this piece of paper has been, you know, for the

12  last 20 X years.  Nobody would ever expect that unless there

13  was a person who had it sitting in his file and say, oh, yes,

14  I had it in my file.

15        On the other hand, I think that the plaintiff is

16  entitled to get information about why the -- if the document

17  wasn't produced -- and I say "if" because apparently

18  Mr. Smeeten is still an unknown quantity here -- if it wasn't

19  produced, why it wasn't produced, and part of finding out why

20  it wasn't produced is finding out where it was.  Those are all

21  logical things.

22        Now, I don't know where that takes anybody in terms

23  of how this motion comes out, but I just thought -- you know,

24  if you want to file a response, that's fine, but I thought you

25  should have that in mind before doing that.

1        So I guess what I'm going to be looking for is is if

2   the answer is --

3        Now, putting aside the question of sanctions, okay,

4   I'm talking about more getting information in people's hand.

5   If the answer is, well, they can't do it the way they want to

6   do it, I'm going to be looking for an alternative because I

7   think that is information that the plaintiff is entitled to

8   get at some level.

9        MR. NOLAND:  You know, Judge, I will tell you what

10  the response is going to say.  I have been on trial.

11       THE COURT:  I understand.

12       MR. NOLAND:  I did want to get a response on file so

13  the Court could see.

14       THE COURT:  I'm willing to give you time to do that

15  if you want.

16       MR. NOLAND:  I will just outline it for you.

17       Number one, we did comply and we answered the

18  interrogatory.  There has been an investigation.  The answer

19  is we don't know, and that's what we provided.

20       Number two, the rules provide that for a corporate

21  representative, it can be without personal knowledge.  The

22  City of Chicago --

23       THE COURT:  I get it.

24       MR. NOLAND:  -- has lots of lawsuits.

25       THE COURT:  Right.

1     MR. NOLAND:  This man -- the verification is very

2  clear of what he is saying about what he knows, and it's

3  information provided by myself and the paralegal, Mary Beth

4  Mika, who do the investigation.  There is case law that says

5  that that is work product.  I've got a case that I brought

6  with me, if your Honor would like to see it.

7     THE COURT:  Yes, but there's also probably case law

8  that says that the work product privilege isn't absolute.

9  It's not opinion work product; it's fact work product, and

10  Rule 26 has said something about that ever since there was a

11  Rule 26, in Hickman v. Taylor and so on.

12     MR. NOLAND:  Simply in this context with the answer

13  to interrogatory, the law that we have found, the law our

14  research shows, it is work product.  I understand what the

15  Court is saying.

16     THE COURT:  There's two kinds of work product.

17  That's my point.  There is opinion work product; this is my

18  assessment of something; and then there is fact work product.

19     MR. NOLAND:  I think on that answers to

20  interrogatories, the case law I found simply says that the

21  investigation that the corporate defendant has done.

22     THE COURT:  Okay, so let me say again what I said

23  before.  I'm happy to give you time to file a response.  But

24  since you wanted to talk about it, what is the alternative?

25  How does the plaintiff get the information about what was done

1    to try to find out where the document was?

2         MR. NOLAND:  I can talk.  I can have a meet and

3    confer with her and explain to her what I have done or what we

4    have done.  I have no problem doing that.  Of course, I do

5    object to a deposition of myself, but I have no problem

6    explaining that.

7         THE COURT:  So let me make this suggestion on this.

8    First of all, I don't see this as something where there's an

9    appropriate basis for sanctions.  I think that what Mr. Noland

10   just suggested provided at least a starting point.  I think it

11   would be a good idea for you to sit down and you to talk

12   through, this is what I did.  But then I think there needs to

13   be another step.  I think there needs to be --

14        You need to come up with some mechanism to permit the

15   plaintiff to be able to show at a trial or in response to a

16   summary judgment motion or whatever, you know, what was done

17   to do this.  And it may be that you can come up with a

18   stipulation.  It may be that you can come up with some sort of

19   agreed statement of facts.  Maybe you can come up with some

20   other alternative, but I think that that's what you need to

21   do.

22        I'm not -- I don't think there is a basis for

23   sanctions here.  I'm an agnostic, at the moment at least, on

24   the proposition of whether, you know, who can be deposed and

25   whatnot, but I would prefer to have you try to see if you can

1   come up with a mechanism for avoiding those issues. And if

2   you can't, then I will have to deal with them, but there will

3   be a winner on that and there will be a loser, and I don't

4   know who it's going to be. So it's in everybody's interest to

5   see if you can come up with a mechanism to see if you can

6   resolve it. So that's what I'd suggest to you.

7          And I'm going to see you again in about three or four

8   weeks anyways. So the 11th of July is what I have down. So I

9   can just enter and continue it to that date, if you want.

10         MR. NOLAND: And if --

11         I guess in light of that, if we are unable to work

12   something out, then should I simply file something?

13         THE COURT: Then file something before the 11th, yes,

14   so that we can talk about it then.

15         MS. GORMAN: That's the 11th of June, your Honor?

16         THE COURT: June. At least that's what I have on my

17   notes is the 11th of June is the next date.

18         Anything else anybody wants to talk about? Okay, see

19   you.

20         MR. NOLAND: Thank you, your Honor.

21         MS. GORMAN: Thank you.

22      (Which were all the proceedings had in the above-entitled

23   cause on the day and date aforesaid.)

24

25

1        C E R T I F I C A T E

2

3           I hereby certify that the foregoing is a true and

4    correct transcript of the above-entitled matter.

5

6

7    /s/ Laura M. Brennan                    October 20, 2012

8

9    _____        _____

10   Laura M. Brennan
     Official Court Reporter                        Date
11   Northern District of Illinois

12

13

14

15

16

17

18

19

20

21

22

23

24

25