**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATHSON FIELDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 1168** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Nathson Fields sued a number of Chicago police officers and two former

Cook County prosecutors, Larry Wharrie and David Kelley, under 42 U.S.C. § 1983 and

state law, in connection with his wrongful conviction for a double murder. Fields alleged

that Wharrie, who was the prosecutor at his first trial on these charges, coerced a

witness named Anthony Sumner to falsely implicate him in criminal activity and that this

directly resulted in his wrongful incarceration. Fields alleged that while his conviction

was on appeal, Wharrie also procured false statements from Earl Hawkins for use at a

possible retrial. Fields also alleged that Kelley, who was the prosecutor at his retrial,

coerced a witness named Randy Langston to falsely implicate him at that trial. Finally,

Fields alleged that both Wharrie and Kelley concealed this and other exculpatory

evidence from him in connection with the two trials.

In April 2011, the Court dismissed all of Fields' federal constitutional claims

against Wharrie except the claim relating to Hawkins and also dismissed all of his

federal constitutional claims against Kelley. *See Fields v. City of Chicago*, 805 F. Supp. 2d 536 (N.D. Ill. 2011). Fields has moved for reconsideration of the dismissal of his claims against Wharrie to the extent those claims are based on Wharrie's alleged role in fabricated inculpatory statements by Sumner. The motion requires the Court to discuss the basis for its April 2011 dismissal of the claims against Wharrie; the Seventh Circuit's ruling on an interlocutory appeal; and the Seventh Circuit's decision several months later in another case.

In addition, the Court addresses in this decision the issue of prosecutorial immunity as it applies to Fields' state law claims against Wharrie and Kelley.

**1.     This Court's dismissal of Fields' federal claims against Wharrie**

In addressing Fields' federal claims regarding Wharrie's alleged coercion of Sumner before charges were filed and Kelley's alleged coercion of Langston before the retrial, the Court assumed for purposes of discussion that this was investigative conduct for which Wharrie and Kelley were not entitled to absolute prosecutorial immunity. The Court concluded that Fields' federal claims against Wharrie and Kelley involving this conduct were barred by *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994) ("*Buckley IV*"). Specifically, the Court concluded that under *Buckley IV*, the coercion of a false statement is not actionable; rather, only use of such a statement in court is actionable, and a prosecutor has absolute immunity from liability for using the statement in court. *Fields*, 805 F. Supp. 2d at 547 (citing *Buckley IV*, 20 F.3d at 794).

The Court overruled Wharrie's absolute immunity and qualified immunity defenses, however, regarding Fields' contention that Wharrie had solicited Hawkins' false testimony prior to the retrial. The Court based its decision on Seventh Circuit law

as it existed at the time, namely *Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992). The

basis of *Houston* was that if a prosecutor is no longer part of a trial team at the time of

challenged misconduct, he is not entitled to absolute immunity.

## 2.    The interlocutory appeal

Wharrie and Kelley filed an interlocutory appeal. Wharrie appealed from the

Court's rejection of absolute immunity on Fields' claim concerning Hawkins' testimony.

*See Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). Kelley appealed from the

Court's failure to accord him absolute immunity on Fields' claim regarding Langston.

*See id.* The Seventh Circuit did not consider the claim against Wharrie relating to his

alleged coercion of a false inculpatory statement from Sumner.

The Seventh Circuit decided the appeal February 28, 2012. In addressing the

Hawkins claim, the Seventh Circuit concluded that the aspect of *Houston* upon which

this Court had relied had been effectively overruled by *Van de Kamp v. Goldstein*, 555

U.S. 335 (2009). After further analysis, the court concluded that Wharrie was entitled to

absolute immunity from suit for his Hawkins-related conduct because he was still acting

as a prosecutor even if he was not on the trial team. *Fields*, 672 F.3d at 514-16.

 In an alternative holding, the court concluded that even if Wharrie had not been

acting as a prosecutor when he obtained Hawkins' incriminating statements against

Fields prior to the retrial, "Fields did not suffer a constitutional harm with respect to [the

witness's] new, incriminating version of events until [another prosecutor] introduced the

testimony at retrial." *Id.* at 516. The court reaffirmed its determination in *Buckley IV* that

"fabricating evidence, including in the form of testimony, is not an actionable

constitutional wrong. The constitutional violation occurs when the means by which the

testimony was acquired are not disclosed at trial – or when other information that impeach[es] the testimony's reliability [is] not shared with the defense." *Id.* at 516-17. Thus any constitutional wrong occurred when Kelley introduced the alleged false testimony at the retrial. *Id.* at 517. The court said that if Wharrie had handled the retrial himself, his violation of Hawkins' due process rights would be subject to absolute immunity. But because Kelley had conducted the retrial, Wharrie was subject to liability "only if Kelley did not know that he had asked Hawkins to lie and would not have retried the case had he been aware of that information." *Id.* The court said that Fields "suggests . . . that Kelley knew Hawkins' testimony was false and retried the case regardless. . . . Although he does not explicitly state that Kelley knew that Wharrie asked Hawkins to lie, he strongly implies that [Kelley] did." *Id.* For this reason, the constitutional injury to Fields resulted from Kelley's prosecutorial decision to use the testimony. *Id.* As a result, the court said, "Fields has not . . . stated a claim against Wharrie based upon his soliciting [the witness's] false testimony." *Id.* The court rejected Fields' claim against Kelley regarding Langston on the same basis – he was aware, in his capacity as a prosecutor, of the alleged coercion of Langston that he had previously conducted. *Id.* at 517-18.

**3.** ***Whitlock v. Brueggemann***

About three months after it decided the interlocutory appeal in this case, the Seventh Circuit decided *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). Judge Flaum, the author of the decision in Fields' case, was a member of the panel that decided *Whitlock*.

*Whitlock* involved two plaintiffs' claims that they had been wrongly tried and

4

convicted of a double murder.  They sued several police officers and a prosecutor,

Michael McFatridge.  This Court's discussion of the *Whitlock* decision focuses on the

disposition of the plaintiffs' claims against McFatridge.

The plaintiffs in *Whitlock* alleged that the defendants failed to pursue two more

likely suspects and instead focused on the plaintiffs.  They eventually encountered a

witness named Herrington, who initially implicated two other men but then, after a

lengthy meeting with investigators and McFatridge, named plaintiffs as the murderers.

The police then put Herrington in seclusion, gave him money, and supplied him with

details about the crimes.  He changed his story again, however, and said he could not

implicate the plaintiffs.  Several months later, two of the police officers allegedly coerced

a witness named Reinbolt to implicate the plaintiffs.  The police then obtained a warrant

to arrest the plaintiffs.  *Id.* at 572.  The plaintiffs were convicted after both Herrington

and Reinbolt implicated them at trial.  Years later, Herrington and Reinbolt recanted

their inculpatory statements and said the police had told them what to say.  McFatridge

allegedly drafted statements retracting the recantations, and the witnesses signed them.

Reinbolt later recanted again, and McFatridge taped a retraction of this recantation too.

*Id.*  The plaintiffs' convictions were eventually overturned.

On appeal from the district court's denial of summary judgment, the Seventh

Circuit noted that plaintiffs claimed McFatridge had violated their rights during three

periods:  before he applied for arrest warrants; between the issuance of the warrants

and the date he left the prosecutor's office; and between the time of his resignation and

the date the plaintiffs' convictions were reversed.  The district court held that McFatridge

had absolute prosecutorial immunity for his conduct during the second period, and this

ruling was not before the Seventh Circuit in the interlocutory appeal. As for the third

period, the court concluded that there were genuine factual issues regarding whether

McFatridge had acted under color of law. *Id.* at 577-58.

The court then considered whether McFatridge was entitled to absolute immunity

for his conduct before the arrest warrant issued. The court determined that under the

Supreme Court's decision in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), McFatridge

was not entitled to absolute immunity until probable cause to arrest the plaintiffs existed.

*Whitlock*, 682 F.3d at 578-79 (citing *Buckley* and *Hill v. Coppleson*, 627 F.3d 601 (7th

Cir. 2010)). The court ruled that there was a genuine factual dispute over when

probable cause first existed. *Id.* at 579. The court distinguished the claims in *Whitlock*

from those it had dealt with in its decision in the present case. In particular, the court

noted that the claims it had addressed against Wharrie and Kelley all concerned

"challenged acts while acting in a prosecutorial role," rather than acts they had taken

before probable cause supported making a charge against Fields. *Id.* at 579-80.[1]

The court in *Whitlock* next addressed the issue of qualified immunity. The court

first noted that a police officer who manufactures false evidence against a criminal

defendant is liable if the evidence is later used to deprive the defendant of his liberty.

*Id.* at 580. It determined that the same rule applies to a prosecutor "who manufactures

evidence while acting in an investigatory role." *Id.* It is "beside the point," the court

said, that the prosecutor who introduces the evidence at trial (either the same one who

manufactured the evidence or a different one) cannot be held liable for the introduction

---

[1] This makes it clear that in the interlocutory appeal in the present case, the Seventh
Circuit did not address Fields' claim against Wharrie concerning his actions relating to
Sumner before Fields was arrested.

of the evidence.

The court in *Whitlock* rejected McFatridge's argument that the plaintiffs' rights were not violated until the false testimony was introduced at their trial and that "[t]he only wrong . . . is the one that occurred at trial." The court conceded that the alleged constitutional violation "was not complete until trial." *Id.* at 582. But section 1983, the court stated, imposes liability not just on those who subject others to constitutional deprivations, but those who "cause" others to be subjected to constitutional deprivations. *Id.* The court stated that "[t]he actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation. Without the fabrication, the prosecuting attorney would have had no tainted evidence to introduce at trial." *Id.* at 583. The prosecutor's introduction of the evidence at trial "may be a second proximate cause," but "there is no rule demanding that every case have only one proximate cause." *Id.*

The causal link may be broken, the court said, if the prosecutor who introduces the fabricated evidence at trial is made aware of the fabrication. *Id.* Specifically, "a prosecutor's action in putting evidence on, known to be fabricated, may in some circumstances be a superseding or supervening cause of the violation." *Id.* at 584. This principle did not assist McFatridge, the Court ruled, because he himself had allegedly assisted in fabricating the evidence and had also introduced it: "[o]ne's own conduct cannot be an intervening cause sufficient to defeat a finding of causation." *Id.*

The court acknowledged that in *Buckley IV*, it had "also dealt with a claim against a prosecutor who collected evidence as an investigator and then went on to use that evidence at trial" and had barred the claim. *Id.* The court, however, distinguished

7

*Buckley IV*, stating that "the alleged constitutional violations in *Buckley IV* were different from those here and thus do not control our analysis." *Id.* In *Whitlock*, the court stated, McFatridge was alleged to have "fabricated evidence, and from a common-sense standpoint, the only reasonable explanation for this act was to make that evidence available in later proceedings." *Id. Buckley IV*, the court stated, was different: there the plaintiff "sought to hold prosecutors liable for repeatedly interrogating two witnesses and paying them for statements inculpating the plaintiff, as well as for seeking out and hiring witnesses." *Id.* (internal quotation marks and brackets omitted). Tactics that involve coercing, paying, or shopping for witnesses "may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial," because "[e]vidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true." *Id.* "In this . . . group of cases, any resulting due process violation that occurs when the evidence is introduced at trial cannot be traced back as far as its creation." *Id.* at 585. By contrast, the court concluded, McFatridge's alleged conduct would amount to a violation of constitutional rights. *Id.* The court went on to conclude that the right to due process that plaintiffs claimed McFatridge had violated was clearly established by 1988, the time relevant in plaintiffs' case. *Id.* at 585-86.

The distinction that the Seventh Circuit sought to draw in *Whitlock* between the conduct that was at issue in that case and in *Buckley IV* is somewhat difficult for this Court to grasp. Both the defendants in *Whitlock* and the defendants in *Buckley IV* were alleged to have coerced false inculpatory statements from witnesses. Indeed, the court's earlier decision in the *Whitlock* case, *Steidl v. Fermon*, 494 F.3d 623 (7th Cir.

2007), which the court specifically referenced in *Whitlock* for its discussion of "the facts in this case," *Whitlock*, 682 F.3d at 571, says unequivocally that the plaintiffs claimed that the defendants "coerced testimony" from both Reinbolt and Herrington. *Steidl*, 494 F.3d at 626. Thus there is no apparent factual distinction between the underlying fabricatory conduct in *Whitlock* and that in *Buckley IV*. Even if one sets this aside, it is hard to fathom where the line would be drawn – if coercion, payoffs, and witness-shopping to get a false inculpatory statement (as referenced in *Buckley IV*) are not actionable as having caused a constitutional violation, but some other type of conduct to get a false statement is, what *would* be actionable? Simple persuasion?

On the other hand, the discussion of these points in *Whitlock* is consistent with long-standing Seventh Circuit law concerning causation in section 1983 cases of this sort. In particular, in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1993), the court ruled that police officers may be liable for fabricating evidence, even though the evidence, of course, was not introduced until later, by prosecutors. The court in *Whitlock* relied heavily on *Jones* and on tort-law causation principles in reaching a similar result. *See Whitlock*, 682 F.3d at 582-84. The Court notes that if the contrary proposition were true, there would be no effective federal claim for violation of due process in this context that the Seventh Circuit has repeatedly approved, because fabricated evidence is almost always *created* before trial even though it is not *introduced* until trial.

The bottom line, as best as the Court can divine it, is this. The Seventh Circuit quite unequivocally ruled in *Whitlock* that a prosecutor acting as investigator is subject to potential liability for fabricating evidence, if the prosecutor himself introduces the

evidence against the defendant at trial, or if some other prosecutor unaware of the fabrication introduces the evidence. The Court also reaffirmed *Jones*, as it has done repeatedly over the years. But the court also appeared to be trying to preserve or reinterpret *Buckley IV*, which at least arguably points in a different direction. The law from the Seventh Circuit on this point thus appears to be continuing to evolve.

**4.      Fields' motion for reconsideration**

Fields' motion for reconsideration is focused on his federal claim against Wharrie concerning the fabrication of false evidence from Anthony Sumner. Fields claimed that Wharrie assisted in the fabrication of false inculpatory statements by Sumner before probable cause existed to arrest or charge Fields for murder. Wharrie was also the prosecutor who introduced those false statements at Fields' first trial. The Seventh Circuit did not deal with this particular claim in the previous interlocutory appeal in this case.

This claim is a duplicate of the sort of claim that the Seventh Circuit said in *Whitlock* would be actionable against a prosecutor. The prosecutor is claimed to have assisted in the creation of false evidence in an investigatory role, for which he does not enjoy absolute immunity. This is actionable conduct in Wharrie's case, because a prosecutor's introduction at trial of false evidence that he himself helped to create does not amount to a superseding cause. And the court further ruled in *Whitlock* that this conduct violated clearly established law as of 1987, the same period that is relevant here. *Whitlock*, 682 F.3d at 585-86.

For these reasons, the Court concludes that intervening developments in the law render erroneous its earlier ruling granting Wharrie qualified immunity for this alleged

conduct. The Court therefore grants Fields' motion for reconsideration and vacates its April 2011 dismissal order to the extent it dismissed this particular claim against Wharrie.

**5.      Fields' state law claims**

The Court also asked the parties to address more specifically whether the legal principles regarding a prosecutor's immunity from suit apply under Illinois law and if so whether they applies in a way that differs from federal law.

There is not much Illinois law on the subject, but what there is indicates that Illinois applies the principle of absolute prosecutorial immunity to state law claims in the same way that federal courts apply it to section 1983 claims, drawing the line between investigatory conduct (which is actionable) and prosecutorial conduct (which is not). Indeed, the Illinois cases addressing prosecutorial immunity in the state law context rely on federal cases. *See White v. City of Chicago*, 369 Ill. App. 3d 765, 769-78, 861 N.E.2d 1083, 1088-94 (2006). The Court therefore concludes that defendants Wharrie and Kelley are entitled to absolute immunity on Fields' state law claims against them in the same way that absolute immunity applies to Fields' federal claims.

Qualified immunity is a different matter. Qualified immunity is a concept that applies under 42 U.S.C. § 1983; it focuses on whether a viable federal constitutional claim has been alleged and whether federal constitutional law was clearly established at the time of the alleged violation. Conceptually, this does not apply to state law claims. Thus the discussion of qualified immunity in this Court's and the Seventh Circuit's earlier decisions in this case do not apply to Fields' state law claims against Wharrie and Kelley.

Fields' section 1983 claim against Wharrie concerning Earl Hawkins has been dismissed on the basis of absolute immunity. The same rules applies to his state law claims to the extent they arise from the Hawkins episode. This leaves the aspects of Fields' state law claims against Wharrie that concern the fabrication of the allegedly false inculpatory statement by Anthony Sumner. Wharrie is entitled to absolute immunity on those claims for his introduction of the statement at trial but not for his role in the statement's fabrication.

With regard to Kelley, the Seventh Circuit upheld the dismissal of Fields' claim regarding the fabrication of a false inculpatory statement from Randy Langston on the basis of qualified immunity, not absolute immunity. *See Fields v. Wharrie*, 672 F.3d at 517-18 (finding that "Fields suffered no constitutional violation" from the fabrication of the statement apart from its introduction at the trial). Kelley is entitled to absolute immunity for his introduction of the statement at trial but not for his role in the statement's fabrication. Thus Fields' state law claims against Kelley remain alive to the extent they concern his conduct relating to the fabrication of Langston's inculpatory statement. With regard to Hawkins and Sumner, Kelley's alleged involvement was in a prosecutorial, not an investigatory capacity, so he is entitled to absolute immunity on Fields' state law claims against him to the extent they concern those matters.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for reconsideration and vacates its order of April 4, 2011 to the extent it dismissed plaintiff's federal claim against defendant Wharrie arising from the fabrication of false evidence from Anthony Sumner. Plaintiff is entitled to proceed with that claim. He is also entitled

to proceed with his state law claims against Wharrie to the extent they arise from that conduct, as well as his state law claims against defendant Kelley to the extent it arises from the fabrication of false evidence from Randy Langston.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  December 26, 2012