UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON E. FIELDS,<br>    Plaintiff,<br><br>        v.<br><br>CITY OF CHICAGO et al.,<br>    Defendants. | )<br>)<br>)  No.  10 CV 1168<br>)<br>)  Hon. Matthew F. Kennelly<br>)<br>) |

## PLAINTIFF'S RESPONSE TO CITY'S MOTION FOR PROTECTIVE ORDER

NOW COMES Plaintiff Nathson Fields, by and through his attorneys, and hereby responds to the City's Motion as follows:

It is unclear to Plaintiff's counsel whether the City is complaining that Plaintiff's counsel has counted the pages of the files that she has already viewed and will be requesting in a request to produce or if the City is upset that Plaintiff's counsel has made an inventory of the files that were reviewed. Counsel will address both issues and discuss new developments related to the City's Motion.

**UPDATED BACKGROUND ON "THE FILE CABINET/MISSING FILE'"**

As per the transcript of February 20, 2013 (attached to defense motion @A) the city attorneys have hypothesized that the missing street file *might* have been located in an old file cabinet that was located in a file room located at the detective division on the second floor at 51st and Wentworth[1] at the time of

---

[1] . Until February 2012 the station at 51st and Wentworth was known as "Area 1." On or about February 2012 the facility was renamed "Area Central" and includes most of Area 1 and parts of Areas 3 and 4.

Plaintiff's counsels visit in June 2012. (Ex.A @26-28) Plaintiff's counsel has visited the Area on four occasions: December 2011 counsel visited the Area to view the original of the long missing street file; June, 2012 Plaintiff's counsel viewed the original file again and also viewed the cabinet that the attorney's *think* might have held the file but counsel made no inspection of the cabinet (during that visit Counsel noted that the cabinet was marked as "Area 1 homicides" and noted the five drawers with dates ranging from 1944 to 1985); August 2012 counsel returned to review the file cabinet a second time but the cabinet was no longer located in the file room at the detective division (apparently having been moved shortly after counsel's June visit); a fourth visit was to the cabinet's new location in the furnace area of the basement at 51st and Wentworth on February 28, 2013, where the Area 1 file cabinet sits with eighteen other file cabinets. Counsel started a review of the cabinet on that day.

No witness for the City has confirmed the City attorney's hypothesis that the file was ever actually located in that cabinet and in fact no witness for the City-including the individual who has had responsibility for pulling and copying files for the last several years (Detective Sam Brown) and his two predecessors- has any recollection of *ever* taking a file out of the cabinet that the City attorneys have hypothesized as being the cabinet that held the missing street file- the fact that the physical files from this era are quite different looking physically than more recent files (which are in books, binders and/or hanging) makes it more understandable why someone might recall having pulled an old manila file in

the last few years if they had-yet all were adamant that they could not recall such an event. In fact, Commander Walsh commander of the detective division of Area 1 during the pertinent time could not even recall the old file cabinet ever being in the file room.

However, since the City's attorneys have suggested that the file was in this file cabinet Plaintiff respectfully submits that the City opened the door to an investigation regarding the file cabinet itself. Plaintiff's counsel followed up by asking for an inspection of the cabinet and also filed new interrogatories[2] seeking details on the City's investigation of the whereabouts of the file cabinet and in particular any investigation by the City of the file and file cabinet in regards to its use by the el Rukn task force and/or gang crimes south. As attorney Gorman stated to the Court at the status conference on February 28th, 2013 she has learned in the course of investigating the missing file that the el Rukn task force routinely removed and inspected "cold" homicide files in an effort to pin those murders on members of the el Rukn organization.

In addition, one of the statements that has been repeated several times by City witnesses in relation to the missing file is the assertion that the Fields case was considered an "open" file at the time discovery commenced in this civil case- ostensibly because one of the accused (Henry Andrews) was never arrested[3].

---

[2] Counsel for Plaintiff has not set up the meet and confer regarding those particular responses and objections as of the filing of this response.
[3] Andrews was later arrested and acquitted of this double murder in the federal el Rukn trials.

One of the last witnesses deposed by counsel regarding this file was Sgt. Melean who held the title of Administrative Sgt. for Records Inquiry from February 2005 to April 2010. In his capacity as administrative sergeant for the Records Inquiry section Sgt. Melean oversaw the entire unit including subpoenas for the Chicago Police Department. In 2006 a subpoena was issued in Fields' criminal case and Sgt. Melean responded to the subpoena by contacting attorney Jean Snyder requesting additional information from Ms. Snyder because of a discrepancy in the file number on the subpoena. Like everything else at the CPD there is no record of what transpired after that contact. However, in the course of his deposition Sgt. Melean stated that "open" files *are not subject to Subpoena* and any request for a file that was marked "open" would have been turned over to "legal affairs." Counsel knows from discovery in this case that the double murder Mr. Fields was accused of was considered "open" at least until the filing of his civil suit 27 years after the murders. Counsel now believes this is the reason the City attorney's have hypothesized that the missing file was in this cabinet: the cabinet contained some "open" Area 1 homicide files and the CPD had a secret policy of not producing "open" files even when sought by subpoena.

The following is Sgt. Melean's deposition testimony from March 26, 2013 regarding subpoena's received by the CPD for files the department considered open:

19

16   Q     If this file showed up as open, what

17  would the process be?
18      A    The process would be to contact Legal
19  Affairs.
20      Q    So if the file was still an open file
21  even though it was an old case, the process for the
22  subpoena processors would be to contact Legal
23  Affairs?
24      A    Correct.

                        20
1       Q    Why is that?
2       A    To see what can and cannot go out.
3       Q    Explain that to me.
4       A    To see what documents can be released.
5       Q    Why is that?  If this is a subpoena,
6   is there an issue that some documents cannot go out
7   in response to a subpoena if it's an open file?
8       A    Open investigations aren't subject to
9   a subpoena.
10      Q    Open investigations are not?
11      A    They're still being worked on, so it
12  wouldn't be a complete file.
13      Q    So if the subpoena came to your
14  offices --
15      A    Um-hum.
16      Q    -- and someone looked in the database
17  and learned that the file was open, they would
18  contact Legal Affairs?
19      A    Correct.
20      Q    And who in Legal Affairs would be the
21  contact person when you were there?
22      A    They have many attorneys up there, so
23  I have no idea who, in fact, they contacted at that
24  time.

                        21
1       Q    It would be a request to an attorney,
2   though?
3       A    Correct.
4       Q    Would that be something that they
5   would do in writing, or is that something that would
6   be handled over the telephone?
7       A    Different individuals, I don't know if

                        5

```
 8   they would e-mail or they would do it on the phone.
 9      Q    Were there any procedures set up when
10   you were working there, when you were supervising
11   this area, as to what they should do even if you
12   don't know exactly what they did do?
13      A    No, there was no set procedure.
14      Q    Did you do any review in preparing for
15   today to see if anyone did, in fact, contact Legal
16   Affairs regarding this subpoena?
17      A    No, I did not.
```

Counsel for Mr. Fields does not know if this means that the Field's file was withheld by some unilateral (and secret) "order" by the City's department of legal affairs all of these 28 years because the City believed that there was a defendant still at large and that it could somehow not only unilaterally disregard a subpoena based on its categorizing the file as "open"- but also *not inform* Mr. Fields (or other individuals) that it was withholding material sought in a subpoena based on its internal policy. Certainly it is not the law that the City can just declare files as being exempt from subpoena on its say so, however, the fact that the person in charge of responding to Subpoenas for the CPD from 2005 to 2010 stated that this was in fact the policy- that "open" files were not subject to subpoena- is disconcerting to say the least. In fact, such a policy would allow the City to do what in fact happened in Mr. Fields' case- simply avoid producing highly relevant discovery by keeping the file in an "open" status for 28 years. Counsel for Fields will attempt to explore the possibility that this is what in fact happened in Mr. Fields case and also explore the underlying *policy* of the City's

6

department of legal affairs referring or relating to its *policy* that materials in "open" cases are not subject to subpoena.

This newly obtained information regarding the secret policy also makes the continued review of the file cabinet more pertinent. In seeking a review of the file cabinet Plaintiff's counsel was/is attempting to ascertain what type of files were in the cabinet and also whether or not this cabinet would likely hold an "open investigative file" such as the missing file in Fields case. In addition, as Plaintiff's counsel stated at the status hearing on February 28, 2013, counsel is also attempting to ascertain whether or not the cabinet contained other files of cold cases that were utilized by the el Rukn task force in bringing charges against el Rukn members-- based on the el Rukn task force *theory* that certain old homicides were *likely* to be related to the el Rukn organization (as opposed to the approximately 200 other gangs in the Chicago area at the time).

Documents tendered by the federal government, pursuant to subpoena, confirmed that the task forced researched old cold case Chicago Police Department homicide files in an effort to tie unsolved homicides to members of the el Rukn organization[4]. The Hickman/Smith case that Mr. Fields had been charged with had been unsolved for fifteen months at the time he was arrested. The new information from Sgt. Melean adds to the quandary regarding the

---

[4] The four defendants who Plaintiff has held off on deposing until getting a handle on the whereabouts of the missing street file were each, at various times, members of that el Rukn task force and at least two of the individuals involved in Field's arrest were involved in reviewing the old cold cases to implicate members of the el Rukns for those unsolved murders.

missing file and the file cabinets that now sit in the basement at Area Central. Are all of these files held in the basement to complete the fiction that they are still "open" and not subject to subpoena? Were files being categorized as "open" so that they could be exploited by the el Rukn task force and pertinent *Brady* materials withheld pursuant to a "secret" policy of disregarding subpoenas without notice? Is the reason these files have never been inventoried because no one wants to be responsible for the injustice to countless individuals?

**ARGUMENT**

    **A. The Inventory**

The inventory counsel for Plaintiff prepared while reviewing the files followed-to the letter- what this Court ordered in the protective order. Counsel made no secret-both before this Court and while on the premises with the City attorney and paralegal that it was planning and did in fact conduct an inventory of the files. Counsel informed both the Court and City attorneys that they were planning on bringing a camera and a dictaphone device and utilized both openly while on the premises. The reason is simple, according to the individuals who worked with the files at Area 1 and who have thus far have been deposed all have confirmed that the contents of the particular file cabinet identified by the City's attorneys as *possibly* holding the missing file were and remain (to the CPD) *unknown*. According to witnesses who daily work with the files in the detective division no inventory of the old file cabinet that holds Area 1 homicide files dating to 1944 (or the other old file cabinets which includes old homicide files

from Area 3 dating from 1968 to 1985, and approximately 9 file cabinets that date from 1962 to 2005-that have been renamed "Central Open," despite the fact that there was no "Area central" during those years)[5].

For this reason Plaintiff's counsel could not get a read out from the City of exactly what was in the cabinet. An inventory was also necessary so that counsel could examine the files in relation to the known files used by the el Rukn task force and also to properly ascertain what was in the file cabinet as opposed to what the file drawers indicated, on the outside of the cabinets, was in the various drawers.

To date counsel has not completed their investigation as to whether these files were all "area 1 homicide files," how many were open as opposed to closed, how many were actually "investigative files" (containing detectives' investigative materials) and how many were utilized by the el Rukn task force.

B. COUNTING PAGES

During the course of reviewing the files it became apparent that Plaintiff's counsel would be seeking copies of some of the files. Counsel approached the City attorney and paralegal that were present during the inspection and asked if they could hand over the files that they would be seeking to have copied-for safe keeping. Counsel was told "no" that the files had to go back in the drawer in the

---

[5] Those other file cabinets which are also now being housed in the boiler room at 51st and Wentworth with no inventory having been taken run the extra risk of being forever lost because the city has renamed the files as being "Open Central" instead of keeping the original "Area" designation.

same place they were located and that counsel could later submit a list for those documents by compiling the information allowed as per the protective order- however it was also suggested by the City attorney and paralegal that counsel should indicate the file drawer number. Although Plaintiff's counsel would not have felt the need to count pages in turning the documents over to the City's attorneys for copying Plaintiff's counsel has absolutely no confidence that the CPD would do the right thing and turn the complete files over for later copying- in part because the Plaintiff's file was withheld for 28 years, in part because of the newly learned secret policy, and in part because of the evasiveness of the City and its employees regarding the missing street file throughout discovery. Therefore attorney Gorman decided that she and attorney Matuzak- the two attorneys actually reviewing the files- should count the pages of those files that they would be later seeking copies of, to help ensure that the complete files were turned over.

### C. THE AREA CENTRAL OPEN FILES FROM 1984-1988

As noted above, while inspecting the files and cabinets in the boiler room counsel for Petitioner noted several file cabinets (approximately nine) with file drawers labeled "Central open." One cabinet in particular was labeled as "open homicides Central" with drawers indicating the years 1984-88. As mentioned above there was no "Area Central" in 1984 or 1985 as Area Central was a newly designated Area in February 2012. It is incomprehensible why these old file cabinets have been renamed, but regardless of the reason, we know that

Plaintiff's case was considered "open" when the request came from the City's attorneys for his file in 2010 and since most of Area 1 is now part of Area Central it seems that this cabinet is a logical place to review the files. The City attorneys have claimed that the cabinet contains files from Area 4 but there is nothing on the file cabinet or the other eight cabinets that indicates that the cabinets contain files from Area 4.

## CONCLUSION AND REQUEST FOR RELIEF

In regards to the City's Motion, counsel states that some important discoveries were made when reviewing the files that further supports what had been counsels theory (but now is more than just a theory) that some of the "open" files were utilized to wrongly pin open "cold" murders on members of the el Rukns. Adding to that information is the bombshell from Sgt. Melean in which he admitted that the CPD has a policy of not considering open files as subject to subpoena. That the city has probably never tendered most of the files located in the boiler room because they have labeled the files therein "open" is now more than a possibility-it is a probability. Mr. Fields asks this Court to allow his attorneys to go back to the boiler room at 51st and Wentworth to complete their review of the file cabinets at issue including a review of the file cabinet that is marked as containing "open homicides" for "area central" from 1984 through 1988-a time when there was no "area central." Counsel further states that the inventory she conducted conforms to this Court's protective order and pages were only counted for the files Plaintiff will seek in discovery-and only after

counsel learned that the gathering and copying of the files would be placed in the hands of the CPD.

In addition, Plaintiff and his counsel make the following observation and request. The basement of what is now called Area Central holds nineteen file cabinets that have apparently never been cataloged. Although 4 of the file cabinets relate to one particular unsolved murder the remaining 15 cabinets contain a massive amount of information concerning mostly open files that have apparently never been inventoried and which very possibly have never been tendered pursuant to subpoena in the cases related to those files. Given that the City attorneys think that Mr. Fields missing file was hidden in one of these cabinets for 28 years it seems imperative that an Order be entered prohibiting the CPD from touching those files and that someone be tasked to review the file cabinets and their contents to discover if any other miscarriages of justice are involved-i.e. to determine if men who are sitting in prison today- or who perhaps have even been executed- were denied due process because the complete files were never tendered to them.

Counsel for Mr. Fields stand ready to help in any way that this Court directs regarding this task. Regardless of whether this Court utilizes Mr. Fields counsel, or a special master, Mr. Field and his counsel implore this Court to Order a complete review of the materials being hidden in the boiler room without any inventory having been conducted, to ensure that files in other cases have not been unilaterally withheld or withheld without due process, either

pursuant to a policy by the City to withhold all investigative files in cases it considers "open" or files that were not tendered just through gross neglect. Although a seemingly big task it is not one that would take long in an organized effort and it seems that the consequences of letting these files sit, uncataloged-or worse yet-- cataloged by the CPD -- has the potential of continuing a great injustice to individuals who have been fighting from jail for years (as Mr. Fields did for more than 22 years) trying to obtain investigative documents that they know must be out there- but which the city has long denied having or has otherwise ignored.

Wherefore Plaintiff asks this Court to deny the City's motion, to grant the relief sought herein by the Plaintiff, and for such other relief as this Court deems just.

Dated: April 2, 2013

                                                Respectfully Submitted,

                                                <u>/s/H. Candace Gorman</u>
                                                One of the Attorneys for Fields

## **CERTIFICATE OF SERVICE**

I, H. Candace Gorman, hereby certify that the foregoing RESPONSE TO Motion was served to the parties electronically by means of the Court's CM/ECF system.

Dated: April 2, 2013

                                                            Respectfully Submitted,

                                                            /s/H. Candace Gorman
                                                           One of the Attorneys for Fields

For Fields:

| | |
|---|---|
| Leonard C. Goodman | H. Candace Gorman |
| Melissa Matuzak | 220 S. Halsted |
| 53 W. Jackson Boulevard | Suite 200 |
| Suite 1650 | Chicago Illinois 60661 |
| Chicago, Illinois 60604 | 312-427-2313 |
| 312-986-1984 | |