UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON E. FIELDS,  )  <br> Plaintiff,  ) <br> ) | No.  10 CV 1168 |
| v.   ) <br> ) | Hon. Matthew F. Kennelly |
| CITY OF CHICAGO et al.,   ) <br> Defendants.   ) | |

**REPLY TO RENEWED MOTION FOR SANCTIONS AND TO TAKE THE DEPOSITIONS OF INDIVIDUALS IN "LEGAL AFFAIRS," DEPOSITIONS OF OTHER INDIVIDUALS IN LEGAL AFFAIRS NOT PREVIOUSLY SOUGHT, AND FOR OTHER RELIEF**

Now comes the Plaintiff Nathson Fields by and through his counsel and asks this Court to grant the relief sought in his motion for the following reasons:

**INTRODUCTION**

The motion filed by Mr. Fields essentially brought to this Court's attention a secret policy under which the CPD has been disregarding subpoenas for those investigative files it has determined to be "open" – Plaintiff's motion also called attention to the fact that the CPD has been disregarding such subpoenas without providing any notice of this policy to criminal defendants and other parties. Counsel for Mr. Fields have been placed in the unusual situation of being allowed to glimpse a portion of the files that have been withheld pursuant to this policy. Counsel have also been afforded an opportunity to view the outside of

additional file cabinets (more than 20[1]) that contain a plethora of files. Many of these files have apparently never seen the light of a courthouse, despite the fact that some relate to homicides that clearly resulted in prosecutions. As explained in Mr. Fields motion, some of these cabinets appear to contain files of vital significance not only to Mr. Fields case but to other criminal cases that have already gone through the criminal court system.

Although the City focuses its attack on counsel for the Plaintiff, it was the City and its attorneys that originally suggested that the missing street file in this case had *probably* been kept in the file cabinet that contained "open" files from Area 1 for the period of 1944 through 1985 (although this would not explain the City's lapse in failing to provide the file for 28 years). Plaintiff and his counsel now believe, based on the testimony of Lt. Melean, that this (no longer) secret policy may explain the City's failure to tender the street file in a timely manner. The City's response to this motion interprets the testimony of Lt. Melean in such a way as to contradict the substance of Melean's actual testimony. The City's mischaracterization of Melean's deposition is in keeping with the City's long-running cat and mouse game designed to frustrate any pursuit of the truth.

---

[1] Counsel had originally thought there were 19 file cabinets in the room because she apparently did not count the actual cabinet that the City *thinks* contained the Petitioners file. In addition, counsel did not notice until reviewing photos from her first visit that there were additional cabinets in back of some of the cabinets that were not docketed on her inventory of cabinets. During the second visit those cabinets were cordoned off by the CPD's movement of the cabinets in front and therefore counsel was unable to determine exactly how many of these additional files are hidden in back and how those additional cabinets were labeled. There are at least four (perhaps more) cabinets that fall in this latter category.

The City's response also appears to denigrate all defense counsel whose clients' criminal cases involve investigative files deemed "open" by the CPD and now held in the boiler room at 51st and Wentworth or elsewhere; the City would hold defense counsel responsible (including, apparently Mr. Fields' criminal attorneys) for not doing more to enforce subpoenas upon being told there was no additional file or materials in their particular cases. Ultimately, the City contends that Plaintiff should just move along, because there is nothing more to see or talk about here because Plaintiff received some (clearly not all) of the investigative file -- even if it was 28 years late.

**BRIEF BACKGROUND**

On December 14, 2012 plaintiff received, for the first time, some of the emails regarding the CPDs fetching of the file in the Plaintiff's case immediately following the filing of this case. The first email was from Sgt. Loughran (administrator to the chief of detectives) to Mary Beth Majka in legal affairs on April 13, 2010 informing Ms. Majka "I received your request for the double homicide filed under RD#F151922. This investigation remains OPEN with one offender still at large." (Ex. A,pg.2) According to attorney Noland, in a discovery conversation on December 20, 2012, Noland *believed* that the case was still considered "open" because Hank Andrews remained at large until 1989---and that the log was never corrected.(Ex. B,pg.2) Finally, on February 23, 2013 counsel took the deposition of Lt. Melean – the individual who oversaw the records inquiry section (which included subpoenas) from 2005 to 2010.

3

According to Lt. Melean "open Investigations aren't subject to subpoena." Plaintiff believes that this newly discovered information probably explains why the investigative file in Mr. Fields' case was not tendered for more than 28 years.

1. **THE SUBPOENA POLICY**

Fields' criminal attorney complained prior to his initial trial that he had only received 8 pages of notes in response to the subpoena for the "street file" even though the investigation was fifteen months old at the time of Field's arrest. Each of those 8 pages of notes were dated the same date as the double murder. According to the trial record the States attorney told Mr. Fields's attorneys that there was nothing more. (Ex.C) Between 1985 and 2006, attorneys for Mr. Fields tendered more than 10 subpoenas issued to the City for the complete investigative file from the Hickman/Smith murders, but no other investigative documents were ever tendered until this litigation.

Subpoenas are court orders requiring compliance and the City's suggestion that Plaintiff's criminal attorneys, and ostensibly the criminal attorneys involved in every other open file that was never tendered in litigation, should have somehow done more is without merit. The investigative file in Petitioner's case was never produced in response to any of those court orders. In Plaintiff's case one of his attorneys filed multiple subpoenas several months apart until at least one subpoena was returned with "NIF" on the outside and another saying nothing was found. In addition, in 1988, while awaiting

4

execution, Fields also filed a 1983 action seeking the investigative file. The City conducted an investigation at that time and determined that there was no investigative file. Never once were any of Mr. Fields attorneys put on notice that the file was not being tendered because of a policy of the CPD to withhold files in cases it considered "open." [2]

The investigative file was finally turned over to Mr. Fields in this civil rights action on or about September 12, 2011. The approximately 90 pages of notes and 33 photographs of people of interest contained investigative notes from the initial investigation following the murders. Glaringly missing from that file were the eight pages of notes from the date of the murders that were tendered to Mr. Fields at his first trial. A fact that did not make sense to Mr. Fields's counsel until Lt. Melean testified to the subpoena policy in his deposition.

In addition to the investigative file that was tendered for the first time in September of 2011, the "Area file" was tendered for the first time on April 9, 2012[3]. The "Area file" was the additional file that the City wanted to add to the stipulation the parties were negotiating during the summer of 2012 regarding the missing "street file." That negotiation ultimately fell apart because counsel for Plaintiff would not agree to the inclusion of a statement relating to the newly

---

[2] This, of course, is the reason Plaintiff's attorneys refer to the CPD policy as "secret."
[3] Depositions in this case and other cases from this era confirm that at least two files were normally kept- the Area file (sometimes referred to as the Unit file) and the investigatory file. Apparently in Mr. Fields's case there were three files. One of which was tendered and two of which were withheld until this litigation.

5

tendered "Area File" in that stipulation because she had done no discovery regarding that withheld file. That insertion of language about the newly found "area file" was so important to the City that it ultimately allowed the proposed stipulation to fall apart when counsel for Mr. Fields refused to allow language relating to the "area file" to be added to the stipulation. The actual language the City had proposed putting into the stipulation at that time was: "Later, another inquiry was made to the records division, and the documents Bate stamped City NF-07559-07652 were located at the CPD warehouse and produced in this litigation." (Ex. D-final marked up stipulation proposed by City) The "later date" referred to in the stipulation was April 9, 2012 and the documents bate stamped 07559-07652 comprised the newly discovered "Area file." Counsel for Mr. Fields still has no idea who suggested to the Dykema attorneys that they make a *new request* to the warehouse in the spring of 2012; where that file was actually found; or, why the file was not located in earlier searches over the many years when subpoenas were issued-all Plaintiff's counsel knows is that the City attorney's *claim* that a new search was conducted in the spring of 2012 and that the "Area file" was located at the warehouse at that time.

      The City refers to that Area file in its footnote 1 to its response and as noted by the City certain of the documents in that file were also never tendered to the Plaintiff until this litigation. It appears that Mr. Fields's "file" – Area file, investigative file, street file, etc., the sum total of documents now tendered in regards to the investigation into the murders of Jerome Smith and Talmon

6

Hickman – has been "maintained" piecemeal in a few different locations. It is curious that the City claims to know that certain documents were "found" in the warehouse, but the City is simply unable to determine where the street file was kept prior to being tendered to the Dykema attorneys in 2010 or why that file was never tendered to Plaintiff until 2011.

Unlike the long missing investigative file, the long missing Area file included the investigative file inventory sheet *and* the eight pages of investigation notes from the date of the murder that were provided to Mr. Fields at his first trial. The inventory sheet shows the "Area file" being moved to the Records Division on August 13, 1987 and then later apparently being moved to the City's *legal department* with the following entry…."Corp. Coun. Request-28 Apr. 93." That was the last entry on the inventory sheet for the Area file. There was no entry on the inventory sheet that showed the "Area file" ever being tendered to the warehouse and no explanation as to why 29 years of searching for Mr. Fields files did not turn that file up until April 2012-unless of course it was sitting in the corporation counsel's office all those years as suggested by the inventory sheet. (Ex. E)

For that particular file in Mr. Fields' case it seems to Fields and his counsel that he has absolute proof that the last place the "area" file was cataloged, until it mysteriously resurfaced in 2012, was in the office of the corporation counsel. In addition, the correspondence that accompanied the area file from the Dykema firm included mention of a document from the file that was being withheld by

7

the city on the basis of attorney/client privilege. Until now Plaintiff's counsel did not see the need to press for an in-camera review of that document however, in light of the new developments counsel now believes that document might be pertinent. Plaintiff will file a separate request for an in-camera inspection of that document by this Court unless this Court indicates at the status hearing that a separate request is not necessary. As shown in the attached correspondence the document withheld on the basis of privilege involved a request that also related to the *Houston* case- a lawsuit that involved the wrongful incarceration of Mr. Elton Houston and many of the defendants in this litigation were also defendants in *Houston*. (Ex. F) Plaintiff sought copies of the Houston file (literally boxes of files) in this litigation and both the County and the City claimed that those files are *lost*.

**THE DEPOSITIONS**

Lt. Melean, the person in charge of the Record Inquiry Section (which included responding to subpoenas for the CPD) for a five year period, a period of time that included Mr. Fields' final criminal trial *and* the last subpoena in Fields' criminal case, stated under oath that open files -- even *old* open files – were not subject to subpoena. He also testified that any request for an open file would be referred to legal affairs to determine what would and would not be allowed to be tendered. (City Ex. B@ 19-20) Since we know that Mr. Fields' file was considered "open" we have to assume, based on the testimony of Lt. Melean, that every

8

subpoena issued in Mr. Fields' case was referred to the office of legal affairs or its predecessor.

The City contends that Mr. Fields has no proof that this was the reason his file was not tendered – however the testimony of Lt. Melean suggests a strong possibility that this policy is precisely why Mr. Fields never received his file. In addition, the fact that Mr. Fields received 8 pages of the investigative file at the time of his initial trial suggests that the process described by Lt. Melean -- that legal affairs would decide which, if any, documents from that file could be turned over, -- occurred in this case and that the office of legal affairs looked at the file and allowed those eight pages of investigatory notes to be produced to Plaintiff-and only those eight pages. As noted above the original eight pages were *not* in the "missing" street file provided in September 2011, although in theory those documents ought to have been in that file with the other investigative notes from the initial investigation. The significance of the missing investigatory file is that the documents included therein are exculpatory, and point directly to actual leads and not to Mr. Fields.

The depositions of individuals in the legal affairs department are necessary to fully explore the policy and its relationship to Mr. Fields' missing file. Stated differently, Fields has very strong circumstantial evidence suggesting that his file was withheld all of these years because of a secret policy on the part of the Chicago Police Department to not tender files considered "open" without the approval of legal affairs. As the city has admitted, no one knows where this

9

investigative file has been, but it has been searched for pursuant to subpoena on numerous occasions over the course of the 28 years, and it was never tendered until 2011. As we know, the missing investigative file had to be somewhere (because it resurfaced all these years later) it is important to know whether or not the file was withheld because legal affairs put the kibosh on tendering the file on account of its apparently "open" status.[4]

Finally, depositions of the legal affairs attorneys are necessary so that a jury can understand the full context of this long missing file.

### 2. THE THOUSANDS OF OPEN FILES

Counsel did not ask to be a witness to the thousands of homicide files that the City has categorized as Open and moved to the basement at 51st and Wentworth -- cabinets which hold an unknown number of files that were never tendered in litigation. Unfortunately counsel are witnesses to this travesty and have determined, in the two cabinets that they were allowed to review, that there are files in these cabinets for cases that went to trial. Counsel believes that many of those files -- like Mr. Fields' long missing investigatory file -- were never tendered in litigation. These files date back as far as 1944 and area as recent as 2005. They include file cabinets from what used to be called Area's 1, 2, 3 and 4. Counsel for Mr. Fields believe it was their duty to bring this travesty to the attention of this Court.

---

[4] Of course, the fact that this file (or any file) is withheld in a criminal proceeding after receipt of a subpoena because the City considers it "open" is unconstitutional.

The individual in charge of the files for the detective division at what was Area 1 and what is now called Area Central is Detective Sam Brown. Det. Brown admitted in his deposition that he did not know what files were in the cabinets in the basement because they have never been inventoried and "that would take his whole career" to figure it out. According to Det. Brown, these uncataloged file cabinets were moved to the boiler room[5] because there was no room anywhere else. (Ex. G, pg. 47) Counsel for Plaintiff also notes that the file cabinets themselves contain files that do not correspond to the labels[6]- or at least to the City's explanation of what the labels mean: for example, counsel was told that the file cabinet that has been renamed "area central 1984- 1988" contains only Area 4 files. Exactly why that cabinet and *several* other cabinets in the boiler room that predate 2005 were renamed "area central" when there was no Area Central in existence until 2012 has not been explained, but a cursory examination of the one "Area Central" cabinet counsel was allowed to review revealed that it also contains files from Area 1 and Area 3. As mentioned in Plaintiffs motion, Plaintiff believes that the renaming of the file cabinets will make it impossible in the future to ever locate files hidden away in that basement.

Finally, the City vehemently objects to the public airing of any of the names and RD#s relating to the files located in the boiler room and for good

---

[5] For some reason the City objects to the room being called a boiler room despite the fact that the boiler itself sits right next to the file cabinets. Counsel also notes that there is standing water in the room. (Ex. H)

[6] Counsel attempted to look into one additional cabinet that appeared to have been renamed after counsels first visit but the Dykema attorney on duty quickly informed her that she was not allowed to look in that cabinet.

11

reason -- not because of the privacy of the murder victims -- but because of the potential nightmare in regards to individuals who are sitting in prison –- or have sat in prison -- and who never received the underlying investigatory files, or notice that files were being withheld based on the files status (whether correct or not) of being "open." That should not be a sufficient reason for the City to be allowed to continue to hide these files.

In Mr. Fields two criminal trials it is clear that both he and his attorneys were being very aggressive in trying to get to the bottom of the dearth of investigative notes but they were being stonewalled by a secret policy. Counsel believes that the same occurred to countless other defendants and attorneys over the years.

WHEREFORE, Plaintiff respectfully requests this Court grant his renewed motion for sanctions and to order the relief requested herein and any other relief this Court deems appropriate.

Dated: April 25, 2013

                 Respectfully Submitted,

                  /s/H. Candace Gorman
                 One of the Attorneys for Fields

For Fields:

| | |
|---|---|
| Leonard C. Goodman | H. Candace Gorman |
| Melissa Matuzak | 220 S. Halsted |
| 53 W. Jackson Boulevard | Suite 200 |
| Suite 1650 | Chicago Illinois 60661 |
| Chicago, Illinois 60604 | 312-427-2313 |
| 312-986-1984 | |

## CERTIFICATE OF SERVICE

I, H. Candace Gorman, hereby certify that the foregoing Reply was served to the parties electronically by means of the Court's CM/ECF system.

Dated: April 25, 2013

                                                  Respectfully Submitted,

                                                  /s/H. Candace Gorman
                                                  One of the Attorneys for Fields

For Fields:

| | |
|---|---|
| Leonard C. Goodman | H. Candace Gorman |
| Melissa Matuzak | 220 S. Halsted |
| 53 W. Jackson Boulevard | Suite 200 |
| Suite 1650 | Chicago Illinois 60661 |
| Chicago, Illinois 60604 | 312-427-2313 |
| 312-986-1984 | |