IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON FIELDS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 10 C 1168 |
| CITY OF CHICAGO, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Nathson Fields has filed a motion in which he seeks to take the depositions of persons in the Chicago Police Department's Office of Legal Affairs (OLA); an order to preserve certain files and file cabinets now located in a particular room at the Chicago police station at 51st Street and Wentworth Avenue; and an inventory of those files.

Fields was originally convicted of murder in state court but ultimately was acquitted. As part of his claims in this case, Fields contends that certain exculpatory police investigative material was withheld from him during his prosecution. This material was produced during discovery in the present civil case. Immediately prior to its production, the material was located in one of the aforementioned file cabinets. Plaintiff has engaged in an intensive effort to ascertain where the material was located in the intervening years and how it came to be located in the file cabinets. Defendants, through their attorneys, have professed complete ignorance on these points.

As part of plaintiff's investigative efforts during the discovery process in this case, his attorneys took the deposition of Lieutenant Fred Melean, who is currently in charge of investigations for the Chicago Police Department's Internal Affairs Division but previously held various positions of responsibility in the Records Inquiry Section, which deals with subpoenas for Police Department records. During Fields' prosecution in state court, he requested, evidently via subpoena, all records relating to the murder investigation (and other records), but as indicated earlier certain records that he contends were exculpatory were not produced. The Police Department personnel who dealt with such subpoenas were in the Records Inquiry Section.

During his deposition, Lt. Melean testified that when a subpoena for records came in, the Police Department representative responsible for collecting records would first "find out from the Detective Division whether [the investigation] was closed or open." Melean Dep. 19. If the investigation was open, then "[t]he process would be to contact Legal Affairs," namely OLA, "[t]o see what can and cannot go out. To see what documents can be released." *Id.* 19-20. The reason for this is that "[o]pen investigations aren't subject to a subpoena," because "[t]hey're still be worked on, so it wouldn't be a complete file." *Id.* 20. There is evidence indicating that at the relevant time, the murder investigation involving Fields was considered "open," though it is not at all clear why. Melean lacked actual knowledge regarding whether subpoenas issued by Fields' defense counsel were routed through OLA in this manner, and if so, who at OLA dealt with them and what they advised.

Fields' counsel characterize the Records Inquiry Section's practice as described by Lt. Melean as "a secret policy [of the City] of withholding files for cases it considered

'open,'" and they say that "it is now clear why [Fields'] file was withheld all of these years." Fields Mot. (dkt. no. 347) at 9. In their reply, Fields' counsel go a step further, calling it a "fact" that "the CPD has been disregarding such subpoenas without providing any notice of this policy to criminal defendants and other parties." Fields Reply (dkt. no. 354) at 1. And having inspected, with the Court's approval, the other files in the aforementioned file cabinets, Fields' counsel contend in their reply that the file cabinets contain numerous investigative files "that were never tendered in litigation" regarding the crimes those files concerned, which counsel characterize as a "travesty" and a "potential nightmare in regards to individuals who are sitting in prison – or have sat in prison – and who never received the underlying investigatory files, or notice that the files were being withheld . . . ." *Id.* at 10, 12.

    These characterizations are a considerable overstatement of the record that has been presented to the Court. Lt. Melean's testimony does not establish that investigative files in cases considered as open by the Police Department were withheld from production in the criminal cases to which the files pertained. Rather, his testimony establishes that when an investigation was considered open, Records Inquiry Section personnel requested advice from OLA regarding what to do. There is no evidence in the record establishing that when this happened, OLA's practice was to cause documents to be withheld from production. Certainly nothing of the kind comes from Melean's testimony. Indeed, Melean could recall only one occasion when he himself dealt with a subpoena that concerned an "open" investigation.

    The Court also cannot say at this point that, as Fields' counsel contend, the practice about which Melean testified explains why certain materials were not produced

3

to Fields' criminal defense counsel. That is certainly one possible inference, given the evidence that the murder investigation was considered open and the evidence that not all of the records were produced. It is not, however, the only possible inference. As defendants point out, some of the materials in the file that contained the document belatedly produced materials actually were produced in Fields' criminal case. This means that it is at least arguable that the practice about which Melean has testified had nothing to do with the incomplete production of investigative materials to Fields' criminal defense counsel.

On the other hand, it is also an overstatement to contend, as counsel for the City do, that the fact that some materials contained in the file in question were produced in Fields' criminal case "derail[ ] plaintiff's motion." Def. City's Rep. (dkt. no. 353) at 3. Another possibility that is consistent with the record before the Court is that the materials that were produced did not come from that particular file but rather were copies of the same documents stored in other locations. Yet another possibility that the Court cannot rule out, based on the record that has been presented, is that OLA authorized the production of some but not all of the materials in the file. Although these hypotheses are speculative to some extent, they would be consistent with the record that has been presented to the Court. Thus the fact that some materials were produced does not indicate that the Court should treat the subject as closed and disallow the further discovery that Fields has proposed.

Because there is evidence that (1) some investigative materials were not produced to Fields' criminal defense counsel; (2) the file in the homicide case was considered open at the relevant time; and (3) the Police Department treated criminal-

case subpoenas concerning open investigations as requiring further review by OLA, it is appropriate to permit Fields to conduct further discovery regarding this issue. This discovery may include depositions of relevant personnel who worked at OLA during the relevant period(s). The Court advises Fields' counsel, however, that it is not giving them *carte blanche* in this regard. First, any OLA-related discovery must be focused on that office's activities and practices in responding to subpoenas to the Police Department in criminal matters where the underlying investigation is characterized as open, and on any involvement that OLA had in dealing with requests made by Fields' criminal defense counsel in particular. Second, the Court does not intend to permit Fields' counsel to blanket OLA with deposition notices or subpoenas. Any deposition must be a Rule 30(b)(6) deposition notice tightly focused on the relevant issues as just described or must be a deposition notice directed to an individual whom Fields' counsel has a reasonable and legitimate basis to believe has knowledge regarding the relevant issues. Finally, these depositions will be limited in time. Given the narrow focus, one hour should be plenty. No deposition involving these topics may exceed that length absent agreement of the parties or order by the Court. Fields is directed to confer promptly with defense counsel regarding a discovery plan concerning these points, and the parties are to be prepared to present a proposed plan to the Court at the status hearing set for May 1, 2013.

Fields also requests preservation (in their current form and location) of the file cabinets and their contents currently located in the same physical location at 51st and Wentworth as the cabinet that contained the file directly at issue in this case, as well as an order directing an inventory of the victim names and file numbers, to be made public.

The Court does not address the propriety of latter request at this point. That request is premature given the absence from the current record of any clear indication that the practice of seeking OLA advice described by Lt. Melean was, as Fields' counsel contends, part of a practice of actually withholding materials from production in criminal cases. If Fields obtains such evidence during the course of the discovery described above, he may seek such relief at that point.

     The Court likewise declines to formally order that the files be, as Fields effectively requests, hermetically sealed. That said, the Court notes that these files have been requested by Fields, and they ultimately may be subject to production in this case, to enable Fields to prove the contours of the policy he now alleges. Thus if nothing else, the law of spoliation ought to make the City or the Police Department think long and hard about altering or moving the files or the file cabinets. It would be extraordinarily unwise for the City or the Police Department to alter or move the files or file cabinets or to permit any individual to do so, without first seeking the Court's guidance.

                                                                                                                     _____
                                                                                                                       MATTHEW F. KENNELLY
                                                                                                                       United States District Judge

Date: April 27, 2013