IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON E. FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10 C 1168 |
| ) | |
| CITY OF CHICAGO, et al., ) | Judge Matthew F. Kennelly |
| ) | |
| Defendants. ) | |
| ) | |

**CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Defendant the City of Chicago ("City"), by and through its attorney, Terrence M. Burns of Dykema Gossett, PLLC, for its response to Plaintiff's Motion to Compel (Dkt 380), states:

**INTRODUCTION**

There was no Office of Legal Affairs ("OLA") file until this litigation was filed. Nevertheless, and in violation of this Court's April 27, 2013 Memorandum Opinion and Order, plaintiff's motion to compel seeks the entire OLA civil litigation file (and an accompanying privilege log) created solely as a result of and to assist in the defense of this litigation. The only CPD police reports in the OLA file are copies of documents previously produced to plaintiff in this case. The balance of the OLA file generally consists of correspondence and requests for information between Dykema and OLA and/or OLA and the CPD to obtain documents to produce in this litigation (often at plaintiff's request, as he has issued 9 requests for production consisting of 250 paragraphs), or to obtain information requested by Dykema. Communications with the client and work product developed once the litigation commences are clearly privileged and need not be included on any privilege log. *See, e.g., Ryan Investment Corp. v. Pedregal Day Cabo San Lucas*, 2009 WL 5114077 (N.D. Cal. 2009). Indeed, plaintiff's counsel has supplied

no such privilege log relating to her efforts to obtain information, and has even refused to identify the source of documents that plaintiff has produced so defendants could independently subpoena the source. The present motion is another example of plaintiff's distorted view of the discovery process as a "one way street."

More troubling, this Court has already ruled upon the subject matter of plaintiff's motion. Paragraph 239 of plaintiff's seventh request to produce and his motion to compel seek materials exceeding the scope of discovery authorized by this Court's April 27, 2013 order. This Court therein specifically warned plaintiff it was not providing "carte blanche" with respect to OLA discovery and instructed that "any OLA-related discovery must be focused on that office's activities and practices in responding to subpoenas to the Police Department in criminal matters where the underlying investigation is characterized as open, and on any involvement that OLA had in dealing with requests made by Fields' criminal defense counsel in particular." (Dkt 356 at 4-5). OLA's civil file created to assist defense counsel since the filing of this litigation is far beyond the scope of this Court's order and has nothing to do with the CPD's responses to plaintiff's criminal subpoenas. Based on plaintiff's blatant disregard of this Court's order, the City requests its attorney's fees in responding to Request number 239 and this motion to compel.

## BACKGROUND

After Lt. Fred Melean's deposition, plaintiff filed his Renewed Motion for Sanctions and to Take the Depositions of Individuals in "Legal Affairs," Depositions of Other Individuals in Legal Affairs Not previously Sought, and For Other Relief. (Dkt 347). The City filed its Response (Dkt 353), plaintiff filed his Reply (Dkt 354), and this Court issued its ruling on April 27, 2013 (Dkt 356). Specifically with respect to discovery and depositions concerning OLA issues, this Court stated in its April 27, 2013 Memorandum Opinion and Order as follows:

2

> Because there is evidence that (1) some investigative materials were not produced to Fields' criminal defense counsel; (2) the file in the homicide case was considered open at the relevant time; and (3) the Police Department treated criminal-case subpoenas concerning open investigations as requiring further review by OLA, it is appropriate to permit Fields to conduct further discovery regarding this issue. This discovery may include depositions of relevant personnel who worked at OLA during the relevant period(s). **The Court advises Fields' counsel, however, that it is not giving them carte blanche in this regard. First, any OLA-related discovery must be focused on that office's activities and practices in responding to subpoenas to the Police Department in criminal matters where the underlying investigation is characterized as open, and on any involvement that OLA had in dealing with requests made by Fields' criminal defense counsel in particular.** Second, the Court does not intend to permit Fields' counsel to blanket OLA with deposition notices or subpoenas. Any deposition must be a Rule 30(b)(6) deposition notice tightly focused on the relevant issues as just described or must be a deposition notice directed to an individual whom Fields' counsel has a reasonable and legitimate basis to believe has knowledge regarding the relevant issues. Finally, these depositions will be limited in time. Given the narrow focus, one hour should be plenty. No deposition involving these topics may exceed that length absent agreement of the parties or order by the Court. (Emphasis added; Dkt 356 at 4-5).

Plaintiff has served a Rule 30(b)(6) notice of deposition, and requested the depositions of former OLA attorneys Matt Brady and John Gholar, and the City has agreed to produce those witnesses in response to plaintiff's requests for deposition.[1]

However, in contravention of the clear boundaries set forth in this Court's April 27, 2013 order, plaintiff also sought OLA's litigation file created since the filing of this lawsuit in his Seventh Request to Produce served on April 29, 2013. Plaintiff's Request number 239 and the City's response are as follows:

> 239. All documents in the CPD Office of Legal Affairs file containing reference to the Hickman-Smith homicide and/or

---

[1] The Office of Legal Affairs of the Chicago Police Department ("CPD") is within the office of the General Counsel to the Superintendent. The General Counsel to the Superintendent advises the Superintendent of the CPD about legal matters as they relate to the administration of the CPD. Attorneys within the Office of Legal Affairs are also tasked with, among other duties, to responding to interrogatories and discovery requests served upon the CPD and providing legal assistance to CPD members concerning internal departmental legal matters. OLA is specifically directed to "provide assistance to the Office of the Corporation Counsel on police-related matters concerning civil suits…." (Addendum to General Order 06-01 at II.B.1., Exhibit 1).

3

>Plaintiff Nathson Fields and all documents in any Office of Legal Affairs file relating to the incident at issue in this litigation. This includes but is not limited to any documents relating to CPD Records Division ("RD") No. F 151 922, CPD homicide Nos. 84-44 and 84-45 (and/or "old" homicide Nos. 84-196 and 84/201). For any document(s) responsive to this Request that has already been produced in this litigation, please identify said document(s) by Bates number. To the extent the City asserts a privilege for any document responsive to this Request, please produce a detailed privilege log stating: (a) the date the document was created; (b) who authored the document; (c) the precise subject matter of each document; and (d) a detailed, specific explanation of why the document is privileged.
>
>**RESPONSE**: The City objects to this request based on the attorney-client privilege and work product doctrine. The only file in the possession of the Office of Legal Affairs regarding Nathson Fields was created subsequent to and as a direct result of the filing of this lawsuit, *Fields v. City, et al.*, 10 C 1168. Any non-privileged or non-work product documents in the file, such as copies of police reports the Office of Legal Affairs obtained and provided to the City's outside attorneys (Dykema) in response to Dykema's requests, have previously been produced to plaintiff in this litigation. The request for a privilege log is improper as it is unduly burdensome and would require the City and its attorneys to identify specific investigation to defend this lawsuit, revealing the City's attorneys strategy and mental impressions. In addition, the City has previously produced communications between the Office of Legal Affairs and other units of the Chicago Police Department regarding the request for the "subject file" (CITY-NF-001028-1117). (*See* Exhibit A to plaintiff's motion to compel).

The City first advised plaintiff of its position regarding OLA's litigation file after Court on May 1, 2013, and subsequently served the above timely response on May 21, 2013 (nine days early pursuant to its agreement). Plaintiff pursued this issue during a meet and confer on June 4, 2013, and then filed his motion a few days later. During the meet and confer, when asked why plaintiff needed a privilege log from OLA for its litigation file created in response to the filing of this lawsuit, plaintiff's counsel asserted the dubious claim that OLA had become the "tipping point" for this litigation. Plaintiff's motion is tantamount to asking this Court to reconsider its April 27, 2013 order and allow "carte blanche" discovery as to OLA.

4

It was also discussed during the meet and confer that plaintiff's counsel's pursuit of this file and a corresponding privilege log was inconsistent with the law and her own assertions of work product in this litigation. For instance, plaintiff disclosed the afternoon before Eugene Hunter's deposition several hundred pages of material plaintiff obtained relative to Mr. Hunter. When defendants' attorneys asked plaintiff's counsel where she obtained the documents so they could issue a subpoena to that source, plaintiff refused to identify from whom she obtained the documents. Again, in November 2012, plaintiff produced another approximately 5,000 pages of material, and again refused to identify where those documents came from, based on the work product doctrine. In addition to refusing to provide the basic information of where the documents came from, plaintiff's attorney has not supplied a privilege log of the correspondence involved in obtaining that information, or any other privilege log relative to her efforts to respond to defendants' requests to produce or obtain information in this litigation. During the meet and confer, plaintiff's attorney had no reasonable explanation why discovery should proceed unilaterally as she suggests, and none is forthcoming in her motion to compel.

Perhaps an even more troubling aspect of plaintiff's litigation regarding the alleged OLA "policy" was plaintiff's attorney's apparent failure to investigate the actual circumstances surrounding the 2006 subpoena issued by Jean Snyder, which plaintiff relied upon so heavily in the Renewed Motion for Sanctions. (Dkt 347 and 354). As this Court will recall, plaintiff made a series of speculative allegations, which the defendants strongly disputed, based upon plaintiff's criminal defense attorney Jean Snyder's 2006 subpoena to the CPD. These disputed allegations included a claim that the CPD had a "secret" policy of ignoring subpoenas for open investigative files without providing notice to the court or the requesting party. On May 7, 2013, ten days after this Court entered its order on the Renewed Motion for Sanctions, defendants' attorneys

deposed Ms. Snyder. Although Ms. Snyder could not specifically identify which documents she received in response to her 2006 subpoena, she believed she received documents from the CPD (or State's Attorney's Office) in 2006 and kept them in a file labeled "2006 Docs-Police Reports," and she believed they included the permanent retention file and the General Progress Reports (Snyder dep at 57-59, 69-71, 82-83, Exhibit 2), which were located at the warehouse in this litigation in separate files. Snyder testified nobody at the CPD told her the file could not be produced because it was open and further admitted she might have notes of her communication with the CPD in 2006 relating to her subpoena. (*Id*. at 47, 53).

Following the deposition, at the request of defendants' counsel, Ms. Snyder produced her notes. (*See* Snyder's notes, attached as Exhibit 3). The notes state, in pertinent part:

| | |
|---|---|
| 2/14/06 | Called legal affairs and talked to sgt./lawyer Matt Brady. He's going to have Martin's supervisor call me. He's Sgt. Malling. |
| 2/15 | got call from Sgt. Mailion and faxed him. Mailion, 312-745-5199 fax 312-745-6947 |
| 2/17/06 | called Malion. Says there shouldn't be a problem w/Smith-Hickman, Vaughn/White Egads; I need to find Paul Bailey. (Exhibit 3 at 1). |

These notes do not suggest that either OLA or then-Sgt. Fred Melean were unresponsive, obstructionist in any way, or sought to withhold any material from Snyder. To the contrary, far from suggesting Ms. Snyder's subpoena was "ignored" without notice because the file was considered open, these notes establish both OLA and then-Sgt. Melean were responsive and assisted Ms. Snyder with her subpoena requests.

It is surprising and unfortunate that plaintiff's counsel made the speculative and unwarranted assertions in her Renewed Motion for Sanctions without first consulting with Ms. Snyder or investigating the actual circumstances surrounding the 2006 subpoena. The notes establish the entire basis of plaintiff's speculative Renewed Motion, which resulted in this

6

Court's April 27, 2013 order, was inconsistent with what actually happened when Snyder issued her 2006 subpoena.[2] Particularly in light of Ms. Snyder's notes, which further undermine plaintiff's speculative policy claim against the CPD and OLA, plaintiff's motion should be denied.

## ARGUMENT

Plaintiff's motion to compel should be denied because plaintiff has copies of all the police reports relating to his case in OLA's civil litigation file, and the remaining documents in the file are attorney-client privileged and/or work product. Moreover, plaintiff is not entitled to a privilege log identifying the documents in OLA's civil litigation file. "Counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." *Ryan Investment Corp. v. Pedregal Day Cabo San Lucas*, 2009 WL 5114077 (N.D. Cal. 2009). "Privilege logs are commonly limited to documents created before the date litigation was initiated." *U.S. v. Bouchard Transportation*, 2010 WL 1529248 (E.D. N.Y. 2010). *See also Binion v. Glover*, 2009 WL 4730463 (E.D.Mich 2009)("With respect to documents relating to the … incident that were created after plaintiff's lawsuit was filed, the Court concludes that such documents need not be produced or placed on a privilege log because they would clearly be protected by at least the work product privilege."); *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 3919495 at *3 (N.D.Cal. 2009)(The plaintiff moved to compel "all communications that [one of the defendant's officers] ever had, at any time with anyone about [plaintiff] or [plaintiff's] software." The officer represented the only responsive documents in his possession were communications with

---

[2] Even without the benefit of Ms. Snyder's notes, which it did not yet have, the City contended Lt. Melean's testimony established the 2006 subpoena was not ignored or disregarded by the CPD, and that plaintiff's extrapolation of Lt. Melean's testimony in the Renewed Motion took it out of context and ignored other portions of his testimony. (*See* City's Response to Plaintiff's Renewed Motion, Dkt 353, at 3-8).

7

his attorneys created after the filing of the lawsuit. "Consistent with the prior rulings of this court, defendants need not provide a privilege log as to such privileged communications or work product."); *ISmart Int'l Ltd. v. I-Docsecure, LLC*, 2006 WL 2263910 at *3 (N.D.Cal.)(The dispute between the parties related to whether the plaintiff was required to log correspondence between it and its attorneys prior to the date the action was filed. The court held as follows: "1) correspondence generated after this action was filed need not be logged; 2) correspondence generated prior to the filing of this action, but in *direct* connection with preparation for the litigation need not be logged; 3) correspondence generated after the parties' dispute arose but before litigation became inevitable, or otherwise unconnected with preparation for the litigation should be logged, and 4) all other materials withheld on grounds of privilege should be logged."); *Interstate Indemnity, Co. v. Black*, 2003 WL 23269342 at *1 (M.D.N.C. 2003)(same); *Keenan v. Dresdner Bank AG*, 1999 WL 493342 (S.D.N.Y. 1999)(same); *Turner & Boisseau v. Nationwide Mutual Ins. Co.*, 1996 WL 129815 at *2 (D.Kan. 1996)("[I]t is obvious that any of the documents produced after this lawsuit was filed clearly implicates the work product rule and need not be disclosed.").[3]

Consistent with the case law, it would be an intrusion on defense counsel's work product and the attorney client privilege to require defense counsel to detail all of OLA's correspondence with Dykema and its correspondence to the CPD seeking information at Dykema's request.[4] As the department of the City of Chicago at issue in this litigation, the CPD is the client, and OLA acts as a legal adviser and conduit between Dykema and the CPD to obtain information.

---

[3] Plaintiff provides no explanation or showing why the Cook County Circuit Court case cited in her discovery letter supports his position. Indeed, plaintiff cited no law to this Court supporting his motion to compel.

[4] As for the "investigative file" referenced by plaintiff (*see* Motion to Compel, at 2), the City specifically stated in its response to Request No. 239 "the City has previously produced communications between the Office of Legal Affairs and other units of the Chicago Police Department regarding the request for the 'subject file.'" (*See* p. 4, *infra*, *citing* Exhibit A to plaintiff's motion to compel).

Dykema regularly corresponds with OLA in confidence regarding this litigation, and it would be unduly burdensome to require a privilege log for all OLA correspondence regarding this case. By way of illustration, plaintiff has sent 250 separate requests for production and numerous interrogatories, most of which Dykema has worked with OLA to comply with. Pursuant to plaintiff's request, defense counsel would have to prepare a detailed privilege log entry for each email or written correspondence between them and OLA, many of which might reveal attorney strategy or mental impressions. None of the exceptions to the attorney-client privilege or work product doctrine are applicable and plaintiff's attorneys have provided no similar post-litigation privilege log to the defendants. Plaintiff's motion to compel should be denied.

Furthermore, plaintiff's motion and request for OLA's civil litigation file exceeds the scope of this Court's April 27, 2012 order. This Court's order specifically limited OLA discovery to its activities and practices in responding to subpoenas to the CPD in criminal matters where the investigation is characterized as open, and on any involvement OLA had in dealing with requests made by Fields' criminal defense counsel in particular. Plaintiff's motion to compel the OLA civil file pertaining to this litigation is in direct conflict with this Court's order, and thus operates essentially as a motion to reconsider. Based on the clear limiting language of this Court's order, plaintiff should not even have issued Request number 239 in the first instance. This Court's order is dated April 27, 2013. Yet only two days later, on April 29, 2013, plaintiff submitted his request for the OLA file. (Exhibit 4). Plaintiff has persisted in requesting the OLA file and the privilege log and compounded his disregard of the order by filing this motion to compel. Plaintiff and his attorneys should therefore be monetarily sanctioned for willfully violating this Court's order.[5]

---

[5] In the alterative, should this Court grant plaintiff's motion to compel a privilege log, then the City requests that plaintiff correspondingly be compelled to provide a similar privilege log to the defendants

WHEREFORE, the City respectfully requests that this Court deny the plaintiff's motion to compel and award the City its attorneys' fees in responding to the motion to compel and request number 239, and for any other relief this Court deems appropriate.

Respectfully submitted,

By: s/ Daniel M. Noland
One of the Attorneys for Defendant,
CITY OF CHICAGO

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Dr.
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

---

and to identify the location where plaintiff obtained all of the documents he has produced in this litigation.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2013, I electronically filed the foregoing **City of Chicago's Response to Plaintiff's Motion to Compel** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

| | |
|---|---|
| H. Candace Gorman<br>Law Office of H. Candace Gorman<br>220 S. Halsted<br>Suite 200<br>Chicago, IL 60661<br>312.427.2313<br>hcgorman1@gmail.com | Stephen L. Garcia<br>Office of the Cook County State's Attorney<br>500 Richard J. Daley Center<br>Chicago, IL 60602<br>312.603.5475<br>sgarcia@cookcountygov.com |

and

Leonard C. Goodman
Melissa A. Matuzak
Law Offices of Leonard C. Goodman
53 W. Jackson
Suite 1220
Chicago, IL 60604
312.986.1984
lcgoodman@rcn.com
melissamatuzak@gmail.com

 

                                                    s/ Daniel M. Noland
                                                   Daniel M. Noland