IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATHSON E. FIELDS, Plaintiff, vs. CITY OF CHICAGO, et al., Defendants.

Docket No. 10 C 1168

Chicago, Illinois
July 17, 2013
10:00 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff: LAW OFFICES OF H. CANDACE GORMAN
BY: MS. H. CANDACE GORMAN
220 South Halsted Street
Suite 200
Chicago, Illinois 60661

For the Defendant: DYKEMA GOSSETT PLLC
BY: MR. DANIEL M. NOLAND
MR. TERRENCE M. BURNS
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606

COOK COUNTY STATE'S ATTORNEY
BY: MR. STEPHEN L. GARCIA
500 Richard J. Daley Center
Chicago, Illinois

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois 60604
(312) 435-5785

(The following proceedings were had in open court:)

THE CLERK: Case No. 10 CV 1168, Fields v. City of Chicago.

MS. GORMAN: Good morning, your Honor; Candace Gorman for the plaintiff.

MR. NOLAND: Good morning, your Honor; Dan Noland and Terry Burns for the City defendants.

MR. GARCIA: Stephen Garcia for defendants Wharrie and Kelley.

THE COURT: Okay. So the two motions that were noticed up for this morning, both by the plaintiff, one is called motion to compel with regard to Brannigan, B-r-a-n-n-i-g-a-n. The other is a motion to bar. There's a response to the second of those two motions. And then the City defendants have a motion that they filed at the same time. It's noticed up for next week, and it all seems interrelated to me.

MR. NOLAND: That motion is interrelated to the motion to bar Mr. Delorto.

THE COURT: Yes, because the person that you want to call is essentially to rebut something involving Ms. --

I'm sorry. The person that you have designated Mr. Delorto to testify about is the person that you're asking to bar on the grounds that there was a late disclosure.

MR. NOLAND: Yes.

THE COURT: So they are interrelated.

So let me just ask. This isn't an attempt to telegraph a decision, but if you prevail on the motion to bar Ms. Langston, does that take the Delorto off the table?

MR. NOLAND: Yes.

THE COURT: Okay. So are you in a position to talk about the Langston thing?

MS. GORMAN: Yes, I am.

THE COURT: Okay.

MR. NOLAND: Then, Judge, on the other one we weren't able to get a response --

THE COURT: We'll talk about that in a second.

MR. NOLAND: We would like to.

THE COURT: It's a privilege issue. We'll talk about that in a second. I'm going to give you time to file a response.

Let's talk about -- so we're dealing now with a motion that is noticed up for the 23rd called defendants' motion to bar. Okay.

Ms. Gorman, talk to me.

MS. GORMAN: About the motion to bar?

THE COURT: Yes.

MS. GORMAN: Your Honor, we gave the only address that we had for Ms. Langston. Ms. Langston --

Do you want the long version?

THE COURT: You know what, you have got the whole courtroom to yourself. You can give me as long a version as you want until I get tired of it, in which case I will tell you.

MS. GORMAN: Thank you.

THE COURT: All right.

MS. GORMAN: Ms. Langston was the only witness at the time of the murders to give any kind of description of the perpetrators. We were never able to contact her. Our investigator --

And in the criminal case, she was never --

THE COURT: She wasn't called, I think.

MS. GORMAN: She wasn't called.

Plaintiff, or defendant -- then defendants' attorneys, criminal attorneys, were not able to find her for the first trial. For the second trial, she was in prison, and --

THE COURT: Oh, okay.

MS. GORMAN: -- for whatever reason they could not get her there.

We tried to contact her, our investigator.

THE COURT: So in the second trial, though, there was a stipulation about how she would testify, if I'm understanding the motion correctly.

MS. GORMAN: Correct. And it's based on the police

report.

THE COURT: Understood, okay.

MS. GORMAN: And so we had our investigator try to find her prior to the City's investigator finding her.

THE COURT: Okay.

MS. GORMAN: Our investigators found her in, I want to say -- I'm trying to remember which state -- Missouri.

THE COURT: Missouri.

MS. GORMAN: She was living in Missouri. She refused to cooperate. She said she did not want to talk about it. She did not want to have anything to do with it. We left her alone.

I never had her address at that point. My investigator said that she asked that the attorneys not be given her address, and I never tried to contact her.

When the City obtained an affidavit from her, that was before the Court last --

THE COURT: So this is after your investigators talked to her but before the last court date?

MS. GORMAN: Correct.

THE COURT: Okay.

MS. GORMAN: The City's investigators talked to her about a year ago and they obtained an affidavit, but it was after our investigator had tried to talk with her.

THE COURT: Oh, okay.

MS. GORMAN: So their affidavit was about a year ago.

THE COURT: Okay.

MS. GORMAN: This year I decided she is an important witness, especially for the innocence proceeding.

THE COURT: The state court thing, in other words.

MS. GORMAN: The state court thing.

And so I sent her a letter, and I gave it to our investigator because I did not have an address and I didn't want her to think that he had broken his communication with her. I gave her a letter and I explained why she was important.

I explained to her that she was the only witness, that my client had been on Death Row for 12 years. He was found not guilty. I showed her --

Her husband was the one that testified against Mr. Fields at the criminal trial and her brother, but they both --

THE COURT: Is the husband also named Langston?

MS. GORMAN: No. It's John Morris, and actually it's her ex-husband now.

THE COURT: Okay.

MS. GORMAN: They both retracted their statements afterwards and said they were pressured by the police.

So I sent her all of that, the retractions and a letter explaining why she was important, I want to say a

couple of months ago and never heard anything. And then she contacted our investigator, the one who had tried to talk to her before, and said that she was coming through Chicago. She was moving from Missouri and that she would be willing to talk with us.

So we met with her. That was June 23rd. She was on her way. She said she wouldn't tell us where she was going. She said she was going to Wisconsin and it was somewhere in the Milwaukee area. We met with her for approximately six hours on the 23rd. We got the statement from her. I didn't know if I would be able to use it without getting a deposition from her, but I wanted to at least see what I could get from her at the time.

So when you ordered us to give a last known address, I told our investigator he had to give us the address that she had given him previously, and he had no address for her for where she was going.

THE COURT: Okay. So the address that you then gave when I directed you to give the last known address was the Missouri address?

MS. GORMAN: Correct.

THE COURT: All right. And there's a transcript that is attached to the motion from the June 27th hearing where you say she's -- I think it's page 25. You say:

"She lives in Wisconsin. She was coming through

Illinois."

I asked: "Does she live within a hundred miles of the courthouse?" You said "Milwaukee."

So that's based on what she told you then, but you're telling me she had not given you an address at that point.

MS. GORMAN: Correct, your Honor.

THE COURT: All right.

MS. GORMAN: She has since contacted our investigator, and she also changed her phone number, or the phone was disconnected or something.

She contacted our investigator, who then told her she should contact her attorney, Melinda Power, but that she was willing to come back for a deposition in the innocence hearing because she understood that that was important.

THE COURT: Is there a -- I get the impression, I think, or maybe it's more than an impression, there's a date for that?

MS. GORMAN: No, there is not, your Honor.

What happened was she was coming to Chicago again and she was willing to do it on that date.

THE COURT: Okay.

MS. GORMAN: The state's attorney said he was not available on that date, and so now my hope is that we can get her to come back before the innocence hearing, but I don't have any confirmation that we can even reach her.

THE COURT: I know you have told me before, but remind me currently that hearing -- when currently that hearing is set for.

MS. GORMAN: It's set for the week of the 19th of August.

THE COURT: August, okay.

And you're one of the lawyers in the state court innocence proceeding as well.

MS. GORMAN: Correct.

THE COURT: All right. So the state of affairs with regard to her deposition is that there's nothing scheduled. It sounds like she expressed some willingness to sit for a deposition for that but there is nothing scheduled yet.

As you stand there right now, do you have an address for her in Wisconsin?

MS. GORMAN: I do not, your Honor.

THE COURT: You have got a phone number, though? I mean, somebody could look --

MS. GORMAN: Someone I think has a phone number for her now.

THE COURT: All right. I'm going to skip ahead a few steps before I have Mr. Noland or Mr. Burns talk because I want to ask you this question. So let's now flip over to the motion that you filed to preclude their investigator. I mean, the response essentially says -- I'm boiling it down -- until

Ms. Langston was added to the witness list, which was pretty late in the scheme of things, no reason to call Mr. Delorto because we would only be calling Mr. Delorto to attempt to impeach or, for want of a better word, impeach Ms. Langston.

MS. GORMAN: Could I just --

THE COURT: Do you agree or disagree with that?

MS. GORMAN: I disagree with the premise. Ms. Langston was on both witness lists since the first 26(a)(1s).

THE COURT: Well, maybe I oversimplified it a bit too much then. I think more of the thrust of it is we didn't know that Ms. Langston was going to come in and say what's in the affidavit that you obtained from her in the latter part of June until we got that, and that's why we need to add Mr. Delorto because presumably the predominant purpose for which he would be testifying would be to say, you know, I talked to her in 2012, she was -- you know, nobody made any threats to her, et cetera, et cetera, and she said exactly the opposite of this.

MS. GORMAN: Well, she didn't say exactly the opposite.

THE COURT: Well, she said some things that were different than what's in there now.

MS. GORMAN: Actually I think they were on notice in their own affidavit because they gave her a typed-up affidavit

that basically said what they wanted her to say, and then she handed in a handwritten note that said she -- I didn't bring the exhibit with me -- that she --

THE COURT: It's Exhibit C to their motion.

MS. GORMAN: -- that she didn't see --

THE COURT: She wrote in the --

Paragraph 4. This is the July 12th, 2012, statement. Paragraph 4 says:

"I don't recall any of the facts about the murders," and then there's handwritten, "other than two guys running and heard two shots."

That's what you are referring to?

MS. GORMAN: That's correct, your Honor, and that's really the key to this. She didn't see the murder. No one has ever said or claimed that she did.

THE COURT: No. The key thing, though, the crucial thing -- maybe it's not the only crucial thing, but a very important thing for your side that's in the June 23rd statement is "I've never seen Mr. Fields before, and he's definitely" -- her word -- "not one of the men I saw running from the building immediately after the shooting."

So that's pretty crucial.

MS. GORMAN: Correct.

THE COURT: And the defendants get that statement in the latter part of June, at the tail end of June.

MS. GORMAN: But what they --

I'm sorry.

THE COURT: That statement which is dated the 23rd of June, they couldn't have gotten it before she made it.

MS. GORMAN: Right.

THE COURT: Right.

MS. GORMAN: But what they did have before was her description of two very light-complected men running.

THE COURT: Yes, I understand.

How many witnesses are on everybody's witness lists in this case? Is it like 400 or something like that, or 300?

MS. GORMAN: We have not really done witness lists yet.

THE COURT: No, the 26(a)(1s), I mean.

MS. GORMAN: Hundreds.

THE COURT: Yes, okay.

MR. GARCIA: Judge, may I interrupt for a second? I am here primarily to observe. I have something in front of Magistrate Valdez at --

THE COURT: See you later.

MR. GARCIA: Thank you, Judge.

(Mr. Garcia exited the courtroom.)

THE COURT: Okay. Mr. Noland.

MR. NOLAND: Your Honor, most of what is said -- your Honor understands our motion, what the factual background is

that Mr. Delorto was disclosed --

THE COURT: So as --

MR. NOLAND: -- rebuttal.

THE COURT: As you stand there right now, have you gotten a subpoena on Ms. Langston yet?

MR. NOLAND: No.

THE COURT: You haven't, okay.

And other than this Missouri address, have your folks been able to ascertain any other addresses for her?

MR. NOLAND: No. That weekend or those days after that hearing a few weeks ago, we did look and we sent -- somebody tried to serve her in the address that Ms. Gorman provided.

THE COURT: Missouri.

MR. NOLAND: In Missouri we were unable to serve her, not there.

We also tried to find somewhere in Milwaukee through prior family contacts, unable to do it. And we also reached out for a Ms. Power, who was the attorney or is the attorney that Ms. Langston has.

THE COURT: Has she spoken to you or hasn't spoken to you?

MR. NOLAND: She sent an email saying, declining to accept service, and she did not provide an address for her, but now she is accepting service for Ms. Gorman's subpoena.

THE COURT: Okay.

MS. GORMAN: That was for the one when the client -- when Ms. Langston was here or was willing to have her deposition but the state's attorney couldn't do it.

THE COURT: Okay. Well, look, I mean, just to be fair here, the proposition of Ms. Langston testifying -- I mean, this is somebody who did not testify in either of the criminal cases -- the odds of her actually testifying and the proposition that she would be called to testify from somebody probably went from a fairly low number to an extremely high number as of the 23rd of June, which is the date she signed her affidavit.

So it's difficult for me to fault, frankly impossible for me to fault, the defendants for not identifying, you know, with any kind of specificity a witness who would largely be called purely for impeachment purposes a person who, among the hundreds in here, was at the fairly low end of the scale until it was made clear that, you know, she had moved up the list quite a ways.

So I just don't think it would be appropriate -- assuming Ms. Langston is, you know, actually still in the cards as a possible witness, I don't think it would be appropriate to prevent the defendants from calling even though this all happened -- by all of this, I mean both Langston and Delorto -- happened very late in the process and maybe even a

little bit after the process.

So if Langston is going to get called -- if I'm going to let people call Langston, then I'm going to let people call Delorto, okay. That's A.

B is I don't think that there was -- it would be hard for me to say that there was noncompliance with the directive that I gave to disclose the last known address or disclose the address if they gave the only one they had.

Now, I guess I'm just going to say this. One of the things that concerns me here is the possibility that there is deliberate ignorance of Ms. Langston's whereabouts, okay. So I don't know whether it's feasible, although I can't come up with any reason why it wouldn't be -- I don't know whether it's feasible if she ends up giving a deposition in the innocence case to piggyback onto that. I mean, we have got the same lawyers on one side. We have got the state's attorney on all sides. You guys aren't a party to that, but I would assume that there's a way of doing that.

I mean, I think that's -- well, that was at least proposed with regard to somebody else. It was Earl Hawkins or somebody like that, I think. So that ought to be doable. Yes, it's after the close of discovery, but whatever.

And so I guess my inclination would be to say, number one, you're not just going to be able to call her cold at the trial. Okay. So if the state of affairs remains in its

current status, no address for Langston, therefore, can't find her, defendants can't find her to lay a deposition subpoena on her, then I'm not going to let her testify. You're not going to be able to call her cold at the trial. Okay.

So maybe somebody should pick up the phone and call Melinda Power and say: Hey, we really need your person to testify. How about you agree to accept service or how about you cough up an address? Okay, and then it gets done, because if she is not deposed in my case with these people for the City having the opportunity to cross-examine her or to question her before the trial, she will not testify in this case, period. Okay.

If, on the other hand, there is a way of arranging a deposition relatively soon, you know, let's say within the next month or so, either a standalone deposition for this case or a piggyback deposition with whatever happens in the innocence case, and I'm indifferent as to the two of those, then, fine, she gets to testify and so does Delorto.

I mean, I think that's about the best guidance I can give you at this point on that stuff.

MS. GORMAN: Thank you.

THE COURT: So I'm just going to --

What I'm going to do is I'm going to table both of those motions for now and we'll see how everybody shakes out, and then I will worry about it at the next status or whenever.

So flipping over then to the thing about Mr. Brannigan, so when would you be in a position to file something?

MR. NOLAND: By Monday, your Honor.

THE COURT: Fine. So this is on the motion to -- this is document -- hang on a second.

(Brief interruption.)

THE COURT: This is document number 395. The response -- a response is to be filed by -- Monday is the 22nd, right? Yes, the 22nd of July.

Do you want to file a reply or do you just want to come in and talk?

MS. GORMAN: Just come in and talk.

THE COURT: Let's see. I've got to think something through here for a second. I could do it next Wednesday at 9:30. If you're not available next Wednesday, it would have to be the following Monday or Tuesday.

MR. NOLAND: There's a status on July 30th.

THE COURT: Why don't we just talk about it then.

MS. GORMAN: That's fine.

THE COURT: If you want a couple more days to file your response, why don't I say the response is due on the 24th.

And then you said the status is on the 30th or the 31st?

MS. GORMAN: 30th.

THE COURT: Okay. So the motion is entered and continued to the status on July 30th.

And let's just use that for now as the date to which these other two motions are going to be entered and continued although you may not have that sorted out yet.

All right, anything else? You know, I said that and I'm just going to erase it. Never mind. See you later.

MR. BURNS: Thank you, your Honor.

MR. NOLAND: Thank you, your Honor.

MS. GORMAN: Thank you, your Honor.

THE CLERK: Were you talking about the motion to bar?

THE COURT: The motion to bar that was up today, which is docket number 395 --

I'm sorry. I gave you the wrong motion.

THE CLERK: Okay.

THE COURT: I gave you the wrong motion. Sorry.

MS. GORMAN: 399.

THE COURT: 399.

MS. GORMAN: 389.

THE COURT: 389.

MR. NOLAND: The motion to bar, 393, will not be presented next Tuesday.

THE COURT: We'll take that off the call for the --

393 we'll take off the call for the 23rd of July.

Yes, thanks.

MS. GORMAN: Thank you.

MR. NOLAND: Thank you.

THE CLERK: There was a motion to compel, too?

THE COURT: That is the one that is noticed up for next Tuesday. That's the one we're moving. Okay.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

*/s/ Laura M. Brennan* July 22, 2013

______________________________ _________________

Laura M. Brennan
Official Court Reporter Date
Northern District of Illinois