1               IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3

4  NATHSON E. FIELDS,         )
                            )
5              Plaintiff,  )  Docket No. 10 C 1168
                            )
6           vs.          )
                            )
7  CITY OF CHICAGO, et al.,  )  Chicago, Illinois
                            )  June 27, 2013
8            Defendants.  )  10:30 a.m.

9

10              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY

11

APPEARANCES:

12

13  For the Plaintiff:    LAW OFFICES OF H. CANDACE GORMAN
                         BY:  MS. H. CANDACE GORMAN
14                     220 South Halsted Street
                     Suite 200
15                     Chicago, Illinois  60661

16

For the Defendant:    DYKEMA GOSSETT PLLC
17                     BY:  MR. PAUL A. MICHALIK
                     10 South Wacker Drive
18                     Suite 2300
                     Chicago, Illinois  60606
19

20                     COOK COUNTY STATE'S ATTORNEY
                     BY:  MR. DANIEL M. NOLAND
21                         MR. STEPHEN L. GARCIA
                     500 Richard J. Daley Center
22                     Chicago, Illinois

23

24         LAURA M. BRENNAN - Official Court Reporter
        219 South Dearborn Street - Room 2102
25             Chicago, Illinois  60604
                (312) 435-5785

1    (The following proceedings were had in open court:)

2        THE CLERK:  10 C 1168, Fields v. City of Chicago.

3        THE COURT:  Good morning.

4        MS. GORMAN:  Good morning, your Honor; Candace Gorman

5    for the plaintiff.

6        MR. NOLAND:  Good morning, your Honor; Dan Noland for

7    the City defendants.

8        MR. MICHALIK:  Paul Michalik for the City defendants.

9        MR. GARCIA:  Stephen Garcia for defendants Wharrie

10   and Kelley.

11       THE COURT:  So do we have anything up other than the

12   motion to substitute the person?

13       MS. GORMAN:  Just the status.

14       THE COURT:  And then the status, okay.

15       And I think we have dealt with -- that I have ruled

16   on these things but they're still showing up as pending

17   motions.  So there was the motion to depose Earl Hawkins after

18   fact discovery.  I already dealt with that, right?

19       MS. GORMAN:  Correct.

20       THE COURT:  Then there was the motion for an order to

21   show cause as to the state's attorney's defendants.  I think I

22   dealt with that, too.

23       MR. GARCIA:  Yes.

24       THE COURT:  So you can terminate, Augie, motions 359

25   and 365.

1    Okay.  So let's talk about -- let me hear what you

2  have to say on the motion to substitute Mr. DeRobertis or

3  Mr. Mussotto for Mr. Henslee.  And you don't -- you do not

4  need to deal with the admissibility of the underlying record

5  because I am not going to make a ruling on that one way or

6  another at this point.

7    MS. GORMAN:  You want my --

8    THE COURT:  I just want you to respond to the rest of

9  the motion.

10    MS. GORMAN:  When we were up last time, you gave them

11  permission.  This was someone that they just added in in the

12  last two weeks.  Apparently when they added it in, this person

13  in, they didn't know he was deceased.

14    THE COURT:  Well, it's not apparent.  It's admitted.

15    MS. GORMAN:  Well, I don't know when he died.  They

16  were saying he died sometime in --

17    THE COURT:  Oh, maybe he died within the two-week --

18    He didn't die within the two-week period.

19    MR. NOLAND:  Not that I'm aware of.

20    THE COURT:  Yes, okay.

21    MS. GORMAN:  I'm saying there is no due diligence.

22    THE COURT:  You're saying that if they had really

23  wanted to call this person, they would have figured out way,

24  way, way before that that he was six feet under.

25    MS. GORMAN:  Right.

1    THE COURT:  What about that?  That was kind of my

2    initial -- initial, not my only reaction.  It was my initial

3    reaction to the motion.  Wait a second.  You just discovered

4    after you listed this guy as a witness that he was dead.  That

5    must mean this was kind of an afterthought to begin with.

6    And you told me that this all related back to

7    Mr. Fields' deposition which I think I was told was taken in

8    February of 2012.

9    MR. NOLAND:  That's true.

10    THE COURT:  Okay.  So where is the diligence?

11    MR. NOLAND:  These witnesses were identified as

12    discovery was closing so that we could make sure that nothing

13    was overlooked and that individuals who were in documents that

14    we may want to admit at the trial will be able to get those

15    in.

16    And going through the file, going through Mr. Fields'

17    deposition, we saw that this issue was overlooked, and we had

18    not identified these individuals.  That's why we filed the

19    initial supplemental disclosure.  Mr. Henslee was the primary

20    person on this particular document that the Court --

21    THE COURT:  That's the one that you attached here.

22    MR. NOLAND:  That's correct, your Honor.

23    THE COURT:  Exhibit A.

24    So I'm assuming, and I probably don't have to assume

25    because you probably told me before, but at the moment I'm

1    assuming that at Mr. Fields' deposition, did you stick this

2    document in front of him at some point or at least ask him

3    about the subject of the document?

4         MR. NOLAND:  I believe it was identified as

5    Plaintiff's Exhibit 6.

6         THE COURT:  All right.  So he was asked about it, and

7    I assume he testified something about it as to whether Mr.

8    Andrews did or didn't actually visit him.

9         MR. NOLAND:  He testified, I believe, that he did not

10   know Mr. Andrews in 1980 at the time of this and that he, Mr.

11   Andrews, did not visit him.

12        THE COURT:  Okay.

13        MR. NOLAND:  And, your Honor, just so it's clear,

14   this document doesn't necessarily mean that Mr. Andrews and

15   Mr. Fields got together on this date.

16        THE COURT:  It just says they signed in.

17        MR. NOLAND:  It just says --

18        THE COURT:  Signed to visit.

19        MR. NOLAND:  Yes.

20        THE COURT:  Yes, all right.  And whoever --

21        Assuming that this -- you know, if I didn't rule in

22   Ms. Gorman's favor on this particular motion, in other words,

23   that you are now attempting to authenticate the document, I

24   take it that whoever it is that authenticates the document is

25   not going to say, oh, yes, I know that Andrews met with

1  Fields.  They're just saying this is a record, this is how we

2  keep the records, this is my signature, I signed off on this

3  thing, those foundational kind of things, right?

4  Is there more?

5  MR. NOLAND:  For the most part, yes.

6  THE COURT:  Okay.  What more?

7  MR. NOLAND:  What I think he can add is that he does

8  recall on a couple of occasions El Rukns coming down to visit

9  other El Rukns.

10  THE COURT:  Who is the he?

11  MR. NOLAND:  Mr. DeRo --

12  THE COURT:  DeRobertis.

13  MR. NOLAND:  DeRobertis.

14  THE COURT:  So the guy who signed off on the very

15  bottom.

16  MR. NOLAND:  So he does remember generally incidents.

17  A couple incidents like this doesn't necessarily mean that

18  30 years later he's going to be able to say, I remember this

19  specific incident.

20  THE COURT:  Okay.  So just take a little side trip

21  here for a second into what else is going on in the case since

22  it's a status hearing, too.  So what else is going on?

23  MS. GORMAN:  Your Honor, this is the close of

24  discovery on Monday.

25  THE COURT:  Fact discovery?

1          MS. GORMAN:  Fact discovery.

2          THE COURT:  Fact discovery.

3          MS. GORMAN:  There are some open issues.  I've made a

4    list of them.  I don't know if you want to go through them

5    now.

6          THE COURT:  I said talk about what's going on, so I

7    guess that's a yes.  Let me strap myself in and put the helmet

8    on and get ready to go.

9          Okay, I'm ready.

10         MS. GORMAN:  Well, there's the 30(b)(6) deposition

11   that you allowed us to take on the issue of the open files.

12   We are waiting still for --

13         Last time we were in court, they had filed a motion

14   to strike our requests for documents from the Office of Legal

15   Affairs.

16         THE COURT:  No, I think it was your motion to compel

17   actually.  It may have been a motion to strike, but you filed

18   a motion to compel, I think.

19         MS. GORMAN:  Okay, I'm sorry.  And you denied it

20   then.

21         THE COURT:  I denied your motion.

22         MS. GORMAN:  And you also said if I had done it a

23   different way, you know, that would have been more reasonable.

24   So I sent them a letter that day adopting the language from

25   the Court, and they agreed to give me a privilege log.

1    THE COURT:  Yes, I think what I said is that if there

2    was a narrowed request that asked for documents about the

3    existence, location and so on of the missing file, I would

4    basically require a privilege log.  So you basically did that.

5    MS. GORMAN:  They're still getting it to me.

6    THE COURT:  But you're planning to.

7    MR. NOLAND:  Yes.

8    THE COURT:  All right.

9    MS. GORMAN:  So the 30(b)(6) deposition is going to

10   take place outside --

11   THE COURT:  After you get that.

12   MS. GORMAN:  Correct.

13   THE COURT:  As long as it doesn't -- as long as

14   nobody ever comes back to me and says, now we have to move

15   this other date because of this one thing, I'm good with that.

16   MS. GORMAN:  Right.

17   THE COURT:  Okay.

18   MS. GORMAN:  And I think most of the other issues are

19   like that.  There's some open discovery.  We had a discovery

20   conference.  I think it was almost two weeks ago now.  They

21   gave me some of the things that they still had not been able

22   to find, they found.  Other things they are still looking for,

23   so they're looking for them and hopefully getting them to me,

24   or at least a response that they don't have them.

25   MR. NOLAND:  If I can make a point on that subject?

1    THE COURT:  Sure.

2    MR. NOLAND:  There were some things that we had asked

3 the plaintiff's counsel to do with respect to some of their

4 answers to our discovery, and we did just get some revised

5 answers.  We think there may be some issues with that.

6    THE COURT:  You're still talking about that, okay.

7    MS. GORMAN:  We took the deposition.  The last

8 defendant's deposition was defendant Brannigan.  In the course

9 of his deposition, I tried to ask --

10    THE COURT:  This was the guy with the gun or that you

11 thought was going to have the gun, but you have worked that

12 out.

13    MS. GORMAN:  We worked that out.

14    THE COURT:  Yes.

15    MS. GORMAN:  This is also the individual who was

16 interviewing potential witnesses in this case.  We had that

17 issue.

18    THE COURT:  Oh, you're making me dredge up ancient

19 memories, okay.  Right, I know what you are talking about.

20    MS. GORMAN:  I wanted to talk about that with him at

21 his deposition about the people that he had interviewed, and

22 there was an objection on the basis of attorney/client

23 privilege.  I still don't have the transcript.  I should have

24 it tomorrow.

25    THE COURT:  Well, you will get -- you know, you will

1  do whatever you need to do.  You will get it on file and I
2  will deal with it.

3          MS. GORMAN:  Okay.

4          THE COURT:  I'm just going to make a note.  There may
5  be an issue regarding Brannigan deposition.  All right.

6          MS. GORMAN:  The City set up two depositions that
7  they had to cancel for various reasons, and we're agreed to do
8  both of those outside the close of discovery.

9          MR. NOLAND:  Those names are Jackie Clay and Tremel
10 Davis.

11         THE COURT:  Okay.

12         MS. GORMAN:  On May 30th, the last day I could file
13 written discovery, I made one more request to produce.  It's
14 an issue that also came up in Mr. Brannigan's deposition on
15 that same day, and he stated --

16         THE COURT:  You said Brannigan.

17         MS. GORMAN:  This was Brannigan again.

18         He stated that El Rukn reports that he had done while
19 he was working with the federal El Rukn task force that were
20 also submitted to the City were destroyed by the ATF office,
21 but he thought that there were copies in the City because he
22 had given copies anyway to the City.

23         THE COURT:  Okay.

24         MS. GORMAN:  So I made a request for those from the
25 City.  And if they do not have them, and I won't know until

| | |
|---|---|
| 1 | probably Monday, then I would like to do a subpoena to the |
| 2 | Feds to see what, if anything -- |
| 3 | THE COURT:  So before you start subpoenaing the |
| 4 | federal government, there's this whole series of -- it's not a |
| 5 | whole series.  It's a couple of hoops that you have to jump |
| 6 | through, and depending upon the -- it's a reg.  It's called |
| 7 | the Touhy regulation, spelled like the street, I think, or |
| 8 | the -- excuse me -- the avenue.  Let me get that right.  And |
| 9 | it's in -- |
| 10 | If you're talking about DOJ, is it DOJ? |
| 11 | MS. GORMAN:  It's ATF. |
| 12 | THE COURT:  ATF.  So it's going to be -- |
| 13 | ATF, are they part of DOJ or are they part of |
| 14 | Homeland Security? |
| 15 | MS. GORMAN:  Actually I've done a subpoena to them |
| 16 | already, and it went -- |
| 17 | THE COURT:  They just responded to it. |
| 18 | MS. GORMAN:  It was responded to. |
| 19 | THE COURT:  Okay. |
| 20 | MS. GORMAN:  This was early on in the case. |
| 21 | THE COURT:  Well, I'm just warning you that -- |
| 22 | MS. GORMAN:  It's a process. |
| 23 | THE COURT:  -- sometimes they insist on compliance |
| 24 | with these little hoops that you have to jump through. |
| 25 | MS. GORMAN:  There was also -- |

1          THE COURT:  I will worry about that when I have to.

2          MR. NOLAND:  Your Honor, may I?

3          THE COURT:  I will worry about that when I have to.

4  I mean, if you're going to object to it, then wait until it

5  happens and then object.

6          MR. NOLAND:  No.  I was going to point out that we

7  are responding Monday, but we don't have any --

8          THE COURT:  You're not going to have those.

9          MR. NOLAND:  It's going to be --

10          THE COURT:  So now you know.

11          MS. GORMAN:  Yes.

12          THE COURT:  You might as well just go ahead and

13  serve.

14          MS. GORMAN:  I will just get the subpoena.

15          We viewed some -- as you know, we viewed lots of

16  files in the basement of 51st and Wentworth.  There were five

17  in particular that we wanted to have that related

18  specifically, we think, to Mr. Fields' case.  We were --

19          They objected to providing them.  I think they

20  provided two, objected to the other three.  They told me I

21  could go in and review the files in more depth to tell them

22  why I wanted them, which I did.  We had a conference about it,

23  and I understand they're still thinking about two of those

24  files.  They gave me one of the three.

25          MR. NOLAND:  It is our position to stand on the

1  objection to those other two files.

2  MS. GORMAN:  I guess I will be doing a motion to

3  compel on that.

4  THE COURT:  All right, I will worry about that when I

5  have to.  That's going to be my response to pretty much

6  everything, just so you know.

7  MS. GORMAN:  The last issue that I have is regarding

8  Mr. Zinder, who I'm sure this Court does not recall, but back

9  in --

10  THE COURT:  Oh, I definitely don't recall him.

11  MS. GORMAN:  It was back in 2011.

12  THE COURT:  Is there still a McDonald's across the

13  street there, at least someplace that you can eat, on 51st

14  across from --

15  MS. GORMAN:  There's a Burger King.

16  THE COURT:  Oh, it was something back when they used

17  to --

18  Do they still have a court down there?

19  MS. GORMAN:  Yes.

20  THE COURT:  I had cases in there from time to time.

21  I just tried to make sure I could park in the McDonald's

22  parking lot and hope that I didn't get towed.  Anyway, so go

23  ahead.

24  MS. GORMAN:  Mr. Zinder was corporation counsel,

25  assistant corporation counsel.

1      THE COURT:  Is this David Zinder?

2      MS. GORMAN:  David Zinder.

3      THE COURT:  He's a private attorney now.  He has a

4  case in front of me, as a matter of fact.

5      MS. GORMAN:  Well, in 2011 I was trying to get the

6  Houston file.  The Houston file, Houston v. Partee is a

7  case --

8      THE COURT:  Yes.

9      MS. GORMAN:  --  that overlaps a lot with Mr. Fields'

10  case.  The City lost its file, the county either lost or

11  destroyed in the course of business, and the court file is

12  missing.  We tried through the archives.

13      THE COURT:  Is the court file from the state court or

14  from here?

15      MS. GORMAN:  It was filed here.  It was in front of

16  Judge --

17      THE COURT:  When you say it's missing?

18      MS. GORMAN:  We went to the archives.

19      THE COURT:  It wasn't there?

20      MS. GORMAN:  They don't have it.

21      So I subpoenaed Mr. Zinder because he was the

22  attorney at the time.  He gave us 300 pages that he had.

23      In the course of his letter --

24      THE COURT:  I'm surprised actually that he had

25  anything.

1          MS. GORMAN:  In the course of his letter to me back

2     then, he said he had 20 to 30 boxes of documents from when he

3     was working with the City, and he wanted to be paid for his

4     hourly rate going through those to find those 300 pages.

5          THE COURT:  Out of curiosity, what was the hourly

6     rate?

7          MS. GORMAN:  I don't remember.

8          THE COURT:  Okay.

9          MS. GORMAN:  He finally gave up on that.

10         THE COURT:  That's a smart move on his part.

11         MS. GORMAN:  Now, about six weeks ago I received

12    documents from the City, and Mr. Zinder's name came up in

13    relation to Mr. Fields' case, and it's a document that shows a

14    request for Mr. Zinder of certain files from the Office of

15    Legal Affairs.

16         THE COURT:  Mr. Zinder is asking for the files?

17         MS. GORMAN:  Correct.

18         THE COURT:  Okay.

19         MS. GORMAN:  And it was the file for the

20    Hickman-Smith murders and the Vaughn-White murders which

21    impacted my client.

22         So I sent him another subpoena and asked him if he

23    had anything since he had 20 to 30 files.  The attorney that

24    brought the subpoena over to his paralegal, he wasn't in.  The

25    paralegal said they shredded everything.

1          THE COURT:  Okay.

2          MS. GORMAN:  So when he responded to the subpoena, he

3   said he doesn't have anything.  And I asked him if it was

4   shredded and if he had any record of what was shredded, and he

5   got upset I think is a proper description.  He left me a

6   voicemail telling me that he shredded more than a hundred

7   files that he had from his work with the City, but they were

8   copies and he doesn't want to --

9          THE COURT:  You were raising your hand a second ago,

10  Mr. Noland.

11         MR. NOLAND:  Mr. Zinder is not here to defend

12  himself.  I believe that he did send a letter, detailed

13  letter, to Ms. Gorman, which I did see, in which, if this is

14  about taking his deposition out of time, Mr. Zinder said he

15  will sit for a deposition.  In his letter he disputed the

16  allegations that Ms. Gorman has made.

17         THE COURT:  Okay.

18         MS. GORMAN:  Actually, that's the problem.  He

19  wouldn't say whether he would sit for his deposition, and

20  that's --

21         THE COURT:  Well, I guess there tends to be only one

22  way to find out these things.

23         MS. GORMAN:  He has been served.  He accepted service

24  of the notice of deposition.  He said he hadn't decided if he

25  would actually sit for it.  So that would be taking place.

1     THE COURT:  Well, you know what to do if he doesn't
2  show up.
3     MS. GORMAN:  I think the last --
4     THE COURT:  I can tell you the next time he's going
5  to be in front of me.  It's a while.  The next time he's going
6  to be in front of me --
7     These little things I have, I can remember case
8  numbers.  He's in here on the -- let's see, 11 C 3756.  Yes, I
9  just moved it actually.  He's not back in here until October.
10  He was supposed to be in in a couple weeks, but we're waiting
11  for a state court decision.
12     MR. NOLAND:  Judge, just in that respect --
13     THE COURT:  You could come here.
14     MR. NOLAND:  Sorry.  Judge, just in that respect, I
15  believe the last paragraph of Mr. Zinder's letter stated to
16  Ms. Gorman that he was unavailable on the date --
17     THE COURT:  The particular date?
18     MR. NOLAND:  -- of July 1st and that he would be
19  willing to sit.  That's my recollection.
20     THE COURT:  You will get it sorted out, I'm sure.
21     MS. GORMAN:  And I think --
22     THE COURT:  Generally speaking, lawyers who have
23  cases in front of judges do not want to be on the butt end of
24  a motion for order to show cause, so I think you will probably
25  get what you need there.

1      MS. GORMAN:  Thank you.  I think the last issue was

2  one with Sandra Langston.

3      MR. NOLAND:  Judge, a couple of days ago, plaintiff's

4  counsel supplied a letter and an affidavit of a person by the

5  name of Sandra Langston.  And the letter states that Ms.

6  Langston is represented by Melinda Power, and the affidavit

7  is -- it goes to the third page.  It's basically a two-page

8  detailed affidavit.

9      THE COURT:  Who is Sandra Langston?

10     MR. NOLAND:  Sandra Langston was interviewed by the

11  police in the initial stage of the investigation.  She told

12  the police at that time --

13     THE COURT:  You mean of the underlying murder

14  investigation?

15     MR. NOLAND:  Yes, the Smith-Hickman murders.

16     THE COURT:  Yes.

17     MR. NOLAND:  She made a statement to the police at

18  that time.  She was never used as a witness and never

19  identified or -- any individuals.

20     Our investigator talked to her about a year, and she

21  basically said she couldn't remember anything about it other

22  than a couple of guys running away to the getaway car.

23     The plaintiff's counsel apparently met with her a

24  couple of days ago and tendered this affidavit which has

25  substantially new and different information from --

1      THE COURT:  In other words, you got an affidavit from

2   Ms. Gorman --

3      MR. NOLAND:  Yes.

4      THE COURT:  -- recently?

5      MR. NOLAND:  I have it here if the Court would like

6   to look at it.  Probably the most --

7      THE COURT:  Let's get to what you're going to ask.

8   You want to take her deposition.

9      MR. NOLAND:  Yes, we do.

10      THE COURT:  Okay.

11      MS. GORMAN:  And I'm objecting.  They interviewed her

12   more than a year -- a year ago.  They got a statement from her

13   which they had typed up in advance of the meeting, and she

14   actually added in in handwriting --

15      THE COURT:  Let me see both of them, just out of

16   curiosity.  I'm not sure that the content of it really has

17   much to do with what I have to decide.

18      (Brief interruption.)

19      THE COURT:  So the shorter one is the earlier one.

20      MR. NOLAND:  Yes.

21      THE COURT:  Right?  Okay.

22      (Brief interruption.)

23      THE COURT:  Do you have any idea what she means when

24   she refers to a goon squad?

25      MS. GORMAN:  That was -- Mr. Hickman-Smith was the

1    leader of the goon squad, the person that was murdered.

2        (Brief interruption.)

3        THE COURT:  Let me make sure I understand sort of the

4    sequence of events here.  So Ms. Langston's name appears

5    somewhere, I'm assuming, in the police reports somewhere, but

6    you said she did not testify at any of the trials in the

7    criminal cases.

8        MR. NOLAND:  Right.  There was a stipulation we read

9    at the 2009.

10       THE COURT:  Stipulation about what?

11       MR. NOLAND:  About what she did.

12       THE COURT:  What she would say.

13       MR. NOLAND:  What she would say that plaintiffs --

14       THE COURT:  In the second trial, not the first trial.

15       MR. NOLAND:  Yes.

16       THE COURT:  All right.  And then somebody --

17       I mean, I assume she was interviewed.  Around the

18   time of the July 2012 affidavit, the shorter of the two, she

19   was interviewed by somebody on behalf of some of the -- by

20   we'll just call them the City defendants as opposed to the

21   state's attorney defendants.

22       MR. NOLAND:  Yes.

23       THE COURT:  Okay.  And I don't know, but I guess I

24   will ask, and I guess you don't have to answer me because it

25   probably would be work product, but I don't know if it was an

1    attorney or if it was an investigator, but, you know, it's a

2    pretty succinct affidavit.  I was 19 years old.  I don't

3    remember the shooting and the murders.  I didn't witness the

4    murders.  I didn't tell the police that I witnessed the

5    murders.  I don't know anything about the murders.  I don't

6    know anything about the facts.

7           And then she adds in, other than two guys running and

8    heard two shots, and then says the attorneys and the police

9    never threatened me or they acted professionally.  I mean, did

10   the investigator ask her, or whoever it was that interviewed

11   her, ask her other questions?  Is there some sort of an

12   interview memo?

13          MR. NOLAND:  There is no other writing with respect

14   to this interview.

15          THE COURT:  That answers the second half of my

16   question.

17          And the first half, did the person ask her other

18   questions?  Has to have, right, because this is a typed-up

19   interview.  I assume that this person isn't out there with a

20   printer.

21          MR. NOLAND:  I'm not certain exactly how it went

22   down, but I believe that he had spoke to her in advance, and

23   she was saying, you know, I don't remember anything about it.

24          And then when they speak again, and she says, well, I

25   did see a couple people running from the scene, and so that

1   was the extent of the interview.  She had nothing to add, and

2   we determined that she would not be a witness at the trial.

3           THE COURT:  And then when she was interviewed more

4   recently by the plaintiff's side, this was -- oh, Ms. Matuzak

5   notarized it.  She's one of the lawyers in the case.

6           Okay.  I mean, I guess I will just say to you, you

7   want to take her deposition.  Why, I guess; what are you

8   looking to --

9           MR. NOLAND:  The most important thing, your Honor, is

10  the last line of the second page of the affidavit which she is

11  --

12          THE COURT:  She says:  I've looked at a picture of

13  Fields.  It's identified.  I explained to Ms. Gorman's

14  investigator I've never seen this person before, and he is not

15  one of the men who ran from the building.

16          MR. NOLAND:  Yes.

17          THE COURT:  Okay.  I mean, did whoever it was that

18  interviewed her back in 2012 show a picture of anybody after

19  she said, I saw two guys running?

20          MR. NOLAND:  No, did not show any pictures.  And the

21  reason would be because she could not identify anybody based

22  upon her statements was the understanding, that she would not

23  be able to identify.

24          THE COURT:  I don't really see that in here in the

25  original affidavit.  And she puts in here she saw two guys

1 │ running.

2 │       MR. NOLAND:  But when she says that she doesn't

3 │ remember anything about it other than that, saying two guys

4 │ running, our belief and based on the past 29 years and a

5 │ stipulation of the 2009 trial, there would be no reason to

6 │ show her photos.

7 │       THE COURT:  Okay.

8 │       MS. GORMAN:  Can I add one more?

9 │       THE COURT:  It's not necessary.

10 │       MS. GORMAN:  Okay.

11 │       THE COURT:  I mean, you know, this doesn't strike me

12 │ as much different from anybody else.  I mean, there is no

13 │ requirement that people take depositions of people.  And,

14 │ quite honestly, who knows whether Ms. Langston is going to be

15 │ available for trial or not, and if she's not, none of this

16 │ stuff is coming in.  No, I am not going to -- we're not going

17 │ to start reopening discovery based on, you know, witnesses

18 │ that people had an opportunity to depose before.

19 │       I mean, everybody understands, and I've got to think

20 │ in this case more than any, that people can have different

21 │ recollections at a different point in time.  And that's not a

22 │ comment that this is a different recollection.  I'm honestly

23 │ not so sure that there is anything all that terribly

24 │ inconsistent between these two affidavits.  There's just more

25 │ information in one of them than there is in the other one.

1          So I'm going to give this back to you.

2          MR. NOLAND:  May I make another comment?

3          THE COURT:  Sure.

4          MR. NOLAND:  We would like to depose her on Monday.

5    They didn't provide --

6          THE COURT:  I understand.  You can't.

7          MR. NOLAND:  -- an address.

8          THE COURT:  I understand.  You can't.

9          MR. NOLAND:  I could --

10          THE COURT:  Is discovery closed?

11          MR. NOLAND:  Discovery closes on Monday.

12          THE COURT:  So you're coming here on Thursday saying,

13    I want to take her deposition on Monday.

14          MR. NOLAND:  Yes.  We received --

15          THE COURT:  And so you're going to have to subpoena

16    her.

17          MR. NOLAND:  I don't have an address.

18          THE COURT:  You couldn't possibly have -- you

19    couldn't possibly comply with the terms of Rule 45(b) about

20    reasonable notice, could you?

21          MR. NOLAND:  I believe that the provision of Rule 45

22    with respect to that is -- "reasonable" is the term, is the

23    operative term, and I'm not certain there is a specific date.

24          THE COURT:  I think that's probably right.  Let me

25    just find it here.

1    (Brief interruption.)

2        THE COURT:  It may not even be in the rule.  It may

3    just be sort of a judicial gloss on it.  If you can get her

4    served --

5        MS. GORMAN:  Your Honor, she lives in Wisconsin.  She

6    was coming through Illinois.  That's how we managed to --

7        THE COURT:  Does she live within a hundred miles of

8    the courthouse?

9        MS. GORMAN:  Milwaukee.

10       THE COURT:  It's actually pretty close.  Hang on a

11   second.  Let me just look.  If she's outside, she resides

12   outside the district, you can serve it within a hundred miles

13   of the place of the deposition.  All right.  Let's look at

14   something here.

15       (Brief interruption.)

16       THE COURT:  It's actually within a hundred miles.

17   It's 90-something.

18       Well, look, here's the deal.  I'm not -- I mean,

19   you're telling me that discovery closes on the 1st of July.

20   Discovery closes on the 1st of July.  I am not going to extend

21   discovery for this.  Okay.  I am not going to extend

22   discovery.  I said what I'm going to say about whether it's

23   reasonable notice or not.

24       I will tell you this because, again, I'm not really

25   persuaded of diligence here because, you know, for the reasons

1  that I have already described.  If, you know, you can't get

2  her served or she doesn't show up or whatever it is, the odds

3  of me granting a motion to compel or an order to show cause

4  after the fact are pretty much nil.  But, you know, you have

5  still got two days, two business days, left on discovery.  So

6  I'm not going to say you can't try to serve her with a

7  subpoena.

8          If you're going to make a --

9          Is this somebody you're adding to your Rule 26

10 disclosures?

11         MS. GORMAN:  She was on both of ours all along.

12         THE COURT:  Okay.  Oh, she was on the Rule 26

13 disclosures already?

14         MS. GORMAN:  From the very beginning, on both sides.

15         THE COURT:  Oh, really?  Okay.  Well, again, that

16 doesn't change anything I have to say.

17         So what did you want to say to me, Mr. Noland?

18         MR. NOLAND:  Ms. Gorman, when she provided this on

19 Monday, did not provide an address.

20         THE COURT:  Okay.  So I guess, you know, the way that

21 that would -- the way that the cookie would crumble on that

22 one is that if this is somebody that the plaintiff might use

23 as a witness at trial and you know what the address is, you

24 are under a duty to reasonably, within a reasonable time,

25 supplement your 26(a)(1) disclosures.  And seeing as I don't

1  remember the date of that affidavit, if this is somebody you

2  are going to use, I would be getting Mr. Noland an updated

3  address like pronto.

4        MS. GORMAN:  I would love to, if I can.  She just

5  moved, your Honor.  She was moving from Columbus.

6        THE COURT:  You will give him the last known address.

7  Presumably you found her somewhere, right --

8        MS. GORMAN:  Right.

9        THE COURT:  -- because you interviewed her?

10        MS. GORMAN:  She was still at her last known.

11        THE COURT:  Okay.  Well, your duty to supplement is

12  today.  Okay.

13        MS. GORMAN:  Okay.

14        THE COURT:  I don't know what information you have,

15  all right.

16        What else?  You know, I have to circle back to the

17  issue on DeRobertis, but is there anything else before we get

18  back that to that?

19        MS. GORMAN:  I think it's everything.

20        THE COURT:  Okay.  So here is what I think about

21  this.  So when I back on the last court date -- I've got to

22  get the right notes up here.  There it is.  Sorry.  Bear with

23  me a second.

24     (Brief interruption.)

25        THE COURT:  The last court date was the 13th of June.

1    Yes.  It's two weeks ago.  And that's when I dealt with the

2    motion to bar.  I think it was maybe the second motion to bar.

3    I was assured with regard to this person, and I guess it must

4    have been Officer Henslee, H-e-n-s-l-e-e, who was, I think,

5    the person who had been originally designated, is that right?

6                MS. GORMAN:  Right.

7                THE COURT:  He was the one originally designated.

8                That he was an authentication witness, period, and

9    was going to be simply authenticating the exhibit.

10               And so what happened is then Mr. Henslee it turns out

11   not to be living anymore, and so the defendants now want to

12   substitute in -- yes, go ahead -- substitute in DeRobertis or

13   the other guy.

14               And is DeRobertis --

15               You have provided contact information on both of

16   these people or just one of them?

17               MR. NOLAND:  We cannot find the other man.

18               THE COURT:  Okay.  So it's DeRobertis or nobody

19   basically at this point.

20               MR. NOLAND:  IDOC has no record of either man.  What

21   I'm guessing is that they misspelled.

22               THE COURT:  But you provided information on

23   DeRobertis within a week of when you were in before.

24               MR. NOLAND:  Yes.

25               THE COURT:  Yes.

| | |
|---|---|
| 1 | MS. GORMAN:  Not contact information. |
| 2 | MR. NOLAND:  Yes, we did. |
| 3 | THE COURT:  That's what they say in the motion. |
| 4 | MR. NOLAND:  Your Honor, it's on page 5 of our -- |
| 5 | THE COURT:  It's Exhibit E -- no, I'm sorry.  It's |
| 6 | not Exhibit E. |
| 7 | MR. NOLAND:  Exhibit C, page 5. |
| 8 | THE COURT:  Exhibit C. |
| 9 | MR. NOLAND:  We redacted it for the Court because -- |
| 10 | THE COURT:  Yes, but there was an address in there. |
| 11 | MR. NOLAND:  Yes. |
| 12 | THE COURT:  Is it an actual address or does it just |
| 13 | say Illinois Department of Corrections? |
| 14 | MR. NOLAND:  We have an actual address.  I believe |
| 15 | it's the actual address. |
| 16 | THE COURT:  Well, the question is:  Did you comply |
| 17 | with what I said?  In other words, you're asking me to |
| 18 | substitute a person.  You told me in the motion -- hang on a |
| 19 | second -- the additional disclosures provide contact |
| 20 | information for Mr. DeRobertis redacted in Exhibit C.  Now, |
| 21 | you didn't give me the unredacted version, so I don't know |
| 22 | what you gave him. |
| 23 | So what is it?  Is it an address or what? |
| 24 | MS. GORMAN:  Your Honor, on the -- |
| 25 | THE COURT:  I didn't ask you a question. |

1    MS. GORMAN:  Sorry.

2    THE COURT:  Just hang onto it.

3    MR. NOLAND:  I cannot say 100 percent.  I believe

4    it's his actual address.  I can find that out in 60 seconds.

5    THE COURT:  If you gave an address, I will permit the

6    substitution purely and exclusively as an authentication

7    witness, which is the only reason that I allowed you to call

8    the other guy before.  If somebody had said, well, it's an

9    authentication, plus he's going to testify about other things

10   about visits by El Rukns, I would have said, no, because you

11   weren't diligent.  Okay.

12       I left this little window on this particular witness

13   because I was told and understood, and this is the basis on

14   which I granted the motion, that he was to authenticate the

15   document and that's it.  So that's all you can call him for.

16   You can call him to authenticate the document.  There's not

17   going to be anything about, oh, I remember El Rukns come down

18   to visit, other El Rukns, which, frankly, probably wouldn't be

19   admissible anyway, but even if it is, there was no diligence

20   on that.  So that's what you can do.

21       So the motion to substitute is granted in part and

22   only to that extent.  And so you will decide whether you want

23   to depose the guy or not to ask him questions about

24   authentication.

25       MS. GORMAN:  Okay.

1        MR. NOLAND:  Your Honor?

2        THE COURT:  Yes.

3        MR. NOLAND:  He will be out of the country during the

4    trial.  Therefore, if the plaintiff -- in our motion we

5    requested, if the plaintiff declines the opportunity to depose

6    him, we would like to depose him in the next couple weeks.

7        THE COURT:  It doesn't change what I say about what

8    he can testify about.

9        MR. NOLAND:  Thank you.

10       THE COURT:  Yes.  So, you know, one of you takes his

11   deposition then.

12       MS. GORMAN:  And that's only if they provided contact

13   information.

14       THE COURT:  Yes.  That's if there was an address

15   provided.  I mean, if this just says something like Illinois

16   Department of Corrections or in care of, you know, defense

17   counsel or anything like that, then you haven't complied with

18   what I told you to do because the condition, even on Henslee,

19   was you had to give contact information within a very short

20   period of time.  So that's the ruling.

21       Okay.  Oh, another status date.  Let's say a month

22   out.  So I'm going to set it for the 30th of July at 9:30.

23   Okay, see you.

24       MS. GORMAN:  Thank you.

25       MR. NOLAND:  Thank you.

1          THE COURT:  7/30.

2          (Which were all the proceedings had in the above-entitled

3    cause on the day and date aforesaid.)

4

5

6                    C E R T I F I C A T E

7

8          I hereby certify that the foregoing is a true and

9    correct transcript of the above-entitled matter.

10

11

12   */s/ Laura M. Brennan*                    June 27, 2013

13

14   _____          _____
     Laura M. Brennan
15   Official Court Reporter                        Date
     Northern District of Illinois
16

17

18

19

20

21

22

23

24

25