1    STATE OF ILLINOIS   )
                         )  ss:
2    COUNTY OF C O O K   )

3

4

5        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT, CRIMINAL DIVISION

6

7

8

9    PEOPLE OF THE STATE OF ILLINOIS,   )
                                        )
10                  Respondent,         )
                                        )  No. 85 C 7651
11            vs.                       )
                                        )  Honorable Judge
12   NATHSON FIELDS,                    )  PAUL P. BIEBEL
                                        )
13                  Petitioner.         )

14

15

16

17        The discovery deposition of EARL HAWKINS,

18   taken before Carmella T. Fagan, C.S.R., R.P.R.,

19   Notary Public, pursuant to the Illinois Code of Civil

20   Procedure and the Rules of the Supreme Court thereof,

21   and pursuant to notice, at 219 South Dearborn Street,

22   in the City of Chicago, Cook County, Illinois,

23   commencing at 10:33 a.m. on the 19th day of August,

24   2013.

25

1       Q       Did he ever talk about being upset

2   about being evicted from the building?

3       A       No.

4       Q       At some point you filed a motion to

5   vacate the plea bargain agreement that you had with

6   the U.S. Attorney's Office; is that correct?

7       A       Yes.

8       Q       And you moved to vacate that because

9   you thought you were made promises that were not

10  being kept.  Would that be accurate?

11      A       I think we didn't reach a agreement.

12  I think that would be a better -- better way to say

13  that.

14      Q       Did you have a different understanding

15  of what the agreement was, or was there just no

16  agreement reached?

17      A       I had a different understanding of

18  what it -- what it was.

19      Q       What was your understanding of the

20  plea agree --

21      A       That I wouldn't get charged with no

22  murders.  But it end up they don't have to charge you

23  with murder to give you murder time.  So it don't

24  make no difference if you was charged with not a

25

1    murder, but you still end up with 50, 60 years of

2    murder time just like you got murder time.  I didn't

3    know that people could do that then, but that's what

4    happened.

5         Q       How much time did you think you were

6    going to get when you were cooperating with the

7    federal government?

8         A       When I was talking to them, I said,

9    "How much -- how much time could I get for this?"

10   They said, "You got to do some time, man, say, about

11   20 years."  Yeah, that's doable.  Yeah, that's

12   doable.

13        Q       So it was your understanding that you

14   were going to have to do 20 years?

15        A       (Witness nodding head.)

16        Q       And who was it that led you to think

17   that you were only going to get -- have to do 20

18   years?

19        A       Brannigan.

20        Q       Anyone else?

21        A       Say Brannigan for now.  Yeah.

22        Q       And when did you learn that you were

23   not going to get 20 years?

24        A       When I told you -- when I said I saw

25

1    Mr. Rapherson --

2          Q       When was that?

3          A       -- and what he said.  What was it, in

4    '91 sometime, '93 sometime, Mr. Rapherson, when I

5    referred to what he said, "If you don't like this

6    deal, we'll send your ass back to death row and you

7    fend for yourself."

8                  Oh, yeah, that's good now that I gave

9    all these statements, ain't no way in the world I

10   could fend for myself now.  That was my attitude.  If

11   I didn't say that to him, that's what I was thinking.

12         Q       Can you tell me how it was that

13   Mr. Brannigan led you to believe that you were going

14   to get 20 years?

15         A       Because I asked him.  I said, "Man,

16   what you think I'm going to end up with out of this,

17   for real man, man?"

18                 He said, "You got to do 20 years."  I

19   don't know if he was saying I was going to get 20

20   years or I was going to have to do 20 years, calendar

21   years.  But I was saying, you know, that's doable.

22   20 years is doable.

23         Q       When did --

24         A       For all the crimes that I was involved

25

1    in, 20 years is more than doable.

2        Q     When did this conversation take place?

3    Was this in your meetings with him back in '87, or

4    was this later?

5        A     Oh, they -- I thought this was

6    meetings when we was in Benard (sic) and in -- in --

7    in the Federal Building over there.

8        Q     So in the earlier meetings?

9        A     Yes.

10        Q     Was anyone else ever there when

11    Mr. Brannigan told you that?

12        A     No.  I'm not going to say nobody else

13    was there.

14        Q     You don't remember anyone else there?

15        A     I'm not going to say nobody else was

16    there.

17        Q     I don't understand.

18        A     Somebody else probably was there, but

19    I can't crystal clear say they was there, but I'm --

20        Q     I've got you.

21        A     -- going on the conversation me and

22    Mr. Brannigan had.

23        Q     Okay.  Did you ever go back and ask

24    Mr. Brannigan why he told you that, why he told you

25

1    that you were only going to have to do 20 years?

2        A        I think I asked him that several

3    times.

4        Q        What did he tell you?

5        A        "We'll work it out."  You know, I

6    said, "Man, but that ain't what you told me."

7                 He said, "We'll work it out.  It might

8    be a little more than what we said, but we'll work it

9    out."

10       Q        Did he ever work it out?

11       A        With 60 years?  I guess he did work it

12   out.

13       MS. GORMAN:  I think I'm done, but I just want

14   to look through my notes one last time.

15       MR. SEXTON:  Sure.

16       MR. STETLER:  No objection.  While you're

17   doing that, can we take a quick break or --

18       MS. GORMAN:  Yeah.  Sure.

19       MR. STETLER:  Great.

20                         (WHEREUPON, there was a brief

21                          recess had in the proceedings.)

22       MS. GORMAN:  Back on the record.

23   BY MS. GORMAN:

24       Q        Mr. Hawkins, you met with Mr. Sexton

25