**2**



PLAINTIFF'S
EXHIBIT
Fields 14
(Redacted Ver)

| COMMAND CHANNEL REVIEW · COMPLAINT REGISTER INVESTIGATION NO.: CHICAGO POLICE DEPARTMENT | 170712 | DATE INITIATED 10 Oct 89 |
|---|---|---|

**INVESTIGATOR SECTION**

TO: Commanding Officer          UNIT: 121 G

Please submit this Command Channel Review form through channels with the case file to
[X] the Internal Affairs Division          [ ] the Office of Professional Standards

---

[X] I Concur                                    [ ] Recommend Options Be Granted

[ ] I Do Not Concur*                           [ ] Recommend Options Not Be Granted

Review By _Jackie G Anderson_   Title    Commanding Officer

Unit    121 G          Date _10 Oct 89_

---

*STARTING WITH:*

[X] I Concur                                    [ ] Recommend Options Be Granted

[ ] I Do Not Concur*                           [ ] Recommend Options Not Be Granted

Review By _Lt Carl Merritt_   Title _Commanding Officer_

Unit    6/2          Date _21 oct 89_

---

[X] I Concur                                    [ ] Recommend Options Be Granted

[ ] I Do Not Concur*                           [ ] Recommend Options Not Be Granted

Review By _Toby Burton_   Title _Detective Commander_

Unit    610          Date _30 October 1989_

---

[X] I Concur                                    [ ] Recommend Options Be Granted

[ ] I Do Not Concur*                           [ ] Recommend Options Not Be Granted

Review By _Carl Deamus_   Title _Deputy Chief_

Unit    601          Date _31 October 1989_

---

[X] I Concur                                    [ ] Recommend Options Be Granted

[ ] I Do Not Concur*                           [ ] Recommend Options Not Be G

Review By _John J Townsend_   Title    Chief

Unit    601 - Detective Division          Date    31 October 1989

---

CPO-44.113 (2/84)          *A separate report proposing alternate findings and/or an alternate recommendation is required when "I Do Not Concur" has been checked. .

| C.R. NO. |
|---|
| 170712 |

**COMMAND CHANNEL REVIEW ·**
**COMPLAINT REGISTER INVESTIGATION NO.:** 170712
**CHICAGO POLICE DEPARTMENT**

DATE INITIATED: 10 Oct 89

**INVESTIGATOR SECTION**

TO: Clo                    UNIT: IAD

Please submit this Command Channel Review form through channels with the case file to
☑ the Internal Affairs Division        ☐ the Office of Professional Standards

---

☑ I Concur                              ☐ Recommend Options Be Granted

☐ I Do Not Concur*                      ☑ Recommend Options Not Be Granted

Review By _[signature]_                  Title  O/d

Unit  180                               Date  2 Nov 89

---

☐ I Concur                              ☐ Recommend Options Be Granted

☐ I Do Not Concur*                      ☐ Recommend Options Not Be Granted

Review By _____               Title _____

Unit _____                    Date _____

---

☐ I Concur                              ☐ Recommend Options Be Granted

☐ I Do Not Concur*                      ☐ Recommend Options Not Be Granted

Review By _____               Title _____

Unit _____                    Date _____

---

☐ I Concur                              ☐ Recommend Options Be Granted

☐ I Do Not Concur*                      ☐ Recommend Options Not Be Granted

Review By _____               Title _____

Unit _____                    Date _____

---

☐ I Concur                              ☐ Recommend Options Be Granted

☐ I Do Not Concur*                      ☐ Recommend Options Not Be Granted

Review By _____               Title _____

Unit _____                    Date _____

CITY-NF-07744

---

CPD-44.113 (2/84)     *A separate report proposing alternate findings and/or an alternate recom-     C.R. NO.
                       mendation is required when "I Do Not Concur" has been checked.

| COMMAND CHANNEL REVIEW · COMPLAINT REGISTER INVESTIGATION NO.: CHICAGO POLICE DEPARTMENT | 1 7 0 7 1 2 | DATE INITIATED 10 Oct 89 |

INVESTIGATOR OR SECTION

TO: Commanding Officer     UNIT:     121 G

Please submit this Command Channel Review form through channels with the case file to
☒ the Internal Affairs Division     ☐ the Office of Professional Standards

---

☒ I Concur     ☐ Recommend Options Be Granted

☐ I Do Not Concur*     ☐ Recommend Options Not Be Granted

Review By _Jackie G Anderson_ Title _Commanding Officer_

Unit _121 G_     Date _10 Oct 89_

---

☐ I Concur     ☐ Recommend Options Be Granted

☐ I Do Not Concur*     ☐ Recommend Options Not Be Granted

Review By _____     Title _____

Unit _____     Date _____

---

☐ I Concur     ☐ Recommend Options Be Granted

☐ I Do Not Concur*     ☐ Recommend Options Not Be Granted

Review By _____     Title _____

Unit _____     Date _____

---

☐ I Concur     ☐ Recommend Options Be Granted

☐ I Do Not Concur*     ☐ Recommend Options Not Be Granted

Review By _____     Title _____

Unit _____     Date _____

---

☐ I Concur     ☐ Recommend Options Be Granted

☐ I Do Not Concur*     ☐ Recommend Options Not Be Granted

Review By _____     Title _____

Unit _____     Date _____

CITY-NF-07745

---

CPD-44.113 (2/84)     *A separate report proposing alternate findings and/or an alternate recommendation is required when "I Do Not Concur" has been checked.

C.R. NO.
1 7 0 7 1 2

SUMMARY REPORT DIGEST-
COMPLAINT REGISTER INVESTIGATION NO.:
CHICAGO POLICE DEPARTMENT

| 1 7 0 7 1 2 |

DATE OF REPORT (DAY-MO-YEAR)

10 Oct 89

To be used in all cases that are to be classified as either EXONERATED, UNFOUNDED, NOT SUSTAINED, or
in SUSTAINED cases where the Disciplinary Recommendation does not exceed FIVE (5) DAYS SUSPENSION.

SUBMIT ORIGINAL AND 3 COPIES IF ASSIGNED TO SAME UNIT AS ACCUSED.
SUBMIT ORIGINAL AND 4 COPIES IF NOT ASSIGNED TO SAME UNIT AS ACCUSED.

TO:  SUPERINTENDENT OF POLICE
ATTENTION  ☐ ADMINISTRATOR IN CHARGE, OFFICE OF PROFESSIONAL STANDARDS
☒ ASSISTANT DEPUTY SUPERINTENDENT, INTERNAL AFFAIRS DIVISION

| FROM-INVESTIGATOR'S NAME | RANK | STAR NO. | SOCIAL SEC. NO. | EMPLOYEE NO. | UNIT ASSIGN. |
|---|---|---|---|---|---|
| Warren D. JOHNSON | P.A. | 6076 | | | 121 G. |

| ADDRESS OF INCIDENT | DATE OF INCIDENT - TIME | BEAT OF INCIDENT | LOCATION CODE* |
|---|---|---|---|
| 5101 S. Wentworth | 13 Jun 85 - various | 231 | 04 |

**ACCUSED**

| NAME | RANK | STAR NO. | SOCIAL SEC. NO. | EMPLOYEE NO. | UNIT ASSIGN. |
|---|---|---|---|---|---|
| 1. James E. MINOGUE | Sgt. | 825 | | | 177 |
| 2. Joseph J. BOGDALEK | Sgt. | 14674 | | | 011 |

| | SEX/RACE | D.O.B. | DATE OF APPOINTMENT | DUTY STATUS (TIME OF INCIDENT) | | PHYS. COND. CODE† |
|---|---|---|---|---|---|---|
| 1. | M/W | | 25 Mar 68 | ☒ ON DUTY  ☐ OFF DUTY | ☒ SWORN  ☐ CIVILIAN | 01 |
| 2. | M/W | | 14 Sep 70 | ☒ ON DUTY  ☐ OFF DUTY | ☒ SWORN  ☐ CIVILIAN | 01 |

| IF APPLICABLE - DATE ARRESTED/INDICTED | CHARGES | COURT BRANCH | DISPOSITION & DATE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |

**COMPLAINANTS**

| NAME | ADDRESS** | CITY STATE | TELEPHONE | SEX/RACE | D.O.B./AGE | PHYS. COND. CODE† |
|---|---|---|---|---|---|---|
| Nathson FIELDS | Menard, Ill. 62259 Menard Correctional Center | | 826-5071 | M/B | 19Nov53 | 01 |

**VICTIMS**

| NAME | ADDRESS** | CITY STATE | TELEPHONE | SEX/RACE | D.O.B./AGE | PHYS. COND. CODE† |
|---|---|---|---|---|---|---|
| | | | | | | |

**WITNESSES**

| NAME | ADDRESS** | CITY STATE | TELEPHONE | SEX/RACE | D.O.B./AGE | PHYS. COND. CODE† |
|---|---|---|---|---|---|---|
| | | | | | | |

☒ SEE ATTACHED SHEET FOR ADDITIONAL ACCUSED, COMPLAINANTS, VICTIMS, WITNESSES.

**ALLEGATIONS**

On Tuesday, 05 September 1989, at 0945 hours, Police Officer
Linda RISLEY, Star #14309 of the Internal Affairs Division, called Investigator
FUNDAREK #96 at the Office of Professional Standards on the PAX amd registered the
subject CR number.  CIVIL SUIT 89 C 5608

SEE PAGE TWO FOR ALLEGATIONS

CITY-NF-07746

**I.A.D. LOCATION CODES***

| | | | |
|---|---|---|---|
| 01 | Food Sales/Restaurant | 11 | Public Transportation Veh./Facility |
| 02 | Tavern/Liquor Store | 12 | Park District Property |
| 03 | Other Business Establishment | 13 | Airport |
| 04 | Police Building | 14 | Public Property - Other |
| 05 | Lockup Facility | 15 | Other Private Premise |
| 06 | Police Maintenance Facility | 16 | Expressway/Interstate System |
| 07 | CPD Automotive Pound Facility | 17 | Public Way - Other |
| 08 | Other Police Property | 18 | Waterway, Incl. Park District |
| 09 | Police Communications System | 19 | Private Residence |
| 10 | Court Room | | |

**I.A.D. PHYSICAL CONDITION CODES†**

| | |
|---|---|
| 01 | No Visible Injury - Apparently Normal |
| 02 | No Visible Injury - Under Influence |
| 03 | Injured, Not Hospitalized |
| 04 | Injured, Not Hospitalized - Under Influence |
| 05 | Injured, Hospitalized |
| 06 | Injured, Hospitalized - Under Influence |
| 07 | Injured, Refused Medical Aid |
| 08 | Injured, Refused Medical Aid - Under Influence |
| 09 | Deceased |
| 10 | Deceased - Under Influence |

** IF CPD MEMBER, LIST RANK, STAR, SOCIAL SECURITY, EMPLOYEE NOS. IN ADDRESS BOX, PAX/BELL IN TELEPHONE BOX.

CPD-44.112A (1/84)

C.R. NO.

170712

Briefly summarize the Investigation describing your efforts to prove or disprove the allegation(s). Indicate whether witnesses or evidence support or do not support the allegation(s).
In sustained cases ONLY, copies of the accused member's Summary of Previous Disciplinary Actions and Record of Previous Complimentary History will be included as attachments.

**SUMMARY**

        Investigation of this complaint has revealed that the complainant, Nathson FIELDS, was arrested, tried, and convicted of the HICKMAN & SMITH homicides which occurred on 28 April 1984. The complainant is awaiting the death penalty at Menard Correctional Center, and he filed the subject Civil Suit pro se from that institution.
        The complainant alleges that the investigating officers suppressed the "Street Files" connected with his case and that those "Street Files" contain information/evidence which would exculpate him.
        In their reports, the accused Officers deny the allegations, and this Investigator has been unable to establish the existence of any "Street Files" connected with the HICKMAN & SMITH homicides.
        During this investigation, this Investigator had occasion to speak with the Corporation Counsel handling the Civil Suit, Ms. Diane PEZANOSKI, and at that time she indicated that she intended to file a motion to dismiss the suit.

**ATTACHMENTS**

| INVESTIGATIVE REPORTS— SUPPORTING ALLEGATION LIST ATTACHMENT NUMBERS: | INVESTIGATIVE REPORTS— SUPPORTING ACCUSED MEMBER(S) LIST ATTACHMENT NUMBERS: | PHYSICAL EVIDENCE LIST ATTACHMENT NUMBERS: | TOTAL NUMBER OF ATTACHMENTS SUBMITTED WITH THIS FILE: |
|---|---|---|---|
| 1 & 3 | 4,5,6,7,8,9,10,11,12, 13,14,15,16,17, & 18 | | 18 |

Summarize the findings and recommendations. Rule violations will be cited by number only. One overall recommendation for Disciplinary Action will be made by the Investigator. The recommendation will be for ALL sustained findings; recommendations will NOT be made for each sustained allegation.
Example: 1. Violation noted, no disciplinary action warranted. 2. That the accused member be reprimanded. 3. That the accused member be suspended for ..... days (not to exceed 5 days).

**FINDINGS—RECOMMENDATIONS**

**FINDINGS:**      This investigation has been unable to uncover any wrong doing on the part of the accused Officers. This case should be filed as UNFOUNDED.

**RECOMMENDATION:**    No Disciplinary Action

CITY-NF-07747

"REVIEWED BY"

Sgt. Dwozlek 13.T's.

NOV 9 1989     UNF



| DATE INITIATED (DATE COMPLAINT WAS RECEIVED FOR INVESTIGATION) | DATE COMPLETED (DATE OF THIS REPORT) | ELAPSED TIME (TOTAL TIME, EXPRESSED IN DAYS) |
|---|---|---|
| 06 Sep 89 | 10 Oct 89 | 35 Days |

Investigator will initiate the Command Channel Review form by completing the Investigator's Section. | INVESTIGATOR'S SIGNATURE

IF NECESSARY, USE AN 8½ x 11" SHEET OF WHITE PAPER TO CONTINUE ANY ITEM.

## ALLEGATIONS

Allegation #1:     The complainant has alleged,  in a Civil Suit filed by him-
self from his jail cell,  that the accused,  Captain James B.
DELANEY,  Star #129 presently assigned to the 007th District,  violated his fifth,
sixth,  and fourteenth Constitutional Amendment Rights by failing establish
effective policies and procedures within his area to safeguard the complainant's
Constitutional Rights in that Department Member's under his command deliberately
suppressed written notes known as "Street Files"generated by their interviews with
hundreds of people during their year long intense investigation into the Talman
HICKMAN and Jerome SMITH homicides which occurred on 28 April 1984 at 706 E. 39th
Street.  The complainant was arrested for the above mentioned homicides.  The
complainant alleges that the written notes contain exculpatory material.


Allegation #2:     The complainant has alleged,  in a Civil Suit filed by himself
from his jail cell,  that the accused Officers,  Sergeant
Joseph J. BOGDALEK,  Star #14674 of the 011th District,  Sergeant James E. MINOGUE,
Star #825 of Unit 177,  Sergeant David O'CALLAGHAN,  Star #1159 of Unit 543,  Gang
Specialist Steven J. CASTO,  Star #15489 of Unit 710,  Gang Specialist Thomas J.
RICHARDSON,  Star #3385 of Unit 710,  Lieutenant Joseph P. MURPHY,  Star #435 of
Unit 622,  Lieutenant Robert E. EVANS,  Star #416 of the 004th District,  and
Detective Steven A. HOOD,  Star #11885 of Unit 612,  violated his fifth,  sixth,
and fourteenth Constitutional Amendment Rights by deliberately suppressing written
notes known as "Street Files"  generated by their year long intense investigation
into the Talman HICKMAN homicides which occurred on 28 April 1984 at 706 E. 39th
Street.  The complainant was arrested for the above mentioned homicides.  The
complainant alleges that the written notes contain exculpatory material.


CITY-NF-07748

CR# 1 7 0 7 1 2

CR# 1 7 0 7 1 2

## EVIDENCE

**ATTACHMENTS:**

1. Complaint Against Department Member

2. City of Chicago Inter Office Communication
   To:      ADS George SAMS
   From:    Gerald COOPER

3. Copy of Civil Suit 88 C 5608

4. Copy of the Criminal History of the Complainant
   Nathson FIELDS

5. Copy of the Arrest Report of the Complainant
   Nathson FIELDS

6. Copy of the Original Homicide Report and
   Supplementary Reports RD# F- 151922

7. Report of Attempt to Interview the Complainant

8. Copy of Registered Letter Sent to the Complainant
   Requesting Co-Operation

9. Report of Attempt to Locate any "Street Files"
   Connected with RD# F-151922

10. Report of Accused, Sergeant James E. MINOGUE
    Star #825 of Unit 177

11. Report of Accused, Lieutenant Joseph P. MURPHY
    Star #435 of Unit 622

12. Reports of Accused, Captain James B. DELANEY
    and Related Documents

13. Report of Accused, Detective Steven A. HOOD
    Star #11885 of Unit 612

14. Reports of Accused, Lieutenant Robert EVANS
    Star #416 of Unit 004 and Related Documents

15. Reports of Accused, Gang Specialist Stephen CASTO
    Star #15489 of Unit 710

16. Reports of Accused, Gang Specialist Thomas RICHARDSON
    Star #3385 of Unit 710 and Related Documents

17. Reports of Accused, Sergeant Joseph J. BOGDALEK
    Star #2033 of Unit 011 and Related Documents

CITY-NF-07749

2

18. Reports of Accused, Sergeant David O'CALLAGHAN
    of Unit 543 and Related Documents

CONFIDENTIAL: Produced Pursuant to
Protective Order Entered in 10 C 1168
CITY-NF-07750

**COMPLAINT AGAINST DEPARTMENT MEMBER**
CHICAGO POLICE DEPARTMENT

| | INITIAL COMPLAINT CATEGORY | C.R. NO. |
|---|---|---|
| | 14B | 170712 |

| TO COMMANDING OFFICER - INVESTIGATING UNIT | UNIT | MANNER COMPLAINT RECEIVED |
|---|---|---|
| General Investigation Section | 121 | ☐BELL ☒PAX ☐LETTER ☐IN PERSON |

| RECEIVED FROM COMPLAINANT BY—NAME | RANK | STAR/EMPL. NO. | UNIT NO. | DAY OF WK | DATE | TIME |
|---|---|---|---|---|---|---|
| RISLEY, | PO | | 121 | Tues | 05 Sept 89 | 0945 |

| REGISTERED WITH O.P.S. BY—NAME | RANK | STAR/EMPL. NO. | UNIT NO. | DAY OF WK | DATE | TIME |
|---|---|---|---|---|---|---|
| FUNDAREK, R. E. | INV. | 96 | 113 | SAME | | |

| | NAME | RANK | STAR NO. | UNIT NO. | SOCIAL SECURITY NO. | DUTY STATUS |
|---|---|---|---|---|---|---|
| 1. | | | | | | ☐ON ☐OFF |
| 2. | | | | | | ☐ON ☐OFF |
| 3. | | | | | | ☐ON ☐OFF |
| 4. | | | | | | ☐ON ☐OFF |
| 5. | | | | | | ☐ON ☐OFF |

ACCUSED

| LOCATION OF INCIDENT | DAY OF WK | DATE | TIME | TOTAL ACCUSED | TOTAL COMPL. | TOTAL WIT. |
|---|---|---|---|---|---|---|
| | | | | | | |

COMPLAINANT

| NAME | ADDRESS (STREET, APT. NO., CITY, STATE) | ZIP CODE |
|---|---|---|
| NATHSON, Fields | Menard Correctional Center | 62259 |

| HOME PHONE NO. | CONTACT AT | TIME | PHONE NO. |
|---|---|---|---|
| | Lock Box 711, Menard, Illinois | | |

| CHECK ONE | ADDITIONAL COMPLAINANT/VICTIM/WITNESS | | |
|---|---|---|---|
| C | V | W | NAME | ADDRESS (STREET, APT. NO., CITY, STATE) | PHONE NO. |

| C | V | W | NAME | ADDRESS | PHONE NO. |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FOR ADDITIONAL ACCUSED, COMPLAINANTS (C), VICTIMS (V), WITNESSES (W), USE ANOTHER FORMSET.
* IF CPD MEMBER, LIST RANK, STAR/EMPLOYEE, SOCIAL SECURITY NOS. IN ADDRESS, PAX/BELL IN PHONE NO. BOX.

NARRATIVE OF ALLEGATIONS

CIVIL SUIT 88C-5608

CITY-NF-07751

| INVESTIGATOR ASSIGNED | RANK | STAR/EMPL. NO. | UNIT NO. | SOCIAL SECURITY NO. |
|---|---|---|---|---|
| 1. Warren JOHNSON | P.A. | 6076 | 121G | |
| 2. | | | | |

| DATE ASSIGNED — TIME | DAY OF WK. | DATE ASSIGNED — TIME | DAY OF WK. |
|---|---|---|---|
| 1. 06 September 1989–1100Hrs. | Wed. | 2. | |

| CPD-44.202 (Rev. 11/84) | | C.R. NO. |
|---|---|---|
| | ATTACHMENT I | |

# WORKSHEET

**COMPLAINT AGAINST DEPARTMENT MEMBER**
CHICAGO POLICE DEPARTMENT

| | INITIAL COMPLAINT CATEGORY | C.R. NO. 170712 |

| TO COMMANDING OFFICER · INVESTIGATING UNIT | UNIT | MANNER COMPLAINT RECEIVED ☐BELL ☒PAX ☐LETTER ☐IN PERSON |

| RECEIVED FROM COMPLAINANT BY—NAME *Kesley, E* | RANK Po | STAR/EMPL. NO. 14309 | UNIT NO. 128 | DAY OF WK | DATE | TIME 1945 |
| REGISTERED WITH O.P.S. BY—NAME *Fundaul O.E* | RANK | STAR/EMPL. NO. | UNIT NO. | DAY OF WK Same | DATE | TIME |

**ACCUSED**

| | NAME | RANK | STAR NO. | UNIT NO. | SOCIAL SECURITY NO. | DUTY STATUS |
|---|---|---|---|---|---|---|
| 1. | | | | | | ☐ON ☐OF |
| 2. | | | | | | ☐ON ☐OF |
| 3. | | | | | | ☐ON ☐OF |
| 4. | | | | | | ☐ON ☐OF |
| 5. | | | | | | ☐ON ☐OF |

| LOCATION OF INCIDENT | DAY OF WK | DATE | TIME | TOTAL ACCUSED | TOTAL COMPL. | TOTAL WIT. |

**COMPLAINANT**

| NAME *Nathson Fields* | *ADDRESS (STREET, APT. NO., CITY, STATE) Menard Correctional Center* | ZIP CODE |
| HOME PHONE NO. CONTACT AT *Lock Box 711, Men, Ill* | | 62259 |

| CHECK ONE | | | ADDITIONAL COMPLAINANT/VICTIM/WITNESS | | |
| C | V | W | NAME | *ADDRESS (STREET, APT. NO., CITY, STATE) | PHONE NO. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FOR ADDITIONAL ACCUSED, COMPLAINANTS (C), VICTIMS (V), WITNESSES (W), USE ANOTHER FORMSET.
* IF CPD MEMBER, LIST RANK, STAR/EMPLOYEE, SOCIAL SECURITY NOS. IN ADDRESS, PAX/BELL IN PHONE NO. BOX.

**NARRATIVE OF ALLEGATIONS**

*Civil Suit 88C-5608*

CITY-NF-07752

**INVESTIGATOR ASSIGNED**

| | | RANK | STAR/EMPL. NO. | UNIT NO. | SOCIAL SECURITY NO. |
| 1. | | | | | |
| 2. | | | | | |

| DATE ASSIGNED — TIME | DAY OF WK. | DATE ASSIGNED — TIME | DAY OF WK. |
| 1. | | 2. | |

CPD-44.202A (Rev. 6/85)     **WORKSHEET**     | C.R. NO. | ATTACHMENT I |

| CITY OF CHICAGO | REPLY REQUESTED | | ACTION REQUIRED | | G15 | |
|---|---|---|---|---|---|---|
| INTER-OFFICE COMMUNICATION | YES | NO | YES | NO | DATE: 13 July | 19 89 |

**TO: ADDRESSEE(S)**

1. ADS GEORGE SAMS
   INTERNAL AFFAIRS DIVISION

   SUBJECT:

2.

   CIVIL SUIT NO.   89 C 5608

   United States District Court
   Northern District of Illinois

3.

**FROM** GERALD A. COOPER
EXECUTIVE ASSISTANT
TO THE SUPERINTENDENT

REFERENCE:

Nathson Fields v. City of Chicago, Et Al.

**MESSAGE**

Kindly forward to this office any investigation you may have relative
to the subject civil suit.

If an investigation has not been conducted, it is requested that one be
initiated either by the Internal Affairs Division or Office of Professional
Standards as appropriate.

If there are copies of photos in the file, please send two original copies
of same with the file.

SIGNATURE: *Gerald A. Cooper (mis)*

**REPLY**

TO:   EXECUTIVE ASSISTANT                                      5 SEPTEMBER 1989
      TO THE SUPERINTENDENT

A SEARCH OF OUR RECORDS INDICATES THAT A COMPLAINT REGISTER NUMBER WAS NEVER
ISSUED RELATIVE TO THIS INCIDENT.  ON 5 SEP 1989  COMPLAINT REGISTER NUMBER
170712 WAS OBTAINED RELATIVE TO CIVIL SUIT NUMBER 89C5608.  THIS CIVIL SUIT
IS BEING FORWARDED TO GENERAL INVESTIGAITONS SECTION, INTERNAL AFFAIRS FOR
THE PURPOSE OF CONDUCTING AN INVESTIGATION.

CITY-NF-07753

POLICE OFFICER L. RISLEY, 14309
RECORDS SECTION
INTERNAL AFFAIRS DIVISION

CR # 170712

ATTACHMENT 2

DATE OF REPLY:                          SIGNATURE:

Form 170                          EXTRA COPIES: WHEN THE SAME COMMUNICATION IS TO BE DIRECTED TO TWO OR THREE

AO 448 (Rev. 5/85) Summons in a Civil Action

# United States District Court

NORTHERN _____ DISTRICT OF ILLINOIS

EASTERN DIVISION

## SUMMONS IN A CIVIL ACTION

NATHSON FIELDS

V.

CITY OF CHICAGO, et al

CASE NUMBER: 88 C 5608    JUDGE DUFF

TO: (Name and Address of Defendant)

DET. MINOGUE

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

NATHSON FIELDS
#N-01682
P.O. BOX 711
MENARD, ILLINOIS 62259
    PRO SE

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

H. STUART CUNNINGHAM
_____
CLERK

JUNE 02, 1989
_____
DATE

NINETTE M. EORIO
_____
BY DEPUTY CLERK

CR # 170712

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

Plaintiff      Docket No. _____

v

Defendant      Judge Assigned:

          Magistrate Designated:

## CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE

Name of Party or Parties:     _____

                              _____

      In accordance with the provisions of Title 28, U.S.C. Sec. 636(c), the above named party or parties in the above captioned civil case hereby voluntarily waive their rights to proceed before a judge of the United States District Court and consent to have the case assigned to the designated United States Magistrate to conduct any and all further proceedings in the case, including trial and the entry of final judgment.

_____

Date

## ELECTION OF APPEAL TO A DISTRICT JUDGE

[Do not execute this portion of the Consent Form if the parties desire that the appeal lie directly to the Court of Appeals.]

      In accordance with the provisions of Title 28, U.S.C. Sec. 636(c)(4), the party or parties consenting to the reassignment of this case to a magistrate elect to take any appeal in this case to a district judge.

_____

Date



CITY-NF-07755

Note: Mail or deliver completed forms to the Office of the Clerk (Room 2008) Attention: Director of Office Services.

Revised 1/24/86

CR # 170712

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nathson Fields

_____

(Enter above the full name of
the plaintiff or plaintiffs in
this action)

        vs.

City of Chicago, et al, Fred Rice,

James Delaney, Joseph Murphy, Robert Evans,

Steven Hood, Joseph Bogdalek, Det. Minogue,

David O'Callaghan, Det. Castro, Det. Richardson,

Assistant State's Attorneys Randy Rueckert

and Lawrence Wharrie.

_____

(Enter above the full name of the
defendants in this action)

**88 C 5608**

Case No.

(To be supplied by
the Clerk)

JUN 29 1988

H. STUART Cunningham, Clerk

COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S.C.

I.   Previous Lawsuits:

    A.   Have you begun other lawsuits in state or federal court
        relating to your imprisonment?

                            YES  (  )   NO  (XXXX)

    B.   If your answer is yes, did any of these lawsuits deal with
        the same facts involved in this action or otherwise relate
        to your claim?

                            YES  (  )   NO  (XXXX)

    C.   If your answer to B is yes, describe each lawsuit in the space
        below. (If there is more than one lawsuit, describe the
        additional lawsuits on another piece of paper, using the same
        outline.)

CITY-NF-07756


CR # 170712

1. Parties to this previous lawsuit:

    Plaintiffs:    NOT APPLICABLE

    Defendants:    NOT APPLICABLE

2. Court (if federal court, name the district: if state court, name the county):    NOT APPLICABLE

3. Docket number:    NOT APPLICABLE

4. Name of judge to whom case was assigned:    NOT APPLICABLE

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)    NOT APPLICABLE

6. Approximate date of filing lawsuit:    NOT APPLICABLE

7. Approximate date of disposition:    NOT APPLICABLE

II. Place of present confinement: Menard Correctional Center, Look Box 711, Menard, Illinois 62259

A. Is there a prisoner grievance procedure in this institution?

    YES (XXX) NO ( )

B. If the facts in your complaint relate to your imprisonment, did you use the prisoner grievance procedure to seek relief?

    YES ( ) NO (XXX)

C. If your answer is YES:

    1. What steps did you take?    NOT APPLICABLE

    2. What was the result?    NOT APPLICABLE

CITY-NF-07757

-2-

CR # 170712
2

D. If your answer is NO, explain why not; The basis of this civil action

is beyond the authority and scope of a prison grievance committee

and is properly before the Federal Court.

III. Parties:

(In item A below, place your name in the first blank and place your
present address in the second blank. Do the same for additional
plaintiffs, if any.)

A. Name of plaintiff  Mr. Nathson Fields

Address  Menard Correctional Center, Look Box 711, Menard, Illinois 62259

(In item B below, place the full name of the defendant in the
first blank, his official position in the second blank, and
his place of employment in the third blank.
Use item C for the names, positions, and places of employment
of any additional defendants.)

B. Defendant  David O'Callaghan          is employed as  Detective

                            at Area One Violent Crimes, 155 West 51st Street,

Chicago, Illinois 60609

C. Additional Defendants:  SEE ATTACHED SHEETS

IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe
precisely how each defendant is involved. Include also the names
of other persons involved, dates, and places. Do not give any
legal arguments or cite any cases or statutes. If you intend to
allege a number of related claims, number and set forth each claim
in a separate paragraph. (Use as much space as you need. Attach
extra sheet if necessary.)

(1). On April 28, 1984, Talman Hickman and Jerome Smith were shot to death

at 706 Est 39th Street, in the City of Chicago. On June 13, 1985, plaintiff

was arrested and charged with the above-mentioned homicides. Plaintiff's

bench trial in the Circuit Court of Cook County commenced on June 17, 1986,

and culminated in a finding of guilty on June 27, 1986. Subsequently, plaintiff

was sentenced to death on September 19, 1986.

CITY-NF-07758

-3-

CR # 170712

ATTACHMENT 3

### ADDITIONAL DEFENDANTS

Defendant <u>City of Chicago</u> is a municipal corporation duly incorporated under the State of Illinois and as such is responsible for the policies, practices, and customs of the Chicago Police Department. The City of Chicago headquarters is located at 121 North La Salle Street, Chicago, Illinois 60602

#95, 3upt.

Defendant <u>Fred Rice</u> at all times relevant to this civil action was employed by the City of Chicago as Superintendent of Police for the City of Chicago, who, with his sub-chiefs, is responsible for formulating, implementing, and administering the policies, practices, and customs of the Chicago Police Department. The headquarters of the Chicago Police Department is located at 1121 South State Street, Chicago, Illinois 60605

#129, 007.

Defendant <u>James Delaney</u> is employed by the City of Chicago at all times relevant to this civil action as Watch Commander of the Chicago Police Department for Area One Violent Crimes and is responsible for the policies, practices, and customs of the police department within his area. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

Defendant <u>Randy Rueckert</u> is employed by the County of Cook at all times relevant to this civil action in the capacity of an Assistant State's Attorney within the Cook County State's Attorney's Office and is responsible for assisting in criminal prosecutions. The Cook County State's Attorney's Office is located at 2650 South California Avenue, Chicago, Illinois 60608

Defendant <u>Lawrence Wharrie</u> is employed by the County of Cook at all times relevant to this civil action in the capacity of an Assistant State's Attorney within the Cook County State's Attorney's Office and is responsible for assisting in criminal prosecutions. The Cook County State's Attorney's Office is located at 2650 South California Avenue, Chicago, Illinois 60608



CITY-NF-07759



CR # 170712

<u>ADDITIONAL DEFENDANTS</u> (Continued)

Defendant <u>Robert Evans</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

*11865, DET. 612,*

Defendant <u>Steven Hood</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

*14674, Sgt. 011,*

Defendant <u>Joseph Bogdalek</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

*#1001, 132, Sgt.*

Defendant <u>Joseph Murphy</u> is employed by the City of Chicago as a Sergeant within the Detectives Division of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

Defendant <u>Minogue</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

Defendant <u>Castro</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

Defendant <u>Richardson</u> is employed by the City of Chicago as a detective of the Chicago Police Department for Area One Violent Crimes and is responsible for investigating violent crimes. Area One Violent Crimes is located at 155 West 51st Street, Chicago, Illinois 60609

CITY-NF-07760



CR # 170712

ATTACHMENT 3

(2). In a pre-trial proceeding before the Honorable Thomas J. Maloney on

December 13, 1985, Assistant State's Attorney Randy Rueckert represented

to the Court that "no handwritten notes" commonly known as "street files"

existed with respect to the Talman Hickman and Jerome Smith homicides.

SEE EXHIBIT A - ATTACHED HERETO


(3). In a pre-trial proceeding before the Honorable Themis N. Karnezis

(sitting in the Hon. Thomas J. Maloney's stead) on January 13, 1986,

(SEE ATTACHED SHEETS)

V.   Relief:

State briefly exactly what you want the court to do for you.  Make
no legal arguments.  Cite no cases or statutes.


(i). Plaintiff is suing the City of Chicago in the amount of

$250,000.00 in compensatory damages.


(ii). Plaintiff is suing Fred Rice in his official capacity for $60,000.00

in compensatory damages and $70,000.00 in punitive damages and in his

individual capacity for $30,000.00 in compensatory damages and $35,000.00

in punitive damages.


(iii). Plaintiff is suing James Delaney in his official capacity for

$50,000.00 in compensatory damages and $60,000.00 in punitive damages

and in his individual capacity for $25,000.00 in compensatory damages and

$30,000.00 in punitive damages.


(SEE ATTACHED SHEET)

CITY-NF-07761

-4-

CR # 170712

STATEMENT OF CLAIM (Continued)

defense counsel William Swano who represented Earl Hawkins a co-defendant of
plaintiff; apprised the Court that "street files" had been subpoenaed, but have
not come in, according to Mr. Smeeton (defense counsel for plaintiff) who issued
the subpoenas for the street files.** SEE EXHIBITS B and C -ATTACHED HERETO

(4). During a pre-trial proceeding before the Honorable Thomas J. Maloney
on January 28, 1986, plaintiff's defense counsel namely Jack Smeeton informed
the Court that Assistant State's Attorney Randy Rueckert had agreed on a prior
occasion that he would tender the "street files" to defense counsel since he was
in possession of them. SEE EXHIBIT D - ATTACHED HERETO

Defense counsel Jack Smeeton related to the Court that he "specifically
requested" of the Chicago Police Department the "investigative street file" for
Talman Hickman and Jerome Smith homicides under the RD number listed and what
he received was another copy of police reports. SEE EXHIBIT E - ATTACHED HERETO
Defense counsel advised the Court that Assistant State's Attorney Randy Rueckert
indicated to him that "street files" in fact existed and that Mr. Rueckert was
going to provide copies thereof. SEE EXHIBIT E - ATTACHED HERETO

(5). During a pre-trial proceeding before the Honorable Thomas J. Maloney
on February 27, 1986, defense counsel indicated to the Court that within the
past week he received in the mail from Assistant State's Attorney Randy Rueckert
"general progress reports and street files" consisting of eight pages of notes
from detectives of the Chicago Police Department "all" dated April 28, 1984.
SEE EXHIBIT F - ATTACHED HERETO Defense counsel stated to the trial court,
"that as you will recall I subpoenaed these from the Police Department and
received nothing but the regular RD reports. SEE EXHIBIT F - ATTACHED HERETO

---

**\*\*/** "Street Files" are unofficial reports in the form of written notes compiled
  by detectives during course of criminal investigations, which are not
  systematically made a part of the official files, preserved from destruction,
  nor made known and available to criminal defendants.


CITY-NF-07762

CR # 170712
2

## STATEMENT OF CLAIM (Continued)

(6). Detective Joseph Bogdalek was assigned on April 28, 1984, to conduct a follow-up investigation into the Talman Hickman and Jerome Smith homicides with his partner Detective Minogue. SEE EXHIBIT G - ATTACHED HERETO

(7). Detective Robert Evans was assigned on April 28, 1984, along with his partner Detective Steven Hood to investigate the Talman Hickman and Jerome Smith homicides. During the course of the "ongoing investigation" Detective Robert Evans talked with approximately "one hundred" people. SEE EXHIBIT H - ATTACHED HERETO

(8). Detective David O'Callaghan was assigned on or about May 14, 1985, to investigate the Talman Hickman and Jerome Smith homicides. SEE EXHIBIT I - ATTACHED HERETO During the course of the investigation Detective David O'Callaghan talked with "hundreds" of people along with other detectives involved in the investigation. SEE EXHIBIT I - ATTACHED HERETO

(9). Sergeant Joseph Murphy was assigned in May of 1985, to investigate the Talman Hickman and Jerome Smith homicides. SEE EXHIBIT J - ATTACHED HERETO

(10). Detective Castro and Detective Richardson were assigned and/or involved with the investigation of the Talman Hickman and Jerome Smith homicides.

(11). The City of Chicago through its Police Department continue to engage in an unconstitutional practice of maintaining a dual filing system; where unofficial reports known as "street files" containing exculpatory material and discoverable memoranda are "concealed" from criminal defendants and their attorneys and the contents are not produced pursuant to discovery requests and subpoenas.

(12). The City of Chicago through its Police Department "concealed" the fact that unofficial reports known as "street files" that were compiled by detectives investigating the Talman Hickman and Jerome Smith homicides containing exculpatory information/ evidence existed by refusing to relinquish the discoverable material pursuant to a lawful subpoena served upon the Police Department by defense counsel.

CITY-NF-07763

CR # 170712
2

STATEMENT OF CLAIM (Continued)

(13). All detectives made party to this civil action who were assigned to investigate the Talman Hickman and Jerome Smith homicides interviewed "hundreds" of people during the course of a "year long" intense investigation; plaintiff did not receive none of the unofficial reports known as "street files" that was generated by the investigation (with exception of the eight pages of notes "all" dated April 28, 1984, that was mailed to defense counsel by Mr. Rueckert) notwithstanding a policy of the Police Department requiring "the recording of information during investigation of violent crimes and to preserved and submit unofficial reports known as "street files" to their Unit Supervisor for inclusion into an investigative file case folder"

(14). Assistant State's Attorney Randy Rueckert and Assistant State's Attorney Lawrence Wharrie were responsible for litigating the criminal lawsuit against plaintiff involving the Talman Hickman and Jerome Smith homicides; Randy Rueckert initially claimed that no "street files" existed, however, two month later, Randy Rueckert mailed to defense counsel eight pages of notes known as "street files" all dated April 28, 1984. Randy Rueckert in concerted effort with Lawrence Wharrie "destroyed" all "street files" in their possession that contained exculpatory information/ evidence which were generated by the "year long" intense investigation into the homicides by detectives of the Chicago Police Department.


CITY-NF-01764

CR # 170712

2

## LEGAL CLAIM

This civil action "solely" for damages is brought pursuant to Title 42 U.S.C. Section 1983 and its jurisdictional counterpart Title 28 U.S.C. Section 1343(3) for deprivation of plaintiff's Fifth, Sixth, and Fourteenth amendment constitutional rights as secured by the United States Constitution. Defendants at all times material to this civil action were acting under color of law.

(A). Defendant City of Chicago violated plaintiff's Fifth, Sixth, and Fourteenth amendment constitutional rights by failing to adequately train, supervise, and control its police officers; thus constituting gross negligence and reckless disregard amounting to deliberate indifference of plaintiff's Federally protected rights; where police officers pursuant to a custom and/ or policy intentionally and deliberately suppressed exculpatory information/ evidence from plaintiff gathered during the course of the Talman Hickman and Jerome Smith homicides in the form of written notes known as "street files" containing exculpatory material.

(B). Defendant City of Chicago violated plaintiff's Fifth, Sixth, and Fourteenth amendment constitutional rights under the United States Constitution; by "tacitly authorizing" and encouraging its police officers to intentionally and deliberately obstruct the flow of exculpatory information/ evidence from plaintiff, gathered during the course of investigation into the Talman Hickman and Jerome Smith homicides in the form of written notes known as <u>street files</u> containing exculpatory material by suppressing it. The City of Chicago "knew" that a "prior persistent pattern of conduct and abuse had occurred" within its Police Department (which is the subject of extensive litigation within this Federal District) and consciously fail to establish effective preventive procedures.

(C). Defendant Fred Rice as Superintendent of Police delegated authority by the City of Chicago to formulate, implement, and administer the policies, practices, and customs of the Chicago Police Department violated plaintiff's Fifth, Sixth, and Fourteenth amendment constitutional rights under the Federal Constitution; by failing to properly train, supervise, and control subordinates under his command to prevent police officers from deliberately and intentionally

CITY-NF-07765


CR # 170712
2

<u>LEGAL CLAIM</u> (Continued)

suppressing exculpatory information / evidence from plaintiff, gathered during
the course of investigating the Talman Hickman and Jerome Smith homicides by
detectives in the form of written notes known as "street files" containing
exculpatory material; where Fred Rice "knew" of "a prior pattern of misconduct
within the Police Department" (which is the subject of extensive litigation in
this Federal District) thus constituting gross negligence and reckless disregard
amounting to deliberate indifference of plaintiff's constitutional rights.


(D). Defendant Fred Rice as Superintendent of Police delegated authority
by the City of Chicago to formulate, implement, and administer the policies,
practices, and customs of the Chicago Police Department violated plaintiff's
Fifth, Sixth, and Fourteenth amendment constitutional rights; by failing to
establish effective polices and procedures to prevent police officers from
suppressing exculpatory / evidence from plaintiff, gathered during the course
of investigating the Talman Hickman and Jerome Smith homicides by detectives
in the form of written notes known as "street files" containing exculpatory
material; where "a prior pattern of police misconduct and abuse" was "known"
to Fred Rice,(which is the subject of extensive litigation within this
Federal District) thus making the egregious "inaction" and "omissions" of
Fred Rice amounting to "acquiescence" of police misconduct.


(E). Defendant James Delaney as Watch Commander of the Chicago Police
Department is delegated authority to be responsible for the policies, practices,
and customs of the Police Department within his "Area" violated plaintiff's
Fifth, Sixth, and Fourteenth amendment constitutional rights; by failing to
adequately supervise and control personnel under his command and failure to
establish effective policies and procedures within his "Area" to safeguard
plaintiff's constitutional rights; where police officers within James Delaney's
area assigned to investigate the Talman Hickman and Jerome Smith homicides
intentionally and deliberately suppressed exculpatory information / evidence
from plaintiff, gathered during the course of investigating the Talman Hickman
and Jerome Smith homicides in the form of written notes known as "street files"
containing exculpatory material. James Delaney "knew" that a "prior pattern
of police misconduct and abuse had occurred" (which is the subject of extensive
litigation within this Federal District)

CITY-NF-07766

:R # 170712

2

## LEGAL CLAIM (Continued)

and James Delaney's egregious " omissions and inaction" furthered inevitable
police misconduct; thus constituting gross negligence and reckless disregard
amounting to deliberate indifference of plaintiff's constitutional rights.

(F). Detectives Joseph Bogdalek, Steven Hood, Robert Evans, David O'Callagha.
Sergeant Joseph Murphy, Detective Castro, and Detective Richardson violated
plaintiff's Fifth, Sixth, and Fourteenth Amendment constitutional rights; by
intentionally and deliberately suppressing "written notes" known as "street files"
generated by their interviews with "hundreds" of people during the year long
intense investigation into the Talman Hickman and Jerome Smith homicides, which
contained exculpatory information/ evidence. **

(G). Assistant State's Attorneys Randy Rueckert and Lawrence Wharrie
violated plaintiff's Fifth, Sixth, and Fourteenth amendment constitutional rights,
while functioning in an "non-advocatory" capacity and acting in concerted effort,
intentionally and deliberately "destroyed" all written notes known as
"street files" containing exculpatory information/ evidence that was within their
possession; which were compiled by detectives assigned to investigate the
Talman Hickman and Jerome Smith homicides, with exception to the "eight pages
of written notes all dated April 28, 1984" that was mailed to defense counsel
by defendant Rueckert.

---

__**__/ Detective Minogue name is to be included in paragraph F.



CITY-NF-07767

CR # 170712
          2

REQUEST FOR RELIEF (Continued)

(iv). Plaintiff is suing Joseph Murphy in his official capacity for $45,000.00 in compensatory damages and $55,000.00 in punitive damages and in his individual capacity for $20,000.00 in compensatory damages and $25,000.00 in punitive damages.

(v). Plaintiff is suing Detectives Evans, Hood, O'Callaghan, Minogue, Bogdalek, Castro, and Richardson in their official capacity each for $30,000.00 in compensatory damages and $40,000.00 in punitive damages and in their individual capacity each for $15,000.00 in compensatory damages and $20,000.00 in punitive damages.

(vi). Plaintiff is suing Randy Rueckert and Lawrence Wharrie in their official capacity each for $60,000.00 in compensatory damages and $70,000.00 in punitive damages and in their individual capacity each for $30,000.00 in compensatory damages and $35,000.00 in punitive damages.

(vii). Award plaintiff attorney fees pursuant to Title 42 U.S.C. Section 1988 and costs.

(viii)Award any further damages deem appropriate and just.



CITY-NT-07768

CR # 170712

2

Signed this __16 th__ day of __June__ , 19 __88__

_____

_____

x _Nathson Fields_
(Signature of plaintiff
or plaintiffs)

I declare under penalty of perjury
that the foregoing is true and correct.

Executed on __June 16, 1988__
(Date)

x _Nathson Fields_
(Signature)



CITY-NF-07769

CR # 170712
2

-5-

# *Exhibit A*

Indictment 85-6555.

MR. RUECKERT: That contained no handwritten notes. All that it contained was the police reports that had been tendered prior.

THE COURT: Is there anything else to be filed today? Has the State completed all of its Discovery?

MR. RUECKERT: Yes, Judge, with the exception of one thing. You ordered that Hawkins and Fields be palm printed. I sent those palm prints down. I got a report by the telephone that there was no comparison with any evidence record in the case. I will forward that written report as soon as I can get it, but that is the only thing we would have left to tender.

MR. SMEETON: On behalf of Mr. Fields we were awaiting that report also. We're awaiting copies of the statements taken from some of the witnesses, two or three of them, I believe, lay witnesses, by co-counsel. Neither the State nor counsel sitting at the bench today have received the same.

THE COURT: From who?

MR. RUECKERT: Mr. Swano.

MR. SMEETON: Mr. Swano.

do3



CITY-NF-07770

CR # 170712

# EXHIBIT B

1    THE CLERK:  Earl Hawkins, George Carter,

2    Nathson Fields.

3       MR. SWANO:  Judge, for the record, William

4    Swano, on behalf of Earl Hawkins, who is the

5    gentleman seated on your right.

6       THE COURT:  Hawkins.

7       DEFENDANT HAWKINS: How are you doing, your

8    Honor?

9       MR. SOLOMON:  For the record, Fredrick Solomon,

10   on behalf of Mr. Carter.

11      THE COURT:  And Mr. Fields?

12      MR. SMEETON:  Smeeton.

13      MR. SWANO:  On the last Court date, we received

14   extensive discovery from the State on both cases.

15   There are two double murders involved in this with

16   these gentlemen -- at least my client.

17            My investigator has been looking for

18   witnesses that are alleged eyewitnesses and the

19   addresses are not correct. And I would be

20   requesting for Mr. Ruckert, who has probably

21   informally updated addresses, as to some of those

22   witnesses.

23            In addition, street files have been

24   subpoenaed in, and that have not come in, according

CITY-NF-07771

CR #170712

2

# *Exhibit C*

1     to Mr. Smeeton, who issued the subpoenas for those

2     street files.

3               Additionally, I have not filed my

4     answer, because my investigation has been a

5     continuing investigation.

6               On the last Court date, Judge Maloney

7     had indicated that he would like to get the matter

8     to trial. I'm not in a position to ask for a trial

9     date, yet. I would like to ask for one more status

10    date to continue my investigation, get updated

11    addresses to interview alleged eyewitnesses, and

12    then, on the next Court date, ask for a trial date.

13             I would be requesting February 11th,

14    as the status date. Hopefully, final status date,

15    before we set the matter for trial.

16    MR. RUCKERT: Judge, as to the witnesses, I'll

17    be happy to make the witnesses available any time

18    you want me to do that.

19             As for the discovery, the State has

20    tendered their discovery, at least two Court dates

21    ago.                            CITY-NF-07772

22             We're ready for trial. If there

23    should be another status date, I'd like to get the

24    case to trial in February, Judge. If we want to set

CR # 170712

3

## EXHIBIT 9

1  Rueckert was on his way up.

2      MR. WARNICK:  Mr. Rueckert has been in court.  We

3  can handle it.

4      MR. SOLOMON:  Your Honor, for the record,

5  Frederick Solomon on behalf of George Carter and Mr.

6  Swano's client.

7      MR. SMEETON:  For the record, Jack Smeeton on

8  behalf of Mr. Fields.  Sorry I was late.  I was

9  outside in the hall, sir.

10      THE COURT:  What is the status of this matter?

11      MR. SMEETON:  Judge, the case was set two weeks

12  ago.  I believe it was and again today for defense to

13  have filed our answer to discovery, completion of

14  discovery.

15         The defendant has not received a copy of

16  the street files yet.  We had agreed last time we

17  were before your Honor and again in front of Judge

18  Karnezis a week or two ago when Mr. Rueckert was

19  sitting in the courtroom that he would tender those

20  to us because he was in possession.

21         All defense attorneys had a copy of the

22  subpoena that he had on the police department.  We

23  have not yet received them.

24      THE COURT:  Well, here's the return of your



CITY-NF-07773

2

CR # 170712

# EXHIBIT E

1   subpoena.

2   MR. SMEETON: We have -- some of us have

3   subpoenaed the street files too. Also, we had a

4   question we asked on the last court date, the latest

5   addresses of the two eye witnesses, and we are told

6   that the State did not know what they were and would

7   find out for us, and we have not had that responded

8   to yet.

9   We cannot be in a position to file an

10  answer yet.

11  THE COURT: Well, here's a copy of the subpoena

12  for the State and return of it to the defense. I

13  don't know whether it's a street file or what it is.

14  MR. SMEETON: I just saw Mr. Rueckert ten minutes

15  ago downstairs, and he said he was coming upstairs,

16  your Honor.

17  THE COURT: Well, he has already spoken to the

18  Assistant State's Attorney's here.

19  MR. SMEETON: Well, apparently Judge, if I may

20  address your attention to the return of the subpoena

21  that was just delivered to me.

22  Judge, if you will notice from the

23  subpoena, specifically I requested of the police

24  department, the investigative street file for this


CITY-NF-07774

3

CR # 170712

# EXHIBIT E

1   murder under the RD number listed.   What I was

2   returned was another copy of the police reports.

3       THE COURT:   Maybe that is all there is.

4       MR. SMEETON:   With not one page of notes taken

5   therein?

6       THE COURT:   Maybe that is all there is.

7       MR. SMEETON:   Well, I really don't know.   I guess

8   without talking to Mr. Rueckert.   Mr. Rueckert

9   indicated to me there were in fact street files that

10  he was going to copy for us.

11      THE COURT:   Did he say anything about that?

12      MR. WARNICK:   Judge, our representation from Mr.

13  Rueckert was that he didn't advise us of this

14  difficulty with Mr. Smeeton.   He said whenever we

15  could set this down, we are set to go.   If you want

16  to pass this for me to talk to Mr. Rueckert, maybe

17  they can resolve this today.

18      THE COURT:   Well, do you want to do that?   We

19  can't have continuances to be talking about the same

20  thing over and over.

21      MR. SMEETON:   I have an answer that I am prepared

22  to file.   However, I am not sure it's complet because

23  I don't know about the street files.

24      THE COURT:   We can always amend it.



CR # 170712

4                                                          2

# Exhibit F

MR. SMEETON: Okay. I think we are all set.

MR. WARNICK: Judge, I spoke with Mr. Rueckert this morning with regards to this case. He and Mr. Smeeton indicated they had worked everything out and we could set it for trial.

THE COURT: How about you, Mr. Solomon, is your answer on file?

MR. SOLOMON: I believe it might have been on file six or eights months ago, Your Honor.

THE COURT: All right. And how about Mr. Swano's answer to discovery?

MR. SMEETON: I don't know if it is on file or not.

I would indicate, for the record, while we are looking, I did receive what purports to be general progress reports and street files from Mr. Rueckert this past week, which consists of eight pages of notes on the date of April 28, '84.

THE COURT: How did you receive them, in the mail?

MR. SMEETON: He mailed them.

THE COURT: And what are they?

MR. SMEETON: Eight pages of general progress reports from detectives of the Chicago Police Department, all dated April 28th, 1984.

As you will recall, I subpoenaed these from the

CITY-NF-07776

CR # 170712

# ExhiBiT F

Police Department and received nothing but the regular PD reports.

Mr. Rueckert provided me with the general progress reports and the notes and reports and statements of witnesses, et cetera, in the case.

MR. WARNICK: Judge, Mr. Rueckert asked me to ask leave of Court to set this down for trial certain on April 8th, essentially that date. He told me he had already had plans, he was going to be out of town for two weeks before that, I guess that was the first week in April and the last week in March, when he looked at the calendar for that. And that is the first day he is available.

MR. SMESTON: Judge, if I may, I understand this is a long case. I am also not certain that once we come in on the trial date it will be tried that first trial date and not be continued. I have a terrible problem with that week of the 8th with several trials set.

If your Honor would consider the 14th.

THE COURT: Well, we have never set a case that far ahead in the past eight years that I know of. I know that you have other courtrooms, but we don't do it here. This is still February. And you are talking about the middle of April.

CITY-NF-07777

CR # 170712

# ExhiBiT G

1           JOSEPH BOGDALEK,

2   called as a witness on behalf of the defendants,

3   having been first duly sworn, was examined and

4   testified as follows:

5                   DIRECT EXAMINATION

6           BY MR. SMEETON:

7       Q       Good afternoon, investigator.  Please give

8   us your name and pronounce it for me, if you would,

9   and spell your last name?

10      A       Detective Joseph Bogdalek,

11  B-o-d-g-a-l-e-k.

12      Q       Investigator Bogdalek, how are you

13  employed, sir?

14      A       I'm a police detective for the City of

15  Chicago.

16      Q       How long have you been so employed?

17      A       Approximately sixteen years.

18      Q       Bringing your attention to the month of

19  April of 1984, where were you assigned at that

20  time?

21      A       To the Area One, Violent Crimes Unit.

22      Q       Did you become involved in the

23  investigation of the shooting death of a

24  Talman Hickman and Jerome Smith, sir?


CITY-NF-07778

bh28                                      CR # 170712

# Exhibit G

1    A    Yes, I did.

2    Q    Was that on April 28th of '84, sir, or a

3  subsequent date?

4    A    That date.

5    Q    Did you work with a partner that day?

6    A    Yes, I did.

7    Q    Detective Minogue, was it?

8    A    That is correct.

9    Q    What was your assignment that day in this

10  case?

11    A    Myself and my partner were assigned to

12  conduct a follow-up investigation into that double

13  murder.

14    Q    Did you have occasion to go to 706 East

15  39th Street to talk to prospective witnesses?

16    A    Yes, I did.

17    Q    And did you go to apartment number 106,

18  the home of the Langstons?

19    A    Yes, I did.

20    Q    And while you were there did you talk to

21  members of the Langston family,

CITY-NF-02779

22    A    Yes, I did.

23    Q    Do you recall which members of the

24  Langston family you interviewed?

bh29

CR #17071
2

# EXHIBIT H

1    you?

2         MR. WHARRIE:  Objection, judge.

3         THE COURT:  Sustained.

4    BY MR. SMEETON:

5         Q    You didn't put in your police report any

6    description by Randy Langston, did you?

7         A    I don't believe I did.

8         MR. SMEETON:  Nothing further.

9         MR. WHARRIE:  Nothing further.

10        THE COURT:  You may step down.

11                   (Witness excused.)

12        THE COURT:  Who's next?

13        MR. SMEETON:  Detective Evans, please.

14                   (Witness sworn.)

15             ROBERT EVANS,

16   called as a witness on behalf of the defendants,

17   having been first duly sworn, was examined and

18   testified as follows:

19        DIRECT EXAMINATION 

20        BY MR. SMEETON:

21        Q    Detective, good afternoon, sir.  Would you

22   please give us your name and spell it for the court

23   reporter with your star number?

24        A    Detective Robert Evans, E-v-a-n-s.

bh34

CR # 170712
ATTACHMENT 3

*Exhibit H*

1    Q    Detective, how are you employed, sir?

2    A    I'm a detective for the Chicago Police

3    Department.

4    Q    How long?

5    A    I've been employed by the police

6    department for fourteen years, now.

7    Q    Bringing your attention to April the 28th,

8    1984, were you so employed, sir.

9    A    Yes, I was.

10   Q    Where were you particularly assigned?

11   A    Area One, Violent Crimes.

12   Q    On that day, the 28th of April, '84, you

13   were assigned the investigation of the murder

14   deaths of Talman Hickman and Jerome Smith, sir?.

15   A    Yes, I was.

16   Q    Did you work that day with a partner?

17   A    Yes, I did.

18   Q    And would that be -- That would be who,

19   sir?

20   A    Detective Steven Hood.

21   Q    What was your assignment on that homicide

22   investigation?

23   A    We investigated the initial scene of the

24   homicide.

CITY-NF-07781

bh35                                    CR # 170712

# ExhiBiT H

1      Q      Do you recall about what time you went to

2   the scene?

3      A      Shortly after it occurred.

4      Q      Did you canvass the area and talk to

5   witnesses?

6      A      Yes.

7      Q      As a matter of fact, you talked to at

8   least ten potential witnesses during the course of

9   your investigation; isn't that correct?

10     A      I talked to many more people than that.

11     Q      Did you resume your investigation beyond

12   the 28th of April, 1984, and interview other

13   witnesses?

14     A      Yes.

15     Q      What day was that?

16     A      The investigation was ongoing.  I talked

17   to many people several days following the initial

18   incident.

19     Q      Well, would you have been out canvassing

20   the building on the 29th?

21     A      Yes.

22     Q      The 30th?

23     A      Possibly, yes.

24     Q      Could it have gone on even into the first

bh36

CR #170712

*Exhibit H*

1   week of May?

2       A    Quite possibly, yes.

3       Q    About how many witnesses did you talk to?

4       A    I talked to approximately a hundred

5   people.

6       Q    At no time during your investigation did

7   you ever have occasion to talk to a man by the name

8   of Gerald Morris, did you?

9       A    Not to my knowledge.

10          MR. SMEETON:   Nothing further.

11                  CROSS-EXAMINATION

12                  BY MR. RUECKERT:

13      Q    Detective, were you the first team of

14  detectives to investigate this homicide?

15      A    Yes, we were.

16      Q    When you got to the scene of the homicide

17  were there a lot of people standing around?

18      A    Quite a few, a hundred or so.

19      Q    I'm going to show you what's been marked

20  as People's Exhibit No. 22 for identification; do

21  you recognize that?

22      A    Yes, I do.

23      Q    What is that, sir?

24      A    This photo depicts the scene in front of

bh37

CR # 17071

# Exhibit I

39

```
1              MR. SWANNO:   In the basement.
2              THE COURT:   All right.  We will take care of
3   it, then.  Ricardo will call him, ask him if he can come
4   up.  Tell him we have to get something resolved here.
5              MR. SWANNO:   Thank you, Judge.  One other
6   matter:  would it be possible to adjourn today at five
7   o'clock?
8              THE COURT:   Yes.
9              All right.  Call the next witness.
10             MR. WHARRIE:   The People would call David
11  O'Callaghan.
12             (WHEREUPON, the witness was
13             duly sworn).
14
15             DAVID O'CALLAGHAN,
16  a witness called by the People of the State of Illinois
17  herein, having been first duly sworn, was examined and
18  testified as follows:
19             DIRECT EXAMINATION
20                BY
21             MR. WHARRIE:
22      Q      Sir, what is your name?
23      A      Detective David O'Callaghan.
24      Q      Please spell that last name?
```

CITY-NF-07784

CR # 170712



# Exhibit I

40

```
 1        A        O-'-C-a-l-l-a-g-h-a-n.

 2        Q        Detective O'Callaghan, where are you

 3   presently assigned?

 4        A        I'm assigned to Area One, Violent Crimes,

 5   Chicago Police Department.

 6        Q        How long have you been a Violent Crimes

 7   Detective?

 8        A        I was made detective in 1978.

 9        Q        How long have you been a Chicago police

10   officer?

11        A        Seventeen years.

12        Q        Detective O'Callaghan, I would like to direct

13   your attention to on or about May 14th of 1985:  were you

14   with the Violent Crimes Unit at that time?

15        A        I was.

16        Q        Did you receive a special assignment?

17        A        Yes, I did.

18        Q        And what was the nature of that assignment?

19        A        I was detailed to the Cook County State's

20   Attorney's Gang Prosecutions Unit, to do follow-up

21   investigations in regards to a homicide concerning members

22   of the El Rukins.

23        Q        Were you specifically assigned to, among

24   others, the investigation involving Talman Hickman and
```

CITY-NF-07785

CR # 170712
2

# Exhibit I

41

1    Jerome Smith, two deceased men?

2         A    Yes, I was.

3         Q    Upon being given that assignment, what did

4    you do?

5         A    After reviewing the case, I then proceeded

6    over to the area of the murders, began a canvas.

7         Q    Did you become aware of when the murders had

8    occurred?

9         A    Yes, I did.

10        Q    And approximately how much time had passed

11    since the murders had occurred?

12        A    About a year, a little over a year.

13        Q    Now, I want to direct your attention to May

14    16, 1985: on that day, did you interview a Randy Langston?

15        A    Yes, I did.

16        Q    Where did that take place?

17        A    On the 13th floor, in the Cook County State's

18    Attorney's Office.

19        Q    Who was present besides yourself and Mr.

20    Langston, if you recall?

21        A    Myself, Detectives Castro and Richardson.

22        Q    Did you talk to him relative to the Talman

23    Hickman and Jerome Smith shooting?

24        A    I did.

CITY-NF-07786

CR #170712

*Exhibit I*

54

1       A      I can't recall whether I spoke with Randy

2  Langston on that day or not.

3       Q      Well, who introduced you to Gerald Morris,

4  was it Randy or Eric Langston?

5       A      Gerald Morris, I believe, was part of the

6  canvas. We talked to hundreds of people during that

7  investigation, and he was one of the subjects we ran into.

8       Q      Just happened to knock on his door and

9  interview him and ask if he knew anything?

10      A      Spoke to him right by 706.

11      Q      It turns out that Gerald Morris is the cousin

12  of Randy Langston, correct?

13      A      He is related in some way, I believe.

14      Q      And it turns out that he also is a member or

15  at least at that time was a member of the Goon Squad.

16      A      Not to my knowledge.

17      Q      He indicated to you that he was close,

18  personal friends with Fuddy, did he not?

19      A      He indicated he knew him, yes.

20      Q      Now, on the 18th day of the line-up, in which

21  Earl Hawkins was a participant in the line-up, you

22  additionally brought Carlos Willis and Torrence White to

23  that line-up, correct?

24      A      That's correct.

CITY-NF-07287

CR # 170712

# Exhibit J

1    JOSEPH MURPHY,

2    called as a witness on behalf of the People of the

3    State of Illinois, in rebuttal, having been first

4    duly sworn, was examined and testified as follows:

5    DIRECT EXAMINATION

6    BY MR. WHARRIE:

7    Q    Sir, what is your name?

8    A    Joseph Murphy.

9    Q    How are you employed?

10   A    I'm currently employed by the City of

11   Chicago Police Department as a police sergeant in

12   the detective division.

13   Q    How long have you been a Chicago police

14   officer?

15   A    Almost seventeen years.

16   Q    Sergeant Murphy, recalling your attention

17   to May of 1985, were you given a special assignment

18   at that time?

19   A    Yes, sir, I was.

20   Q    And what was that assignment?

21   A    At that time I was involved in an

22   investigation of a double homicide of Talman

23   Hickman and Jerome Smith.

24   Q    I want do direct your attention to

bh63

CITY-NF-07788

CR # 170717
ATTACHMENT 3

CITY OF CHICAGO / DEPARTMENT OF POLICE   1121 South State Street Chicago, Illinois 60605
IDENTIFICATION SECTION

| CRIMINAL HISTORY OF | FIELDS, Nathaon | M/N |
| DATE | 8 Oct 71 | IR#319791 |
| DATE OF BIRTH | ▇▇▇▇▇▇ | |

| NAME & ADDRESS | C.R. NO. | DATE OF ARREST ARRESTING OFFICER & DIST. | CHARGE | DISPOSITION |
|---|---|---|---|---|
| Nathson FIELDS 3209 Lydia Robbins, Ill. | | -7 Oct 71, Cook County Jail#7108895, Murder, Docket #71MC654938. .22 Nov 71, G.J.Ind#71-2880, Murder | | |
| | | 12 Dec 72, Joliet ISP# 73386 ;Murder (71-2880) 35-50yrs, Att.Murder,10-20yrs, &Agg.Battery,1-10y Judge Strayhorn Rec'd 15 Dec 72 | | |
| Nathson FIELDS 6414 S. Kenwood 19 Nov 53 | 7314718 | -19 Mar 85, Off. Guies, 3rd Dist., (CD) Theft Wrt. 19 Mar. 85, T.O.T. Palos Hills PD | | |
| Nathaniel FIELDS 3209 Lydia Robbins Il. 19 Nov 53 | 7341459 | -29 April 85, Off. Smith, 03rd. dist, U.U.W. 11 Sept. 85, UUW (38-24-1a10) FOI St. (38-83-2a) Nolle, Cit Reg. (MCC) Non Suit, Judge Smierciak (doc.#85 175039) | | |
| Nathson FIELDS 6414 S. Kenwood 19 Nov 53 | 7372662 | -13 June 85 Off. Tomasik 3rd dist MURDER WRT 05 Jul 85, Murder Wrt., Murder (2 cts) (38-9-1a2), TRANSFER CHIEF JUDGE FOR IND#, Judge Gembala. 16 July 85, G.J. IND#85C-7650, Murder(3)Arm. Robbery,G.J. | | |
| Natson E. FIELDS 6414 S. Kenwood 19 Nov. 53 | | IND# 85C-7651, Murder(2). 22 Aug 86.#85 C7651 MURDER(38-9-1al) (2) GUILTY Sent DEATH, Judge Maloney. 13 Oct 86. Murder(85 C7650)Nolle Prosse, Judge Maloney. | | |
| Nathson FIELDS | SEE * 737 | 5 Oct 71 Village of Dixmoor PD, Harvey, IL,MURDER. | | |

ISSUED ON INQUIRY
OCT 06 1989
BY NAME CHECK ONLY

CITY-NF-07789

ENTRIES PRECEDED BY AN ASTERISK* REPRESENT INFORMATION SUPPLIED TO THIS DEPARTMENT BY F.B.I. OR OTHER GOVERNMENTAL AGENCIES, THESE ENTRIES ARE NOT SUPPORTED BY FINGER PRINTS IN THE FILES OF THE CHICAGO POLICE.

CPD-22.460 (REV.6/70)

POSTED TO L.R. RECORDS

COURT SERGEANT/PERMANENT RECORD COPY

BOND - NO BOND

---

CHICAGO POLICE
**ARREST REPORT**

FIELDS  NAINSON  E.

6509 S DORCHESTER

304

D.N.A.

M.R. FIELDS STOPPED FOR TRAFFIC VIOLATION. NAME
CHECK REVEALED FOLLOWING WARRANTS

POSTED TO L.R. RECORDS

CB10155    85175230    NO BOND THROUGHWET  BL.CO

LDS# W9530535                    BA10  7876  CENTRAL
NCIC# W364818581                              WARRANT!
TO HAS NO KNOWLEDGE OF WARRANT!
BT. 3630-KANTOR  6772    BEADY  3648
      ASSISTING    UNIT!

COURT SERGEANT/PERMANENT RECORD COPY

CITY-NF-07790

ARREST REPORT

1. OFFENSE/INCIDENT—PRIMARY CLASSIFICATION: **HOMICIDE**

2. SECONDARY CLASSIFICATION: **MURDER**

3. R.D. NO.: F-151922

1. ADDRESS OF OCCURRENCE
DIR: E  STREET: 39½ ST
No.: 706

1A. LOC. OFF./CROSS: 39/110

1B. LCN OFF, PCC: 10/110

4. BEAT OF OCCUR.: 214

5. FIRE RELATED: ☐ YES ☒ NO

6. DATE OF OCCURRENCE - TIME: 28 APR 84 / 1017

8. ADDRESS OR PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OF LOCATION IF APPLICABLE): CHA GROUNDS

10. LOCATION CODE: 1 2 3

11. DATE RD ARRIVED - TIME: 28 APR 84 / 1020

All information, descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

21. NAME (LAST, FIRST, M.I.): HICKMAN, TALMAN
22. HOME ADDRESS (NO, DIR, STREET, APT, NO): 706 E 39½ ST
IDENTITY VERIFIED: ☐
23. SEX-RACE-AGE-CODE: M 128
24. HOME PHONE: U

21. NAME: SMITH, JEROME
22. HOME ADDRESS: 706 E 39½ ST
23. SEX-RACE-AGE-CODE: M 130

31. DISCOVERED ☐ WITNESSED ☐ REFUSED
39. REPORTED OFFENSE: ☐
42. HOME ADDRESS:

41. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC)

**PERMANENT RETENTION FILE**

51. OBJECT/WEAPON: ☒ USED ☐ DISPLAYED ☐ (JUVE)
52. FIREARM FEATURES:
☐ 01 CHROME/NICKEL
☐ 02 BLUE STEEL
☐ 03 SHORT BARREL
☐ 04 LONG BARREL
☐ 05 SAWED OFF
☐ 06 OTHER
☒ 07 UNKNOWN
☐ 08 DNA

53. POINT/ENTRY:
☐ 01 FRONT DOOR
☐ 02 REAR DOOR
☐ 03 WINDOW
☐ 04 ROOF
☐ 05 FLOOR
☐ 06 SIDE DOOR
☐ 07 OTHER
☐ 08 UNKNOWN
☐ 09 DNA

54. POINT/EXIT:
☐ 01 FRONT DOOR
☐ 02 REAR DOOR
☐ 03 WINDOW
☐ 04 ROOF
☐ 05 FLOOR
☐ 06 SIDE DOOR
☐ 07 OTHER
☐ 08 UNKNOWN
☐ 09 DNA

55. BURGLAR ALARM:
☒ DNA
☐ ON PREMISE
☐ YES ☐ NO
ALARM CIRCUMVENTED: ☐ YES ☐ NO

56. SAFE BURGLARY METHOD:
☐ 01 PUNCH
☐ 02 TORCH
☐ 03 EXPLOSIVE
☐ 04 DRILL
☐ 05 REMOVED

57. UNUSUAL CHARACTERISTICS OF OFFENSE

61. OBJECT/WEAPON:
☐ 08 EXPLOSIVE
☐ 09 LIQUID/GAS
☐ 10 BOTTLE/GLASS
☐ 11 RAZOR
☒ 12 HAND TOOL
☐ 13 HAND, FEET
☐ 14 OTHER
☐ 15 DNA

1 FLOORING: ☐ T ☐ S ☐ R
1 CLOTHING: ☐ T ☐ S ☐ R

71. DESCRIBE PROPERTY IN NARRATIVE:
IN SUMMARY, R/O ASSIGNED TO ABOVE LOCATION TO INVESTIGATE TWO MEN SHOT, WHEN R/O ARRIVED ON THE SCENE, HE OBSERVED VICTIM #1 LYING ON THE GROUND WITH HIS HEAD FACING NORTH AT THE EDGE OF THE BREEZE WAY ON THE SOUTH SIDE OF THE BLDG. VICTIM #2 WAS LYING SEVERAL FEET EAST OF VICTIM #1 WITH HIS HEAD POINTING S.E. BOTH VICTIMS WERE LYING...

12 DWELLING: ☐ T ☐ S ☐ R
STAR NO: 10974

REPORTING OFFICER'S NAME (PRINT): R. MCKEE

STAR NO: 10974

29  27

**SUPPLEMENTARY REPORT**
CHICAGO POLICE

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE-TIME
DAY 28 MO. Apr YR. 84 1017

| 1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | 1. UCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE | CORRECT | 8. BEAT OF OCCUR. |
|---|---|---|---|---|
| HOMICIDE/MURDER | 0110 | 706 E. 39th Street | ☐ YES ☒ NO VERIFIED | 214 |

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: HICKMAN, Talman
6. FIRE RELATED ☐ YES ☒ NO   7. BEAT/UNIT ASSIGNE 612

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: CHA Grounds   LOCATION CODE 123   9. NO. OF VICTIMS Two   10. NO. OF OFFENDERS (Four)

| 20. NAME (LAST-FIRST-M.I.) | 23. SEX-RACE-AGE CODE |
|---|---|
| 1. HICKMON, Talmon | M-1-30 |

34. SERIAL NOS. OR IDENTIFICATION NOS. ☒ DNA

50. OFFENSE/CLASS, THIS DATE: DNA   REV. CODE DNA   CITY-NF-07792

80. NARRATIVE

VICTIM: HICKMON, Talmon M/B 30 yrs., DOB ___ of

706 E. 39th St. Apt. 1406, phone 268-9445, single,

unemployed, S.S. ___ CPD IR # 305644.

**PERMANENT RETENTION FILE**

ADDITIONAL VICTIM: SMITH, Jerome aka "Fuddy" M/B 30 yrs., DOB

of 706 E. 39th St. Apt 806, phone 924-7355, single,

APR 30 ENT'D unemployed, ___ CPD IR # 314142.

90. EXTRA COPIES REQUIRED: Normal Distribution
91. DATE THIS REPORT SUBMITTED: 28 Apr 84
92. SUPERVISOR APPROVING: Bringe 1297
93. REPORTING OFFICER: Det. Robert Evans 12754
94. REPORTING OFFICER: Det. Stephen Hood 14885
95. DATE APPROVED: 28 Apr 84

Detective Division                                    Homicide/Murder
Area One Violent Crimes          Page Two             HICKMON & SMITH

# PERMANENT RETENTION FILE

WANTED:                  Four offenders.

                         # 1 male black, 21 to 25 yrs., 5-10 to
                         6-0, medium build, last seen wearing a
                         blue jogging suit and a red skull cap.

                         # 2 male black, 20 to 24 yrs., 5-7 to
                         5-9, medium build, last seen wearing a
                         dark colored jacket and a dark colored
                         skull cap. Hair worn long & had an earring.

                         # 3 & 4 subjects unknown.  Both stayed
                         in the vehicle described below.

WANTED VEHICLE:          1979 (approx. year) Cadillac Coup de Ville,
                         2 door, all medium blue in color, license
                         number unknown.

INJURIES:                Victim # 1 Talmon Hickmon:
                         Gun shot wound above left ear.
                         Gun shot wound back of neck.
                         Gun shot wound right top of head.
                         Gun shot wound right side of head near ear.
                         (Fatal)

                         Victim # 2 Jerome Smith:
                         Gun shot wound to right rear base of skull.
                         (Fatal)

TAKEN TO:                Both victims transported to Michael Reese
                         hospital and pronounced DOA by Dr. Michael
                         Puchalsky on 28 Apr 84 at 1140 hours.

                         Victim # 1, Talmon Hickmon, was transported
                         to Michael Reese by Beat 273.

                         Victim # 2, Jerome Smith, was transported
                         to Michael Reese by Beat 272.  These units
                         then removed the remains to the Forensic
                         Institute.

WEAPONS:                 See EVIDENCE catagory this report.

LOCATION:                On the sidewalk in front of 706 E. 39th Street,
                         a CHA high-rise building

DATE & TIME:             28 Apr 84, Saturday, 1017 hours.

CONTINUED ON PAGE THREE

CR # 170712

Detective Division                             Homicide/Murder
Area One Violent Crimes      Page Three     HICKMON & SMITH

# PERMANENT RETENTION FILE

WEATHER & LIGHTING:     Warm, high 60's, and sunny. Good natural lighting.

MANNER/MOTIVE:     Victims shot for unknown reasons.

IDENTIFIED BY:     Both victims identified at the scene by Otha HICKMON, M/B 26 yrs., of 706 E. 39th St. Apt. 1406, brother of Talmon Hickmon.

                           Formal identification to be made at the Forensic Institute by the respective families on 29 Apr 84.

PROPERTY TAKEN:     Unknown at this time.

EVIDENCE:     Homicide # 84-196

                           Evidence Inventory # 7972 - Scene processing by Mobile Crime unit 9601 including photographs of the scene and the recovery of seven .9mm casings.

RECOVERED PROPERTY:     Inventory 091143 - 2nd District One Skanka AM/FM cassette radio. Inventoried by Beat 213, owner unknown but belived to belong to one of the victims.

NOTIFICATIONS:     Cook County Medical Examiner, Inv. Draus # 21 responded to the scene.

PERSONNEL ASSIGNED:     Beat 210 Sgt. McCarthy # 949

                           Beat 213 P.O. Mickel # 10974

                           Beat 212 P.O. Bailey # 13296

                           Beat 221 P.O. Rawls # 12862

                           Beat 222 P.O. Watson # 13364

                           Beat 272 P.O. Kostro # 13365
                                     P.O. McLaughlin # 7313

                           Beat 273 P.O. Jiminez # 13798
                                     P.O. Kolnik # 10516

                           Beat 2163B P.O. Droba # 16244
                                     P.O. Golon # 7009

RD # P-151 922

CONTINUED ON PAGE FOUR

CR # 170712

Detective Division                                        Homicide/Murder
Area One Violent Crimes            Page Four              HICKMON & SMITH

# PERMANENT RETENTION FILE

PERSONNEL ASSIGNED:(CONT.)  Beat 4114 G.S. Richardson # 3385
                                      G.S. Williams # 12571

                            Beat 4192 G.S. Duffy # 5734
                                      G.S. Tomasek #15610

                            Beat 4521 P.O. Felker # 11987
                                      P.O. Miskanin # 15258

                            Beat 9601 Tech. McKeough # 7668
                                      Tech. Bachelder # 12680

                            Beat 5110 Sgt. McCrae # 2207

                            Beat 5113 Det. Fields # 6424

                            Beat 5115 Det. Carroll # 5043
                                      Det. VanBerschot # 2552

                            Beat 5114 Det. Hood # 11885
                                      Det. Evans # 12754

WITNESSES:                  BENSON, Eric, M/B 9 yrs of age,
                             of 706 E. 39th St. Apt. 307, no phone.
                            (Eye-Oral)

                            BALL, Cleveland, M/B 19 yrs of age,
                             of 706 E. 39th St. Apt. 309, 373-2601.
                            (Circ-Oral)

INTERVIEWED:                ROBINSON, Martha F/B 49 yrs of age,
                             of 706 E. 39th St. Apt. 109, 373-5606.
                            (Heard two gun shots but did not look
                            out of window)

                            ROBINSON, Kenya F/B 11 yrs of age,
                             of 706 E. 39th St. Apt. 109, 373-5606.
                            (Heard four gun shots and saw two
                            subjects run North from under the
                            breezeway then West around building)

                            WATTS, Inetter F/B 46 yrs of age,
                             of 706 E. 39th St. Apt. 108, 285-8579.
                            (Heard numerous shots looked out her
                            window and saw two men she knew from
                            her building laying on the sidewalk)

                            LANGSTON, Willie Mae F/B 38 yrs of age,
                             of 706 E. 39th St. Apt. 106, 373-4592.
                            (Heard some shots looked out and saw
                            two men laying on the ground)

RD # F-151 922

CITY-NF-07795

CONTINUED ON PAGE FIVE     CR # 170712

# SUPPLEMENTARY REPORT
CHICAGO POLICE

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE – TIME
28 APR 84 1017

| 1. INCIDENT/OFFENSE CLASSIFICATION LAST PREVIOUS REPORT | 1 UCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE | 3. BEAT OF OCCUR. |
|---|---|---|---|
| HOMICIDE | 0110 | 706 E 39TH ST | 214 |

| 5. VICTIM'S/SUBJECT'S NAME AS SHOWN ON LAST PREVIOUS REPORT | CORRECT | 6. FIRE RELATED | 7. BEAT ASSIGNED |
|---|---|---|---|
| HICKMAN TALMAN | ☐ YES ☒ NO | ☐ YES ☒ NO | 213 |

| 8. VICTIM'S/SUBJECT'S ADDRESS | 9. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE |
|---|---|---|
| 706 E 39TH ST #1406 | C.H.A. GROUNDS | 123 |

80. NARRATIVE

VICTIM #2 SMITH JEROME 706 E 39TH ST #805
M-B 30 YRS.
THIS IS A MARINE UNIT REPORT. M-7
DIVE VAN RESPONDED TO 5900 S. LAKE SHORE DRIVE
TO CONDUCT AN UNDERWATER SEARCH FOR TWO WEAPONS
USED IN THE ABOVE HOMICIDES, AND THROWN INTO THE
WATER AFTER.
   SGT. ZUELKE AND PO MEADOR CONDUCTED THE
UNDERWATER SEARCH IN 12' TO 15' OF WATER WITH
2-3' WAVES EN 58° WATER TEMP, VISIBILITY 6'TO 8'
THE SEARCH WAS TERMINATED AFTER ABOUT ONE
HOUR BECAUSE OF ROUGH WATER WITH NEGATIVE RESULTS.
THE SEARCH WILL BE CONTINUED AT A LATER DATE
   PO'S HEHL AND HAMMOND ACTED AS SAFETY
DIVERS

CR # 170712

# SUPPLEMENTARY REPORT
CHICAGO POLICE

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG·OCCURRENCE – TIME
28 APR 84

1. INCIDENT/OFFENSE CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE

1. UCR OFF. CODE | 2. ADDRESS OF ORIG·INCIDENT/OFFENSE: 706 E. 39th ST. | 3. BEAT OF OCCUR: 2122

5. VICTIM'S/SUBJECT'S NAME AS SHOWN ON LAST PREVIOUS REPORT: NICKMAN | 6. FIRE RELATED | 7. BEAT ASSIGNED: M-7

11. OFFENDER'S NAME: HAWKINS

80. NARRATIVE

VICTIM #2: SMITH,

THIS IS A MARINE UNIT REPORT. M-7 DIVE VAN RESPONDED TO 5900 S. L.S.D. FOR WEAPONS SEARCH. R/O's TO SEARCH BOTTOM FOR 2 SEMI-AUTOMATIC WEAPONS THROWN INTO LAKE MICHIGAN AT ABOVE LOCATION BY OFFENDER.

Po.'s MEADOR AND PARKER CONDUCTED A UNDERWATER SYSTEMATIC SEARCH OF AREA (WITH A METAL DETECTOR) WITH NEGATIVE RESULTS.

SEARCH WAS 10'-15' OF WATER, VISABILITY 6', 20 YDS SEARCH AREA.

PERMANENT ... ON FILE

EXTRA COPY FORWARDED

ALSO ON SCENE: SGT. BANNIGAN G/C SOUTH

90. EXTRA COPIES: 2. MARINE UNIT | 91. DATE: 5 JUN 87

REPORTING OFFICER: J. MEADOR #3445 | R. MAZZOLA #8408

SIGNATURE: J. Meador | J. Parker

CR# 170712

Detective Division                                          Homicide/Murder
Area One Violent Crimes              Page Five              HICKMON & SMITH


INTERVIEWED:(CONT.)        BENSON, Dorthy F/B 28 yrs of age,
                           of 706 E. 39th St. Apt 307, no phone.
                           (Heard shots went to window because
                           her son Eric was playing out in front
                           and saw two men laying on the ground)

                           CARTER, Louis J. M/B 19 yrs of age,
                           of 652 W. Garfield Blvd., no phone.
                           (See INVESTIGATION catagory this report)

                           EDWARDS, Delbert Q. M/B 19 yrs of age,
                           DOB 7 May 64, of 730 E. 39th St. Apt.
                           709, phone 924-1110.
                           (See INVESTIGATION catagory this report)

INVESTIGATION:             On 28 Apr 84 at about 1017 hours the
                           R/Dets. monitered a zone five simulcast
via City Wide II radio of two men shot on the street at 706 E. 39th
St. Upon arrival the R/Dets. observed several uniformed police
vehicles on the scene and a crowd gathered around two male black
subjects laying on the ground in pools of blood. Victim # 1,
now known to be Talmon Hickmon, was laying on his left side, head
to the North and feet to the South. Hickmon was laying on the
sidewalk at the South breezeway entrance to the fourteen story
CHA high-rise building addressed 706 E. 39th St. There was a
quantity of blood on the sidewalk under and around his head.
Hickmon was noted as wearing a red zippered jacket, beige stripped
button shirt, brown denium type slacks, white high top gym shoes,
and a white T shirt. Hickmon was clutching a Jet magazine in
his right hand. **PERMANENT RETENTION FILE**

                           Victim # 2, now know to be Jerome Smith,
was laying on his stomach head to the East feet to the West. Smith
was laying just East of Hickmon, off the sidewalk, in a puddle of
water. There was a quantity of blood noted around Smith's head
in this water. Smith was noted as wearing a grey and blue checked
sport jacket, a black button long sleve shirt, blue corduroy
slacks, white socks, and black suede shoes tie type. There was
a black corduroy cap laying just East of Smith's body.

                           Chicago Fire Dept. Ambulance # 19 arrived
on the scene but found no signs of life in either victim. Officers
from various units were utilized for crowd control and crime scene
protection.

                           The R/Dets. then notified Sgt. McCrae of this
command about   this incident who then responded to the scene
along with Detectives Carroll, VanBerschot and Fields.

RD # F-151.922

CITY-NF-07798

CONTINUED ON PAGE SIX

CR # 170712

Detective Division                                          Homicide/Murder
Area One Violent Crimes              Page Six               HICKMON & SMITH


INVESTIGATION:(CONT.)     Otha Hickman stepped from the crowd
                          and identified himself as Talmon
Hickmon's brother.  At this time Otha Hickman also identified
the second victim as Jerome Smith.  Otha Hickman knew of no reason
why his brother was shot and was then informed on how to make
formal identification at the Forensic Institute.

             The R/Dets. then proceeded to Jerome
Smith's apartment and notified the victim's family of this
incident.and of formal identification proceedures. Jeweline Smith,
F/B 33 yrs of age, DOB ▓▓▓▓▓▓ of 706 E. 39th St. Apt. 805,
no phone, was interviewed re: circumstances of her brother's death
and she related that her brother was active in gang activity.
This information was confirmed by several residents of the area
who related that Jerome Smith was the leader of the "Goon Squad"
street gang.

**PERMANENT RETENTION FILE**
             Investigator Draus of the Medical
Examiner's office then arrived on the scene and authorized removal
after the scene was processed by Crime Lab unit 9601.  It should
be noted that seven 9mm casings   were recovered from the scene
along with two metal fragments by Beat 9601.

             Cleveland BALL was interviewed and
related in essance that he heard some shots and then looked out
his apartment window and observed the two subjects listed in the
format of this report running from the breezeway across the play
lot to the parking lot.  These two subjects were carrying handguns
attempting to put them into their pockets while they ran.  Upon
reaching the parking lot they got into a blue Cadillac which
contained two other occupants.  This vehicle then went Northbound
on Langley.  Cleveland Ball further related that yesterday, 27 Apr 84,
there was an incident involving some "Goon Squad" members and
a Delbert Edwards of 730 E. 39th St. Apt. 709.  Ball added that
Edwards' younger brother got into it with some "Goon Squad" members
and then Delbert Edwards later came out and fired a gun at the
gang members.  Cleveland Ball then related that the woman who lived
in apartment 307 might have seen something also.

             Dorthy BENSON, of apartment 307, was
interviewed and related that she heard some gun shots and then
went to the front window because her son was playing out in
front of the building and at this time she saw two men laying in
the ground.

             Eric BENSON was then located and interviewed
by Detectives Caroll and VanBerschot.  Eric Benson related ▓▓▓▓▓▓

CONTINUED ON PAGE SEVEN

RD # P-151 922
CITY-NF-07799

CR # 170712

[redacted]
CITY-NF-07800

INVESTIGATION:(CONT.) that he was out in front of the building playing and saw the two offenders (shooters) come through the breezeway from the rear of the building. Each had a gun in his hand and without saying anything walked up behind the victims and shoot each of them in the back of the head. These two subjects then ran back through the breezeway from the way they came.

Several other building residents were interviewed and the results are noted in the format section of this report.

PERMANENT RETENTION FILE

A flash message was sent of the description of the wanted offenders and vehicle.

Detectives Carroll, VanBerschot and Fields went to the apartment of Delbert Edwards however he was not at home and a business card was left with the instructions for him to contact this office.

The R/Dets. then toured the area for the wanted vehicle however this met without success.

The R/Dets. then proceeded to the Forensic Institute where a cursory examination of the victims revealed the wounds listed in the format of this report. A more thorough examination of the victims' injuries will be noted at time of autopsy.

Upon returning to Area One Headquarters the R/Dets. learned that members of the Gang Crime South unit had Louis J. Carter who was driving a vehicle similar to the wanted vehicle and admitted to being in the area at the time of the shootings. It was also learned that Delbert Edwards was in the offices of Gang Crime South and that his father brought him in voluntarilly.

Louis J. CARTER was then interviewed and he related that he was driving his father's blue Coup de Ville Cadillac (bearing Illinois License XVT 144) on this date from his sister's house, 625 E. 38th place, to 4037 S. Federal where he dropped off three friends. Then he picked up his mother from 652 W. Garfield and brought her back to his sister's house. This being around 1100 hours. The R/Dets. checked with Carter's mother and sister who confirmed his account of his actions. Carter was then released.

Delbert EDWARDS was interviewed and related that he was shot at, by members of the "Goon Squad" and that he reported this to the police, ref: RD # F-150899, and that two gang members were arrested on 27 Apr 84 at about 1530 hours. Edwards related further that he was then sent to his aunts house on

RD # F-151 922

CR # 170712

CONTINUED ON PAGE EIGHT

Detective Division                                    Homicide/Murder
Area One Violent Crimes            Page Eight         HICKMON & SMITH


INVESTIGATION:(CONT.)       51st and Lowe by his father and that
                            he spent the night there.  Edwards added
that he did not get up this morning until 1130 hours and that
the first he heard of the shootings     from his father who
picked him up at his aunt's house and brought him to the police
station.  The R/Dets. verified this through Edwards family members.
It should be noted that Delbert Edwards denies any gang affiliation.
Delbert Edwards was then released to his father.

                      This investigation continues..........

                    PERMANENT RETENTION FILE

Det. Robert Evans # 12754,
                        of Area One Violent Crimes
Det. Stephen Hood # 11885,



CR # 170712

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

## SUPPLEMENTARY REPORT
### CHICAGO POLICE

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

| | | 4. DATE OF ORIG. OCCURRENCE--TIME |
|---|---|---|
| | DAY | MO. | YR. |
| | 28 | APR. | 84 | 1017 |

| 1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | 1 UCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE ☐1 VERIFIED ☐2 CORRECTED | 3. BEAT OF OCCUR. |
|---|---|---|---|
| HOMICIDE/MURDER | 0110 | 706 E. 39th St. | 214 |

| 5. VICTIM'S NAME AS SHOWN ON CASE REPORT | CORRECT ☒1 YES ☐2 NO | IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 21. | 6. FIRE RELATED ☐1 YES ☒2 NO | 7. BEAT/UNIT ASSIGNED |
|---|---|---|---|---|
| HICKMON, Talmon | | | | 612 |

| 8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE | 9. NO. OF VICTIMS | 10. NO. OF OFFENDERS |
|---|---|---|---|
| CHA Grounds | 123 | 2 | 4 |

| 11. ☐ VER. FIED DNA | 12. OBJECT/WEAPON CODE | 13. FIREARM FEATURES CODE | 14. POINT/ENTRY CODE NO. | 15. POINT/EXIT CODE NOS. | 16. BURGLAR ALARM CODE | 17. SAFE BURGLARY METHOD CODE | 18. IF RESIDENCE WHERE WERE OCCUP. CODE |

| PROPERTY | DESCRIBE PROPERTY IN NARRATIVE. T - TAKEN; R - RECOVERED | FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT. |
|---|---|---|
| ☐ VERIFIED DNA | 1 MONEY ☐T $ ☐R | 3 JEWELRY ☐T $ ☐R | 3 FURS ☐T $ ☐R | 4 CLOTHING ☐T $ ☐R | 7 OFFICE EQUIPMENT ☐T $ ☐R | 8 TV, RADIO, STEREO ☐T $ ☐R |
| ☐ UPDATE TO | 9 HOUSEHOLD GOODS ☐T $ ☐R | 0 CONSUM. GOODS ☐T $ ☐R | ( ) FIREARMS ☐T $ ☐R | 1 & NARC./DANGEROUS DRUGS ☐T $ ☐R | 5 OTHER ☐T $ ☐R | 6 NONE ☐T $ ☐R |

| | 20. NAME (LAST--FIRST--M.I.) | 21. UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX--RACE--AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJ. YES NO. | 27. VICTIM REL. COD |
|---|---|---|---|---|---|---|---|---|
| VICTIMS UPDATE ONLY | 1. | | | | | | | |
| | 2. | | | | | | | |
| | 3. | | | | | | | |

| 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX--RACE--AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|

| OFFENDERS UPDATE ONLY | 31. C.B. NO. | I.R. NO., Y.O. NO. OR J.D.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.O. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 37. NO. ARRESTED | ARREST, UNIT NO. |
|---|---|---|---|---|---|---|---|---|
| OFF. | | | OFF. 2 | | | | | |

| 33. OFF'S. VEHICLE ☐USED ☐STOLEN | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. | STATE |
|---|---|---|---|---|---|---|---|

**PERMANENT RETENTION FILE**

| 34. SERIAL NOS. OR IDENTIFICATION NOS. ☒1 DNA ☐2 VERIFIED ☐3 CORRECTED | LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE |
|---|---|

| FOR USE BY BUREAU OF INVESTIGATIVE SERVICES ONLY (BOXES 21 & 50 THROUGH 55) |
|---|
| 50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA) | REV. CODE | 51. METHOD CODE | 52. METHOD ASSIGNED ☐1 FIELD ☐1 SUMMARY | UNIT NO. | 53. STATUS |
| DNA | DNA | DNA | | | ☒0 PROGRESS | ☐1 SUSPENDED | ☐2 UNFOUNDED |

| STATUS CONT'D. | 54. IF CASE CLEARED, HOW CLEARED | | | | |
|---|---|---|---|---|---|
| ☐3 CLRD. CLOSED | ☐4 CLRD. CLOSED | 5 EXC. CLRD. CLOSED | 6 EXC. CLRD. OPEN | 7 CLSD. NON-CRIM. | ☐1 ARREST & PROSEC. | ☐2 DIRECTED TO JUV. CRT. | ☐3 COMPL. RFUSD. TO PROSECUTE | ☐4 COMMUNITY ADJUSTMENT | ☐5 OTHER EXCEPT. | ☐ ADULT ☐ JUV |

| 55. ☐ FOR SUMMARY CASES ONLY -- THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION. |
|---|

CITY-NF-07802

### 80. NARRATIVE

INTERVIEWED:       WILLIS, Carlos M/B 14yrs of

3846 So. Langley Apt. 635, 2nd flr.       MAY 1 ENT'D

Ph. 548-6029

INVESTIGATION:    The reporting detectives in continuing the investigation

into the shooting deaths of Talmon Hickmon and Jerome

Smith learned that Carlos Willis was across the street from 706 E. 39th St., at the time

of the shooting. Carlos Willis was interviewed and he stated that he was across

**CONTINUED ON OTHER SIDE**

| 90. EXTRA COPIES REQUIRED (NO. & RECIPIENT) | 91. DATE THIS REPORT SUBMITTED | | | TIME | 92. SUPERVISOR APPROVING (PRINT NAME) |
|---|---|---|---|---|---|
| Normal | DAY 30 | MO. April | YR. 1984 | 1600 | SGT. J. MURPHY 8991 |

| 93. REPORTING OFFICER (PRINT NAME) | STAR NO. | 94. REPORTING OFFICER (PRINT NAME) | STAR NO. | SIGNATURE |
|---|---|---|---|---|
| Det. Stephen Hood | 11885 | Det. Robert Evans | 12754 | J. Murphy # 170712 |
| SIGNATURE | | SIGNATURE | | 97. DATE APPROVED (DAY MO. YR.) | TIME |
| Stephen Hood | | Robert Evans | | 30 APR 84 | 1600 |

CPD-11.411 (REV. 2/84 TEMP. B.I.S. USE ONLY)       *MUST BE COMPLETED IN ALL CASES       **ATTACHMENT 62**

DETECTIVE DIVISION
Area-1 Violent Crimes                    Page Two(2)                    30 April 1984
                                                                        F-151 922

INVESTIGATION:          the street and saw the two victims standing under
                        the building when two men walked up behind them.
One of the men pulled out a gun and started shooting the two men in the back of
the head. As the two men fell this man kept shooting into their bodies. The second
man just kind of stood in the backround watching. After the shooting both men
ran back the way they came, through the breezeway. After a short time he heard a
car door slam and a squeal of tires as a car was speeding away, however he never
saw this car as it did not come out onto 39th street. Willis went on that he was
playing ball with Randy Langston at the time and they stood together for several
minutes after the shooting and then Randy took his nephew and ran into the building.

            This investigation continues......................

            PERMANENT RETENTION FILE

Detectives Stephen Hood # 11885
            Robert Evans # 12754    of Area-1 Violent Crimes.

FD P-151 922

-1 MAY 1984 17



CITY-NF-07803



CR # 170712
ATTACHMENT 6

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

## SUPPLEMENTARY REPORT
CHICAGO POLICE

MAY 3 ENT'D

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

| 4. DATE OF ORIG. OCCURRENCE–TIME | | |
|---|---|---|
| DAY | MO. | YR. |
| 28 | Apr | 84 | 1017 |

| 1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | 1. IUCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE ☑ VERIFIED ☐ CORRECTED | 3. BEAT OF OCCUR. |
|---|---|---|---|
| HOMICIDE/MURDER | 0110 | 706 E 39th St | 214 |

| 5. VICTIM'S NAME AS SHOWN ON CASE REPORT | CORRECT ☑1 YES ☐2 NO | IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27. | 6. FIRE RELATED ☑1 YES ☐2 NO | 7. BEAT/UNIT ASSIGNED |
|---|---|---|---|---|
| HICKMON, Talmon | | | | 612 |

| 8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE | 9. NO. OF VICTIMS | 10. NO. OF OFFENDERS |
|---|---|---|---|
| CHA Grounds | 123 | 2 | 4 |

### CIRCUMSTANCES / PROPERTY

| 11. VERIFIED | 12. OBJECT/WEAPON | 13. FIREARM FEATURES | 14. POINT/ENTRY | 15. POINT/EXIT | 16. BURGLAR ALARM | 17. SAFE BURGLARY METHOD | 18. IF RESIDENCE WHERE WERE OCCUP. |
|---|---|---|---|---|---|---|---|
| DNA | CODE NO. | CODE NO. | CODE NO. | CODE NO. | CODE NOS. | CODE NOS. | CODE NOS. |

19. DESCRIBE PROPERTY IN NARRATIVE.
T = TAKEN;  R = RECOVERED

FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT

| PROPERTY | 1 MONEY | 2 JEWELRY | 3 FURS | 4 CLOTHING | 5 OFFICE EQUIPMENT | 6 TV, RADIO, STEREO |
|---|---|---|---|---|---|---|
| ☐ VERIFIED DNA | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ |
| | ☐ R | ☐ R | ☐ R | ☐ R | ☐ R | ☐ R |
| ☐ UPDATE IO | 9 HOUSEHOLD GOODS | 0 CONSUM. GOODS | 1 FIREARMS | 8 NARC./DANGEROUS DRUGS | 5 OTHER | 8 NONE |
| | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ | ☐ T $ |
| | ☐ R | ☐ R | ☐ R | ☐ R | ☐ R | ☐ R |

### VICTIMS UPDATE ONLY

| 20. NAME (LAST–FIRST–M.I.) | 21. IUCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. IN- JURED NO | 27. VICTIM REL. COD |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

### OFFENDERS UPDATE ONLY

| 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |

| 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.O.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.O.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|
| OFF. 1 | | | OFF. 2 | | | | |

| 33. OFF'S. VEHICLE | YEAR | MAKE | BODY STYLE | COLOR | | STATE LICENSE NO. | STATE |
|---|---|---|---|---|---|---|---|
| ☐ USED ☐ STOLEN | | | | PERMANENT RETENTION FILE | | | |

| 34. SERIAL NOS. OR IDENTIFICATION NOS. | ☐1 DNA | ☐2 VERIFIED | ☐3 CORRECTED | LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE |
|---|---|---|---|---|

FOR USE BY BUREAU OF INVESTIGATIVE SERVICES ONLY (BOXES 21 & 50 THROUGH 55)

| 50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA) | REV. CODE | 51. METHOD CODE | 52. METHOD ASSIGNED | UNIT NO. | 53. STATUS |
|---|---|---|---|---|---|
| DNA | DNA | DNA | ☐1 FIELD ☐3 SUMMARY | | ☑0 PROGRESS ☐1 SUSPENDED ☐2 UNFOUNDED |

| STATUS CONT'D | | 54. IF CASE CLEARED, HOW CLEARED | | | |
|---|---|---|---|---|---|
| ☐1 CLRD. CLOSED | ☐4 CLRD. OPEN | ☐5 EXC. CLOSED | ☐6 EXC. OPEN | ☐7 CLSD. NON-CRIM. | ☐1 ARREST & PROSEC. | ☐2 DIRECTED TO JUV. CRT. | ☐3 COMPL. REFUSO. TO PROSECUTE | ☐4 COMMUNITY ADJUSTMENT | ☐5 OTHER EXCEPT. | ☐ ADULT ☐ JU |

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

60. NARRATIVE

INVESTIGATION:  The reporting detectives in the continuing the investigatio

into the shooting deaths of Talmon Hickmon and Jerome

Smith interviewed the following person/s on 28 April 84.

INTERVIEWED:  WHITE, Minnie  F/B/50
706 E 39th St #105  Ph#548-4011

CITY-NF-07804

LANGSTON, Sandra  F/B/19
706 E 39th St #106  Ph#373-4592

Continued on Page#2

| 90. EXTRA COPIES REQUIRED (NO. & RECIPIENT) | 91. DATE THIS REPORT SUBMITTED – | | | TIME | 92. SUPERVISOR APPROVING (PRINT NAME) | STAR NO. |
|---|---|---|---|---|---|---|
| | DAY | MO. | YR. | | | |
| Normal | 30 | Apr | 84 | 8200 | Sgt. P. Guswell | 660 |

| 93. REPORTING OFFICER (PRINT NAME) | STAR NO. | 94. REPORTING OFFICER (PRINT NAME) | STAR NO. | SIGNATURE |
|---|---|---|---|---|
| Det J. Bogdalek | 14674 | Det J. Minogue | 13871 | Sgt Guswell |

| SIGNATURE | | SIGNATURE | | 95. DATE APPROVED (DAY–MO.–YR.) | TIME |
|---|---|---|---|---|---|
| | | | | 1 May 84 | 1450 |

CPD-11.411 (REV. 2/84  TEMP. USE ONLY)   *MUST BE COMPLETED IN ALL CASES

ATTACHMENT