5

...ls for modifications or ... 11, 1983. In addition, as the ...ggested order is silent on the sub- ...quired by Rule 65(c) to be addressed by ...ecause of the assumption that the present arrangements for the TRO would be appropriate ...e preliminary injunction, or that the absence of potential harm to defendants is such that they would waive the giving of security altogether. This subject of security should also be addressed in the parties' comments (including a statement of the reasons that other security is necessary, and the appropriate amount thereof, if this Court has misread defendants' position in that respect).

*1078 EXHIBIT 1

EXHIBIT 1

| | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| DETECTIVE DIVISION | | | |
| SPECIAL ORDER NO. 83-1 | 13 January 1983 | 3 February 1983 | 83-1 |

| SUBJECT | DISTRIBUTION AMENDS |
|---|---|
| INVESTIGATIVE FILES | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| | |

I. INTRODUCTION

This order is designed to institutionalize the control of all violent crime field investigation documents and files, which previously may have been referred to as working files, running files or detective's personal files and notes.

This order also provides for the maintenance and preservation of these documents by Detective Division field units.

II. PURPOSE

This order provides:

A. guidelines for the proper retention of official Department reports, notes, memoranda and miscellaneous documents of potential evidentiary value accumulated during the course of a particular violent crime field investigation.

B. guidelines for the proper preparation of a supplementary report.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

562 F.Supp. 1067
(Cite as: 562 F.Supp. 1067)

C. for the proper maintenance of Investigative Files and "R.D." numerical sequence files at the unit level by Detective Division personnel assigned to violent crime field investigations.

D. specific instructions for the development and proper assemblage of all documents placed into a violent crime Investigative File.

E. instructions for the inventory of all documents placed into an Investigative File Case Folder.

F. guidelines to Violent Crimes Unit supervisors for the proper maintenance, storage and retention of Investigative Files.

G. instructions for the use of the Investigative File Case Folder.

H. instructions for the use of the Miscellaneous Document Repository.

I. instructions for the use of the General Progress Report (CPD-23.122).

J. instructions for the use of the Investigative File Inventory Sheet (CPD-23.121).

III. POLICY
It is the policy of the Chicago Police Department to conduct all criminal investigations in an impartial and objective manner and to maintain the integrity of its investigative files to ensure that the due process rights of the accused are not compromised during the subject investigation, initial court hearing or any subsequent reviews. Additionally, it is the policy of the Chicago Police Department to record and preserve *any* relevant information obtained by *any* detective during the course of a violent crime field investigation.

When assigned to violent crime field investigations, detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any information and materials that may tend to show his possible innocence or aid in his defense is preserved.

*1079 Deviation from this policy adversely impacts on the goals and objectives of the Chicago Police Department and may result in disciplinary action against that Department member.

IV. DEFINITIONS
A. Investigative File

An Investigative File is a criminal case file pertaining to a violent crime field investigation which contains official Department reports, notes, memoranda and miscellaneous documents generated by or received by any detective during the course of such investigation. This investigative file is designed to provide all parties engaged in a criminal proceeding including the judge, State's Attorney, Defense Attorney and the assigned Department members with a comprehensive account of the subject criminal case.

B. Investigative File Case Folder

An Investigative File Case Folder is an 8 1/2 " x 11" case folder complete with two (2) two-hole metal punch fasteners designed to secure all documents relating to the subject criminal case.

C. Miscellaneous Document Repository

A Miscellaneous Document Repository is an 8 1/2 " x 11" envelope which will be utilized as a receptacle for all items and documents which are not 8 1/2 " x 11" in size. This envelope will be fastened with a two-prong metal fastener to the right hand side of the Investigative File Case Folder. It will be the first (bottom) document on the right hand side.

D. Investigative File Inventory Sheet

An Investigative File Inventory Sheet is a multi-lined 8 1/2 " x 11" sheet of paper with columns to identify each investigative document that is placed in the investigative file case folder. This form functions as the case index for all documents within the investigative file case folder.

D. A copy of the form will be forwarded to the Records Division whenever felony charges are placed against a person(s) to ensure proper notice of all existing documents pertaining to the subject investigation can be made to the State's Attorney's Office, the courts and the defense counsel.

E. General Progress Report

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

562 F.Supp. 1067
(Cite as: 562 F.Supp. 1067)

A General Progress Report is a Department form, 8 1/2" x 11" in size, which will be utilized by all detectives assigned to violent crime field investigations. This document is designed to standardize the recording of handwritten notes and memoranda (the investigative work-product) including: inter-watch memoranda (whether handwritten or typewritten), witness or suspect interview notes, on-scene canvass notes, and any other handwritten personal notes normally generated by investigating detectives during the course of a violent crime field investigation.

V. RESPONSIBILITIES AND PROCEDURES
  A. The Violent Crimes Unit supervisors will ensure that:

  1. an Investigative File Case Folder is initiated immediately in all violent crime field investigations listed below:

  a. Homicides/Medical Examiner Cases

  b. Police-related shooting incidents

  c. Batteries likely to result in death

  d. Rapes and Deviate Sexual Assaults

  e. Any other major violent crime field investigation that the unit supervisor deems appropriate.

  2. an Investigative File Case Folder is initiated for all violent crime field investigations which culminate with the arrest of the offender(s) and the approval of felony charges.

  3. all submitted documents are reviewed and inserted into the Investigative File Case Folder and logged on the Investigative File Inventory Sheet when an Investigative File Case Folder exists.

  4. in those cases wherein an Investigative File Case Folder has not been prepared, all submitted documents presented with each supplementary report are reviewed and that those documents are attached to the photocopy of the original case report in the unit's R.D. numerical sequence file.

*1080 B. Detectives are required to:

  1. transcribe relevant information which initially had been recorded upon General Progress Reports, Violent Crimes Major Incident Worksheets, and other miscellaneous investigative documents, on an official Department case report form (Supplementary, General Offense, etc.) consistent with the Detective Division Violent Crime reporting format.

  2. submit all handwritten notes and investigative documents generated or received to the unit supervisor for review and inclusion in the Investigative File Case Folder whenever an Investigative File Case Folder *has been* initiated. (Normally at the end of each tour.)

  3. preserve all handwritten notes and investigative documents generated or received and submit them to the unit supervisor with each supplementary report submitted whenever an Investigative File Case Folder *has not been* initiated.

  4. assume responsibility for the contents of the investigative file folder and any documents placed within the folder during his tour of duty.

Whenever a member of the Division removes the Investigative File Case Folder from the Watch Commander's office, the member will, in accordance with Detective Division Notice No. 82–2, "Detective Division File Control Log," sign the unit File Control Log book. The Unit File Control Log will also be signed by the member returning the Investigative File Case Folder. The Investigative File Case Folder will not be handed over to another Division member without recording this exchange in the File Control Log book.

  C. The Violent Crimes Unit commanding officer will ensure that:

  1. the proper maintenance of the unit's R.D. numerical sequence files and direct administrative control of all Investigative File Case Folders are achieved.

  2. a copy of the completed Investigative File Inventory Sheet is forwarded to the Records Division whenever a violent crime field investigation results in a person(s) being charged with a felony.

  3. all related documents, except original copies of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

562 F.Supp. 1067
(Cite as: 562 F.Supp. 1067)

supplementary case reports, are retained in unit files.

4. all notes, memoranda and miscellaneous documents of potential evidentiary value are retained in the Violent Crimes Unit's Investigative Files.

VI. VIOLENT CRIMES FILE RETENTION

The retention schedule for Violent Crimes Units' files is as follows:

A. Non-criminal incidents: One (1) year—Purged

B. Cleared Misdemeanor incidents: One (1) year—Purged

C. Unfounded incidents: One (1) year—Purged

D. Exceptionally Cleared incidents: One (1) year—Purged

E. Suspended incidents (except when warrants have been issued):

1. Misdemeanors: 18 months—Purged

2. Felonies: Three (3) years—Purged

F. Cleared Felony: Until final court disposition—Purged

G. Cleared/Closed Homicides: Until final court disposition and then forwarded to Records Division for permanent retention.

H. Unsolved Homicides: Ten (10) years at Violent Crimes Unit and then forwarded to Records Division for permanent retention.

I. Cleared/Open Homicides: Ten (10) years at Violent Crimes Unit and then forwarded to Records Division for permanent retention.

/s/ William Hanhardt

William Hanhardt, Chief

Detective Division

ORDER [FN1]

FN1. In response to this Court's March 31, 1983 order embodying the Findings and Conclusions, the parties have submitted comments on the proposed form of order that accompanied the March 31 order. Comments by counsel for City Defendants reflect both (a) a niggling approach to what are after all fundamental constitutional concerns and (b) an extraordinarily poor understanding of the fundamentals of drafting. In view of those infirmities, it can only be hoped that their *client*, the new Superintendent of Police, displays the same forthrightness and supportiveness of the principles dealt with by this Court that now-resigned Superintendent Brzeczek did (see Finding 18). Because City Defendants' comments do not merit individual attention, only n. 2 treats with a particularly indefensible aspect of their submission. As for County Defendants, their comments ignore (a) the pervasive problems engendered by the previously existing practices, (b) the fact that various of the Assistant State's Attorneys have in fact been aware of the practices and have not acted to cure them, and (c) most important, that to rid the present system of the constitutionally flawed practices "root and branch" (to import a phrase from another area of constitutional law) requires action by both sets of defendants working in cooperation. As matters now stand either set can frustrate the constitutional rights of defendants, and the provisions of Paragraph 4 of this order represent only minimal requirements that County Defendants' own Deputy State's Attorney Kunkle confirmed would be helpful (see Finding 19 and Conclusion 5(b)). Again it is disingenuous of counsel for County Defendants (as in the case of City Defendants' counsel) to disavow what their clients have been forthright enough to acknowledge. For all these reasons, this order follows the original proposed form in all substantive respects.

This Court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions")*1081 dated March 31, 1983 have been entered in accordance with Fed.R.Civ.P. ("Rule") 52(a). Those Findings and Conclusions represent the reasons for the issuance of this Order. In accordance with Rule 65(d), it is ordered that pending a hearing on the ultimate merits of this litigation:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.