```
STATE OF ILLINOIS   )
                    ) SS:
COUNTY OF COOK      )
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE  )
STATE OF ILLINOIS, )
                   )
      Plaintiff,   )
                   )   CHARGE: CRIMINAL
         vs.       )   CASE NO: 85 CR 07651-01
                   )
NATHSON FIELDS,    )
                   )
      Defendant.   )

BE IT REMEMBERED, that on the 21st day of AUGUST, 2013, A.D, this cause came on to be heard before the HONORABLE PAUL BIEBEL, Judge of said court, herein, the defendant having entered a plea of not guilty.

A P P E A R A N C E S:
HON: ANITA ALVAREZ,
State's Attorney of Cook County by;
MR. BRIAN SEXTON,
MR. PATRICK COGHLIN,
Asst. State's Attorneys,
   On behalf of the People of Illinois;
* * * * * * * * * * *

MR. LEONARD GOODMAN,
MS. MELISSA MATUZAK,
MS. CANDACE GOREMAN,
PRIVATE COUNSELS,
ATTORNEYS AT LAW,
   On behalf of the Defendant.
* * * * * * * * * * *

JAMIE MITCHELL
OFFICIAL COURT REPORTER
CIRCUIT COURT OF COOK COUNTY

1

```
 1
 2
 3                         I N D E X
 4
 5              HON:    PAUL BIEBEL
 6              DATE:   8/21/13
 7              CHARGE: CRIMINAL
 8              PAGES:  1-208
 9
10
   DIRECT EXAMINATION OF: MR. EARL HAWKINS
11 ON PAGE............................34
12 DIRECT EXAMINATION OF: MS. SANDRA LANGSTON
   ON PAGE............................99
13
   CROSS EXAMINATION
14 ON PAGE............................105
15 REDIRECT EXAMINATION
   ON PAGE............................159
16
   RECROSS EXAMINATION
17 ON PAGE............................161
18 DIRECT EXAMINATION (con't)
   ON PAGE............................162
19
20
21
22
23
   CONTINUED TO.............................8/22/13
24
```

2

Q. At the time that you entered that plea, you still had that death sentence, correct?

A. Yes.

Q. And when this case got reversed and brought back for a new trial -- well, strike that. Did you end up testifying in U.S. verses Maloney case, Judge Maloney?

A. Yes, eventually.

Q. And was he convicted?

A. Yes.

Q. And I believe you testified that you've testified about 12 or 13 times against the El Rukns, is that correct?

A. Basically, yes.

Q. When this case came back for remand, did you come to a plea agreement with us in this case?

A. Yes.

Q. And in that case, did you agree to plead guilty in exchange -- plead guilty to 42 years on a count of armed violence regarding one victim, Talman Hickman and 42 years regarding another count for the other victim, Jerome Smith to be served consecutive together, but concurrently with your federal sentence. Was that your understanding?

A. That's what happened, yes.

Q. All right. You testified in the trial back in 2009, correct?

A. Yes.

Q. And was it your understanding that you were going to serve the State time concurrently with the federal time. In fact, you had served your state time while you were in a federal -- in the federal correctional institution?

A. Say that again.

Q. Was it your understanding at the time when you entered into that agreement that --

MR. GOODMAN: Judge, this is important. Can he ask the witness a non-leading question so we can hear what his understanding is, instead of Mr. Sexton telling him what his understanding was?

MR. SEXTON: I'm not telling him what his understanding was.

MR. GOODMAN: Ask him what his understanding was under the deal.

THE COURT: Ask him a question about what his understanding was.

BY MR. SEXTON:

Q. What was your understanding of the plea deal as to how much time you were going to get?

1  A. I thought I was going to get 60 years.

2  Q. That's your federal sentence, right?

3  A. Yes.

4  Q. Regarding your State case, when this came back
5  on remand, we entered into a plea agreement with you,
6  right?

7  A. Yes, that's what happened.

8  Q. What was your understanding of the plea
9  agreement, how it would work in conjunction with the
10 federal sentence you got?

11 A. I was supposed to get 42 years that was going
12 to run into my federal sentence. That's my understanding
13 of it.

14 Q. When you say, "run into your federal sentence,"
15 do you understand that to be concurrent?

16 A. Yes.

17 Q. And when you testified -- strike that. At some
18 point, did you receive some paperwork from the Bureau of
19 Prisons indicating that your federal outdate was 2016 and
20 that you will be serving 11 more years on the State case?

21 A. That's how it worked out.

22 Q. Based upon that, did you write anything to
23 Judge Gaughan concerning your guilty plea?

24 A. Yes.

Q. And what did you write?

A. I wrote him that ain't what I -- that ain't what I plead guilty to.

Q. Did you subsequently have a conversation with your attorneys after that?

A. Yes.

Q. And did you ever withdraw your guilty plea?

A. No.

Q. And had you had a conversation with your attorney, Dave Stetler, concerning that plea agreement?

A. Recently?

Q. Yes.

A. Yes.

Q. And have you subsequently learned that 2016 is not your out date on your federal sentence, that it's in fact 2027?

A. Twenty-six, 27, yes.

Q. And did we also agree to reduce the time -- the same plea agreement in exchange for your truthful testimony, did we also agree to reduce the numbers on your armed violence count from 42 on each victim to 39 to ensure that you would not serve anymore time on your State sentence than your federal one?

MR. GOODMAN: I'm confused as to foundation.

205

1  Are we talking about a recent plea?

2      MR. SEXTON: This isn't a plea agreement, this
3  is just a clarification of the original plea agreement we
4  reached back in 2004.

5      MR. GOODMAN: Is this in writing?

6      MR. SEXTON: No, this is not in writing. As I
7  indicated to you, that's exactly what the agreement is.

8      MR. GOODMAN: This is an agreement you made
9  within the last couple of weeks.

10     MR. SEXTON: Yes. Ms. Goreman knows about it.
11 Ms. Goreman was there for his deposition. In fact, we
12 just reached that agreement on Monday.

13     MS. GOREMAN: Yes.

14 BY MR. SEXTON:

15     Q. Did we just reach an agreement Monday, right
16 before we were scheduled to take your deposition?

17     A. Yes.

18     Q. And you had an opportunity to talk to your
19 lawyer, and we clarified what the original intent was
20 when you pled back in 2004, correct?

21     A. I don't know what you talkin about, your intent
22 was, but I know what happened, yes.

23     Q. And that was to accurately reflect what you
24 understood or what our intent was back when you plead in

2000?

MR. GOODMAN: Objection, to the leading. Let's hear from the witness.

MR. SEXTON: I am clarifying it.

THE COURT: Overruled. Go on.

BY MR. SEXTON:

Q. Again, was this number reached, 39 plus 39 with the same terms of the plea agreement, reached with your attorney, Mr. Stetler to more accurately reflect our understanding of the actual time that you would serve --

MS. MATUZAK: Leading, your Honor.

THE COURT: It's leading because it's to clarify what the original agreement --

THE COURT: Was the agreement such that the State time went in the same time the federal time, that's what I'm hearing.

MR. SEXTON: Yes.

THE COURT: Okay. That's it. I have to take a break to get relief for the court reporter. Thank you.

(Which were all the proceedings had on this day by this reporter.)