UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON E. FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 CV 1168 |
| v. ) | |
| ) | Hon. Matthew F. Kennelly |
| CITY OF CHICAGO et al., ) | |
| Defendants. ) | |

### PLAINTIFF'S RESPONSE TO CITY DEFENDANTS'
### LOCAL RULE 56.1(A)(3) STATEMENT OF ADDITIONAL FACTS

Plaintiff Nathson Fields, by and through his attorneys, Responds to the city defendants' Statement of Additional Facts in Support of their Motion for Summary Judgment as follows:

1. On or about May 17, 1985 at the U.S. Attorney's Office, Anthony Sumner told AUSA Pat Deady and Richard Kolovitz that plaintiff was one of the Smith/Hickman shooters. Exhibit 63, Deposition of Richard Kolovitz, pp. 72-77.

> RESPONSE: Objection: double and triple hearsay. In addition, and without waiving his objections, Plaintiff disputes the truthfulness of Sumner's assertions based on his admissions of lying and AUSA Hogan's admission that Sumner was known to have lied on at least three occasions. PSF¶¶105, 107.

2. Defendant O'Callaghan did not intimidate Randy Langston and Gerald Morris to try to get them to identify Fields. Exhibit 64, Deposition of David O'Callaghan, pp. 133-134.

> RESPONSE: Disputed. Both Gerald Morris and Randy Langston have given statements to the effect that defendant O'Callaghan sought to improperly coerce and influence Morris and Langston into testifying against Fields. PSF¶¶110-118. Although O'Callaghan testified that he did not intimidate those men, no jury would have to accept his statement as true.

3.  Jack Smeeton's file relating to plaintiff's case was destroyed at some point in the 1990s. Exhibit 65, Deposition of Jack Smeeton, p. 44.

> RESPONSE: Object as not material and not relevant. Notwithstanding, and without waving his objections: admit that Smeeton so testified.

4.  Jeff Fort, the leader of the El-Rukns, wanted the money being paid to bribe Judge Maloney returned if both Fields and Hawkins were not acquitted. Exhibit 66, Deposition of Tramell Davis, p. 97.

> RESPONSE: Denied as not supported. Object to the hearsay testimony of Davis; object as to the speculation by Davis (as to the thoughts and/or desires of Jeff Fort). Plaintiff also objects to the use of Tramell Davis' deposition testimony, on the grounds that Davis has received improper benefits including rent payments in exchange for providing the deposition and testifying against Fields. PSAF¶275.

5.  James Langston was called by Earl Hawkins and Nathson Fields as a witness in plaintiff's 1986 trial in the sentencing phase. Exhibit 67, Langston 1986 Trial Testimony in *People v. Fields*, pp. 1318-1331.

> RESPONSE: Admitted that James Langston was not known to the defense attorneys until after Fields was found guilty at the trial. Fields further states that until the production of the street file in 2011, he was unaware that James Langston had indicated to the police, within a day of the murders, that a passenger in the Hickman-Smith getaway car was a brother of the late Ricky Baldwin, who had been murdered the year before by members of the Goon Squad. PSF¶¶176, 178.

6.  The Permanent Retention File, CITY-NF-934-962, contains a General Offense Case Report and Supplementary Reports, dated between April 28, 1984 and June 17, 1985, each labeled "RD No. F-151922." Exhibit 68, Permanent Retention File, CITY-NF-934-964; Plaintiff's Rule 56.1 Statement of Facts (Dkt. 437 ¶ 235).

> RESPONSE: Objection on the grounds that the factual assertion is not material; without waiving Plaintiff's objection: admitted.

7. The Area File contains 76 pages of reports and notes bates-labeled CITY-NF-7559-7634. Plaintiff does not make any *Brady* claim with respect to the contents of the Area File. Exhibit 69, Area File, CITY-NF-7559-7652; Plaintiff's Rule 56.1 Statement of Facts (Dkt. 437 ¶ 235); Plaintiff's Memorandum in Support of Motion for Summary Judgment (Dkt. 435).

> RESPONSE: Disputed and denied as to the accuracy of the number of pages. Objection on the grounds of materiality; without waiving Plaintiff's objection: not admitted; Plaintiff's position is that he was entitled to all investigative materials produced by police in the Hickman-Smith murder investigation, and this file was not tendered to Plaintiff until 2012.

8. Ricky Baldwin was a member of the Black P. Stone Rangers. *People v. Greene*, 513 N.E.2d 1092, 1094 (1st Dist. 1987)("The victim [Ricky Baldwin] was a member of the Black P. Stone Rangers gang ….")

> RESPONSE: Objection on the grounds of materiality and hearsay; without waiving Plaintiff's objection, Plaintiff does not dispute that the cited language in *People v. Green* suggests that Ricky Baldwin was a member of something called the Black P. Stone Rangers; disputed that an organization with that name ever existed.

9. The Black P. Stone Rangers changed their name to the El Rukns in 1976. Exhibit 70, Deposition of Plaintiff p. 85.

> RESPONSE: Objection on the grounds of materiality; without waiving Plaintiff's objection. Denied. Plaintiff testified that the *Black P Stone Nation* (not the Black P. Stone Rangers) changed its name to the El Rukns in 1976.

10. Richard Buckles testified at the 1986 trial that Fields looked like one of the offenders. Exhibit 71, Buckles 1986 Trial Testimony in *People v. Fields*, pp. 216, 252-53.

> RESPONSE: Object as not material. Without waiving Plaintiff's objection: admitted with the clarification that Buckles was contacted by police murders two years after the murders; Buckles testified at the trial that one of the shooters "looked like" Fields, however Buckles could not identify Fields as a shooter. Defendants' Exhibit

6

71, pp. 216, 252.

11. Defendant Bogdalek testified he did not know what documents plaintiff's attorney received relative to the 1986 trial. Exhibit 72, Deposition of Joseph Bogdalek, p. 88.

> RESPONSE: Denied. The cited page is taken out of context. (Pl. Exhs., 21, 86-88) Defendant Bogdalek admitted that in 1986 around the time of the trial he realized that his original notes from four interviews were missing and he did not bring that to anyone attention and that he was not aware of any policy requiring him to bring this to anyone's attention. When asked if he understood that Mr. Fields was seeking all of the investigation notes he testified that he assumed when he turned everything in that everything would be in the file but that at this point he realized his notes were not in the file. With that background, the following exchange took place:
>
> > Q And my question is: Did you understand that Mr. Fields did not get those notes if they weren't in the file?
> > A I -- I didn't know.
> > Q You didn't know if he had gotten them or not?
> > A Yes. That's. . .
> > Q I'm sorry. Yes? You --
> > A Yes. I -- I didn't know.
>
> (Pl. Ex. 21, p. 88)

12. Defendant O'Callaghan testified he assumed Fields had a right to see all of the notes created by the detectives. Exhibit 64, Deposition of David O'Callaghan, p. 224.

> RESPONSE: Object as not material. The fact that O'Callaghan testified that he assumed Fields had a right to see all of the notes created by defendants does not created any inference that notes -- or all notes -- were tendered. In addition, O'Callaghan testified that he believed that he was allowed to be the gate-keeper of notes tendered to fields. PSF¶30.

13. In the Complaint Register investigation, the CPD Internal Affairs Division required Defendants Minogue, Evans, Murphy, Hood, Casto, Richardson, Bogdalek, and O'Callaghan to respond to the allegation that they had each violated

plaintiff's rights by "intentionally and deliberately suppressing written notes known as 'Street Files' generated by his interviews with hundreds of people during the year long intense investigation into the Talman Hickman and Jerome Smith homicides which contained exculpatory information/evidence." Exhibit 73, Notifications of Charges/Allegations and Administrative Proceedings Rights, bates-labeled CITY-NF-005252-5253, 5257-5258, 5262-5263, 5267-5268, 5272-5273.

> RESPONSE: Disputed. Objection as to the inaccurate characterization of Plaintiff's federal lawsuit by the CPD internal affairs, in the cited section. Without waiving Plaintiff's objection the allegations characterized above are different than the inaccurately characterized allegations found in the file at Pl. Ex. 2, Bates-stamp CITY-NF-007748.

14. Defendants Minogue, Evans, Murphy, Hood, Casto, Richardson, Bogdalek, and O'Callaghan submitted memos to IAD denying they withheld anything exculpatory because they placed all of their work product in the investigatory file, not based on a review of the State's file. Exhibit 74, Defendants' To/From Reports, CITY-NF 005241, 5242-43, 5249, 5250, 5256, 5261, 5266, 5271; Ex. 72, pp. 19-20, 40, 80, 104-106; Exhibit 75, Deposition of James Minogue, pp. 26-27, 174-75, 180-81; Exhibit 76, Deposition of Stephen Hood, pp. 13-16, 97, 121; Exhibit 77, Deposition of Stephen Casto, pp. 77-78; Exhibit 78, Deposition of Robert Evans, pp. 35-37, 99-100, 104; Ex. 64 pp. 202, 262.

> PRESPONSE: Plaintiff objects to the "fact" as not conforming with Local Rule 56.1 which calls for short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph; without waiving Plaintiff's objection: denied that the cited memos indicate whether or not defendants reviewed the state's file. The memos referenced in this paragraph vary in their particulars. Again, without waiving his objections, Plaintiff admits that Minogue, Evans, Murphy, Hood, Casto, Richardson, Bogdalek, and O'Callaghan all submitted memos which generally denied that they had suppressed information from Mr. Fields without any particulars about any investigation

conducted by said defendants. Plaintiff disputes the truthfulness of the assertions in those memos, and disputes any other assertions in paragraph 14. Plaintiff also notes that defendant Hood testified that the signature on the memo, which he purportedly submitted to IAD, did not look like his own. City Ex. 76, p. 13.

15. Jim Hickey was the primary drafter of Special Order 83-1, which was the governing directive regarding how detectives were to take notes relating to investigations. Exhibit 79, Deposition of James Hickey, pp. 27, 50.

> RESPONSE: Admitted that James Hickey was the primary drafter of Special Order 83-1; denied as to the remainder of the assertion as unsupported by the citation.

16. Pursuant to Special Order 83-1 detectives were to prepare General Progress Reports regarding information they gathered on a case. Exhibit 79, Deposition of James Hickey, pp. 24-26, 31-33.

> RESPONSE: Admitted that James Hickey testified, over the objection of attorney Noland, based on speculation, that under Special Order 83-1 detectives were *supposed* to prepare General Progress Reports; but James Hickey clarified his response at page 25 of City's Exhibit 79, to testify that he did not know if this was always done.

17. Jim Hickey personally trained over 1,000 detectives on Special Order 83-1. Ex. 79, pp. 11-12.

> RESPONSE: Object as to materiality. Without waiving Plaintiff's objection: admitted that James Hickey so testified.

18. Defendants Minogue, Bogdalek, Hood, Evans, and O'Callaghan testified pursuant to CPD policy all of their investigatory materials should have been included in the file and produced. Ex. 75, pp. 92, 174; Ex. 72, pp. 20-21; Ex. 76, pp. 13-16, 19; Ex. 78, pp. 44-46; Ex. 64, p. 224.

> RESPONSE: Plaintiff objects to the "fact" as not conforming with Local Rule 56.1 which calls for short numbered paragraphs, including within each paragraph specific references to … parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Object as to the speculative nature and materiality of the word "should." Without waiving Plaintiff's

9

objections: denied as not supported by the cited testimony in the record. For example, in the cited material O'Callaghan merely testifies that he would "would assume" that Fields had a right to see the notes at the time Fields was charged with the murder; Evans testified that it was the policy of the CPD that "you were not allowed to throw away notes." Hood testified that it was his practice to put down all pertinent information; during 1984-1985 Hood would put his notes in a memo or case report and turn them in to the sergeants' basket -- Hood also testified that the notes ultimately ended up in the "master file" or "office file."

19. In 1984 to 1986, CPD policy was to turn over all investigative files to the State's Attorney's Office when requested. Ex. 79, pp. 56-57.

> PROPOSED RESPONSE: Disputed as taken out of context. The policy was the special order in place at the time. During 1984 until May 1986 the CPD policy was special order 83-1. From May 29, 1986 until at least the time of the cited deposition, the policy of the CPD was special order 86-3. (PSF¶10,11,14 15.)

20. Defendant O'Callaghan's testified that while he was assigned to the federal Task Force, there was a room at the federal building containing documents with respect to homicides that were part of the El Rukn federal indictment, which may have included Smith/Hickman documents. Ex. 64, pp. 206-07, 282-83.

> RESPONSE: Denied as unsupported by the record. Defendant O'Callaghan did not use the word "may" in relation to the Smith/Hickman documents. O'Callaghan testified as follows at page 207:
>
>> Q  Do you know what materials you had in relation to the Hickman and Smith murders at the federal court?
>> A  Do I know what all the materials --
>> Q  Um-hum.
>> A  I'm not going to say I know every single piece of paper.
>> Q  Um-hum.
>> A  Do I know that I provided the materials? Yes, in case reports, interview notes, stuff like that. Yes.

21. Pursuant to CPD General Order 82-14, in Complaint Register investigations officers must respond to questions presented and IAD

10

investigates the merits of the complainant's claims. Exhibit 80, General Order 82-14 (Section I).

> RESPONSE: Objection on the grounds of relevance, materiality and completeness, also object as to not complying with Local Rule 56.1 which calls for short numbered paragraphs, including within each paragraph specific references to the … parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.; notwithstanding the objections, Fields further states that CPD policies have no bearing on the obligations of defendants to conduct a reasonably diligent investigation in response to a lawsuit. Although the cited policy does state in various places that members will cooperate fully with OPS and IAD, and that investigators may require "to-from-subject reports" from accused CPD members to answer questions about alleged misconduct these policies do not supplant the law and the Federal Rules of Civil Procedure. Finally, the citation to "Section I" is ambiguous in that it appears to refer to the introduction section of the General Order, which refers only in the most general of terms to other addenda and provisions of the document.

                        Respectfully Submitted,
                         /s/H. Candace Gorman
                        One of the Attorneys for Fields

Law office of H. Candace Gorman
220 S. Halsted, Suite 200
Chicago IL. 60661
312.427.2313

**CERTIFICATE OF SERVICE**

      I, H. Candace Gorman, hereby certify that the foregoing Response to Defendants' Statement of Additional Facts was served to the parties by email.

Dated: January 24, 2014

                              Respectfully Submitted,

                              /s/H. Candace Gorman
                              One of the Attorneys for Fields

For Fields:

| | |
|---|---|
| Leonard C. Goodman | H. Candace Gorman |
| Melissa Matuzak | 220 S. Halsted |
| 53 W. Jackson Boulevard | Suite 200 |
| Suite 1650 | Chicago Illinois 60661 |
| Chicago, Illinois 60604 | 312-427-2313 |
| 312-986-1984 | |