**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NATHSON E. FIELDS,                          )
                                            )
            Plaintiff,                      )
                                            )    Case No. 10 C 1168
      v.                                    )
                                            )    Judge Matthew F. Kennelly
CITY OF CHICAGO, et al.,                    )
                                            )    Magistrate Judge Geraldine Soat Brown
            Defendants.                     )
                                            )

**CITY DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700

## TABLE OF CONTENTS

**Page**

I.     **PLAINTIFF'S DUE PROCESS CLAIM FAILS AS A MATTER OF LAW** ............. 1

    **A.**     Plaintiff Fails to Address the City Defendants' Primary Argument That He Cannot Meet the Materiality Element of Brady Due to the Bribe ......................... 1

       *Kyles v. Whitley*,
         514 U.S. 419 (1995).........................................................................1

       *People v. Hawkins*,
         690 N.E.2d 999 (1998)....................................................................1

    B.     Plaintiff's Other Arguments Misstate the Law, Misstate the City Defendants' Position, and/or Are Irrelevant ................................................................. 2

       *Newsome v. McCabe*,
         256 F.3d 747 (7th Cir. 2001) ..........................................................2

       *People v. Hawkins*,
         690 N.E.2d 999 (1998)....................................................................3

    C.     Plaintiff Also Fails to Directly Address the City Defendants' Materiality Argument with Respect to the 2009 Trial ............................................... 4

       *Carvajal v. Dominguez*,
         542 F.3d 561 (7th Cir. 2008) .......................................................4, 5

       *Bielanski v. County of Kane*,
         550 F.3d 632 (7th Cir. 2008) .......................................................4, 5

       *Mosley v. City of Chicago*,
         614 F.3d 391 (7th Cir. 2010) .......................................................4, 5

       *Whitlock v. Brueggemann*,
         682 F.3d 567 (7th Cir. 2012) ..........................................................4

       *Stickler v. Greene*,
         527 U.S. 263 (1999).........................................................................5

II.   **THERE IS NO EVIDENCE OF A PRACTICE, WIDESPREAD OR OTHERWISE, TO WITHHOLD BRADY MATERIAL IN STREET FILES**........... 6

    *Connick v. Thompson,*
      131 S.Ct. 1350 (2011) ....................................................................................6

    *Jenkins v. Bartlett,*
      487 F.3d 482 (7th Cir. 2007) .........................................................................6

    *Grieveson v. Anderson,*
      538 F.3d 763 (7th Cir. 2008) .........................................................................6

    *City of Canton v. Harris,*
      489 U.S. 378 (1989).......................................................................................7

    *Frake v. City of Chicago,*
      210 F.3d 779 (7th Cir. 2000) .........................................................................7

    *Edwards v. Gilbert,*
      867 F.2d 1271 (11th Cir. 1989) .....................................................................7

III.  **ALTERNATIVELY, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS**...................... 9

    A.    Failure to Intervene ....................................................................... 9

    B.    State Law Claims ............................................................................ 9

        *Bowen v. Sullivan,*
          2012 WL 2116121 (N.D. Ill. 2012) ...............................................10

        *David v. Village of Oak Lawn,*
          954 F. Supp. 1241 (N.D. Ill. 1996) ...............................................10

        *Slagel v. Shell Oil Refinery,*
          811 F. Supp. 378 (C.D. Ill. 1993), *aff'd* 23 F.3d 410 (1994)...........10

        *Bordelon v. Chicago School Reform Board of Trustees,*
          233 F.3d 524 (7th Cir. 2000) ..............................................11, 12, 13

        *United States v. Roberts,*
          534 F.3d 560 (7th Cir. 2008) .........................................................11

        *Bonte v. U.S. Bank,*
          624 F.3d 461 (7th Cir. 2010) ...................................................11, 14

        *330 W. Hubbard Restaurant Corp. v. United States,*
          203 F.3d 990 (7th Cir. 2000) .........................................................11

*Daniels v. Southfort,*
    6 F.3d 482 (7th Cir. 1993) ............................................................................16

*McCoy v. Harrison,*
    341 F.3d 600 (7th Cir. 2003) .......................................................................17

*Alexander v. City of South Bend,*
    433 F.3d 550 (7th Cir. 2006) .......................................................................18

*Alexander v. City of South Bend,*
    320 F. Supp. 2d 761 (N.D. Ind. 2004) *aff'd,* 433 F.3d 550 (7th Cir.
    2006) ................................................................................................................18

*Samuels v. Wilder,*
    871 F.2d 1346 (7th Cir. 1989) .....................................................................18

C.    Probable Cause ............................................................................................ 21

*Swearnigen-El v. Cook County Sheriff's Dept.,*
    602 F.3d 852 (7th Cir. 2010) .......................................................................22

D.    Conspiracy .................................................................................................... 22

*Reynolds v. Jamison,*
    488 F.3d 756 (7th Cir. 2007) .......................................................................22

**IV.    THERE IS NO BASIS FOR EXCLUDING THE TESTIMONY OF EARL
HAWKINS, DERRICK KEES, OR TRAMELL DAVIS** ........................................... 23

18 U.S.C. § 201(c)(2) ..........................................................................................24, 25

*U.S. v. Condon,*
    170 F.3d 687 (7th Cir. 1999) ...................................................................24, 25

*U.S. v. Febus,*
    218 F.3d 784 (7th Cir. 2000) .......................................................................24

*U.S. v. Ihnatenko,*
    482 F.3d 1097 (9th Cir. 2007) .....................................................................24

**V.    CONCLUSION** ......................................................................................... 25

## I.  PLAINTIFF'S DUE PROCESS CLAIM FAILS AS A MATTER OF LAW[1]

### A.  Plaintiff Fails to Address the City Defendants' Primary Argument That He Cannot Meet the Materiality Element of Brady Due to the Bribe

Plaintiff's Response fails to address the City Defendants' principal *Brady* argument that he cannot prove the crucial issue of materiality because the El Rukns, William Swano, and Judge Maloney corrupted the 1986 trial.[2]  The facts and the law are not disputed on this element. Plaintiff admits (Pl. M/Partial S.J., at 8) he must prove there is a reasonable probability the outcome of the 1986 Maloney trial would have been different absent the bribe.  *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) ("Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Plaintiff also agrees with the Illinois Supreme Court's finding that it is "impossible" to determine whether the verdict would have been the same "if rendered by an uncorrupted judge."  *People v. Hawkins*, 690 N.E.2d 999, 1007 (1998).   In fact, plaintiff admits "**there is no way to know** whether a non-corrupt judge would have convicted Fields … on the basis of the evidence offered at the first trial."  (Pl. Resp. at 6) (emphasis added).  This is the precise point of Defendants' motion.  The City Defendants are entitled to summary judgment because all parties agree that due to a corrupt judge, it is impossible for plaintiff to meet the element of materiality (*i.e.*, that a reasonable probability exists the outcome of the 1986 trial would have been different).

---

[1] This Reply Brief will designate the relevant summary judgment pleadings as follows:  Third Amended Complaint, Dkt. #105, as TAC; The City Defendants' Joint Memorandum of Law in Support of Summary Judgment, Dkt. #443, as City Joint Memo; Plaintiff's Response to the City Defendants' Motion for Summary Judgment, Dkt. #464, as Pl. Response; Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment, Dkt. #435, as Pl. M/Partial S.J.; City Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, Dkt. #461, as City Resp. to Partial S.J.; City Defendants' Rule 56.1 Statement of Facts. Dkt. #438, as DSOF; Plaintiff's Rule 56.1 Statement of Facts, Dkt. #437, as PSOF; City Defendants' Statement of Additional Facts, Dkt #458, as DAF; and, Plaintiff's Statement of Additional Facts, Dkt. # 465, as PAF.

[2] Plaintiff also failed to address materiality in his own motion for partial summary judgment.  (See City Resp. to Partial S.J., at 8).

**B.    Plaintiff's Other Arguments Misstate the Law, Misstate the City Defendants' Position, and/or Are Irrelevant**

Plaintiff's Response raises several points that are wrong, misleading, and, ultimately, irrelevant.[3]    Plaintiff first argues "the duty to disclose *Brady* material is unconditional." Plaintiff's argument presupposes he has met all the elements of *Brady* without discussing the elements themselves or showing how they have been satisfied.    Absent proof the allegedly withheld evidence is exculpatory and material, it is not "*Brady* material."    As the City Defendants have demonstrated, the elements of *Brady* are not met in this case.

Plaintiff ultimately concludes "even if this Court were to determine that the material in the street file was not *Brady* material, the defendants' failure to turn over the file pursuant to the subpoenas issued by Fields' attorneys also constitutes a violation of Fields's due process rights." (Pl. Response, at 4).  The absence of legal authority to support this assertion is not surprising as it is an inaccurate statement of the law.  The statement ignores *Brady* itself and the entire body of case law that has developed under *Brady*, which requires a plaintiff to prove the information in question is exculpatory and material.  *See e.g., Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001).  Failure to comply with a subpoena might subject one to the contempt rules of the court, but it would not necessarily constitute a due process violation.

Plaintiff argues the concept of "intervening, superseding cause" is ordinarily raised in negligence rather than intentional tort cases, and that it was foreseeable for a *Brady* violation to cause a wrongful conviction.  (Resp. at 4-5).    While plaintiff is correct about the origin of the intervening/superseding cause doctrine, plaintiff misses Defendants' point.  The bribe, something Defendants had nothing to do with, renders it impossible for plaintiff to meet the materiality

---

[3] To the extent plaintiff incorporates arguments made at pages 8-15 of his motion for partial summary judgment (Pl. Response, at 3), the City Defendants rely on and incorporate pages 4-8 of their response to that motion.  (Dkt. #461).

element of a *Brady* claim. In other words, the circumstances surrounding the bribe (the intervening event) had such a dispositive influence on the outcome of the trial that it severed any possible causal connection between the alleged suppression of evidence and the trial result. Because this trial was irreparably corrupted, no one can say the outcome of the trial would have been different if the Subject File had been available.[4]

Realizing the merit of the City Defendants' motion, plaintiff changes his long-standing position and submits a new, somewhat inconsistent argument regarding the impact of the bribe on his 1986 trial result. Plaintiff previously had maintained Maloney's self-interest prompted him to convict Fields and Hawkins to prove to federal authorities that no wrongdoing occurred on his part, thus depriving Fields of due process. (*People v. Hawkins*, 690 N.E.2d at 1001-02). Fields argued and acknowledged his 1986 conviction was a foregone conclusion after Judge Maloney returned the bribe. Plaintiff now attempts to argue it was the strength of the State's case, rather than a fear of prosecution, that caused Maloney to return the bribe money. (Pl. Response, at 5). This argument disregards the findings of *People v. Hawkins* concerning when the money was given back and why.[5] (690 N.E.2d at 1001). More importantly, the Illinois Supreme Court found Maloney returned the bribe money because "he wanted to insure that he did not lose his judicial post and salary as a result of a criminal indictment, and therefore was motivated to return to a verdict that would not spark the suspicions of authorities." *Hawkins*, 690 N.E.2d at 1004. Plaintiff's new argument contradicts the Illinois Supreme Court, as well as both

---

[4] Plaintiff's assertion that the United States Attorney's Office alerted the State's Attorney's Office to the bribe during the trial serves only to refute the allegation in the TAC that the City Defendants withheld that information from prosecutors.

[5] Plaintiff incorrectly suggests Robert McGee referenced the strength of the State's case when he returned the bribe money. (Pl. Response, at 5). McGee did not make this statement when the money was returned on June 26, 1986; he said it on June 19, 1986 (two days after the bribe was passed) and before the defense put on their case. In fact, Maloney kept the money at that point, and returned it the following week due to his fear of prosecution. (*Hawkins*, 690 N.E.2d at 1001).

his previous arguments in post-conviction proceedings and his later-asserted positions in this case concerning the weaknesses and credibility problems of the State's witnesses. (*See, e.g.*, Pl. Response, at 31-32).

**C.      Plaintiff Also Fails to Directly Address the City Defendants' Materiality Argument with Respect to the 2009 Trial**

There can be no *Brady* claim following an acquittal, but even if there could be, plaintiff has not demonstrated how the facts of this case would support such a heretofore non-existent claim. *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008); s*ee also Bielanski v. County of Kane*, 550 F.3d 632, 644-45 (7th Cir. 2008); *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). Plaintiff does not meaningfully distinguish these cases and instead relies on *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). Plaintiff's reliance on *Whitlock* is misplaced. *Whitlock* would be analogous only if the City Defendants were arguing plaintiff's 2009 acquittal precluded any and all *Brady* claims going back to 1986. As the City Defendants do not make such an argument, *Whitlock* provides no guidance here.

In *Whitlock*, the plaintiffs were convicted in 1987, and those convictions were overturned years later in *habeas* and appellate proceedings. The defendants in *Whitlock* argued the subsequent reversals of the convictions precluded *Brady* claims related to the 1987 trials because the plaintiffs ultimately prevailed. Although the Seventh Circuit had stated "a trial that results in an acquittal can never lead to a claim for a *Brady* violation because the trial produced a fair result, even without the exculpatory evidence," the *Whitlock* court held the statement did not apply because the plaintiffs were convicted at trial and the later reversal of their convictions "does not mean that they are 'prevailing criminal defendants' in the sense that *Mosley* used the term." *Id.* at 588, *quoting Mosley,* 614 F.3d at 397. Here, the City Defendants' contention that plaintiff cannot assert a *Brady* claim due to his 2009 acquittal is made only with respect to the

2009 trial. Plaintiff prevailed in 2009 and the *Mosley*, *Carvajal*, and *Bielanski* analysis applies with respect to that trial. The City Defendants have not argued the 2009 acquittal bars a *Brady* claim with respect to the 1986 trial. Plaintiff's *Brady* claim concerning the 1986 trial fails for other, independent reasons. (City Joint Memo, at 6-8).

Assuming, *arguendo*, a *Brady* claim could exist after an acquittal, plaintiff has offered no meaningful argument or evidence to support such a claim. Plaintiff characterizes ASA Sexton's affidavit as self–serving and biased, but offers no argument or facts to refute the affidavit. The reliability of ASA Sexton's affidavit is corroborated by the State's active opposition to plaintiff's petition for certificate of innocence, which continued after prosecutors received and reviewed the Subject File. (DSOF, ¶¶ 166-67). Plaintiff presents no evidence to show any of the material in the Subject File, if disclosed earlier, would have altered the State's decision to prosecute. Indeed, plaintiff does not even attempt to argue the State would have dropped the case against him if it had the Subject File earlier.

Plaintiff goes on to argue the Supreme Court's holding in *Stickler v. Greene*, 527 U.S. 263, 289-90 (1999) "requires a prospective analysis, *i.e.* whether at the time the evidence is concealed it could be expected to affect the outcome of trial; not the retrospective analysis suggested by the defendants." (Pl. Response, at 10). Plaintiff's "prospective analysis" argument was expressly rejected by the Seventh Circuit in *Carvajal*. 542 F.3d at 570. Specifically, *Carvajal* held the "prospective test does not seem to accurately capture what *Brady* protects and misunderstands the materiality requirement in a true *Brady* violation." *Id*. In fact, the Seventh Circuit relied on the Supreme Court's holding in *Stickler* in rejecting the prospective analysis approach. *Id*. *Carvajal* concluded "a true constitutional violation is measured with the outcome in mind." *Id; see also Bielanski*, 550 F.3d at 644.

Plaintiff also argues *Brady* is a continuing duty. While there currently is a debate whether *Brady* is a continuing duty, that debate need not be resolved in this case because of the corrupted 1986 trial and the 2009 acquittal. Continuing duty or not, the defendants are entitled to summary judgment because plaintiff was acquitted in 2009 and there is no evidence the State would have dismissed the charges sooner if the Subject File or the other alleged *Brady* material was known earlier by the State.

## II. THERE IS NO EVIDENCE OF A PRACTICE, WIDESPREAD OR OTHERWISE, TO WITHHOLD *BRADY* MATERIAL IN STREET FILES

In moving for summary judgment, the City noted plaintiff's failure to identify any other case from February 3, 1983 (when Special Order 83-1 went into effect) where *Brady* material was allegedly withheld by the CPD (in a street file or otherwise). (City Joint Memo, at 34). Rather than demonstrate a practice of illegal conduct through other incidents, as the law requires, plaintiff simply claims a widespread practice exists "as evidenced by Fields' case." (Pl. Response, at 14). Plaintiff does not attempt to distinguish the legal authority cited by the City that a widespread practice requires more than one incident. (City Joint Memo, at 34). As the City explained, the law is clear that proof of a pattern of misconduct requires multiple prior incidents before it can be actionable under *Monell*; a single incident is insufficient. *Connick v. Thompson*, 131 S.Ct. 1350 (2011); *Jenkins v. Bartlett*, 487 F.3d 482, 492-93 (7th Cir. 2007); *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008). Plaintiff's failure to submit evidence in any case but his where it was claimed the CPD withheld alleged *Brady* material after the implementation of Special Order 83-1 is fatal to his "street files" *Monell* claim.

Plaintiff suggests Special Order 83-1 "should be deemed a sham" and is "illusory" because it "had no mechanism for monitoring compliance." (Pl. Response, at 13). In a flaw that is common throughout his Response, plaintiff offers no legal or factual support to establish the

requirement for such an audit mechanism. Moreover, there is no evidence of any practice of violating Special Order 83-1 that would have placed the CPD on notice an audit was necessary or appropriate. Jim Hickey testified he personally trained over 1,000 detectives on Special Order 83-1, and the detectives in this case testified they were aware of and followed the policy requiring that all materials be submitted for placement in the investigatory file.[6] (*See* City Defendants' Resp. to PSOF, Dkt. # 457, ¶¶ 27-30, 32-33).

Plaintiff's unsupported "sham" argument also runs afoul of the Supreme Court's prohibition against "more or better" *Monell* claims. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989); *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) ("The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent"); *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (no liability for suicide although a better, more up-to-date screening procedure might have identified victim as a risk requiring special procedures). The suggestion Special Order 83-1 should have had an audit mechanism is, at best, a "more or better" claim prohibited by the Supreme Court.

Plaintiff badly mischaracterizes the time-line of the *Palmer* litigation in claiming CPD detectives were keeping street files "right at the time Fields was seeking the street file in the Hickman/Smith murders." (Pl. Response, at 13). The City explained the *Palmer* litigation in its response to plaintiff's motion for partial summary judgment, and need not repeat that explanation here. (*See* City Resp. to M/Partial S.J., at 18-19). The City simply reiterates Special Order 83-1

---

[6] The mere fact there is no inventory sheet or control card in the Subject File does not support a widespread practice claim. In fact, there was an inventory sheet and investigative file control card in the Area File located at the warehouse, which contained the 8 pages of GPRs plaintiff admits receiving during his criminal case, demonstrating compliance with Special Order 83-1. (Defendants' Exhibit 69, CITY-NF-07560-62). While one case still does not establish a widespread practice under the law, the fact there was an inventory sheet and control card with the file that had been produced (as well as use of the GPR forms) contradicts plaintiff's unsupported assertion Special Order 83-1 was not put into practice.

went into effect February 3, 1983, two years before plaintiff was arrested and three years before he was prosecuted. Plaintiff appears to imply that because the reported decisions in *Palmer* and *Jones* are dated between 1985 and 1988, the "street files" practice was ongoing at that time. Plaintiff's argument borders on the frivolous. Notwithstanding the dates those decisions were reported, the alleged conduct discussed in those cases took place prior to the implementation of Special Order 83-1.

Plaintiff also argues Judge Duff's opinion dismissing his 1988 lawsuit contains an admission by the City that if the Subject File was withheld, plaintiff would be entitled to monetary damages. This argument fails for multiple reasons. The "admission" apparently was part of a Rule 12(b)(6) motion to dismiss, which necessarily accepts as true a plaintiff's allegations for purposes of the motion. Plaintiff also fails to identify exactly what the defendants said, relying instead on Judge Duff's summary. Moreover, plaintiff significantly overreaches in suggesting something from a Rule 12(b)(6) motion should mean the City automatically agreed to civil liability for a future due process claim, irrespective of whether the failure to produce the file was intentional, whether the individual defendants were responsible for or in any way involved in providing files to the SAO, whether the failure to produce the file was the result of a City policy, whether the file contained exculpatory evidence, or whether the information in the file was material.

Plaintiff has failed to identify any other case where *Brady* material was allegedly withheld since Special Order 83-1. Plaintiff cannot meet the widespread practice requirement because there is only one alleged constitutional violation. Nor can he meet the deliberate indifference requirement as there is no evidence (or even any allegation) that the City's final policymaker could have been on notice that Special Order 83-1, the express policy, was not

8

being complied with. Accordingly, the City is entitled to summary judgment on plaintiff's "street files" *Monell* claim.[7]

## III. ALTERNATIVELY, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS

### A. Failure to Intervene

Plaintiff's Response does not address the absence of evidence of any individual defendant's personal involvement in the alleged withholding of the Subject File. Indeed, plaintiff elsewhere has conceded he cannot point to any individual who improperly withheld the Subject File. (Pl. M/Partial S.J., at 16). With respect to *Brady*, plaintiff's remaining position appears to be based on a type of failure to intervene by the individuals City Defendants (*i.e.*, they "looked the other way"). (*See* Pl. Response, at 11-12, 16; Pl. M/Partial S.J., at 16-17). But as noted in the City Defendants joint motion for summary judgment, there is no evidence establishing any individual defendant officer suppressed or destroyed *Brady* material, so there can be no claim that a defendant officer failed to prevent that conduct. (City Joint Memo, at 30, *citing Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). And even if plaintiff could somehow establish evidence of wrongful suppression of exculpatory information by another officer, there is no evidence any City Defendant knew that officer was about to engage in suppression, had a realistic opportunity to intervene, and then failed to do so. (*Id.*)[8] Plaintiff's failure to intervene theory lacks evidentiary support and should not survive summary judgment.

### B. State Law Claims

---

[7] Plaintiff failed to respond to the City's argument that it is entitled to summary judgment on the *Monell* claim based on an alleged practice of maliciously prosecuting gang members, including El Rukns, regardless of their guilt or innocence. (City Joint Memo, at 35). The City is therefore entitled to summary judgment on all *Monell* allegations in plaintiff's TAC.

[8] To the extent plaintiff's Response (at 12) purports to rely on his motion for partial summary judgment on this issue, in the interest of economy and to avoid unnecessary repetition, the City Defendants rely upon and incorporate herein their response in opposition to plaintiff's motion for partial summary judgment. (Dkt. #461, at 13-18).

Plaintiff's Response consolidates its superficial discussion of the individual defendants' liability for "other" alleged due process violations with the section pertaining to the malicious prosecution and conspiracy counts. As to Defendants Evans, Hood, Minogue, Bogdalek, Casto, and Richardson, plaintiff argues they are guilty of malicious prosecution and conspiracy "because they shut their mouths and looked the other way when documents from the initial investigation were hidden from Fields." (Pl. Response, at 16). Plaintiff lumps these defendants together and urges they deprived him of *Brady* materials at the 1986 trial or alternatively, failed to investigate in 1988 when Fields filed a civil lawsuit against them. (*Id.*, at 17). But as set forth in the City Defendants' Joint Motion for Summary Judgment, plaintiff has failed to support these allegations with evidence showing any of these six defendants deprived him of *Brady* material in 1986. Plaintiff's Response does not remedy this deficiency. Further, plaintiff's 1988 lawsuit, and the Complaint Register arising therefrom, did not impose a duty on the officers to investigate further or ensure their work product actually had been produced to the State. (*See* City Resp. to M/Partial S.J., at 17-18). *See also Bowen v. Sullivan*, 2012 WL 2116121, *3 (N.D. Ill. 2012), *citing Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (no "constitutional or federally recognized right to an adequate police investigation, or any investigation at all"); *David v. Village of Oak Lawn*, 954 F. Supp. 1241, 1245-46 (N.D. Ill. 1996) (plaintiff had no constitutional right to have his complaints investigated); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd* 23 F.3d 410 (1994) (police officer had no federal or constitutional mandate to conduct an investigation into a plaintiff's assault charge).

**<u>Evans</u>** – Unlike the vague assertions against Defendant Evans in plaintiff's summary judgment pleadings, the City Defendants' joint motion is specific as to Evans' role in the initial 1984 Smith/Hickman homicide investigation, and the absence of evidence of wrongdoing on his

part. (City Joint Memo, at 1, 12-16, 35-36). Plaintiff concedes he has no evidence Evans suppressed any *Brady* material. (Pl. M/Partial S.J., at 16). The only evidence establishes Evans submitted his notes and reports on the Smith/Hickman investigation for inclusion in the file. (DSOF, ¶152).[9] Whether described as a due process violation or malicious prosecution, there is simply no evidence supporting the claim Evans "played a role" in depriving plaintiff of *Brady* materials.

Plaintiff's Response fails to address another fatal flaw in plaintiff's *Brady* claim against Evans, Hood, Bogdalek, Minogue, Casto, and Richardson. Not only is there a lack of evidence any of the individual City Defendants suppressed documents, it would be pure speculation to conclude any suppressed documents, if they existed, would be exculpatory to plaintiff. (City Joint Memo, at 14). Mere speculation cannot support a *Brady* claim. *United States v. Roberts*, 534 F.3d 560, 572 (7th Cir. 2008). Plaintiffs' failure to address these points with opposing argument or authority should be deemed a waiver of those arguments. *See Bonte v. U.S. Bank*, 624 F.3d 461, 466 (7th Cir. 2010); *see also 330 W. Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) (It is not the court's obligation "to research and construct the legal arguments open to the parties, especially when they are represented by counsel.")

Finally, there is no evidence of misconduct on Evans' part supporting any other claim in the TAC. Plaintiff has acknowledged Evans had no involvement in the Vaughn/White homicide investigation. (Plaintiff's Response to DSOF, ¶76). Plaintiff's Response (at 17) suggests Evans'

---

[9] Without any apparent good faith basis, plaintiff disputes the assertion Evans did not withhold or destroy any notes pertaining to the Smith/Hickman investigation. (Pl. Rule 56.1(b)(3) Response, Dkt. #466, ¶152). Contrary to plaintiff's incomplete reading of the record, Evans affirmatively testified any notes he took regarding the Smith/Hickman homicide were turned in, and he did not withhold anything. (*See* Evans Deposition, Defendants' Exhibit 5, at pp. 96, 104). Plaintiff disputes Evans' testimony, but points to no evidence to contradict it and provides no reference to the record to support his disagreement. As such, plaintiff's response fails to comply with Local Rule 56.1(b)(3)(B). *See Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000).

role in depriving Fields of *Brady* material was sufficient to support a malicious prosecution claim against Evans. But as noted above, plaintiff has failed to present evidence that Evans violated plaintiff's rights under *Brady*, so this argument fails.

**_Hood and Minogue_** – Plaintiff's summary judgment pleadings are likewise vague and conclusory as to Defendants Hood and Minogue, failing to specifically address the absence of evidence against them. Plaintiff concedes he can point to no evidence that Hood or Minogue suppressed *Brady* material. (Pl. M/Partial S.J., at 16). The only evidence in the record is that neither Hood nor Minogue withheld or destroyed any notes concerning the Smith/Hickman investigation.[10] (DSOF, ¶152). Whether couched as a due process or malicious prosecution action, there is no evidence supporting plaintiff's generalized claim that Hood and/or Minogue "played a role" in depriving Fields of *Brady* materials. And plaintiff has presented no evidence of misconduct by Hood or Minogue supporting any other claim. Plaintiff admits Hood and Minogue had no involvement in the Vaughn/White investigation. (Pl. Response to DSOF, ¶76). As to the malicious prosecution claim, plaintiff's Response (at 17) vaguely invokes Hood's and Minogue's unspecified roles in depriving Fields of *Brady* materials. But as established above, plaintiff's failure to present any evidence Hood or Minogue suppressed *Brady* material fundamentally defeats this argument. Plaintiff presents no other evidence Hood or Minogue did anything to cause or commence the criminal prosecution of Fields that would support a malicious prosecution action.

---

[10] Without any reference to record evidence to support his position, plaintiff disputes the assertion Minogue did not withhold or destroy notes pertaining to the Smith/Hickman investigation. (Pl. Rule 56.1(b)(3) Response, ¶152). Plaintiff's failure to identify any evidence in the record to support his disagreement contravenes local rules. (*Bordelon, supra*). Even more remarkably, plaintiff's unsupported denial is made notwithstanding the prior acknowledgement by plaintiff's counsel that she was not accusing Minogue of withholding anything. (Plaintiff's Exhibit 14, Minogue Deposition, at 175-76).

***Bogdalek*** – As with the other detectives involved in the initial 1984 Smith/Hickman investigation, plaintiff concedes he can point to no evidence Bogdalek suppressed *Brady* material. (Pl. M/Partial S.J, at 16). Accordingly, the only evidence of record is that Bogdalek did not withhold or destroy any notes pertaining to Smith/Hickman.[11] (DSOF, ¶152). Plaintiff's conclusory assertion that Bogdalek "played a role" in depriving Fields *Brady* materials lacks the necessary evidentiary support to avoid summary judgment.

Plaintiff's Response (at 17) purports to incorporate arguments from his motion for partial summary judgment in an unsuccessful effort to prop up his malicious prosecution claim. The mere fact Bogdalek testified at the 1986 trial is not enough to establish malicious prosecution. (*See* City Joint Memo, at 36). As to the suggestion Bogdalek "realized" Fields had not received "everything," plaintiff necessarily ignores Bogdalek's actual testimony in which he stated he did not know what Fields and his attorneys received relative to the 1986 trial. (*See* City Resp. to M/Partial S.J., at 15; DAF ¶11). Once plaintiff's efforts to manipulate Bogdalek's testimony into something it is not are disregarded, there is no evidence Bogdalek did anything that violated plaintiff's constitutional rights under *Brady*.

Plaintiff's similarly has failed to present any evidence of misconduct on Bogdalek's part supporting any other cause of action. Plaintiff concedes Bogdalek had no involvement in the Vaughn/White investigation. (Pl. Response to DSOF, ¶76). Plaintiff Response (at 17) suggests Bogdalek's role in depriving Fields of *Brady* material supports the malicious prosecution claim. However, plaintiff's failure to present evidence Bogdalek violated plaintiff's rights under *Brady*

---

[11] Plaintiff also disputes the assertion Bogdalek did not withhold or destroy any notes pertaining to the Smith/Hickman investigation. (Pl. Rule 56.1(b)(3) Response, ¶152). Again, this disagreement is unsupported by any reference to the evidentiary record and therefore does not comply with Local Rule 56.1(b)(3)(B). *Bordelon, supra.*

thwarts this argument. Plaintiff presents no other evidence Bogdalek did anything to cause or commence the criminal prosecution of Fields for purposes of the malicious prosecution claim.

   **_Casto and Richardson_** – Plaintiff's summary judgment pleadings make no effort to specify the evidence supporting their claims against Defendants Casto and Richardson. Plaintiff does not dispute (nor can he) that Casto and Richardson were Gang Crimes specialists and not homicide detectives. Plaintiff concedes he has no evidence establishing Casto or Richardson suppressed the Subject File. (Pl. M/Partial S.J, at 16). Indeed, the Response barely mentions Casto or Richardson by name, and presents no discussion of evidence that links these particular defendants to a specific act of misconduct. (Plaintiff's Motion for Partial Summary Judgment fares no better, simply lumping them together with the other defendants). Plaintiff identifies no evidence either Casto or Richardson knew of or was personally involved in the suppression of documentation from Fields, exculpatory or otherwise. In sum, there is no evidence supporting plaintiff's generic claim that Casto and/or Richardson "played a role" in depriving Fields of *Brady* materials.

   Plaintiff similarly has presented no evidence of misconduct by Casto or Richardson supporting any other claim. There is no evidence Richardson or Casto coerced witnesses to identify Fields in interviews, photo arrays, or lineups. (City Joint Memo, at 27-28). Plaintiff's failure to even address this issue in his response results in waiver. (*Bonte*, *supra*). Plaintiff presents no other argument or evidence that Casto or Richardson did anything to cause or commence the criminal prosecution of Fields that would support a malicious prosecution action.

   **_Brannigan_** – Plaintiff's Response (at 19) initially suggests Brannigan played an "extensive role" in the criminal investigation of Fields. However, plaintiff does not detail that "extensive role," suggesting only that Brannigan's name appeared in three documents:

plaintiff's arrest warrant in the Vaughn/White case; a supplementary report describing Fields' arrest and lineup identification; and, a supplementary report from the Vaughn/White investigation concerning information obtained from a confidential informant. Plaintiff's cursory reference to these documents falls short of supplying evidence of Brannigan's involvement in homicide investigations concerning Fields. Moreover, plaintiff's proposed inference of an "extensive role" is contradicted by the record. For example, two of the documents identified by plaintiff relate to Vaughn/White, and plaintiff already has conceded Brannigan had no involvement in that investigation. (Pl. Resp. to DSOF, ¶76). As to the supplementary report describing Fields' arrest and identification, plaintiff does not explain Brannigan's actual role in those events, if any, or how Brannigan in particular violated his constitutional rights. The appearance of Brannigan's name on documents relating to plaintiff fails to provide evidence Brannigan personally caused or participated in a deprivation of plaintiff's due process rights.

Plaintiff's Response fails to identify any other competent evidence that Brannigan deprived plaintiff of a constitutional right. The Response (at 20) broadly references purported statements by Anthony Sumner to El Rukn lawyers that Brannigan beat and threatened him, "and as a result," Sumner provided false statements to the CPD. Plaintiff's attempt to rely on this "evidence" should be rejected. First and foremost, Sumner's statements to the El Rukn attorneys are inadmissible hearsay (*see* City Joint Memo, at 17), and plaintiff has not challenged its inadmissibility in his Response. Moreover, Sumner testified in court that his statements about Brannigan were untrue. (*Id.*) There is no competent evidence Sumner falsely implicated Fields "as a result" of Brannigan beating or threatening him. Nor is their evidentiary support for an inference that AUSA Hogan corroborated Sumner's "admissions" concerning Brannigan. Mr. Hogan never corroborated Sumner's statements provided to the El Rukn attorneys. Mr. Hogan

was very clear that Sumner's recantations were specifically limited to two things:  Sumner's role in the Barnett Hall shooting, and Fields' involvement in the Vaughn/White homicides.  (Plaintiff's Exhibit 66).  Indeed, AUSA Hogan specifically clarified Sumner's testimony regarding Fields' involvement in the Smith/Hickman murders was "completely truthful."  (*Id.*; *see also* Defendants' Exhibit 61, Hogan Certificate of Innocence Testimony, at pp. 103-04).  Plaintiff is unable to present admissible evidence Brannigan improperly coerced Sumner to falsely implicate Fields in the Smith/Hickman murders or any other crime.

Plaintiff similarly fails to identify a deprivation of *his* constitutional rights through Brannigan's involvement with Earl Hawkins.  Assuming, *arguendo*, Brannigan helped convince Hawkins to cooperate by falsely telling him he would serve only 20 years, such conduct would not violate Fields' constitutional rights.  Constitutional rights are personal in nature and cannot be vicariously asserted.  *Daniels v. Southfort*, 6 F.3d 482, 484 (7th Cir. 1993).  Moreover, even if such a representation was made to Hawkins, it had nothing to do with Hawkins' ultimate decision to cooperate with prosecutors.  Hawkins entered into plea agreements with the federal and state prosecutors, not Brannigan.  If Hawkins believed Brannigan initially misled him, he could have refused or rescinded any agreement to cooperate.  Most significantly, plaintiff has presents no evidence to support the allegation Brannigan was involved in the subornation of perjury from Hawkins, Hawkins has never recanted, and Hawkins to this day maintains Fields was involved in the Smith/Hickman murders.  (City Joint Memo, at 18-19).

**_O'Callaghan_** – Plaintiff's Response similarly falls short of pointing to specific, non-speculative evidence that O'Callaghan suppressed exculpatory evidence from Fields.  Plaintiff is unable to link O'Callaghan to the Subject File.  Plaintiff's Response points to no evidence that refutes O'Callaghan's testimony stating he did not withhold exculpatory information.  Plaintiff

16

speculates O'Callaghan must have generated notes and that no notes were produced. But as the motion for summary judgment establishes, there is no evidence (1) O'Callaghan generated notes, (2) the notes contained exculpatory information, and/or (3) they were not produced to plaintiff because O'Callaghan suppressed or destroyed them. Speculation is insufficient to support a *Brady* claim (*U.S. v. Roberts*, *supra*), just as speculation is insufficient to oppose summary judgment. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

Plaintiff unsuccessfully raises other examples of O'Callaghan's perceived "misconduct" in the hope this Court will find something that sustains a claim. Plaintiff contends O'Callaghan falsely told the State's Attorney's Office ("SAO") there were no eyewitnesses to the Vaughn/White homicides. There is no testimony to support this assertion, so plaintiff relies on a gross distortion of the record, in particular, Exhibit 118, a "Felony Screening Memo" from the SAO. (*See* Plaintiff's Response, at 27; PAF ¶245). The SAO memo, in a section entitled "Statement," indicates ASA Hynes, O'Callaghan, and Detective Robertson were witnesses to an oral statement provided by plaintiff on June 14, 1985. (Plaintiff's Exhibit 118). In a separate section entitled "Incident," the memo summarizes information about the murders, and includes the line, "No eyewitnesses to incident." Pointedly, the memo does not attribute that line or the information in that section to O'Callaghan or anyone else. There is no evidence that information came from O'Callaghan, as there is no basis to do so. In fact, plaintiff's Statement of Additional Facts (¶245) does not even attribute the information to O'Callaghan, as there is no basis for doing so. Yet, plaintiff's Response accuses O'Callaghan (and Murphy) of fabricating evidence by falsely telling the SAO there were no eyewitness to the Vaughn/White murders. This assertion is blatantly false, completely unsupported by evidence, and unsupported by plaintiff's

own statement of additional facts, and presents yet another example of plaintiff's desperate attempt to manufacture a question of fact by taking extreme liberties with the evidentiary record.

Plaintiff has no real response to the absence of evidence establishing an improperly suggestive line-up caused by O'Callaghan revealing Fields' El Rukn tattoo to witnesses.[12] (City Joint Memo, at 24). Rather than point to any evidence, plaintiff simply argues a jury need not believe O'Callaghan on this issue "given the accumulation of misconduct." (Pl. Response, at 28). Such a response is patently insufficient to resist summary judgment. *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989) ("merely alleging a factual dispute cannot defeat the summary judgment motion"). Tellingly, plaintiff identifies no evidence, from himself, a police officer, or other witness, that any of the lineup witnesses observed Fields' El Rukn tattoo when O'Callaghan lifted the sleeve for the evidence technician to take a photograph.

Plaintiff's Response also fails to raise a genuine issue of material fact regarding the claim that O'Callaghan coerced witnesses to implicate Fields. With respect to Randy Langston, the Response discusses Randy's testimony at the 1986 death penalty hearing, but it fails to address the substantive point that the testimony is inadmissible as against O'Callaghan.[13] (*See* City Joint Memo, at 24-25). Plaintiff's Response discusses Gerald Morris' affidavit, but it similarly fails to

---

[12] Without explanation of its legal significance, the Response (at 28) complains Fields was the only individual in the line-up wearing a short sleeve shirt. Plaintiff seemingly abandoned any argument this difference rendered the lineup unconstitutional or unduly suggestive. (City Joint Memo, at 23-24). "The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality." *Alexander v. City of South Bend,* 433 F.3d 550, 555 (7th Cir. 2006), *citing Hensley v. Carey,* 818 F.2d 646, 648, 650 (7th Cir. 1987). More specifically, differences in clothing, even differences more conspicuous than sleeve length, have been repeatedly rejected by courts as evidence that a lineup was unduly suggestive. *See, e.g.*, *Alexander v. City of South Bend*, 320 F. Supp. 2d 761, 782 (N.D. Ind. 2004) *aff'd,* 433 F.3d 550 (7th Cir. 2006) (finding lineup procedure was not constitutionally impermissible where plaintiff complained, among other allegedly suggestive procedures, that he was the only individual in the lineup with cut-off sleeves).

[13] For the same reason, the trial testimony of Carlos Willis and Evelyn Custer would be inadmissible as against O'Callaghan. Moreover, neither witness implicated Fields. Both Willis and Carter testified for the defense about a lineup involving Earl Hawkins, not Fields.

address the substantive point that the affidavit does *not* say O'Callaghan told Morris which photograph to identify. (*Id*. at 26). Whether styled as a due process claim or one for malicious prosecution, there is no evidence O'Callaghan suppressed or destroyed evidence that was exculpatory to Fields, and no admissible, non-speculative evidence that he coerced witnesses or fabricated evidence to falsely implicate Fields in the Smith/Hickman murders.

**_Murphy_** – Plaintiff's Response initially challenges Defendant Murphy's motion on an issue relating to the Vaughn/White murders. According to plaintiff, the City Defendants, including Murphy, had "overwhelming evidence that Sumner was lying about Fields involvement in Vaughn/White." (Plaintiff's Response, at 27). However, the "overwhelming" evidence boils down to two alleged inconsistencies: the two child eyewitnesses said they saw two offenders; and, a confidential informant implicated Hawkins and Sumner, but not Fields. An objective examination of the circumstances reveals the supposed "conflicts" urged by plaintiff do not really exist. The two child eyewitnesses did say they briefly saw two offenders, but they did *not* say only two offenders were present. As Defendant O'Callaghan explained at his deposition, a third offender could have been present but out of view of the witnesses. (O'Callaghan Deposition, at 81) (attached as Exhibit 81). Thus, the information from the eyewitnesses[14] did not "directly conflict" with the version of events Sumner told police.

As for the confidential informant (Response, at 26-27), he told police Hawkins and Sumner fled to Milwaukee because they had been involved in an unauthorized murder of a husband and wife. Importantly, the informant did not tell police Fields did not participate in those murders, or that Hawkins and Sumner said they were the only two perpetrators. The

---

[14] In disparaging the defendant officers for believing Sumner, plaintiff's speculative argument disregards that two innocent individuals, Jackson and Glenn, were implicated by the two child eyewitnesses, and it was information provided by Sumner that caused the State to exonerate them for the Vaughn/White murders. (DSOF, ¶¶72-74).

information from the informant reflected in the police report thus does not "directly conflict" with Sumner's version of events.  In any event, the supplementary report in question (plaintiff's Exhibit 112) reflects prosecutors were aware of the same information as police and independently relied on Sumner's information in deciding to charge Fields and Hawkins in the Vaughn/White murders.  There was no plausible reason, let alone overwhelming evidence, for Murphy or anyone else to conclude Sumner was lying about the Vaughn/White murders when Fields was charged by the State.

In an effort to support his malicious prosecution against Murphy, plaintiff points to mistakes in police reports and characterizes them as examples of fabricated evidence.  For example, plaintiff suggests a jury could reject Murphy's explanation that he mistakenly wrote "1986" on a May 14, 1985 General Progress Report ("GPR").  Plaintiff provides no evidence to support his speculative claim Murphy "back-dated" the GPR.  All of the evidence supports that the GPR was generated in 1985, as Murphy testified.  Sumner began cooperating with authorities in mid-May 1985.  The testimony is consistent that the highly inculpatory information reflected in the GPR was provided by Sumner and known to authorities in May 1985.  (*See* DSOF, ¶¶ 34, 36, 41-46).  A supplementary report dated May 20, 1985, signed by Murphy as approving supervisor, reflects Sumner provided the information implicating Fields in the Smith/Hickman murders in 1985.  (Defendants' Exhibit 68, City-NF-000948-950).  Perhaps most significantly, plaintiff's Response does not explain how the misdating of a GPR constitutes fabrication of evidence.  Even if the date is wrong, the evidence itself (Sumner's implication of Fields in the Smith/Hickman murder) is not fabricated.[15]

---

[15] This same analysis applies to plaintiff's contention (Response, at 30) that it is "incredible" Murphy's reference to "Special Notes" actually refers to the 1985 GPR.  Moreover, plaintiff does not explain how the alleged suppression of a highly inculpatory GPR somehow constitutes evidence of malicious prosecution.

The other "mistakes" raised in plaintiff's Response do not even pertain to Fields. Plaintiff suggests a Crime Lab Report signed by Murphy indicates the witness identified Ray Fergerson in a lineup. There is no evidence establishing Murphy fabricated any evidence to falsely implicate plaintiff in that lineup. Indeed, plaintiff was not even in that lineup. As Murphy explained at his deposition, he simply corrected a mistake made by a person who was not at the line-up to reflect that the witness actually identified Earl Hawkins, and not Ray Fergerson. (DSOF, ¶¶ 51-53). The supplementary report prepared regarding the lineup properly reflected Hawkins was identified. (*Id*. at ¶54). Plaintiff does not explain how the purported falsification of a lineup report to identify Hawkins, who has admitted his role in the Smith/Hickman murders, somehow violates Fields' constitutional rights or caused him to be maliciously prosecuted. The same rationale applies to the erroneous date on the supplementary report reflecting the line-up identification of El Rukn George Carter. It is undisputed Carter was arrested on May 21, 1985, and therefore the date of May 18, 1985 on the report is an error. The misdating of a report pertaining to another suspect did not violate Fields' constitutional rights or result in his malicious prosecution.[16]

## C.     Probable Cause

---

[16] Characteristic of many "arguments" in the Response, plaintiff also references a lawsuit in the *Houston v. Partee* matter, vaguely mentions a singular aspect of the case, and then imputes some impropriety without any discussion of the context or circumstances. Plaintiff suggests there was an unreasonable delay in exonerating two wrongfully convicted individuals, and with no discussion, attributes the delay to Murphy. As a preliminary matter, nothing set forth in plaintiff's description of the Ronnie Bell murder has any relevance to Fields' case or the issues raised on summary judgment. Second, plaintiff does not discuss the circumstances underlying the eventual exoneration of the two innocent individuals, or the significant role played by Murphy (and other defendants) in securing their eventual release. Third, plaintiff fails to discuss those exonerations became possible only after cooperating witnesses Sumner and Hawkins provided information to the authorities implicating the real killers (themselves and other El Rukns) in the Bell murder, *i.e.*, the very same type of information provided in the very same manner from the very same cooperating witnesses that plaintiff has denigrated throughout his summary judgment pleadings.

The City Defendants presented the evidence establishing probable cause for Fields' prosecution, which constitutes an absolute bar to his claim for malicious prosecution. (*See* City Joint Memo, at 36-38). Plaintiff's Response suggests subsequent developments have demonstrated those witnesses were not credible. As set forth in the motion, probable cause for purposes of an Illinois malicious prosecution claim is a "state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offenses charged." *Johnson v. Target Stores*, Inc., 341 Ill. App. 3d 56, 72, 791 N.E.2d 1206 (1st Dist. 2003). All of the information provided to investigators by Anthony Sumner, Randy Langston, Eric Langston, and Gerald Morris, and later, the El Rukn cooperating witnesses, supported a reasonable belief Fields was involved in the Smith/Hickman homicides. That plaintiff ultimately was acquitted does not negate the existence of probable cause. *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 863 (7th Cir. 2010).

### D.    Conspiracy

A civil conspiracy claim requires plaintiff to show an agreement between the parties to deprive him of his constitutional rights. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). In response, plaintiff provides nothing more than an allegation that a conspiratorial agreement existed (Response, at 34) ("Clearly the facts alleged herein and in Fields' motion for summary judgment …"), which is insufficient to oppose summary judgment. Plaintiff has provided no evidence of an agreement between the City Defendants, or between them and anyone else, to deprive him of exculpatory materials or frame him for the Smith/Hickman murders. Plaintiff claims "the record is full of evidence" suggesting a conspiracy (Response, at 32), but he does not identify any of the evidence that purportedly fills the record. Plaintiff also suggests he has satisfied his burden of showing that a genuine issue of fact remains on his conspiracy claims, but he does not explain how he has done so. Plaintiff does not provide any discussion of the

circumstances from which a conspiratorial agreement could be inferred. Plaintiff's Response fails to meaningfully address the absence of evidence identified in City Defendants' motion, rendering appropriate summary judgment on plaintiff's conspiracy claims.

## IV. THERE IS NO BASIS FOR EXCLUDING THE TESTIMONY OF EARL HAWKINS, DERRICK KEES, OR TRAMELL DAVIS

This Court should reject plaintiff's baseless request to exclude the testimony of Earl Hawkins, Derrick Kees, and Tramell Davis because they were "compensated by the defendants in connection with these non-criminal proceedings." (Pl. Response, at 36). Plaintiff's argument intentionally (and improperly) conflates the City Defendants with the County Defendants, as well as this lawsuit with plaintiff's certificate of innocence proceedings. There is no evidence the City Defendants offered anything to these witnesses or that one of these witness received any benefit from them in exchange for providing testimony in *this* proceeding. Knowing this, plaintiff broadly refers to actions purportedly taken by "the defendants." Plea deals offered by the State in exchange for truthful testimony in the certificate of innocence proceedings, or rent payments made by the State to a relocated witness, cannot fairly be attributed to the City Defendants in this proceeding. There is no reasonable basis to exclude the witnesses' testimony in this proceeding.

The very exhibits plaintiff cites in support of his argument show Hawkins and Kees made plea agreements with the State, not the City defendants, who, of course, cannot even make such agreements. (PAF, Ex. 141, 142, 143). Hawkins' plea agreement states he "agree[d] to fully and truthfully cooperate with the People of the State of Illinois …", and nowhere references any City Defendant or this case. (PAF, Ex. 141). Kees' agreement also did not involve the City defendants or this case. As explained by the State in the October 9, 2013 hearing on Kees' plea

agreement, it "was in exchange for his truthful testimony in this innocence hearing …." (PAF, Ex. 143, p. 8-9).

There similarly is no evidence the City Defendants played any role in the State paying Tramell Davis's rent. Davis was asked whether the State paid his rent, to which Davis said yes. (Plaintiff's Ex. 144, at 137-138). Nowhere in the deposition, or anywhere else, does it suggest any City Defendant paid Davis' rent. Furthermore, the rent payments were not made in exchange for Davis' testimony, but were made to keep him from being evicted. (*Id.* at 137-138). There is no evidence the rent payments were made by the State in exchange for Davis providing testimony for the City Defendants in this case.

Moreover, there is no evidence suggesting the substance of the testimony of Hawkins, Kees, or Davis was influenced by the plea deals or by the State making rent payments. Hawkins and Kees have testified numerous times regarding the murders, and Davis provided a statement to police in 1987 implicating Fields in the murders. DSOF, ¶109, 128. Each time they provided testimony or statements regarding the Smith/Hickman murders, they implicated Fields. DSOF, ¶128. Their testimony in the certificate of innocence proceedings and in this case has been consistent with their earlier testimony and statements. Plaintiff's request to exclude the testimony of Hawkins, Kees, and/or Davis should be denied.[17]

---

[17] Because the City Defendants were not involved in any of the allegedly improper conduct, the Court need not consider the legal sufficiency of plaintiff's arguments, but it is worth noting they are without merit and the State did nothing improper. Plaintiff, without any supporting legal authority, asserts "the defendants" violated federal bribery laws, *i.e.*, 18 U.S.C. §201(c)(2). The case law directly contradicts this accusation. "Foregoing criminal prosecution (or securing a lower sentence) is not a 'thing of value' within the meaning of §201(c)(2)." *U.S. v. Condon*, 170 F.3d 687, 689 (7th Cir. 1999); *see also U.S. v. Febus*, 218 F.3d 784, 797 n.11 (7th Cir. 2000) (finding argument defense counsel was ineffective for failing to investigate whether government violated §201(c)(2) by entering plea agreements with witnesses "patently frivolous" because "plea agreements are not a thing of value"). The rent payments for Davis also are not improper under §201(c)(2). The purpose was avoid Davis' eviction, not to purchase his testimony. *See Febus*, 218 F.3d at 796. Even if this were not the case, "we have held that such arrangements are not *per se* outrageous; rather the jury may consider them as evidence relating to the informant's credibility." *Id*; s*ee also U.S. v. Ihnatenko*, 482 F.3d 1097, 1100 (9th Cir. 2007) ("…18 U.S.C.

## V.     CONCLUSION

For the reasons set forth in this Reply, the City Defendants' Joint Motion for Summary Judgment, and their Joint Memorandum of Law in Support, this Court should enter summary judgment in favor of the City Defendants (City of Chicago, Robert Evans, Stephen Hood, James Minogue, Joseph Bogdalek, Thomas Richardson, Stephen Casto, Daniel Brannigan, David O'Callaghan, and Joseph Murphy), and against plaintiff on all counts of the TAC, or for any portions of the TAC for which there are no genuine issues of material fact.

Dated: January 24, 2014                              Respectfully submitted,


                                                By: s/ Paul A. Michalik
                                                      One of the Attorneys for City Defendants

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

---

§201(c)(2) does not prohibit the government from paying fees, housing, expenses, and cash rewards to any cooperating witness, so long as the payment does not recompense any corruption of the truth of the testimony").

Plaintiff also incorrectly argues exclusion of the witness' testimony is the proper remedy for a violation of the federal bribery statute. "Section 201(c)(2) is a criminal statute, not a private right of action or a rule of evidence. It provides specific consequences: fines and imprisonment. Exclusion of evidence would not be an appropriate additional consequence." *Condon*, 170 F.3d at 689. Notably, plaintiff moved to exclude the testimony of these witnesses in the certificate of innocence proceedings before Judge Biebel. Consistent with Seventh Circuit case law, Judge Biebel denied the motion to exclude, stating: "I am not going to disqualify witnesses, but I certainly will take into consideration that either deals were made or some money was paid." (Transcript of August 22, 2013, Certificate of Innocence Proceeding, p. 4) (attached as Defendants' Exhibit 82).

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2014, I electronically filed the foregoing **City Defendants' Joint Reply in Support of Their Motion for Summary Judgment** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

H. Candace Gorman
Law Office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago, IL 60661
312.427.2313
hcgorman1@gmail.com

Stephen L. Garcia
Office of the Cook County State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
312.603.5475
stephen.garcia@cookcountyil.gov

and

Leonard C. Goodman
Melissa A. Matuzak
Law Offices of Leonard C. Goodman
53 W. Jackson
Suite 1220
Chicago, IL 60604
312.986.1984
lcgoodman@rcn.com
melissamatuzak@gmail.com

s/ Paul A. Michalik