```
                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                  Plaintiff,    )   Docket No. 10 C 1168
                                )
          vs.                   )
                                )
CITY OF CHICAGO, et al.,        )   Chicago, Illinois
                                )   November 13, 2013
                  Defendants.   )   10:00 a.m.


                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:      LAW OFFICES OF H. CANDACE GORMAN
                           BY:  MS. H. CANDACE GORMAN
                        220 South Halsted Street
                        Suite 200
                        Chicago, Illinois  60661


For the Defendant:      DYKEMA GOSSETT PLLC
                           BY:  MR. DANIEL M. NOLAND
                                MR. PAUL A. MICHALIK
                        10 South Wacker Drive
                        Suite 2300
                        Chicago, Illinois  60606


                        COOK COUNTY STATE'S ATTORNEY
                           BY:  MR. STEPHEN L. GARCIA
                        500 Richard J. Daley Center
                        Chicago, Illinois



              LAURA M. BRENNAN - Official Court Reporter
               219 South Dearborn Street - Room 2102
                     Chicago, Illinois  60604
                          (312) 435-5785
```

1  (The following proceedings were had in open court:)
2  THE CLERK: Case 10 C 1168, Fields v. City of
3  Chicago.
4  THE COURT: Good morning.
5  MS. GORMAN: Good morning, your Honor; Candace Gorman
6  for the plaintiff.
7  MR. MICHALIK: Paul Michalik for the City of Chicago
8  defendants.
9  MR. NOLAND: Dan Noland for the City defendants.
10 MR. GARCIA: And Stephen Garcia for defendants
11 Wharrie and Kelley.
12 THE COURT: Okay. Give me an update on what's been
13 going on from your end. I know that the appeal was argued.
14 You don't have to tell me about that.
15 MR. NOLAND: Judge, we deposed one of the plaintiff's
16 experts. The other one is scheduled for December.
17 THE COURT: Okay.
18 MR. NOLAND: We disclosed two of our experts, and we
19 disclosed the mental health experts yesterday.
20 THE COURT: Okay. Have I already set deadlines for
21 taking their depositions? I assume I have.
22 MS. GORMAN: Yes. You -- I'm sorry.
23 MR. NOLAND: You did set deadlines for that, but then
24 there was the issue of the mental health examination of Mr.
25 Fields, and so that particular deposition is more outside that

1 schedule.
2 THE COURT: That's trailing behind a little bit.
3 MR. NOLAND: Yes. There is no particular date, but
4 the parties I think have worked out and are working out that
5 schedule.
6 THE COURT: Fine. That's fine with me if you have it
7 worked out.
8 MS. GORMAN: Your Honor, there is one issue, and I
9 tried to ask counsel just before we got in, but I'm not sure.
10 I didn't get the videotape from my client's exam when I
11 received all the materials, and I just want to make sure
12 they're planning on tendering that.
13 MR. NOLAND: I don't know if we have an extra one,
14 but the videographer was -- McCorkle was the videographer who
15 did it. I think usually with those, each party orders their
16 own videotape.
17 THE COURT: What is it a video of? It's the video of
18 the examination?
19 MR. NOLAND: Right.
20 MR. MICHALIK: The interview.
21 THE COURT: Or the interview.
22 Okay. Well, see if you can sort that out. If I have
23 to sort it out for you, I will sort it out for you. It's not
24 a deposition, okay. And if somebody is concerned that they're
25 going to get crosswise with McCorkle, I'm uncrosswising you.

1 You could give it to somebody and they could make a copy of
2 it.
3 　　　　　MR. NOLAND:  I think that makes it pretty easy.
4 　　　　　THE COURT:  You can lay it off on me if McCorkle
5 comes back to you.  You can name me as a third party defendant
6 in the lawsuit.
7 　　　　　MR. NOLAND:  Thank you, Judge.
8 　　　　　THE COURT:  I will find a lawyer somewhere.
9 　　　　　MR. NOLAND:  We'll find that unnecessary, I think.
10 　　　　　THE COURT:  I think the rules allow me to represent
11 myself if it concerns me, so maybe I will just go back into
12 practice or something.
13 　　　　　All right.  Well, the one thing that I know that I've
14 got on my plate is the motion, and I want to get the title
15 right.  I think it's called motion to make public or something
16 like that.  So let me just pull it up here.
17 　　(Brief interruption.)
18 　　　　　THE COURT:  So I really am --
19 　　　　　Well, let me start in a different place.  The motion
20 as filed asks me to do one thing, and it's to allow the
21 plaintiff to make public the names of the -- I guess it's
22 murder victims for the most part, whose names are on the files
23 in the filing cabinets that have been the subject of prior
24 discussions.
25 　　　　　In the reply -- and it may have been alluded to in

1 the opening brief. In the reply there is some discussion
2 about whether some or all of the material that was in these
3 files would be relevant on the claims that the plaintiff has
4 made in the case. I don't regard that issue as being before
5 me right now in any kind of concrete or disputed context, and
6 so I'm not making any opinion on that. It may be relevant; it
7 may not be relevant. The motion doesn't ask for anything
8 other than making names public.
9     I will tell you that -- I'm just going to make some
10 comments but only comments about what I will call the guts of
11 the motion. I mean, I certainly understand, on the
12 plaintiff's side, that you're operating in this situation in
13 somewhat of an informational vacuum because you have got these
14 files down there which are, you know, purportedly
15 open murder cases. It's virtually impossible to determine
16 from any kind of public record what material might or might
17 not have been disclosed to defense counsel in situations where
18 there actually was a murder prosecution, and in some of these,
19 it appears that there hasn't been, but it's virtually
20 impossible to tell.
21     But even sort of taking that into consideration, I
22 mean, I think a good deal of what is said here is speculative.
23 Now, whether that would be a basis for denying the request by
24 itself, you know, I guess I could speculate on that, but I'm
25 not going to.

            The one that I will say that I -- and I am going to
say the name of the person.  The one that I will say that I
have some concern about here is the Charmaine Nathan matter,
and I am not in any position to say what was or wasn't
disclosed in the case, you know, in which that murder came up.
But my sense was -- my sense is that that -- if I'm
understanding it correctly, that was one of the murders that
was referenced in the federal indictment or indictments
regarding the El Rukns.  And I know that those were very, very
hard fought cases pretty much from beginning to end on all
sides.

            I do not know, because I have not read the
transcript, whether the people who were accused, if you will,
of having committed that murder raised what is represented to
me as having been the initial statements by certain witnesses.
And I obviously don't know whether they received them.  But I
will say that if they didn't raise it, it suggests that maybe
they didn't receive it, and so I do have some concerns about
that, but I'm just going to put that aside because the bottom
line is this.

            You know, this is maybe the third time that I have
had to deal with this issue, and maybe the fourth, maybe the
second.  You know, judges in this country deal with concrete
disputes.  They deal with lawsuits.  I'm dealing with a
lawsuit here.  And that's why I say it's conceivable that some

1  of this information may be relevant in the lawsuit that I have
2  in which Mr. Fields has made claims against the defendants.
3  The proposition that it might be of interest or relevant to
4  other people not involved in this lawsuit who, you know, may
5  have been prosecuted in some situations on cases where
6  potentially maybe possibly they didn't get information, it's
7  an interesting question, but it's not the kind of thing
8  American judges deal with.  It just isn't.  And so this is
9  going --
10              I'm going to deny the motion to make public the
11  names.  The document number, Pam, is document number -- oh,
12  whatever it is.  Oh, 414.
13              It's the last time I'm going to deal with this.  I'm
14  not going to entertain any more motions along these lines, Ms.
15  Gorman.  If there is an issue that concerns relevance of this
16  information or some of it in this case on these claims, then I
17  will deal with that issue.  But we're done with the truth
18  commission aspect of this.  Done.  If a motion gets filed,
19  it's going to be denied summarily.  You won't even get in here
20  for the hearing on it.
21              So spend your time -- and I know you have spent a lot
22  of time -- continue to spend your time on the claims that are
23  at issue in the case and not on this other stuff.  You have
24  done what you thought you needed to do.  I've now ruled on it
25  for either the third for fourth time, and that's the last time

```
 1  I'm going to rule on it.
 2           MS. GORMAN:  Thank you.
 3           THE COURT:  Some day you will take it up with the
 4  Court of Appeals, maybe.
 5           What's the deadline for dispositive motions?
 6           MR. MICHALIK:  December.
 7           MS. GORMAN:  December 9th.
 8           THE COURT:  Okay.  Today is a status, too, right?
 9           MS. GORMAN:  Yes.
10           THE COURT:  So I guess I want to give you a status
11  date shortly after that.  So I'm going to be gone from the
12  11th through the 16th.  So I'm going to have you come I think
13  on the 17th of December at 9:30 for a status.
14           Did I just set the deadline or did I set the rest of
15  the schedule, too?
16           MS. GORMAN:  Just the deadline.
17           MR. MICHALIK:  Just the deadline.
18           THE COURT:  Okay.
19           MR. GARCIA:  Judge, on that note, I have concerns.
20  As you mentioned, the appeals are -- in the appellate court.
21  I don't anticipate an opinion by that date.
22           THE COURT:  Who do you --
23           Remind me who the panel was.
24           MR. GARCIA:  The state's attorney defendants.
25           THE COURT:  Remind me who the panel was.
```

```
 1              MR. GARCIA:  It was Sykes, Posner and Flaum.
 2              THE COURT:  You could very easily have an opinion
 3   within the next three weeks depending on who's writing it.
 4              MR. GARCIA:  We could.  The first one was at least
 5   two months, I believe.  Same panel.
 6              THE COURT:  Is it the same panel?
 7              MR. GARCIA:  Yes.  It goes back to the same panel.
 8              THE COURT:  And to be perfectly honest, I'm kind of
 9   hoping Judge Flaum will write this one since he's on both of
10   the cases that I concluded gave me some confusion.
11              MR. GARCIA:  Judge Sykes had the most questions.
12              THE COURT:  Is that right?
13              MR. GARCIA:  Yes.
14              THE COURT:  Okay, interesting.  Well, maybe she will
15   write it then.
16              MR. GARCIA:  I don't know.
17              THE COURT:  I can repeat myself for the umpteenth
18   time.  You know, it is what it is.  I didn't stay discovery.
19   I'm not sure I was even asked.  Maybe I was asked, but I said,
20   you know, your guy was a witness anyway.
21              Have I stayed proceedings as to your person?
22              MS. GORMAN:  No.
23              MR. GARCIA:  No.
24              THE COURT:  Okay, then, so you will either file
25   something or you won't.  And the trial date is what it is,
```

1  and, you know, even if somebody doesn't file a Rule 56 motion,
2  they can file a Rule 50 motion at some point.
3  　　　　　So I will see you on the -- what did I say -- the
4  17th of December.
5  　　　　　MS. GORMAN:  Your Honor, I have a couple of
6  questions.
7  　　　　　THE COURT:  Yes, go ahead.
8  　　　　　MS. GORMAN:  When you set the trial date, you said
9  you weren't sure if it was firm because it was being set so
10 far and it might be the week before and it might be the week
11 after.
12 　　　　　THE COURT:  Oh, because I didn't know when we were
13 getting a new jury.  So what is the trial date?
14 　　　　　MS. GORMAN:  March 11th.
15 　　　　　THE COURT:  Why did I set it for a Tuesday?
16 　　　　　MR. NOLAND:  My recollection is it was the 10th.
17 　　　　　THE COURT:  It's the 10th.  And the 10th we get a new
18 jury, so that's the date.
19 　　　　　MS. GORMAN:  Summary judgment.  I'm planning on
20 filing a motion for summary judgment.
21 　　　　　THE COURT:  So just everybody -- that's fine.
22 　　　　　So everybody needs to understand.  My advice to you,
23 my extremely strong advice to you, is you're going to get each
24 other's dispositive motions on the 9th of December, whatever
25 it is.  Do not wait until I set a schedule to start working on

1  them because it is going to be a short schedule.
2          MS. GORMAN:  My question is:  Can I have longer page
3  limitations for the memorandum?
4          THE COURT:  What are you looking for, like, 300?
5          MS. GORMAN:  35 pages.
6          THE COURT:  35 pages, on a plaintiff's motion for
7  summary judgment in a Section 1983 case.
8          MS. GORMAN:  There are nine defendants.
9          THE COURT:  Yes, okay.  How many pages are you
10 looking for?
11         MR. MICHALIK:  We're going to need more than the
12 minimum, also.
13         THE COURT:  Well, let's get that sorted out right
14 now.  I'm willing to say 30.
15         So are you guys going to give me like six different
16 summary judgment motions, one on behalf of each one?
17         MR. MICHALIK:  We're going to avoid that, but that's
18 why we're going to need the longer page limitation.
19         THE COURT:  Is 30 going to be enough?  If you're
20 asking for 35, that means you can do it in 30.  That's my view
21 at least.
22         MR. MICHALIK:  I think we can probably try to do it
23 in 30.
24         THE COURT:  Opening briefs on summary judgment
25 motions are 30 pages.  But what I'm telling you is don't wait

1  to start working on the opposing party's motion until you get
2  in here on the 17th because the schedule is not going to be
3  leisurely.
4      MS. GORMAN:  Your Honor, the number of facts?
5      THE COURT:  So I was the one and only dissenter when
6  we put that arbitrary rule on there.  So one of the advantages
7  of lifetime tenure is that I don't have to enforce that rule.
8  I don't care whether you have 80, 82.  It was an arbitrary
9  number.  It was literally pulled out of the air.  So I don't
10 care.
11     MS. GORMAN:  Okay, thank you.
12     THE COURT:  All right.  See you on the 17th of
13 December.
14     MR. MICHALIK:  Thank you, your Honor.
15     MR. NOLAND:  Thank you, your Honor.
16     MR. GARCIA:  Thank you.
17   (Which were all the proceedings had in the above-entitled
18 cause on the day and date aforesaid.)

CERTIFICATE

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

/s/ Laura M. Brennan       November 15, 2013

Laura M. Brennan
Official Court Reporter       Date
Northern District of Illinois