# EXHIBIT 5

6728

```
 1          MR. ARON:  Judge also --

 2          THE COURT:  But, anyway, your motion for severance is

 3    denied.

 4          MR. ARON:  Also based on Officer McLean's testimony,

 5    we're asking for a severance from Virn Polk, and based on

 6    Officer Rogers' testimony we're asking for severance from Johnny

 7    Brown.

 8          THE COURT:  That will likewise be denied.

 9          Just real quick on the way that tapes are going to be

10    handled and the transcripts are going to be handled.  Is it your

11    intention, Mr. Poulos, to actually play the tapes?

12          MR. POULOS:  Yes, your Honor.

13          THE COURT:  So unlike the situation that we've approved

14    here in the District Court, where foreign tapes are not actually

15    played to the jury, the jury is going to have and be able to

16    listen to the intonations and listen to the actual words that

17    are used.

18          MR. POULOS:  Yes.

19          THE COURT:  Actually, the words that are used are in

20    English, but in code; consequently, they are English words but

21    they are used to provide a different meaning, and so I consider

22    them like a foreign language.  Like a foreign language, I'm

23    going to, upon a proper laying of a foundation, allow the

24    exhibits, allow the transcripts in as exhibits of the statements

25    made and the meaning of those statements.  But like I said, the
```

EXHIBIT

tabbies®

6729

1    jury is going to have the opportunity to evaluate the

2    intonations and the emphasis used.  I will give whatever

3    appropriate limiting instructions anyone desires, but that's how

4    we're going to deal with it.  Just like we deal with foreign

5    language tapes.

6         MR. STEVENS:  Judge, I would object to the witness

7    having his prior translation in front of him as part of the

8    testimony.  If he is truly capable of interpreting these tapes

9    and deciphering the code, he should be able to follow the

10   written words that are spoken, and listen to what is being said

11   and give his interpretations.  But to give him a script of what

12   he has previously determined or said to the prosecutors, injects

13   an element of acting into a situation rather than getting a

14   truly spontaneous interpretation of the words that are spoken.

15        So while I don't have a problem with the procedures

16   that you have outlined, I think that it is unduly suggestive and

17   leading to the witness to give him his prior statement about the

18   interpretation of these tapes during his testimony.  So I move

19   in limine that he not be provided with his prior interpretation

20   during his testimony.

21        THE COURT:  Just so I can get your objection straight.

22   What you don't want the government to do is hand him a copy of

23   Government Exhibit Transcript, whatever, while he's testifying?

24        MR. STEVENS:  No.  The transcripts that have been

25   provided to us have two columns on them; one of them is a --

6730

1    THE COURT: No, I know. And, frankly, we don't need to

2  take the time for you to describe to me what they look like,

3  because the record is going to be clear; they're going to be in

4  evidence.

5    MR. STEVENS: What I want redacted from the copy that

6  the witness is working from is the right-hand column which

7  contains his prior statement of his interpretation of the tapes.

8    THE COURT: That will be denied.

9    Anything else?

10    MR. DE ROSE: Judge, on that point, so your Honor

11  appreciates where we're coming from. We have already found with

12  many of these witnesses that they did not actually participate

13  in the preparation of these transcripts. We may find that these

14  transcripts are the many hours' work of agents as opposed to

15  this witness on very important parts on the multitude of volumes

16  that have been tendered to us. If he didn't do the translation,

17  Judge, we would like to hear his translation, and it may very

18  well dispute or be in disagreement with that which we have as

19  the printed word.

20    THE COURT: That is an area you can cover on cross.

21    MR. DE ROSE: But, Judge, if he's got that in front of

22  him, he's going to just automatically say "well, that's what it

23  says."

24    THE COURT: He's going to be testifying under oath,

25  under penalties of perjury, and you can test it on cross.

6731

1          Anything else?

2          MR. ARON:  Judge, if the witness has the printed

3   transcript in front of him with the code in English, will he

4   then be asked what do these things mean?

5          THE COURT:  Well, no, the actual transcripts are going

6   to be -- well, why didn't you ask this question to the

7   prosecutor before?  Did you ask that of the prosecutor?

8          MR. ARON:  Yes.

9          THE COURT:  What did he say?

10         MR. ARON:  It appears that he will then be asking

11  questions about the meaning of these words.

12         THE COURT:  Well, I'm not going to allow him to read

13  the right-hand column to the jury.  That's the purpose of this

14  exhibit.  It would be an absolute waste of time for him to give

15  his opinion orally when, in fact, he's already rendered his on

16  the written document.

17         MR. POULOS:  Judge, what I do intend to do is to listen

18  to the tape and the actual words spoken.  In brief summary

19  fashion, and only for the most pertinent portions of the

20  transcripts, I'm going to ask the witness to explain how he

21  arrived at the translations.

22         THE COURT:  You may go into the basis for his opinion

23  under the Federal Rules of Evidence.  Sure, you can do that.

24  But I'm not going to allow you to ask him the question "when the

25  word 'demonstration' was used, what did that mean"  No, that's

6732

1 on the written document. He will have already rendered his

2 opinion on that. You can go into the basis.

3    MR. POULOS: Right.

4    THE COURT: Otherwise, it would be a waste of time.

5 Just like I think it would be a waste of time to have him reread

6 each of these transcripts. We've been on this trial long

7 enough, and we're going to still be in this trial long enough.

8 If he's rendered his opinion like a foreign language expert,

9 then you can elicit whether the right-hand column accurately

10 interprets the left-hand column, and take it from there.

11    I'll tell you, I just finished a trial, before this

12 trial started, involving three defendants who did not speak

13 English fluently, who we had tape-recorded conversations. They

14 were Nigerians. We had two Nigerian experts. One testified for

15 the government, one testified for the defense. You want to

16 bring in an expert? By all means, you can, to support your

17 positions. That's what we did in that case. That's what I do

18 in foreign language cases.

19    MR. LOEB: Am I understanding correctly, as with other

20 transcripts, they are an aid?

21    THE COURT: No, no, that's what I'm trying to tell you.

22 They're not an aid. They are substantive evidence of the

23 opinion of the witness.

24    MR. DE ROSE: So these will go to the jury, your Honor?

25    THE COURT: Yes. Haven't you guys tried any cases with

6733

1  foreign languages?  I mean, come on, Spanish speaking people?

2  Yes, you have.  Of course you have.  The transcripts go in.

3  That's the same law I'm applying.

4          MR. STEVENS:  Well, this is clearly distinguishable

5  from a foreign language situation because you are talking --

6          THE COURT:  Oh, is it?  Go ahead and tell me.

7          MR. STEVENS:  All right.  You are asking here the

8  opinion of a cryptographer not an interpretation of words that

9  may have more than one meaning.

10          THE COURT:  Do you know pigeon English?  Do you know

11  what pigeon English is?  Pigeon English is an amalgamation of

12  Nigerian language and English language.  Like I said, I had two

13  people -- one for the government, one for the defense -- testify

14  about the meaning of words in pigeon English.  You can ask the

15  prosecutors, ask the defense lawyers who dealt with that case.

16  I mean, it's been done before and I'll do it again.

17          Tell me how this is different.  You say you want to use

18  the phrase "cryptographer."  Every foreign language, in essence,

19  is a code.  It's a code that can be interpreted into the English

20  language, and vice versa.  That's exactly what a foreign

21  language is.  You use a certain word to mean something.  Like

22  this pen that I'm holding, someone in some other country using

23  another language uses another word.  It's all the same.  It's

24  always a code.  That's a foreign language is, in reality, when

25  you deal with it in this context

6734

1    MR. STEVENS:  When you have a language that is an

2  amalgam of English, agreed upon equivalence, and slang --

3    THE COURT:  No, no.  No, no.  Not "agreed upon."

4  That's what I'm talking about pigeon English.  Pigeon English is

5  not an agreed-upon language.  Obviously, you haven't had

6  exposure in this area.  I'm considering this just like Nigerian.

7    Unfortunately, none of you were involved in that case,

8  although I had several defense lawyers.  It deals with slang, it

9  deals with intonation; just like this case.  This deals with

10  intonation, this deals with slang.  Sometimes the same word that

11  is used by the same person has two different meanings.  When

12  Jeff Fort is at a restaurant ordering a well-done steak, he's

13  ordering a well-done steak.  You have to look at the context.

14  But I will listen to you with regard to how you think it's

15  different.  But don't just use semantics, because it's got to be

16  substantively different than a foreign language.

17    Anything else?

18    MR. STEINGOLD:  I just --

19    MR. STEVENS:  Is there another translator of this

20  language?

21    THE COURT:  There sure are.  We've had them on the

22  stand.  You want to call them back?  Kees said he knew.  Other

23  witnesses that have testified said they knew.  I'm sure there

24  are people that you can have contact with that know the

25  language.  There sure are.  You come in, you qualify them, you

6735

1   put them on the stand and I'll accept them as experts.

2           MR. STEINGOLD:  Your Honor, the only question that I

3   have, I guess for my clarification --

4           THE COURT:  Mr. Fort certainly knows.  Sure.  He knows.

5           MR. STEINGOLD:  If somebody is interpreting the

6   language, at the trials at least that I've been involved with,

7   they weren't sitting there with a dictionary looking up every

8   word.  They have the knowledge of the language, they can come

9   in, they hear something and they could interpret it.

10          THE COURT:  Right.

11          MR. STEINGOLD:  The situation we have here is that the

12  person who is interpreting it has every word already in front of

13  him.

14          THE COURT:  Right.

15          MR. STEINGOLD:  So that, in fact, anybody can read the

16  transcript and basically --

17          THE COURT:  You do that with every foreign language

18  expert, because it takes a lot longer time to consider the

19  interpretation than it does to present it.  It would be a

20  horrible waste of time to have the witness sit up here and

21  interpret every word orally.  That's why we do it this way.

22  It's just more expeditious.  But it's done this way in every

23  foreign language.

24          MR. STEINGOLD:  Judge, I understand.  I guess my point

25  is that, I have never seen an interpreter of a language sitting

6736

1    there with a dictionary, looking up every word.

2         THE COURT:  Is Mr. Harris going to be looking at a

3    dictionary?  There isn't any dictionary, is there?

4         MR. STEINGOLD:  Well, the interpretation on the

5    transcript.

6         MS. PETERS:  There is a glossary, but he's not going to

7    be sitting there looking up the words as he testifies.  He's

8    knows the meaning of the words.

9         THE COURT:  Yes, he was involved in the --

10        MS. PETERS:  In the creation.

11        THE COURT:  -- in the creation of the dictionary.

12        MR. STEINGOLD:  Well, I understand all that.  But on

13   the right-hand column, every word is interpreted there, and he

14   will be sitting there and looking at them.  I guess that's what

15   Mr. Stevens' objection is, too.

16        THE COURT:  Well, you're saying that the words will be

17   suggestive to him.

18        MR. STEINGOLD:  Correct.

19        THE COURT:  But since he will have already had to have

20   approved those words as an accurate translation, they will be

21   his opinion.  So it will just be a waste of time.  Under 403 I'm

22   not going to make him recreate the translation.

23        Anything else?  I didn't think this would take so long.

24   If there is nothing else to deal with, let's bring in the jury.

25        MR. POULOS:  I'll bring in the witness first.

39

7360

1  (Witness exited the courtroom.)

2      THE COURT:  Please be seated.  Any further objections?

3      MR. DRISCOLL:  Judge, just very briefly.  Looking at

4  these transcripts and comparing the left-hand side with the

5  right-hand side, my understanding of the translation, if you're

6  going from a foreign language to an understandable language,

7  whatever that may be, it should be word for word.  It shouldn't

8  be --

9      THE COURT:  I agree with you, it should be word for

10  word, but on occasion, with foreign languages, things aren't

11  interpreted word for word.  Sometimes in a foreign language,

12  several words can be interpreted into one word or, on occasion,

13  to make the context understandable, an expert in the language

14  will provide additional words so as to properly interpret the

15  phrase that was used in the foreign language.  I agree with you,

16  if it's word for word, it should be interpreted word for word,

17  but if the language isn't capable of being interpreted word for

18  word, it can't be, and I don't know why you guys think it could

19  be; that's common to any foreign language.

20      MR. DRISCOLL:  Then that goes to this witness' ability

21  to make, what I consider, his interpretation of a language that

22  other people may have created.  So it really is not a

23  translation, it's more of his interpretation.

24      THE COURT:  Isn't that what every expert gives, his

25  opinion as to what was said?

**7301**

1    MR. DRISCOLL: Yes, but --

2    THE COURT: Let's say it was in French. I don't if you

3    speak French.

4    MR. DRISCOLL: No, your Honor.

5    THE COURT: I don't speak it very well, I certainly

6    don't speak it well enough to be an expert in it, and so I have

7    to rely upon an expert, and his interpretation of what is said,

8    in his expert opinion. When he makes a translation, I have to

9    rely upon his interpretation. I don't k.ow how you're drawing a

10   distinction in the two words; there isn't any, from an expert

11   witness standpoint. Every expert that takes the stand to

12   testify about a foreign language gives his interpretation, he

13   gives his opinion. There may be somebody else that will come in

14   here -- and I told you about that Nigerian case -- maybe

15   somebody else will come in here and say that his interpretation,

16   this first witness' interpretation is incorrect; well, that

17   second witness is going to be giving the second witness' opinion

18   as to what is correct, and the jury makes the determination;

19   they aren't experts, but they're the jury.

20   All I got to determine is whether this guy has

21   sufficient background, experience, education, understanding

22   through his prior involvement with what's he is purporting to be

23   an expert on to give an opinion, and then he gives his opinion,

24   and I have to determine whether there is a sufficient basis for

25   that opinion for it to be given to the jury, for the jury to

41

7302

1　evaluate.  You want to call in another expert, give them an

2　opinion for the jury to evaluate?  That's what the defense case

3　is for.

4　　　　MR. DRISCOLL:  Our objection is that he is not so

5　qualified at this time.

6　　　　MR. GEVIRTZ:  I don't think that is exactly what we are

7　objecting to.  I have adopted Mr. Stevens' objection.  I'm

8　objecting to these transcripts, and I'm not so much objecting as

9　to whether or not he is qualified here in court to interpret

10　what the left-hand column means, I am objecting to the fact that

11　he has done more on the right-hand side.

12　　　　THE COURT:  By "the more on the right-hand side," what

13　he's done is, he's placed it so it's understandable in common

14　English terminology so that the jury can understand it.

15　　　　MR. GEVIRTZ:  But, Judge, I think he's gone way beyond

16　that.

17　　　　THE COURT:  Well, the phraseology where Mr. Fort says

18　"concerning our brother," he knows from the context what

19　Mr. Fort is referring to and who he is referring to.

20　　　　MR. GEVIRTZ:  Right.

21　　　　THE COURT:  And so, to make it understandable to the

22　jury, he renders his opinion, like any other opinion.  You want

23　to say that that wasn't who Mr. Fort was referring to?  Put

24　another expert on the stand to say that that wasn't who Mr. Fort

25　was referring to.

42

7303

1    MR. GEVIRTZ:  Judge, I think it's more -- I think he

2  has a right to say that, but I think it's wrong for it to be in

3  those transcripts, because the jury then is taking the

4  right-hand column to be meaning what the left-hand column says.

5    THE COURT:  Yes, that's because that is what he says it

6  says, in his opinion.

7    MR. GEVIRTZ:  But he's admitted it doesn't say that,

8  that he's using the left-hand column to put it in context.

9    THE COURT:  No, he didn't say that, what he said was,

10  those words weren't used.

11    MR. GEVIRTZ:  And he chose to add words to put it in

12  context.

13    THE COURT:  No, he didn't say that.

14    MR. GEVIRTZ:  If the interpreter were here --

15    THE COURT:  If you would interpret what he said

16  correctly, you would understand what I am saying.

17    MR. GEVIRTZ:  If an interpreter were here in court

18  interpreting a witness, as normal interpretation in court is --

19    THE COURT:  Common interpretation.

20    MR. GEVIRTZ:  -- and the witness answers in their

21  language, and the interpreter, who is sworn under oath to

22  interpret, says, "Your Honor, he's referring to an incident back

23  in 1985," you would say "no, no, just tell us what words he

24  said.  It's not up to the interpreter to put in context"; and

25  that's what he's done here.

**7304**

43

```
 1        THE COURT:  Do you know a foreign language?  Have you
 2   ever sat in a courtroom while they're interpreting?  It happens
 3   a lot in Spanish.  We have a lot of Spanish speaking situations
 4   where we have a Spanish interpreter that stands at the left hand
 5   shoulder of the witness in my courtroom, and the witness will
 6   rattle on in Spanish, and then it will be a couple of words that
 7   come out of the interpreter, and we will go on to the next
 8   question.  Haven't you seen that happen before?
 9        MR. GEVIRTZ:  All the time.
10        THE COURT:  Yes.  That's what is happening in here.
11        MR. GEVIRTZ:  Well, with all due respect, I don't --
12        THE COURT:  And there are times when it's just the
13   opposite, where the witness only says a couple of things and the
14   interpreter gives us a sentence.
15        MR. GEVIRTZ:  But the interpreter still is trying to --
16        THE COURT:  Because the interpreter is interpreting and
17   giving the witness' opinion.  We don't call them "translators,"
18   we call them "interpreters."  I don't know what your distinction
19   between those two words were.
20        Go ahead, make any arguments for the record that you
21   want to making that are new.  You started making these arguments
22   some time ago.  Anything else you want to say that is new, take
23   up as much time as you need.
24        MS. GUBIN:  Your Honor, I think that part of it is
25   that, at this point in time, it's not just that he is
```

44

**7305**

1   translating or interpreting what is being said, but that he is

2   testifying to other incidents about all of this and has been

3   giving an added commentary.  That is the objection, that it's

4   not just the translation, but there is this added commentary.

5          THE COURT:  He happens to be a fact witness in the

6   case.  He's not some person who was hired from some translation

7   organization that has no ability to go beyond the actual words

8   stated.  He's a fact witness.

9          MS. GUBIN:  I understand that, your Honor, but that's

10  the problem with the transcripts.  Are the transcripts a

11  translation or are they, in fact, additional testimony that he

12  is now putting down in writing?

13         THE COURT:  The transcripts are his opinion of what was

14  said.  I've said that before, I'll say it again.  It's under the

15  Federal Rules of Evidence, in the Rule 7 Series.  That's what

16  I've got to follow, and that's what I'm following.  No, they

17  aren't a translation, they're an interpretation.  They're his

18  opinion.  That's all they are.  That's all any foreign language

19  expert can give us, except he has the added ability, because

20  he's under oath as a fact witness, to understand the facts of

21  the case from his standpoint.

22         Anything else?

23         MR. LOEB:  One final thing, your Honor.  I think that

24  the defense has been trying to characterize what we've used to

25  word -- the word "translated" as being a subjective rendering of

7306

45

1    the words spoken or -- yeah, a subjective rendering.

2          THE COURT:  A subjective rendering is the giving of an

3    opinion.

4          MR. LOEB:  Excuse me, I am misstating it.  As an

5    objective rendering of the words spoken.

6          THE COURT:  Like in medicine, if you have pain, there

7    is some sort of an objective --

8          MR. LOEB:  finding.

9          THE COURT:  Yes, finding.  Like your finger got cut

10   off.  He says "my hand hurts," well, of course, his finger is

11   not there.

12         MR. LOEB:  And the opinion, as you have referred to it,

13   is this witness' subjective answer to the question "what did

14   that mean to you."

15         THE COURT:  Uh-huh.

16         MR. LOEB:  Therefore, if your Honor chooses to admit

17   the transcripts, it is my motion that the question, "what did

18   that passage mean to you," that should be considered asked and

19   answered and, therefore, there be allowed no further additional

20   interpretation, if you will, of the transcripts.

21         THE COURT:  Well, now you're not arguing the

22   admissibility of the transcripts, you're arguing about some

23   testimony that is yet to be elicited from this witness, right?

24         MR. LOEB:  Or I'm asking for a clarification, at least

25   for my own understanding, as to the meaning --

7307

46

1        THE COURT: Well, you'll have to get that from the law.

2  I'm sorry.

3        I'll give you an analogy. You put a doctor on the

4  stand, qualify him as an expert, and ask him "did the patient

5  experience pain" He'll say yes. "Was there any objective

6  finding that you can make or any objective symptoms? "No."

7  "Did the patient experience pain?" "Yes." Well, isn't that a

8  subjective determination on the part of the doctor? Of course

9  it is. It's the doctor's opinion, based on nothing that the

10  doctor can point to. Why do we let doctors do that? Because we

11  believe, under the law, they have sufficient expertise,

12  experience and learning to be able to render an opinion that

13  would assist the finder of fact. The finder of fact can reject

14  that opinion, and we tell them they can reject the opinion, and

15  I'll tell this jury when I give them the standard instruction on

16  expert opinions.

17        MR. LOEB: Taking your analogy --

18        THE COURT: Well, I just gave that analogy to try to

19  help you, because you said you needed to understand it.

20        MR. LOEB: But giving the jury the written translation

21  of the witness is like giving the jury, then, the written report

22  of the doctor; and to give the witness an opportunity to do an

23  additional oral explanation, in addition to the written report,

24  is cumulative, and the jury shouldn't have both, an additional

25  subjective explanation by the witness as well as the written

7308

47

1   documentation of his opinion.

2        THE COURT: But, like I said, what you're talking about

3   is some testimony yet to be elicited. If the government, after

4   presenting these transcripts, stop and say "what did the phrase

5   'little boys there mean,'" I'd sustain that objection, because

6   that means Disciples, the street gang; right? Asked and

7   answered. He's already given his opinion on that, by allowing

8   this in. Is that what you're talking about? That is yet to be

9   elicited.

10        MR. LOEB: That is what I'm talking about.

11        THE COURT: That has yet to be elicited. You're

12   arguing about something that hasn't happened yet.

13        Anything else on the documents that is coming in,

14   unless I can be persuaded otherwise.

15        MR. HUYCK: The objection I was going to make relates

16   to what Mr. Loeb was saying, that there is a problem about this

17   going back to the jury if it's an opinion of the witness based

18   on his knowledge of the context, and so that he's supplying this

19   additional information, filling in the context that we're

20   talking about, this raid and so on, then we are, in fact,

21   sending a written, hearsay document back to the jury, sort of on

22   the same footing as the glossary. And I doubt that we are going

23   to spend the time on cross examination going over, line by line,

24   all of these transcripts --

25        THE COURT: You may not want to spend the time, but

7309

48

1    maybe you'll have to.

2         MR. HUYCK:  And even if we do that, however, the jury

3    is going to have, in effect, a transcript or a report from the

4    witness in the jury room during their deliberations.

5         THE COURT:  In foreign language situations we allow the

6    expert opinion to go back.  I would allow a contrary expert

7    opinion to go back as well.  If you want to put a witness on the

8    stand to say that isn't the correct interpretation, that an

9    expert witness will say their opinion is something other than

10    what this witness' expert opinion is, you can do that, and I'll

11    send that back to the jury.  I've done it before, I'll do it

12    again.  That's how it works in the foreign language situation.

13    The glossary -- I'm not even going to talk about it.  I already

14    ruled in your favor on the glossary.  This is a different

15    situation.  The witness is giving his opinion, and it's within

16    the context of a foreign language situation, it's relevant to

17    the issues in the case.

18         Anything else?  All right, we'll take a recess for

19    fifteen minutes.

20     (Recess.)

21         THE MARSHAL:  All rise.

22         THE COURT:  Is there anything else we need to take up

23    before we bring in the witness and the jury?

24         MR. GEVIRTZ:  Judge, may I make just make one more

25    motion, it's in the form of a motion in limine.

39

**7443**

Harris - direct

1     (Tape played.)

2          THE COURT:  Further direct examination.

3     BY MS. PETERS:

4     Q   Mr. Harris, would you please turn to page 4 of the

5     transcript.

6          THE COURT:  Again, ladies and gentlemen, these

7     transcripts are being dealt with a little bit differently than

8     the others.  So I'm going to allow you to follow along, bearing

9     in mind that the left-hand column is only an aid in listening to

10    the tape and the right-hand column is an opinion of the witness

11    as to what the witness believes the speakers were saying in the

12    conversation or what they were meaning by the words they were

13    saying.

14         You may proceed.

15    BY MR. POULOS:

16    Q   First of all, Mr. Harris, in a few different portions on

17    this transcript, the phrase was simply typed in "El Rukn

18    greeting," do you recall?

19    A   Yes.

20    Q   Can you slowly state that El Rukn greeting that appears on

21    these tapes?

22    A   El Rukn Love, a sallam aleekum arakmatula la.

23    Q   Now, referring to page 4 where Tramell Davis is talking to

24    Jeff Fort, and according to your translation you said that

25    "Harris ran out of the Fort, with a gun in his belt, without

Harris - direct                                    7490

1   Exhibit Tape 5, where, according to the transcript, the

2   individual identified as Saleem says "yes, sir," up near the top

3   of page 14.

4           Let me just explain again.  With regard to the

5   identification in the left-hand column, the tape is the evidence

6   in the case, so this portion of the transcript is merely an aid

7   to you in listening to the tape.  As far as the right-hand

8   column is concerned, I will remind you again that that is the

9   opinion of this witness with regard to what was meant by the

10  speakers when the speakers spoke at the conversations that were

11  recorded.

12          Of, Mr. Harris, when we proceed with further questions

13  and answers, you are reminded that you are still under oath.

14          THE WITNESS:  Yes, I am.

15          MR. POULOS:  If I could continue to play Government

16  Exhibit Tape 5?

17          THE COURT:   You may continue to play Government

18  Exhibit Tape 5.

19      (Tape played.)

20     HENRY LEON HARRIS, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN

21              DIRECT EXAMINATION   (resumed)

22  BY MR. POULOS:

23  Q   Mr. Harris, I want to direct your attention to page 2 of

24  this transcript.  The second large paragraph from the bottom

25  where the translated portion reads "yes, sir, the guy is in