# EXHIBIT 8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

```
------------------------------------------------------------
                              )
PEOPLE OF THE STATE OF ILLINOIS, )
                              )
                Respondent,   )
                              )
          vs                  )        Post-Conviction
                              )        No. 85 C 6555
EARL HAWKINS                  )           85 C 7651
NATHSON FIELDS                )
                              )
                Petitioners.  )
                              )
------------------------------------------------------------
```

RULING ON PETITIONERS'
MOTION FOR
POST-CONVICTION RELIEF

Petitioners, Earl Hawkins and Nathson Fields, pursuant to Sections 122-1 et seq. of the Illinois Code of Criminal Procedure, 725 ILCS 5/122-1 et seq. (West 1994), seek to vacate the judgment of conviction entered against them in the above captioned matter on September 19, 1986. On that date, the petitioners were sentenced to death by lethal injection. Their sentences were imposed upon the court's earlier respective findings of guilty entered upon first degree murder. Ill. Rev. Stat. (1983), ch. 38, para. 9-1-A(1). The court imposed said sentences after: 1) the defendants waived their right to a jury at the first stage of the death penalty hearing, and the court found they were both eligible for the death penalty; and 2) a jury was empaneled to hear aggravating and mitigating circumstances, and concluded that there were no mitigating circumstances sufficient to preclude the imposition of death.

## B A C K G R O U N D

Petitioners, Earl Hawkins and Nathson Fields, were prosecuted for their participation in the murders of Jerome "Fuddy" Smith and Talman Hickman on April 28, 1984, in front of a Chicago Housing Authority (C.H.A.) apartment building located at 706 East 39th Street. Hawkins and Fields were members of the El Rukn street gang and Jerome Smith was the leader of the Black Gangsters Goon Squad street gang.

At trial, the State presented the testimony of six witnesses. Three of these witnesses claimed to have observed the shooting, two other witnesses were police officers and the remaining witness was an El Rukn. Defendant Hawkins was represented by William Swano. Defendant Fields also had a private attorney. The defendants called four witnesses who claimed that they observed the shooting. The defendants also called a Chicago police detective and a private investigator hired by William Swano.

Following closing arguments, Thomas J. Maloney found the defendants guilty of the murders of Jerome Smith and Talman Hickman. After the State moved for a death penalty hearing, the defendants elected to waive their right to a jury at the first stage of the proceeding. The court then found both defendants eligible based on their murder of two or more persons. A jury was thereafter empaneled to hear evidence in aggravation and mitigation. After the jury found there were no mitigating factors sufficient to

-2-

preclude the imposition of death, the trial court sentenced the defendants to death.

Notwithstanding contentions the defendants raised concerning the imposition of their death sentences, the crux of their direct appeal alleged that they were not proven guilty beyond a reasonable doubt.[1] In specific detail, the petitioners asserted that the State's witnesses gave inconsistent, contradictory and unbelievable testimony. Petitioners also alleged that the State's three occurrence witnesses were motivated to testify untruthfully by their rival gang affiliation.

The Illinois Supreme Court rejected the petitioners' argument and affirmed their sentences on February 16, 1990. **People v. Fields** (1990), 135 Ill.2d 18, 552 N.E.2d 791. While the Supreme Court noted that there were discrepancies in the evidence, it could not say that the "trial court's conclusion was so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt as to the defendants' guilt." **Fields**, 135 Ill.2d at 49. The Supreme Court concluded that the evaluation of the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn therefrom were within the province

---

[1]Fields raised two additional challenges to his conviction. One such claim alleged that he was deprived of his right to a trial before an impartial trier of fact. This claim, however, is not germane to the present opinion, and said argument rested solely on statements made by Judge Maloney after he found the defendants guilty.

of the trier of fact. As the trier of fact, it was the trial court's function to assess the credibility of the witnesses and to determine whether there was a reasonable doubt as to the defendant's guilt. In the present case, the trial court obviously chose to believe the testimony of the State's witnesses and not that of the defense witnesses. See **Fields**, 135 Ill. 2d at 40-49.

On October 1, 1990, the United States Supreme Court denied Fields and Hawkins respective petitions for writ of certiorari. **Fields v. Illinois** (1990), 498 U.S. 881, 112 L.Ed.2d 182, 111 S.Ct. 227. **Hawkins v. Illinois** (1990), 498 U.S. 881, 112 L.Ed.2d 182, 111 S.Ct. 228. On November 26, 1990, their respective petitions for rehearing were denied. **Fields v. Illinois** (1990), 498 U.S. 994, 112 L.Ed.2d 555, 111 S.Ct. 547. **Hawkins v. Illinois** (1990), 498 U.S. 995, 112 L.Ed.2d 558, 111 S.Ct. 551.

On March 1, 1991 and March 8, 1991, Hawkins and Fields respectively filed petitions for post-conviction relief. Although these petitions raised a number of issues, neither petition alleged that the relevant individual was deprived of his right to a trial before an impartial trier of fact premised upon judicial misconduct.

On June 26, 1991, William Swano, Robert McGee and Thomas Maloney were indicted on charges of racketeering conspiracy, racketeering, and extortion under color of official right. 18 U.S.C. Secs. 1962(d), 1962(c), and 1951. Maloney was individually charged with a fourth count,

-4-

obstruction of justice. 18 U.S.C. Sec. 1503. As part and parcel of the three counts common to all individuals, the federal government alleged that Swano paid Maloney $10,000[2] to fix the trial of Earl Hawkins and Nathson Fields. Said money was paid by Swano to Maloney's "bagman", McGee, in order to assure the acquittal of the defendants in a joint bench trial. As part of the conspiracy count, the government contended that the money was retained during the trial by Maloney and McGee until such a time where Swano presented evidence "which would make it appear plausible for...Maloney to enter a judgment of acquittal in the case." Maloney subsequently returned the $10,000 to Swano "in order to cover up and conceal original payments of the bribe."

Prior to the commencement of the trial of Thomas Maloney and Robert McGee, William Swano pleaded guilty to racketeering and agreed to testify against his co-defendants. Another key prosecution witness who would be called during the course of said trial was petitioner Earl Hawkins. The damaging testimony of Hawkins and Swano was corroborated through the testimony of other witnesses, and by evidence of FBI surveillance, recorded telephone conversations, telephone records, and a videotaped conversation. Thomas Maloney did not testify on his own behalf. On April 16, 1993, the jury convicted Thomas

---

[2]The indictment also charged that four other bribes were committed.

-5-

Maloney of all four charged counts. The jury specifically found that Maloney had engaged in acts of racketeering and had conspired to commit extortion when he accepted and later returned a $10,000 bribe in the trial of Earl Hawkins and Nathson Fields.

Based on the jury's verdict, the following facts were established during the trial of Thomas Maloney. The potential bribe was first discussed between Swano and Hawkins in either December 1985 or January 1986. Hawkins later contacted Alan Knox, who spoke with the El Rukn leader, Jeff Fort, who approved the potential bribe. Around the same time, January or February 1986, Swano met with McGee to see if Maloney would take a bribe in the relevant case. Swano suggested that he could probably get $10,000 from the El Rukns. (From similar previous dealings with Maloney, Swano knew to contact McGee.) Shortly thereafter, McGee got back to Swano and told him that Maloney had agreed to take $10,000 for the fix. Swano subsequently told the El Rukns that the judge would need $20,000.[3] The trial of Hawkins and Fields was continued a number of times due largely in part to Swano's inability to obtain the bribe. After wrangling with the El Rukns, Swano received $10,000 on June 17, 1986. Alan Knox had brought the money to the courthouse and passed it to Swano at the public defender's

---

[3]The defense's theory at trial was that Swano and others had operated a scam known as "rainmaking," where the participants would never pass the alleged bribe along to the judge.

office.   The bench trial of Hawkins and Fields had begun earlier that day.   Later that evening, Swano gave the bribe to McGee at Mayor's Row restaurant.   On June 19, 1986, at approximately 11:30 a.m., McGee called Swano in the anteroom outside Judge Maloney's chambers and informed him that he needed to "give the books back that he had given him the other day."   Swano understood this to mean that the fix was off.   However, after Swano placed a few phone calls to McGee, he was able to successfully convince McGee, and apparently Maloney, to continue the fix.   Swano told Hawkins about the problems he was having with the bribe.   The trial ended on June 26, 1986.   Judge Maloney told the parties he would make his findings the next day.   Later that evening, McGee called Swano and told him that the judge could not go through with the fix.   When Swano went to the courtroom the next morning, Maloney handed him the file folder of money Swano had passed to McGee.   Hawkins and Fields were thereafter found guilty.

During his testimony at the Maloney trial, Hawkins stated that in 1987 he spoke with prosecutors from the Cook County State's Attorney's office.   Hawkins told the jury he had met with the Assistant State's Attorney who prosecuted him in the Smith and Hickman murder case.   Hawkins also met with Assistant United States Attorneys and F.B.I. agents. The discussions with the State and federal prosecutors included information Hawkins had not only about Thomas J. Maloney, but also about other members of the El Rukn street

gang. Hawkins testified he had reached a plea agreement with both the federal government and the state's attorneys' office. Regarding his agreement with the federal government, Hawkins will begin serving a sentence of sixty years after he has completed his State sentence.

On September 8, 1992, Nathson Fields filed his "first amended petition for post-conviction relief." Therein, he alleged, among other claims, that he was denied his right to trial before an impartial trier of fact. The petition specifically mentioned that Judge Maloney had recently been indicted for accepting and then returning a bribe in his cause. On April 17, 1996, Fields filed a motion for judgment on his claim that he was denied a trial before an impartial trier of fact.

On April 17, 1996, Earl Hawkins filed his "first amended petition for post-conviction relief." Among his claims, Hawkins, like Fields, contended that he was denied his right to a trial before an impartial trier of fact. Hawkins also averred that he was denied his right to effective assistance of counsel because William Swano "engaged in improper conduct relating to bribing [Judge] Maloney."

On May 29, 1996, the State filed a motion requesting that the court deny the petitioners' requests for post-conviction relief. The State's argument was threefold: 1) that the petitioners' claims were waived; 2) that they actively participated in the corrupt conduct; and 3) that

the petitioners suffered no actual judicial bias from Judge Maloney.

The petitioners filed reply memoranda on July 26, 1996. In his pleading, Fields repeatedly denied that he or his trial counsel knew of the $10,000 bribe that Swano had passed to Maloney. (On August 28, 1996, Fields' trial attorney filed an affidavit attesting to this lack of knowledge.)

On August 6, 1996, arguments were made by the parties. During the course of this hearing, Fields filed the trial transcript of **United States v. Maloney**, 91 CR 477 and specifically requested that it was made a formal part of the record. The State did not object to its introduction.

## A N A L Y S I S

Having had the opportunity to evaluate: the relevant pleadings; the applicable case law; and the trial transcripts from the federal prosecution of Judge Maloney, and the state cases of Earl Hawkins and Nathson Fields, this court concludes that an evidentiary hearing is unnecessary. The court has everything it needs to rule on the allegations of the petitions.

The Post-Conviction Hearing Act does not require a trial judge to conduct an evidentiary hearing. The Act gives the post-conviction judge broad discretion as to the type of evidence he or she may consider in ruling on the allegations of the petition. **People v. Griffin** (1992), 148

-9-

Ill.2d 45, 53, 592 N.E.2d 930. Likewise, a judge has wide discretion to limit the type of evidence to be considered in determining the merits of a post-conviction petition. **People v. Montgomery** (1994), 162 Ill. 2d 109, 113, 642 N.E.2d 1260. Regarding the disposition of a petition in the trial court, 725 ILCS 5/122-6 states in relevant part: "the court may receive proof by affidavits, depositions, oral testimony, or other evidence." Where a defendant's petition presents a question of fact based on the record, an evidentiary hearing should be held, however, where the trial court has everything before it which is needed to rule on the post-conviction petition, then no evidentiary hearing is required. **People v. Reed** (1st Dist. 1980), 84 Ill.App.3d 1030, 1040, 405 N.E.2d 1065. A trial court may render its decision on a post-conviction petition on the basis of what is contained in the pleadings to which a motion is directed, as well as transcripts of the trial or other proceedings. **People v. Adams** (1st Dist. 1974), 22 Ill.App.3d 709, 318 N.E.2d 68 (per curium).

The United States Supreme Court has long held that an individual is entitled to fair trial before an impartial trier of fact. **Tumey v. Ohio** (1927), 273 U.S. 510, 71 L.Ed. 749, 47 S.Ct. 437; **In re Murchison** (1955), 349 U.S. 133, 99 L.Ed. 942, 75 S.Ct. 623; **Mayberry v. Pennsylvania** (1971), 400 U.S. 455, 27 L.Ed.2d 532, 91 S.Ct. 499; **Ward v. Monroeville** (1972), 409 U.S. 57, 34 L.Ed.2d 267, 93 S.Ct.

80; <u>Aetna Life Insurance Co. v. Lavoie</u> (1986), 475 U.S. 813, 89 L.Ed.2d 823, 106 S.Ct. 1580.

In <u>Tumey</u>, 273 U.S. at 523, the Supreme Court held that the mayor of a village, who served in a quasi judicial capacity, had a "direct, personal, pecuniary interest" in convicting a defendant who came before him for trial, where the mayor received twelve dollars of the costs imposed in his behalf. The mayor would not have received said sum had the defendant been acquitted. The court reasoned that "it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case."

Although there were no allegations of judicial impropriety in <u>Tumey</u>, and the court was cognizant that there were "doubtless mayors who would not allow such [ ] consideration...to affect their judgment" the requirement of due process of law in judicial procedure was not satisfied. Hence, the Supreme Court opined:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law. 273 U.S. at 532.

In <u>Ward v. Village of Monroeville</u> (1972), 409 U.S. 57 the court determined that an Ohio mayor was not an impartial

-11-

trier of fact where a major part of the village income was derived from fines, forfeitures, costs and fees imposed by him when he sat as a judge. Although the mayor did not have a personal financial interest in the outcome of each proceeding, the "possible temptation" existed. The mayor's executive responsibilities for village finances might have affected his ability to fairly assess fines and costs. The two practically and seriously inconsistent positions, one partisan and the other judicial, necessarily involved a lack of due process of law in the trial of defendants charged with crimes before him. 409 U.S. at 60.

In _Aetna Life Insurance Co. v. Lavoie_ (1986), 475 U.S. 813, 824, the Supreme Court held that an Alabama Supreme Court justice had acted as a "judge in his own case" where he had participated in a case where the decision directly affected a case that the justice had independently filed. The justice's interest was found to be "direct, personal, substantial and pecuniary." (The justice was the author of the opinion and he also cast the decisive vote in a 5 to 4 decision. 475 U.S. at 828.)

The Supreme Court, however, made clear that it was not required to decide whether in fact the justice was influenced, but only whether sitting on the case "would offer a possible temptation to the average...judge to...lead him not to hold the balance nice, clear, and true." 475 U.S. at 825 (citations omitted). Accordingly, **Aetna** found:

> The Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do

-12-

> their very best to weigh the scales of justice
> equally between contending parties. But to
> perform its high function in the best way,
> 'justice must satisfy the appearance of justice'".
> 475 U.S. at 825 (citations omitted).

Considering the holdings of **Tumey**, **Ward**, and **Aetna** this court concludes that the petitioners were denied a fair trial before an impartial trier of fact. There the Supreme Court found that the judicial officers had a financial interest in the proceedings for which they were presiding. The court rendered the decisions without making any determination of judicial impropriety. The same cannot be said for the conduct of Judge Maloney. His actions were far more egregious. Maloney was convicted for accepting and then returning a bribe in this very cause. He is currently in federal custody serving a sentence for that conviction. Although the judicial officers discussed above had a pecuniary interest in reaching a certain decision, by doing so they did not commit any illicit or illegal acts. Nor were they predisposed to rule a certain way before they heard a scintilla of evidence, by agreeing to "fix" the case. Not only did Judge Maloney have a "direct, personal, substantial, pecuniary interest" in the trial of Hawkins and Fields, justice did not satisfy "the appearance of justice" by the farthest stretch of one's imagination. Accordingly, petitioners Hawkins and Fields were deprived of their respective rights to due process of law.

Having determined that the petitioners were denied a fair trial before an impartial trier of fact, consideration

-13-

will now be given to whether: 1) the petitioners waived their rights; 2) Hawkins forfeited said right by actively participating in the bribe; and 3) the petitioners must establish actual bias by Judge Maloney during the course of their trial.

The State cites **People v. Titone** (1992), 151 Ill.2d 19, 600 N.E.2d 1160 to support the first point of its threefold argument. Dino Titone was indicted on numerous charges stemming from his participation in two murders. He waived his right to a jury trial and received a bench trial before Judge Maloney. He was subsequently convicted of all charged counts and was sentenced to death. His convictions and sentences were affirmed on direct appeal. After Titone's writ of certiorari was denied by the United States Supreme Court, he filed a petition for post-conviction relief. In this petition, Titone alleged for the first time, that his father paid Titone's trial counsel an extra $10,000 which was to be used to pay Maloney to fix the case. The trial court dismissed this portion of the defendant's petition. The Illinois Supreme Court affirmed and found that Titone had waived the claim since he had not raised the issue of judicial prejudice on direct appeal. It reasoned that Titone had been put on notice that the alleged bribery scheme was unsuccessful when he was convicted and sentenced to death. **Titone**, 151 Ill.2d at 29.

Notwithstanding **Titone**, application of the waiver rule is not a jurisdictional or absolute bar to review of

procedurally defaulted claims, rather it is a rule of administrative convenience. **People v. Owens** (1989), 129 Ill.2d 303, 317, 544 N.E.2d 276. Recently, **People v. Whitehead** (1996), 169 Ill.2d 355, 371-372, 662 N.E.2d 1304 enunciated "three well-established exceptions" to the bar of waiver. Strict application of res judicata and waiver will be relaxed where: 1) fundamental fairness so requires; 2) the alleged waiver stems from incompetency of appointed counsel on appeal; and 3) the facts relating to the the claim do not appear on the face of the original appellate record and could not have been supplemented to that record under Supreme Court Rule 329.

Exceptions one and three apply here. Given the finding that the petitioners were denied an impartial finder of fact, the fundamental fairness exception is evident. Moreover, for the State to contend that the petitioners waited approximately ten years to bring this action is somewhat misleading. Although the petitioners have not previously made these actions "known to any court," Earl Hawkins began cooperating with the state and federal governments as early as 1987. At that time, Earl Hawkins specifically discussed his knowedge of Judge Maloney's involvement in the fix of the Smith and Hickman murder case.

Regarding the other applicable exception, **Whitehead**, 169 Ill.2d at 372 provided the following clarification:

> ...it is not so much that a claim "could not have been presented" or "raised" by a party on direct appeal, but rather that such a claim could not have been considered by the reviewing court

because the claim's evidentiary basis was de hors
the record.

The foregoing explanation is of paramount importance to the present proceeding. The convictions and sentences of Hawkins and Fields were affirmed on direct appeal by the Illinois Supreme Court on February 16, 1990. Judge Maloney was not indicted until June 26, 1991, more than sixteen months later. Using these dates as general guidelines, the issue of the then alleged bribe was clearly not available for appellate review. Hence, the rule of "administrative convenience" is not appropriate under the unique circumstances here.

The State next contends that the petitioners forfeited their right to a trial before an impartial trier of fact because they actively participated in the corrupt conduct they now protest. The State propounds that "[The petitioners] want the best of both worlds, i.e., to attempt to influence to influence the fact finder and then when that fails, to request another chance and blame the fact finder they chose."

This court agrees with the general proposition that those who attempt to corrupt the judicial system may not later hide behind the very constitution they subvert. United States v. Forrest (5th Cir. 1980), 620 F.2d 446, 456-459, however, directly addressed the instant public policy concern. In Forrest, after all the evidence had been heard but prior to final arguments and charges to the jury, the judge was informed of an attempt at jury tampering. A

-16-

juror was dismissed and replaced with an alternate when she
confirmed that she had been contacted by an acquaintance of
the defendant's wife. The defendant and his wife were
co-defendants in this matter. The defendants were both
found guilty. On appeal, the Forrests contended that they
did not receive a trial by a fair and impartial jury. When
the circuit court evaluated their claims, it found that it
made no difference that it was Forrest himself who had
initiated the contact that may have poisoned the jury. The
court specifically rejected the suggestion that Forrest
could not be heard to complain of the results of his own
misconduct. The court was further cognizant and discounted
criticism that its holding would encourage defendants to
tamper with juries. It did not believe that their holding
would furnish defendants with a "heads - I win, tails - you
lose" proposition; a successful effort secures an acquittal,
an unsuccessful effort secures reversal on appeal. The
defendants could be prosecuted and punished for jury
tampering.

The court finds the logic of **Forrest** to be persuasive
and will adopt and follow its reasoning. Thus, the claims
of petitioners Hawkins and Fields are not barred by their
participation in the bribe of Judge Maloney. Hawkins
concedes his involvement in said illegal conduct while
Fields denies knowledge of the fix. Regardless of what the
defendants claim, the State could have charged them with
bribery. Although punishment for bribery may seem

-17-

infinitesimal contrasted with the ultimate penalty, the applicable classification of crimes is not a function of the judiciary. Where surrender of a fundamental constitutional right is concerned, the court's inquiry cannot be focused upon the "clean hands" of the defendant. **Zilich v. Reid** (3rd Cir. 1994), 36 F.3d 317, 321 (case remanded for evidentiary hearing on voluntariness of defendant's guilty plea where defendant alleged he was promised a sentence of probation in exchange for $4,000 bribe to trial judge).

The State relies on the test enunciated in **People v. Titone** (1993), 252 Ill.App.3d 682, 625 N.E.2d 172 and followed in **People v. Knade** (1st Dist. 1993), 252 Ill.App.3d 682, 625 N.E.2d 172 to support the third component of its threefold argument, that actual judicial bias must be established. **Titone** adopted a two-prong test originally provided in **Commonwealth of Pennsylvania v. Shaw** (1990), 398 Pa.Super.341, 508 A.2d 1379 which held that:

> "...in order to support a claim of judicial bias, two requirements must be met: (1) the petitioner must establish a nexus between the activities being investigated and the trial judge's conduct at trial; and (2) the petitioner must allege and establish actual bias resulting from the trial judge's extrajudicial conduct." 151 Ill.2d at 30.

This court finds that the preceding test is not controlling. Not only are **Titone** and **Knade** factually distinguishable, the test adopted therein was adopted under a different milieu.

**Titone** and **Knade** both dealt with situations where there were only allegations of bribery. In **Titone**, the

-18-

defendant's father stated in an affidavit that he paid his son's trial counsel an additional $10,000 that was to be used to pay Judge Maloney to fix the case. In **Knade**, the defendant's ex-wife attested that prior to sentencing, she saw the judge having a conversation in his chambers with the victim's son and a police officer. She next observed the officer hand the judge a brown manila envelope. In both cases the respective reviewing courts found there was no evidence of judicial impropriety. **Knade**, 252 Ill.App.3d at 690 (mere speculation was insufficient); **Titone**, 151 Ill.2d at 29 (no direct evidence was presented that Judge Maloney solicited, received, or agreed to accept a bribe to influence his decision in the defendant's case). Similar statements cannot be made for the bench trial of Hawkins and Fields. Judge Maloney was found guilty beyond a reasonable doubt by a federal jury for agreeing to fix the petitioners' cause.

Additionally, this court must consider and evaluate the context under which **Titone** adopted **Shaw**. At the time Titone's post-conviction petition was being evaluated, Judge Maloney was under investigation for judicial impropriety in nonrelated cases. **Titone**, 151 Ill.2d at 29 found that this concern was not germane to Dino Titone's contentions; it could not serve to taint all other decisions with which Judge Maloney had been involved.

It is a misstatement of law and fact to contend that the petitioners may have made a preliminary showing in

-19-

regard to the first prong of **Titone**. Guilt proven beyond a reasonable doubt clearly supersedes establishing "a nexus between the activities being investigated and the trial judges conduct at trial."

Furthermore, to hold the petitioners bound by the second prong of **Titone** under the unique facts of this case, is clearly inappropriate. Inasmuch as the bribe has been established, the second prong is accordingly not applicable.

Moreover, the State's reliance on **Branion v. Gramly** (7th Cir. 1988), 855 F.2d 1256 for the proposition that the defendant did not establish prejudice is misplaced. In **Branion**, due to limitations, the issue could only be considered under habeas corpus if the defendant could establish both "cause" and "prejudice." **Branion**, 855 F.2d at 1267. There, after learning of the judge's intention to enter post-conviction relief in exchange for a bribe, the prosecutor convinced the judge not to enter said order. Evaluating Branion's prejudice component, the reviewing court concluded that the defendant had not established a violation of a constitutional right. Neither the right to have the judge act as a "thirteenth juror" and substitute his judgment for that of a jury, nor the right to a corrupt acquittal, established constitutional prejudice. The relevant ex parte communication only deprived Branion of an entitlement under state law. **Branion**, 855 F.2d at 1268.

Earl Hawkins and Nathson Fields, however, were deprived of a constitutional right. In all criminal prosecutions the accused is entitled to a fair and impartial trial by jury. **People v. Marino** (1953), 414 Ill. 445, 450, 111 N.E.2d 534. The right of a defendant to an unbiased, open-minded fact finder is so fundamental to our system of jurisprudence that it should not require either citation or explanation. **People v. Eckert** (5th Dist. 1990), 194 Ill.App.3d 667, 673, 551 N.E.2d 820.

In **People v. Aleman** (1st Dist. 1996), ___ Ill.App.3d ___, 667 N.E.2d 615 the appellate court found that double jeopardy did not shield a subsequent prosecution where the earlier acquittal had been procured through a bribe. The constitution demanded fairness not only for the accused but, also, for the accuser. By bribing the judge, Aleman prevented a fair resolution of the first proceeding. **Aleman**, ___ Ill.App.3d at ___. Fairness is also mandated in the present proceeding. Even if the State could show through the testimony of Judge Maloney and others that Maloney returned the bribe because the defense evidence was not there, principles of fairness require more. Justice must satisfy the appearance of justice. **Aetna**, 475 U.S. at 825.

The petitioners here were denied a trial before an impartial trier of fact. Said right is rooted in the constitutional guaranty of due process of law and entitles a defendant to a fair and impartial trial before a court which

-21-

proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial. **People v. McDaniels** (5th Dist. 1986 ), 144 Ill.App.3d 459, 462, 494 N.E.2d 1275; **City of Chicago v. Cohn** (1927), 326 Ill. 372, 374, 158 N.E. 118. If this most basic and fundamental right has not been afforded a defendant during trial, then that defendant has been denied due process of law and is entitled to a new trial. **McDaniels** 144 Ill.App.3d at 462. Accordingly, the convictions and sentences of Earl Hawkins and Nathson Fields are vacated, and the petitioners are granted a new trial.

## C O N C L U S I O N

Based on the foregoing discussion, the sentences and convictions of the petitioners are hereby vacated and they are accordingly granted a new trial.

ENTERED:

_____
**Deborah Mary Dooling**
**Judge of the Circuit**
**Court of Cook County**
**Criminal Division**

DATED: September 18, 1996

-22-