# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**NATHSON E. FIELDS,**

    **Plaintiff,**

**v.**                                                                **Case No. 10 C 1168**

**CITY OF CHICAGO, et al.,**

    **Defendants.**

### PRELIMINARY EXPERT REPORT OF LOU REITER

1. My name is Lou Reiter. I have been actively involved in police practices and law enforcement since 1961. I was an active police officer for 20 years. Since my retirement in 1981 as an active police officer, I have been involved in police and law enforcement practices as a private police consultant.

2. Since 1983 I have been providing law enforcement consultation in police training and management. I provide law enforcement training in the following areas:

   - Investigation of critical incidents - officer involved shootings, use of force, and pursuits.
   - Managing the Internal Affairs function.
   - Police discipline.
   - Use of force and deadly force issues.
   - Police pursuit issues.
   - Investigative procedures and supervision.
   - Jail intake procedures
   - Personnel practices.
   - Supervisory techniques
   - Crowd control procedures.
   - Liability management.

1

- Policy and procedure development.
- Management effectiveness.

I consult with police departments of 3 to 39,000 employees, performing internal audits for the police organization. My primary areas of focus during these audits are:

- Citizen complaint procedures.
- Discipline, internal affairs and early warning systems.
- Personnel practices including selection, hiring, EEOC/AA, promotion, assignment and retention.
- Specialized operations including traffic, investigations, narcotics, vice, intelligence, emergency response teams and unusual occurrence units.
- Organizational structure and command responsibilities.
- Police department governance.
- Policy and procedures development.
- Use of force policy and procedures.
- Investigation of critical incidents.

3. Since 1983, I have been retained in over 1100 police related cases. This involvement has been on a mix of approximately 2/3 plaintiff and 1/3 defense. Assistance provided includes case analysis and development and expert witness testimony. I have been qualified in state and Federal courts, including the District of Columbia and Puerto Rico, to provide trial testimony in many areas including:

- Field procedures including tactics, arrest techniques and pursuits.
- Standards of police misconduct investigations.
- Use of force and deadly force.
- Supervision.
- Investigative procedures.
- Jail intake procedures
- Police management and personnel practices.
- Investigation of citizen complaints and discipline.
- Police policy and procedures development.
- Police training.

2

4. I am a former Deputy Chief of Police of the Los Angeles Police Department. I served as a police officer in the Los Angeles Police Department for over twenty years until I retired in 1981. During that period of time I served as a patrol and traffic officer, supervisor, manager, command officer and executive staff officer. I was involved in police training, investigating allegations of police misconduct, Chairman of the Use of Force Review Board, member of the Unusual Occurrence Command Post Cadre, and researcher and author of the chapters on internal discipline, training and management/employee relations for the Police Task Force Report of the National Advisory Commission on Criminal Justice Standards and Goals. In 1993 I published the manual/guide Law Enforcement Administrative Investigations; the Second Edition in 1998, and the current Third Edition in 2006.

5. My experience, training and background is more fully described in the attached resume. A complete list of my testimony during the past four (4) years is attached.

6. I have reviewed the following materials to date regarding this case:
    - Defense Third Amended Answer to Plaintiff Interrogatories
    - Additional Submission Regarding Motions Arguments
    - Defense Response to Plaintiff's Request to Admit
    - County Defense Response to Plaintiff's Request to Admit
    - Complete "Street File" consisting of 146 pages
    - Detective Division Special Order No. 83-1 (1983)
    - *Palmer v. City of Chicago,* 806 F.2d 1316 (7th Circ. 1987)
    - Depositions
        - Robert Flores
        - James Hickey
        - Kathleen Loughran
        - Samuel Brown

3

7. My opinions are based upon the totality of my specialized knowledge in the field of police practices. This experience is derived from my personal police experience, knowledge and training. This expertise has been developed during my 52 years involvement in law enforcement at all various capacities as a practitioner and my continued experience as a trainer, auditor and litigation consultant. This experience has provided me with extensive personal and specialized training, experience and knowledge of police operations and generally accepted police practices. The body of knowledge that I have reviewed over the years coupled with my personal and professional experiences, my continued auditing of police agencies, my constant training of police supervisors, managers and executives, my continuous interaction with other police professionals, organizations and training personnel, all form the foundation for the opinions I am rendering in this matter.

There is a large body of knowledge and literature about the practices and standards that modern, reasonably managed and administered police agencies across the U.S. should follow and apply to its operations. These generally accepted practices have developed over time to encourage and assist police agencies to deliver police services to communities serviced which are professional, reasonable, effective and legal. Many of these generally accepted practices have been developed from law enforcement critical analysis of field incidents and examinations of incidents reported to cause police liability, deficiencies and employee

4

misconduct. These generally accepted practices have been a response to reported cases of police misconduct and liability and a desire by law enforcement to create a system to ensure that police conduct remains within acceptable legal and constitutional bounds. I am familiar with this body of knowledge and through my continuous training and audits assist law enforcement with this requirement for reasonable and legal police response to field incidents and for constant improvement.

My examination of the factors involved in this police practices case embodies the basic fundamentals which I employ in my professional examination of police agencies during my audits and when working as a consultant with the U.S. Department of Justice. My opinions are provided with a reasonable degree of certainty within the fields of law enforcement, police activity and police administration and supervision.

The terminology I use in my Expert Report is not meant to invade the purview of the court or the final jury determination. I use these terms in my training of police supervisors, managers and command officers when instructing on administrative investigations and civil liability. These are products of my continuous review of case law that should guide a reasonable police agency in supervising its employees. These terms have become common terms within law enforcement supervision, management and risk management; just as the terms of probable cause, reasonable suspicion and the prima facie elements of crimes have become common terminology for police field personnel and detectives.

5

8. I have been involved in over an estimated 15 civil litigation matters concerning the Chicago Police Department since the late 1980s. On four (4) occasions, I was retained by the City as a police practices expert. This case involvement has allowed me to become familiar with the personnel, citizen complaint process, disciplinary system, numerous studies and commission reports, and operations of the Internal Affairs and Office of Professional Standards. I have reviewed depositions of at least four (4) prior Chicago Police Superintendents, a similar number of Directors of OPS, and many Police Department managers, supervisors and first level officers. During this period of time I have also reviewed several hundred CR investigations conducted by the Department. I acted as a police practices expert in 2007, *Arias, et al., v. City of Chicago, et al.,* 05C5940, concerning events occurring during 2004-2005. In my review of that case I reviewed approximately 300 CR files conducted by both Chicago OPS and IA. In 2012 I testified in Federal District Court in the case *Obrycka v. City of Chicago, et al., 07 C 2372*. Many of these cases involved the underlying issues of investigative practices of the Chicago Police Department.

9. I have specific law enforcement experience in the issues of the duty to disclose and the elements of *Brady* and *Giglio*. I have written on this topic and its implications for law enforcement agencies and personnel. Each month I have a section in my Internal Affairs training seminars during which I discuss these cases and resulting litigation and its implications on

6

routine and normal police practices. I have also presented a webinar to police practitioners on this topic; these are web-based seminars to a wide divergent group from law enforcement agencies across the nation.

10. **My opinion, from my review of these materials and based on my specialized experience, knowledge, training and continued involvement in reasonable police practices, is that the Chicago Police Department failed to provide exculpatory investigative materials to Plaintiff Fields. Any reasonable police officer or police official should have known that the recently discovered "street files" concerning the homicide investigative for which Mr. Fields had been tried were exculpatory and the type of files that must be disclosed to the criminal defense.**

11. The duty to disclose potentially exculpatory evidence is a well-established requirement in law enforcement. The U.S. Supreme Court in 1963 with *Brady* and then in 1973 with *Giglio* set the parameters for the duty of the State, including the police, to disclose all potential exculpatory evidence and provide it to the prosecutor for disclosure to the defense. These cases and the myriad of subsequent cases have solidified this requirement. The cases continue to cite that the responsibility rests with the police as well as the prosecutor. These cases also continue to state that it doesn't matter whether the failure to disclose is intentional or not. It recognizes that large agencies, such as U.S. Attorney's Office in the *Giglio* case, may face challenges but the Court has said that is something that

7

must be overcome by the agency. These cases continue to state that there is no "ambiguity" to the requirements of the State, including police agencies and officers, in this duty to disclose.

12. The Chicago Police Department in 1983 adopted specific criteria for investigators for the assemblage, approval, and maintenance of entire investigative files. Detective Division Special Order No. 83-1 was the Department's response to the discovery that "street files" in the case *Palmer v. City of Chicago* were not disclosed to the criminal defense. "This order is designed to institutionalize the control of all violent crime field investigation documents and files, which previously may have been referred to as working files, running files or detective's personal files and notes." This special order created an "Investigative File Inventory Sheet" to ensure that all documents placed in the investigative file were identified. It specifically required in subsection B that supervisors review all handwritten notes of detectives and that these are to be preserved.

13. James Hickey stated in his deposition that he conducted seminars for all 1200 detectives on the implementation of Special Order 83-1, in response to the *Palmer* case (11). He also was part of the audit team to ensure that these provisions were being met (16). He further testified that he had no knowledge whether any audits were conducted after the Order's implementation (43).

14. Kathleen Loughran stated in her deposition that Special Order 83-1 was still in effect in 2009 (11). She believed an annual audit of investigative

files was supposed to be done, but didn't know whether this was done and documented (43).

15. Samuel Brown stated during his deposition that it has been his job since 2009 to maintain the homicide investigative files (17). An inventory sheet usually is inside each file, but he didn't see one for the Fields' file (26).

16. Robert Flores acknowledged during his deposition that the Chicago Police Department has no logs or database to determine what investigative information is given to the criminal defense attorney (43).

17. The 146 pages of "street file" documents regarding the homicide for which Mr. Fields had been convicted were produced in 2011 after two criminal trials and subsequent to the civil case filing.

18. The City acknowledges in its 3rd Defense Answer that it was unable to locate where the new "street file" documents were found, who the detective who found them was, and who was the detective who copied the file and sent it to the Office of Legal Affairs. This City defense document also indicated a 1991 memo stated that no documents regarding this case were located at the Detective Division Area 1 offices. This Defense answer also indicated that the City had "no chain of custody" for these files.

19. The City also admits in its Response to Plaintiff's Request to Admit the it was "unable to determine where the file was between 1984-2011" and that it had no knowledge whether the entire file had been submitted to the U.S. Attorney Office prior to September 2011.

20. Two of the detectives, Bogdalek and Evans, involved in the original homicide investigation stated during their depositions as reflected in the Additional Submission Regarding Motions Argument that they took notes during their interviews with persons but those notes were missing from the file.

21. The specific investigatory information in the recently disclosed "street file" is the type of information that any reasonable police officer or police official should know was potentially exculpatory and the type that must be disclosed to the criminal defense.

22. There are numerous examples of what is exculpatory evidence in the recently disclosed "street file" for the homicide for which Mr. Fields was prosecuted and convicted. These are examples of investigation leads and omissions that should have been disclosed to the criminal defense:

- Over 30 mug shots and IDs and numerous additional criminal histories (rap sheets) with no investigative follow up information
- Specific notes for ballistics checks on weapons and other homicides such as "Check for 9mm handguns inventoried and other 9mm homicide cases 83-154" and a written request from Detective Evans for firearms comparison with another investigated shooting without any follow up reports
- Numerous tips and anonymous caller notes with specific suspect identification with no follow up notes or reports with names of Edwards brothers, Ronald and Donald as drivers of vehicle, a We

10

      T.I.P. name of "Sabash," Edward Stewart and Morris Haywood with no investigative notations of follow up or results

23. It is clear that the written guidelines of the Chicago Police Department were not followed in at least this case. The acknowledgement that there is no documentation of any subsequent audits of the control measures for these investigative files is an indication that the City and Police Department has made a choice to allow the investigatory practices to revert to unreasonable investigatory file maintenance and discovery practices that existed before the implementation of Special Order 83-1.

24. It is my understanding that additional materials may be in process of being produced or may be requested later. I would request that this report be considered a preliminary report. Should any subsequent information be produced and materially affect or alter any of these opinions, I will either submit a supplemental response or be prepared to discuss them during any scheduled deposition.

25. At this point in the development of this case I do not know whether I will be using any demonstrative aids during my testimony. Should I decide to use any such tool, I will assure that they are made available for review, if requested, prior to their use.

26. My fees for this professional service is a flat Case Development Fee of $7500 and a fee of $2500 for a deposition in the Atlanta area or $2500 per day plus expenses for services away from the Atlanta area including depositions and trial appearances.

This report is signed under penalty of perjury on this 11th day of August 2013, in Jasper, GA.

*Lou Reiter*

Lou Reiter