# EXHIBIT 15

Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 2 of 9 PageID #:9161

JOEL SILBERBERG, M.D.                           December 17, 2013
FIELDS vs. CITY OF CHICAGO                                      1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF ILLINOIS

 3                       EASTERN DIVISION

 4   NATHSON FIELDS,

 5        Plaintiff,

 6        vs.                          CASE NO.

 7                                     10 C 1168

 8   CITY OF CHICAGO, et al.,

 9        Defendants.
    _____
10

11

12

13

14

15                       DEPOSITION OF
                      JOEL SILBERBERG, M.D.
16

17

18              Tuesday, December 17, 2013
                        11:12 a.m.
19

20

21           2300 West Sahara Avenue, Suite 770
                     Las Vegas, Nevada
22

23

24

25      KIMBERLY E. BLOMBERG, RPR, CCR NO. 484
```



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 3 of 9 PageID #:9162

JOEL SILBERBERG, M.D.  December 17, 2013
FIELDS vs. CITY OF CHICAGO  129

```
 1   rather than a job; right?
 2        A.   No.  That's one of the aspects of what's
 3   keeping him stuck, but it's not the only thing.
 4        Q.   Are you aware that you're the first person
 5   ever to diagnose Mr. Fields with any type of
 6   psychological disorder?
 7        A.   No.  I'm not aware of that.
 8        Q.   Did you ask him?
 9        A.   I would not ask about -- I would not ask
10   that.  My understanding is he'd never seen a
11   psychiatrist or psychologist before.
12        Q.   You have a whole section about his history,
13   don't you?
14        A.   Yes.  But he said he had not seen a
15   psychiatrist or psychologist before.
16        Q.   So you're the first one ever to say he's got
17   some type of psychological disorder; isn't that true?
18        A.   I think I'm the only one as of right now to
19   have done a psychiatric evaluation on him.  I'm the
20   only person to have done that.
21        Q.   You'd expect that Dr. Cavanaugh and
22   Dr. Wasylew looked at him?
23        A.   A psychological test?
24        Q.   Forensic psychiatric evaluation?
25        A.   In three and a half hours, you can't do both
```



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 4 of 9 PageID #:9163

JOEL SILBERBERG, M.D.                                December 17, 2013
FIELDS vs. CITY OF CHICAGO                                         130

```
 1  those functions at the same time.  It's not possible.
 2      Q.   So you're --
 3      A.   I'm the only one that has done a forensic
 4  psychiatric evaluation on him.
 5      Q.   You don't think Dr. Cavanaugh did a forensic
 6  evaluation on him?
 7      A.   I know how long those different tests take,
 8  and there was no time to do an evaluation.  If you need
 9  all the tests that were done, there was no time to do
10  any kind of forensic psychiatric evaluation.  Three and
11  a half hours is not possible to do all those tests and
12  a forensic psychiatric evaluation.  It's physically not
13  possible.
14      Q.   But you haven't read Dr. Wasylew's report?
15      A.   I have not been provided that.
16      Q.   You haven't read the appendices to
17  Cavanaugh's report?
18      A.   I know that the evaluation took three and a
19  half hours.  And I know that five or six tests were
20  done.  And I know how long it takes to do those tests.
21  And either the psychological testing was done or
22  psychiatric evaluation was done.  But it's not possible
23  in three and a half hours to do both those functions.
24      Q.   It's your understanding he did a
25  psychological test, and he had the interview by
```



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 5 of 9 PageID #:9164

JOEL SILBERBERG, M.D.                                December 17, 2013
FIELDS vs. CITY OF CHICAGO                                         135

1   Q.   Isn't it true both Mary Johnson and Nathanial
2   Fields's statement were inconsistent with their
3   deposition transcripts?
4   A.   That's not unusual that everything doesn't
5   match completely.  But there wasn't any blatant
6   inconsistencies.
7   Q.   All right.  Go ahead.  Let me ask the
8   question.  Are there any other -- you said you had
9   concerns that you noticed in Dr. Cavanaugh's report
10  when you briefly perused it?
11  A.   The fact the interview was three and a half
12  hours and all the psychological tests were done.  And
13  if you add up the amount of time that the psychological
14  tests were done, there was no time for any interview.
15  So no forensic evaluation was done by Dr. Cavanaugh.
16  Q.   But again, you haven't seen -- are you aware
17  there's a transcript of the interview?
18  A.   I am aware.
19  Q.   You haven't read it, have you?
20  A.   I haven't.
21  Q.   You are aware there's a video of the
22  interview?
23  A.   I am.
24  Q.   But you haven't seen the video, have you?
25  A.   I know how these tests are administered and



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 6 of 9 PageID #:9165

JOEL SILBERBERG, M.D.　　　　　　　　　　　　　　　　December 17, 2013
FIELDS vs. CITY OF CHICAGO　　　　　　　　　　　　　　　　　　　　163

1　how to answer the test, making sure it was done
2　correctly, then there was no time for interview.  If he
3　was just sitting in the room by himself alone with,
4　say, like an administrative assistant watching him and
5　Dr. Wasylew actually did a three and a half hour
6　videotape, that still, in my opinion, would not be
7　enough time for a forensic psychiatric evaluation.
8　　　　　And I need to be careful.  But I think
9　Dr. Cavanaugh said he didn't observe all the videotape.
10　He only observed some of it.  So I'd have to look for
11　the page where he said that.  So again, I don't know
12　how much of the actual interview Dr. Cavanaugh observed
13　and how much of the three and a half hours actually was
14　related to the testing.
15　　　　　But the test took a considerable period of
16　time.  So maybe he was sitting in a room by himself
17　with an administrative assistant watching him.  And the
18　three and a half hours in interview.  I haven't seen
19　that.
20　　　　Q.　Could they both be done in one day?  The
21　diagnostic interviews and the psychological tests?
22　　　　A.　The battery of tests that he had -- and
23　again, I don't know the order of how it was done.  To
24　do that in an interview in one day I think you'd start
25　to have questions about validity and reliability



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 7 of 9 PageID #:9166

JOEL SILBERBERG, M.D.                                December 17, 2013
FIELDS vs. CITY OF CHICAGO                                         164

1  because the person would be getting extremely tired
2  either during the testing or during the interview.
3  That is a lot to ask for somebody in one day.
4       Q.   What types of concerns would you have?
5       A.   If the person is -- if it's burdensome, the
6  interviewee is overly tired, lack of concentration,
7  accuracy, validity, reliability.  Perhaps not by design
8  but just by being exposed to some stress.  Sort of
9  careless answers.  Frustrated, particularly as I do
10 have the opinion to a reasonable degree of medical
11 probability he has posttraumatic stress disorder, that
12 was extremely stressful.
13      Q.   I don't have any other questions except a
14 general question as to whether there's anything else
15 that you feel you need to clarify or that you'd like to
16 elaborate on from the questions that Mr. Noland asked
17 you.
18      A.   No.  It's just bothering me.  There is a
19 sentence where Dr. Cavanaugh said he observed some of
20 the videotape.  I really want to understand that
21 better.  He's making a diagnosis what percentage did he
22 observe and how was it chosen that he observed what he
23 observed and why didn't he watch the whole interview
24 even though it was short.  So I'd like to know that.
25 That's the only other additional question I have.



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 8 of 9 PageID #:9167

JOEL SILBERBERG, M.D.                  December 17, 2013
FIELDS vs. CITY OF CHICAGO                  171

1     A.     You know, I reviewed whatever I was given.

2     Q.     You didn't review hardly anything, sir.

3           MR. GOODMAN:  Objection.  Argumentative.  Ask

4 a proper question, counsel.

5 BY MR. NOLAND:

6     Q.     You didn't review any summaries of records;

7 isn't that true?

8     A.     I reviewed what I was given.  That's all I

9 can answer.

10    Q.     You're not going to be -- do you have a

11 criticism of Dr. Cavanaugh and Dr. Wasylew for not

12 conducting a second interview of Mr. Fields?

13    A.     The time that they took -- again, it may be

14 the three and a half hours was actually interview time.

15 But even that is not adequate time for a forensic

16 psychiatric evaluation, to make a diagnosis to a

17 reasonable degree of medical certainty.

18    Q.     So it's your opinion in order to do that they

19 should have conducted a second interview?

20    A.     Dr. Cavanaugh never did any interview.  He

21 just observed an interview that was done by somebody

22 else.

23    Q.     What's your understanding why that happened?

24    A.     That was negotiated in court, I believe.  Or

25 before the judge.



Case: 1:10-cv-01168 Document #: 503-14 Filed: 02/20/14 Page 9 of 9 PageID #:9168

JOEL SILBERBERG, M.D.                                December 17, 2013
FIELDS vs. CITY OF CHICAGO                                          173

```
 1   BY MR. NOLAND:
 2       Q.   Please answer.
 3            MR. GOODMAN:   Don't answer it.
 4   BY MR. NOLAND:
 5       Q.   You're declining to answer that question?
 6       A.   I was told not to answer it.
 7       Q.   Well, he doesn't represent you.
 8       A.   My understanding is sometimes judges will
 9   rule that counsel can only have one interview and you
10   have to pick.  And in my opinion, to render an opinion
11   to a reasonable degree of medical certainty, they pick
12   wrong.  And if Dr. Cavanaugh is going to give an
13   opinion to a reasonable degree of medical certainty, he
14   should have reviewed the records himself and
15   interviewed Nate for a substantial period of time to be
16   able to give an opinion to a reasonable degree of
17   medical certainty.  They chose wrong.
18       Q.   You understand, though, that both
19   Dr. Cavanaugh and Dr. Wasylew requested an interview of
20   Mr. Fields.  You understand that happened?
21       A.   That I understand, yes.
22       Q.   You have no criticism of that, of them both
23   requesting it?
24       A.   No.
25       Q.   And the mere fact the way it came down in
```

