# EXHIBIT 17

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### CRIMINAL DIVISION

The People of the State of Illinois,
Respondent,

v.

NATHSON FIELDS,
Petitioner.

Case No. 85-C-7651

Honorable Paul P. Biebel, Jr.
Judge Presiding.

### **ORDER**

Petitioner, Nathson Fields, is before this Court to request a Certificate of Innocence pursuant to 735 ILCS 5/2-702. Petitioner filed his initial Petition for a Certificate of Innocence in 2009. This Court initially granted his petition, and the State appealed. Now this cause is before the Court on remand from the First District Illinois Appellate Court. See *People v. Fields*, 2011 Ill. App. (1st) 100169.

### **BACKGROUND**

The Appellate Court remanded with direction that this Court consider the statutory burden of proof that requires Petitioner to prove his actual innocence by a preponderance of the evidence. In this Court's order—as clarified on December 10, 2009—this Court accepted the credibility and evidentiary determinations of Judge Vincent Gaughan, who found that the State failed to prove Petitioner Fields guilty beyond reasonable doubt. This Court also considered those findings articulated in the courts of review in Illinois as to the weight and admissibility of certain evidence against Petitioner, including evidence of his alleged involvement in the bribery of Judge Thomas Maloney prior to his first trial that resulted in his conviction for the 1984 murders of Jerome "Fuddy" Smith and Talman Hickman. Petitioner was subsequently sentenced

1

to death. The Illinois Supreme Court affirmed those convictions on direct appeal. See *People v. Fields*, 135 Ill. 2d 18 (1990).

Petitioner filed a post-conviction petition and argued that Judge Maloney's acceptance of a bribe in his case deprived him of a fair trial. The Court agreed and granted Petitioner a new trial. After a 2009 bench trial before Judge Vincent Gaughan, Petitioner was found not guilty of the murders. Judge Gaughan noted that there was no unimpeached witness identifying defendant as one of the gunmen, and found the State failed to prove defendant guilty beyond a reasonable doubt.

Petitioner then filed a Petition for a Certificate of Innocence, supported by his own affidavit, averring that he is actually innocent. He also attached to the petition the stipulated-to description of the gunmen given by Sandra Langston to police on the day of the shooting. The description provided by Langston did not match Petitioner's appearance, although other descriptions presented at trial did. The State filed a motion for leave to intervene in order to object to the issuance of the Certificate. The State claimed that Petitioner was unable to show by a preponderance of the evidence that he is innocent of the murders as required by statute.

At the hearing on the petition, this Court recounted the history of the case and heard arguments from the parties. The State argued that Petitioner's affidavit was insufficient to show by a preponderance of evidence that he is innocent of the murders in light of the testimony presented at retrial indicating that he was one of the shooters. Petitioner argued that Langston's stipulated-to testimony on retrial—wherein she stated that she did not remember much of the incident that occurred more than two decades prior but that Petitioner did not fit the physical description of the shooter—was sufficient to exonerate him.

2

In granting Petitioner's Certificate of Innocence, this Court articulated its interpretation of the procedural and statutory requirements in examining the evidence produced by the parties to this litigation. Specifically, this Court stated its belief that it could not "look behind Judge Gaughan's finding and provide a judgment on actual innocence" and stated it would "follow that finding of Judge Gaughan, and find that the Petition for Certificate of Innocence is well grounded here, and will so grant it over the objection of the State."

The Appellate Court found that this Court failed to consider the plain language of Section 2-702 and distinguish between a judicial finding of not guilty and Petitioner's burden to prove his actual innocence by a preponderance of the evidence. The Appellate Court directed this Court to consider the materials attached to the Petition for Certificate of Innocence and introduced during the litigation. Specifically, the Appellate Court stated that "the court was required to consider the materials attached to [Petitioner]'s petition in support of his innocence claim-his affidavit and the stipulated testimony of Sandra Langston-in relation to the evidence presented against him at both trials. The court erred in not doing so." *Fields*, 2011 Ill. App. (1st) 100169 at ¶19. On remand, this Court finds it necessary to conduct a hearing to determine whether Petitioner is able to demonstrate that he is actually innocent of these crimes.

## ANALYSIS

This Court is now called to rule upon three motions filed by the respective parties in anticipation of an evidentiary hearing on Petitioner's Certificate of Innocence. These motions will establish the evidence that will be permitted in this civil proceeding where the burden rests on Petitioner to demonstrate that he is actually innocent of the crimes for which he was indicted. It is well established that hearings on Certificates of Innocence are governed by the Illinois Rules of Evidence.

3

On October 12, 2012, the State's Attorney's office filed their "Motion To Admit Bribery Evidence", and Petitioner filed a response. On October 29, 2012, Petitioner filed his "Motion For An Adverse Inference Based On The Non-Disclosure Of Evidence In The Control Of The Chicago Police Department" and the State filed a Response to which Petitioner filed a Reply. On that same day, Petitioner filed his "Motion to Bar AUSA William Hogan From Testifying At Innocence Hearing". The State responded and Petitioner filed his reply and the State filed a surreply. Each of the pre-hearing motions will be discussed and ruled upon in turn.

1.  Motion to Admit Bribery Evidence

The State seeks to introduce alleged evidence of bribery against Petitioner during the innocence hearing. The evidence the State seeks to introduce at the hearing includes testimony from Petitioner's co-defendant, Earl Hawkins. Hawkins pled guilty to charges arising from the underlying case and received a reduced sentence to be served in federal custody. In exchange for the reduced sentence, Hawkins agreed to testify truthfully and cooperate with prosecutors, both State and federal. Hawkins has made statements indicating that Petitioner was aware, to some extent, of the bribery of Judge Maloney. The State would like to call Hawkins as a witness to testify at the innocence hearing about the extent of Petitioner's involvement in the bribe. The State claims that his testimony is relevant, and that his testimony as to Petitioner's involvement will be admissible as an adoptive admission.

The State is also seeking to introduce transcripts and audio recordings of high-ranking members of the El Rukn street gang. During the course of a federal investigation into the drug and criminal activity of that street gang as well as the investigation into the bribery of Judge Maloney, federal prosecutors obtained wiretaps on phones frequently used by the El Rukn leader, Jeff Fort. These wiretaps resulted in many hours of taped conversations, many of which

are coded in language intended to confuse those who would overhear the conversation from understanding the contents of the communication. These recordings were later translated by certain members of the El Rukn street gang who cooperated with the federal investigation. The transcripts were introduced, in part, in Judge Maloney's prosecution for bribery and during other federal prosecutions of the El Rukn street gang.

The State argues that the tapes and transcripts obtained through the federal wiretaps on Fort's phone are relevant for purposes of demonstrating that Petitioner was involved in the bribe of Judge Maloney by attorney William Swano. The State alleges that these tapes will demonstrate that Petitioner does not qualify for the relief he seeks because he will be unable to demonstrate that he did not, by his own conduct, bring about his conviction. Stated differently, the State is alleging that Petitioner has "unclean hands." The State claims that these statements will fall under the "statements of a co-conspirator" exception to the hearsay rule. *See* Illinois Supreme Court Rule 802(d)(2)(e).

The State is able to produce the transcripts that were used in prior prosecutions of the members of the El Rukn street gang and Judge Maloney's bribery trial. The "transcripts" include transcripts of the actual words used by the El Rukns that are heard on the recordings as well as "translation transcripts" of the coded conversations. The State claims that they have been searching for the actual audio recordings of the wiretaps. They recently turned over an unknown quantity of these recordings on compact disc to Petitioner in open court. The State claims that the many of the recordings are presently being restored and recorded on compact disc and will be made available to Petitioner prior to the innocence hearing. The State concedes that some of the recordings may be forever lost.

Petitioner does not agree with the State's conclusion as to the relevance and admissibility of both Hawkins' testimony and the audio recordings and transcripts of the wiretaps on Jeff Fort's phone. Petitioner points to his retrial in front of Judge Gaughan to support his argument. On retrial, Judge Gaughan determined that Hawkins' statements were not admissible as evidence of bribery against Petitioner because Judge Gaughan determined that the evidence of bribery against Fields was not strong, and that the prejudicial nature would outweigh the probative value of that evidence.

Further, Petitioner argues that Hawkins' testimony is entirely unreliable. Petitioner points out that Hawkins has claimed that Petitioner's attorney, Jack Smeeton, was present for the discussions, but he never made this claim during numerous prior proceedings. Additionally, Petitioner does not believe that Hawkins' testimony is reliable since he is only testifying pursuant to a plea deal. Petitioner argues that the probative value of this evidence is greatly outweighed by its prejudicial potential.

Petitioner also claims that the State's basis of admission of Hawkins' testimony is unfounded. The "admission by a party opponent" exception (adoptive admission) to the hearsay rule is inapplicable because Petitioner was never "accused" of any wrongdoing, as required by the plain language of the exception. Likewise, Petitioner also argues that the transcripts and audio recordings of are not admissible because there is no basis for their admission under applicable hearsay rules. According to Petitioner, the State has failed to advance any relevant evidence for a *prima facie* showing to support their assertion that Fields was involved in the conspiracy to bribe Judge Maloney, and therefore the co-conspirator exception relied upon by the State is not applicable. Moreover, Petitioner argues that the transcripts and recordings are vague and unreliable at best.

6

Finally, Petitioner contends that none of the alleged bribery evidence is admissible during the innocence hearing because of the doctrine of collateral estoppel. The State sought to introduce the audio recordings and transcripts as well as Hawkins' statement as evidence in Petitioner's retrial. Judge Gaughan did not allow the evidence to come in. The State filed an interlocutory appeal challenging the trial court's rulings, and the Appellate Court upheld the decision of the trial court on two separate occasions. Therefore, Petitioner argues that the State may not get a "second bite" at the apple and introduce this evidence against Petitioner during the innocence hearing.

In a broad context, the allegations of bribery are indeed relevant in the instant proceeding. Whether Petitioner participated in the bribery scheme is especially relevant to the query whether Petitioner did or "...did not by his or her own conduct voluntarily cause or bring about his or her conviction" 735 ILCS 5/2-702(d) (West 2009). However, not all relevant evidence is necessarily admissible.

The State proposes presenting Hawkins as a witness in the innocence hearing. Hawkins testimony is undoubtedly relevant. He is not only Petitioner's co-defendant, but a high-ranking member of the El Rukn street gang. Hawkins participated in the bribery of Judge Maloney. He was physically incarcerated with Petitioner and shared a lock-up pen with him when awaiting court appearances. The logistics of the bribery are alleged to have been discussed with Swano in the lockup in Petitioner's presence before these court appearances. In the past Hawkins has provided sworn testimony that, to some extent, links Petitioner to the bribery of Judge Maloney.

Petitioner argues that his testimony is entirely unreliable and Hawkins should therefore be barred from testifying at the innocence hearing. In support of this position, Petitioner points to Judge Gaughan's ruling on retrial excluding Hawkins' testimony as to Fields' participation in

7

the bribery scheme as well as the fact that Hawkins testimony has been somewhat inconsistent through the years and he is testifying pursuant to a plea agreement. While Hawkins' testimony may have proven too prejudicial at Petitioner's criminal trial, the instant proceeding is different.

Importantly, this Court notes the distinctly dissimilar nature of a retrial on a criminal indictment for murder and a Petition for a Certificate of Innocence. On retrial Petitioner's liberty was at stake for murder, and the relevancy of Hawkins' testimony as to Petitioner's role in the bribery scheme was outweighed the potential prejudice to Petitioner's defense. In the instant proceeding, Hawkins' testimony is clearly relevant to the issue of whether Petitioner is able to show that he has satisfied the statutory requirements for a Certificate of Innocence. One of the relevant queries at the innocence hearing will be the extent of Petitioner's knowledge and involvement in the Judge Maloney bribe. Since Petitioner's liberty is no longer at stake and the burden now lies on him to prove actual innocence, the relevancy of the information weighed against the potential prejudice is no longer the same as it was on retrial. If Hawkins is permitted to testify in court, subject to cross examination, this Court as finder of fact will have an opportunity to observe the examination of the witness and make determinations of credibility. To the extent that Hawkins is available to both parties before the hearing and during the hearing, and assuming that Petitioner has the opportunity to investigate his testimony and cross examine him at the hearing, he is a permissible witness for the innocence hearing.

The audio tapes pose some evidentiary difficulties. The taped recordings of Jeff Fort and his associates are clearly hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *People v. Dobbey*, 2011 IL App (1st) 091518 ¶41, quoting *People v. Gonzalez*, 379 Ill. App. 3d 941, 954 (1st Dist. 2008). Generally, hearsay statements are inadmissible, but the rule has certain exceptions. *Dobbey*, 2011 IL App (1st) 091518 ¶41,

8

quoting *People v. Dunmore*, 389 Ill. App. 3d 1095, 1106 (2d Dist. 2009). The trial court has discretion to determine whether statements are hearsay and, if so, whether admissible under an exception. *Id.* quoting *People v. Spicer*, 379 Ill. App. 3d 441, 449 (1st Dist. 2008). The State argues that the taped recordings of Jeff Fort fall under the co-consipator exception to the rule against the admissibility of hearsay evidence.

The law in Illinois defining the co-conspirator hearsay exception is well developed. In order to introduce a co-conspirator's hearsay statement, the State is required to make a *prima facie* showing of a conspiracy. *People v. Batrez*, 334 Ill. App. 3d 772, 783 (1st Dist. 2002). The State must establish a *prima facie* showing of a conspiracy by proving by a preponderance of the evidence (independent of the coconspirator's hearsay statements) that: (1) two or more persons intended to commit a crime; (2) they engaged in a common plan to accomplish the criminal goal; and (3) an act or acts were done by one or more of them in furtherance of the conspiracy. *Batrez*, 334 Ill. App. 3d at 783. The existence of a conspiracy need not be proven by direct evidence and instead may be inferred from all of the surrounding facts and circumstances. *People v. Cook*, 352 Ill. App. 3d 108, 125 (1st Dist. 2004). "'Because of the clandestine nature of conspiracy, Illinois courts permit broad inferences to be drawn from the circumstances, acts, and conduct of the parties, and the suspicious nature of the activities of alleged coconspirators can be sufficient to prove a joint venture." *People v. Leak*, 398 Ill. App. 3d 798, 826 (1st Dist. 2010); *Cook*, 352 Ill. App. 3d at 125(quoting *Batrez*, 334 Ill. App. 3d at 783-84).

Here, the State has satisfied that burden and this Court finds that it has made a *prima facie* showing of conspiracy. The first two elements of the co-conspirator exception are easily established. Judge Maloney was convicted of for accepting a bribe in this very case. It is clear that two or more people (Swano and Hawkins along with other El Rukn gang members)

9

conspired together to fix the trial. Petitioner is a known member of the El Rukns and Hawkins' sworn testimony has directly linked Petitioner to the bribery scheme through Hawkins' sworn statements. The third and final element is clearly met because it has been established that Swano actually gave the bribe money to Judge Maloney and that money was later returned.

But that is not enough. The law requires that the *prima facie* evidence exist beyond the hearsay statements of the co-conspirator. In this case, the State seeks to introduce the audio recordings and transcripts of telephone conversations of Jeff Fort and other members of the El Rukn street gang. Hawkins' allegation that Petitioner was involved in the bribe of Judge Maloney does not arise from the recordings of the wiretaps. Therefore, it is the opinion of this Court that the sworn testimony of Hawkins is independent corroborating evidence that does not violate the prohibitions of the co-conspirator exception. Looking at the picture at large there is sufficient indicia of reliability to permit this Court to review the proposed bribery evidence.

Moreover, the conspiracy at large is not merely speculative. Judge Maloney was indeed indicted and convicted on charges relating to bribery in Petitioner's case where his co-defendant and other members of the El Rukn street gang were implicated in the bribery conspiracy. It is not disputed that Petitioner was a member of the El Rukns. The only question remaining is whether Petitioner was involved in the bribe.

The State argues that it is not required to produce the actual audio recordings in this case because the transcripts are complete, have been introduced in Federal Court (and never challenged as to their accuracy) and may be admitted pursuant to Illinois Rule of Evidence 1004(1), which states that "the original is not required and other evidence of contents of a writing, recording, or photograph is admissible if all originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith."

10

Petitioner challenges the accuracy of the recordings and argues that he was never a party to the litigation wherein the transcripts and recordings were permitted into evidence, and therefore Petitioner never had a meaningful chance to examine the audio recordings for accuracy. Presumably, he argues that this undermines the probative value of these transcripts, which were translated under the supervision of AUSA Hogan. This Court agrees with Petitioner in part.

In weighing the relevance of the proposed evidence against the potential prejudicial effect on Petitioner, it will be necessary for Petitioner to have a meaningful opportunity to challenge the evidence at the innocence hearing. While extremely relevant to the instant case, the potential for the evidence to be misinterpreted is too great to blindly admit the transcripts of the wiretaps without some balancing as to the accuracy and meaning of the underlying recordings. The evidence will be most meaningful at Petitioner's innocence hearing where he has had an opportunity to review the evidence and make any challenges to the accuracy of the transcripts and the interpretation of the coded conversations. The innocence hearing is similar in nature to a bench trial, and this Court sits in a privileged position to weigh the evidence before it and make judgments as to the reliability, accuracy, and weight to be given the audio recordings and transcripts in the context of the arguments of the parties.

At a hearing on Tuesday, March 19, 2013, this Court further inquired into the evidence the State wishes to introduce. The State agreed that they will only seek to introduce the transcripts of the recordings and the translation transcripts along with the actual audio recording (or accurately reproduced copy thereof). Therefore, to the extent that the State is able to furnish the original audio recordings (or exact reproductions of those recordings) of the federal wiretaps, and provide those original recordings to Petitioner ahead of the hearing, the audio recordings and their transcripts will be admissible. Accordingly, the transcripts and translation transcripts of the

audio recordings will only be admissible insofar as their accompanying audio component is available.

Finally, Petitioner argues that the bribery evidence the State seeks to introduce at the innocence hearing should be precluded from admission due to the doctrine of collateral estoppel. During Petitioner's retrial in front of Judge Gaughan, the trial court ruled on two occasions that the evidence of bribery against defendant was not admissible. In the first instance, the trial court denied the State's motion *in limine* to introduce evidence of bribery against Petitioner, claiming insufficient evidence of his knowledge of the bribe. The second time, the State sought to introduce the statement of Hawkins after he pled guilty and agreed to cooperate with prosecutors. In Hawkins' statement he discusses Fields' alleged involvement with the bribe. Judge Gaughan denied the State's request to introduce the evidence due to a lack of due diligence in presenting the evidence to the court. The Appellate Court upheld the decision of the trial court on both occasions.

Collateral estoppel bars the relitigation of issues already decided "when a party participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction.'" *People v. Franklin*, 167 Ill. 2d 1, 11 (1995). Stated differently, the requirements for collateral estoppel are that (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the adjudication. *Franklin*, 167 Ill. 2d at 11-12. The doctrine of collateral estoppel also requires that the parties be identical and that both parties be bound by the decision of the court in the original action; this is

called the "mutuality requirement". *Id.* The Illinois Supreme Court, however, has recognized that there are exceptions to this doctrine.

Where the burden of proof at the subsequent proceeding is lower than in the initial proceeding, the doctrine of collateral estoppel does not bar relitigation of previously decided issues. "[T]he government is not precluded from 'relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.' *People v. Colon*, 225 Ill. 2d 125, 148 (2007), quoting *People v. Jackson*, 149 Ill. 2d 540, 550 (1992). In *Colon*, the Illinois Supreme Court determined that collateral estoppel does not preclude the State from proceeding with a probation revocation hearing after a defendant has been acquitted of the substantive charge. *Colon*, 225 Ill. 2d at 155.

In dicta, the Supreme Court discussed the history of this exception to the doctrine of collateral estoppel. Based on existing Illinois Supreme Court and United States Supreme Court precedent, the *Colon* court reasoned that the double jeopardy clause of the United States Constitution does not preclude the relitigation of an issue after an acquittal in a criminal trial when the subsequent disposition of the issue is governed by a lower standard of proof. This is because an acquittal on a criminal charge does not prove that the defendant is innocent, but merely that a reasonable doubt exists as to his guilt. *Id.* at 151-152, quoting *U.S. v. Watts*, 519 U.S. 148,155 (1997); *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984).

The case at bar is analogous to those cases establishing precedent for this exception to the doctrine of collateral estoppel. Upon retrial Petitioner was acquitted of the murder charges because the State failed to meet its burden of proof. Now Petitioner brings this new action under a civil statute seeking a Certificate of Innocence, where the burden of proof is different from the burden in the criminal trial. On retrial, the burden was on the State to prove beyond a reasonable

13

doubt that Petitioner was guilty of the murders. Now, at the innocence hearing Petitioner bears the burden of proof, and that burden is by a preponderance of the evidence–a burden that is lower than the burden at Petitioner's criminal trial. In the initial criminal proceeding, Petitioner's liberty was at stake and the evidentiary rulings were made with the State's ultimate burden in mind. Now, in this civil action, the burden has shifted to Petitioner and the ultimate burden of proof is not as strict (and Petitioner's liberty interests are no longer at stake). The reasoning of *Colon* and *Watts* is directly applicable in the instant proceeding where this Court is now called upon to decide whether Petitioner is actually innocent of these crimes where the trial court determined that there existed reasonable doubt as to his guilty. Therefore, this Court finds that the doctrine of collateral estoppel does not bar the State from introducing the alleged evidence of bribery at the innocence hearing. Subject to the limitations discussed, above, the State will be permitted to introduce the evidence of bribery.

2. Motion for an Adverse Inference

Next, Petitioner requests that this Court infer an adverse inference based on the non-disclosure of certain evidence. Specifically, Petitioner requests that the Court infer from the non-production of Chicago Police Department investigative notes and materials (the "street file") to Petitioner at any time prior to each of his criminal trials, that had these documents been produced in their entirety, and in a timely manner, they would have been adverse to the State's theory of the case and favorable to Petitioner.

Despite the extensive history of litigation in this case, Petitioner was provided by the City of Chicago for the first time with approximately 90 pages of the "street file" on September 13, 2011, which includes many never-before seen documents and notes. Petitioner argues that these notes do not implicate Fields in the murder, but rather point to a rival gang dispute between the

14

Goon Squad and a local "rag tag" gang that was led by Jerome Smith. Petitioner asserts that there are many notes that are still missing.

Petitioner claims that initially he was arrested by the Chicago Police Department for an unrelated murder (Dee Eggers- Vaughn and Joseph White) and was implicated after his arrest in the murders of Smith and Hickman by Anthony Sumner. Allegedly, Sumner was upset because Petitioner, who was a superintendent of Sumner's building, evicted Sumner and his family for not paying rent. Sumner later recanted his testimony implicating Petitioner in these crimes and instead said it was he and Hawkins who committed the murders. Since the link to the initial crime for which petitioner was arrested is tenuous, Petitioner argues that the contents of the file would have been most relevant prior to and during his initial trial.

Petitioner argues that the file contains additional information that could have been beneficial at his first trial, since certain allegedly exculpatory information was found in the street file. Some of this information includes a note indicating that Lawrence Marshall heard the Thomas brothers discussing killing Smith in the stairwell on the day of the murder. There was also a tip indicating that one of the individuals involved in the murder was nicknamed "Sabash", provided his address, and the fact that he drove a blue Cadillac Coup Deville—the make, model and color of the automobile used in the getaway. The file also contained an interview with James Langston where he identifies the driver as one of the Baldwin brothers who lost a brother, Ricky Baldwin, to gang violence the prior year. Overall, there were notes and documents in the file that Petitioner claims might have assisted him in his defense at the time of his initial trial. Based on the non-disclosure of these notes and documents, Petitioner requests that this Court find that the material contained therein would have been favorable to Petitioner had it been available at the time of his initial trial and would have permitted him to develop the evidence in

15

this case. Petitioner also argues that certain evidence is still missing, and this Court should infer that the missing evidence would be favorable to Petitioner.

The State counters and argues that an adverse inference is not the appropriate remedy in this situation. The State highlights the fact that the inference applies in situations where known evidence has been lost, destroyed, or intentionally withheld. In contrast, this is a situation where evidence has been recently discovered and newly presented. Further, the State argues that the substance of the evidence contained within the newly presented street file is irrelevant to this Court's determination.

According to the State, the problem of an adverse inference in this case is further compounded since much of the "evidence" that the Petitioner identifies would not be evidence in the traditional sense. That is, the evidence would not be directly admissible at trial. Finally, the State points out that many of the witnesses identified through the "new evidence" have always been known to the parties and available throughout the proceedings. In support of the assertion that the Street file does not significantly contribute to Petitioner's theory of the case, the State highlights that several of the witnesses identified in the "street file", including Randy Langston and Carlos Willis, testified as defense witnesses at trial. Therefore, the State argues that the fact that these witnesses are now appearing in documents and notes in the newly discovered data is irrelevant. Overall, according to the State, much of the information gleaned from the "new evidence" is not useful as it consists merely of unverified "tips" from many years ago. The State contends that a ruling in favor of the Petitioner in this instance would require pure speculation as to the usefulness of this information.

In addition, the State argues that Petitioner is unable to demonstrate any intent on the part of the State to withhold the information or that the information was unfairly available to

prosecutors for use at the time of either of Petitioner's murder trials. For those reasons discussed, above, the State argues that an adverse inference is not warranted.

Petitioner is asking this Court to apply Illinois Pattern Jury Instruction 5.01, while weighing the evidence to be presented in the innocence hearing with regards to information found in the newly produced "street file". Whether to give IPI 5.01 is a matter within the sound discretion of the trial court. *Roeseke v. Pryor*, 152 Ill. App. 3d 771 (1st Dist. 1987). IPI 5.01 states that: "If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:

> 1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.
> 2. The evidence was not equally available to an adverse party.
> 3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.
> 4. No reasonable excuse for the failure has been shown."

Before giving this instruction, this Court must first determine that in all likelihood a party would have produced the documents under the existing facts and circumstances except for the fact that the contents would be unfavorable. See *Tuttle v. Fruehauf Corp.*, 122 Ill. App. 3d 835, 843 (1st Dist. 1984). The presumption does not apply if the evidence is "equally available" to either party. *Flynn v. Cusentino*, 59 Ill. App. 3d 262 (3d Dist. 1978). In the instant proceeding there is no evidence that the State would have been able to produce these documents prior to 2011, and would have done so but for the fact that the contents would not have been favorable to their theory of the case. Further, it appears that the lost evidence was equally unavailable in that neither party had access to the "street file" prior to 2011. For these reasons the instruction is not appropriate in the instant proceeding.

Assuming, *arguendo*, that Petitioner is correct and an adverse inference pursuant to IPI 5.01 would be warranted at a trial with a jury, such a finding is not as relevant during a bench hearing. This Court is unable to locate an example of such an inference being used in the absence of a jury. Petitioner's hearing will be conducted in the same fashion as a bench trial. In a bench trial, the judge is limited to the record developed during the course of the trial before him. A trial judge is free to accept or reject as much or as little as he pleases of a witness's testimony. A trial judge sitting as trier of fact is presumed to have considered only admissible evidence in making his decision. See *People v. Jackson*, 409 Ill. App. 3d 631 (1st Dist. 2011). Since there is no jury, the Court will serve as the sole fact-finder.

The IPI assists lay jurors in understanding the facts and evidence presented at trial and applying those facts to the law. In this case, the Court will hear the arguments and review the evidence as presented by the parties in full. At a hearing such as this, the trial judge is presumed to consider only proper evidence. See *People v. Todd*, 154 Ill. 2d 57 (1992) (defendant unable to demonstrate prejudice during a bench trial where counsel failed to object to certain statements because the improper statement is presumed to be considered by the trial judge only for any value it might have had). As the innocence hearing proceeds, this Court will, necessarily, examine the evidence and arguments in the light of the advocacy of counsel.

As noted by the parties, the Certificate of Innocence statute, 735 ILCS 5/2-702(a) provides for the difficulties faced by parties in proving innocence many years after the crime was committed. Specifically, Section 2-702 mandates that this Court, "in exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this Section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other

18

factors not caused by such persons or those acting on their behalf." 735 ILCS 5/2-702(a) (West 2012). Accordingly, this Court will continue to consider arguments directed to such difficulties in the availability of evidence in this case.

Whether this Court finds an adverse inference against the State appears to be inconsequential to this litigation where Petitioner bears the burden of proving his actual innocence by a preponderance of the evidence. The matter at bar is not a "typical" spoliation scenario. It is not as if we know whether critical evidence has been purposely destroyed or whether key witnesses have been hidden away. At the time of Petitioner's trials, he was not provided the full "street file" despite numerous subpoenas of various governmental bodies. Petitioner has been supplied with a copy of the "street file" containing an additional 90 pages of documentation. It is argued that the "street file" is not complete and that there are still documents and notes missing. However, even the allegation that there remain documents in possession of the Chicago Police Department is speculative.

The information contained in the street file could perhaps have been useful at Petitioner's initial trial, although the file does not appear to contain convincingly exculpatory evidence. Therefore, assuming that the evidence would have been beneficial in the past at Petitioner's previous trials, this Court would be required to speculate as to how that evidence could have been used and how it would have developed at trial. Even assuming that the evidence alleged to be missing from the street file (*i.e.* investigator notes) would be favorable in the instant innocence hearing, Petitioner is asking this Court to engage in pure speculation as to what the evidence might show.

The decision to grant or deny the adverse inference will have little impact in this litigation. It remains Petitioner's burden to prove by a preponderance of the evidence that he is

Hogan will not be permitted to discuss certain aspects of his investigation into the El Rukn street gang, including information deemed irrelevant, confidential, or privileged by the DOJ.

Following receipt of the DOJ response to Petitioner's request, he then filed a Motion to bar AUSA Hogan from testifying. As grounds for this request, Petitioner asserts that the restrictions placed upon Hogan's deposition as well as the limited production of requested documents prejudices him because he will be unable to adequately cross examine and impeach Hogan at the hearing. Further, Petitioner claims that he will be unable to challenge Hogan's credentials as an expert based on his alleged misconduct in handling the prosecutions of the El Rukn street gang. Therefore, argues Petitioner, Hogan should not be permitted to testify.

The State responds that Petitioner's Motion to Bar is entirely unfounded and unsupported by any authority where the State has not, through its conduct, hindered or frustrated production of the requested information. That is, the State has not violated any discovery rules. The State re-asserts that Hogan is being called for a limited purpose, as discussed above. The State notes that the DOJ has not restricted production of documentation or Hogan's testimony as far as the State's purpose for calling Hogan as a witness is concerned.

In the case at bar, Petitioner's assertion that the State should not be permitted to call AUSA Hogan for purposes of testifying at Petitioner's innocence hearing is rejected. The State has represented that it will call Hogan for limited purposes within the limitations of the DOJ's proscriptions. Here, Petitioner seeks to depose Hogan on matters that are beyond the scope of this proceeding, are protected and privileged under Federal law, or are confidential. Both parties are similarly situated with regards to the limitations on Hogan's testimony. Petitioner asserts that he will be prejudiced if he is not allowed full an unfettered access to Hogan. Specifically, Petitioner emphasizes that he is seeking to impeach Hogan's character by examining "his

21

extensive history of prosecutorial misconduct in proceedings involving El Rukn defendants, his professional and ethical failures in prosecuting members of the El Rukn organization, and his inappropriate rapport with cooperating witnesses." This Court reviewed the extensive opinion of the Office of Professional Standards which cleared Hogan of all accusations of wrongdoing. Since Hogan's alleged misconduct has been fully investigated in past administrative proceedings those allegations of misconduct will not be further considered in the present action.

The sole issue that concerns this Court is whether Petitioner meets the statutory requirements for a Certificate of Innocence. This Court finds that Petitioner will not be significantly prejudiced by the limitations that have been placed on Mr. Hogan's testimony.

Further, as noted by the State, sanctions in this case are not appropriate where the State has not caused the limitations on Hogan's proposed testimony. Petitioner does not cite any authority for a discovery sanction of this nature, but merely requests this Court to bar Hogan's testimony. Illinois Supreme Court Rule 219 would appear to be the vehicle to raise such a challenge in this Court at this time. Petitioner has chosen not to file a motion for this sanction, presumably because this sanction would be inapplicable to the current proceeding where the State is not responsible for the restrictions on the witness' testimony. The DOJ will permit Hogan to be deposed and testify subject to certain limitations that do not preclude effective investigation or cross examination at the innocence hearing, and these restrictions are also applicable to State. Therefore, Hogan will be permitted to testify.

22

## CONCLUSION

For the reasons discussed, Respondent's Motion to Admit Bribery Evidence is GRANTED subject to those limitations discussed, herein. Petitioner's Motion for an Adverse Inference is DENIED. Petitioner's Motion to Bar AUSA Hogan from Testifying at the Innocence Hearing is also DENIED.

ENTERED: _Paul P Biebel Jr_ 1688

Hon. Paul P. Biebel, Jr.
Presiding Judge
Criminal Division

DATED: March 28, 2013

ENTERED
JUDGE PAUL BIEBEL JR-1688

MAR 28 2013

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

23