# EXHIBIT 18

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
CENTRAL REGIONAL OFFICE

WILLIAM R. HOGAN, JR.,

    Appellant,

v.

DEPARTMENT OF JUSTICE,
    Agency.

DOCKET NUMBER
CH-0752-96-0621-I-2

DATE: July 23, 1998

    Shelly B. Kulwin, Esquire, Chicago, Illinois, for the appellant.

    Thomas P. McGarry, Esquire, Hinshaw & Culbertson, Chicago, Illinois, for the appellant.

    Lois Bonsal Osler, Esquire, and Richard R. Brown, Esquire, Washington, D.C., for the agency.

BEFORE

Howard J. Ansorge
Administrative Judge

**INITIAL DECISION**

INTRODUCTION

    William R. Hogan, Jr., was employed by the Department of Justice as an Assistant United States Attorney for the Northern District of Illinois in Chicago, Illinois. The Department of Justice charged Mr. Hogan with work-related misconduct and removed him from employment effective April 12, 1996. Mr. Hogan's first timely appeal to the Merit Systems Protection Board (MSPB) was dismissed pursuant to a settlement agreement, under which the agency agreed to rescind the removal action, place Mr. Hogan on

2

administrative leave, and reconsider the decision to remove him from employment. After reconsidering its decision, the agency again removed Mr. Hogan from employment effective November 22, 1996. On December 23, 1996, Mr. Hogan timely appealed to the Board. The Board has jurisdiction over his appeal. *See* 5 U.S.C.A. §§ 7701(a), 7511(a)(1)(A), 7512, and 7513(d) (West 1996).

A hearing was held in Chicago, Illinois, from October 27 through December 15, 1997. The hearing included sixteen full days of trial and one day of oral closing argument.

For the reasons set forth herein, the appellant's removal from employment is REVERSED.

TABLE OF CONTENTS

I. Background .................................................. 6

II. Prosecutor's Obligation to Disclose Evidence
    Favorable to Defendant .................................. 15

III. Charge 1(A): **Intentional Failure to Disclose
                   Positive Drug Tests** ...................... 19

   A. Rosenthal Memorandum & Positive Drug Tests ......... 20

   B. Considerations Regarding Whether the Positive
      Drug Tests Constitute *Brady* Material .............. 23

      1. Collateral Estoppel Effect of Federal
         Judges' Post-Trial Rulings ..................... 23

      2. Effect of Drug Use on Cooperators' Ability to
         Recollect and Relate ........................... 26

      3. Cooperators' Bias .............................. 27

      4. Cumulative Impeachment ......................... 29

   C. Circumstantial Evidence of Appellant's
      Knowledge of Positive Drug Tests .................... 37

      1. Oral Notification of Positive Drug Tests ....... 37

         (a) Beeler's Meeting with Raphaelson .......... 38

         (b) Raphaelson's Communication
             with Appellant ............................ 46

      2. Written Notification of Positive Drug Tests .... 49

         (a) Rosenthal Memo Processed through
             Raphaelson's Office ....................... 49

         (b) Raphaelson's Recollection
             of Rosenthal Memo ......................... 51

         (c) Erroneous Routing of Rosenthal Memo ....... 55

      3. Appellant's Behavior After El Rukn Inmates
         Tested Positive for Drugs ...................... 60

         (a) Miscellaneous Evidence Indicating
             Appellant Lacked Notice of Positive
             Drug Tests ................................ 60

   (b) Incentive to Conceal Positive
     Drug Tests .................................. 61

    (i) Fear of State's Attorney
      Spoiling Plea Agreements ............ 62

    (ii) Fear of Effect on
      Cooperators' Credibility ........... 67

   (c) Appellant's Handling of Trial Subpoenas
     Seeking Drug Test Results ................. 73

   (d) Mildner Memo Listing Positive Drug Tests .. 75

   (e) Telephone Inquiry Regarding MCC
     Disciplinary Procedures ................... 79

  4. Conclusion: Weight of Circumstantial Evidence .. 83

 D. Rosenthal Conversation ................................ 85

 E. Conclusion: Intentional Failure to Disclose ........ 103

IV. Charge 1(B): **Negligent Failure to Investigate
      and Disclose Positive Drug Tests** ....... 104

 A. Agency's Theory ..................................... 104

 B. Appellant's Knowledge of Cooperators'
   Prior Drug Use .................................... 105

 C. General Observations of El Rukn Cooperators
   by OCDETF Task Force Members ...................... 106

 D. Harry Evans' Physical Symptoms ..................... 115

 E. Cooperators' Boasting of Access to Drugs ........... 128

 F. Derrick Kees Claims Harry Evans' Offered Drugs ..... 130

 G. Henry Harris Disciplinary Hearing .................. 132

 H. Lt. Mildner's Desire to Test Evans ................. 137

 I. Mildner Memo ........................................ 138

 J. Conclusion: Negligent Failure to Investigate
   and Disclose ...................................... 138

5

V.   Charge 2:   **Mismanagement and Exercising Extremely Poor Judgment Handling Cooperating Witnesses** ................................... 144

    A. Attempting to Facilitate Communication Between a Cooperating Witness and an Employee of the U.S. Attorney's Office ........................... 145

    B. Granting Cooperating El Rukn Inmates Unrestricted and Indiscriminate Access to Telephones in U.S. Attorney's Office ....................... 156

    C. Directing Subordinate Employee to Purchase Radio and Coat for Cooperating El Rukn Inmate ........... 165

VI.  Charge 3:   **Failure to Properly Supervise Subordinate Paralegal Employee Corinda Luchetta** ....... 170

    A. Allowing Inappropriate Personal Relationship with El Rukn Inmate .............................. 170

    B. Failure to Phase Paralegal Corinda Luchetta Out of El Rukn Investigation ...................... 178

VII. Charge 4:   **Failure to Maintain Proper Security of Case-Related Documents** ................ 188

VIII. Decision ........................................... 192