## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **NATHSON E. FIELDS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  10 CV 1168** |
| **v.** | ) | |
| | ) | **Hon. Matthew F. Kennelly** |
| **CITY OF CHICAGO et al.,** | ) | |
| **Defendants.** | ) | |

### CORRECTED PLAINTIFF'S (PROPOSED) MOTIONS *IN LIMINE*

Plaintiff Nathson Fields, by his attorneys, after conferring with counsel for the City Defendants and determining that the following matters are actually in dispute[1], respectfully requests an order *in limine* barring the following evidence and arguments from trial.

**1.     To Bar Expert Testimony.**

Defendants have disclosed numerous witnesses under Federal Rule of Civil Procedure 26(a)(2), which requires disclosure of any witness a party may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.  Fed. R. Civ. P. 26.

Expert testimony is admissible under Federal Rule of Evidence 702 only if the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and "the expert's scientific, technical, or other specialized knowledge will

---

[1] Plaintiff is filing this motion *in limine* according to this Court's schedule, however, Defendants have not provided counsel with their witness list despite being asked to exchange witness lists and exhibit lists on the same day that Plaintiff provided a draft of the final pretrial order (February 17th). Instead, counsel for Defendants stated they would provide those lists one week after they receive the draft pretrial order. Therefore Plaintiff anticipates upon seeing the Defendants' actual witness list that there might be other motions *in limine* they would like to file.

help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is based on sufficient facts or data, the product of reliable principles and methods, and the expert has reliably applied the principles and methods to the facts of the case. FRE 702.

Defendants' disclosures under Rule 26(a)(2)(A) include four former El Rukn members, five former Chicago Police—including the three police officer Defendants in this case—and four current and former Assistant State's Attorneys who prosecuted Mr. Fields. Defendants disclosed two additional witnesses under Rule 26(a)(2)(B)[2]. As set forth fully below, none of these proposed witnesses qualify to give opinion testimony under Federal Rules of Evidence 702, 703, and 705, and should be barred from testifying in this case.

### a. The "Expert" Testimony of Tramell Davis, Derrick Kees, Earl Hawkins, and Jackie Clay.

In the motions conference, Defendants' counsel indicated that "depending on how the evidence comes in," they intend to call Trammell Davis, Derrick Kees, Earl Hawkins and Jackie Clay as witnesses. Defendants' Rule 26(a)(2)(A) disclosures indicate that "to the extent it is determined that the witnesses' testimony is considered opinion testimony under Federal Rule of Evidence 702, 703, or 705," Davis, Kees, Hawkins, and Clay are identified as "opinion witnesses" to testify about the transcription, translation, or interpretation of the "El Rukn code" or the identity of the voices contained in recordings of Jeff Fort and others having conversations in which Mr. Fields is not a participant. Exhibit C, pp. 1-2. Even if this Court were to find that these witnesses are

---

[2] Attached hereto as Exhibit C.

qualified to "interpret" or "translate" the "El Rukn code" on these recordings, such interpretations are not relevant and do nothing to "help the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702.

The main subject matter of the offered recordings is the purported bribe of former Judge Maloney. In addition, Derrick Kees testified at Fields's Innocence Certificate hearing that his interpretation of one of the calls—regarding Anthony Sumner—was indicative of a pattern of El Rukn witness intimidation. This evidence is not relevant to any issue presented in this case. Even if the Court were to find that the wiretap recordings are even somewhat relevant, this evidence should be barred under Federal Rule of Evidence 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See generally *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986); Fed. R. Evid. 403.

Furthermore, whether there was an attempted bribe to Judge Maloney is not a "fact in issue" (See Motion 4 below). In addition, testimony of alleged witness intimidation by other El Rukns and attempting to tie such conduct to Fields without a shred of evidence runs a very serious risk of causing unfair prejudice to Mr. Fields by misleading the jury as to what is actually at issue in this case. Under Rule 403, evidence is unfairly prejudicial only if it "will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Vretta*, 790 F.2d at 655 (7th Cir. 1986). Accordingly, this evidence should be barred.

**b. The "Expert" Testimony of David O'Callaghan, Joseph Murphy, Richard Kolovitz, Daniel Brannigan, and Thomas Richardson.**

Again, "[t]o the extent any of [their] testimony is considered to be opinion testimony under Federal Rule of Evidence 702, 703, or 705," Defendants have indicated that they intend to offer the testimony of Defendants O'Callaghan, Murphy, and Brannigan. Exhibit C, pp. 2-3. Each Defendant proposes to testify about his "knowledge of the El Rukn street gang, his testimony that the Smith/Hickman homicides were consistent with the pattern and practice of El Rukn homicides and violence that he investigated as a member of the Chicago Police Department and the El Rukn Task Force, his testimony concerning El Rukn intimidation of witnesses and others, and his belief Nathson Fields committed the Smith/Hickman murders and that there was probable cause to arrest and prosecute Fields for those murders." Exhibit C, pp. 2-3. Both Kolovitz and Richardson are expected to testify about matters involving the El Rukns generally, including witness intimidation, his belief Nathson Fields committed the Smith/Hickman murders, and that there was probable cause to arrest and prosecute Fields for those murders. Exhibit C, pp. 2-3. These proposed opinions of O'Callaghan, Brannigan, Murphy, Richardson, and Kolovitz are inadmissible for at least three reasons.

First, the witnesses' purported expert opinions about the El Rukns and its various members' bad acts are not relevant to any issue in this case, and are not necessary to "help the trier of fact to understand the evidence or to determine a fact in issue."

4

Second, witnesses may not testify in the form of legal conclusions, such as "that there was probable cause to arrest and prosecute Fields," as these witnesses intend to do. Such testimony should be barred, as it is "the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As a general rule, accordingly, an expert may not offer legal opinions." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). Accordingly, the proposed testimony should be barred.

Third, to allow a Defendant and/or a fact witness to also testify as an expert witness would unfairly bolster their credibility in the eyes of the jury.

Furthermore, in order to establish their expert qualifications, Defendants will testify as to their background and experience. To the extent that Defendants will testify about commendations, awards, lack of citizen complaints, and related topics, Plaintiff moves, under Rule 403 and 404 to bar such improper bolstering. This evidence is not relevant and would amount to improper propensity evidence if allowed.  *See* Fed. R. Evid. 404(a).

Defendants' commendations are not probative of Plaintiff's allegations or any related defenses.  Evidence of this kind would serve the improper function of providing evidence of a Defendant's character for the purpose of proving action in conformity therewith.  *See Charles v. Cotter*, 867 F.Supp. 648, 659 n.6 (N.D. Ill. 1994).  Unlike proper Rule 404(b) evidence, such evidence does not go to motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.  *Id.*

### c. The "Expert" Testimony of Larry Wharrie, David Kelley, Randy Rueckert, and Brian Sexton. Bar certain opinions of State's attorneys or U.S. Attorney

Defendants have "reserved the right" to call as experts former ASAs Wharrie, Kelley, and Rueckert, and current ASA Sexton. Exhibit C, p. 4 During the motions conference, Defendants' counsel indicated that if the ASAs are asked if there was probable cause to arrest Mr. Fields, or if they are asked about the legal process, they are qualified to give expert opinions. This is not proper testimony under Rule 702. Rather, it is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As noted in section 1(b) above, it is "as a general rule, accordingly, that an expert may not offer legal opinions." *Jimenez*, 732 F.3d at 721. Accordingly, the ASAs proposed testimony should be barred.

### d. The Expert Testimony of William Allee

The Federal Rules and the *Daubert* case law provide the standard for the admissibility of expert testimony. Here, the proposed testimony of William Allee falls well short of offering any opinion admissible under Rule 702.

The admissibility of expert testimony is governed by Rule 702 and *Daubert v. Merrell Do Pharms., Inc. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Expert testimony is admissible under Rule 702 only if the witness is "qualified as an expert by knowledge, skill, experience, training, or education," "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," the testimony is based on sufficient facts or data, the

product of reliable principles and methods, and the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.

An expert's testimony must bear upon his field of expertise.  *Hall*, 93 F.3d at 1343. And so the district court, in analyzing expert testimony for admissibility, must "rule out subjective belief or unsupported speculation."  *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 613 (7th Cir. 1993) (quotation omitted).  In other words, the expert must be able to aid the jury in understanding a disputed fact at issue in the case.  *Hall*, 93 F.3d at 1342, 1343 ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.").  In general, "an expert may not offer legal opinions." *See generally Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence.  As a general rule, accordingly, an expert may not offer legal opinions.").  In short, Mr. Allee's opinion fails this test.

Mr. Allee's opinion contains more legal conclusion than expert opinion. He opines on the ultimate issue in Plaintiff's *Monell* claim: "CPD policy in this regard [providing entire case files to both prosecution and defense] is lawful and sound." Exhibit A, p.6. He opines on causation issue for the constitutional violations in the first trial: Based on this evidence, Fields's claim the police caused him to have received an unfair trial by failing to tell Fields about a bribe he was complicit in is without merit." Exhibit A, p.7.  He offers legal conclusion on *Brady* materiality: "As a result it is my

7

further opinion based of [sic] the facts of the entire case developed by law enforcement in the mid to late 1980's, that the subject file does not contain exculpatory or material information, but contains material that would have had no bearing on the outcome of this case." Exhibit A, p.10. Further, he offers opinions that are not beyond the ken of any jury member: "[T]he world is not perfect and, in my opinion, unintentional, non-conspiratorial events can and do happen." Exhibit A, p.7. Because Mr. Allee's proposed testimony falls woefully short of the requirements of Rule 702, his testimony should not be permitted.

### e. The Expert Testimony of Thomas McMahon.

Defendants' have also disclosed Thomas L. McMahon, a Chicago Police Department veteran, as an expert witness on their behalf. McMahon's report, a copy of which is attached as Exhibit B, makes clear that his purpose at trial will be to provide a history of the evils of the El Rukns in an attempt to smear the Plaintiff's character by association. His proposed testimony is not admissible under Rules 702, 404, and 403; thus, this court should bar it.

In brief, McMahon's report describes the history and structure of the El Rukns; their religious affiliation (or alleged lack thereof); their alleged "intimidation of witnesses and corruption of the judicial process," Exhibit B, p. 14; and their "violent acts and murders." Exhibit B, p. 20. At best, the report offers wildly prejudicial accounts of the prior criminal activity and other bad acts of the El Rukns while providing little or no probative value. At worst, it is a cynical attempt to introduce inadmissible hearsay,

prior crimes or bad acts, and other evidence generally inadmissible under Rules 802, 403, and 404—all under the guise of expert testimony.

In this case, Defendants seek to introduce mountains of evidence supporting the criminal activities of the El Rukns. As discussed below, most if not all of this evidence is extremely prejudicial and irrelevant to the issues in this case. See Motion to exclude Gang References below. At its core, McMahon's report indicates the Defendants' overarching strategy—to allege various evils associated with the El Rukns as a justification for their railroading Mr. Fields. In his report, McMahon seems confused as to the issues here; instead, most of it would more probative value in a case where the issue was, say, the status of the El Rukns as a religious organization. *See Faheem-El v. Lane, et al.*, 657 F. Supp. 638 (C.D. Ill. 1986). The rest of the report attempts to smear Mr. Fields by listing various crimes and other bad acts attributed to the El Rukns generally, and to Mr. Fields. Exhibit B, pp. 14-25. And throughout most of the report, it is unclear how McMahons opinions are supported, how they might be tested for their reliability, or how they might be useful to the jury in determining the Defendants' liability or damages here.

With so little probative value, McMahon's report is a good starting point to pare down the host of prejudicial evidence of gang activity. Therefore, this Court should exclude it under Rule 702, 403, and 404.

## 2.    To Bar Alleged Prior Bad Acts

### a.  Evidence of Plaintiff's 1972 Conviction.

Over forty years ago, in 1972, Mr. Fields was convicted of murder under a theory of accountability.  This conviction and the details of Mr. Fields's trial are not relevant to the issues in this case and are not admissible under Federal Rules of Evidence 402, 403, 404, or 609.  In short, evidence of this unrelated felony conviction is more prejudicial than probative.  It is not relevant for issues of liability of or damages, nor is it admissible for impeachment.

The use of Mr. Fields's prior murder conviction has no probative value at all. Rule 404 makes clear that evidence of prior crimes "is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b), *See also Kunz v. DeFelice*, 538 F.3d 667, 674 (7th Cir. 2008) (Use of evidence to illustrate "a consistent pattern of criminality…is propensity by another name…and propensity is a forbidden basis for admitting evidence.").

Here, the only relevance of Mr. Fields's prior murder conviction is to establish a propensity to commit the Smith/Hickman murder that gave rise to this suit.  This is precisely what Rule 404(b) forbids.  The purpose of Rule 404 is to exclude a type of evidence—evidence that one had previously engaged in a broadly similar criminal activity—which "tends to distract the trier of fact from the main question of what actually happened on the particular occasion."  Fed. R. Evid. 404(a) advisory committee note.  To admit the use of Mr. Fields's prior murder conviction here would be to

sanction the use of prior bad acts to prove a criminal, dishonest character in a civil case. This would erase Rule 404(b).

Yet 404(b) is not necessary to exclude the prior conviction here; irrelevant evidence of any kind is made inadmissible by Rules 402 and 403. Under the facts of this case, the possibility of jury confusion or unfair prejudice to Mr. Fields substantially outweighs the probative value of this evidence. "Evidence is unfairly prejudicial if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986). Admission of Mr. Fields's prior conviction would confuse and mislead the jury as to the main issues they must decide here: whether Defendants coerced witnesses and manipulated evidence to improperly charge and convict him of the Smith/Hickman murders.

Nor is his prior conviction relevant to the issue of damages. That Mr. Fields may have been rightly imprisoned before does not mean that his *unjust* imprisonment here was less traumatizing or painful. *See Betts v. City of Chicago*, 784 F.Supp. 2d 1020, 1025 (N.D.Ill. 2011); *Moore v. City of Chicago*, 2008 WL 4549137 *1 (N.D.Ill. Apr. 15, 2008) (plaintiff's earlier arrests may not be admitted for damages purposes in false arrest case, especially where those earlier arrests were not alleged to have been false); *Scott v. Chicago*, 724 F.Supp.2d 917, (N.D.Ill. 2010) (rejecting defendants' attempt to admit plaintiff's prior arrests for damages purposes).

Finally, the 1972 conviction is not admissible under Rule 609(b) for impeachment. Under Rule 609(b), evidence of convictions that are ten years or older are presumptively

inadmissible. *See U.S. v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) ("the purpose of Rule 609 is to ensure that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.")  Further, Rule 609 expressly incorporates the Rule 403 balancing of probative value against prejudice.  Fed. R. Evid. 609 (conviction older than ten years is admissible only if its probative value "supported by specific facts and circumstances substantially outweighs its prejudicial effect.").  No exceptional circumstances exist here; nor does the 1972 murder conviction provide any useful insight into Mr. Fields's ability to testify truthfully.  Thus, using this evidence would be attacking Mr. Fields's credibility is as inappropriate as using it to establish propensity— in either case it must be excluded.

In short, because there is no logical thread connecting Mr. Fields's 1972 murder conviction and his current relief, any reference to this more than forty-year-old conviction should be excluded under Rule 401, 403, 404, and 609(b).

### b. Evidence of False Alibi.

Mr. Fields has admitted that during his 1972 murder trial, he put on a false alibi and testified falsely in support of that alibi defense.  Fields was 18 years old at the time of his trial.  There is no permissible purpose under Federal Rule of Evidence 404(b) for which this prior bad act would be admissible at this trial.

Further, the defendants should be barred from using Mr. Fields's prior false testimony during cross-examination of Fields.  Under FRE 608(b)(1), a witness may be impeached with prior instances of conduct probative of truthfulness or untruthfulness.

"[T]his type of impeachment may nevertheless be excluded under Rule 403 ...." *United States v. Covelli*, 738 F.2d 847, 856 (7ᵗʰ Cir. 1984).

Here, Fields's prior false testimony from 1972 has very little probative value on the issue of his truthfulness or untruthfulness at this trial which is taking place more than forty years later. Fields was only 18 years old when gave his false testimony. He is now 60 years old. The fact that Fields was untruthful when he was 18 has little probative value as to his truthfulness today. Moreover, there is no evidence that Fields's decision to give false testimony in 1972 was ever repeated or is indicative of a pattern of deceptive behavior.

Despite his false testimony, Fields was convicted of murder in 1972. But his conviction was reversed on appeal because a prior statement of a witness who inculpated Fields was improperly used at his trial to impeach the witness. See *People v. Fields*, 31 Ill. App. 3d 458, 471, 334 N.E.2d 752 (1ˢᵗ Dist. 1975). Fields was retried in 1977 when he was 23 years old. At the retrial, Fields did not testify and he put on no evidence. The trial judge, sitting without a jury, found Fields guilty of murder "on the basis of his accountability for the conduct" of his co-defendant. *People v. Fields*, 65 Ill. App. 3d 278, 382 N.E.2d 337 (1st Dist. 1975).

Therefore, not only is there no evidence that Fields's false testimony in 1972 is part of any pattern of deceptive behavior, the record strongly suggests that by the time Fields had reached the age of 23 (the time of his retrial), he had already matured to the point that he was unwilling to repeat the poor decision he had made at his first trial.

For all these reasons, the defendants should not be permitted to impeach Fields with his prior false testimony from 1972.

### c. Evidence of Plaintiff's April 1985 Arrest.

Defendants should be barred from introducing any evidence regarding Fields's 1985 arrest and subsequent gun charge that was dismissed. On April 28, 1985, Fields was getting a ride home from doing repair work at one of the El Rukn buildings. The driver of the car and another passenger stopped and went to a lounge near 71st Street in Chicago. Fields waited in the car, in the front seat. When Fields exited the car to try to find out what was taking his ride so long to return, police officers pulled up, handcuffed Fields, searched the car, and found a gun in the back seat. Fields went to court, and the charge was dismissed.

The law is clear: prior arrests that do not result in convictions are inadmissible in civil rights cases. *See Gregory v. Oliver*, 2003 WL 1860270, *1 (N.D. Ill. 2003) ("Arrests that have not led to convictions are classic candidates for exclusion under [Rule] 404(b)"); *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) ("The law is clear that a defendant's prior arrest record is inadmissible, and while the reference to Anderson's past arrest was only indirect, it was still improper."); *Brandon v. Vill. Of Maywood*, 179 F.Supp. 2d 847, 853-55 (N.D. Ill. 2001) (carefully considering and rejecting arguments for admission of arrest record); *cf. Earl v. Denny's, Inc.*, 2002 WL 31819021, at *8 (N.D. Ill. Dec. 13, 2002) ("[a] jury may deny plaintiff a verdict and an award, not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to

do with the events in question.  That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent.").

Any evidence regarding this prior arrest or any events surrounding the arrest are not relevant to the issues in this case and is not admissible under Rule 403 and 404. The potential prejudice of this evidence far outweighs any probative value it might provide.

### 3.  To Bar References to the Criminal Activity and History of the El Rukns

References to gang membership are generally inadmissible in §1983 cases because of the extreme danger of undue prejudice associated with this highly inflammatory evidence.  In short, the core issue at this trial is whether the Defendants violated Mr. Fields's constitutional rights at his criminal trials by obtaining bogus witness testimony and withholding these and other exculpatory details and materials.

The Seventh Circuit has repeatedly stressed "the insidious quality" of evidence of gang membership as well as "the damage it can do." *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996).  Evidence of gang membership is inflammatory and highly prejudicial. *See United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004).  It may lead the jury to "attach a propensity for committing crimes to [those] who are affiliated with gangs," and so "[g]uilt by association is a genuine concern whenever gang evidence is admitted." *Id.* at 1018 (quoting *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 2004).  Because of this "substantial risk of unfair prejudice attached to gang affiliation evidence," courts must closely scrutinize its admissibility. *Irvin*, 87 F.3d at 865.

Applying this case law, courts in this district frequently bar references to gangs in Section 1983 cases. *See Charles v. Cotter*, 867 F. Supp. 648, 657-58 (N.D. Ill. 1994) (finding that evidence of plaintiff's gang affiliation "is unfairly prejudicial insofar as it encourages the inference that [he] is an evil and menacing person" and that this "prejudicial effect of [his] gang affiliation substantially outweighs its probative value"); *Finley v. Lindsay*, 199 WL 608706, at *1-*2 (N.D. Ill. Aug. 5, 1999); *Lopez v. City of Chicago*, 2005 WL 563212, at *5 (N.D. Ill. Oct. 9, 2001) (excluding gang references as "enormously and unfairly prejudicial" under Rule 403); *Brown v. Joswiak*, 2004 WL 407001, at *1 (N.D. Ill Feb. 24, 2004) (barring without objection all references to "evidence or testimony concerning the gang affiliation or tattoos of [plaintiff] or his witnesses"). In each of those cases, the court properly held that gang evidence was too inflammatory and unfairly prejudicial.

This case warrants a similar conclusion. The criminal acts, structure, and history of the El Rukns have little probative value here, yet pose a serious threat of unfair prejudice. When the relevant murders occurred nearly thirty years ago, it is true that some of the witnesses in the case were members of El Rukns. This includes Mr. Fields. And while this may have motivated the Defendants to fabricate and withhold evidence at Mr. Fields's criminal trial, their motivations for this illegal behavior are irrelevant. Therefore, any reference to the El Rukns at trial should be limited to only the evidence that is absolutely necessary for the jury to fairly consider the relevant issues of Defendants' liability here.

At the motions conference, however, Defendants' counsel stated their position that evidence of the El Rukns' history and criminal activity, as well as Mr. Fields's prior affiliation with the gang, is a "huge part of this case." In addition to testimony regarding the general insidiousness of the El Rukns—evidence unrelated to Mr. Fields beyond his general association with them thirty years ago—Defendants seek to introduce evidence alleging that the El Rukns' alleged drug trafficking, witness intimidation, bribery, extortion, violence, weapons trafficking, racketeering, terrorism, and more. None of it is admissible here.

In sum, the bulk of this evidence supports a cynical attempt to justify the alleged constitutional violations with reference to the alleged evils of the El Rukns. Should the Defendants be allowed to pursue this strategy, the prejudicial effect of this evidence would be incurable. Therefore, this Court should bar any and all unnecessary references to street gangs as well as the specific evidence discussed above.

**4. To Bar Irrelevant and Prejudicial Evidence of the Maloney Bribe.**

While the fact that Fields's co-defendant and/or his lawyer attempted to bribe Judge Maloney is not in dispute, the details of the bribe, which the Defendants seek to introduce through voluminous wiretap evidence and extensive witness testimony, is irrelevant and should be excluded.

Mr. Fields does not contest the admissibility of some evidence involving the bribe: (1) during his initial trial for the Smith/Hickman murders his codefendant's lawyer, William Swano attempted to bribe Judge Maloney via an intermediary, Bob McGee; (2) Fields had no knowledge of the bribe until Judge Maloney was later indicted

for it; (3) FBI surveillance of Maloney, coupled with the strength of the State's case, prompted Maloney to return the bribe; (4) the prosecution knew of the bribe attempt at or near the time of the trial; (5) Maloney subsequently found Fields and Hawkins guilty and sentenced them to death; and (5) Fields's conviction was overturned and he was granted a new trial after evidence of the bribe came to light. However, any additional evidence of the bribe has no probative value here, and its potential prejudice—namely, jury confusion and waste of time—outweighs any probative value it may have in explaining the reasons for overturning Fields's initial conviction.

The Defendants' disclosures indicate that they intend to introduce four "expert" witnesses to support and "translate" recordings, transcripts, and "translations" of Title III wiretaps produced (Plaintiff assumes, as no chain of custody for these wiretaps has been disclosed here) in the course of the FBI surveillance of Judge Maloney.

For this evidence to have any probative value at all, it would have to support the argument that the bribe was the but-for cause of Mr. Fields's conviction. This argument is misguided. There is no evidence to support the argument that Judge Maloney decided to convict Nathson Fields because Earl Hawkins's lawyer attempted to bribe him. The only relevant evidence is that Swano attempted to bribe Maloney through McGee, McGee initially accepted the bribe, and then returned the bribe, indicating that Maloney believed that the State's case was too strong for him to follow through with the scheme. If anything, this evidence tends to support the inference that Maloney decided to convict *despite* the bribe, not because of it. Thus, if the events surrounding the bribe have probative value at all, it would be to show that the strength of the prosecution's

case—not the bribe itself—caused the conviction. Simply because Maloney's decision to convict may have occurred around the same time that he decided to return the bribe does not indicate that the bribe caused the conviction in any way; rather, it tends to support the opposite conclusion.

Yet however useful this evidence might be in supporting Fields's claim that the Defendants' civil rights violations caused his conviction, the events surrounding the bribe are extremely prejudicial. This risk of prejudice outweighs any probative value it might have; thus, this Court should exclude it. First, the evidence risks unfair prejudice: it may lead the jury to decide, on a purely emotional basis, that the harm to Mr. Fields was somehow justified by the illegal acts of his codefendant's lawyer. More, the evidence risks confusing the issue of causation with the already complex issue of materiality under *Brady*. The risk confusion and bias will be even greater if the causation issue is perceived to turn on, say, whether the Defendants due process violations prevented Hawkins and Swano from successfully bribing Maloney. Unpalatable, indeed. Finally, determining extent to which this evidence supports or damages either parties' theory of causation will require an extensive inquiry into the events surrounding the bribe. This inquiry is a waste of time. *See generally Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1988) (Rule 403 applies to evidence that risks a "trial within a trial" that would waste time, confuse the issues, and have only slight probative value).

But even more troubling, Defendants' seek to introduce evidence that has even less probative value and even more prejudicial effect—namely, evidence (1) to suggest

that Fields had some hand in the bribe, and (2) to sneak in irrelevant and highly prejudicial evidence of the El Rukns' prior bad acts.

First, evidence of Fields's involvement with the bribe is tenuous at best. But this theory of Fields's hand in the bribe is not new, and a brief sketch of its development over the previous thirteen years is useful to understanding how little probative value it provides. During Mr. Fields's retrial, the trial court denied the bribery evidence because there was no testimony linking Mr. Fields to the bribe, and the appellate court affirmed. *See People v. Hawkins*, 326 Ill.App.3d 992, 998-999 (2001) (first interlocutory appeal). Hawkins, however, was not so fortunate; the appellate court held that the evidence of his involvement was admissible. *Id.* at 995-998. So, Hawkins entered into a plea agreement; he agreed to testify that he had discussed the details of the bribe with Mr. Fields and their lawyers; and the prosecution dropped the murder charges against him. *See People v. Fields*, 357 Ill.App.3d 780 (2005). After this deal, the State renewed its motion to admit bribery evidence; the trial court denied it; and the appellate court affirmed. *See Id.*

Now the Defendants ride the same weary argument, claiming that any such evidence—however tenuous or speculative—is relevant to demonstrate Mr. Fields's consciousness of guilt. Their efforts should fail. To defend the tangential issue of his involvement in the bribe, Fields would have to put on a host of immaterial evidence simply to convince the jury that he was not personally responsible for the bribe. But to do so here would require a "trial within a trial" concerning his alleged involvement in a bribery scheme that is relevant—if at all—to the very limited issue of causation. *See*

*Jones,* 869 F.2d at 1027 (excluding evidence that risks a "trial within a trial" and has only slight probative value). And even if relevant, probity of this evidence supports only Fields's claims regarding causation—not Defendants'. Thus, the scant evidence of Fields's alleged involvement with the bribe is not enough to outweigh its extreme prejudicial effect.

Moreover, the Defendants seek to stretch this "trial within a trial" to include the full scope of the El Rukns' attempted bribe of Judge Maloney. The Defendants' Rule 26(a)(2)(A) disclosures list Trammell Davis, Derrick Kees, Earl Hawkins, and Jackie Clay as "expert" witnesses to support the "admissibility of the Title III wiretaps…bates stamped 1 through 440," to act as "El Rukn code" translators, and to identify voices on the wiretaps. See Exhibit C. At best, their testimony purports to be an irrelevant rehash of the evidence from *U.S. v. Maloney* and Fields's post-conviction proceedings in their entirety. At worst, it seeks to conflate the character and prior acts of the entire El Rukn street gang with those of Mr. Fields.

In sum, the probative value of the evidence described above is outweighed by its extremely prejudicial effect; therefore, this Court should limit introduction of any evidence of the bribe to the limited circumstances described at the outset of this section.

**5.     To Bar Evidence Regarding Certain Legal Actions filed by Plaintiff or Potential Witnesses.**

While in prison, Mr. Fields filed several lawsuits regarding prison conditions. Neither the City of Chicago nor any of the police officer Defendants were parties to any of this prior litigation. Therefore, any evidence offered on this subject would have no probative value in this matter and would be solely offered to insinuate that Mr. Fields

21

was overly litigious.  The prejudice this evidence presents substantially outweighs any alleged probative value; thus, this Court should bar it under Rule 403 and 404**.**

**6.      To Bar Any Argument that Plaintiff Threatened Any Witness in this Case or Others.**

Defendants have listed several witnesses who have alleged intimidation by El Rukns, but not involving Mr. Fields. Defendants have not presented any evidence to suggest that Fields was even aware of any alleged intimidation, and cannot make arguments not supported by the evidence.  Absent evidence to support this allegation, Defendants should be barred from making insinuations that Mr. Fields threatened any witness in this or any other case.

**7.      To Bar References to Disciplinary Infractions Received by Plaintiff While Incarcerated.**

Mr. Fields's Illinois Department of Corrections records show that he received various disciplinary infractions during his incarceration.  None of these administrative dispositions are relevant at trial.  Even if they were probative here, the resulting prejudice would far outweigh any probative value, and so they should be barred.

WHEREFORE, based on the foregoing, Plaintiff Nathson Fields respectfully requests respectfully requests that this Court enter an order granting his motions *in limine*.

Respectfully submitted,


/s Melissa A. Matuzak
MELISSA A. MATUZAK

Leonard C. Goodman
Melissa A. Matuzak
Andrew D. Finke
53 W. Jackson Blvd., Suite 1650
Chicago, IL 60604
312-986-1984

H. Candace Gorman
220 S. Halsted, Suite 200
Chicago, IL 60661
312-427-2313

<u>**CERTIFICATE OF SERVICE**</u>

I, MELISSA A. MATUZAK, certify that in accordance with FED. R. CRIM. P. 49, LR5.5, and the General Order on Electronic Case Filing (ECF), CORRECTED Plaintiff's Proposed Motions in limine**,** was served pursuant to the district court's ECF system as to ECF filers, on February 21, 2014, and if any, were sent by first-class mail or by hand deliver to non-ECF filers.

<u>s/ Melissa A. Matuzak</u>

Melissa A. Matuzak
53 West Jackson Boulevard
Suite 1650
Chicago, Illinois 60604
(312) 986-1984