IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 1168 |
| ) | |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTIONS IN LIMINE**

In this order, the Court rules on plaintiff's motions *in limine*.

By way of introduction, the Court now confirms its stated intention to bifurcate the trial as between liability and damages. The basis for bifurcation is that there is some evidence but that is properly admissible on the question of damages but that has limited or no relevance as to liability and that would lead to significant unfair prejudice if admitted while the jury is considering liability.

1a. Motion 1a, in which Fields seeks to preclude testimony "translating" coded language on recorded conversations among El Rukn gang members, is moot given the Court's exclusion of the recorded conversations.

1b. Motion 1b is addressed below, together with motions 1e and 3.

1c. The Court denies, to the extent described at the pretrial conference, Fields's motion to bar expert / opinion testimony by the identified present and former Cook County prosecutors, in light of the limited subject matter areas of such testimony described by defense counsel at the conference. In particular, they may testify

regarding how the "felony review" process works, their involvement in interviewing witnesses, and what evidence they relied on to approve the charges against Fields. The Court wishes to reemphasize, however, its rulings pursuant to Rules 401-03 regarding the inadmissibility of opinions regarding the credibility of various witnesses and on the ultimate issues of probable cause and materiality, including testimony regarding whether the prosecutors believe that certain evidence or information would have made a difference in the outcome of the proceedings in question. Any doubts that counsel might have regarding the parameters of the Court's ruling in this regard are to be resolved by seeking particularized guidance from the Court before attempting to introduce the evidence.

   1d. With regard to plaintiff's motion 1d, concerning defendants' expert William Allee, the Court incorporates its ruling on defendants' motion *in limine* 7 and its extensive comments at the pretrial conference on the issues raised by that motion and plaintiff's motion *in limine* 1d. In addition, Allee may not appropriately testify regarding the "lawfulness" of policies or practices, though he may testify regarding what is and is not appropriate as a matter of proper police practice. He may not testify regarding materiality or whether information is "exculpatory" (*see* further discussion in connection with defendants' motion 7), and the opinion set forth in the first full sentence on page 8 of plaintiff's motion (beginning with the word "[f]urther") is likewise excluded.

   1b, 1e & 3. Fields has moved to bar the testimony of Thomas McMahon as an expert for the defendants. McMahon is a retired Chicago police captain with significant background and expertise in Chicago street gang activity, including with respect to the El Rukns. There is no question that McMahon has a sufficient basis to testify about the

El Rukns. Fields's objection does not concern McMahon's degree of expertise but rather the subject of his testimony. Fields separately (in motion *in limine* 3) seeks to preclude other evidence regarding the criminal activities and history of the El Rukns. Relatedly, Fields seeks to preclude opinion testimony that defendants propose to offer via the individual police officer defendants and other previously named police officers.

McMahon's report reflects that he proposes to give testimony regarding the history of the El Rukns going back to the 1960s and their organization and hierarchy; the general scope of the gang's criminal activities; and the details of crimes and resulting charges against the gang's leader Jeff Fort in Mississippi and Chicago in the early 1980s. McMahon also proposes to testify regarding the arrest of Anthony Sumner in 1985 and his resulting cooperation with federal authorities; the approval of federal wiretaps on telephones used by the El Rukns and the gang members' use of coded language to permit Fort to continue running the gang from prison. McMahon's report also describes in detail proposed testimony regarding Fort and other El Rukn members' participation in a terrorist conspiracy with the Libyan government. There is no indication or claim in McMahon's report that Fields was involved in any of this activity.

McMahon also proposes to summarize criminal activity claimed to have been undertaken by Fields, including the murder that led to a 1972 charge against him and resulting conviction, as well as the Smith/Hickman murders. McMahon also identifies Fields's alleged role or rank in the gang and describes sorts of illegal activities El Rukn members with that rank typically did and were expected to do.

Defendants also offer McMahon's testimony to establish that the El Rukns were a violent street gang and not a peaceful religious organization. He offers detailed

3

renditions of several murders and other violent acts, not claimed to have involved Fields, undertaken by gang members. McMahon also describes in detail incidents involving intimidation of witnesses by El Rukns in other matters likewise not involving Fields, and retaliatory activity against gang members who cooperated with law enforcement. He also proposes to give testimony regarding the bribery of Judge Maloney in the *People vs. Hawkins and Fields* case.

McMahon's report includes, as part of his opinions and the basis for them, detailed descriptions of ten violent acts and murders not claimed to have involved Fields, as well as one in which Fields is claimed to have "stalked" the victim, though not to have participated in the violent acts against him.

McMahon's report summarizes his ultimate conclusions as follows:

It is my opinion that the El Rukns are and have been a ruthless criminal street gang that operated solely for the benefit of its leader, Jeff Fort, and themselves. The El Rukns held entire neighborhoods in fear from the 1960's through the late 1980's. They controlled these areas through fear and intimidation while deriving an income from narcotic sales. The Smith/Hickman murders are consistent with the pattern and practice of multiple other El Rukn murders and were intended to solidify their power over their territory for the benefit of their drug operation. I base these opinions from personal investigations conducted while assigned to Gang Crimes South, and the debriefing of confidential informants, victims and witnesses. Additionally, these opinions were derived from numerous reports not limited to reports from the Chicago Police Department, statements and testimony from previous court cases, books and periodicals that I have used in my teaching career, and statements from other police officers assigned to Gang Crimes South.

It is my further opinion that the El Rukns used Islamic trappings in an attempt to show that the gang had become a religious organization. This was done for the purpose of keeping law enforcement form further investigating the gang under their first amendment rights as a religion.

The fact that Nathson Fields has been identified by numerous cooperating individuals from within the El Rukn street gang as a "lawman," mission team member, and then a General, that he participated in a number of

> murders or attempt murders, and that Jeff Fort allowed Fields to run an important building "security" for the El Rukns, is further proof that Fields had a position of authority and trust in the El Rukns, as he admitted to the police and in deposition in this case  It has been my experience that Jeff Fort would only allow his most trusted loyal underlings to have such a position.  Fields due to his position in the gang would have knowledge of the criminal activity of the gang, of the narcotic sales and of the weapons held by the El Rukns.

Pl.'s Mot. *In Limine*, Ex. B at 25-26.

McMahon's opinions have limited probative value, and many of them have no probative value at all with regard to the claims and defenses in this case.  Fields's claims involve allegations that in connection with the murder charges against him, the defendant police officers concealed exculpatory evidence and fabricated inculpatory evidence and that they caused him to be prosecuted despite the absence of probable cause.  These allegations focus on the murder charges against Fields for the Smith/Hickman and Vaughn/White murders.

McMahon's opinions have little to do with those matters, except to the extent that defendants seek to use his opinions to expand the case into a trial involving the full scope of criminal activity engaged in by the El Rukns.  That, however, is not what the present case involves.  It is not the trial of the El Rukns, nor is it a trial on charges or claims that mirror the wide-ranging racketeering and conspiracy charges that the federal government brought against El Rukn members in the 1980s.  Rather, it is a trial of due process and malicious prosecution claims concerning criminal charges against Fields for two particular double murders.

Defendants argued strenuously at the hearing on the motions *in limine* that evidence about the El Rukns' criminal activities "corroborates our theory of the case," or words to that effect.  That does not suffice as a basis to find that McMahon's opinions or

5

the criminal conduct that he cites have any significant probative value with respect to the claims or defenses in this case. Were the Court to accept defendants' argument, it would be tantamount to saying that a party may, in effect, end-run the rules barring irrelevant evidence and evidence whose unfairly prejudicial (etc.) effect significantly outweighs its probative value, simply by framing a theory of the case broadly enough to encompass evidence that otherwise would not be properly admissible. That is not the law.

In addition to having limited probative value, McMahon's testimony would cause enormous unfair prejudice to Fields and would take the jury down a very long sidetrack that would have a great potential to cause undue jury confusion. Further, the jury would be drawn toward assessing whether Fields was a bad person associated with a violent street gang, as opposed to considering the actual claims he has made. It would be a considerable understatement to say that all of this significantly outweighs the probative value of the evidence. Rather, it would be closer to the mark to say that the potential for unfair prejudice, waste of time, jury confusion, etc. *wildly* outweighs the probative value of the testimony offered by McMahon.

It is fair to assume that some El Rukn-related evidence will and may properly be admitted (through witnesses other than McMahon) to explain the Smith/Hickman and Vaughn/White murders and the basis for the charges against Fields in those matters, and, to some extent, to describe the background of and deals made by the El Rukn witnesses who will testify at trial. In addition, it would appear to be appropriate for defendants to elicit, by way of background, a brief and general description of the existence of the law enforcement El Rukn task force and the fact that it was established

to investigate a street gang believed to be engaged in narcotics dealing and other illegal and violent activities, albeit without reference to specific activities or crimes. All of this will result in the admission of a reasonably significant amount of El Rukn-related evidence, in a way that focuses on the issues the jury actually will be called upon to decide. And defendants will be able to argue the reasonable and legally appropriate inferences from this evidence. But this is the extent of El Rukn-related evidence not directly related to Smith/Hickman and Vaughn/White that is properly admissible.[1]

For these reasons, the Court excludes McMahon's testimony pursuant to Federal Rule of Evidence 403. For the same reasons, the Court grants Fields's motion *in limine* 3, concerning evidence regarding the criminal history and activity of the El Rukns, except to the extent specifically set forth in the discussion above. Again, any doubts regarding the parameters of the Court's ruling are to be resolved by seeking particularized guidance from the Court before attempting to introduce the evidence.

In motion 1b, Fields seeks to preclude certain identified opinion testimony by the named defendants and perhaps other police officers. Each defendant proposes to testify regarding his

> [a] knowledge of the El Rukn street gang, [b] his testimony that the Smith/Hickman homicides were consistent with the pattern and practice of El Rukn homicides and violence that he investigated as a member of the Chicago Police Department and the El Rukn Task Force, [c] his testimony concerning El Rukn intimidation of witnesses and others, and [d] his belief [that] Nathson Fields committed the Smith/Hickman murders and that there was probable cause to arrest and prosecute Fields for those murders.

---

[1] Unless, of course, Fields opens the door to admission of additional El Rukn-related evidence. The Court cautions defendants, however, to seek advance guidance from the Court in this regard.

7

Pl.'s Mots. *In Limine*, Ex. C at 2-3. Consistent with the discussion above, and for the reasons discussed, the Court bars testimony regarding topics a, b, and c in this disclosure, pursuant to Rule 403. Defendants may, however, testify regarding their belief that probable cause existed to arrest and prosecute Fields. This is relevant on the issue of malice, which is an element of Fields's malicious prosecution claim.

        1f.      Though there is no motion *in limine* entitled 1f, there was discussion at the final pretrial conference regarding the appropriateness of certain testimony by Assistant U.S. Attorney William Hogan, the lead prosecutor in the federal El Rukn racketeering cases. Plaintiff's primary concern appeared to be any attempt to use Hogan to vouch for the defendants or for the credibility of El Rukn cooperating witnesses who will also testify in the present case, such as by testifying that their testimony was accepted by juries who convicted other El Rukns. It should go without saying that testimony along those lines would be inappropriate.

When the Court asked defendants to describe the subjects they propose to cover with Hogan's testimony, they listed the following: a) the process of creating the transcripts of the recorded conversations previously discussed; b) prior consistent statements of certain El Rukn cooperators, to rebut claims they were coerced or influenced to give certain testimony (that is as specific as defendants' summary got); c) an explanation of Earl Hawkins' grand jury testimony in which he falsely adopted a statement that Fields was involved in the Vaughn/White murders; d) the fact that El Rukn cooperators were interviewed by federal law enforcement authorities separately, not together; e) the trial of Judge Maloney; and f) the fact that Hogan was lead prosecutor in the federal El Rukn cases, the timeline of the investigation that led to

those cases, the existence of the law enforcement task force, the role of the defendant police officers in the investigations, and testimony by El Rukn cooperators.

This is an extensive and potentially wide-ranging list of topics, and without further details the Court cannot be expected to render a pretrial ruling on each bit of proposed testimony. The Court can and will, however, address these topics to the extent reasonably possible.

- Topic a) listed above is now out of bounds, given the Court's ruling excluding the tape transcripts.

- Evidence of a prior consistent statement is admissible only if the party offering it meets the requirements of Federal Rule of Evidence 801(d)(1)(B) or shows some other basis for admitting an out-of-court statements. Defendants will have to lay the foundation for admissibility on any such prior statements before the Court will admit them.

- The Court is now familiar, via its review of Hawkins's deposition and certificate of innocence hearing testimony, of the episode regarding his false attribution to Fields of involvement in the Vaughn/White murders. The Court believes that testimony by Hogan to explain this is relevant, though defendants still must satisfy the requirements of the hearsay rule.

- Topic d) would appear to relevant and admissible. To be clear, however, this does not, without more, permit Hogan to testify regarding the *contents* of statements given by the cooperators during their interviews and debriefings.

- The Court does not see why or how anything regarding the indictment or trial of Judge Maloney can properly be admitted beyond the limited topics

9

addressed in the section of the Court's ruling on defendants' motions *in limine* concerning judicial notice. In particular, Hogan may not testify regarding evidence that was elicited at Maloney's trial, because that would be inadmissible hearsay.

- Hogan may appropriately testify regarding the defendant police officers' participation and role in the El Rukn law enforcement task force. This, however, does not authorize testimony that amounts to vouching for their veracity or credibility or other testimony that would amount to inadmissible character evidence. *See* Fed. R. Evid. 404(a)(1) & (b)(1). With regard to the other points described at the pretrial conference as summarized in topic f) above, the Court is concerned that testimony along these lines may run afoul of the Court's rulings regarding the admissibility of other criminal activity by the El Rukns. Before offering such evidence via Hogan, defendants must make a detailed proffer of what they propose to cover so that the Court may rule on it before the jury hears it.

2. Fields's 1972 murder conviction is inadmissible to impeach his credibility. As discussed more completely at the pretrial conference, this forty year old conviction does not meet the test for admissibility for convictions more than ten years old, because its probative value for impeachment purposes does not "substantially outweigh[ ]" its prejudicial effect. Fed. R. Evid. 609(b)(2). The Court notes, in this regard, that the Seventh Circuit has stated that a murder conviction has even less probative value for impeachment purposes than a conviction for possession of stolen property. *See Barber v. City of Chicago*, 725 F.3d 702, 714-15 (7th Cir. 2013).

The conviction is likewise inadmissible to attempt to show a pattern of behavior or any of the other purposes authorized with regard to other act evidence under Federal Rule of Evidence 404(b). Defendants' arguments regarding this point are unpersuasive.

Defendants also offered four other purposes for which they contend the 1972 murder conviction is admissible. The Court overrules their argument that the conviction explains why Fields was purportedly chosen by the El Rukns to carry out the Smith/Hickman murders. Defendants contended that Hawkins's testimony would show that Fields was chosen because he had been in prison and was thus unknown in the area at the time. Fields's earlier incarceration (which, according to Hawkins, ended about 18 months before the events in question, *see* Hawkins Hrg. Tr. 62) is not needed to establish his relative unknown status in the area. Thus the evidence that Fields was incarcerated, not to mention the reason for his incarceration, has limited probative value. This is far outweighed by the danger for unfair prejudice that would result from the admission of this evidence during the liability phase of the trial.

Defendants also argued at the hearing that they wished to introduce logs from Stateville prison listing Henry Andrews, Trammel Davis, and perhaps others, listing them as authorized visitors for Fields. They contended this evidence shows a preexisting relationship with Fields prior to the murders, in which these other individuals are also alleged to have participated. Even if so, this would not warrant admission of the reason why Fields was in prison. Upon detailed questioning by the Court, however, defendants conceded that they cannot show that Fields put the other men's names on his list—their names are evidently in different handwriting than that used to list Fields's relatives—and there is no evidence of actual visits by these individuals. Thus

11

defendants are unable to lay the foundation for admissibility for this purpose.

Defendants also contend the evidence of Fields's earlier incarceration is admissible as tending to rebut his claim that he suffered significant emotional distress, including post-traumatic stress disorder, from his incarceration as a result of the defendants' conduct. That is a damages-only issue. Given the Court's bifurcation of liability and damages, this would not warrant admission of Fields's earlier conviction or incarceration at the liability phase of the trial. The Court notes that with regard to damages, though the fact and length of incarceration might be relevant—a question the Court need not decide definitively at this point—defendants' argument would not appear to warrant admission of the nature of the offense for which Fields was previously incarcerated.

Finally, defendants argue that the 1972 murder conviction is admissible because it was offered in aggravation at the penalty phase of Fields's 1986 trial for the Smith/Hickman murders and tends to show the lack of materiality of evidence regarding the Smith/Hickman and Vaughn/White murders in connection with the imposition of the death penalty. At this point, because the parties have not provided with the motion *in limine* exhibits the entire transcript of the penalty phase, the Court is unable to assess the probative value of the 1972 conviction in this regard or weigh it against any danger for unfair prejudice. The parties are directed to promptly submit the entire transcript of the penalty phase (or identify where the Court can find it, if the entire transcript is among exhibits previously submitted for some other purpose), so that the Court can complete its assessment of this issue. The evidence may not be offered or mentioned at trial until the Court has made a ruling on its admissibility.

There is one additional topic included in Fields's motion *in limine* 2. At the pretrial conference, the Court denied that motion to the extent that Fields sought to bar evidence that he admitted giving false alibi testimony at his trial on the 1972 murder charge and evidence that he knew prior to that trial that certain other witnesses would give false testimony to support his false alibi and yet allowed them to so testify. This evidence is, to be sure, very remote in time from the current trial and significantly remote in time even from Fields's 1986 trial. As more fully described at the pretrial conference, however, the Court concluded that the potential for unfair prejudice was not strong enough to substantially outweigh the probative value of this evidence of false testimony. The admissibility of this evidence, however, does not authorize defendants to elicit testimony regarding the nature of the charge against Fields, i.e., that it was a murder charge or a charge for a violent crime. There is a significant risk that the jury would draw a conclusion, impermissible under Federal Rule of Evidence 404, that because Fields was found guilty of the 1972 murder, he likely committed the murders at issue in this case. Given the similarity of the underlying charges, this unfair prejudice cannot adequately be avoided by limiting instructions to the jury. For these reasons, defendants may elicit only that the events involving the false alibi took place when Fields was on trial in 1972 for a crime.

Defendants' contention that Fields has continued to misrepresent his role in the murder underlying the 1972 case or other matters concerning that case is of no consequence. The underlying matter is inadmissible, and evidence that Fields has lied about it is collateral and is appropriately excluded under Federal Rule of Evidence 403. The unfairly prejudicial nature of the evidence significantly outweighs the probative

13

value of Fields' alleged untruthfulness regarding those events. In addition, admission of this evidence likely would result in a time-wasting and jury-diverting trial-within-a-trial regarding the 1972 murder, which is not implicated in Fields's claims in this case or the defenses to those claims.

      4.      Fields has moved to preclude certain evidence relating to the bribery of Judge Maloney. To the extent that Fields seeks to exclude *all* evidence relating to the bribe—which does not appear to be the intent of his motion, *see* Pl.'s Mots. *In Limine* at 17-18—the Court denies the request. If nothing else, evidence regarding the bribe bears, as defendants argue, on the issue of materiality as it relates to Fields's federal constitutional claims.

In a separate ruling, the Court has precluded evidence from the El Rukn telephone wiretaps that concerns the bribery but has made it clear that Earl Hawkins appropriately may testify regarding conversations regarding the bribe and its return that he says took place in Fields's presence. The Court has also ruled that Judge Maloney's conviction on charges relating to the bribe is a proper subject of judicial notice.

Beyond these points, it is not entirely clear to the Court what evidence defendants propose to offer relating to the bribery of Maloney, Maloney's return of the bribe money, and other related events. It does appear from defendants' response to Fields's motion that they wish to offer statements contained in petitions and briefs that Fields filed in the effort to overturn his conviction on the Smith/Hickman murder charges. The Court notes that, contrary to defendants' suggestions, these statements do not indicate Fields's contemporaneous knowledge of the bribe and thus cannot be argued or used for that purpose. But certain of these statements (though, of course, not

the entirety of the court filings in which they were made) do appear to the Court to be relevant on the question of materiality and properly admissible under Federal Rule of Evidence 801(d)(2)(A) as statements of an opposing party.[2]

    5, 6, and 7. The Court has not yet completed its review of Fields's motions *in limine* 5, 6, and 7. Until the Court rules on these matters, they may not be offered in evidence or referenced in argument.

                                                                                              MATTHEW F. KENNELLY
                                                                           United States District Judge

Date: March 9, 2014

---

[2] In this regard, the Court refers in particular to the statement block-quoted by defendants on page 18 of their response to plaintiff's motions *in limine*; the quote from paragraph 40 of plaintiff's third amended complaint in the present case quoted by defendants on page 19 of their response; and the quote from plaintiff's 1997 Illinois Supreme Court brief quoted by defendants on page 21 of their response.