```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


NATHSON E. FIELDS,                  )    No. 2010 C 1168

              Plaintiff,            )    February 18, 2014

       v.                           )    10:00 a.m.

CITY OF CHICAGO, et al.,            )

              Defendants.           )


           TRANSCRIPT OF PROCEEDINGS - MOTION
          BEFORE THE HON. MATTHEW F. KENNELLY


APPEARANCES:

On behalf of Plaintiff:   MR. LEONARD C. GOODMAN
                          MS. MELISSA A. MATUZAK
                          53 West Jackson Boulevard, Suite 1650
                          Chicago, Illinois 60604
                          (312) 986-1984

                          MS. H. CANDACE GORMAN
                          Law Office of H. Candace Gorman
                          220 South Halsted Street, Suite 200
                          Chicago, Illinois 60661
                          (312) 441-0919

On behalf of Defendants:  MR. DANIEL M. NOLAND
                          MR. PAUL A. MICHALIK
                          DYKEMA GOSSETT PLLC
                          10 South Wacker Drive, Suite 2300
                          Chicago, Illinois 60606
                          (312) 627-2302



                MICHAEL P. SNYDER, FCRR
                  Official Court Reporter
               United States District Court
          219 South Dearborn Street, Room 2244A
                  Chicago, Illinois 60604
                      (312) 435-5563


         MICHAEL P. SNYDER, Official Court reporter
```

| | |
|---|---|
| 1 | THE CLERK: 10 C 1168, Fields versus City of Chicago. |
| 2 | MS. GORMAN: Good morning, Your Honor. Candace Gorman |
| 3 | for Mr. Fields. |
| 4 | MR. GOODMAN: Leonard Goodman for Mr. Fields. |
| 5 | MS. MATUZAK: Melissa Matuzak for Mr. Fields. |
| 6 | MR. MICHALIK: Paul Michalik for the City of Chicago |
| 7 | defendants. |
| 8 | MR. NOLAND: Dan Noland for the City defendants. |
| 9 | THE COURT: Okay. I'm looking at the motion for |
| 10 | reconsideration or clarification, and I just have to confess I |
| 11 | don't understand it. I just don't get it. I mean, to the |
| 12 | extent that you're basically saying I was wrong, well, tough, I |
| 13 | was wrong. That's what courts of appeals are for. |
| 14 | And, by the way, you didn't cite any cases. I found |
| 15 | Singleton. Nobody cited anything. You filed, you made this |
| 16 | argument; you didn't cite a single case, okay? And you really |
| 17 | don't cite anything now other than, you know, two old cases |
| 18 | which, quite honestly, I'm not sure they are on point because |
| 19 | one talks about the unenforceability of an agreement to |
| 20 | compensate a witness, which is not the relief you're asking |
| 21 | for, and the other one, the circumstances are I think quite |
| 22 | different. |
| 23 | So putting that aside, it's not clear to me what else |
| 24 | you're even asking me for. So can you give it to me in a |
| 25 | nutshell? |

MICHAEL P. SNYDER, Official Court reporter

1  MR. GOODMAN: Yes, Judge. I agree there's not a lot
2  of case law out there, and I don't believe this is a very
3  common situation. You know, we have a situation where in 2012
4  and 2013 the State offered deals --
5  THE COURT: Right.
6  MR. GOODMAN: -- that reduced prison sentences in
7  exchange for testimony implicating Mr. Fields in criminal
8  activity.
9  THE COURT: Right. But that wasn't the City.
10  MR. GOODMAN: I understand that. That was a long --
11  THE COURT: What are you asking me to do against the
12  City defendants?
13  MR. GOODMAN: Well, I think our concern is, Judge,
14  that if the City is going to call those witnesses, those
15  particular witnesses --
16  THE COURT: Yes, which presumably you are, right?
17  You're going with these people?
18  MR. GOODMAN: -- and ask them to repeat that
19  testimony, I think there needs to be some assurance that they
20  are not going to take advantage, what we believe --
21  THE COURT: What does that mean, take advantage?
22  That's the part I don't get. In other words, you're contending
23  that these people were given deals by the State, and they gave
24  testimony in the certificate of innocence hearing. There's
25  every reason to believe they are going to give the same

|  |  |
|---|---|
| | 1  testimony when they come in here to testify, but it's, the |
| | 2  case, at least in its form at the moment, unless something |
| | 3  happens on the 27th floor, you know, soon enough, is the City. |
| | 4  So the City didn't offer them anything, aren't claimed to have |
| 10:09:39 | 5  offered them anything, aren't claimed that they are going to |
| | 6  offer them anything, and it's basically that they are going to |
| | 7  call them, and presumably they are going to say the same thing. |
| | 8  So what exactly are you asking me to tell the City to |
| | 9  do or not to do?  When I say "the City," I mean the City and |
| 10:09:54 | 10  the police officer defendants. |
| | 11  MR. GOODMAN:  I think two things, Your Honor. |
| | 12  First of all, obviously if you -- |
| | 13  THE COURT:  Just answer the question.  What are you |
| | 14  asking me to tell them to do or not do? |
| 10:10:01 | 15  MR. GOODMAN:  One is I think it should be made clear, |
| | 16  that the City needs to make clear to these witnesses that their |
| | 17  testimony in this case has nothing to do with the deal that was |
| | 18  offered by the State, which we believe was an illegal deal. |
| | 19  Secondly, I think that the Court should conduct some |
| 10:10:18 | 20  inquiry of these witnesses in the -- |
| | 21  THE COURT:  To find out what? |
| | 22  MR. GOODMAN:  To find out, to find out whether these |
| | 23  witnesses understand that their testimony and their cooperation |
| | 24  with the City has nothing to do with the deal that was offered |
| 10:10:33 | 25  by the State, which, again, we believe was illegal, that they |

MICHAEL P. SNYDER, Official Court reporter

1  are not obligated to repeat the testimony that was in effect
2  purchased.
3      THE COURT: So you're asking me to do something other
4  than to swear a witness in to tell the truth. You're asking me
5  to give them some instructions.
6      MR. GOODMAN: To inquire. No, to inquire as to
7  whether the, whether the witness understands that the deal that
8  was offered by the State --
9      THE COURT: Do you swear or affirm that the testimony
10 you're about to give will be the truth, the whole truth, and
11 nothing but the truth?
12     I mean, I don't see why I would do anything other than
13 that. I just don't get it. It doesn't compute, is what I'm
14 saying, because I'm telling them, I am asking them to swear to
15 tell the truth or affirm to tell the truth. And, you know, we
16 all know that there are witnesses who don't tell the truth,
17 okay? It happens. But I, I mean, judges don't typically
18 say -- and I really mean this -- after they do that, or they
19 don't say, "Well, you know, it doesn't mean you have to say
20 exactly what you said before. Do you swear to tell the truth,
21 the whole truth, and nothing but the truth, and do you
22 understand that you really don't have to say the same thing you
23 said before?"
24     That's not the way it works. I'm not going to do it.
25 It's obvious. Frankly, it is borderline ridiculous. It's

MICHAEL P. SNYDER, Official Court reporter

|  |  |
|---|---|
|  | 1 borderline ridiculous.  You can cross-examine to your heart's |
|  | 2 content about that.  It's a perfectly appropriate subject of |
|  | 3 cross-examination that, isn't it a fact, Mr. So and So, that |
|  | 4 you're giving the exact same testimony that you gave in Mr. |
| 10:12:00 | 5 Fields' innocence hearing in front of Judge Beeble, whoever it |
|  | 6 was, on November the whatever of 2013, and isn't it a fact that |
|  | 7 before you gave that testimony, that the State's Attorney's |
|  | 8 office said that you get three years off of your sentence or |
|  | 9 four years off your sentence or whatever.  You can |
| 10:12:13 | 10 cross-examine people to your heart's content about that, and |
|  | 11 that is the remedy that you have for this conduct. |
|  | 12         I can't -- I don't see any authority, and you still |
|  | 13 haven't cited me any for me to do anything else other than |
|  | 14 that.  The motion for reconsideration or clarification is |
| 10:12:27 | 15 denied. |
|  | 16         We are moving on to the next thing. |
|  | 17         MS. GORMAN:  Your Honor, can I just raise one issue |
|  | 18 with that?  I'll make it very brief. |
|  | 19         THE COURT:  Okay. |
| 10:12:34 | 20         MS. GORMAN:  Depositions were also taken of these men, |
|  | 21 taken by the City and the State and myself. |
|  | 22         THE COURT:  Okay. |
|  | 23         MS. GORMAN:  And -- |
|  | 24         THE COURT:  So you think they are not going to appear |
| 10:12:45 | 25 live, in other words? |

MICHAEL P. SNYDER, Official Court reporter

|  |  |
|---|---|
| 10:12:55 | 1  MS. GORMAN: I don't know if some of them will or not.
2  THE COURT: Do we know? Who are we talking about?
3  Give me some names. Hawkins?
4  MR. GOODMAN: Hawkins and Keys were the two that were
5  offered reduced prison sentences. |
|  | 6  THE COURT: Are they live?
7  MR. MICHALIK: Hawkins and Keys are coming live.
8  THE COURT: What about Davis? Don't know? |
| 10:13:05 | 9  MR. NOLAND: Don't know. Davis is not incarcerated.
10 He's out of state. So it's likely -- there is, it's a video
11 deposition Mr. Davis. It's likely that will be played. |
|  | 12 THE COURT: Now that I understand the background, go
13 ahead.
14 MS. GORMAN: Well, because that testimony was taken -- |
| 10:13:18 | 15 THE COURT: You didn't know that at the time?
16 MS. GORMAN: Yes, and we questioned them about it.
17 THE COURT: Okay.
18 MS. GORMAN: But we don't think it should be able to
19 be used in this proceeding. |
| 10:13:25 | 20 THE COURT: Just the fortuity that they had the
21 deposition taken for two purposes at once?
22 MS. GORMAN: Well, the City went in and asked if they
23 could join in even though discovery was closed in this case.
24 THE COURT: Did they ask me? |
| 10:13:36 | 25 MS. GORMAN: Yes. |

MICHAEL P. SNYDER, Official Court reporter

| | |
|---|---|
| | 1    THE COURT: And what did I say? |
| | 2    MS. GORMAN: Yes. |
| | 3    THE COURT: Okay. So you're saying I should undo |
| | 4  that? |
| 10:13:41 | 5    MS. GORMAN: No, I'm saying they shouldn't get the |
| | 6  benefit of the State's deal. |
| | 7    THE COURT: I don't think that changes the analysis in |
| | 8  any way, shape, or form, okay? |
| | 9    We are moving on to the next point now. |
| 10:13:50 | 10    So, let's see. I've got the motion for a jury |
| | 11  inspection to discuss the contents of -- I guess everybody has |
| | 12  come up with their own name for this thing -- the file and to |
| | 13  bring it to the courtroom. |
| | 14    So I looked at the response. What else would you like |
| 10:14:12 | 15  me to tell me on the side? You've seen the response? |
| | 16    MS. GORMAN: I have, Your Honor. Your Honor, I would |
| | 17  just say in regards to the one file where they presented the |
| | 18  testimony, I think that proves our case even stronger. |
| | 19    THE COURT: This is the, what's her name? |
| 10:14:24 | 20    MS. GORMAN: Charmagne Nathan. |
| | 21    I think that they proved our case even stronger |
| | 22  because the file that was in the file cabinet was more than 140 |
| | 23  pages long. It had an extensive investigation not only of the |
| | 24  one witness but of the facts regarding that shooting, and it's |
| 10:14:43 | 25  clear from the testimony that they presented that the most the |

MICHAEL P. SNYDER, Official Court reporter

1  defense counsel had in the El Rukn trials was one page.
2  Similar to Mr. Fields, who had eight pages of the investigative
3  file tendered to him, it looks to me like they had one page
4  from the day she was first able to talk in the hospital and
5  none of the rest of that investigation.
6      THE COURT: Put that part of it on the side for a
7  second. Let's talk about the other two parts, the part about
8  wanting to take the jury down to 51st and Wentworth and the
9  other being bring the thing here.
10     MS. GORMAN: Your Honor, can we --
11     THE COURT: Given what I was told about how this file
12 cabinet just happens to be in the basement, I think it was
13 moved there at some point even during the litigation, if I'm
14 recalling correctly. I am not sure what's to be gained by
15 taking the jury to look at the basement, because the location
16 in the basement is something that happened post litigation. It
17 doesn't seem to me that it really enlightens, illuminates
18 anything. What am I missing?
19     MS. GORMAN: Well, we don't know where the file was
20 all these years.
21     THE COURT: I know that.
22     MS. GORMAN: We do know that there's a basement down
23 there that has all these file cabinets and that there are also
24 open files, which we think goes to the whole issue of how many
25 open files down there are really like Mr. Fields' files. We

MICHAEL P. SNYDER, Official Court reporter

```
                1   only got to look at the one file cabinet, but --
                2              THE COURT:  Why aren't -- you took pictures, right?
                3              MS. GORMAN:  Correct.
                4              THE COURT:  Why aren't the pictures good enough?
10:16:04        5              MS. GORMAN:  They will be if the Court isn't going to
                6   let --
                7              THE COURT:  This doesn't strike me as a situation
                8   where there's something unique about the location.  I mean, you
                9   know, I've had -- I tried a case with the City once where there
10:16:16       10   was something that supposedly happened in the back of a big
               11   police wagon, and there was a question about whether somebody
               12   could have seen through a window, and so we actually had them
               13   bring it in because you needed to be there; a picture wasn't
               14   good enough.
10:16:29       15              And there are other situations where I've been
               16   involved with, you know, where there was something that really
               17   couldn't be communicated by photographic or video evidence.
               18   This doesn't strike me as one of them.  I mean, a picture of a
               19   bunch of file cabinets in a basement I think is going to make
10:16:48       20   whatever point you need to make out of it.
               21              As far as bringing them here, is there something that
               22   you want to do with them here?
               23              MS. GORMAN:  There is, Your Honor.  You know, it's an
               24   interesting issue because this is an old file cabinet that was
10:17:01       25   up on the second floor of --
```

MICHAEL P. SNYDER, Official Court reporter

|  |  |
|---|---|
| 1 | THE COURT: In the detective division, if I recall. |
| 2 | MS. GORMAN: In the detective division, around all of |
| 3 | these newer file cabinets and different file cabinets. |
| 4 | And I would like to have, especially a couple of the |
| 5 | witnesses that I'm calling, coming in, have them come in and |
| 6 | show me things about this file. |
| 7 | Like, for one thing, people who were working right |
| 8 | there are saying they've never seen this file cabinet before, |
| 9 | never opened it, people who are in charge of the file cabinets. |
| 10 | And in those file cabinets are lots of files that are open and |
| 11 | lots of files that are, that should never have been in there. |
| 12 | And I'd like to be able to pull those out, show the |
| 13 | jury the different files that should not have been in there. |
| 14 | And it's not just a file, the five that I brought to this |
| 15 | Court's attention, because those are the ones I asked for |
| 16 | copies of and wanted to do more investigation of. |
| 17 | THE COURT: Yes. |
| 18 | MS. GORMAN: I believe there's more files in there. |
| 19 | And I want to be able to give the jury a visual on |
| 20 | this, this isn't some little cabinet. I just think it's |
| 21 | important for them, and I don't think it's very cumbersome to |
| 22 | bring that in. |
| 23 | THE COURT: You're just talking about the one? |
| 24 | MS. GORMAN: The one. |
| 25 | THE COURT: How many, is it like a three-drawer or -- |

MICHAEL P. SNYDER, Official Court reporter

|   |   |
|---|---|
| 1 | MS. GORMAN: Five drawers. |
| 2 | THE COURT: So it's a pretty big one, okay. |
| 3 | So hopping back then to the second part of the motion. |
| 4 | I guess my reaction to that is I'm not prepared to say |
| 5 | at this point that there is absolutely no purpose for which the |
| 6 | files in this cabinet can be used.  That was worded in sort of |
| 7 | an infelicitous way, so let me say it in a different way. |
| 8 | I'm not ruling in limine the files are out of bounds |
| 9 | at the trial.  I haven't been given an argument.  I don't have |
| 10 | a motion in limine that says that.  I haven't been given an |
| 11 | argument that is sufficient to say there should be no mention |
| 12 | of the file cabinet or anything else in it at the trial. |
| 13 | And that's not what I dealt with plaintiff.  What I |
| 14 | was dealing with before was a series of motions where I was not |
| 15 | asked to adjudicate admissibility issues.  I was asked to let's |
| 16 | publish who's in this so that anybody whose case had a file in |
| 17 | there can, you know, can take whatever steps they think is |
| 18 | appropriate. |
| 19 | And, in fact, in the transcript that was attached to |
| 20 | the response, which is the transcript of December, November the |
| 21 | 13th at page 7, just after I got done telling the plaintiff's |
| 22 | attorneys that "This is the last time I'm going to deal with |
| 23 | this, I am not going to entertain any more motions along these |
| 24 | lines, Ms. Gorman" -- and I just interject here that these |
| 25 | lines being saying "just make the names public" -- I went on to |

MICHAEL P. SNYDER, Official Court reporter

1  say this, "If there is an issue that concerns relevance of this
2  information or some of it in this case on these claims, then I
3  will deal with that issue."
4  And that is part of what I was referring back to when
5  I had the footnote in the opinion that says I hadn't
6  adjudicated the admissibility of this, the relevance issues and
7  so on at the trial yet. And I'm not prepared to do that now.
8  I don't have enough to say there's nothing in this file cabinet
9  that could possibly be relevant or admissible at the trial, so
10 I'm not going to say that.
11 And I, you know, this is better dealt with rather than
12 in -- and both sides I think, you know, the motion was kind of
13 a broad brush motion, and the response was partly a broad brush
14 response because it was a broad brush motion, and part of it
15 was specific.
16 I mean, that doesn't give me enough to say "Oh, yes,
17 you can use it for every purpose you want to," or "Oh, no, you
18 can't use it for any purpose at all." I just don't know.
19 So I think, you know, this is going to need to be part
20 of the process of motions in limine connected with the trial,
21 that, you know, you're going to have to figure out what it is
22 you want to do with this thing, you're going to have to figure
23 out what you think is inappropriate about what the plaintiff
24 wants to do with it and file a motion, and I'll hear it, and
25 I'll decide it. I can't think of any other way to do it. I

MICHAEL P. SNYDER, Official Court reporter

1 don't have enough in this motion here to give a blanket ruling
2 one way or the another. I just don't. So that's my answer.
3 And as far as bringing the file cabinet here, I mean,
4 I'm certainly open to that possibility. I mean, there's a
5 statement in here that -- wait a second -- this is somehow
6 going to disrupt regular police activities. I mean, I
7 wouldn't, I mean, I wouldn't reach that conclusion without
8 seeing some support for it like somebody saying "Oh, yeah
9 there's stuff in this file that we actually use, need, or are
10 going to need for the two or three weeks."
11 I am guessing that the particular file that we are
12 talking about here would not be part of that affidavit if I got
13 one, but there may be other stuff in there. I don't know. I
14 don't have a sense of the full scope of what's in the filing
15 cabinet.
16 So I'm not prepared to say that it can't be brought
17 here. I'm open to the possibility, and so people ought to be I
18 guess thinking about what you need to do to bring it here, and
19 I assume it just means somebody puts a dolly under it, pops it
20 on a van, and make arrangement to bring it up through the
21 basement or something like that.
22 So think about that. I am not going to make a
23 definitive ruling at this point.
24 MS. GORMAN: Your Honor, one other issue.
25 I talked with counsel beforehand. We both believe we

MICHAEL P. SNYDER, Official Court reporter

1 need more than 15 pages for motions in limine.

2 THE COURT: I'm confident that you do, but I'm not
3 going to say you can have more without giving, without having
4 some parameters on it. So what are the parameters you're
5 looking for?

6 MS. GORMAN: I did not talk about parameters.

7 MR. MICHALIK: We are --

8 THE COURT: If I say more, I could get 150, and I'm
9 never going to give you 150.

10 MR. MICHALIK: We are actually scheduled to discuss
11 motions in limine this afternoon pursuant to the Court's meet
12 and confer process, so that may give us a better idea.

13 THE COURT: You know, just get some sort of a one or
14 two-page motion on file when you have a better sense of it, and
15 I'll do one of two things: I'll either say grant it or I'll
16 shave a little off of it, and you won't have to come in.

17 MS. GORMAN: Thank you.

18 THE COURT: Okay. Thanks.

19 MR. MICHALIK: Thanks.

20 MS. MATUZAK: Thank you.

21 (Proceedings concluded.)

C E R T I F I C A T E

I, Michael P. Snyder, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable MATTHEW F. KENNELLY, one of the judges of said Court, at Chicago, Illinois, on February 18, 2014.

/s/ Michael P. Snyder
Official Court Reporter

MICHAEL P. SNYDER, Official Court reporter