**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATHSON E. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 1168 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | Magistrate Judge Geraldine Soat Brown |

**DEFENDANT CITY OF CHICAGO'S MOTION FOR DIRECTED VERDICT ON PLAINTIFF'S *MONELL* CLAIM**

Defendant, City of Chicago (the "City"), by its attorney, Terrence M. Burns of Dykema Gossett, PLLC, for its motion for directed verdict under Rule 50(a) on plaintiff's Section 1983 claim under *Monell*, states as follows:

Plaintiff has presented his case in chief. Plaintiff has failed to present legally sufficient evidence for the jury to find a policy or widespread practice within the City of "systematically suppress[ing] Brady material by intentionally secreting discoverable information from so-called 'street files.'" (Third Amended Complaint (Dkt. #105) ("TAC") ¶ 65.) Accordingly, judgment as a matter of law should be entered in favor of the City on plaintiff's *Monell* claim.

**STANDARD**

A judgment can be entered as a matter of law if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on an issue. Fed. R. Civ. P. 50(a). The evidence must be viewed in the light most favorable to the non-moving party and the Court must determine whether the evidence is sufficient to sustain a verdict in favor of the non-moving party. *Hammond Group, Ltd. v. Spalding & Evenflo Companies, Inc.*, 69 F.3d 845, 848 (7th Cir. 1995).

**DISCUSSION**

In his *Monell* claim, plaintiff alleges the City is liable to plaintiff for allowing a widespread practice of hiding investigative files to continue, which led to the deprivation of those investigative materials in both of his criminal trials. (*See* TAC ¶¶63-67.[1]) The first step plaintiff must take in proving his *Monell* claim is to establish that he suffered a constitutional injury. *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). Plaintiff then must show "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 400 (1997) (hereafter "*Bryan County*"). Next, plaintiff must establish the requisite degree of culpability on the City's part—namely, that the alleged municipal practices were carried out with "deliberate indifference" to their known or obvious consequences. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Finally, plaintiff must demonstrate a direct causal link between the municipal policy and the constitutional injury. *Bryan County*, 520 U.S. at 404.

The City cannot be liable for plaintiff's alleged constitutional injuries without evidence of a deficient policy or practice. "A municipality may not be held liable under §1983 solely because it employs a tortfeasor." *Bryan County*, 520 U.S. at 403. The Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Id*.

A plaintiff seeking to hold a municipality liable under §1983 must show that his alleged constitutional injury is attributable to the municipality itself in one of three ways. First, he may prove that "an express policy . . . when enforced, cause[d] a constitutional deprivation." *McTigue v. City of Chicago*, 60 F. 3d 381, 382 (7th Cir. 1995). Second, he may prove that his

[1] Per the pretrial order, plaintiff is no longer pursuing a *Monell* claim based on the other policies and practices alleged in the TAC.

constitutional injury was caused by "a widespread practice that, although not authorized by written law or express municipal policy, [was] so permanent and well settled as to constitute a custom or usage with the force of law." *Id*. Finally, he may prove that his constitutional injury was caused by "the act of a person with final policymaking authority." *Id*.

Plaintiff contends the Chicago Police Department had a policy of withholding exculpatory information in so-called "street files." (TAC ¶63). The City's express policies refute this claim. As the evidence has shown at trial, Detective Division Special Order 83-1, adopted in 1983, requires the maintenance and retention of working files, investigative documents, and personal notes generated by homicide detectives during an investigation. (*See* Dfts.' Exhibit 54.) As such, the CPD policy in 1984-85, contrary to plaintiff's allegations, was that all information obtained during a homicide investigation, including materials helpful to the defense, were to be preserved. Even if the evidence shows that the CPD failed to tender the file at issue in this case, that non-production was contrary to the CPD's express policy.

If plaintiff is basing his *Monell* claim on a "custom" -- *i.e.*, a practice that has "not been formally approved by an appropriate decision maker" but is "so widespread as to have the force of law," *Bryan County*, 520 U.S. at 404, it still fails. Custom can be established through widespread, enduring practices that violate constitutional rights in a systematic manner. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993). "Isolated" acts committed by non-policymaking officials do not amount to a "custom," which "implies a habitual practice of a course of action that characteristically is repeated under like circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) (*quoting Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)), *cert. denied*, *Sims v. Mulcahy*, 498 U.S. 897 (1990).

Plaintiff has not presented any evidence there was a widespread practice at the CPD of withholding exculpatory evidence after Special Order 83-1 was implemented in 1983. Plaintiff has presented no evidence of another case after Special Order 83-1 was issued where it was established exculpatory material was withheld by CPD detectives. Plaintiff's own expert, Lou Reiter, conceded at trial that he is unaware of any other case since the implementation of Special Order 83-1 in which it was established the CPD withheld *Brady* or *Giglio* material from a suspect in a so-called "street file." He conceded that in forming his opinion the only so-called "street file" he reviewed was the one relating to plaintiff. In other words, plaintiff has failed to present evidence of a practice that was so widespread as to have the force of law, *i.e.*, a custom. Proof of a pattern of misconduct requires multiple prior incidents before it can be actionable under *Monell*; a single incident is insufficient. *Connick v. Thompson*, 131 S.Ct. 1350 (2011); *Jenkins v. Bartlett*, 487 F.3d 482, 492-93 (7th Cir. 2007) (four incidents in a five-year span insufficient); *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (four alleged instances did not point to a widespread practice). Plaintiff's failure to prove an express policy or a widespread practice of withholding exculpatory evidence is fatal to his "street files" *Monell* claim. Because a reasonable jury would not have a legally sufficient evidentiary basis to find for plaintiff on his *Monell* claim, judgment as a matter of law should be entered in favor of the City.

In addition, plaintiff has offered no legal or evidentiary support to establish the requirement for an audit mechanism relating to Special Order 83-1. There is also no evidence of any practice of violating Special Order 83-1 that would have placed the CPD on notice an audit was necessary or appropriate. Jim Hickey testified he personally trained over 1,000 detectives on Special Order 83-1, and the detectives in this case testified they were aware of and followed the policy requiring that all materials be submitted for placement in the investigatory file. Hickey

also testified that there are audit mechanisms as set forth in Section V-C of Special Order 83-1, which ensure that the violent crimes unit commanding officer is overseeing the provisions in the Special Order.

Plaintiff's arguments also run afoul of the Supreme Court's prohibition against "more or better" *Monell* claims. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989); *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) ("The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent"); *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (no liability for suicide although a better, more up-to-date screening procedure might have identified victim as a risk requiring special procedures). Lou Reiter testified at trial that the implementation of General Order 83-1 was, ahead of its time and a good police practice, and he was not aware of any other city in the country that had a similar written policy at that time, let alone an audit provision. The suggestion Special Order 83-1should have had an audit mechanism is, at best, a "more or better" claim prohibited by the Supreme Court.

At most, plaintiff has presented evidence that the file at issue is not in the format required for an investigative file case folder under Special Order 83-1, and that its storage at Area One, as opposed to Records Division's warehouse, does not comply with that order. This evidence does not establish a constitutional violation that would support his *Monell* claim. The issue here is not whether a police department rule or order (Detective Division Special Order 83-1) was violated; the issue is whether a City policy was the moving force behind a deprivation of plaintiff's constitutional rights. *See Doe v. County of Milwaukee*, 903 F.2d 499, 502 (7th Cir. 1990) ("not every state or municipal law, regulation, or ordinance creates a constitutionally protected entitlement"); *see also* Seventh Circuit Pattern Civil Jury Instruction 7.04. In other words, the

purported violations of Detective Division Special Order 83-1, standing alone, do not establish the City had a policy or practice of withholding *Brady* or *Giglio* material from criminal defendants.

Finally, plaintiff has failed to establish the requisite degree of culpability on the City's part—namely, that the alleged municipal practices were carried out with "deliberate indifference" to their known or obvious consequences, *City of Canton*, 489 U.S. at 388, or that there is a direct causal link between the municipal policy and the constitutional injury. *Bryan County*, 520 U.S. at 404.

WHEREFORE, defendant, the City of Chicago, respectfully requests that this Court grant its motion for a directed verdict on plaintiff's *Monell* claim and for any other relief this Court deems appropriate.

Date: April 22, 2014

Respectfully submitted,

s/ Daniel M. Noland
One of the Attorneys for the City of Chicago

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
312.876.1700 (phone)
312.627.2302 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2014, I electronically filed the foregoing **Defendant City of Chicago's Motion for Directed Verdict on Plaintiff's *Monell* Claim** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

H. Candace Gorman
Adrian J. Bleifuss Prados
Law Office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago, IL 60661
312.427.2313
hcgorman1@gmail.com
ableifuss@gmail.com

Stephen L. Garcia
Office of the Cook County State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
312.603.5475
sgarcia@cookcountygov.com

and

Leonard C. Goodman
Melissa A. Matuzak
Law Offices of Leonard C. Goodman
53 W. Jackson
Suite 1220
Chicago, IL 60604
312.986.1984
lcgoodman@rcn.com
melissamatuzak@gmail.com

s/ Daniel M. Noland