**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATHSON E. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 1168 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | Magistrate Judge Geraldine Soat Brown |

**DEFENDANT DANIEL BRANNIGAN'S MOTION FOR DIRECTED VERDICT**

Defendant, Daniel Brannigan, by his attorney, Terrence M. Burns of Dykema Gossett, PLLC, for his motion for directed verdict under Rule 50 (a) on plaintiff's claims against him, states as follows:

Plaintiff has presented his case in chief. Plaintiff has failed to present legally sufficient evidence for the jury to find that Brannigan violated plaintiff's constitutional rights, maliciously prosecuted plaintiff or is liable for intentional infliction of emotional distress against plaintiff.

**STANDARD**

A judgment can be entered as a matter of law if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on an issue. Fed. R. Civ. P. 50(a). The evidence must be viewed in the light most favorable to the non-moving party and the Court must determine whether the evidence is sufficient to sustain a verdict in favor of the non-moving party. *Hammond Group, Ltd. v. Spalding & Evenflo Companies, Inc.*, 69 F.3d 845, 848 (7th Cir. 1995).

## DISCUSSION

### I. Plaintiff Has Failed to Prove His Due Process Claim Against Defendant Brannigan.

Plaintiff asserts a due process claim against Brannigan based in part on his alleged suppression of exculpatory evidence from the Smith/Hickman homicide investigation. However, plaintiff has presented no evidence to support this claim against Brannigan.[1]

There is no evidence Brannigan had any involvement in the initial 1984 CPD investigation of the Smith/Hickman murders. As he testified, Brannigan was a Gang Crimes Specialist detailed to the ATF and not a homicide detective. The only act that connects Brannigan to the Smith/Hickman investigation was his recruitment of Anthony Sumner to cooperate with authorities. It was Sumner who provided the initial information linking plaintiff to the Smith/Hickman murders. Brannigan's recruitment of Sumner was related to his work for the Task Force investigating the El Rukn street gang, and not as part of the Smith/Hickman murder investigation.

There has been no evidence to support the claim that repeated requests were made to Brannigan for materials pertaining to the Smith/Hickman homicide and that he failed to provide that information to plaintiff. Plaintiff similarly lacks any evidence linking Brannigan to the Subject File. Brannigan's testimony during plaintiff's case in chief that he never saw the subject file prior to this civil lawsuit is unrebutted.

Plaintiff's due process claim also alleges Brannigan improperly coerced government witnesses Anthony Sumner and Earl Hawkins. Plaintiff specifically contends Brannigan coerced

[1] Plaintiff's due process claim also fails as against all City Defendants because, as addressed in the City Defendants' Motion for Directed Verdict, plaintiff has not presented any evidence that the prosecutors' decision to go to trial would have been altered by the disclosure of the alleged *Brady* material—the so-called "street file." Should the Court decline to enter a directed verdict on that basis, the claim against Brannigan fails for the reasons set forth here.

Sumner to falsely implicate Plaintiff in the Smith/Hickman and Vaughn/White murders. Plaintiff had alleged Brannigan, along with ASA Kelley, "cut a deal" with Hawkins to obtain perjured testimony at Fields' retrial, but plaintiff has presented no evidence of this.

Plaintiff also has not presented any evidence Brannigan improperly coerced Sumner to falsely implicate plaintiff in the Smith/Hickman murders. Following the raid of the El Rukn safe house in East Cleveland, Sumner told Brannigan he would cooperate with authorities regarding El Rukn activities.

Although Sumner provided a statement to El Rukn attorneys William Swano, Earl Washington, and Fred Solomon suggesting police officers beat and threatened him unless he cooperated, which this Court initially admitted under the residual hearsay exception, subsequent evidence has shown the statement is not reliable and should be rejected as evidence of misconduct by Brannigan. Rule 807 permits admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party. Fed. R. Evid. 807. As the evidence developed at trial has established, the out of court statement is simply not "particularly trustworthy." Sumner testified in court that his statement about Brannigan to the El Rukn attorneys was untrue. Sumner testified he was brought to the meeting with Swano by El Rukn General Sammy Knox. Sumner testified he had been instructed by the El Rukn hierarchy to "make something up" to explain his cooperation with authorities. (Exhibit A, Sumner June 1986 Trial Testimony at 282-284.) Sumner has never recanted that aspect of his testimony. Brannigan testified he never beat Sumner nor threatened him in order to obtain his agreement to cooperate and there has been no evidence to the contrary. Defendant Wharrie also testified that he never

saw or heard Brannigan beat or threaten Sumner during the time he was present with Brannigan and Sumner in East Cleveland. Wharrie also testified he never saw any signs or physical evidence that Brannigan beat or mistreated Sumner in East Cleveland. As the evidence has shown, despite assurances attributed to Sumner in the statement that he would review and sign the statement, and the presence of a signature line, Sumner never signed the statement to Swano. The statement was not given under oath and the only sworn testimony from Sumner is that Brannigan did not coerce him. Additionally, the recording of the statement no longer exists.

There has been no credible evidence presented by plaintiff establishing Brannigan coerced Sumner or any other witness to falsely implicate Fields in the Smith/Hickman or Vaughn/White murders.

Plaintiff also alleged the State's Attorney's Office entered into an agreement with Hawkins in which Hawkins agreed to give false testimony against plaintiff at the retrial. That allegation does not appear to be directed against Brannigan, and in any event, plaintiff has presented no evidence of an agreement between the State and Hawkins wherein Hawkins agreed to give false testimony. There is no evidence to support the assertion Brannigan (or anyone else) "knew" Hawkins' testimony at the 2009 retrial would be false. In fact, plaintiff has presented no evidence whatsoever regarding this aspect of his claim.

Finally, plaintiff has failed to present any evidence Brannigan was involved in the subornation of perjury from Hawkins. Plaintiff has not presented any evidence that Hawkins perjured himself regarding Plaintiff's involvement in the Smith/Hickman murders.

Plaintiff has failed to present sufficient evidence of a due process violation by Brannigan, whether based on the alleged suppression of evidence, improper coercion of a witnesses, or

fabrication of evidence[2]. Brannigan is entitled to a directed verdict on the due process claim against him.

## II. Plaintiff Has Failed to Prove His Malicious Prosecution Claim Against Defendant Brannigan.

To prove his claim for malicious prosecution under Illinois law, plaintiff must prove (1) the commencement or continuation of a prior criminal proceeding by the defendant against him; (2) a termination "on the merits" of the prior proceeding in a manner indicative of his innocence; (3) a lack of probable cause for the prior proceeding; (4) malice; and (5) damages that proximately result to plaintiff from the alleged misconduct. *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 45, 411 N.E.2d 229 (1980). Because plaintiff has failed to present evidence in support of several of these required elements, a directed verdict should be entered in favor of Brannigan on the malicious prosecution claim.

First, there is no evidence Brannigan commenced or continued criminal proceedings against plaintiff. A malicious prosecution claim can only be asserted where it is alleged that a police officer's "participation in [the prosecution] was so active and positive a character as to amount to advice and cooperation." *Bergstrom v. McSweeney*, 294 F.Supp.2d 961, 968 (N.D. Ill. 2003). *See also Frye v. O'Neill*, 166 Ill. App. 3d 963, 975, 520 N.E.2d 1233 (4th Dist. 1988) (Liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff").

Second, even assuming, *arguendo*, Brannigan could be said to have "commenced" or "continued" the criminal prosecution of Fields, he would still be entitled to a directed verdict.

[2] Plaintiff has not specifically alleged Brannigan committed a *Brady* violation by failing to disclose the alleged coercion of Sumner, but even if such a claim were considered, Defendant Brannigan would be entitled to a directed verdict. Plaintiff was aware of Sumner's recant to Swano and the allegations against Brannigan contained therein prior to the 1986 trial. Furthermore, the alleged misconduct is claimed to have occurred when ASA Wharrie was present, so Brannigan could not have withheld such information from prosecutors.

Plaintiff's malicious prosecution claim fails due to the existence of probable cause for plaintiff's prosecution. Probable cause is an absolute bar to a claim for malicious prosecution. *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238 (1996). For purposes of an Illinois malicious prosecution claim, probable cause is a "state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offenses charged." *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72, 791 N.E.2d 1206 (1st Dist. 2003).

Prior to the 1986 trial, there was sufficient evidence to support a police officer's honest and strong suspicion Fields was involved in the Smith/Hickman murders. Anthony Sumner provided a significant amount of information to investigators and prosecutors regarding El Rukn criminal activities, including the involvement of Fields and Hawkins in the Smith/Hickman murders. As set forth above, plaintiff has not presented any evidence that Brannigan improperly threatened or beat Sumner into providing this information. As to Smith/Hickman, Sumner never recanted his trial testimony that plaintiff was involved. There was no reason to disbelieve Sumner regarding Smith/Hickman, and Sumner was not the only witness linking plaintiff to those murders prior to the 1986 trial. Eyewitnesses to the shootings, including Randy Langston, who testified to this during plaintiff's case, Eric Langston, and Gerald Morris, identified plaintiff as being involved. Defendant Brannigan was entitled to rely on other officers' reports detailing these eyewitnesses' identifications of plaintiff as one of the shooters. All of this information supported a reasonable belief that plaintiff was involved in the Smith/Hickman homicides[3].

[3] As to Vaughn/White, Sumner did not admit until late 1991 and January 1992 that he falsely implicated Fields in those murders. Sumner never told police before that time plaintiff was not involved. Sumner had admitted he was present during those murders and implicated himself in their commission. Everything else Sumner told police about the Vaughn/White murders appeared to be accurate. The information provided by Sumner in 1985 was so convincing it caused the State to drop charges against two other suspects previously charged in the Vaughn/White murders. For purposes of probable cause,

## III. Plaintiff Has Failed to Prove His Intentional Infliction of Emotional Distress Claim Against Defendant Brannigan.

Under Illinois law, three elements are necessary to state a claim for intentional infliction of emotional distress ("IIED"):

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct would cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*Feltmeier v. Feltmeier*, 207 Ill.2d 263, 798 N.E.2d 75 (2003). To the extent plaintiff has failed to establish evidence of a due process claim, or that Brannigan otherwise had personal involvement in a willful violation of his constitutional rights, or that Brannigan maliciously prosecuted him, plaintiff likewise has failed to present evidence of extreme or outrageous conduct sufficient to support a claim for IIED against Brannigan. *Cooney v. Casaday*, 746 F. Supp. 2d 973, 977-78 (N.D. Ill. 2010) (Without evidence of misconduct on a defendant's part, summary judgment is appropriate on an IIED count that is based on the same conduct underlying plaintiff's §1983 claim). To the extent Brannigan is entitled to a directed verdict against plaintiff on the other claims against him, he is also entitled a directed verdict on plaintiff's IIED claim.

WHEREFORE, defendant, the City of Chicago, respectfully requests that this Court grant its motion for a directed verdict against plaintiff as to all claims against Defendant Brannigan and for any other relief this Court deems appropriate.

---

everything Sumner initially told Brannigan and the other investigators about the Vaughn/White murders, including that plaintiff was involved, would have led a person of ordinary caution to believe, or entertain an honest and strong suspicion, he was being truthful.

Date: April 22, 2014

Respectfully submitted,

s/ Daniel M. Noland

One of the Attorneys for Defendant,
DANIEL BRANNIGAN

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
312.876.1700 (phone)
312.627.2302 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2014, I electronically filed the foregoing **Defendant Brannigan's Motion for Directed Verdict** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

H. Candace Gorman
Adrian J. Bleifuss Prados
Law Office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago, IL 60661
312.427.2313
hcgorman1@gmail.com
ableifuss@gmail.com

Stephen L. Garcia
Office of the Cook County State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
312.603.5475
sgarcia@cookcountygov.com

and

Leonard C. Goodman
Melissa A. Matuzak
Law Offices of Leonard C. Goodman
53 W. Jackson
Suite 1220
Chicago, IL 60604
312.986.1984
lcgoodman@rcn.com
melissamatuzak@gmail.com

s/ Daniel M. Noland