UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHSON FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 1168 |
| ) | |
| CITY OF CHICAGO, *et al.*, ) | |
| ) | Judge Kennelly |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATE PAROLE COMMISSION, ) | |
| ) | |
| Respondent. ) | |

**UNITED STATES PAROLE COMMISSION'S**
**RESPONSE TO AMENDED MOTION TO ENFORCE SUBPOENA**

Nathson Fields seeks to compel production of additional documents from the U.S. Parole Commission based on wild allegations that the U.S. Department of Justice and Parole Commission are engaged in a conspiracy to hide some secret deal with Earl Hawkins in connection with this civil case. That premise is false. There was no secret deal and no cover up. As detailed in the attached declaration of AUSA William Hogan, (1) at the time of Hawkins's testimony in Fields's case, the U.S. Attorney's Office (not a party to the case) believed Hawkins's likely release date was around 2026, (2) the U.S. Attorney's Office did not anticipate and was surprised by the Parole Commission's decision to grant Hawkins parole last year, and (3) the letters sent by the government in connection with Hawkins's July 2014 parole hearing were entirely appropriate and in fact required as part of Hawkins' 1989 plea agreement in his federal criminal case. Moreover, they arrived at the Commission days after Hawkins's hearing and after the parole recommendation was made.

Fields's allegations are baseless and reckless. The government is willing to tender to the court the entire Parole Commission file for *in camera* review. As reflected in that file, and supported through the attached declaration, the Parole Commission has turned over the appropriate documents under the applicable federal regulation, and that response is not arbitrary or capricious (the standard of review in a matter such as this). *See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994). The motion to compel thus should be denied.

        Respectfully submitted,

        ZACHARY T. FARDON
        United States Attorney

        By: s/James M. Kuhn Sr.
            JAMES M. KUHN SR.
            Assistant United States Attorney
            219 South Dearborn Street
            Chicago, Illinois 60604
            (312) 353-1877
            james.kuhn@usdoj.gov

# AUSA Hogan Declaration

STATE OF ILLINOIS     )
                      )     SS
COUNTY OF COOK        )
                            **AFFIDAVIT**

I, William R. Hogan, Jr., being duly sworn, state the following:

1. I have been an Assistant United States Attorney (AUSA) since November 1982 and employed in the Northern District of Illinois since September 1985. In early 1988, I was assigned as the lead prosecutor in the investigation of the El Rukn Gang Organization. That investigation led to the indictment of 65 members and associates of the El Rukn Organization in October 1989 for offenses including racketeering conspiracy, substantive racketeering involving approximately 29 predicate acts of murder, attempted murder, murder conspiracy, kidnapping, and obstruction of justice, as well as dozens of narcotics offenses; interstate murder-for-hire; murder in furtherance of a racketeering enterprise; kidnapping; narcotics conspiracy; and dozens of substantive narcotics offenses. The investigation further led to the indictment in June 1991 of former Cook County Circuit Court Judge Thomas Maloney and two lawyers, William Swano and Robert McGee, on charges of racketeering conspiracy, substantive racketeering involving multiple predicate acts of bribery stemming from the fixing of murder cases in the Circuit Court, including Earl Hawkins and Nathson Fields's 1986 conviction for the Smith/Hickman double murder; conspiracy to commit extortion; and obstruction of justice. I was the lead trial attorney for the United States Attorney's Office (USAO) for nine RICO trials conducted between April 1991 and April 1993 resulting from these indictments.

2. This affidavit is submitted in support of the government's response to Nathson Fields's December 17, 2014 amended motion to enforce a subpoena to the United States Parole Commission, and is based on my personal knowledge. That amended motion alleges, among

1

other things, that I, along with other members of the USAO and Department of Justice (DOJ), Cook County Assistant State's Attorney (ASA) Brian Sexton, two former Chicago Police Department officials who served as investigators and case agents on the El Rukn prosecution team, former Lieutenant David O'Callaghan and former Sergeant Daniel Brannigan, and counsel for the defendants in the case before this Court, conspired to have a former El Rukn cooperating witness, Earl Hawkins, commit perjury in this Court by lying about the date he expected to be released from federal and state prison sentences, and to obtain Hawkins's early release from those sentences in exchange for false testimony against Fields in the civil trial conducted before this Court last Spring; that "the DOJ has been complicit in hiding materials sought in the subpoena"; "cannot be trusted to honor the subpoena"; and "was in collusion with the cover-up regarding the individuals who were seeking the parole of Mr. Hawkins." Doc. 792 at 6-8. These allegations are categorically false, and utterly unsupported by any facts or evidence.

3. Earl Hawkins was a member of the El Rukn Organization and its predecessors, the Blackstone Rangers and the Black P Stone Nation, from the time he was approximately 10 years old in 1965 until February 1987, when he began to cooperate in the El Rukn investigation after having been convicted of a double murder in the Cook County Circuit Court and sentenced to death by Judge Thomas Maloney in September 1986. Hawkins was indicted in October 1989 with the other members of the El Rukns, and charged with racketeering, racketeering conspiracy, and narcotics conspiracy. I have dealt with Hawkins as a cooperating witness from mid-1988 until today, and am familiar with his federal and state charges, plea agreements, sentences, conditions of confinement in the federal Bureau of Prisons (BOP), and recently, his appearance before the United States Parole Commission.

4. As a result of his cooperation, Hawkins reached a plea agreement with both the USAO and the Cook County State's Attorney's Office (SAO) in October 1989 that, among other things, called for him to receive the maximum sentence possible of 60 years on his three federal charges (20 years on each charge, to run consecutively). Because the state murder case for which he had been convicted was tainted by the bribery of Judge Maloney by attorney William Swano and other members of the El Rukns, including Hawkins's co-defendant Nathson Fields, and because there was a chance that the USAO investigation could in the future develop evidence sufficient to charge Maloney, Swano, and others with that bribery and therefore reverse the murder convictions, the SAO component of Hawkins's plea agreement further provided that in the event his death sentence was reversed and reduced below a sentence of natural life, the SAO could charge him with several other murders he had confessed to and give him a sentence of up to natural life imprisonment. Moreover, Hawkins agreed that if his death case were reversed and he was retried, the SAO could again seek the death penalty. The agreement also provided that the USAO would fully apprise various entities, including specifically "the Parole Commission," of the "nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." *See* Hawkins Federal Plea Agreement, Ex. 1 to City Defendants' Response To Plaintiff's Proposed Discovery Plan For Post-Trial Motions, Doc. 770-1 p. 4-5.

4. In April 1993, Hawkins testified against former Judge Maloney and his bagman, Robert McGee, and they were convicted of racketeering, racketeering conspiracy, conspiracy to commit extortion, and obstruction of justice charges before Judge Harry Leinenweber. As a result, Hawkins and Fields filed motions to vacate their murder convictions and sentences.

3

5. In July 1994, while Hawkins's death sentence was still in effect, Judge Marvin Aspen sentenced him to 60 years' federal incarceration in accordance with his plea agreement. Pursuant to 18 U.S.C. § 4205(a), Hawkins was eligible for parole after serving 10 years of his sentence, and pursuant to § 4206(d) reached his mandatory parole date "after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." The BOP calculated the beginning of Hawkins's sentence, and thus credit for time served, from the date he was sentenced by Judge Maloney, September 19, 1986, resulting in an initial 10-year parole eligibility date of September 18, 1996, a "two-thirds" release date of September 18, 2016 (i.e., 30 years after the September 18, 1986 sentencing date under the 30/45 year rule of § 4206(d)), and a statutory release date of January 1, 2027 (i.e., the actual two-thirds date of the 60 year sentence if the Commission decided to continue him to expiration pursuant to the provision of § 4206(d) that it determined - in its sole discretion - there was a reasonable probability that he would commit any further federal, state, or local crime). *See* Ex. 5 p. 4 to City Defendants' Response To Plaintiff's Proposed Discovery Plan For Post-Trial Motions, Doc. 770-5 p. 4. These dates were subject to change, however, if the original computation date of Hawkins's jail time was adjusted based on additional information – in other words, if the BOP received additional information that he had done more jail time than he was credited for when the BOP did its initial computation calculations.

6. In January 1998, the Illinois Supreme Court vacated Hawkins and Fields's convictions and sentences because of the bribe to Maloney, and remanded the proceedings for a

4

new trial. *People v. Hawkins and Fields*, 181 Ill.2d 41 (1998).

7. In late 1998, I was contacted by Assistant State's Attorneys (ASAs) Brian Sexton and David Kelley, who had been assigned to the retrial, regarding the SAO's potential interest in approaching Hawkins to be a witness against Fields. I arranged for ASAs Sexton and Kelley to contact Hawkins through the DOJ Office of Enforcement Operations (OEO) in Washington, D.C., which controlled all contacts with Hawkins after April 1990. In 1999, ASAs Sexton and Kelley met with Hawkins to discuss his testifying against Fields, and eventually reached a tentative agreement with him through his attorney, David Stetler, who had been appointed to represent him by Judge Aspen in 1996.

6. In May 1999, in preparation for Hawkins's initial 10-year parole hearing (which had been delayed for unknown reasons), a BOP Inmate Systems Technician advised the BOP Administrator of Inmate Monitoring, Tony Merola, that based on her calculations, Hawkins was eligible for approximately an additional 27 months of jail time credit for "periods of prior custody time that can be awarded to the federal sentence once verified" – that is, an additional 11 months for the time Hawkins spent in Cook County Jail between October 18, 1981 and September 18, 1982 awaiting trial on the Willie Bibbs murder, which was racketeering act 10 of the RICO indictment, and the additional 16 months between his May 18, 1985 arrest for the Smith/Hickman murders and his September 16, 1986 sentencing for those murders by Judge Maloney, which was racketeering act 18. Doc. 770-5 p. 9.

7. In February 2002, ASAs Kelley and Sexton asked me to help obtain as accurate a figure as could be determined regarding when Hawkins would likely be granted parole from his federal sentence so they could attempt to reach a new state plea agreement with him. ASAs Sexton and Kelley explained that the SAO wanted Hawkins to enter a state plea agreement that

5

would be co-extensive with the maximum amount of time Hawkins was projected to actually serve on his federal 60-year sentence. After consulting with OEO and BOP officials, ASA Kelley and I conducted a conference call with Inmate Monitoring Administrator Merola, who I had been advised by DOJ and BOP officials would be able to provide the most accurate information on that topic. Administrator Merola sent me a number of BOP documents regarding Hawkins's sentencing calculations, including those reflecting the BOP's initial "two-thirds date" release date of September 18, 2016 and statutory release date of January 1, 2027 described above, and the Parole Commission's decision following his 10-year eligibility hearing in June 1999, which showed that he had been continued "to a 15 Year Recommendation Hearing in June 2014." *Id*. at p. 4, 7, 8. Administrator Merola also advised me and ASA Kelley that despite Hawkins's statutory "two-thirds" (30 year) date of September 18, 2016, it was his conclusion, based on Hawkins's offense severity level rating, salient factor score, criminal history, institutional behavior and adjustment, and Merola's extensive experience regarding prior Parole Commission determinations involving violent offenders, that it was his best judgment that Hawkins would not receive parole in 2016, but rather probably would be continued to his "expiration date" of 2027 due to the "reasonable probability that he will commit and Federal State, or local crime" if released before mandatory expiration. On August 4, 2003, I recounted the conversation ASA Kelley and I had with Mr. Merola in a letter to ASA Kelley, including Mr. Merola's advice regarding Hawkins's anticipated parole release date of 2027, and sent ASA Kelley the supporting documents received from the BOP and Mr. Merola. That letter and those documents are attached to Defendants' Response as Ex. 5, Doc. 770-5.

       8.      On July 19, 2002, the SAO reached a plea agreement with Hawkins that required him to plead guilty to two counts of armed violence regarding the Smith/Hickman murders, and

to receive a sentence of 42 years for each count, to be served consecutively, with credit for time served running from the May 18, 1985 date of his arrest for those murders. That sentence was to run concurrent with the federal sentence, and projected that Hawkins would conclude his state sentence in 2027, the same time it was predicted that he would receive federal parole according to the advice received from Inmate Monitoring Administrator Merola. *See* Hawkins 2002 State Plea Agreement, Doc. 770-2.

9. In August 2013, a hearing began before Chief Judge Paul Beibel of the Cook County Circuit Criminal Court on a petition by Fields for a Certificate of Innocence regarding the Smith/Hickman murders. Hawkins was deposed the day before he testified in that hearing, and before the deposition began, ASA Sexton advised Fields's counsel Gorman that the SAO had agreed to a new plea agreement with Hawkins that reduced his state time to two consecutive 39-year sentences. ASA Sexton specified "that your (Hawkins) actual out date on the federal sentence is 2027" based on "a letter from 2003 from AUSA Hogan that clarifies that it's not 2016." Sexton noted that Fields's counsel Gorman already had a copy of the August 2003 letter (and its attachments), but that he had given her another one that morning before the deposition began. Doc. 770-4 p. 2. Thus, Hawkins's new state agreement for 78 years (with credit from May 18, 1985) called for him to be released on his state sentence in mid-2024 - approximately 3 years before Sexton, based on the information from the BOP in the August 2003 letter, projected his federal sentence would conclude – or, as Sexton put it, "just to make it clear for the Bureau of Prisons and everyone that you (Hawkins) would not be doing additional time on your state sentence, that it would be under your federal sentence." *Id.*

10. The new plea agreement was formalized on December 9, 2013 when Hawkins and the SAO entered a new written agreement, months before Hawkins testified in this civil case.

7

That agreement repeated the proviso that Hawkins's state sentence would run concurrently to his federal sentence, and reiterated ASA Sexton's statement at the deposition that "it is the intent of both parties that defendant Hawkins not serve any additional time in state custody beyond what he is already serving on his federal sentence." *See* Hawkins 2013 Plea Agreement, Doc. 770-3.

11. In early 2014, I was contacted by OEO regarding an effort by BOP to verify that Hawkins was entitled to jail time credit for the period in 1981-82 he spent at Cook County Jail awaiting trial on the Bibbs murder, which had been incorporated into the substantive RICO charges to which Hawkins pled guilty in October 1989. On January 6, 2014, I wrote to the Assistant Administrator of Inmate Monitoring for the BOP and verified that Hawkins had been arrested on October 10, 1981 on the Bibbs case, that the charges were dismissed on September 10, 1982 when Hawkins was acquitted of that murder, and that he had spent that time in continuous custody at Cook County Jail.

12. In February 2014, BOP updated its computations regarding Hawkins's prior jail credit time. Those new computations reflect that Hawkins had finally received BOP jail credit time on approximately February 2, 2014 for the period he spent at Cook County Jail on the Bibbs murder in 1981-82, and for the period from his May 18, 1985 arrest on the Smith/Hickman murders to June 26, 1994 when he arrived in BOP custody after being sentenced by Judge Aspen. Those updated computations were produced by the Parole Commission in response to Fields's recent subpoena to the Commission in October 2014 as part of these proceedings, but had not been furnished to me or anyone else in the USAO before being produced by the Commission in November 2014. Those computations, which have been filed under seal with this Court, further reflect, among other things, that the additional credit for prior jail time had the

8

effect of advancing Hawkins's statutory "two-thirds date" (i.e., 30-year date) to June 16, 2014, and his statutory release date to September 28, 2024. Bates No. USPC 01, 2.

13. In late June 2014, Hawkins advised me that he had recently been informed that he had received the additional jail credit time and had been scheduled for a parole hearing on July 11, 2014. He requested that I comply with the terms of his federal plea agreement and write the Parole Commission regarding his cooperation since 1987. He further requested that former case agents/officers O'Callaghan and Brannigan, the two El Rukn case investigators with whom he had the most interaction over the years, and ASA Sexton, also write the Parole Commission. I passed on those requests in late June 2014. O'Callaghan and Brannigan had testified numerous times during the El Rukn trials that they had agreed to advise any judge or parole body of Hawkins's cooperation, and they agreed to write to the Parole Commission to keep those commitments. ASA Sexton also agreed to write in order to describe Hawkins's cooperation in the state proceedings regarding Fields, particularly his testimony in the Innocence Hearing.

14. On July 1, 2014, I received former Lt. O'Callaghan's letter, on July 6 Sgt. Brannigan's, I wrote a letter dated July 9, and ASA Sexton wrote on July 14. However, I waited until I had received all the letters before sending them to OEO for transmission to the Parole Commission, and I was out of town on vacation the entire week of Monday July 14 through Saturday July 19. Consequently, I did not receive ASA Sexton's letter until I returned to work on Monday July 21. At that time, I transmitted all four letters by email to OEO to forward to the Parole Commission, which it did that day - over a full week after Hawkins's parole hearing had been held on July 11 and the hearing officer had recommended that he be granted parole.

15. I have reviewed the tape of Hawkins's July 11 parole hearing, as well as the BOP sentence computation documents dated that same day furnished to the hearing examiner at the

9

hearing. The tape makes clear that at the beginning of the hearing the examiner did not realize that Hawkins had received the additional jail credit time described above, and began the hearing as a statutory *interim* hearing. After several minutes, the examiner received and reviewed the new BOP sentence computation documents that reflect that Hawkins had passed his two-thirds/30 year date in June 2014, and therefore converted the hearing to a formal *mandatory* parole hearing pursuant to the standards set forth in 18 U.S.C. §§ 4203-4207. After reviewing Hawkins's BOP behavior file, program activities, and the prior parole commission reports, including his offense severity rating, salient factor score, and criminal history, the examiner decided to exercise his discretion under §§ 4206 and 4207 and grant Hawkins parole. The examiner did not have any of the letters from ASA Sexton, former Sgt. Brannigan, former Lt. O'Callaghan, or me at the hearing, and they therefore played no part in his decision. That decision was, as the tape makes clear, based on Hawkins's entire record, particularly the examiner's conclusion that Hawkins had an exemplary record in his nearly 30 years in the BOP, had availed himself of all available program opportunities, and - most importantly - that there was not a reasonable probability that Hawkins would commit any further federal, state, or local crime. Following the hearing, the Parole Commission granted Hawkins parole on July 28, 2014, explicitly stating that he was still subject to the State sentence: the Notice of Action reads "Grant mandatory parole at two-thirds of the term (September 11, 2014) to the State of Illinois sentence." Bates No. USPC 06.

      16.    At no time have I ever contacted the Parole Commission on Hawkins's behalf, other than writing the July 7 letter describing his cooperation, as required by his federal 1989 plea agreement. Until I learned of the Parole Commission's decision in late July, I expected that Hawkins would not be released until about 2026 when he had served two-thirds of his federal

sentence, as projected by Inmate Monitoring Systems Administrator Merola in 2002 and as reflected in my letter of August 2003. Moreover, at the time I learned that Hawkins had been granted parole, I still expected that he would be subject to the State sentence, as the Parole Commission's July 28 Notice of Action specified.

17. After Hawkins was granted federal parole effective September 18, 2014, his attorney, David Stetler, filed a motion before Circuit Court Criminal Judge Vincent Gaughan to enforce his state plea agreement on the basis that it expressly stated that "the intent of the parties" was that Hawkins not do any more state time than federal time. The letters to the Parole Commission written by ASA Sexton, former Sgt. Brannigan, former Lt. O'Callaghan, and me were attached to that motion, and had naturally been furnished to Mr. Stetler as Hawkins's counsel in conjunction with the July parole hearing. I had no role whatsoever in Hawkins's efforts to reduce his state sentence before Judge Gaughan. In fact, it was not until shortly before Mr. Stetler filed the motion before Judge Gaughan that I knew Hawkins's 2013 state plea agreement included the language regarding "the intent of the parties." Following Hawkins's 2013 plea agreement, I had expected that, regardless of what the Parole Commission decided, Hawkins's state sentence would run until 2024.

18. I categorically deny Fields's counsel's reckless and false allegations that I conspired with anyone, particularly ASA Sexton, former Sgt. Brannigan, former Lt. O'Callaghan, or anyone else from DOJ, the SAO, or the Parole Commission, to have Earl Hawkins commit perjury in this Court by lying about the date he expected to be released from his federal and state prison sentences, or to obtain Hawkins's early release from those sentences in exchange for false testimony against Fields in the civil trial conducted before this Court last Spring; that I or anyone else from "the DOJ has been complicit in hiding materials sought in the

11

subpoena" to the Parole Commission; or that I "was in collusion with the cover-up regarding the individuals who were seeking the parole of Mr. Hawkins." I further categorically deny that there was any such conspiracy or cover-up of any nature at any time.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 9, 2015.

> */S/ William R. Hogan, Jr.*
> William R. Hogan, Jr.
> Assistant United States Attorney