IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHSON E. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 1168 |
| | ) | |
| CITY OF CHICAGO; former and current | ) | Judge Matthew F. Kennelly |
| Chicago Police Officers DAVID | ) | |
| O'CALLAGHAN, JOSEPH MURPHY, and | ) | Magistrate Judge Geraldine Soat Brown |
| DANIEL BRANNIGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S
PROPOSED *MONELL* DISCOVERY PLAN**

Defendant, City of Chicago, by its attorney, Terrence M. Burns of Dykema Gossett, PLLC, for its response to plaintiff's proposed *Monell* discovery plan, states:

The City has filed a motion to reconsider the Court's order granting plaintiff a new trial on his *Monell* claims. The City submits this response in the alternative to that motion.

**I.     Response to Proposed Step One**

Plaintiff's counsel first viewed the file cabinet believed to have contained the subject file when it was on the second floor of Area 1 in 2012. That file cabinet along with other file cabinets housed at Area 1 and other detective division areas were relocated to the basement of 51st and Wentworth during the pendency of this case in connection with the reorganization of the five detective division areas (Areas 1-5) into three detective division areas (Areas North, Central and South). It is unclear why plaintiff's counsel has now focused on all of the file cabinets stored in the basement when many of them were not at 51st and Wentworth during plaintiff's criminal proceedings.

There were roughly 2,700 RD numbers associated with the files in the basement. The City has a list of them. The City's review found that about 650 people were prosecuted by the State in those cases. The City did not identify which of the cases were charged federally. Because there could be more than one person charged in a particular case, the number of charged cases is less than 650. Following the Court's February 4, 2015 order (Dkt 808), the City scanned all of the charged state case files onto a disc. The originals of those files are currently together as the scanning process was only recently completed. The non-charged files were moved to storage or the relevant Area in accordance with this Court's order, meaning that they are no longer housed together. The non-charged files were not scanned. Thus, the 2,000 plus files would need to be retrieved from their current location to "recreate" them in the way they were prior to this Court's February 4, 2015 order for the plaintiff's attorneys to review them.

Because non-charged cases cannot result in a *Brady* violation, the City opposes plaintiff's proposal that it recreate the Area Central basement files. To the extent there may be federally charged cases among those files, the City suggests providing the list of the files to plaintiff's counsel. If plaintiff's attorney identifies any federally charged case files they would like to review, the parties could meet and confer about production of those files.

The charged case files that have been scanned cover a period of many years, from 1944 to 2006. It would be overly broad to require the production of all of those case files in the subject case. A reasonable period of time around the 1984 incident in question should be identified. The City could then produce a disc to plaintiff including the charged case files from that identified time period. Because the files contain sensitive personal information of witnesses, crime victims, and their family members, as well as potentially other private information, the City would request a protective order be entered before production of any file.

Once these files are produced, plaintiff suggests that the court file, the criminal defense attorney's files, and the prosecutor's files would need to be gathered for each case. A review of the files and substantive analysis would then be necessary to determine if any *Brady* material was withheld. The City agrees this will be a time-consuming process in light of the volume of material requested, and adds that it will likely require depositions of persons involved in any cases identified by plaintiff as having a *Brady* issue.

**II.     Response to Proposed Step Two.**

**A.     The City Opposes Plaintiff's Request to Re-Depose James Hickey and Kathleen Loughran.**

Plaintiff offers no legitimate justification to re-depose Hickey and Loughran. Plaintiff had the opportunity to depose them during discovery, and both of them testified at both the first and second trials. The issue of Loughran's testimony was discussed at length in the post-trial briefing. (Dkt 766 at 47-48 and Dkt 770 at 11-15). In that briefing, Plaintiff failed to identify any meritorious basis for post-trial discovery in connection with that testimony. Nevertheless, the City voluntarily provided the policy that went into place in 2011 (Detective Division Special Order 11-01) after plaintiff's 2009 trial. (Dkt 813 at 5).

Plaintiff continues to incorrectly allege that Loughran's testimony was "knowingly false" regarding the file retention policy. Special Order 86-3 was in effect at the time of plaintiff's trial and was folded into Chapter 18 of the Detective Division Standard Operating Procedures in 1988. As Jim Hickey testified on plaintiff's questioning at the first trial, the file retention policies in Special 86-3 and Chapter 18 are the same. (3/17/14 Transcript of Trial at 1388-89). Apparently satisfied with that information, plaintiff's counsel did not ask those questions of Mr. Hickey at the second trial. While Loughran did believe Special Order 86-3 was the policy in

3

place in 2009 and so testified, she was correct as to the content of the file retention policy. The continued allegation that Loughran "lied" or provided "knowingly false" information is not supported. More to the point, it does not justify a fourth opportunity for plaintiff to question these two individuals as plaintiff already has the information he seeks.

### B. Additional Depositions

Based on the same argument that Loughran and other unidentified witnesses testified incorrectly about whether Special Order 86-3 or Chapter 18 was in effect in 2009, Plaintiff next asks for the deposition of the director of research and development and the "detective division archivist." Jim Hickey is the assistant director of Research and Development and plaintiff has had multiple opportunities to question him under oath in this case. What's more, Hickey testified at his 2012 deposition that he reviewed the 1988 Detective Division SOP dealing with investigative files (i.e. Chapter 18) that went into effect after 1983, and Chapter 18 was produced to plaintiff in discovery. It is entirely unclear what additional discovery would be necessary or appropriate to conduct at this point that plaintiff has not already received.

As for the detective division archivist for Area Central, while plaintiff already deposed individuals from Area Central with record keeping responsibilities, we are not aware of the existence of an archivist position at CPD, though we continue to investigate the issue. In the event such a position exists, as explained above, it does not appear that any additional discovery from this person would be necessary.

### C. Rule 30(b)(6) Witnesses.

Plaintiff suggests that the City produce Rule 30(b)(6) witnesses on a variety of topics, but does not state why he needs any of the information. It is therefore difficult for the City to substantively respond to plaintiff's requests. However, it appears plaintiff is already in

possession of much of the information he requests, including the general nature of the basement files, the reorganization of the Areas that resulted in storing file cabinets in the basement after this litigation was filed, the file retention policies from 1984 to the present, and the subpoena process. The request for information after plaintiff's 2009 trial, which plaintiff characterizes as remedial, also appears on its face to be irrelevant, as do the inquiries of the City's policies up to 2015. As a result, based on the plaintiff's current proposal, the City objects to plaintiff's Rule 30(b)(6) requests at this time.

### D. Written Discovery

The City is not necessarily opposed to additional written discovery, but would need to review the requests to provide its specific position.

Respectfully submitted,

s/ Daniel M. Noland
One of the Attorneys for City Defendants

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2015, I electronically filed the foregoing **City Defendant's Response to Plaintiff's Proposed *Monell* Discovery Plan** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

H. Candace Gorman
Adrian J. Bleifuss Prados
Andrew D. Finke
Law Office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago, IL 60661
312.427.2313
hcgorman1@gmail.com
ableifuss@gmail.com
andrew.finke@gmail.com

s/ Daniel M. Noland