1            IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3

4 NATHSON E. FIELDS,         )

5               Plaintiff,   )   Docket No. 10 C 1168

6           vs.         )

7 CITY OF CHICAGO, et al.,   )   Chicago, Illinois
                     )   April 27, 2015
8           Defendants.  )   9:15 a.m.

9

10              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY
11 APPEARANCES:

12

For the Plaintiff:    LAW OFFICES OF H. CANDACE GORMAN
13                  BY:  MS. H. CANDACE GORMAN
                 220 South Halsted Street
14                  Suite 200
                 Chicago, Illinois  60661
15

16 For the United States: UNITED STATES ATTORNEY'S OFFICE
                 BY:  MR. JAMES M. KUHN
17                  219 South Dearborn Street
                 Suite 500
18                  Chicago, Illinois   60604

19

20

For the Defendant:    DYKEMA GOSSETT PLLC
21                  BY:  MR. TERRENCE M. BURNS
                    MR. DANIEL M. NOLAND
22                  10 South Wacker Drive
                 Suite 2300
23                  Chicago, Illinois  60606

24

25

CITY OF CHICAGO - DEPARTMENT OF LAW
        BY:  MS. LIZA M. FRANKLIN
        30 North LaSalle Street
        Suite 1400
        Chicago, Illinois    60602


COOK COUNTY STATE'S ATTORNEY
        BY:  MS. LISA M. MEADOR
        500 Richard J. Daley Center
        Chicago, Illinois    60602


KULWIN, MASCIOPINTO & KULWIN, LLP
        BY:  MR. SHELLY B. KULWIN
        161 North Clark Street
        Suite 2500
        Chicago, Illinois    60601

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois   60604
(312) 435-5785

1      (The following proceedings were had in open court:)

2          THE CLERK:  Case number 10 C 1168, Fields v. City of

3   Chicago.

4          THE COURT:  Just come up and stop.  I left my papers

5   back there.  I've got to go get them.

6      (Brief interruption.)

7          THE COURT:  Okay, go ahead.

8          MR. KUHN:  Good morning, your Honor; James Kuhn for

9   the United States.

10          MS. MEADOR:  Good morning; Lisa Meador on behalf of

11  Larry Wharrie.

12          MS. FRANKLIN:  Good morning, your Honor; Liza

13  Franklin on behalf of the City of Chicago.

14          MR. BURNS:  Good morning, your Honor; Terry Burns on

15  behalf of the City of Chicago defendants.

16          MR. NOLAND:  Dan Noland for the City defendants as

17  well.

18          MS. GORMAN:  Candace Gorman for Mr. Fields.

19          THE COURT:  I thought I saw something of a new lawyer

20  or something like that.

21          MR. BURNS:  There is a motion that's pending, your

22  Honor.

23          THE COURT:  Is he going to be here today?

24          MR. BURNS:  He is here.

25          MR. KULWIN:  I am here, Judge.

1          THE COURT:  Get up here because one of the things

2  we're going to do is set a trial date, set a new trial date,

3  and you need to be part of that.

4          So your motion is noticed up for Thursday, right?

5  Give your name, if you would.

6          MR. KULWIN:  Shelly Kulwin.

7          THE COURT:  All right.

8          And are you going to be an additional or the sole

9  person for Mr. O'Callaghan?

10          MR. KULWIN:  Sole.  We'll have a joint defense.

11          THE COURT:  Understood, okay.

12          MR. KULWIN:  Assuming -- pending what you do on the

13  trial date.

14          THE COURT:  So there is a motion to substitute.  It's

15  document 824, Pam.  It's granted.

16          Okay.  So I guess in terms of the sequence, I'm glad

17  Ms. Meador is here because I wasn't sure whether anybody would

18  be here for the County defendants.

19          MS. MEADOR:  Well, I wish I could say I was happy

20  about it, Judge.

21          THE COURT:  No, I understand.

22          I need to give you time to respond to this motion.

23          MS. MEADOR:  Yes, your Honor.

24          THE COURT:  How long would you like?

25          MS. MEADOR:  Two weeks.

1    THE COURT:  Two weeks is the 11th of May.  The reply
2  is due the 18th of May.
3    MS. MEADOR:  You know what, Judge, if I may,
4  actually, plaintiff's motion said that they're prepared to
5  file a full brief on it.  I want all of her arguments out
6  there --
7    THE COURT:  Time out.
8    MS. MEADOR:  -- before I respond, now that I think
9  about it.
10    THE COURT:  I'm not seeing that in this.  It's a two-
11  page motion.
12    MS. MEADOR:  Yes.  It's at the end of the second to
13  the last paragraph, before the "wherefore" paragraph:
14  "Plaintiff stands ready to submit a short brief in support of
15  this position."
16    THE COURT:  Okay, fine.  When do you want to do that?
17    MS. GORMAN:  If I could have the 18th?
18    THE COURT:  No, you can't.  You can have the 11th.
19  So the plaintiff's memorandum in support is to be submitted.
20  And when I say "short," so we're going to define "short" right
21  now.  That means it can't be more than eight pages.
22    MS. GORMAN:  That's fine, your Honor.
23    THE COURT:  All right.  So the 25th is a holiday.
24  The 26th is the day for the County defendant's response.  And
25  any reply is due a week after that, which is the 2nd of June.

1  So that's done.

2      All right.  So I think the next thing we have got to

3  talk about is discovery because it's likely going to have, or

4  it might have some impact on when I set the trial date for.

5      So it's going to be -- Mr. Meyer, I'm going to guess

6  it's probably going to be 10, 15 minutes before I get to you.

7  If you don't want to sit in here and listen, you don't have

8  to.  And whoever is here, the same for you, you don't have to

9  hang around unless you want to.

10      So let's talk about the Monell thing first.  So I got

11  the plaintiff's position paper, for want of a better word on

12  that, and I got the defendants' response.  So you're talking

13  about a step one and a step two, step one being it's basically

14  dealing with records and step two being depositions, if any.

15      And the issue that is raised, if I'm understanding it

16  correctly, in the defendant's, the City defendants' response,

17  is that, wait a second, this is --

18      Well, it's a couple of issues.  Number one, this is

19  really only an issue on cases that actually end up getting

20  charged because if the case wasn't charged, there would never

21  have been an obligation to produce anything.

22      You don't disagree with that, I'm assuming.

23      MS. GORMAN:  I don't disagree with it, your Honor.

24  The only problem is that we haven't been able to go through to

25  make sure that they did an adequate job of determining which

1  ones were added.

2          THE COURT:  You haven't been able to cross-check the

3  list.

4          MS. GORMAN:  Right.

5          THE COURT:  How was the list created?  I'm assuming

6  that's you.

7          MS. FRANKLIN:  That's me, your Honor.

8          The first time a list was created, members of the

9  Chicago Police Department went through every file in the

10 cabinet and wrote down the record division number.  The

11 cross-check I did personally where I and four or five lawyers

12 from my office went through and double-checked to make sure

13 that every RD number that was on a file was on the list.  So I

14 can tell you that there is a list.

15         THE COURT:  It's a comprehensive list.

16         MS. FRANKLIN:  Exactly.  It is a list of every single

17 RD number that was in that basement.

18         THE COURT:  So then how do you cross-check that to

19 determine whether there was actually a case?

20         MS. FRANKLIN:  Well, Linda Peters, a deputy in the

21 law department, went through and ran every number -- I did

22 some of them -- ran every number through the Cook County

23 mainframe to determine if it had been charged.

24         THE COURT:  You know, this may or may not have

25 changed since the old -- I mean, 16 plus years ago, I would

1    have looked in that computer.  I suppose it's conceivable, it

2    being the government, that the computer system is still the

3    same, but I suspect it's changed.

4         So there is a way that you can search an RD number

5    through the Cook County system and determine whether there is

6    a corresponding case.

7         MS. FRANKLIN:  Yes, your Honor.

8         THE COURT:  And I think that's probably always the

9    case, or at least that field was in that data.

10        MS. FRANKLIN:  Yes.

11        THE COURT:  So somebody did that and then came up

12   with list of which ones there were cases for.

13        MS. FRANKLIN:  Yes, your Honor.

14        THE COURT:  Okay.  All right.  So if you were going

15   to try to double-check or cross-check that, what would you do?

16        MS. GORMAN:  I would want to look at the actual

17   files, your Honor, because I have looked in those files and I

18   know that there's actually indications in the file as to

19   whether or not they have been in the court system.  And the

20   reason that I would want --

21        THE COURT:  What is the total number of files you're

22   talking about?

23        MS. GORMAN:  The total number of files is like 2,700.

24        THE COURT:  And how many filing cabinets?  I remember

25   there were like four or five per filing cabinet.  How many

1   filing cabinets were there?

2           MS. GORMAN:  22, 23.

3           THE COURT:  That's the total universe is 20-ish.

4   Anyway, go ahead and finish what you were going to say.

5           MS. GORMAN:  I know there was an issue with some

6   recycled numbers.  The old numbers from some of the older

7   cases were used again for a new RD number.

8           THE COURT:  RD numbers were reused.

9           MS. GORMAN:  Correct.

10          MS. FRANKLIN:  That has also been checked, your

11  Honor.  Those that had been charged, there is one charge, and

12  those files have been copied.

13          THE COURT:  Okay.

14          MS. GORMAN:  And the other issue is the federal cases

15  and the --

16          THE COURT:  Oh.  So if a case was indicted in federal

17  court, it wouldn't show up in a Cook County computer, but

18  that's going to be a tiny number of cases.  I mean, really,

19  it's going to be -- there's going to be some gun cases.  And

20  unless things have changed dramatically in a lot of the gun

21  cases, they would also been a Cook County case.  And then they

22  would have gotten indicted over here, and the state case would

23  have been dropped.

24          There would have been some murder cases, I suppose,

25  that ended up as part of some sort of federal prosecution, I

1  mean, as was the case with some of the stuff we dealt with

2  here, but that's a small universe, too, just from my own

3  somewhat semi-informed understanding.  Some drug cases, but

4  same deal:  Good chance that there would be -- maybe not as

5  good a chance, good chance there would be also a state court

6  case.

7              But the problem is that there is no way to look at

8  the RD number in the federal thing.  It's all by names, so you

9  would have to -- and a lot of names are going to be common

10  names.  I mean, you might have James Williams, for example.

11  Like how many James Williamses are there?  About 5,000

12  probably.

13              So let me just jump ahead a couple of steps here,

14  though.  So you want to make sure that you have got as

15  comprehensive a list as possible of what files ended up as

16  actual cases because that's what allows you to then go and

17  figure out, okay, was the material in this folder here

18  produced in the case.  I can't imagine that you're actually

19  expecting -- let's say it ends up being 2,500.  Let's say it

20  ends up being 2,700.  You're not planning to go talk to 2,500

21  lawyers.

22              MS. GORMAN:  No.

23              THE COURT:  You're going to do some sort of a sample

24  of them.

25              So here is my question.  If we already know that

1    there are 2,500, right, 2,500 of those cases?

2              MS. GORMAN:  No.

3              THE COURT:  So what's the number?

4              MS. FRANKLIN:  It's less than 700.

5              THE COURT:  All right, whatever.  So let's say you

6    have got 650 cases, and let's say in theory you might come up

7    with another hundred or 200, but you have already got 650.

8    Isn't that enough for you to come up with some sort of sample

9    without having to go through this whole first step of double-

10   checking whether they literally have a comprehensive list of

11   all the cases?

12             MS. GORMAN:  I think so, your Honor.

13             THE COURT:  It sounds like it ought to be.

14             Okay.  So then once you have the universe, then --

15             All right, so that was the first issue.  So the first

16   issue that the defendants raised was they didn't all end up in

17   cases.

18             And then the second issue that the defendants raised

19   regarding what you referred to as step one is it doesn't make

20   any sense to go from, you know, 1940 whatever to 2006.  And I

21   need a little bit of a refresher on how these things were

22   filed.  Was it by year, or is it by RD number or what?  I've

23   forgotten.

24             MS. FRANKLIN:  Oh, I'm sorry, your Honor.

25             THE COURT:  In the filing cabinets, in other words,

1  how are they organized?

2              MS. GORMAN:  Maybe I can --

3              THE COURT:  Do you remember?

4              MS. GORMAN:  Because they're supposedly by dates, by

5  year, but then we found --

6              THE COURT:  By year of what, of the crime?

7              MS. FRANKLIN:  Of the incident.

8              MS. GORMAN:  Yes, of the incident.

9              THE COURT:  Of the incident, okay.

10             MS. GORMAN:  But we found going through the files

11 that they were actually a hodgepodge.

12             THE COURT:  That there were some that weren't where

13 they ought to have been if it was done by date.

14             MS. GORMAN:  Right.

15             THE COURT:  And I also don't remember -- not that it

16 would necessarily make a difference.  The filing cabinets, did

17 they have like labels on the drawers, like these are the 1978

18 files and these are the 1994 files?

19             MS. FRANKLIN:  They did, your Honor, but in all

20 fairness, sometimes the label was not accurate.

21             THE COURT:  Okay.  So assuming that one could come up

22 with a relatively practicable way of identifying, you know,

23 within some sort of reasonable degree of certainty what files

24 relate to what years, the defendants --

25             MS. FRANKLIN:  We can do that.

1         THE COURT:  Yes, okay, fair enough.

2         The defendants' proposal is that we ought to bracket

3 it some time around 1984, X number of years before, X number

4 of years after.  Putting aside what the bracket should be,

5 what is your view on that, just conceptually?

6         MS. GORMAN:  Your Honor, I think, first, because this

7 is all available on disk now -- she just got all of them, and

8 I should be able to make the determination.

9         THE COURT:  Everything is on the disk, the whole --

10         MS. FRANKLIN:  Yes, your Honor.

11         THE COURT:  The whole schmear is on a disk?

12         MS. FRANKLIN:  Yes.  Well, it's on a hard drive.

13         THE COURT:  Yes.  It would be a lot of disks.

14         MS. FRANKLIN:  Yes, but we can burn them to a hard

15 drive.

16         My concern is the privacy interests of the people in

17 there as well as some of them are juvenile records, and I

18 don't particularly want to go to jail for the Juvenile Record

19 Act.

20         MS. GORMAN:  Well, I don't know how --

21         THE COURT:  How would you cull out?  So you're going

22 to have to do that anyway under any scenario.  I mean,

23 potentially you would have to cull out the juvenile ones.  Are

24 those tagged separately?  They probably aren't, are they?  You

25 would have to actually go into the file and see how old the

1    person is.

2           MS. FRANKLIN:   I will have to go take a look, your

3    Honor.

4           MS. GORMAN:   And then I'm not sure if they were tried

5    as adults, if that would be even come into effect.

6           THE COURT:   Yes.   I mean, you wouldn't know that

7    without even doing another step probably because the police

8    department file wouldn't necessarily identify what court the

9    thing ended up getting prosecuted in.

10          MS. GORMAN:   Your Honor, my other problem with

11   limiting the scope of the years is that this is a Monell

12   claim, and I want to show that --

13          THE COURT:   Yes, it's a Monell claim, but you have

14   got to keep one thing in mind.   So part of --

15          And, you know, without getting them to try to

16   relitigate it, part of what was -- part of the background here

17   was that there was this whole change in policy that happened

18   not too far removed from the time that Mr. Fields' case was

19   originally tried in the state court.   And so just pulling a

20   year out of the air, something from 1957, that's not going to

21   tell you anything about anything, and something from 2006

22   probably not either.

23          So here's what I think ought to happen here.   So,

24   first of all, there is no way on God's green earth that you

25   are going to actually go through each document and actually,

1  you know, go about the whole business of trying to find out

2  whether the materials in the file, in the file cabinet, were

3  produced in the criminal case.  You are going to have to come

4  up with a sampling method of some sort.

5       I think what you ought to do is you ought to sit down

6  with whoever -- I don't know if it's Ms. Franklin or if it's

7  the people in here kind of collectively or what -- and you

8  ought to try to come up with some sort of agreement as to this

9  is how we're going to go about doing it.  And if you can't

10 come up with an agreement, I will come up with something.

11 But, I mean, I think that it would make more sense for you to

12 try to do that in the first instance.  So that's what I want

13 you to do.

14      And, you know, Mr. Kulwin, obviously, and Mr. Burns

15 and someone can be -- maybe, Ms. Meador, you ought to be

16 involved in it just in case, depending upon what happens on

17 the new trial thing.

18      And then I think what I want to have you do is then

19 come back and give me a report before you come back saying

20 either, this is what we have agreed to or we can't agree, this

21 is my position, this is your position, and then I will just

22 decide it.  But it shouldn't take you too long to kind of

23 figure out what your positions are and see if you can come up

24 with an agreement.

25      So my goal, my idea would be to have you come back in

1    about three weeks or something like that, and then have you

2    file a status report.  Even if it's only a day or two before

3    that, that would be plenty.  Okay.  So that's another date we

4    have got to talk about, three weeks.

5           So now I've also got Mr. Kuhn here.  And let me just

6    get that right stuff in front of me on that.  Bear with me.

7           (Brief interruption.)

8           THE COURT:  So as you stand there right now, what do

9    you have of the --

10          I mean, I think I've got the entire Hawkins parole

11   file.  There may be some dates, some personal information like

12   Social Security numbers or whatever, blacked out.  What do you

13   have?  I don't know what you have.

14          MS. GORMAN:  Well, I gave the Court what I have, but

15   all I know is that my file is about half an inch thick and

16   yours is like an inch and a half.

17          THE COURT:  Yes, something like two inches.

18          MS. GORMAN:  But I did give the Court under seal a

19   copy of what I had.

20          THE COURT:  Oh, that's what that was, okay.  All

21   right.

22          So, Mr. Kuhn, in terms of the types of information in

23   that file that you or the government would contend ought not

24   to be produced to anybody even if I have concluded the file

25   itself is relevant, what types of information are we talking

1    about?

2          MR. KUHN:  There are four sections, and I haven't

3    looked through it in a while.

4          THE COURT:  Yes, fair enough.

5          MR. KUHN:  One section -- we probably didn't complete

6    -- one section, we gave it a complete section with redactions,

7    personal and security information.  And that was the part that

8    dealt with the -- calculations, the Bureau of Prisons'

9    calculations and everything else.

10         I know there is one section that has court documents

11   in it, a presentence report and the like.  I don't know that

12   that should be turned over.  I don't have the authority to

13   turn it over apparently.

14         THE COURT:  Yes.  I do.

15         MR. KUHN:  And our main concern is privacy and --

16         THE COURT:  So, but what I was really asking, in the

17   stuff that you -- what would be the kind --

18         In other words, if somebody said, you have got to

19   turn over the whole thing, what would you want to black out?

20   When you said "personal and security information," be more

21   specific.  What are you talking about?

22         MR. KUHN:  Well, because Mr. Hawkins --

23         THE COURT:  Location information, in other words?

24         MR. BURNS:  Location and personal information about

25   him and his family and some security information relating to

1  his status in the institution.

2  THE COURT:  Okay.  All right, I will come back to

3  that in a second.

4  (Brief interruption.)

5  THE COURT:  The thing that I got from the plaintiff

6  on this, once it gets past the Hawkins information, talks

7  about Mr. Kees, K-e-e-s; Randy Langston; and Jackie Clay.  So

8  kind of taking that in reverse order --

9  Let me ask you this question.  You have seen --

10  I'm looking at this section of the City defendants'

11  response relating to Mr. Clay.  So you haven't abandoned it

12  because you're asking for it now.  So let me just ask Mr.

13  Noland or Mr. Burns.  So your position on -- and I'm putting

14  aside the privacy issue, which is more I think Mr. Kuhn's

15  thing, I think, at this point.  But your position on the

16  relevance of that is?

17  MR. NOLAND:  Judge, I don't think the plaintiff has

18  made a case for pursuing anything.

19  THE COURT:  Is the argument that it's speculative?

20  That's kind of what you told me on Hawkins, so that isn't

21  going to get you very far, to be blunt, okay.  So it's

22  relevant.

23  And so then we're going to talk about what needs to

24  be redacted from this.  And maybe the answer is there is

25  nothing, but what I --

1          Remind me how the process worked when you subpoenaed
2   or when you sought Mr. Hawkins' file.  You served a subpoena.
3          MS. GORMAN:  Yes.  First I got --
4          THE COURT:  You got my okay to do it, and then you
5   served a subpoena on who?
6          MS. GORMAN:  I served it on the --
7          THE COURT:  Parole commission?
8          MS. GORMAN:  The parole commission in DC with the
9   Touhy letter.
10          THE COURT:  With the Touhy letter, right.
11          MS. GORMAN:  And then Mr. Kuhn contacted me from
12   here.
13          THE COURT:  Yes.  So you would assume that if there
14   was some request for current information regarding Mr. Clay's
15   status, it would probably follow that same course.
16          MS. GORMAN:  Correct.
17          THE COURT:  It probably wouldn't be the parole
18   commission, though.  It probably would be the U.S. marshal,
19   and they would probably get in touch with Mr. Kuhn, and Mr.
20   Kuhn would get in touch with you.  All right, so let's put
21   Clay aside for a second.
22          The City defendants say they don't have any objection
23   to the request for the parole file relating to Mr. Kees,
24   parole file letters relating to Mr. Kees.  So we don't need to
25   worry about that.

1     Langston, let just me reread what the defendants said
2  here to myself.
3     (Brief interruption.)
4     THE COURT:  The copy of the judgment of revocation by
5  Judge Gettleman, I mean, why can't you just get that off of
6  Pacer?
7     MS. GORMAN:  It's not available.  It tells me I'm
8  not --
9     THE COURT:  You're not an authorized user.
10     MS. GORMAN:  Right.
11     THE COURT:  Really, a judgment on revocation?  I
12  mean, I know that's true of judgment and commitment orders
13  generally, but I didn't know it was true on revocation orders
14  because there's --
15     Even on a regular sentencing order, there is a part
16  of it that is publicly available.
17     MS. GORMAN:  And that's my Exhibit C.
18     THE COURT:  Right.
19     MS. GORMAN:  But when you click on the --
20     THE COURT:  When you click to ask for the thing?
21     MS. GORMAN:  Right.  It says it's not available.
22     THE COURT:  It's not.  I'm just telling you -- I
23  mean, I have been doing this for 16 years -- the judgment
24  isn't going to tell you anything else.
25     MS. GORMAN:  Okay.

1       THE COURT:  I guess I'm just not seeing a reasonable

2   basis to go any further on Langston.  I mean, you will ask him

3   whatever you ask him if he testifies at the next trial.

4       So I think what you need to do then is you need to

5   serve promptly, serve a subpoena on whoever for the Kees

6   parole commission file, or parole file, whatever you call it,

7   and on the Clay witness security thing.  And I think I'm sort

8   of inclined to let that process play out before I get involved

9   in it, so you can go ahead and do that, not the Langston one,

10  the Hawkins one we have talked about, or we have not talked

11  about.

12      So I guess what I'd like -- what I'm going to ask Mr.

13  Kuhn to do on the Hawkins file is to -- you know what the

14  entire universe is, okay, and you have got the entire

15  universe; I've got the entire universe.  I think what you need

16  to do is you need to produce what you can produce, redact what

17  you think ought to be redacted, and provide sort of the

18  equivalent, rough equivalent, of what I would call a privilege

19  log.  In other words, you say, well, I redacted these pages

20  because it's a presentence report, and under Rule 32 of the

21  Federal Rules of Criminal Procedure, we can't produce that

22  without an order from the Court.  I redacted, you know,

23  certain information on this page because it contains location

24  of family information regarding Mr. Hawkins.  Do something

25  like that.

1       And then you will know what it is that -- the basis

2   for whatever redactions there are, and that will allow

3   whatever further steps I have to take, if any.  It may be that

4   you have got what you need at that point and I don't have to

5   do anything, but that will at least give you something to

6   start with.

7       MS. GORMAN:  Can I tell you the problem I have with

8   that?

9       THE COURT:  What's the problem with that?

10      MS. GORMAN:  When I got the limited file originally,

11  there was a name redacted that I think was Mr. Hogan's name

12  and I addressed that.

13      THE COURT:  I'm not saying it.  I'm not saying that

14  the redactions are going to be the end of the day, okay.  What

15  I'm saying is I want him to get you what he can get you.  He

16  is going to redact what he thinks he ought to redact, like a

17  discovery request in a civil case, because that's what this

18  is.  He's going to provide a privilege log or the equivalent

19  of a privilege log for the stuff that is redacted.  If you

20  dispute it, then you will discuss it.  If you can't work it

21  out, you will file a motion and I will rule on it.  And I've

22  got the whole thing.

23      I mean, with the exception, I think, of Social

24  Security numbers deleted, I've got the whole thing, and so I

25  will then deal with it.  But I'm not going to jump all the way

1  to the end at this point.  I mean, it may be that people will

2  take different positions than they took before on what ought

3  to and what ought not to be redacted.

4  MS. GORMAN:  Also, I would just like to point out to

5  the Court, I do have a security clearance.  I mean, I should

6  be able --

7  THE COURT:  I know.  I get it.  But that doesn't

8  necessarily mean you get to find out where somebody who is in

9  witness protection is.  In fact, the odds are you don't.  I

10  don't even want to know, okay.  So that's the way we're going

11  to do it.

12  We just need to come up with --

13  So what would be a reasonable time for you to do

14  that, Mr. Kuhn?

15  MR. KUHN:  If I could have two weeks, your Honor.

16  THE COURT:  There you go, the 11th of May.

17  So the Hawkins material with a privilege log is to be

18  produced by the 11th of May.  So that's another date that we

19  have got kind of in the list at this point.

20  All right.  So as far as -- jumping back to the

21  Monell thing, as far as step two and really as far as whether

22  there's a step two, I don't really know whether there is going

23  to be a step two, okay, step two being depositions and

24  whatnot.  I guess my --

25  Well, I'm not going to say what my default assumption

1    was because it could be wrong, but I think we're just going to

2    have to wait and see on it.

3            So then we need to talk about -- the only other item

4    on my list, unless I've missed something, is a trial date.

5            MR. KULWIN:  Judge?

6            THE COURT:  Yes.

7            MR. KULWIN:  From briefly reading the order you

8    issued today, I got the impression that you were looking for

9    briefs on --

10            THE COURT:  You know what, you're right.  That's the

11    one thing I missed.  Thanks for bringing that up.

12            So we'll call it a supplement to the motion -- or to

13    points.  I think it was points 5 and 6 in the motion.  It was

14    points 4 and 5 in my order.  So how long do you want to do

15    that?

16            MR. KULWIN:  Well, Judge, just getting --

17            THE COURT:  I'm not taking into consideration the

18    fact that you're new because there are plenty of people here

19    who are five years old.

20            MR. KULWIN:  I was going to say that.  I would work

21    with them.  I was hoping for 28 days.

22            THE COURT:  No.

23            MR. KULWIN:  Okay.  21 days?

24            THE COURT:  You get the same two weeks.

25            MR. KULWIN:  14.

1    THE COURT:  11th of May.  And you're just addressing

2  one point.  It's really two halves of one point, and so it's a

3  supplement to the defendants' motion, or the City defendants'

4  motion, to reconsider to be filed by the 11th of May.

5    And then I'm going to have you come back, I think --

6  well, no, I'm just going to set the rest of that schedule.

7    Then the plaintiff's response to the remainder -- the

8  remaining part of the motion to reconsider is due two weeks

9  after that, which is not the 25th because that's a holiday;

10  it's the 26th.  And then the reply is due by the 2nd.  So that

11  is basically going to be on the same schedule as the motion

12  for new trial relating to the Cook County defendants.

13    Anyway, the trial.

14    MS. GORMAN:  Your Honor, there is one other issue.

15    THE COURT:  What's the other issue?

16    MS. GORMAN:  The interim fee petition.

17    THE COURT:  Yes.  Well, so this is -- as I see this,

18  this is part of what is all intertwined or wrapped up with the

19  request by the defendants that if there is a new trial, it's

20  got to concern everything and not damages.  It really is,

21  okay, because if there is a new trial on the one claim on

22  which the plaintiff prevailed and it's confined to damages,

23  you're a prevailing party.  It's just a question of how much

24  you end up prevailing, okay.

25    And that's why I didn't simply just deny the motion,

1   and that's why I didn't set a briefing schedule because I

2   wanted to find out from you.  If the defendants end up being

3   correct, that if there is a new trial, it has to concern

4   everything, liability and damages, then perhaps you're not a

5   prevailing party anymore.  And so I think that's all kind of

6   knotted up together.

7                   MS. GORMAN:  Okay.

8                   THE COURT:  I mean, I don't see any other way to look

9   at it.  I know it's still out there, obviously, and so I think

10  it's going to have to wait and see what I do with that part of

11  the motion to reconsider.

12                  So before we start talking about trial dates, are

13  there any other issues that people think I missed or skipped

14  over or want to address?

15                  MR. BURNS:  No.

16                  THE COURT:  Okay.  So what I'm kind of looking at is

17  December.

18                  MR. KULWIN:  I'm sorry, your Honor?

19                  THE COURT:  December.

20                  MR. KULWIN:  December?

21                  THE COURT:  December, yes, of this year.  You could

22  say December of the year 2017, you know, I suppose.

23                  MR. KULWIN:  December is fine.

24                  THE COURT:  Remind me, on the one that went all the

25  way to the end, how long it took.  If you don't count the

1  little damages piece of it, how long?  Was it two weeks,

2  10 days, 12 days?  What was it?

3         MS. GORMAN:  It was just over two weeks, I believe,

4  your Honor.  I think it went into the Monday or Tuesday.

5         THE COURT:  Does that sound about right to you?

6         MR. NOLAND:  It started April 10th, and the verdict

7  was May 1st.

8         THE COURT:  Yes, but that included deliberations and

9  damages.  So if we're talking about actual trial days, not

10  counting the little bit that came up on damages, was it 10

11  days or was it --

12         MS. GORMAN:  I think it was --

13         MR. BURNS:  More than that, Judge.

14         MS. GORMAN:  I think it was 12 days, your Honor.

15         THE COURT:  Let me see here.  I think I've got

16  something that will tell me.

17      (Brief interruption.)

18         THE COURT:  I have it down to 16 days, but I think

19  that includes the second part, though.

20         MS. GORMAN:  And there were the three days of

21  deliberations.

22         THE COURT:  I didn't include that in the 16 days

23  part, I'm pretty sure.  But I have it starting on the 7th.

24  Well, whatever, all right.

25         So I guess what I would propose would be the 30th of

1     November, the 30th of November, because that would give us a

2     full three weeks, the 30th of November being the last business

3     day in November.

4             Anybody got a conflict on those dates?

5             MS. GORMAN:  No.

6             MS. MEADOR:  Your Honor, since this is a newly filed

7     motion as to us, I do need to check with my client, who is a

8     practicing attorney.

9             THE COURT:  Yes.

10           MS. MEADOR:  Maybe if we can get back?

11           THE COURT:  You know what, I'm going to set it and

12     you will file a motion if there's a problem.

13           MS. MEADOR:  Okay, fine.

14           THE COURT:  The case is set for trial on the 30th of

15     November at 9:45.

16           All right.  So the next issue is when I have you come

17     back.  So Mr. Kuhn is going to do his thing in two weeks, and

18     you are going to have your discussions about the Monell stuff.

19     So I think I want to have you come back on -- I think I want

20     to have you come back on the 21st of May at 9:30, and I'd like

21     to get a status report on the Monell issue stuff, on the

22     Monell stuff, on the 20th of May.  As long as I have it a day

23     before, it's fine.

24           And it would be helpful if I could get from you

25     separately on that date, Ms. Gorman -- Mr. Kuhn isn't really a

1  party; if you want to contribute to it, that's fine -- a

2  status report on the parole file stuff that same day, the 20th

3  of May.

4            Okay.  So anything else anybody wants to bring up?

5  Okay, see you on the 21st of May.  Thanks.

6            MS. GORMAN:  Thank you.

7            MS. FRANKLIN:  Thank you.

8

9     (Which were all the proceedings had in the above-entitled

10 cause on the day and date aforesaid.)

11

12                  C E R T I F I C A T E

13

14         I hereby certify that the foregoing is a true and

15 correct transcript of the above-entitled matter.

16

17

18 */s/ Laura M. Brennan*                    May 4, 2015

19

20 _____      _____

21 Laura M. Brennan
   Official Court Reporter                    Date
22 Northern District of Illinois

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25