```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3

 4  NATHSON E. FIELDS,              )  Docket No. 10 C 1168
                                    )
 5                    Plaintiff,    )
                                    )
 6            vs.                   )
                                    )
 7  CITY OF CHICAGO, et al.,        )  Chicago, Illinois
                                    )  October 29, 2015
 8                    Defendants.   )  9:40 o'clock a.m.

 9
                TRANSCRIPT OF PROCEEDINGS - MOTION
10        BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
    APPEARANCES:
12

13
    For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
14                         BY:  MS. H. CANDACE GORMAN
                           220 South Halsted Street, Suite 200
15                         Chicago, IL  60661
                           (312) 441-0919
16

17  For Defendant
    City of Chicago:       DYKEMA GOSSETT PLLC
18                         BY:  MR. PAUL A. MICHALIK
                                MR. DANIEL MATTHEW NOLAND
19                         10 South Wacker Drive, Suite 2300
                           Chicago, IL  60606
20                         (312) 627-2100

21

22

23
    Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
25                         Chicago, Illinois  60604
                           (312) 435-5639
```

APPEARANCES CONTINUED:


For Defendant          KULWIN, MASCIOPINTO & KULWIN, LLP
David O'Callaghan:      BY:   MR. SHELLY BYRON KULWIN
                              MS. RACHEL ANNE KATZ
                       161 North Clark Street, Suite 2500
                       Chicago, IL  60601
                       (312) 641-0300


For Mr. Morris:        MS. HEATHER LYNN WINSLOW
                       53 West Jackson Boulevard, Suite 224
                       Chicago, IL  60604
                       (312) 332-0017

1　(The following proceedings were had in open court:)

2　　　　THE CLERK:  Case number 10 C 1168, USA v. Fields.

3　　　　MR. KULWIN:  Good morning.  Shelly Kulwin --

4　　　　THE COURT:  Let's start over here.

5　　　　MS. WINSLOW:  Good morning, your Honor.  Heather

6　Winslow representing Mr. Morris.

7　　　　MS. GORMAN:  Good morning, your Honor.  Candace

8　Gorman representing the plaintiff.

9　　　　MR. KULWIN:  Good morning, your Honor.  Shelly Kulwin

10　and Rachel Katz representing David O'Callaghan.

11　　　　MR. NOLAND:  Good morning, your Honor.  Daniel Noland

12　for the City, Mr. Murphy, and Mr. Brannigan.

13　　　　MR. MICHALIK:  Paul Michalik for defandants

14　Brannigan, Murphy, and the City.

15　　　　THE COURT:  Are you just here as an interested

16　bystander?

17　　　　MS. WINSLOW:  I am here as an interested bystander.

18　　　　THE COURT:  All right.  So can -- I know you cited

19　the pages of the transcript.  Can somebody or I guess both

20　sides give me -- just sort of review for me the basis on which

21　I allowed Mr. Morris' affidavits into evidence in the previous

22　trial.  Do you want to go first?

23　　　　MS. GORMAN:  No, I'm sorry.  I didn't look at that.

24　I mean, I looked at --

25　　　　THE COURT:  Mr. Kulwin?

1    MR. KULWIN:  Yes, Judge.  I think you had a number of

2  bases at the trial.  One was, as I recall it -- and we do set

3  it out in the brief; I was just looking at that.  One was you

4  struck the motion in limine on procedural grounds.

5    THE COURT:  Right.

6    MR. KULWIN:  Okay.  Then it came to trial.  As I

7  understood what you were ruling was essentially I believe as

8  follows, that since the transcript represents, for lack of a

9  better term, operative facts that aren't hearsay and they're

10  coming into evidence and since the defendant was using

11  Mr. Morris' testimony in those transcripts to prove that

12  Mr. Fields was guilty of the murder and therefore not

13  willing -- not due any reward under 1983 because he was, in

14  fact, guilty, okay, your position seemed to be that the

15  affidavit could be offered to impeach him as an out-of-court

16  declarant and also for substantive evidence to rebut the

17  argument.

18    THE COURT:  You cited a transcript page in here.  I

19  should have done this before, and I apologize for not doing

20  this.  Let me just go get it.  I have the whole transcript on

21  an iPad.

22    MR. KULWIN:  I'm sorry, Judge.

23    THE COURT:  That's fine.  Have a seat for a second.

24  I will go grab it and I will come back out.

25    (Brief pause.)

1    THE COURT:  Okay.  Just so it's clear, I just reread

2  the -- and there were earlier discussions, but I just reread

3  the discussion that preceded my ruling on the admissibility of

4  the affidavits at the previous trial.  That was on April 23rd

5  of 2014 from pages 2828 to 2832 of the transcript.  Okay.  I

6  just wanted to refresh my memory about that.

7    So I think there's been -- there was a response and

8  there was a reply.

9    MR. KULWIN:  Yes.

10   THE COURT:  Talk to me, whatever you'd like to tell

11  me.  Mr. Kulwin, it's your motion, you can go ahead.

12   MR. KULWIN:  Sure.  I don't want to burden the

13  record, Judge.  I think I laid it out over too lengthy --

14   THE COURT:  Let me tell you what my reaction is and

15  then you will have something to talk about.  My reaction is a

16  lot of decisions get made when litigating cases that when

17  looking back later, somebody says, well, if I had known then

18  what I know now, I would have done this different.  That's not

19  a basis typically to reopen discovery.  That's kind of the way

20  I see this even based on the way you pitched it.  I had no

21  idea that these affidavits were going to come in.  By the way,

22  I noticed in the transcript that one of them actually came in

23  at one of the prior trials.

24   MR. KULWIN:  Right.

25   THE COURT:  Anyway, so that's basically what you're

1   saying here.  If we had only known that these affidavits were

2   going to come into evidence, then we would have actually taken

3   Mr. Morris' deposition.  And so now that we know that they're

4   going to come in, we should be able to take his deposition.

5   Why is that different from the situation that I described?

6           MR. KULWIN:  Well, I'll respond to one point you

7   made, Judge, and then respond to the second point.

8           With respect to the affidavit that came in at one of

9   the prior trials in 2009, he also was able to testify that

10  he's recanting them.

11          THE COURT:  And that testimony actually came in at

12  the 2014 trial.

13          MR. KULWIN:  Right, the 2009 affidavit.

14          THE COURT:  His testimony --

15          MR. KULWIN:  I know.

16          THE COURT:  -- where he recants the affidavit.

17          MR. KULWIN:  Exactly, his recantation came in,

18  absolutely.  Now comes the 2011 which he recants the

19  recantation.

20          THE COURT:  He's recanted the recantation of the

21  recantation.

22          MR. KULWIN:  That's basically right.  You're

23  absolutely right, Judge, which makes him problematic on a

24  number of bases, but I would frame it slightly different.  The

25  way I look at it is if the point is to get the best evidence

1   and to make sure the trial is fair and if Mr. Morris is -- I
2   don't think there can be much dispute; I don't think there is
3   any dispute -- at a minimum, a central witness in the
4   plaintiff's case, and if the allegations are extremely pointed
5   and carefully drafted to basically -- and I mean no criticism
6   by this; I am stating a fact -- to basically track the theory
7   of the plaintiff's case, to let those in unchallenged when
8   we're months away from trial, when there's no prejudice to the
9   plaintiff to have it done, where there's even minimal expense
10  to the plaintiff since they can attend by video deposition if
11  they want, by video location, and it really lies -- you know,
12  it goes to the heart of a material aspect, at a minimum, of
13  Mr. O'Callaghan's defense, I think it's prejudicial.

14          I think it's important to have deadlines, I think
15  it's important to have closure, especially in this case, God
16  knows, because there's so much going on and the Court has had
17  to go through so much to deal with it.  I mean, at this point,
18  this is a central issue in the case, an extremely material
19  witness, who has a history of recanting when he is confronted
20  with, oh, you said this when you were in the comfort of your
21  home with a private investigator or lawyer for the plaintiff,
22  but now you're under oath on trial, you're being examined,
23  what's the real story here, and the jury should at least be
24  allowed to see this man's face on how he -- if he's sticking
25  with it, great, but let's see what he looks like when he

1     sticks with it so they can asses it.  Otherwise, they get an

2     affidavit, which I imagine the plaintiff is going to try to

3     read at the next trial, that basically is their closing

4     argument on a critical issue in the case from a guy who they

5     have never seen, don't know.  All they know about him is --

6                THE COURT:  Of course --

7                MR. KULWIN:  -- he has a history going back and

8     forth.

9                THE COURT:  -- what you said about the basis on which

10    Mr. Morris' testimony, which, likewise, came in by being read,

11    was put in not by the plaintiff, by the defendants.  The same

12    thing could be said about everything in this case.  The same

13    thing could be said about all of the witnesses that testified

14    at both of the criminal trials.  We should just come in and

15    replay all of the criminal trials and have them all in here

16    live.

17               MR. KULWIN:  That's different.  There is a

18    difference, though, Judge.  There's really a difference,

19    because, as I understand your ruling -- again, I could be

20    wrong about this, you know better than me on it, but you let

21    all of the testimony in from the prior trials because they are

22    the operative facts of the case.  The jury has to know all

23    those facts to know why Mr. Fields is claiming his

24    Constitutional rights were deprived.  They are like the terms

25    of the contract.  They go in whether they're hearsay or not.

1  They have to be in.  So those are coming in one way or the

2  other, and you don't need to depose -- that's not a fair

3  argument to make.  If I was sitting up there and you were here

4  making that argument, I would say, no, those are operative

5  facts, tough luck.  That's the gravamen of the case.

6          This is different.  This is outside of that.  This is

7  a witness who is saying everything you heard in those

8  operative facts is a lie.  Not only is it a lie, but

9  Mr. O'Callaghan put me up to it, and theoretically, the

10  spillover is that if Mr. O'Callaghan put me up to it, his

11  lawyers in this case -- I may be putting too fine a point on

12  it -- are to be be questioned as well because they are

13  sponsoring this testimony and they are representing me.  It is

14  I think -- I think that to allow that affidavit to go in with

15  no chance to cross-examine him on it -- I mean, I would

16  understand it if we were days away from trial.  We are not.

17  We are months away from trial and there is no prejudice to the

18  plaintiff, nor do they point to any, and there's no question

19  it's material, the plaintiff concedes it.

20          So we have a material witness whose testimony can be

21  taken out of court on a critical piece of evidence that goes

22  -- that is a seriously material aspect of the plaintiff's case

23  without any prejudice whatsoever.  And as the Courts have

24  said -- and we cite to some of them, albeit they are different

25  scenarios, I understand -- when you can get live testimony,

1    that is the preferred way to go.

2            THE COURT:  Ms. Gorman.

3            MS. GORMAN:  Your Honor, Mr. Morris' affidavits were

4    submitted more than a year before discovery was closed.  They

5    made no attempt, no attempt at all to take his deposition.

6    When Mr. Kulwin says no chance to cross-examine, that's just

7    not true.  They had a chance to cross-examine him and they

8    chose not to.  And then they filed a motion in limine late.

9    That's the procedural issue that they're talking about.  The

10   Court wouldn't entertain motions in limine long after the time

11   period for filing those was due.

12           So, you know, this is the hindsight, this is the

13   typical hindsight.  Now they can look at what happened in the

14   trial and say, oh, I wish did this.  They wished they took the

15   deposition, at least one of Mr. O'Callaghan's attorneys, the

16   current one.  I don't think there is any basis for them to

17   reopen discovery on this issue.

18           THE COURT:  Now that you've heard all of this, are

19   you anything other than an interested bystander?

20           MS. WINSLOW:  I guess not really until your Honor

21   rules.  If your Honor is inclined to grant the motion --

22           THE COURT:  If it's not until I rule, then don't say.

23           MS. WINSLOW:  Then I will keep it.

24           THE COURT:  Look, first of all, I think if you'll

25   reread the transcript, the pages that I just cited, and there

1   may have been others too, at least the ones that I just cited,
2   so first of all, the basis on which the Morris testimony from
3   the earlier trials came in was way, way, way, way, way, way,
4   way, way, way, way, way more than proving the operative facts
5   of what happened in the earlier trial.  It was offered
6   because, in large part, the defense is that Mr. Fields
7   committed the murders, and Mr. Morris' testimony was offered
8   for that hearsay purpose, among other things, and that's the
9   basis on which I permitted the impeachment of that testimony
10  under the rule that's either 806 or 807 that provides that a
11  witness whose testimony is submitted for a hearsay purpose can
12  be impeached by any means that would be appropriate if the
13  witness were in court.  So that's the first thing.

14          I don't think I understand -- I am not going to --
15  the fact that I am not dealing with each and every point you
16  made doesn't mean I agree with the others, but there was one
17  thing that you said, that the proposition that somebody would
18  think that the lawyers in the case are somehow sponsoring
19  perjured testimony, that's just kind of off-the-wall crazy
20  because the lawyers in the case just submitted transcripts
21  from earlier trials.  I mean, I don't think I even understand
22  that.

23          You know, trials are supposed to be fair and the
24  proceedings preceding them are supposed to be fair, but that's
25  the only rule.  There are also deadlines and dates by which

1    things have to be done.  If the rule was just do what's fair,

2    no case would ever get finished because there would always be

3    something else to do and no case would ever be done because

4    there would always be something else that you could have done

5    differently.  All of these things are tempered by the need to

6    have expeditious, which is I guess almost a misnomer in this

7    case, but expeditious or at least finality in terms of when it

8    gets done.

9            And essentially what's being argued here is that

10   there's no question that there was an ample opportunity for

11   the defendants or the plaintiff or anybody to take Mr. Morris'

12   deposition before discovery was closed.  I specifically

13   permitted that and the decision was made, for whatever reason

14   by the defendants, not to take his deposition.  Essentially

15   what's happening here is that, well, now that you know that

16   the -- now that you know what frankly could have been

17   reasonably predicted before which is that the affidavit -- the

18   second affidavit would come in, the first one already having

19   come in in prior trials, we would have done that differently.

20           I am not going to reopen discovery for that.  I just

21   don't think -- I just don't think it's an appropriate basis to

22   reopen discovery.  It would essentially mean that any time

23   somebody thinks that they could have done something

24   differently the first go-around, then they're permitted to do

25   that and I am not going to start with this.  So the motion to

1   take the deposition is denied.

2           Take care.

3           MS. GORMAN:  Your Honor, can I ask about the

4   sanctions motion?

5           THE COURT:  You can.

6           MS. GORMAN:  Is the Court still --

7           THE COURT:  Still tweaking it.

8           MS. GORMAN:  Thank you.

9     (Which were all the proceedings had in the above-entitled

10  cause on the day and date aforesaid.)

11    I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
12

13  _____          _____
    Carolyn R. Cox                        Date
    Official Court Reporter
14  Northern District of Illinois

15  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25