```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3

 4   NATHSON E. FIELDS,                  )   Docket No. 10 C 1168
                                         )
 5                     Plaintiff,        )
                                         )
 6             vs.                       )
                                         )
 7   CITY OF CHICAGO, et al.,            )   Chicago, Illinois
                                         )   June 16, 2015
 8                     Defendants.       )   10:30 o'clock a.m.

 9
              TRANSCRIPT OF PROCEEDINGS - MOTION
10        BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13
     For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
14                         BY:  MS. H. CANDACE GORMAN
                           220 South Halsted Street, Suite 200
15                         Chicago, IL  60661
                           (312) 441-0919
16

17   For Defendant
     City of Chicago:      DYKEMA GOSSETT PLLC
18                         BY:  MR. TERRENCE MICHAEL BURNS
                                MR. DANIEL MATTHEW NOLAND
19                         10 South Wacker Drive, Suite 2300
                           Chicago, IL  60606
20                         (312) 627-2100

21

22

23   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                            Official Court Reporter
24                          219 S. Dearborn Street, Suite 2102
                            Chicago, Illinois  60604
25                          (312) 435-5639
```

```
1   APPEARANCES CONTINUED:

2

3   For Defendant              COOK COUNTY STATE' ATTORNEY
    Lawrence Wharrie:          BY: MR. DONALD J. PECHOUS
4                                  MS. LISA MARIE MEADOR
                               500 Richard J. Daley Center
5                              Chicago, IL  60602
                               (312) 603-3369
6

7
    For Defendant              KULWIN, MASCIOPINTO & KULWIN, LLP
8   David O'Callaghan:         BY:  MR. SHELLY BYRON KULWIN
                               161 North Clark Street, Suite 2500
9                              Chicago, IL  60601
                               (312) 641-0300
10

11
    For Defendant              CITY OF CHICAGO, DEPARTMENT OF LAW
12  City of Chicago:           BY:  MS. LIZA MARIE FRANKLIN
                               30 North LaSalle Street, Suite 1400
13                             Chicago, IL  60606
                               (312) 742-0170
14

15  Also Present:              HON. ZACHARY T. FARDON
                               United States Attorney
16                             BY:  MR. CRAIG A. OSWALD
                               219 S. Dearborn St., Suite 500
17                             Chicago, Illinois  60604

18

19

20

21

22

23

24

25
```

1    (The following proceedings were had in open court:)

2          THE CLERK:  Case No. 10 C 1168, Fields v. City of

3    Chicago.

4          THE COURT:  And just stay where you are.  I have to

5    read something, the response that got filed.  I didn't have a

6    chance to read it.  I think I've got it here.  Let me just

7    read that right now.  Then I will be able to talk to you.

8      (Brief pause.)

9          MS. GORMAN:  Good morning, your Honor.  Candace

10   Gorman --

11         THE COURT:  Let's start over here.

12         MR. PECHOUS:  Good morning, your Honor.  Donald

13   Pechous for Larry Wharrie.

14         MS. MEADOR:  Good morning, your Honor.  Lisa Meador

15   on behalf of Larry Wharrie.

16         MR. BURNS:  Good morning, your Honor.  Terry Burns

17   appearing on behalf of the City of Chicago, defendants

18   Brannigan and Murphy.

19         MS. FRANKLIN:  Good morning, your Honor.  Liza

20   Franklin on behalf of the City.

21         MR. NOLAND:  And Dan Noland for the City, Brannigan,

22   and Murphy.

23         MR. KULWIN:  Shelly Kulwin on behalf of David

24   O'Callaghan.

25         MS. GORMAN:  Candace Gorman for Mr. Fields.

1          MR. OSWALD:  Craig Oswald on behalf of the United
2     States.
3          THE COURT:  I am trying to figure out why you're
4     here.
5          MR. OSWALD:  I believe there is a parole
6     commission --
7          THE COURT:  But is there something I have to rule on?
8          MS. GORMAN:  Well, you had us file a status --
9          THE COURT:  Oh, okay.  All right.  So let me pull
10    that up again.  I got back from out of town fairly late last
11    night, and I may have missed that part of it.
12         So that's probably the one that was filed.  Let me
13    just eyeball this real fast.
14         I looked at this when I came in.  Got it.  I am just
15    making a list of issues here.
16         Okay.  So let's deal with the parole thing first.  So
17    if I'm understanding it right, there are four issues.
18         Number one has to do with Mr. Hawkins' presentence
19    report.
20         MS. GORMAN:  Correct.
21         THE COURT:  Number two has to do with page 153, issue
22    three is page 192, and issue four is page 196.
23         Why do you think you need the presentence report?
24         MS. GORMAN:  Your Honor, I think they might be
25    relevant as far as the position taken by the government all

1   the way up through 2012 that Mr. Hawkins should stay in prison
2   until expiration.  And then that change --

3          THE COURT:  As a consumer of presentence reports, I
4   can tell you to a moral certainty that the presentence report
5   will say nothing about that.  The plea agreement says
6   something about that.  That's always attached to the
7   presentence report.  You have the plea agreement or whatever
8   revised plea agreements there are.  The presentence report
9   isn't going to tell you anything about that.

10          The presentence report is a document prepared by the
11  probation office.  It's not going to tell you anything about
12  that issue.  So I don't think you need the presentence report.
13  So I am not going to require the disclosure of that.

14          So my -- I remember when I got this, in looking
15  through it, I don't -- it's conceivable that I still have my
16  set of this stuff, but I could not easily find it, let's just
17  put it that way, so I couldn't go look at page 153, 192, and
18  196 to see what's on there, which I think I would kind of need
19  to do in order to be able to make a decision about those
20  things.

21          Now, it's possible that if I looked harder, I could
22  find it, but I think the easier way would be could you just
23  give me pages 153, 192, and 196?

24          MR. OSWALD:  Yes, your Honor.  It's Mr. King's case.
25  He's on trial before Judge Chang.  I will get them from

1 | Mr. King today, and I'll --

2 |      THE COURT: All right. And I will look at them and I

3 | will make some sort of decision on that. Okay. So if you

4 | don't want to hang around, you don't have to hang around.

5 |      MR. OSWALD: Thank you, your Honor.

6 |      MS. GORMAN: Thank you.

7 |      THE COURT: So on the -- this thing about the files,

8 | so if I am understanding it correctly, Ms. Gorman, you want to

9 | be able to talk to, among other people, the criminal defense

10 | attorneys for whoever the people are whose cases are in these

11 | files.

12 |      MS. GORMAN: Correct.

13 |      THE COURT: And you think that the protective order

14 | that the City has proposed would preclude you from doing that

15 | because it says "attorneys' eyes only," except you can discuss

16 | with your client certain things.

17 |      MS. GORMAN: Correct.

18 |      THE COURT: Okay. What's the rationale for not

19 | letting her talk to the criminal defense lawyers? I am having

20 | a hard time seeing it.

21 |      MR. NOLAND: We don't oppose plaintiff's counsel

22 | talking to the criminal defense lawyers. Our paper, we

23 | pointed that out --

24 |      THE COURT: That's what the order says, though. The

25 | order says "attorneys' eyes only."

1          MR. NOLAND:  But she can speak with the criminal

2    defense attorneys, we think, under the order about the cases,

3    and it's -- the Jones case, for instance, may I -- you know,

4    Mr. Criminal Defense Attorney, may I see your Jones file?  And

5    so Ms. Gorman would be able to look at what's in that criminal

6    defense attorney's file.  Ms. Gorman has the documents to

7    compare them to determine whether or not, you know, that

8    criminal defense attorney did or did not have a document.  And

9    so there's --

10          THE COURT:  But she wouldn't be able to go to the

11   criminal defense lawyer and say, Here, did you have this

12   thing?

13          In other words, let's say there is a police

14   department supplementary report.  Okay?  Under this protective

15   order, she can ask, What do you have, but she can't go to the

16   criminal defense lawyer and say, Here, here is the

17   supplementary report.  Can you look through your file and see

18   if you have that?  She can't do that, right?

19          Not under this order she can't.  And my next question

20   is on what planet does that make sense?

21          MR. NOLAND:  That's not what we intend --

22          THE COURT:  What you intend is what is in the

23   document.  That's crazy.  I just don't think that makes any

24   sense at all.

25          MR. NOLAND:  We do contemplate an order that she

1   could send subpoenas to whomever, and they would be subject --

2            THE COURT:  Oh, come on.  Why should -- what is the

3   rationale for making -- because there's no question that the

4   lawyers for these people would be entitled to see these

5   things, right?

6            MR. NOLAND:  Judge, the rationale is for efficiency

7   purposes, so that there is a lot of information in these

8   documents that we're going through, we want to be able to roll

9   them out with as limited redactions as possible so that we can

10  get them to counsel.

11           We understand that a lot of the information is --

12  would otherwise be litigated in criminal court to be public

13  information.  But that's the rationale, so that we can get it

14  to --

15           THE COURT:  You lost me when you said the rationale

16  is efficiency.  You lost me right there.  Because the

17  rationale for efficiency is to impose this Rube Goldberg

18  device that makes her jump through all these hoops to be able

19  to show a document to somebody.

20           No, I will not enter that protective order because

21  it's ridiculous.  End of that discussion.  I won't enter it.

22  And if you're not willing to propose something else, then

23  there is not going to be a protective order.

24           MR. NOLAND:  I would think --

25           THE COURT:  You best, by like maybe about 1:30 today,

1  have something in here that -- have something proposed that

2  isn't ridiculous that permits her to talk to and show to

3  criminal defense lawyers documents that are in these files.

4  Okay?  That's the first issue.

5          What else is there that you think you can't --

6  putting aside the juvenile thing for a second, is there

7  something else that you think you can't do that that

8  protective order would preclude you from doing?

9          MS. GORMAN:  Your Honor, the protective order -- as I

10  read it, I can't do very much.  I mean, I have to do

11  subpoenas, I have to let them know who I am subpoenaing --

12          THE COURT:  Who else would you be wanting to show it

13  to other than the criminal defense lawyers?

14          MS. GORMAN:  Perhaps if they don't have attorneys,

15  the defendants themselves.

16          THE COURT:  We're talking about people that had this

17  stuff 20, 30 years ago, right?  Almost by definition, right?

18          MS. GORMAN:  Yeah.

19          THE COURT:  What's the time period we're talking

20  about?

21          MS. FRANKLIN:  1979 to 2006.

22          THE COURT:  Okay.  So the most recent would be nine

23  years ago, and the oldest would be 30 -- whatever that is, 38

24  years ago.

25          MS. GORMAN:  Right.  Your Honor, I know from

1   conversations with people in prison that many of these people

2   have their entire files because they have been litigating

3   themselves pro se over the years.  So I think there is some

4   likelihood if someone --

5           THE COURT:  So what you're going to end up doing is

6   doing a grand tour of the Illinois Department of Corrections,

7   trotting around a bunch of files with you and sitting down

8   with people saying, Do you have this, do you have that, do you

9   have this, do you have that.

10          MS. GORMAN:  Your Honor, I only expect that that

11  would be on a rare occasion when I see something in a file

12  that conflicts with court decisions, and if the person doesn't

13  have an attorney, I might want to go to that person to see if

14  that was in their files.  That's a rare occasion, I admit --

15          THE COURT:  Okay.  So that's category 2, dealing with

16  defendants who don't have lawyers.  What else is there, again,

17  aside from juvenile stuff?

18          MS. GORMAN:  I can't think of any other issues right

19  now.

20          THE COURT:  So what's our work-around on that?  We

21  got to come up with a work-around on that.  And maybe the

22  work-around is that if that happens, you will talk about it

23  and everybody will be reasonable and you will come up with a

24  mechanism.  How about that?

25          MS. GORMAN:  Okay.

1       MR. NOLAND:  That's fine.

2       THE COURT:  That's what I want you to build into

3  this.  The juvenile stuff, so do you have a feel for what --

4  does anybody -- Ms. Franklin, do you have a feel for what

5  proportion of these things are likely to have juvenile records

6  in them?

7       MS. FRANKLIN:  I have come across approximately 65 of

8  them in the first 300 that I looked at.

9       THE COURT:  That's a pretty significant percentage.

10       MS. FRANKLIN:  They are defendants, they are victims,

11  and --

12       THE COURT:  Oh, both defendants and -- oh.

13       MS. FRANKLIN:  -- and there are some witnesses.

14       THE COURT:  Wait a second.  The statute here doesn't

15  apply.

16       MS. FRANKLIN:  Well, I'm not positive, your Honor.

17  Under exception C, it's concerning all minors under 18 years

18  of age.  And so my concern is that victims are --

19       THE COURT:  The records of law enforcement officers,

20  dot, dot, dot, concerning all minors under 18 years of age

21  must be maintained separate from records of the rest, may not

22  be open to public inspection or contents disclosed to the

23  public except by order of the court.

24       Well, then there's this special, Or when provided by

25  law.

12

1    MS. FRANKLIN:  So what I'm intending to do is redact
2    the names of --
3          THE COURT:  Okay.  So I am going to ask a basic
4    question here.  Putting this case aside, what is the practice
5    of the Chicago Police Department?
6          MS. FRANKLIN:  They will not turn them over to us.
7    We have to go to juvenile court to get those records.
8          THE COURT:  If a defendant in the case is an adult
9    and the victim is a minor, you have to go to juvenile court.
10         MS. FRANKLIN:  We still are required to go.
11         THE COURT:  Okay.  So what's your thinking on that?
12         MS. GORMAN:  Your Honor, there's two issues.  First,
13   this is a state court privilege and not for federal.
14         Your Honor, also, these are homicide investigative
15   files.  These aren't court records.  These aren't juvenile
16   court records.  I've gone through --
17         THE COURT:  I understand.
18         MS. GORMAN:  I've gone through the files that have --
19   that the City has provided to me as part of my committee that
20   lists all the cases that these files relate to.  All of these
21   cases are adult cases.  There are no juvenile files in these
22   files.
23         So I don't -- I think they must be talking about
24   something else that don't -- we don't have any juvenile court
25   record in these files.  What they want to do is take out

1 witnesses, victims, everybody, they want to take that

2 information out of the files so that when I go and talk to

3 defense counsel, they'll have the whole file, in theory, but I

4 won't have the whole file and I won't even know what some of

5 the issues are.

6            MS. FRANKLIN:  Let me be --

7            THE COURT:  Can I ask a question over here?  You guys

8 are the Cook County State's Attorney's Office.  So you have an

9 adult defendant and a minor victim.  You don't go to the

10 juvenile court to get the authority to turn over to the

11 defendant the police records, do you?

12            MR. PECHOUS:  I never have, Judge.

13            THE COURT:  Right.  It does not happen that way.

14            MS. FRANKLIN:  I'm sorry, your Honor.  The civil

15 defendant.  My issue is --

16            THE COURT:  This talks about disclosure to the

17 public.  It doesn't talk about disclosure to a party in a case

18 who has shown a need for the documents.  I mean, I can

19 preclude Ms. Gorman from disclosing them to the public.  We

20 are not talking about public inspection here.

21            I just -- I mean, if there's -- if we're talking

22 about a case in which the suspect or the defendant was a

23 juvenile at the time or is a juvenile now, I mean, I suppose

24 that would be one thing.  I agree.  That would be potentially

25 problematic.  But Ms. Gorman is saying we haven't run across

1  any of those yet.  What we're talking about here are victims
2  and witnesses.  That's not going to be a basis for withholding
3  this from discovery.  And you guys want a discovery
4  schedule -- unless you want that discovery schedule to extend
5  until about the year 2024, it is time to get going on this
6  stuff and not be having these -- I'm groping for a word here
7  -- hurdles.  We will just call them hurdles.

8          MS. FRANKLIN:  Your Honor, I haven't been -- my
9  intent is not to --

10         THE COURT:  You just don't want to get in trouble.  I
11  get that.

12         MS. FRANKLIN:  What I'm doing is redacting the --

13         THE COURT:  Yeah, but that's the problem.  I mean,
14  you're going to get this -- there's going to be this
15  incomplete thing.  If there happens to be a witness in the
16  case, some kid standing on a street corner who saw somebody go
17  bang, bang, or you know you have -- or there was a child
18  victim, she's going to get a file that's going to look like
19  the National Security Agency had at it before she got it.  I
20  mean, it's crazy.  And that is not what the statute says.

21         This talks about public disclosure.  We are not
22  talking about public disclosure here.  We are talking about
23  disclosure to a litigant in a civil case who was granted a new
24  trial because the judge improperly precluded her from getting
25  this stuff in the past; namely, me.  Okay?

1    So I am overruling that objection except to the
2  extent it contains a juvenile suspect or defendant.  I don't
3  believe that the statute applies.

4    Just so that it's clear, Ms. Gorman says, Well, it's
5  only a state law procedure.  That's not the final answer.  Or
6  it's only a state law claim.  That's not the final answer.  In
7  a civil case, state law governs privilege regarding a claim or
8  defense for which state law supplies the rule or decision.
9  And we have at least some state law claims in this case here.
10 That's Rule 501 of the Federal Rules of Evidence.  But I don't
11 think that applies -- I don't think that this privilege, if
12 that's what it is, that's being cited here applies to what we
13 are talking about because we are not talking about disclosure
14 to the public.

15   So what you're going to need to do is you're going to
16 need to -- I mean, I think it's pretty clear that there is a
17 bar on Ms. Gorman disclosing these documents publicly.  If you
18 need to beef that up or shore it up, then by all means, please
19 do that.

20   We've got to get to the next step in this thing.  We
21 are just sitting here.  This is wheel spinning at this point.
22 And, you know, if -- so what's going to happen is that, you
23 know, barring this perhaps unusual case in which the suspect
24 or defendant is a juvenile, Ms. Gorman is going to get the
25 file, not redacted.

1    MS. GORMAN:  Your Honor, can I get some clarification

2  on suspect, because that's problematic?  Because there are --

3  like even in the Fields case themselves, some of the people

4  who gave statements, some of the juveniles were actually

5  suspects in the case.  And so I'm concerned --

6    THE COURT:  Defendant.  Fine.  Then defendant.

7    MS. GORMAN:  Thank you.

8    THE COURT:  All right.  We need to get this file.

9    MS. FRANKLIN:  Your Honor, we have been redacting

10  Social Security numbers --

11    THE COURT:  And just to be clear, part of what I am

12  relying on, and it's not just what Mr. Pechous and Ms. Meador

13  said -- or what Mr. Pechous said and what Ms. Meador, by her

14  body language, agreed with, but also from my own experience,

15  is that the state's attorney's office doesn't go to anybody to

16  get approval to turn over documents in cases in which there is

17  a minor victim or witness, and they don't have to because

18  that's not public disclosure.  It's disclosure in discovery in

19  a particular case.

20    So, anyway, what were you going to say?

21    MS. FRANKLIN:  I have been redacting Social Security

22  numbers.

23    THE COURT:  You don't need Social Security numbers.

24    MS. GORMAN:  No --

25    THE COURT:  That would be just fine.

1           MS. GORMAN:  -- but I've agreed to keep it

2    confidential so they don't have to go through and --

3           THE COURT:  You don't need -- what are you going to

4    do with the Social Security numbers?

5           MS. GORMAN:  I don't need them.

6           THE COURT:  Yeah, you don't need Social Security

7    numbers.

8           MS. GORMAN:  But if they have to go through 700 files

9    to redact Social Security numbers, this is going to take time.

10          THE COURT:  It's not going to take that much time.

11          MS. FRANKLIN:  It's on the computer.

12          THE COURT:  It's not going to take that much time.

13          All right.  What else?

14          So what is your -- so let's assume that that's all

15   going to get fixed, you know, the order -- you're going to get

16   me an order within the next couple of days that kind of deals

17   with all that stuff.

18          So what is your view on the schedule that Mr. Noland

19   and Mr. Burns proposed here?

20          MS. GORMAN:  I think it's ridiculous.  I think

21   they're trying to hamstring me from actually doing --

22          THE COURT:  So what part of it would you want to

23   change, seeing that -- the last date of it is the date I set

24   for trial.

25          MS. GORMAN:  That part I have no problem with.

1    THE COURT:  So what would you -- pull it out and tell
2    me what you think the dates ought to be.

3    MS. GORMAN:  I think if I get to them by October 1st
4    the files that I'm going to be relying on for the trial, that
5    should be sufficient.

6    THE COURT:  Here's what I want you to do.  I want you
7    to go back and try to negotiate something that's -- it doesn't
8    necessarily have to be October the 1st, but it needs to be way
9    closer to October the 1st than August the 14th.  Okay?  So see
10   if you can work out something.  You ought to be able to do
11   that.  I mean, if I do it, I am going to be pulling dates out
12   of the air.  You guys know your schedules.  I don't know your
13   schedules.  So you are better off doing it yourself rather
14   than having me pull dates out of the air.

15   So what I'd like you to do is talk about it within
16   the next day or two and get me a proposal.

17   Today's Tuesday, right?  God, that's right, I'm
18   leaving the country tomorrow.

19   Talk about it today.

20   MS. GORMAN:  Okay.

21   THE COURT:  Talk about it today and get me a proposal
22   by the end of the day.  And so what's -- the way I want you to
23   do that is it can just be a one-pager, or I guess maybe two
24   pages, that says, these are the dates we are proposing for
25   each thing, file it as a supplemental status report, call Pam

1  and tell her you have filed it, that will cause her to call me

2  and say, go look at this thing, so I can deal with it before I

3  leave the country tomorrow.  Okay?

4          MS. GORMAN:  Okay.

5          THE COURT:  All right.  What else do we need to talk

6  about?  Anything anybody can think of?

7          Okay.  Good.  Maybe another status hearing.  Four

8  weeks or something like that.

9          MR. KULWIN:  Were you ruling?  I thought -- you're

10 not ruling.

11         THE COURT:  On what?  No.  You mean on all of the

12 other stuff that you guys have given me --

13         MR. KULWIN:  No, just on the waiver issue.

14         THE COURT:  The waiver issue.  Yeah, no, I have not

15 ruled on that yet.  That's part of all the other stuff that

16 you guys have given me, your motion -- the motion relating to

17 the county people, your motion relating to whether the new

18 trial should involve everything and not just damages, and so

19 on.

20         I will tell you, though, that as I am thinking about

21 that motion, that motion, one of the problems is that there is

22 a consequence, it's a very significant consequence, to doing

23 what you're proposing.  When I say "you," I mean O'Callaghan,

24 and when I say what you're proposing, I mean having the new

25 trial be on liability and damages, not just damages, because

1    right now there's a finding of liability.  That has

2    consequences under 42 United States Code 1988; namely, the

3    attorneys' fees provision of the statute of the Civil Rights

4    Act.

5             And so as of right now, you know, there's going to be

6    a new trial as to Mr. O'Callaghan or as to whatever just on

7    damages, and they'll either be a damage award of -- you know,

8    it will be anywhere from zero to whatever, and then I will

9    decide the fee petition after that.  That's if I don't grant a

10   new trial on liability too.  If I do do that, the entitlement

11   to attorneys' fees goes poof.  It goes poof.  And it only

12   reappears if there's another finding on liability.  That's a

13   very significant point.  Honestly, I don't think it really is

14   addressed by the stuff that the defense filed here.

15            And so that's part of my hang-up on there is to

16   figure out how to deal with that and how that affects the rest

17   of the analysis.  And it's not a simple question to answer I

18   guess is what I am going to say.

19            So that's part of the reason I haven't decided it

20   yet.  I am still wondering.

21            MR. KULWIN:  Thank you, Judge.

22            THE COURT:  Okay.  See you.

23            MS. GORMAN:  Are you giving us a new status date?

24            THE COURT:  Yeah, three weeks-ish.  How about

25   something like the 8th of July?  That would be three weeks

1  from tomorrow.  Can you all do that?

2         I will tell you that my goal is going to be to rule

3  on everything by then, but it's a goal.  It's not a deadline.

4  It would be helpful for me to have the date.  So let's say the

5  8th of July at 9:30 for status.

6         MR. PECHOUS:  I will be here.  I have Judge Kendall

7  at 10:00.

8         THE COURT:  That's a bad day, in other words, is what

9  you're telling me?

10         MS. MEADOR:  It is.

11         THE COURT:  Okay.  How about the 9th?

12         MR. PECHOUS:  That's fine.

13         MS. MEADOR:  That works.

14         THE COURT:  Okay.  9th of July at 9:30.

15    (Which were all the proceedings had in the above-entitled

16  cause on the day and date aforesaid.)

17    I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

18

19  _____          _____
Carolyn R. Cox                            Date
Official Court Reporter
20  Northern District of Illinois

21  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

22

23

24

25