```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3    NATHSON E. FIELDS,                )   Docket No. 10 C 1168
                                        )
 4                    Plaintiff,        )
                                        )
 5          vs.                         )
                                        )
 6    CITY OF CHICAGO, et al.,          )   Chicago, Illinois
                                        )   May 3, 2016
 7                    Defendants.       )   9:30 o'clock a.m.

 8              TRANSCRIPT OF PROCEEDINGS - MOTION
           BEFORE THE HONORABLE MATTHEW F. KENNELLY
 9
      APPEARANCES:
10

11    For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
                            BY:  MS. H. CANDACE GORMAN
12                          220 South Halsted Street, Suite 200
                            Chicago, IL  60661
13                          (312) 441-0919

14
                            LOEVY & LOEVY
15                          BY:  MS. SARAH LYNNE GRUSIN
                            312 North May Street, Suite 100
16                          Chicago, IL  60607
                            (312) 243-5900
17

18
      For Defendant
19    City of Chicago:      DYKEMA GOSSETT PLLC
                            BY:  MR. PAUL A. MICHALIK
20                               MR. DANIEL MATTHEW NOLAND
                            10 South Wacker Drive, Suite 2300
21                          Chicago, IL  60606
                            (312) 627-2100
22

23    Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                            Official Court Reporter
24                          219 S. Dearborn Street, Suite 2102
                            Chicago, Illinois  60604
25                          (312) 435-5639
```

1  APPEARANCES CONTINUED:

2

3  For Defendants          KULWIN, MASCIOPINTO & KULWIN, LLP
   City of Chicago,        BY:  MR. SHELLY BYRON KULWIN
4  David O'Callaghan            MS. RACHEL ANNE KATZ
   and Joseph Murphy:      161 North Clark Street, Suite 2500
5                          Chicago, IL  60601
                           (312) 641-0300
6

7  Also Present:           LAW OFFICE OF THE PUBLIC DEFENDER
                           BY:  MR.   THOMAS CARGIE
8                          69 West Washington Street, 16th Floor
                           Chicago, IL  60602
9                          (312) 603-0600

10
                           BLEGEN & GARVEY
11                         BY:  MS. JODI L. GARVEY
                           53 West Jackson Boulevard, Suite 1437
12                         Chicago, IL  60604
                           (312) 957-0100
13

14

15

16

17

18

19

20

21

22

23

24

25

1    (The following proceedings were had in open court:)

2         THE CLERK:  Case No. 10 C 1168, Fields v. City of

3    Chicago.

4         THE COURT:  Good morning.

5         MR. KULWIN:  Good morning, your Honor.  Shelly Kulwin

6    and Rachel Katz on behalf of defendant O'Callaghan.

7         MR. MICHALIK:  Paul Michalik and Dan Noland on behalf

8    of defendant City, Branningan, and Murphy.

9         MS. GORMAN:  Candace Gorman on behalf of Mr. Fields.

10        MS. GRUSIN:  Sarah Grusin on behalf of Mr. Fields.

11        THE COURT:  I guess I was kind of thinking we would

12   have somebody here from the Public Defender's office.  We do.

13   We do, okay.  Here he is.  He was trying to travel incognito.

14        MR. CARGIE:  Thomas Cargie, your Honor, on behalf of

15   the Public Defender.  I didn't know if it was relevant to my

16   appearance.

17        THE COURT:  Well, that's -- I think it's really all

18   about you and?

19        MS. GARVEY:  Jodi Garvey.  I'm also one of the --

20        THE COURT:  You represent one of the --

21        MS. GARVEY:  One of the individuals.  And Pat Blegen,

22   my partner, represented another one.

23        THE COURT:  Okay.  So you're standing in for him too?

24   Okay.

25        Which ones, just so --

1          MS. GARVEY:  I had Isaiah Brady and he had Walter
2     Turpin (phonetic).
3          THE COURT:  Isaiah Brady was the one I had --
4          MS. GARVEY:  Yeah.
5          THE COURT:  I told you -- we have talked about that,
6     right?  I had a habeas?  I did the habeas on this Brady
7     person.  I don't remember much about the case, other than --
8          MS. GARVEY:  I remember it well.
9          THE COURT:  So there is an opinion somewhere.
10         Okay.  So I guess what I -- you've seen the motion.
11    It really involves mostly you for the -- because the biggest
12    burden would be on your office.
13         MR. CARGIE:  It's our position that our privilege log
14    is adequate under the law.  For the most part, it's
15    handwritten notes.  It's done by a Public Defender.  There's
16    no other reason for him or her to prepare those except in
17    preparation for trial.  I was going to -- I think it's
18    returnable on Friday.  I was going to send a letter to that
19    effect.  But it's our position that we've complied with the
20    rule.
21         THE COURT:  Okay.  So the material that's been
22    withheld is work product, is handwritten notes, and,
23    basically, the theory is that -- it's hard to imagine or it's
24    impossible to imagine any other reason than something that
25    would be protected by work product.

1        MR. CARGIE:  Yes, your Honor.  As I read the case

2    law, it suggests that the point of the law is so the Court can

3    determine whether or not it's work product.

4        THE COURT:  Right.

5        MR. CARGIE:  And so based on that, I don't see any

6    other reason -- I mean, don't get me wrong, there are other

7    materials in there, but it's the handwritten notes that are

8    the principal subject matter that's the work product.

9        THE COURT:  The privilege log was what was -- you

10   haven't provided it yet.  You've provided --

11       MR. CARGIE:  We produced it --

12       THE COURT:  -- the earlier request.

13       MR. CARGIE:  Yes, your Honor.

14       THE COURT:  All right.  Have you seen -- you have

15   seen the privilege log.

16       MR. NOLAND:  It's attached to the motion that

17   Ms. Gorman filed last week.

18       THE COURT:  That's a --

19       MR. NOLAND:  Yes.

20       THE COURT:  When I don't print the -- when I don't

21   get a hard copy and I don't print them out, that's what

22   happens.  So is it Exhibit A or Exhibit B?

23       MR. NOLAND:  It's actually attached to Exhibit B,

24   which is our subpoena to the Office of the Public Defender.

25   So in our subpoena to the Public Defender, we said we don't --

1    you know, the file has been produced, we understand --

2            THE COURT:  So, basically, what you've got is you

3    have a description that either dates the handwritten notes or

4    says don't -- it doesn't have a date, it either identifies the

5    author or says -- can't tell who the author is and it claims

6    work product, subpoena of things, grand jury testimony.

7            MR. CARGIE:  And we're only withholding that pursuant

8    to state law, your Honor.

9            THE COURT:  So if I tell you to produce that, you

10   will produce that.

11           MR. CARGIE:  Yes.

12           THE COURT:  Legal research, I'm guessing you are not

13   really looking for the legal research.  That's probably not

14   material.

15           MR. NOLAND:  No, your Honor.

16           THE COURT:  The grand jury testimony, is that

17   something you need?

18           MR. NOLAND:  Yes, your Honor.

19           THE COURT:  I assume you would because you might have

20   cases in which the state's attorney's file is in the wind or

21   they don't have the grand jury transcript --

22           MR. NOLAND:  Yes, your Honor.

23           THE COURT:  -- or both of the above.

24           Okay.  So talk to me about the handwritten note.

25           MR. NOLAND:  Our reading of the case law,

1  respectfully, is a little different than Mr. Cargie.  We do

2  believe it requires him to identify the subject matter.

3        I think a good example would be this, Judge.  If 10

4  of the pages are clearly the public defender's notes of jury

5  selection and they just put notes regarding jury selection,

6  that's off the table.  We would never need that or have any

7  interest in it.

8        But if there's notes which reference a -- potentially

9  reference a witness, especially for files that maybe haven't

10  been found by the state, or even otherwise, that potentially

11  reference a witness in a document which is claimed to have

12  been withheld, then that would be square on to something we

13  would need for sure because it would show that they had the

14  information.

15        THE COURT:  And so the argument would not necessarily

16  be that it's not work product; the argument would be that you

17  have a basis to overcome the assertion of work product.

18        MR. NOLAND:  Yes, your Honor, and that's what we read

19  the Court at the last hearing what we were talking about at

20  that hearing, that we needed to do that in order to have an

21  ability to make that argument.

22        THE COURT:  I think it would be helpful to -- and I

23  am not going to ask -- physically, where is all this stuff?

24        MR. CARGIE:  In Ms. Dimond's office, Karen Dimond.

25        THE COURT:  And has the privileged stuff been

1   segregated or tabbed or anything like?

2          MR. CARGIE:  I don't know the answer to that

3   question, your Honor.

4          THE COURT:  Fair point.  Okay.

5          So I think it would be helpful for me to eyeball not

6   all of it but some of it.  So maybe if you can like pull

7   the -- you know, just pick five cases at random --

8          MR. CARGIE:  Yes.

9          THE COURT:  -- pull the notes, the handwritten stuff

10  that's being -- but don't worry about printing out the cases.

11  Don't worry about grand jury testimony.  I am going to direct

12  you to produce the grand jury testimony.  My suggestion is

13  find out what he needs in terms of language in an order,

14  Mr. Noland, get me an order that says produce this, and I will

15  do it.

16         MR. CARGIE:  If you tell us to produce it, we will

17  produce it.

18         THE COURT:  Okay.  Produce it.  There you go.  That's

19  all you need.

20         So get me -- today is Tuesday.  Do you think it's

21  doable to get me something by Friday?

22         MR. CARGIE:  I will try to do my best.  I haven't

23  spoken to her about this.

24         THE COURT:  Well, either Friday or Monday, get me --

25  so what you should do is just give me -- you know, package it

1    however you want to package it, give me a cover letter that

2    says, we are giving you the notes from these five cases, copy

3    the other lawyers just on the cover letter, and I will have

4    you come back in maybe next Tuesday -- maybe Wednesday, let's

5    say, in case I get it on Monday, and I will kind of figure out

6    then what, if anything, more should happen.

7                MR. CARGIE:  Yes, your Honor.

8                THE COURT:  In terms of the -- everybody is talking

9    about case law here.  It would also be helpful if you could

10   share with me in some way, shape, or form what the case law is

11   you are relying on for the sufficiency or insufficiency of

12   this.  I don't need anybody to file a brief, but if you just

13   want to send me -- like you can put it in the cover letter,

14   these are the cases, just cite them.

15               MR. CARGIE:  Yeah, I think it's Magistrate Schenkier

16   that everyone seems to cite.  It was an insurance company

17   case.  I will give you the citation.

18               THE COURT:  So if there's any cases, just send me a

19   letter on the same date that theirs is due saying, these are

20   the cases we are relying on for our argument that the

21   privilege log isn't sufficient.  That will just give me enough

22   to --

23               MR. KULWIN:  Judge, I think that it's a motion that

24   we -- in which we filed, I think, about privilege issue in the

25   first place.

1    THE COURT:  Yeah.

2    MR. KULWIN:  I think we cited some case law.

3    THE COURT:  Okay.  Like I said, send me a letter.  I

4  am not going to go back and dredge up old stuff.

5    Okay.  So is there anything else anybody thinks you

6  should talk about?

7    By the way, the trial will proceed on August 1st, so

8  just pass that on.

9    MS. GORMAN:  Okay.

10    THE COURT:  And we are going to put that in the order

11  because of the last order.  So the trial will proceed as

12  scheduled on August 1st.

13    MS. GORMAN:  I'm wondering what we should be telling

14  the --

15    THE COURT:  Barring unforeseen events.  There always

16  have to be but for unforeseen events.

17    MS. GORMAN:  -- what we should tell the private

18  attorneys.  There's been about 10 or 12 of them who have been,

19  you know, contacting us --

20    THE COURT:  Is there any kind of a -- have you guys

21  produced any kind of a privilege log?

22    MS. GARVEY:  We haven't, Judge.  As you mentioned,

23  this was a habeas corpus petition.  The Brady case was

24  from '01.  We didn't start representing him until 2010.

25  Everything that I have was handed down to me from a prior

1    attorney.  I got the transcripts from Mr. Brady's --

2           THE COURT:  Was it the trial lawyer?

3           MS. GARVEY:  No, the appellate attorney.  The trial

4    lawyer, I don't even know where he is anymore.

5           And I didn't actually turn over anything other than

6    the discovery, the whatever police reports I did have, as well

7    as transcripts, and some of the briefs from the federal

8    representation.  I didn't turn over deposition transcripts,

9    things that were part of the federal habeas, because they

10   weren't part of the criminal case.  And so I probably have two

11   bankers boxes of documents that I didn't turn over because

12   they weren't responsive to the request.

13          THE COURT:  Ballpark, how many private attorney cases

14   are there?

15          MS. GORMAN:  Ten, 12.

16          THE COURT:  Ten, 12?  Okay.  And I'm assuming you

17   have not gotten privilege logs from anybody?

18          MR. NOLAND:  We haven't, and that actually is a

19   little bit startling to us that the entire file from these

20   lawyers had not been tendered.  It was our understanding that

21   they had been tendered.  I understand what counsel is

22   saying --

23          THE COURT:  Maybe you can have a conversation about

24   that.

25          And the other -- have you heard anything back from

1   the other eight besides -- well, I think the absence of a
2   privilege log on those things is problematic, and problematic
3   is like a nice way of putting it.  It's worse than
4   problematic.  It's a subpoena.  A subpoena is -- unless I am
5   going to quash it out of hand, which I am not.  So that part
6   is off the table.  People have to produce privilege logs.

7           So the word needs to get out to whomever it is.  I
8   don't care who does it, whether it's defense counsel,
9   plaintiff's counsel, or some combination of the above.  And I
10  understand that it's a hardship.  I understand that, you know,
11  people have other things to do.  It's a subpoena, and it's
12  subject to being enforced by me, and I am going to.  And so if
13  people don't start producing privilege logs, then they are
14  going to have to be spending a lot more time coming into court
15  explaining to why in response to request for sanctions what --
16  so I would say a week from now is kind of the drop dead.

17          MS. GORMAN:  For the privilege logs?

18          THE COURT:  For the privilege logs, yeah.  I mean,
19  there may be some case where nobody asserts a privilege.
20  Fine,  you can have the whole thing.  Who knows?  They might
21  think that's easier.

22          Okay.  So I am going to have you come back.  So I am
23  going to continue the motion to next -- is next Wednesday
24  okay?  That's the 11th.

25          9:30 on the 11th.  See you then.

1    MS. GORMAN:  Thank you, your Honor.

2    MR. KULWIN:  Thank you, Judge.

3    MR. MICHALIK:  Thank you, Judge.

4    MR. NOLAND:  Thank you, Judge.

5    (Which were all the proceedings had in the above-entitled

6  cause on the day and date aforesaid.)

7    I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
8

9  Carolyn R. Cox                        Date
   Official Court Reporter
10  Northern District of Illinois

11  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25