```
             IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

NATHSON E. FIELDS,                    )  Docket No. 10 C 1168
                                      )
                 Plaintiff,           )
                                      )
        vs.                           )
                                      )
CITY OF CHICAGO, et al.,              )  Chicago, Illinois
                                      )  May 18, 2016
                 Defendants.          )  10:10 o'clock a.m.

             TRANSCRIPT OF PROCEEDINGS - MOTION
          BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
                      BY:  MS. H. CANDACE GORMAN
                      220 South Halsted Street, Suite 200
                      Chicago, IL  60661
                      (312) 441-0919


                      LOEVY & LOEVY
                      BY:  MR. JONATHAN I LOEVY
                      312 North May Street, Suite 100
                      Chicago, IL  60607
                      (312) 243-5900


For Defendant
City of Chicago:      DYKEMA GOSSETT PLLC
                      BY:  MR. PAUL A. MICHALIK
                           MR. DANIEL MATTHEW NOLAND
                      10 South Wacker Drive, Suite 2300
                      Chicago, IL  60606
                      (312) 627-2100


Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                      Official Court Reporter
                      219 S. Dearborn Street, Suite 2102
                      Chicago, Illinois  60604
                      (312) 435-5639
```

```
 1   APPEARANCES CONTINUED:

 2

 3   For Defendants        KULWIN, MASCIOPINTO & KULWIN, LLP
     City of Chicago,      BY:  MS. RACHEL ANNE KATZ
 4   David O'Callaghan,    161 North Clark Street, Suite 2500
     Joseph Murphy, and    Chicago, IL  60601
 5   Daniel Brannigan:     (312) 641-0300

 6

 7   Also Present:         LAW OFFICE OF THE PUBLIC DEFENDER
                           BY:  MR. THOMAS CARGIE
 8                         69 West Washington Street, 16th Floor
                           Chicago, IL  60602
 9                         (312) 603-0600

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following proceedings were had in open court:)
2         THE CLERK: Case No. 10 C 1168, Fields v. City of
3    Chicago.
4         THE COURT: All right. The usual protocol. Get in a
5    spot, and we will start over here and go across.
6         MR. CARGIE: Good morning, your Honor. Thomas
7    Cargie, C-a-r-g-i-e, on behalf of the Public Defender's
8    Office.
9         MS. KATZ: Good morning, your Honor. Rachel Katz on
10   behalf of defendant O'Callaghan.
11        MR. MICHALIK: Paul Michalik and Dan Noland on behalf
12   of defendant City, Murphy, and Brannigan.
13        MS. GORMAN: Candace Gorman on behalf of Mr. Fields.
14        MR. LOEVY: Good morning, your Honor. Jon Loevy,
15   also for the plaintiff.
16        THE COURT: So I see you here. I was going to ask
17   them some questions about other stuff. It didn't pertain to
18   you.
19        MR. CARGIE: Well, because we are still working --
20        THE COURT: Yeah. Is there something you want or
21   need to report to me?
22        MR. CARGIE: No.
23        THE COURT: You can take off. I just have some
24   questions about the motions in limine. That's all. Sorry you
25   had to wait around.

1  I have questions about two of them. The one is
2  really more of a procedural or kind of housekeeping thing, so
3  I will do that one first. So this is the defendants' motion
4  to reconsider motion in limine No. 1.
5  So back when we talked about, you know, do-overs on
6  motions in limine, I said, Okay, if you are going to ask me to
7  reconsider something, tell me you're doing that and give me
8  the ruling.
9  Okay. So, A, you told me. B, you didn't give me the
10 ruling, you cited the ruling. This is a case that has 975
11 docket entries. I do not want to have to go looking for it
12 even if you tell me where the ruling is. So give me the
13 ruling.
14       MR. NOLAND: Yes.
15       THE COURT: And that leads to the third issue. On a
16 lot of these issues, the evidentiary issues, they may have
17 been addressed in a motion in limine ruling that was in
18 writing, but they may have been revisited at some point during
19 the trial. I mean, that's certainly the case on some of the
20 other ones, and I think on one or two of these motions, I have
21 gotten transcripts of places where things come up.
22       I am not going there. It's not my job to hunt for
23 that. It's incumbent on the people asking me to reconsider
24 something that you are going to give me everything that's been
25 said about this. So you need to do that.

1  You don't have to refile this, but I guess what I
2  want you to do is give me -- so you've given me Exhibits 1
3  through 8. Give me Exhibits 9 through whatever. You will
4  just call it supplemental exhibits to defendants' motion to
5  reconsider.
6  MR. NOLAND: Okay.
7  THE COURT: So it's whatever the written ruling was,
8  and then if there was some discussion of it during the trial,
9  one of the two trials, give me that.
10  MR. NOLAND: There was. I think there was one -- a
11  transcript of proceeding in a pretrial conference that I
12  believe we --
13  THE COURT: Again, I mean, I could find it, but I
14  don't want to.
15  MR. NOLAND: We get it. We apologize for not
16  tendering it.
17  THE COURT: All right. So my more substantive
18  questions have to do with the plaintiff's motions in limine.
19  I got to the bottom of the first page, and I said, I
20  am completely and thoroughly confused. So I am just going to
21  read the part that I found completely and thoroughly
22  confusing.
23  Given the thorny evidentiary issues presented, comma,
24  plaintiff has decided not to pursue his malicious prosecution
25  and intentional infliction claims at the liability phase of

1  this trial, claims which he hereby moves to bifurcate until
2  the second damages phase of the trial. I am leaving out the
3  footnote. Alternatively, if the Court is not inclined to
4  bifurcate those claims, plaintiff moves to dismiss them.
5  Either way with those claims out of the mix, the liability
6  trial can be substantially streamlined.
7       And then I think it was at least the first four
8  motions kind of -- for want of a better word, kind of riff off
9  of that. Basically, the predicate for those motions is, Well,
10 with this stuff out of the case, the case is just about this
11 -- with this other stuff out of the case, the case is just
12 about this, and so all this other stuff either becomes
13 irrelevant or otherwise inadmissible.
14      But I need to back up because when you say you don't
15 want to pursue the malicious prosecution and the intentional
16 infliction claims at the liability phase, how would you -- if
17 there was a liability phase and a damages phase, how would one
18 bifurcate the case so that liability issues are also being
19 addressed at the damages phase?
20      MR. LOEVY: Good point. It's a sloppy nomenclature.
21 I mean, I understood you had already bifurcated the case into
22 two --
23      THE COURT: Which I thought -- well, this may have
24 been before you got into the case, and I'm not --I don't want
25 to get into your, you know, strategic whatever. But I thought

1  I was going to get a motion to reconsider that.
2      MS. GORMAN:  Right.
3      THE COURT:  Because one of the big issues -- or one
4  of the issues, not necessarily the big issues, but an issue
5  that was raised I think on the post-trial motions was that,
6  you know, this bifurcation thing made it sound like a good
7  idea at the time, but it ended up not working out that way,
8  and the plaintiff basically got the short end of the stick.
9      And so I assumed I was going to get a motion to
10 unbifurcate it or at least bifurcate it in a different way.
11 But I need you to explain what it is you want me to do.
12     MR. LOEVY:  Our present thinking is the reason we
13 left bifurcation damages in liability was because a lot of the
14 damages evidence goes to guilt or innocence and therefore,
15 boom, everything is in play again.
16     So what we'd like to do, if the Court was inclined to
17 do it, is try the Brady claim, the Constitutional claims, at
18 which there would be no evidence of guilt or innocence, nor
19 would there be evidence of probable cause.  That would be a
20 fairly streamlined trial, and a lot of the prejudicial and we
21 believe unfairly prejudicial evidence wouldn't come in.
22     Your Honor correctly pointed out that you can't have
23 a malicious prosecution claim tried at the non-liability phase
24 because that's also liability.
25     THE COURT:  Is what you are asking me really to

1  bifurcate the liability on the Brady --
2           MR. LOEVY: Yes.
3           THE COURT: -- stuff? In other words, trying
4  liability on Brady first and then try everything else after
5  that?
6           MR. LOEVY: Originally, it was going to be try
7  damages after that, but, you know, instead of dismissing the
8  malicious prosecution, might as well throw it in the second
9  one.
10          THE COURT: So let me ask you this question, because
11 I think this is kind of a critical question. So let's say --
12 let's say that's what ended up happening. In one way or
13 another, all you have is a Brady claim, and the Brady claim is
14 evidence was withheld, evidence was fabricated. Okay? And
15 that's basically it. I think it all falls into one of those
16 two categories in this case. If it doesn't, it doesn't really
17 matter for purposes of what I am about to ask.
18          Is somebody -- is Mr. Fields going to get up on the
19 witness stand and say, I didn't do it?
20          MR. LOEVY: Your Honor, that would, we would have to
21 concede, be not part of the trial, I mean, because he would
22 have to say that -- you know, that would be damages, it seems
23 to me.
24          THE COURT: Okay. So, in other words, the answer is,
25 no, he wouldn't be getting up on the stand and saying --

1   MR. LOEVY: He'd like to, but I agree that would be
2  inconsistent with it.
3   THE COURT: And similar question along the same
4  lines: If there was a liability only, just the Brady claim,
5  would anybody be getting up in opening statement or closing
6  argument and saying, he didn't do it, he's innocent?
7   MR. LOEVY: My response to that, your Honor, is we'd
8  like to.
9   THE COURT: Okay. But here's the problem. When you
10 say that on the Brady claim guilt or innocence isn't an issue,
11 I agree -- we have had this discussion before, and -- or maybe
12 Ms. Gorman and I have had it before, but you have had enough
13 cases before me, I am sure I have had it with you.
14   I agree that it's possible to try a Brady claim
15 without bringing in any issues of guilt or innocence. It's
16 theoretically possible. I have never seen it happen. And the
17 reason I've never seen it happen, I suspect, is that from a
18 strategic standpoint, it's a much better claim if the
19 plaintiff is getting up there saying, I didn't do it, or if
20 you are otherwise trying to prove the plaintiff didn't do it.
21 But once you do that, then you have put guilt or innocence
22 into the mix, and that's the problem.
23   So, I mean, maybe -- maybe this is a case in which,
24 you know, you can make a decision, okay, we want to just try
25 the Brady claim as a pure, pristine Brady claim, which is did

1  they produce the evidence, is the evidence material, and
2  whatever the other issues are, did it cause damages.  I guess
3  the damages would be the second part.  But you got to
4  understand, you know, that that's going to put some pretty
5  serious limitations on what you're going to be able to do.
6  That's number one.
7           Number two is that in discussing the issue of
8  materiality -- which doesn't relate to materiality in the
9  general world; it relates to materiality in terms of the
10 trial -- the defendants are absolutely entitled to put in all
11 of the evidence that came in during the trial because that's
12 the way, or a way, at least, in which you explain on the
13 defense side something is not material.  In other words,
14 there's different ways of doing it.
15          You understand all of that?
16          MR. LOEVY:  We do, your Honor.
17          THE COURT:  Okay.  Well, so let me kind of shift over
18 to defense counsel for a second.  And, I mean, I guess we are
19 kind of previewing a discussion that we would have later, but
20 I'd rather have at least some of it now because I think it
21 will make it easier to talk about it later.
22          Do you have a -- I don't know whether you had the
23 same level of confusion that I did when you read this or not
24 about what was being proposed.  You don't have to answer that
25 question.  But is it at least clear enough now what is

1  being -- the way I am hearing it is that what the plaintiff is
2  asking me to do is bifurcate the case, part one would be
3  liability on the Brady claim, part two would be everything
4  else. And there would be -- there's obviously an issue about
5  whether that's a good idea and whether I ought to do it and so
6  on, and that's something that I think is going to have to get
7  hashed out, clearly have to be hashed out.
8      You have something to say about that, obviously, but
9  you don't have to say it right now.
10     MR. NOLAND: We understand now what he is saying
11 after the discussion, what the plaintiffs are saying with
12 discussion with the Court. We would oppose it.
13     THE COURT: Did I set dates for responses on this? I
14 think I did, but I couldn't find it.
15     MR. MICHALIK: Judge, it was two weeks from last
16 Friday. We have two weeks to respond.
17     THE COURT: Okay. And then do I have a date for you
18 to come in and talk about it?
19     MS. GORMAN: No.
20     MR. NOLAND: Just a final pretrial conference.
21     THE COURT: Okay. So I think I want to do that. And
22 we may end up not talking about everything, but some of this I
23 do want to talk about because it's going to have a pretty
24 significant impact on other stuff. So let me just -- so the
25 other briefs are coming in, what, something like the 2nd of

1 June or something like that?

2 MR. NOLAND: Give me a second, Judge.

3 MS. GORMAN: 27th.

4 THE COURT: Oh, 27th. Okay. All right. Let me just
5 pop June up here.

6 Boy, I would really like to get you in sometime in
7 June, but the problem is I've got these couple of criminal
8 cases that I have got to get tried. Let's see here.

9 So could you do -- no, can't do that.

10 (Brief pause.)

11 THE COURT: Sorry to keep you on pause here. Just
12 give me a second.

13 (Brief pause.)

14 THE COURT: Sorry this is taking so long. I'll be
15 with you in just one second. I am just trying to find a date
16 where I can kind of wedge you in in June.

17 Okay. So this is what I would like to do. I'd like
18 to have you come in on the afternoon of Monday, June the 6th.
19 When I say wedge you in, that's what I am talking about.

20 Now, there is a little chance that if the trial that
21 I have that's starting the previous week might carry over and
22 if it looks like by like Thursday or Friday of the previous
23 week that that's going to happen, I will probably call you and
24 say I have to move the date, but I have some hope that it
25 won't. And so what I'd like to have you to do is maybe come

1  in at like 3:00 o'clock on Monday, June the 6th.  Is that
2  doable?
3       MR. CARGIE:  Your Honor, I think Mr. Kulwin is out of
4  the office, based on what I am looking at on the calendar.  I
5  don't know if it's all day.  It may just be --
6       THE COURT:  So here is the deal.  The deal is if I
7  don't do it then, I probably can't do it until well into July.
8       MR. CARGIE:  Okay.
9       THE COURT:  Because I have to be out of town for a
10 little bit, and then I have a bunch of criminal cases lined
11 up, which I think are all going to go.
12      MR. CARGIE:  Then we will keep it June 6th.
13      THE COURT:  Okay.  Will that work for everybody else?
14      MR. LOEVY:  We'll make it work, your Honor.
15      And since our proposal wasn't clear, what we --
16      THE COURT:  If you want to file something and clarify
17 it, go for it.  That's fine.  Or if you want to just say
18 something clarifying --
19      MR. LOEVY:  Our thinking was since bifurcation of
20 damages and liability is already bifurcated, the probable
21 cause evidence fits better with damages than it does with the
22 Brady because if you're going to be proving guilt or
23 innocence --
24      THE COURT:  I mean, strategically, I know why you're
25 doing this.  Okay?  I mean, you want the guilt/innocence

1  evidence not to come in in the first part of the case; you
2  want it to come in at the second part of the case.
3     MR. LOEVY:  And probable cause fits better with that.
4     THE COURT:  Okay.  And they probably want the
5  opposite for essentially the flip side of the same reason, so
6  I know.
7     So here's my suggestion, though, is that when -- I'd
8  like to at least get your thoughts -- and they don't have to
9  be full-blown thoughts -- on this bifurcation thing as part of
10 your response to the motions in limine.  You don't have to
11 give me a whole chapter and verse.  I mean, I assume you're
12 going to say, no, we don't want to do that, but it might be
13 helpful if you were to kind of lay out for me here's the
14 problems that would be created if you did something like that.
15 That will, I think, help tee it up for everybody.
16    MR. NOLAND:  I was going to request --
17    THE COURT:  Do you want a little bit more time?
18 Sure.
19    MR. NOLAND:  That would be a great.  I was also going
20 to ask that the plaintiffs do articulate something more robust
21 in writing on this particular issue.  It's really just one
22 line.  It's not supported.  We would be probably interested in
23 seeing the first, if any, case law, and just --
24    THE COURT:  It's all discretionary.
25    MR. NOLAND:  Well, in support of I think what they

1 are saying, I think we just had a little private conversation,
2 I understood the plaintiffs to be saying that there would be
3 two aspects of the trial: One would be the liability phase on
4 Brady, the second would be damages and malicious pros
5 together.
6     THE COURT: Yeah.
7     MR. NOLAND: Okay. Not three.
8     THE COURT: Not three, no. There's not going to
9 be -- I actually had one case that was quadrifurcated, but we
10 won't talk about that. It was a patent case. Don't ever
11 think about that.
12     But what I'm hearing is phase one is liability on
13 Brady, phase two is everything else.
14     MR. NOLAND: Okay.
15     MR. LOEVY: We will file something this week if you
16 want clarification, two pages.
17     THE COURT: Yeah. Go ahead.
18     MR. NOLAND: We would be interested in seeing any
19 legal authority to support that concept, number one.
20     Number two, particularly on motions 1 and 2, we'd be
21 interested in seeing what specific evidence the plaintiffs are
22 seeking to bar and why --
23     THE COURT: That is actually a decent point because
24 it was -- you know, you described it generically, and I
25 understand that you are working within page limitations and

1  whatnot here, but I do think it would be helpful to have a bit
2  more of an explanation when you say, okay, the probable cause
3  evidence, like what do you understand that to be.
4          I mean, everybody knows how the case was tried the --
5  what we will call the first time. I think it might be helpful
6  to say, okay, if we do it the way we're proposing to do it,
7  here's what we think would end up being in phase two, here is
8  what we think would end up being in phase one. I think that
9  makes sense.
10         MR. LOEVY: Can we have a week to do that then, your
11 Honor?
12         THE COURT: You can have until whatever a week from
13 today is, which is the 25th, right? And so then the date for
14 the response I am going to move by a week too, just on this
15 motion. The other stuff, go ahead and file it.
16         So the date for the response on the plaintiff's
17 non-Monell motions in limine is moved to the 1st of June.
18         MR. NOLAND: The entire response?
19         THE COURT: Yeah, the whole response. I don't want
20 you to file it in pieces, no. That's fine. But the other
21 stuff -- well, I guess the other filing obligations are on the
22 plaintiff's side, so you have some stuff that's due next week.
23         MR. LOEVY: Very good.
24         THE COURT: Thanks.
25         Mr. Cargie was here before. Do I have a date that

1 you're coming back on that or not really?

2     MR. MICHALIK: Actually, it was for today, Judge. It
3 was for a follow-up on status on that. But we are still
4 working with Mr. Cargie to try and work that out, so...

5     THE COURT: Okay. So should I set another -- a
6 different date for that? Maybe I ought to.

7     MR. NOLAND: My suggestion would be -- we are hopeful
8 to work it out, and if we don't --

9     THE COURT: You might have to file something else
10 anyway.

11     MR. NOLAND: -- I think the next step really would be
12 for us to file a motion to compel against them.

13     THE COURT: Fine. Then I will just leave it in your
14 hands then.

15     Okay. Fine.

16     MR. LOEVY: Thank you, your Honor.

17     THE COURT: Great. Thanks.

18     MR. NOLAND: Thank you.

19     MS. GORMAN: Thank you.

20     MR. MICHALIK: Thank you, Judge.
  (Which were all the proceedings had in the above-entitled
21 cause on the day and date aforesaid.)
    I certify that the foregoing is a correct transcript
22 from the record of proceedings in the above-entitled matter.

23 _____      _____
  Carolyn R. Cox                               Date
24 Official Court Reporter
  Northern District of Illinois
25
  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR