```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   NATHSON E. FIELDS,                )   Docket No. 10 C 1168
                                       )
 5                     Plaintiff,      )
                                       )
 6              vs.                    )
                                       )
 7   CITY OF CHICAGO, et al.,          )   Chicago, Illinois
                                       )   March 23, 2016
 8                     Defendants.     )   9:30 o'clock a.m.

 9
              TRANSCRIPT OF PROCEEDINGS - MOTION
10        BEFORE THE HONORABLE MATTHEW F. KENNELLY
                      VOLUME 1-A
11
     APPEARANCES:
12

13
     For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
14                         BY:  MS. H. CANDACE GORMAN
                           220 South Halsted Street, Suite 200
15                         Chicago, IL  60661
                           (312) 441-0919
16

17                         LOEVY & LOEVY
                           BY:  MR. D. SAMUEL HEPPELL
18                              MS. SARAH LYNNE GRUSIN
                           311 North Aberdeen Street, 3rd Floor
19                         Chicago, IL  60607
                           (312) 243-5900
20

21

22

23   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                           Official Court Reporter
24                         219 S. Dearborn Street, Suite 2102
                           Chicago, Illinois  60604
25                         (312) 435-5639
```

1   APPEARANCES CONTINUED:

2   For Defendant
    City of Chicago:          DYKEMA GOSSETT PLLC
3                             BY:   MR. DANIEL MATTHEW NOLAND
                                    MR. PAUL A. MICHALIK
4                             10 South Wacker Drive, Suite 2300
                              Chicago, IL  60606
5                             (312) 627-2100

6

7
    For Defendant             KULWIN, MASCIOPINTO & KULWIN, LLP
8   David O'Callaghan:        BY:   MR. SHELLY BYRON KULWIN
                              161 North Clark Street, Suite 2500
9                             Chicago, IL  60601
                              (312) 641-0300
10

11
    Also Present:             COOK COUNTY STATE'S ATTORNEY'S OFFICE
12                            BY:   MS. LISA MARIE MEADOR
                              50 West Washington Avenue
13                            Chicago, IL  60602
                              (312) 603-3369
14

15

16

17

18

19

20

21

22

23

24

25

1    (The following proceedings were had in open court:)

2        THE CLERK:  Case No. 10 C 1168, Fields v. City of

3  Chicago.

4        MR. KULWIN:  Good morning, your Honor.  Shelly

5  Kulwin --

6        THE COURT:  Let's get everybody up here and the usual

7  protocol.

8        Why am I seeing Ms. Meador here?  You had nothing

9  better to do this morning?

10        MS. MEADOR:  I thought I'd join back in, Judge.

11        THE COURT:  You had so much fun the first couple of

12  times.

13        MS. MEADOR:  I did.

14        THE COURT:  Okay.  So let's start over here and go

15  across the room.

16        MS. MEADOR:  Lisa Meador, M-e-a-d-o-r, on behalf of

17  the Cook County State's Attorney's Office as a subpoena

18  respondent.

19        THE COURT:  Oh, that's it.  Okay.  Now I get it.

20        MR. MICHALIK:  Paul Michalik and Dan Noland on behalf

21  of defendants City of Chicago, Brannigan, and Murphy.

22        MR. KULWIN:  Shelly Kulwin on behalf of David

23  O'Callaghan.

24        MS. GORMAN:  Candace Gorman on behalf of Mr. Fields.

25        MS. GRUSIN:  Sarah Grusin on behalf of Mr. Fields.

1        MR. HEPPELL:  Sam Heppell on behalf of Mr. Fields.

2        THE COURT:  Okay.  We're going to talk sometime today

3   about the motion that's noticed up for next Tuesday; in other

4   words, the motion for continuance.  Whether it's now or

5   whether it's this afternoon depends on the answer to the

6   following question.

7        Do I have everybody in the room that I have to have

8   in the room if we get to the point of talking about a new

9   trial date?  I'm guessing that's a no.

10        MS. GORMAN:  No.

11        THE COURT:  It's going to have to be later today

12   then.  I am just going to tell you.  And whether you have the

13   people here or whether you know what their schedules are from

14   now until, you know, 2017, 2019, 2040.

15        MS. GORMAN:  Jon Loevy is on trial.

16        MS. GRUSIN:  At the Daley Center.

17        THE COURT:  You know what?  He has a schedule, and

18   somebody can find that out.

19        MS. GORMAN:  Okay.

20        THE COURT:  So we are going to talk about that this

21   afternoon let's say 2:30.

22        So putting that aside then, the motion to file an

23   oversized brief is granted.

24        One question I had, and I didn't actually drill down

25   to look at the certificate of service, but I'm assuming you

1    just served this via CM/ECF.

2         MR. KULWIN:  We did, Judge.

3         THE COURT:  Does notice need to be given of this

4    motion to the third party?

5         MR. KULWIN:  The public defender?

6         THE COURT:  Or whoever the -- whether it's public

7    defender or private lawyers.

8         MR. KULWIN:  I thought we had, Judge.  If we hadn't,

9    that's on me, and we'll do it.

10        THE COURT:  I just don't know one way or another

11   whether you did or not.

12        MS. GORMAN:  Your Honor, I don't believe notice was

13   given to the PD or to the private attorneys.

14        THE COURT:  Let's pull up the -- the notice of motion

15   doesn't have a certificate of service on it.  Let's see if the

16   motion has a certificate of service on it.

17        MS. GORMAN:  I believe it says just to the --

18        THE COURT:  It probably just says whoever is on

19   CM/ECF, which means not everybody.

20        MR. KULWIN:  So we can send that --

21        THE COURT:  Do you know who it is that you're --

22        MR. KULWIN:  Yes, Judge, we know the PD who is

23   handling it is.  It's the one who produced --

24        THE COURT:  So are all of these public defender

25   cases?

1    MR. KULWIN:  No.  That's the problem, Judge, as
2 Ms. Gorman just pointed --
3    THE COURT:  So but then it's not just the public
4 defender.
5    MR. KULWIN:  No, it's not.
6    THE COURT:  You have to serve other people too.
7    MR. KULWIN:  We have to find out who they are.  We
8 don't know who they are.
9    As you may recall, and we know --
10    THE COURT:  Wait a second.  When you say you don't
11 know who they are, don't the files disclose who the lawyers
12 were?
13    MR. KULWIN:  I'm not --
14    THE COURT:  They have to.  Come on.
15    MR. KULWIN:  Okay.
16    THE COURT:  They have to.  You have a lawyer's file
17 that doesn't tell who the lawyer is?
18    MS. GORMAN:  Your Honor, they have never asked us --
19    THE COURT:  It's ascertainable information.
20    MR. KULWIN:  It is, Judge.  That's easy enough.  We
21 had asked them for the letters from the lawyers who had said
22 okay, and we didn't get those, but we can look through all the
23 files, Judge.  That's not a problem.
24    THE COURT:  Okay.  So as of right now, you still got
25 a trial date in May, and, quite honestly, I am going to set a

1   schedule on this with that in mind.  So how long would you
2   like to respond?
3           MS. GORMAN:  A week.
4           MS. GRUSIN:  A week.
5           THE COURT:  Sure.  That's the 30th of March; 3/30.
6           It's not going to be a week to reply.  The reply is
7   due the following Monday which is the 4th of April.
8           We may have to do that a different way.  Let me think
9   this through.
10          So I am going to set this for ruling on the 11th of
11  April at 9:30.  The only reason I am not setting it for the
12  balance of the week of the 4th is I am kind of in and out of
13  town.
14          Okay.  So that's the only thing that's officially on
15  the table --
16          MR. KULWIN:  That's correct, Judge.  Only if you
17  wanted -- so we'll go back now and send it to the public
18  defender.
19          With respect to the private lawyers, it might be
20  helpful and more expeditious, but we don't have to do it this
21  way, only because I'm down one associate today, if the
22  plaintiff could give us the list of the 20 or so lawyers who
23  provided the files, that would make it a lot easier.
24          THE COURT:  Do you have that information?
25          MS. GORMAN:  We do, your Honor.

1          THE COURT:  Okay.  Try to get it over to them today.
2          MR. KULWIN:  And then we will send it to everybody,
3   Judge.
4          THE COURT:  Okay.
5          MR. KULWIN:  That's it for today, Judge.
6          THE COURT:  So tell me why you're here.
7          MS. MEADOR:  Okay.  Well, your Honor, so as you're
8   aware, there was a subpoena to the State's Attorney's
9   Office --
10         THE COURT:  Whose subpoena was it?
11         MS. MEADOR:  From --
12         THE COURT:  A defense subpoena.  I think you referred
13  to that -- somebody referred to that and something got filed.
14         MR. NOLAND:  We sent two subpoenas and also a request
15  before things were disclosed.  But, anyway, we have requested
16  in one way or the other all of the 61 cases from the state --
17         THE COURT:  The state's attorney's files.
18         MR. NOLAND:  Yes.
19         MS. MEADOR:  Right.  And we're in the process of
20  locating those files and going through them for privilege and
21  producing those files.  In going through them, you know, it is
22  obviously a lot of files and a lot of documents.  The files
23  all for the most part include some confidential information,
24  medical records, psych records, juvenile records, personal
25  information, victims, witnesses, et cetera, that if I redacted

 1  that information or identified, you know, these specific pages
 2  as designated as confidential, it would take an additional --
 3          THE COURT:  A long time.
 4          MS. MEADOR:  A long time, yes.
 5          THE COURT:  Let me ask you this question.  And I
 6  wouldn't expect you to have complete command of all however
 7  many files it is, but maybe you can just -- based on what
 8  you've seen.
 9          The type of information you are talking about,
10  whether it's medical, juvenile, victim, witness information or
11  whatever, is it information that would have been disclosed to
12  the defense attorney in the underlying criminal case?
13          MS. MEADOR:  Probably, except for perhaps some
14  personal information of various officers and detectives.
15          THE COURT:  Yeah, so like maybe their addresses and
16  things like that.  Right.  Right.
17          MS. MEADOR:  Addresses, phone numbers, things like
18  that.  You know, there's grand jury transcripts and pleadings.
19          THE COURT:  Yeah, but those always get turned over.
20          MS. MEADOR:  Yeah, yeah.  Juvenile records, psych
21  records, medical records.
22          My thought was -- you know, I understand it's a short
23  timeline going on, and my thought was that if I -- if the
24  parties would agree to a stipulation where I can identify the
25  categories of documents, that I would produce them without any

1    confidential designation and without redaction, that they

2    would treat them as confidential, these categories of

3    documents or these categories of information, for purposes of

4    utilizing them throughout the litigation, if that makes sense.

5              THE COURT:  Do you have a protective order in this

6    case?

7              MS. MEADOR:  We do, but --

8              THE COURT:  Does it not -- is there a way we can kind

9    of wedge this into that?

10             MS. MEADOR:  I could.  It would then -- would -- I

11   would then say we would mark just every page then

12   confidential, so that's the option, even though --

13             THE COURT:  What does the protective order prevent

14   you from doing?  Is anybody conversant enough with --

15             MR. NOLAND:  I think that if we --

16             THE COURT:  Can you show it to your clients I guess

17   is the question?

18             MR. NOLAND:  You can show it to clients and experts

19   and things of that nature.

20             THE COURT:  That ought to be good enough, right, at

21   least for the time being, just to kind of facilitate the

22   production?

23             MS. GORMAN:  Your Honor, I believe the procedure that

24   counsel has come up with is actually a better one --

25             THE COURT:  Better?

1    MS. GORMAN:  -- and we've agreed to it, because that

2  way the police reports and stuff won't be confidential and we

3  won't have any of those problems.

4    We just wanted to get a list from her of what

5  categories they were talking about.

6    THE COURT:  Okay.  So here's the deal.  I don't care

7  how you do it, but what I want you to do and what I am going

8  to insist that you do is you get it figured out before 2:30

9  this afternoon.  And if you don't have -- if you haven't come

10  to some accommodations you are all comfortable with, then this

11  is the second item on the agenda, or maybe the first since you

12  are here, first item on the agenda at 2:30.

13    MS. GORMAN:  Okay.

14    THE COURT:  Okay?  Anything else we should talk about

15  this morning?

16    MR. KULWIN:  No.

17    THE COURT:  See you this afternoon.

18    MS. GORMAN:  Thank you.

19    MR. NOLAND:  Thank you.

20    (The hearing was adjourned at 10:10 a.m. until 2:30 p.m. of

21  this same day and date.)

22

23

24

25

```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4   NATHSON E. FIELDS,                  )   Docket No. 10 C 1168
                                         )
 5                       Plaintiff,      )
                                         )
 6             vs.                       )
                                         )
 7   CITY OF CHICAGO, et al.,            )   Chicago, Illinois
                                         )   March 23, 2016
 8                       Defendants.     )   3:00 o'clock p.m.

 9
                    TRANSCRIPT OF PROCEEDINGS - MOTION
10           BEFORE THE HONORABLE MATTHEW F. KENNELLY
                           VOLUME 1-B
11
     APPEARANCES:
12

13

14   For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
                           BY:  MS. H. CANDACE GORMAN
15                         220 South Halsted Street, Suite 200
                           Chicago, IL  60661
16                         (312) 441-0919

17                         LOEVY & LOEVY
                           BY:  MR. ANAND SWAMINATHAN
18                              MS. SARAH LYNNE GRUSIN
                           311 North Aberdeen Street, 3rd Floor
19                         Chicago, IL  60607
                           (312) 243-5900
20

21

22
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
23                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
24                         Chicago, Illinois  60604
                           (312) 435-5639
25
```

```
1    APPEARANCES CONTINUED:

2    For Defendant
     City of Chicago:        DYKEMA GOSSETT PLLC
3                            BY:   MR. DANIEL MATTHEW NOLAND
                                   MR. PAUL A. MICHALIK
4                            10 South Wacker Drive, Suite 2300
                             Chicago, IL  60606
5                            (312) 627-2100

6

7
     For Defendant          KULWIN, MASCIOPINTO & KULWIN, LLP
8    David O'Callaghan:      BY:   MR. SHELLY BYRON KULWIN
                             161 North Clark Street, Suite 2500
9                            Chicago, IL  60601
                             (312) 641-0300
10

11
     Also Present:           COOK COUNTY STATE'S ATTORNEY'S OFFICE
12                           BY:   MR. THOMAS E. CARGIE
                             69 West Washington, Suite 3110
13                           Chicago, IL  60602
                             (312) 603-1426
14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following proceedings were had in open court:)

2         THE CLERK:  Case No. 10 C 1168, Fields v. City of

3    Chicago.

4         THE COURT:  Sorry for making you wait.  The cascading

5    problems started about an hour and a half ago.

6         All right.  Let's get everybody in a spot, and we

7    will go through the roster as in the normal form.

8         MR. KULWIN:  Good afternoon, Judge.  Shelly Kulwin on

9    behalf of David O'Callaghan.

10        MR. CARGIE:  Good afternoon, your Honor.  Thomas

11   Cargie, C-a-r-g-i-e, on behalf of the respondent public

12   defender.

13        THE COURT:  Ah, okay.

14        MR. MICHALIK:  Paul Michalik and Dan Noland on behalf

15   of defendants City, Brannigan, and Murphy.

16        MS. GORMAN:  Candace Gorman on behalf of Mr. Fields.

17        MS. GRUSIN:  Sarah Grusin on behalf of Mr. Fields.

18        MR. SWAMINATHAN:  And Anand Swaminathan on behalf of

19   Mr. Fields.

20        THE COURT:  Okay.  Let me deal with Mr. Cargie first.

21        MR. CARGIE:  I apologize I was not here this morning,

22   your Honor.

23        THE COURT:  That's okay.

24        MR. CARGIE:  I was out of the office on Monday --

25        THE COURT:  No worries.

1      MR. CARGIE:  I just wanted to make sure I had leave

2  to file a response?

3      THE COURT:  Yes, absolutely.  Yes, absolutely.

4      MR. CARGIE:  I'm not a party to that motion, so I --

5      THE COURT:  No, but we talked this morning about that

6  people, including you, should have gotten notice of that --

7      MR. CARGIE:  He called me.  I got it pursuant to ECF.

8  I appreciate it.

9      THE COURT:  All right.  Thanks.  You don't have to

10  hang around, obviously.

11      So the fact that -- I'm blanking on her name.

12      UNIDENTIFIED SPEAKER:  Ms. Meador.

13      THE COURT:  -- (continuing) isn't here means you've

14  something resolved on that, I take it.

15      MS. GORMAN:  We resolved that.

16      THE COURT:  Okay.  In terms of protective orders and

17  whatnot.  Okay.

18      So where I want to start out from you is probably not

19  where you want to start out.  Where I want to start out from

20  you is I want people to tell me what are the days extending

21  into the future where you believe that there are conflicts and

22  what are the conflicts.

23      So we start with you, Mr. Kulwin.  You are on the

24  list.

25      MR. KULWIN:  Just September of this year.

1        THE COURT:  And what's September?

2        MR. KULWIN:  Starting on -- September 2016, starting

3    on I believe September 21st.  Let me just double-check.

4        Yes, starting on September 13th, actually.

5        THE COURT:  13th?  You have a trial of some sort?

6        MR. KULWIN:  I have a chancery trial, yes, Judge.

7        THE COURT:  In the chancery division.

8        I should have said when the prior case was being

9    called that actually the first case I tried in front of Earl

10   Strayhorn was with Mr. Kulwin.

11       MR. KULWIN:  That's what I said.

12       THE COURT:  And I will tell you a story about the

13   motion to suppress in that case after we're done here and off

14   the record.  It's a worthwhile story.

15       Okay.  Moving down the chain here.

16       MR. MICHALIK:  In terms of my own personal schedule,

17   I --

18       THE COURT:  Maybe if somebody could speak

19   collectively for all of you folks.

20       MR. MICHALIK:  Collectively for us, Mr. Burns has a

21   trial starting September 19th, and it is a massive trial in

22   state court involving a case where the demand is like $80

23   million.  It involves numerous witnesses --

24       THE COURT:  Okay.

25       MR. MICHALIK:  -- so it's going to take a significant

1    chunk of time.

2              THE COURT:  It will take a while.  Okay.

3              MR. MICHALIK:  Probably through the end of October.

4              And for myself, my son is getting married in June,

5    the middle of June, so...

6              THE COURT:  Congratulations.

7              MR. MICHALIK:  Thanks.  We're happy that he's

8    leaving.

9              THE COURT:  It's on the record now.  Should I order

10   this and send it to him?

11             MR. NOLAND:  I move to strike that comment.

12             THE COURT:  Actually, you may order it and send it to

13   him.  You know, it depends on the relationship.

14             MR. MICHALIK:  Nah, he's a good young man.

15             THE COURT:  All right.  So moving down the chain here

16   to the plaintiff's side.

17             MS. GORMAN:  Your Honor, we're good until November.

18             THE COURT:  Okay.  What I'm thinking of is the

19   beginning of August.

20             So let me just kind of back up a second here.

21             So, first of all, when I entered the order that's

22   quoted on page 2 of the City defendants' motion that basically

23   gave the breakdown for the discovery plan, at that point, the

24   trial date was November the 30th, and I essentially had the

25   expert witness depositions going on right up until middle of

1    November and understood that that was going to involve some
2    squeezing, but, you know, it's one of those things, I guess.
3            It got moved.  I kind of went back and tried to
4    revisit -- or review everything.  So I had set the original
5    trial date, which was going to be November the 30th, back in
6    April of 2015.  Then in June of 2015 is when I set the
7    schedule that's referenced here, so that schedule was set in
8    contemplation of a November 30th trial date.
9            Then there was a motion filed by the plaintiff asking
10   to extend the discovery schedule and continue the trial date.
11   That was filed in August.  I ruled on that on the 27th of
12   August.  Among other things, I reset the trial to the
13   current -- I think it's the current date of May the 9th, yeah,
14   it's the current date, May the 9th of this year, asked for a
15   joint status report with a comprehensive proposed schedule for
16   revising the Monell discovery date to be filed.  That was
17   filed on the 17th of September.
18           And then on the 21st of September, we had a
19   discussion about that in court.  I entered a -- I think it's
20   the 27th of December -- I entered a schedule that was largely
21   consistent with what the plaintiff had proposed, but I made, I
22   think, one adjustment on the dates.  And then that date was --
23   there was one later extension of one of the dates for the
24   plaintiff to produce certain documents.  That happened on
25   the 14th of January.  I extended that date, I think, from the

1  15th of January to the 29th of January.

2  So, you know, it was contemplated all along, and you

3  could argue about, you know, whether it was smart or not smart

4  that, this was all going to be happening in a fairly

5  compressed period; in other words, completing the expert

6  discovery and then going into the trial.  Honestly, I will

7  just tell you, part of the reason why I did that is I had

8  already denied the motion for summary judgment even before the

9  first trial on the Monell claim, and so I was -- I knew then

10  that there was not going to be another at least meritorious

11  motion for summary judgment before that, so I didn't think I

12  needed time to build that in.

13  So now what's happened is that -- and I want to

14  give -- in a second here, I want to give the plaintiff a

15  chance to address, I guess, some of the points that are made

16  in the motion.  But it's fair to say that, you know, a lot of

17  stuff has been produced and a lot of stuff has been produced

18  fairly quickly in a fairly compressed period.  There's a lot

19  of work to do between now and the trial for everybody, mostly

20  for all of you, some of it for me.

21  There's going to be another couple of rounds --

22  another round, I guess, of motions in limine.  There's this

23  whole issue of privilege dealing with the files that have been

24  disclosed, the extent to which I should overrule claims of

25  work product or attorney-client privilege that are asserted by

1    either public defenders and potentially in the future by the

2    State's Attorney's Office, and that's going to require some

3    work.  And depending upon how that gets resolved, it might

4    require further discovery afterwards.

5            And so I do think -- and when I read this and went

6    back and reviewed everything, I do think it's appropriate to

7    consider, you know, moving the trial date.

8            And so with that in mind, why don't I turn it over to

9    the plaintiff's side.  What would you like to tell me about --

10           MS. GORMAN:  Your Honor, I think I'd like to address

11   some of the statements made by the defense in the --

12           THE COURT:  In the motion.

13           MS. GORMAN:  -- in their motion because we have given

14   them every file that we're relying on on January 15th.

15           THE COURT:  Okay.

16           MS. GORMAN:  So they've had all of this stuff.  They

17   didn't have every document until January 29th because there

18   were files that we were still waiting on from the public

19   defender --

20           THE COURT:  That was the date I extended -- the date

21   by which you were to disclose the documents that you were

22   going to rely on.

23           MS. GORMAN:  The late documents that we were getting

24   from the Public Defender's Office.  So they've had every file

25   and every document since the end of January.

1    And I'll remind this Court on January 14th, you told

2  the defense counsel that they should do a subpoena for every

3  file that we had given them on January 15th because we told

4  the Court, tomorrow we are going to tell them every file.  And

5  you said, get a subpoena out there for every file.

6    As far as I know, because I've only gotten one

7  subpoena from the defendants, I went back and looked after

8  court this morning, they did one subpoena on the 20th of

9  January for nine files to the State's Attorney's Office.  I've

10 never received another subpoena that they've issued.

11   So they've had the time to do it.  They've raised a

12 lot of these issues with us over the -- mostly in January

13 about what they got from us in response to our disclosures.

14 They didn't think that we were following this Court's orders.

15   We talked with them.  We provided an in-depth letter

16 to them, which I have a copy of, that actually addresses their

17 concerns about the Brady material and what it was we were

18 supposed to turn over.

19   I think that they haven't been able to keep up.  I

20 know it's been hard for us as well.  My suggestion was going

21 to be that the Court kick this by the two weeks that you gave

22 us in January for them to catch up on the last of the files

23 because it seems like they're in the position we were in

24 January 15th.

25   THE COURT:  No, I mean, I get that.  Let me just tell

1    you.  So once we start talking about a continuance, I mean, I

2    have to think -- it really becomes not just an issue for you.

3    I mean, I have asked you -- it becomes an issue for the rest

4    of my calendar because essentially what's happened -- I mean,

5    actually, the case that might bump your trial date was the one

6    that was just here, might bump your original trial date a

7    little bit was the one that was just here.  And so I have

8    essentially scheduled the rest of my year around those two

9    cases.  No, seriously, I have.

10         And so I've got a bunch of stuff set for June, some

11   of which I may have -- even if I kept the current trial date,

12   I might have to tweak it a little bit anyway.  I have stuff

13   set for July.  August happens to be open.  But it would

14   require me, actually, in some cases where people are --

15   there's some fairly old cases, none as old as yours, with what

16   I would call a significant reliance interest and a lot of

17   out-of-town witnesses and out-of-town lawyers that have to get

18   all these people back in here, and I am really reluctant to

19   impose that on them.

20         So I understand what you're saying about extend it by

21   the two weeks, but it's just not practical because essentially

22   what that would mean is that, you know, we would be trying it

23   kind of towards the tail end of May and into June, and I've

24   got -- I mean, on my calendar, trials are in yellow.  Your

25   jacket is not yellow, but it's close.  It looks like your

1    jacket.  So it's just full of yellow.  So I really -- and some

2    of those are criminal cases with defendants in custody,

3    including, actually, some cases that were up this afternoon.

4    So I just don't think that's a real option.

5            July is a problem for me, and I -- somebody may have

6    said something about July.  No, I guess not.  Because I'm out

7    essentially the last week of July.  And so that would more or

8    less require us to squeeze this between the 4th of July and

9    the 22nd.  It's potentially doable, but I don't want to assume

10   that.  And as it turns out, I have August open.

11           So what I am inclined to do is move the trial date to

12   August 1 because that date wouldn't conflict with anybody's

13   dates that you have given me, and then kind of go back and

14   figure out what all of the other dates are that we need to

15   deal with in the interim.  So that's what I am going to do.

16           So the trial date of May the 9th is vacated.  It's

17   moved to August 1 at whatever -- 9:45, whatever our normal

18   start time is.

19           So let me wheel back over here then to the City's

20   lawyers, and let's talk about what we need to be thinking

21   about between now and then.

22           Mr. Noland.

23           MR. NOLAND:  So our next date was April the 1st, and

24   that was the City's identification -- production of documents

25   in response to their disclosure --

1          THE COURT:  Right.

2          MR. NOLAND:  -- and identification of witnesses --

3          THE COURT:  Right.

4          MR. NOLAND:  -- in response to their disclosure.  So

5    we would ask for a continuance of that as well.

6          THE COURT:  Honestly, what I guess I'm sort of more

7    or less inclined to do is, because it's like about six or

8    eight dates in there, tell you guys to go figure them out.

9    Come back and propose something to me.  I think that's better

10   than us trying to sort of do it right here.

11         Let me just talk about a couple of things, though.

12         So first of all, although I normally would do the

13   pretrial conference date right before the trial, that's not an

14   option because I am out the week of the 25th.  So I am going

15   to give you that date now, and I am going to set aside more

16   time for it than I normally would.

17         I am going to make it -- let me just check one thing

18   here.  Yeah.  I am going to set it for the 21st of July

19   at 1:30, and I am going to figure that we at least have the

20   whole -- we have the whole afternoon.  And so, Pam, if you can

21   just find a way to make a note that I shouldn't set any

22   sentencings or anything for that afternoon.  The case that's

23   set for that week has settled and will go away shortly.

24         I will tell you that I am -- first of all, I am not

25   going to change the dates on this briefing of this privilege

1   issue because that's got to be resolved now because it affects
2   what documents you can see and can't see and so on.

3          I am frankly inclined to not move the motion in
4   limine dates either because, honestly, I think putting them
5   off, it's not like a fine wine that improves with age.  Let's
6   put it that way.  I don't remember what they are, and I
7   wouldn't be adverse to tweaking them a little bit, but I would
8   like to get all of those in hand, let's say, sometime within
9   the next -- the motions in limine and the responses in hand
10  sometime within the next four to five weeks, let's say by the
11  end of whatever next month is, April.

12         MR. MICHALIK:  April 20th, Judge, for motions in
13  limine.

14         THE COURT:  That was the date for filing them?
15         MR. MICHALIK:  Yes.

16         THE COURT:  Okay.  Then scratch what I just said.
17  Let's put it this way.  I am willing to nudge those dates by a
18  couple of weeks, and so talk about those when you talk about
19  the rest of the schedule that you're going to deal with in the
20  interim.

21         The reason for that is that I guess I would like to
22  get as much of that kind of stuff resolved sooner and not have
23  it happen all at the last minute right before trial.  Once I
24  have them in hand, I will be able to determine which ones I
25  need to hear argument on, which ones I don't, and kind of

1    proceed accordingly.

2         And, you know, it's conceivable that there will be

3    more motions that will arise out of the whole Monell thing and

4    in limine motions that arise out of that, anyway, and that

5    will give us, you know, time to deal with those independent of

6    whatever else is on file.

7         So there you go.

8         MS. GORMAN:  So if I could just ask, so the jury

9    instructions, witness list, and exhibit lists, those were all

10   due on one day in April.  We can work that out?

11        THE COURT:  Yes.  Right, you can.

12        MS. GORMAN:  And you want those before the motion in

13   limine date?

14        THE COURT:  As long as I have -- as long as I have

15   all that stuff by the motion in limine response date, that's

16   fine.

17        Anything else anybody can think of that we ought to

18   be talking about?

19        MR. KULWIN:  I think that's it.

20        THE COURT:  All right.  So now we are off the record.

21   (Which were all the proceedings had in the above-entitled
     cause on the day and date aforesaid.)
22   I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
23

24   _____          _____
     Carolyn R. Cox                    Date
     Official Court Reporter
25   Northern District of Illinois
     /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR