```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   NATHSON E. FIELDS,                )  Docket No. 10 C 1168
                                       )
 5                   Plaintiff,        )
                                       )
 6          vs.                        )
                                       )
 7   CITY OF CHICAGO, et al.,          )  Chicago, Illinois
                                       )  August 22, 2016
 8                   Defendants.       )  10:30 o'clock a.m.

 9
               TRANSCRIPT OF PROCEEDINGS - MOTION
10          BEFORE THE HONORABLE MATTHEW F. KENNELLY

11   APPEARANCES:

12

13
     For the Plaintiff:    LAW OFFICE OF H. CANDACE GORMAN
14                         BY:  MS. H. CANDACE GORMAN
                           220 South Halsted Street, Suite 200
15                         Chicago, IL  60661
                           (312) 441-0919
16

17                         LOEVY & LOEVY
                           BY:  MR. JONATHAN I. LOEVY
18                              MS. SARAH LYNNE GRUSIN
                           311 North Aberdeen Street, 3rd Floor
19                         Chicago, IL  60607
                           (312) 243-5900
20

21

22
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
23                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
24                         Chicago, Illinois  60604
                           (312) 435-5639
25
```

```
 1   APPEARANCES CONTINUED:

 2   For Defendant
     City of Chicago:       DYKEMA GOSSETT PLLC
 3                          BY:  MR. TERRENCE MICHAEL BURNS
                                 MR. DANIEL MATTHEW NOLAND
 4                               MR. PAUL A. MICHALIK
                            10 South Wacker Drive, Suite 2300
 5                          Chicago, IL  60606
                            (312) 627-2100
 6

 7

 8   For Defendant            KULWIN, MASCIOPINTO & KULWIN, LLP
     David O'Callaghan:       BY:  MR. SHELLY BYRON KULWIN
 9                                 MS. RACHEL ANNE KATZ
                              161 North Clark Street, Suite 2500
10                            Chicago, IL  60601
                              (312) 641-0300
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1 (The following proceedings were had in open court:)
2 THE CLERK: Case No. 10 C 1168, Fields v. City of
3 Chicago.
4 THE COURT: Good morning.
5 MS. KATZ: Good morning, your Honor. Rachel Katz on
6 behalf of Mr. O'Callaghan.
7 MR. BURNS: Good morning, your Honor. Terrence
8 Burns, Daniel Noland, and Paul Michalik appearing on behalf of
9 the City of Chicago, Mr. Murphy, and Mr. Brannigan.
10 MR. LOEVY: Good morning, your Honor. Jon Loevy for
11 the plaintiff.
12 MS. GORMAN: Candace Gorman for the plaintiff.
13 MS. GRUSIN: And Sarah Grusin for the plaintiff.
14 THE COURT: Okay. So I got, I guess it was yesterday
15 afternoon sometime, this document that's just titled Agreed
16 Motion. It doesn't really say what's agreed, but whatever.
17 The last paragraph says that the plaintiff has decided to
18 withdraw the motion for sanctions and other relief that I had
19 set for a hearing starting today. And I guess I need more of
20 -- I don't guess; I need more of an explanation than the sort
21 of relatively cryptic comments that you have given me in this
22 motion here.
23 MR. LOEVY: Well, your Honor, what has changed since
24 we've seen you last is that we talked to the state's attorney
25 for about an hour, we talked to Mr. Noland for about an hour,

1  and we have been able to confirm that there is no explanation
2  in our view satisfactory or persuasive for the enlargement
3  problem that we identified in our reply and the CJ Bates
4  stamping problem that we identified in our reply.
5       You have already seen the explanation for the Johnson
6  file, basement file cropping, that was the City's response;
7  you have seen their explanation for the Verna Colbert file
8  explanation; and you have now been told we were wrong about
9  the problem we were confused about.
10      THE COURT:  That's the SAO-NF issue?
11      MR. LOEVY:  Right, which we apologize again.
12      The point is we now are taking stock of it and we
13 asked ourselves do we want to win a Daubert motion, and the
14 answer, your Honor, is the worst case scenario for us is if
15 you decided to bar the defendants' reliance on the 25 or 6
16 basement files that were handed over without stamps, that
17 leaves us in an insufficiently strong position to
18 cross-examine the defendants' expert.
19      So your Honor told us at the last hearing that you're
20 inclined to see this as a Daubert motion, and we decided that
21 we are going to do our cross-examination at trial because we
22 think we are actually going to maybe make their expert look
23 worse than they think their expert is going to look.
24      So to answer your question, your Honor, the City was
25 able to give us the kinds of facts we need, and we have some

1  stipulations.

2  THE COURT: What was the mechanism, for want of a
3  better word, by which the City gave you these explanations?

4  MR. LOEVY: We talked to Lisa Meador, as I said,
5  after Court.

6  THE COURT: Is this this thing that basically
7  Mr. Noland said you should have done before you filed the
8  motion?

9  MR. LOEVY: No. Your Honor, when we talked to Lisa
10 Meador, all she did was confirm. She said, I have no
11 explanation for the enlargement problem; she said, I have no
12 explanation for the CJ Bates stamp problem; she said, I have
13 no explanation for the Bates stamps getting cut off; she said,
14 what I think happened was they got printed at 26th and Cal and
15 they got cut off, and you can see there is a millimeter on
16 some of the pages. You have seen their explanation.

17 THE COURT: Are you agreeing with their explanation?
18 MR. LOEVY: The facts aren't in dispute. They cut
19 off most of the basement stamps from that file. And if it
20 would have been one millimeter higher, they would have cut off
21 all traces of it. They have said, we can't identify the
22 person who did it; they said they can't identify the printer
23 who did it; they said they haven't taken any steps to get any
24 closer, so we want to put their expert on the stand and have
25 him try to give an opinion and then cross-examine him with

1  they're chopping off Bates stamps.
2          THE COURT: Are you telling me that you're satisfied
3  that the what we will call the Bates-stamp-cropping-issue that
4  affected documents in the Johnson file is confined to that
5  file?
6          MR. LOEVY: No, your Honor. I'll explain. We think
7  -- we cannot prove that the Bates stamps were cut off
8  completely so that they can't be seen on any page because by
9  definition they have been cut off completely and cannot be
10 seen. The Johnson file left a trace, so we know there is
11 something of a problem.
12         What we presented in our two briefs was reasons to
13 believe it's not limited to that file. For example, the CJ
14 Bates stamps are also cut off. For example, some of these
15 pages appear to be enlarged in the same way the Johnson file
16 is and the bottom margin is missing. Is that proof? No.
17 That's why we didn't make an accusation and we didn't accuse
18 anybody of anything.
19         We are saying we have circumstantial evidence that
20 you could extrapolate the problem. If we were to go through
21 the entire exercise, we had some concern that the Court would
22 say, you know what, that's cross-examination. When your Honor
23 indicated you were going to look at it in a Daubert lens,
24 that's sort of what we decided to do was save our
25 cross-examination for trial. We certainly weren't trying to

1  do anything that would upset the Court in any way.
2      THE COURT: You mean aside from filing this big, long
3  motion, getting me all geared up, and then telling me on
4  Sunday afternoon, never mind.
5      MR. LOEVY: Your Honor, we filed it as a motion for
6  evidentiary sanctions hoping that your Honor would agree with
7  us that if they can Bates stamp off -- if they can copy off
8  Bates stamps, that that's the kind of thing that would merit
9  an evidentiary sanction. You told us on Wednesday that you
10 were more inclined to see it as a Daubert issue.
11     THE COURT: But you were -- what you were asking
12 for -- and I am just groping for it here. What you were
13 asking for in terms of an evidentiary sanction was precluding
14 the expert's reliance on certain materials, right?
15     MR. LOEVY: Right. Again, your Honor --
16     THE COURT: That's why I called it a Daubert motion
17 because that's what it is. Whether it's for reason A, reason
18 B, or reason C, when you're basically saying that the
19 materials aren't reliable enough, which is what you were
20 saying in the motion, for an expert to rely on them, that's a
21 Daubert motion.
22     MR. LOEVY: I guess, you know, what I am saying is if
23 your Honor was sufficiently angered by the fact that they
24 chopped off Bates stamps, we were looking for that to be --
25     THE COURT: No, I was looking for answers to -- it

1  wasn't a question of anger; I don't get that.  What I was
2  looking for were answers to what I guess I'll call the
3  questions or the issues or the problems or the unanswered
4  questions that were posed by the motion that I didn't think
5  got cleared up by the briefing, as I tried to explain to you
6  all when you were in here on whatever day it was, Thursday or
7  whatever day it was last week.
8      So there was a whole -- and, you know, before this
9  motion -- this document entitled Agreed Motion -- again, I am
10 not clear what's agreed, but I am going to get to Mr. Burns
11 and company in a second -- but before that you had filed on
12 Thursday something called Motion to Withdraw Reliance on the
13 SAO-NF Issue, and that basically identified the remaining four
14 issues.
15      MR. LOEVY:  Yeah.
16      THE COURT:  There's no satisfactory answer for the
17 Johnson file missing the basement stamps, the issue about the
18 missing CJ stamp, the enlargement problem, and the Verna
19 Colbert issue that we talked about last week.
20      MR. LOEVY:  We have talked to the state's attorney
21 and the City, and they still haven't -- if they have an
22 explanation, they sure haven't shared it us during meet and
23 confer, but we have now reached -- for example, on the
24 25-basement-file issue, we have reached a stipulation.  They
25 stipulated --

1         THE COURT: Actually, that's a good segue because at
2 some point, your motion refers to a stipulation, and I guess
3 -- I mean, just to be perfectly blunt about it, I ordered an
4 evidentiary hearing; you don't get to vacate my order. I will
5 decide whether to vacate it, and so I am going to want you to
6 refer in here to stipulations that you think you are going to
7 reach here, and I guess I want to know what they are.
8         MR. LOEVY: The first one has been reached, your
9 Honor. It's that the City sent over 25 of the basement files
10 unstamped, and that's -- you're generally aware of --
11         THE COURT: Do you know which 25 they are?
12         MR. LOEVY: There is a list of the 25.
13         THE COURT: And is there some understanding about
14 what -- does the stipulation include what happened to those
15 when they got -- when you say "sent over," you mean sent over
16 to the state's attorney's office?
17         MR. LOEVY: Sent over to the state's attorney's
18 office with the intention that the state's attorney would
19 crosscheck against their files.
20         THE COURT: You are still talking about what the
21 stipulation says?
22         MR. LOEVY: That is the City stipulation.
23         THE COURT: Yeah.
24         MR. LOEVY: And then that they would use it at the
25 state's attorney's office to do what they do. We have not

1  finalized a stipulation on the next step, but what I have done
2  is spoken to Lisa.
3          THE COURT: To the state's attorney.
4          MR. LOEVY: Exactly, but I spent an hour with Lisa
5  Meador on the subject your Honor indicated it wanted testimony
6  on on what happened at the state's attorney, and I have a very
7  good understanding of what happened at the state's attorney,
8  and those facts are not going to be in dispute. So, you know,
9  we are not --
10         THE COURT: Is that going to be the subject of some
11 sort of stipulation?
12         MR. LOEVY: Yes, your Honor.
13         THE COURT: Am I going to find out about it at some
14 point in time?
15         MR. LOEVY: Mr. Burns and I have agreed to finalize
16 it by tomorrow.
17         THE COURT: What about the other issues?
18         MR. LOEVY: The other issues, as I said, are not in
19 dispute. They have no explanation for the CJ Bates stamping,
20 they have no explanation for the enlargement. At least if
21 they do, they certainly --
22         THE COURT: They being the state's attorney.
23         MR. LOEVY: Correct.
24              -- (continuing) they have not shared it with us. So
25 I mean, it is what it is. We can't prove that there was a

Case: 1:10-cv-01168 Document #: 1035 Filed: 08/24/16 Page 11 of 14 PageID #:24123

11

1 basement stamp file underneath it.

2 THE COURT: When you say -- I am quoting for the
3 motion -- In preparing for the hearing, the parties have been
4 working all weekend to prepare stipulations in lieu of certain
5 testimony. They have made progress towards stipulating to the
6 facts and have concluded that they will be able to complete
7 the process of stipulating to the testimony of all of the
8 witnesses who would have testified at tomorrow's hearing.

9 So that sounds like more than just a stipulation
10 about what happened to the 25 files.

11 MR. LOEVY: Well, what we were stipulating to was
12 what your Honor had indicated it wanted to take testimony on,
13 so essentially, we would do the hearing by stipulated
14 testimony about the audit trail of what happened to the files.
15 That's what we understood that you were looking for. And from
16 our perspective, the fact that they have no explanation for
17 the problems we have identified, you know, is something we are
18 going to use to cross-examine their expert. You know, they
19 will tell their story, we will tell our story. But that's how
20 we decided would be most advantageous for us to win the case.

21 THE COURT: Okay. So what you refer to in this
22 motion is the anticipated stipulations of the testimony of all
23 the witnesses who would have testified at the hearing. That's
24 getting memorialized in writing, I'm assuming, in some way.

25 MR. LOEVY: In fact, we are hoping to complete it

1 tomorrow.

2 THE COURT: So that's a yes.

3 MR. LOEVY: Yes.

4 THE COURT: And then you are just going to hold on to
5 it and decide whether you want to use it, are you going to
6 file it or what?

7 MR. LOEVY: We would propose to file it, your Honor,
8 because, again, we don't want to cancel your hearing. We are
9 just proposing --

10 THE COURT: No, you pretty much did say that you
11 wanted to cancel my hearing. So don't tell me you don't want
12 to do that.

13 Mr. Burns.

14 MR. BURNS: I know you have asked about what the
15 agreed meant. We spoke and we have been speaking over the
16 weekend with Mr. Loevy as to the various witnesses'
17 stipulation, we shared a list of witnesses we anticipated
18 would be called in this matter, tried to give them information
19 as to what they would say. I think coupled with the
20 information that he acquired from the state's attorney's
21 office and what we believed witnesses would be saying came to
22 the conclusion and asked to withdraw the motion. I obviously
23 have no objection to that. We have agreed that we will reduce
24 it to a stipulation, but I'd certainly ask for time to
25 complete that.

Case: 1:10-cv-01168 Document #: 1035 Filed: 08/24/16 Page 13 of 14 PageID #:24125

13

1  THE COURT: Ballpark, how long do you think it will
2  take?
3  MR. BURNS: I am hoping by tomorrow night at the end
4  of business that I can have it completed. Mr. Loevy,
5  obviously, it will take him a day or something, but that was
6  our anticipated plan, Judge.
7  We started the discussions based on your comment last
8  week, see what you can do by agreement, so we have been in
9  constant touch over the weekend. Yesterday, we spent
10 considerable time back and forth relative to witnesses, what
11 they would say, how they will provide information regarding
12 these files.
13 THE COURT: Okay. So this thing that says Agreed
14 Motion, it's an agreed motion to what?
15 MR. LOEVY: Agreed motion to withdraw our Daubert
16 motion.
17 THE COURT: To withdraw the motion that's entitled
18 Motion For Evidentiary Sanctions and Other Related.
19 MR. LOEVY: Correct, your Honor. We will proceed as
20 cross-examination at trial.
21 THE COURT: Well, I am going to take your agreed
22 motion to withdraw that under advisement pending whenever you
23 get this stipulation to me. So I am figuring that you are
24 going to have it to me by Thursday. Does that sound likely?
25 MR. LOEVY: It does, your Honor.

THE COURT: Okay. Come in on Friday at 9:30. I have an evidentiary hearing I got to do that day, but I can basically call this a status in this case and I will do that before I start the evidentiary hearing.

MR. LOEVY: Thank you, your Honor.

THE COURT: Anything anybody else wants to say?

MR. LOEVY: No.

MR. BURNS: No.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Carolyn R. Cox                                  Date
Official Court Reporter
Northern District of Illinois

/s/Carolyn R. Cox, CSR, RPR, CRR, FCRR