# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATHSON FIELDS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 10 C 1168 |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

## ORDER ON CERTAIN MOTIONS FOR RECONSIDERATION AND NON-MONELL MOTIONS IN LIMINE

In this order, the Court addresses certain motions for reconsideration and motions *in limine* not related to plaintiff's *Monell* claim.

### 1. Defendants' motion to reconsider ruling on motion *in limine* No. 1

Before the first trial in this case, the Court denied defendants' motion seeking admission of "translated" transcripts of recorded conversations involving persons other than plaintiff Nathson Fields. *See* Order of Mar. 9, 2014 (dkt. no. 549) at 1-13. The conversations were intercepted pursuant to wiretaps conducted by federal law enforcement authorities on telephones at the headquarters of the El Rukn street gang. Defendants argued that the recordings involve efforts by gang leaders to fix the 1986 trial in *People v. Nathson Fields and Earl Hawkins* relating to the Smith/Hickman homicides, as well as efforts to influence or intimidate witnesses. Fields contends that he was wrongfully convicted in that case due to withheld and fabricated evidence.

The conversations are conducted, in part, in language claimed to be code used by the gang members. Defendants also propose to introduce what are claimed to be

decoded transcripts of the conversations that were prepared in conjunction with federal criminal trials involving El Rukn gang members other than Fields. Fields was not a party to any of the conversations.

Fields objected that the conversations were hearsay, and defendants argued that they were admissible as co-conspirator declarations under Federal Rule of Evidence 801(d)(2)(E). Under this rule, a statement is not hearsay if it is offered by the opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "There must be evidence that there was a conspiracy involving the declarant and the nonoffering party [in this case, Fields], and that the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (internal quotation marks omitted). If the facts relevant to admissibility are disputed, "the offering party must prove them by a preponderance of the evidence." *Id.* at 176. Statements offered under Rule 801(d)(2)(E) may be considered in determining whether the Rule's requirements are met, but such statements cannot by themselves establish the existence of a conspiracy or participation in it by the party against whom the evidence is offered. *See* Fed. R. Evid. 801(d)(2); *Bourjaily*, 483 U.S. at 176. In other words, the offered statements alone are not "sufficient to demonstrate a conspiracy and the [party's] participation therein without independent supporting evidence in the record." *United States v. Harris*, 585 F.23d 394, 399 (7th Cir. 2009). A court considers "the circumstances surrounding the statement[s], such as the identity of the speaker[s], the context in which the statement[s] [were] made, or evidence corroborating the contents of the statement[s]." *Smith v. Bray*, 681 F.3d 888. 90-5 (7th Cir. 2012).

Defendants contend that the evidence supports a finding that Fields was a member of a conspiracy to bribe Judge Thomas Maloney, who was presiding over Fields's criminal trial, and that the recorded conversations took place during the conspiracy and were in furtherance of it. After reviewing in detail the evidence offered by defendants regarding Fields's membership in a bribery conspiracy, *see* Order of Mar. 9, 2014 at 4-12, the Court ruled prior to the first trial in this case that defendants had failed to show by a preponderance of the evidence that Fields was a member of a conspiracy to bribe the judge. The Court need not repeat its analysis here.

In their motion for reconsideration, defendants argue that "the wiretaps in substantial part consists of [El Rukn gang leader] Jeff Fort directing other El Rukns to complete certain tasks (e.g., to tell plaintiff about the bribes), which are quintessentially non-hearsay verbal orders and thus not even within the purview of Federal Rule of Evidence 801(d)(2)(E)." Defs.' Mot. to Reconsider Order on Defs.' Mot. *In Limine* No. 1 at 2. The Court disagrees. As Fields argues in response, each of the purported directions contains embedded factual statements—for example, about the existence of the bribe scheme—that defendants are quite clearly offering for their truth. *Every part* of an out-of-court statement offered as hearsay must either be non-hearsay or qualify for admission under a hearsay exception, *cf.* Fed. R. Evid. 805, and these statements do not. The authorities cited by defendant do not authorize admission of these statements.

Defendants' second argument is that the Court erred in concluding that they had failed to show by a preponderance of the evidence that Fields was a member of a conspiracy to bribe the judge. The proposition that there is a preponderance of the evidence supporting Fields' participation in the Smith/Hickman murders, even if

3

established, does not carry the day. A person's participation in a crime involving multiple participants does not equate to membership in a conspiracy to cover up the crime, even if the person in question would benefit from the cover-up. And as the Court has previously ruled and now reaffirms, defendants have failed to show by a preponderance of the evidence Fields's membership in a bribery conspiracy.

Defendants' argument that the Court erred in its ruling regarding the sufficiency of the evidence to establish by a preponderance Fields' participation in the bribery amounts to a rehash of the argument the Court previously rejected. The Court is unpersuaded by defendants' repackaging of that argument in their current motion. The Court also notes that, contrary to defendants' contention, Earl Hawkins, Fields' co-defendant in the 1986 murder trial and a witness for defendants in this case, has had a motive to fabricate and to implicate others, including Fields, from the first day he was in contact with law enforcement after he was sentenced to death, and not only more recently as defendants contend.

Finally, the Court overrules defendants' contention that the wiretaps and translations are admissible under Federal Rule of Evidence 807, the so-called residual hearsay exception. The Court also notes that defendants intend to offer at trial evidence to attempt to show Fields's involvement in the bribery, including the testimony of Hawkins and other circumstantial evidence. The volume of evidence, necessary background, and foundational testimony for the "translations" that would be required were the recordings admitted would tend to divert the trial into a sidetrack involving a mini (or not so mini) trial of the activities of the El Rukn gang and how it was run, not to mention the foundational testimony regarding how the recordings were "translated."

4

This would significantly outweigh the probative value of the evidence relating to Fields's involvement in or knowledge of the bribery contained in the translated recordings, which as indicated in the Court's original ruling is somewhat equivocal on that point. *See* Order of Mar. 9, 2014 at 10-11.

For these reasons, the Court denies defendants' motion for reconsideration of the Court's ruling on their motion *in limine* No. 1.

**2.  Defendant O'Callaghan's motion to reconsider ruling on Morris affidavits**

The Court denies defendant O'Callaghan's motion seeking reconsideration of the Court's ruling regarding the admissibility of Gerald Morris's 2011 affidavits. Contrary to O'Callaghan's contention, the transcript of Morris's testimony at the two trials on the Smith/Hickman murders *was* used as for a hearsay purpose, namely as evidence of Fields's guilt, a key component of defendants' defense in the present case.[1] The fact that the transcript might also be admitted for other purposes does nothing to alter this.

**3.  Plaintiff's non-*Monell* motions *in limine***

Fields filed a number of motions *in limine*, some of them seeking reconsideration of rulings made at or before the previous trials in this case, but he later withdrew all but two of them. *See* Pl.'s Mot. to Withdraw Certain Mots. *In Limine* (dkt. no. 1060); Pl.'s Mot. to Adopt Court's Suggestion (dkt. no. 1066). The Court grants the request to withdraw the motions *in limine*. Remaining for consideration are plaintiff's motion *in limine* No. 5, regarding evidence regarding the bribery of Judge Maloney, and his request to exclude evidence about a 1985 incident involving Fields's possession of a TEC-9 firearm in connection with the alleged stalking by El Rukns, including Fields, of a

---

[1] Fields also makes a viable argument that defendants are relying on Morris's testimony transcript for other hearsay purposes as well. *See* Pl.'s Resp. to Def.'s Mot. to Reconsider Ruling on Affids. of Morris at 7.

5

person named Tredest Murray.[2]

### a. Bribery evidence

The Court overrules Fields's request to exclude all evidence of the bribery of Judge Maloney. The judge returned the bribe money and, the story goes, convicted Fields and Hawkins in an attempt to divert suspicion on the part of law enforcement agents he allegedly believed were investigating him. Defendants argue, among other things, that the evidence about the failed bribery is admissible, and the Court admitted it at the previous trial in this case.

Fields argues that evidence concerning the bribery should not be admitted. He says that defendants are essentially arguing that the failed bribery was a superseding cause that cut off any liability by the defendants for their allegedly wrongful conduct. Fields argues, citing *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), that a superseding cause is "something culpable that intervenes . . ., some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence." *Id.* at 584.[3] Here, Fields says, the culpable act (the failed bribery) does not render unforeseeable a conviction resulting from fabrication of inculpatory evidence and concealment or nondisclosure of exculpatory evidence. Perhaps so, but that does

---

[2] Defendants' contention in their response to plaintiff's request to withdraw his other motions *in limine* that plaintiff's timely filed motions *in limine* did not address the 1985 incident, *see* Defs.' Resp. to Pl.'s Mot. to Adhere to Prior Rulings at 2 (dkt. no. 1071), is false. An argument expressly seeking reconsideration of the Tredest Murray ruling was included in the motions *in limine* timely filed by plaintiff, *see* Pl.'s Non-*Monell* Mots. *In Limine* at 9-10 (dkt. no. 963), and defendants expressly addressed the point in their response to those motions. *See* Defs.' resp. to Pl.'s Non-*Monell* Mots. *In Limine* at 11 (dkt. no. 978).

[3] The Court notes that *Whitlock* refers to causation principles concerning negligent conduct, which is not what is at issue here; Fields is suing the individual defendants on claims that require intentional conduct. But the same was true in *Whitlock*, so the Court will assume that these same causation principles apply in cases involving intentional torts.

6

not mean that the failed bribery cannot be a superseding cause that cuts off defendants' liability. As the Restatement (Second) of Torts puts it,

> [w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.*

Restatement (2d) of Torts § 442B (1965 & 2016 update) (emphasis added). Here the "except" clause applies; the harm is claimed to have been intentionally caused by Judge Maloney, and conviction due to a failed bribery scheme is not within the scope of the risk created by defendants' alleged fabrication of evidence of guilt or withholding of exculpatory evidence. Another section of the Restatement puts it even more clearly:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Id.* § 448. This is what the failed bribery and the allegedly resulting conviction involves: a bribery and an ensuing act by Judge Maloney (the conviction of the defendants allegedly for his own selfish reasons, not because of the evidence) both amounting to intentional crimes or torts, which were not foreseeable by the police officer defendants sued in this case. Were the jury to find that the judge convicted Fields not because of the evidence presented at the criminal trial but rather to throw law enforcement off the judge's trail, then the judge's conduct *would* be a superseding cause under this section of the Restatement.

For these reasons, the Court denies Fields's request to exclude evidence relating

7

to the bribery of Judge Maloney.

### b.     1985 firearm arrest

The so-called Tredest Murray incident involves an arrest of Fields in 1985 for unlawful possession of a firearm, a charge that was dropped when it was first up in court. The incident took place about a year after the Smith/Hickman murders and several months before Fields's arrest for the murders. It involves an incident in which gang leader Jeff Fort allegedly ordered the gang to kill Murray. A defense witness will testify that to carry out those orders, several gang members, including the witness, Fields, and others, went out looking for Murray. The vehicle they were in or had been in was stopped and searched, or simply searched, by police under circumstances that are disputed. A semi-automatic gun was found in the vehicle. It is unclear whether the firearm was claimed to be on Fields's person or in the vehicle, but one way or another, he was charged with unlawful weapons possession. As indicated, the charge was dropped when it was first up in court, and no conviction of Fields resulted.

In an earlier written ruling, the Court ruled the evidence inadmissible under Rule 404(b) as improper "propensity" evidence. *See* Order of Mar. 13, 2014 (dkt. no. 558). The Court addressed the evidence again in a second written ruling prior to the damages phase of the previous trial—which was bifurcated—and deferred ruling pending assessment of the nature of the evidence Fields would offer. *See* Order of Apr. 29, 2014 at 3-4 (dkt. no. 685). Later, during the course of damages phase of the trial, defendants renewed their request for admission of the evidence, arguing that Fields had opened the door by offering evidence regarding his allegedly peaceful lifestyle. *See* April 29, 2014 Tr. at 3265-67. After hearing argument, the Court concluded that Fields

8

had opened the door to the admission of this evidence on the basis cited by defendants. *Id.* at 3267.

Fields says in his current motion that he does not intend to open that same door this time. At this point, in the Court's view, matters are essentially back where they were prior to the previous trial. In other words, Fields has not yet opened the door that led to the admission of the 1985 episode at the damages phase of the earlier trial. The Court reaffirms that evidence regarding the incident is inadmissible for the reasons the Court cited in its March 13, 2014 order. It will be admissible, if at all, only for the purpose for which defendants got it in at the damages phase of the earlier trial, and then only if Fields opens the door. Any request by defendants to offer this evidence must be made outside the jury's presence before the evidence is offered or mentioned. If and when that happens, the Court will address the matter afresh.

**4. Plaintiff's 1972 murder conviction**

The Court closes by making some comments regarding the admissibility of Fields's 1972 murder conviction, which has been a source of some confusion during the briefing and argument of the motions *in limine* ahead of the upcoming trial.

It appears that Fields is asking the Court to exclude this evidence, though that is less than crystal clear given his withdrawal of most of his motions *in limine*. For this reason, the Court will review the history of its rulings on this point.

In its rulings on Fields's motions *in limine* prior to the initial trial, *see* Order of Mar. 9, 2014 (dkt. no. 550), the Court ruled as follows:

- The 1972 murder conviction was inadmissible to impeach Fields's credibility. *See id.* at 10.

9

- The conviction was inadmissible "to attempt to show a pattern of behavior or any of the other purposes authorized with regard to other act evidence under Federal Rule of Evidence 404(b)." *Id.* at 11.

- The conviction was inadmissible to explain why Fields was purportedly chosen by the El Rukns to carry out the Smith/Hickman murders. *Id.*

- Defendants could not bootstrap their way into admission of the conviction via their alleged evidence of prison visits of Fields by certain other individuals. *Id.* at 11-12.

- Defendants' contention that the conviction and imprisonment tended to rebut Fields's emotional distress claim did not warrant admission of the conviction at the liability phase of the trial, and it likely did not warrant admission of the nature of the conviction at the damages phase. *Id.* at 12. The Court deferred the question of whether the fact and length of Fields's incarceration on this conviction would be admissible on the question of damages. *Id.*

- The Court acknowledged defendants' argument that the murder conviction as admissible because it was offered in aggravation at the death penalty phase of Fields's trial for the Smith/Hickman murders because it "tend[ed] to show the lack of materiality of evidence regarding the Smith/Hickman and Vaughn/White murders in connection with the imposition of the death penalty." *Id.* On this point, the Court deferred ruling and asked for the submission of the transcript of the death penalty phase of the Smith/Hickman murder trial. *Id.*

- The Court noted its earlier ruling that Fields's giving of false alibi testimony at his trial on the 1972 murder charge was admissible but said that this "does not

- authorize defendants to elicit testimony regarding the nature of the charge against Fields, i.e. that it was a murder charge or a charge for a violent crime." *Id.* at 13.

- Defendants' contention that Fields "has continued to misrepresent his role in the murder underlying the 1972 case" did not provide a basis for admissibility of the murder or the murder charge. *Id.* at 13-14.

Later, during the initial trial, after the Court had reviewed the transcript of the death penalty phase of Fields's 1986 murder trial, the Court and the parties picked back up the basis for admissibility the 1972 murder conviction that the Court's rulings had left open. The Court noted that Fields was contending that the Vaughn/White murder had a material impact on the jury's imposition of a death sentence and that he was arguing that the imposition of a death sentence should be taken into account in determining his damages. *See* Mar. 11, 2014 Tr. at 424-45. Defendants' position was that even if the Vaughn/White murder were taken out of the picture, the jury still would have imposed a death sentence. *See id.* at 425-26. The Court said that given Fields's argument about the Vaughn/White murder, the jury was going to have to determine the significance of that murder in the imposition of the death penalty and that it would be difficult for the jury to do that without knowing what else was offered in aggravation, including the 1972 murder. *Id.* at 426-27. After further discussion, including a question about what would happen if Fields did not contend that the nature of the sentence (i.e. the death penalty) contributed to his emotional distress, Fields' counsel conferred with him and said that they would proceed with this contention. *Id.* at 428, 430. The Court ruled that "there's a viable argument that [the 1972 murder conviction is] probative on the question of the

11

materiality of the Vaughn/White murders, and it doesn't significantly outweigh whatever unfairly prejudicial effect it would have. But that's what it's coming in for[,] is materiality. So, what would come into evidence is what came into evidence at the hearing on the [death] penalty [phase]." *Id.* at 432. After further discussion about various points, the Court summarized its ruling as follows:

> [L]et me just be real clear on this. All right?
>
> So, the underlying issue is the materiality of the Vaughn-White murder conviction. Okay? And the circumstances that were put in front of the jury at the penalty phase and Mr. Fields' trial for Smith-Hickman. Okay? And so, the defendants are saying that even without Vaughn-White, the jury would have still imposed a death sentence because of the other evidence, the other evidence including what was admitted regarding the 1972 murder. What was admitted regarding the '72 murder is the fact of conviction and Mr. Montessurro reading the statement, and it looked like it was a court-reported statement.

*Id.* at 438-39. The Court then further discussed with counsel the specifics of how evidence about the 1972 murder conviction would be introduced into evidence.

Fields says that his then-lead trial counsel, in what he characterizes as a poor or mistaken strategic decision, opened the door to admission of the 1972 murder conviction, and he says that he does not intend to make the same mistake at the upcoming trial. Defendants says it was no mistake and that the prior ruling should stand.

Both sides are partly right about this. The Court rejected most of the grounds offered by the defendants for introducing the 1972 murder conviction. It eventually admitted the conviction mainly because of a decision made by Fields to use the fact that a death sentence had been imposed to enhance his damages. So Fields is right when he says that he opened the door to this based on the way he tried the case previously.

12

Defendants are also right when they say that Fields made a conscious decision to open the door, or at least to keep it open, during the discussion referenced above. But the fact that Fields opened the door during the prior trial does not mean that he will do so again. That remains to be seen. But this issue is somewhat complicated, and neither side should expect the Court to deal with it on the fly.[4] The Court will address with counsel on Monday (November 14) when and how the issue should be addressed.

Date: November 11, 2016

                                                 MATTHEW F. KENNELLY
                                                 United States District Judge

---

[4] It would seem to the Court that any misconduct that was material regarding Fields's conviction on the Smith/Hickman murders *by definition* led to the death penalty, because that conviction rendered him death-eligible. One of the points that the Court now sees as somewhat lost in the shuffle is exactly where and how the issue of the "materiality" of the Vaughn/White murders (or misconduct relating to them) fits in, seeing as how Fields was never tried or convicted for those murders.