**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATHSON FIELDS, | ) | |
| | ) | Case No. 10 C 1168 |
| *Plaintiff,* | ) | |
| | ) | Hon. Matthew F. Kennelly, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

H. Candace Gorman
LAW OFFICE OF H. CANDACE
GORMAN
220 S. Halsted St., Suite 200
Chicago, Illinois 60661
(312) 427-2313
hcgorman@igc.org

Leonard Goodman
Melissa Matuzak
LAW OFFICE OF LEONARD GOODMAN
53 W. Jackson Blvd., Suite 1650
Chicago, Illinois 60604
(312) 986-1984
lcgoodman@rcn.com

Jon Loevy
Anand Swaminathan
Steven Art
Sam Heppell
Sarah Grusin
Tony Balkissoon
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
jon@loevy.com

*Counsel for Plaintiff Nathson Fields*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

DISCUSSION ................................................................................................................. 4

I.      FIELDS'S ATTORNEYS' RATES ARE REASONABLE ................................................. 5

      A.     The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates ..................... 6

      B.     Hourly Rates Awarded In the Community Support the Proposed Rates ................ 8

      C.     Plaintiff's Attorneys' Hourly Rates Have Been Adjudicated In Past Cases and Those Cases Support Plaintiff's Attorneys' Claimed Hourly Rates ....................... 9

      D.     The Laffey Matrix Further Supports Plaintiff's Claimed Hourly Rates ............... 10

      E.     Expert Analysis of Attorneys' Fees Supports Plaintiff's Hourly Rates ................ 12

      F.     Attorney Qualifications and Accomplishments Justify the Proposed Rates .......... 13

            1.  H. Candace Gorman ................................................................................ 13

            2.  Loevy & Loevy Attorneys .......................................................................... 17

            3.  Other Lawyers from the Law Offices of H. Candace Gorman ...................... 30

            4.  Lawyers from the Law Office of Leonard Goodman ..................................... 31

II.     FIELDS'S ATTORNEYS' BILLED HOURS ARE REASONABLE ............................. 32

      A.     Plaintiff's Claimed Hours Are Justified Given the Nature of the Litigation ........ 32

      B.     Defendants' Arguments For Percentage Reductions Should Be Rejected ........... 34

      C.     The Court Should Reject Any Argument That Fees Should Be Reduced By Reference to Claims Against State's Attorney Employees Who Were No Longer Defendants At Trial ................................................................................................ 35

III. AN UPWARD DEPARTURE FROM THE LODESTAR IS WARRANTED
IN THIS CASE ................................................................................................................37

IV. FIELDS'S ATTORNEYS' CLAIMED COSTS ARE REASONABLE ...........................38

CONCLUSION ...........................................................................................................................39

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011)....................................................17, 23

*Baker v. Ghidotti*, 11 C 4197, 2015 WL 1888004 (N.D. Ill. Apr. 24, 2015)...............................20

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................4

*Bourke v. Beshear*, 2016 WL 164626 (W.D. Ky. 2016)................................................................18

*Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997) ....................................................................35

*Californians for Disability Rights v. California Dep't of Transp.*,
    2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) ................................................................18, 23, 29

*Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093 (N.D.Cal. 2010) .......................18

*Cervantes v. Los Angeles*, 2016 WL 756456 (C.D. Cal. 2016) ..............................................18, 29

*Chambers v. Whirlpool Corp.*, 2016 WL 5922456 (C.D. Cal. Oct. 11, 2016) ..............................9

*Corcoran v. City of Chicago*, 2016 WL 5445694 (N.D. Ill. Sep. 15, 2015)................................38

*C.W. v. Board of Education of the City of Chicago*,
    2012 WL 355360 (N.D. Ill. Feb. 1, 2012) ..........................................................................36

*Davis v. Prison Health Servs.*, 2012 WL 4462520 (N.D. Cal. 2012) .....................................18, 29

*Degorski v. Wilson*, 2014 WL 6704561 (N.D. Ill. Nov. 26, 2014)..................................................8

*Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019 (C.D. Cal. 2014)................................18, 23, 24

*Downes v. Volkswagen of America*, 41 F.3d 1132 (7th Cir. 1994)................................................38

*Dixon v. Oakland*, 2014 WL 6951260 (N.D. Cal. 2014) .....................................................18, 24, 29

*Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863 (7th Cir. 1995) ...........................................34, 36

*Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006)...........8

*Estate of Enoch v. Tienor*, 570 F.3d 821 (7th Cir. 2009)...............................................................34

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...........................................................................................6

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                          **Page(s)**

*Fox v. Barnes*, 2013 WL 4401802 (N.D. Ill. Aug. 15, 2013) ........................................................10

*Garcia v. Chicago*, 2003 WL 22175620 (N.D. Ill. 2003)........................................................19, 36

*Gautreaux v. CHA*, 491 F.3d 649 (7th Cir. 2007)........................................................5, 37

*Guerrero v. California Department of Corrections*,
    2016 WL 3360638 (N.D. Cal. 2016) ...........................................................17, 24

*Handott v. City of Chicago*, 2010 WL 1499473 (N.D. Ill. Apr. 12, 2010)....................................11

*Harris N.A. v. Acadia Investments*,
    2012 WL 1681985 (N.D. Ill. May 14, 2012) ........................................................9

*Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984) ........................................................38

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................ *passim*

*Hunt v. Los Angeles*, No. 06 C 4691 (C.D. Cal. 2012)........................................................17

*In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL
    4765679 (N.D. Ill. Sep. 13, 2016)........................................................9

*Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998) ........................................................36

*Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir. 2009) ............17, 23

*Johnson v. Board of Educ.*, 2011 WL 2160944 (C.D. Ill. June 1, 2011)........................................30

*Johnson v. GDF, Inc.*, 668 F.3d 927 (7th Cir. 2012) ........................................................35

*Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999) ........................................................33

*Jimenez v. City of Chicago*, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012) ............................10, 19

*Jones vs. R.R. Donnelley*, 96 C 7717 (N.D. Ill.) ........................................................10

*Kovach v. CUNY*, 2015 WL 3540798 (S.D.N.Y. 2015) ........................................................18

*Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987) ........................................................36

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                              **Page(s)**

*Mathur v. Board of Trustees of Southern Illinois University*,
  317 F.3d 738 (7th Cir. 2003) ..............................................................................10

*Medina v. Metro. Interpreters & Translators, Inc.*,
  139 F. Supp. 3d 1170 (S.D. Cal. 2015).................................................................9

*Merino v. Beverage Plus America Corp.*, 2012 WL 4468182 (S.D.N.Y. 2012) ...........................9

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)......................................................10

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .......................................... *passim*

*Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014)................................................... *passim*

*Montanez v. Fico*, 931 F. Supp. 2d 869 (N.D. Ill. 2013) .................................................20

*Morjal v. City of Chicago*, 2013 WL 2368062 (N.D. Ill. May 29, 2013)....................................20

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
  594 F. Supp. 2d 931 (N.D. Ill. 2009) ..................................................................9

*Multi-Ethnic Immigrant Workers v. Los Angeles*,
  2009 WL 9100391 (C.D. Cal. June 24, 2009) ......................................................18, 23, 24

*Parish v. City of Elkhart*, 2011 WL 1360810 (N.D. Ind. Apr. 11, 2011) ....................................30

*Perdue v. Kenny A.*, 559 U.S. 542 (2010)...................................................................34

*Pickett v. Sheridan*, 664 F.3d 632 (7th Cir. 2012) ................................................34, 35

*Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012) .........................................18

*National Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781 (N.D. Ill. 2012).......................8

*Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014)........................................17, 24

*Recouvreur v. Carreon*, 940 F. Supp. 2d 1063 (N.D. Cal. 2013) ...................................................9

*Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ......................9

*Restivo v. Nassau County*, 2015 WL 7734100 (E.D.N.Y. 2015)...................................................18

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                 **Page(s)**

*Richardson v. City of Chicago*, 740 F.3d 1099 (7th Cir. 2014)....................................35

*Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008) ...........................................30

*Rivera v. Lake County*, No. 12 C 8665 (N.D. Ill.) .........................................................25

*Riverside v. Rivera*, 447 U.S. 561 (1986) ...............................................................6, 36

*Robinson v. City of Madison*, 3:15 C 502 (W.D. Wis.) ..................................................23

*Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014).................................23

*Schlacher v. Law Office of Phillip Rotche*, 574 F.3d 852 (7th Cir. 2009).....................35

*Shakman v. Sheriff of Cook County*, 2010 WL 538293 (N.D. Ill. Feb. 4, 2010) ...........29

*Smith v. Altman*, 2015 WL 5675376 (N.D. Ill. Sep. 21, 2015).....................................38

*Sottoriva v. Claps*, 617 F.3d 971 (7th Cir. 2010)........................................................36

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999) ......................9, 32

*Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994).................................6

*Torres v. O'Neill Cancel*, 524 F.3d 331 (1st Cir. 2008) ...............................................33

*United States v. Bd. Of Educ. of Consol.*, 983 F.2d 790 (7th Cir. 1993) .......................16

*Valdivia v. Brown*, 848 F. Supp. 2d 1141 (C.D. Cal. 2011) .........................................18

*Webb v. CBS Broadcasting, Inc.*, 2011 WL 4501366 (N.D. Ill. Sep. 28, 2011)

*Young v. Cook County*, No. 06 C 552 (N.D. Ill.).........................................................13

*Young v. Sarles*, 197 F. Supp. 3d 38 (D.D.C. July 11, 2016) ...................................17, 23

*Young v. Verizon's Bell Atlantic Cash Balance Plan*,
    783 F. Supp. 2d 1031 (N.D. Ill. 2011) .................................................................9

## TABLE OF AUTHORITIES (cont.)

**Other Authorities**

42 U.S.C. § 1988 ................................................................................................................38

42 U.S.C. § 1920 ................................................................................................................38

42 U.S.C. § 1924 ................................................................................................................38

## INTRODUCTION

By any measure, Plaintiff's counsel obtained an exceptional result in this case for their client, Nathson Fields. The case was difficult to win and extremely hard-fought. Despite these obstacles, Plaintiff's counsel obtained a jury verdict against all Defendants in the amount of $22,040,000, one of the top awards of its kind in civil rights history. In the end, Fields established not only that the individual Defendants violated his constitutional rights, but also that the City of Chicago was liable for its official policies under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Fields achieved this remarkable outcome in no small part because of the skill, expertise, and dogged dedication of his attorneys, who have worked for seven years, through three trials, to achieve this result. Constitutional cases involving wrongful convictions caused by state actors who fabricate and suppress evidence are a highly specialized area of federal practice—especially when they involve challenging theories of municipal liability. Few law firms are as experienced and dedicated to this practice as the firms filing this petition. Fewer still could have committed the thousands of hours of attorney time and $250,000+ in costs that were required to win.

Among difficult wrongful conviction cases, this one proved particularly challenging. The facts were hotly contested, and Defendants had exclusive control of relevant evidence throughout discovery and trial. Because Fields had nothing to do with the crime at issue, he could not help his lawyers uncover how the crime occurred or how he was framed. As a result, Fields's attorneys had to develop evidence supporting his case through painstaking discovery and cross-examination of adverse witnesses. Nearly every witness who testified at trial—Defendants, state and federal prosecutors, Chicago Police officers, cooperating El Rukns, witnesses from the criminal cases, and experts—took the stand intent on convincing the jury that Fields had killed

Smith and Hickman. Only through a careful presentation of circumstantial evidence could Fields show definitively that Defendants had framed him in violation of his constitutional rights.

The degree of difficulty was enhanced by the *Monell* claims. To show that the constitutional violations were the City's responsibility, Fields's attorneys had to amass, analyze, and present a tremendous volume of documentary and testimonial evidence. Analysis of the CPD, Public Defender, State's Attorney, and Circuit Court files required a monumental effort, a commitment of attorney time far beyond what most civil-rights firms can manage. More than 800 case files totaling almost 300,000 pages had to be reviewed in detail, and there were more than 40 additional third-party witnesses disclosed by the parties in the *Monell* case (30 of them by the City). In addition, Fields's attorneys had to invest heavily in experts qualified to present specialized testimony about the administration and operation of police investigations, and they had to rebut similar experts disclosed by the City. Investing in exhaustive expert discovery is in many cases a prohibitive proposition. The law makes policy claims difficult and expensive to prove. Fields's attorneys met the challenge—risking the prospect of no payment and no reimbursement in the event of defeat—and the law now entitles them to their fees for the effort.

The challenging nature of the case was compounded further by the fact that the litigation lasted longer than seven years and was more strenuously contested than most civil rights cases tried in the federal courts. Defendants' counsel disputed almost every issue at every stage, devoting thousands of attorney hours to those efforts. In addition to the contested *Monell* discovery, Fields had to file numerous motions to compel essential discovery, including the protracted litigation to uncover and trace the source of the missing street file, a central piece of evidence in the case. There were more than 70 depositions; Defendants filed close to 10 dispositive motions; and there were more than a hundred other substantive motions filed in the

case. There was exhaustive pretrial motion practice. Finally, three separate trial settings were necessary. The first ended in a mistrial caused by Defendants. The second resulted in the grant of a new trial when Defendants did not disclose benefits conveyed to their witnesses. Finally, the third lasted four weeks over a five-week period, and involved examination of more than 30 witnesses. The trials were around-the-clock propositions, each requiring very significant preparation and litigation.

Moreover, Defendants' approach to the litigation was expensive. But while spending multiple millions of dollars in attorneys' fees defending this case, the City persistently refused to offer any reasonable sum to settle. Instead, Defendants redoubled their efforts to implicate Fields in a crime he did not commit, including by incentivizing self-admitted hit men to testify against him. It was undoubtedly Defendants' prerogative to take this scorched-earth approach. Having done so, however, they cannot now complain about the fees accrued as a result.

In sum, despite the long odds and continuing *ex ante* risk of an unfavorable result, Fields's counsel never gave up or backed down. Counsel invested a large amount of time and money, not to mention forgoing other opportunities to provide legal services. In the process, they provided Fields with the type of expert legal services that the wealthiest paying clients enjoy from the most distinguished law firms in the country. In light of the success achieved, Fields's attorneys are entitled to recover, at minimum, their full lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As discussed more fully below, this Court should award the reasonable fees and costs sought in this petition.

**DISCUSSION**

The joint fee statement sets out the parties' positions on hours and hourly rates. Dkt. 1186, attached as Exhibit 1.[1]  Following the parties' discussions pursuant to Local Rule 54.3, the parties' competing positions on reasonable fees and costs are as follows:

*Plaintiff's Position*[2]

| Law Firm | Attorney and Staff Fees | Costs |
|---|---|---|
| Law Office of H. Candace Gorman | $4,554,055.00 | $19,830.00 |
| Loevy & Loevy | $2,595,847.50 | $135,527.24 |
| Law Office of Leonard Goodman | $341,900.00 | $112,177.04 |

*Defendants' Position*

| Law Firm | Attorney and Staff Fees | Costs |
|---|---|---|
| Law Office of H. Candace Gorman | $2,375,912.75 | $366.77 |
| Loevy & Loevy | $1,208,449.42 | $14,817.71 |
| Law Office of Leonard Goodman | $126,463.43 | $750.00 |

Under established principles, the lodestar amount, derived by multiplying the reasonable hours expended by a reasonable hourly rate, is the presumptively appropriate measure of the fee award. *Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Supreme Court holds that when litigation of a section 1983 case leads to "excellent results," the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* In this case, there can be no dispute that Fields is the prevailing party and the result he achieved is outstanding. At minimum, Fields's attorneys should be awarded their full lodestar.

---

[1]  There are two exceptions. Between the filing of the Local Rule 54.3 joint fee statement and this petition, the parties' settled the claimed fees of Loevy & Loevy attorneys Michael Kanovitz, Joel Feldman, and Karl Leonard. The updated numbers in this fee petition reflect the removal of those attorneys' fees. In addition, Loevy & Loevy's costs have been reduced slightly since the filing of the Local Rule 54.3 joint fee statement.

[2]  The hours claimed by Fields's attorneys reflect hours billed through January 13, 2017, and costs that were invoiced and processed as of that date. The meet-and-confer process has not yet been completed on fees and costs processed after that date, which will presumably be resolved by negotiation (as they almost always are) once the Court decides the hourly rates and adjudicates the defense objections set forth in this Petition.

## I.     FIELDS'S ATTORNEYS' RATES ARE REASONABLE

A reasonable rate is that which lawyers of comparable ability and experience in the community charge. *Gautreaux v. CHA*, 491 F.3d 649, 659-60 (7th Cir. 2007). Fields's attorneys bear the burden of proving the market rate, but "once an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* The parties' positions are as follows:

| Attorney | Plaintiff's Proposed Rates | Defendants' Proposed Rates |
|---|---|---|
| **Loevy & Loevy** | | |
| Jon Loevy (Ex. 2) | $750 | $535 |
| Anand Swaminathan (Ex. 3) | $400 | $350 |
| Steven Art (Ex. 4) | $375 | $310 |
| Cindy Tsai (Ex. 5) | $375 | $330 |
| David Owens (Ex. 6) | $350 | $270 |
| Tony Balkissoon (Ex. 7) | $350 | $280 |
| Sam Heppell (Ex. 8) | $250 | $185 |
| Sarah Grusin (Ex. 9) | $250 | $185 |
| Dusan Sarapa (Ex. 4) | $230 | $150 |
| Dibora Berhanu (Ex. 4) | $220 | $150 |
| Katie Roche (Ex. 10) | $215 | $175 |
| Margaret McWhorter (Ex. 4) | $215 | $215 |
| Paralegals (Ex. 11) | $125-$150 | $95-$125 |
| **Law Office of H. Candace Gorman** | | |
| H. Candace Gorman (Ex. 12) | $600 | $375 |
| Ken Flaxman (Ex. 12) | $600 | None proposed |
| Melissa Dupee (Ex. 12) | $285 | $175 |
| Chris Tinsley (Ex. 12) | $225 | $150 |
| Monte Beaty (Ex. 12) | $225 | $150 |
| Adrian Bleifuss (Ex. 12) | $200 | $150 |
| Sandra Tsung (Ex. 12) | $125 | $75 |
| Paralegals (Ex. 12) | $50-$125 | $50-$75 |
| **Law Office of Leonard Goodman** | | |
| Len Goodman (Ex. 13) | $500 | $300 |
| Melissa Matuzak (Ex. 14) | $300 | $225 |
| Molly Armour (Ex. 13) | $250 | $150 |

### A.    The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates

*Hensley* instructs courts to consider the following factors in deciding a reasonable fee:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3. Each of the *Hensley* factors supports Fields's attorneys' proposed rates.

"'[T]he most critical factor'" in determining a fee award "'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436); *see also Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994). Fields unquestionably achieved an extraordinary result. Extremely few civil rights verdicts reach the eight-figure range. At $22 million, this verdict is believed to be the third-largest for a single plaintiff in a wrongful conviction case in U.S. history. It is also one of the largest verdicts in a wrongful conviction case when measured by compensation per year of wrongful incarceration. Defendants do not—and cannot—dispute the degree of success. *See* Exhibit 01 (Joint Fee Statement).

With respect to "the experience, reputation, and ability of the attorneys," Fields's attorneys respectfully submit that their credentials are on par with attorneys practicing at the most renowned firms in the county. *See* Exs. 02-14. If they worked at commercial firms, Fields's lawyers would command top-tier rates far exceeding the rates proposed in this petition. Though Fields's attorneys took a different path than peers at those firms, pursuing civil rights careers, they strive to provide their clients with the same premium services enjoyed by the clients of the world's most prestigious firms. *Riverside v. Rivera*, 447 U.S. 561, 578 (1986) (section 1988 is designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"). Moreover,

few attorneys practicing in civil rights and related areas of litigation can match Plaintiff's attorneys' experience and expertise litigating section 1983 cases, and wrongful conviction cases in particular. The qualifications of each of Fields's attorneys are discussed below. This *Hensley* factor, too, supports the proposed hourly rates.

Other factors to consider are the opportunity cost of the representation and the desirability of the case. Fields's attorneys devoted thousands of hours and more than $250,000 in cash, all while facing a substantial risk of recovering nothing. This devotion of resources meant Fields's lawyers could not devote time and resources to other cases that would have paid them. Given that the litigation lasted seven years, involved multiple trials, and was vigorously defended at all stages, the opportunity cost of the litigation was especially high. Given the risk and drain on time and resources, this case viewed *ex ante* was "undesirable." Fields's attorneys' assumption of that risk and commitment to the case further support the proposed rates.

Finally, *Hensley* instructs that the Court determining a fee should evaluate the time and labor required, difficulty of issues, and skill necessary to perform the legal service properly. These factors cut heavily in Plaintiff's counsels' favor. As discussed, this was an exhaustively litigated civil rights case, lasting years and requiring multiple trials. During discovery, at trial, and in between, the representation required a singular and around-the-clock focus on the case. The legal issues presented were complex, requiring proficiency in constitutional and tort law, civil rights issues, the rules of evidence, federal procedure, and novel legal questions not routinely presented in section 1983 cases. In addition, as discussed above, the trial of this case presented many obstacles that would test the most experienced trial attorneys in any field. Conducting litigation of this type and achieving the result here requires skill at a level that is rare in the market. *Hensley*'s factors justify the proposed rates.

**B.      Hourly Rates Awarded In the Community Support the Proposed Rates**

Fields's attorneys' proposed rates are also justified by reference to fees awarded in other cases to attorneys in the community. *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014). Attorneys in this and other jurisdictions have sought and have been awarded hourly rates that exceed or are in line with Fields's proposed hourly rates.[3]

In *Montanez*, the Seventh Circuit approved a lower court's March 2013 award of $385 per hour to an attorney with nine years of experience. 755 F.3d 547. In 2014, Judge Dow awarded $450 per hour to an attorney with 15 years' experience in *Degorski v. Wilson*, 2014 WL 6704561, at *6-7 (N.D. Ill. Nov. 26, 2014). *See also National Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (section 1983 Second and Fourteenth Amendment case approving hourly rates of $1,020 and $880 for senior attorneys); *Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851, at *2-5 (N.D. Ill. Aug. 9, 2006) (First Amendment case approving hourly rates, now 11 years old, of $585 for 27 years' experience, $425 for 10 years, $275-$340 for 4-6 years, and $215 for three years).

Hourly rates for top-end work in civil rights cases exceed what Fields's attorneys request here. For example, in *Dominguez v. Hendley*, No. 04 C 2907 (N.D. Ill.), Loevy & Loevy's client at trial hired Gibson Dunn in 2009 to assist in opposing a petition for *certiorari* following a substantial jury verdict. A Gibson Dunn lawyer with nine years' experience was paid $635 per

---

[3]   In evaluating judicial opinions awarding fees in prior cases, it is important to consider the age of the prior case. The market for legal fees is subject to inflation, warranting upward adjustment of hourly rates awarded in older cases. For example, the National Law Journal annual billing survey found an inflationary increase in legal fees of 2.5% in 2009, 2.7% in 2010, and 4.4% in 2011. *See* Ex. 15 (NLJ 2011 Law Firm Billing Survey) (noting also that annual inflationary increases of 6% to 8% were common before 2009). Similarly, 2013 billing surveys found inflationary increases between 3.5% and 4.8% for 2013 alone. *See* Ex. 16 (NLJ 2013 Law Firm Billing Survey). This means that an hourly rate of $500 awarded to an attorney with *x* years' experience in 2008 justified a rate of $550 for an attorney with *x* years' experience in 2011, accounting solely for inflation. By the end of 2013, the rate for an attorney with the *x* years' experience adjusted for inflation would be nearly $600.

hour, an attorney with six years' experience was paid $570, and an attorney with five years' experience was paid $525. *See* Ex. 17 (Gibson Dunn Retainer).

It bears mention that attorneys with expertise and experience in related fields comparable to Plaintiff's attorneys' expertise and experience in civil rights routinely seek and are awarded rates higher than those requested. *See, e.g.*, *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016) (in class action, $800 per hour awarded to attorney with 23 years' experience, $595-$630 to attorneys with 17 years' experience, $510 to an attorney with 12 years' experience, and $425 to an attorney with 10 years' experience); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) ($500-750 to multiple lawyers in ERISA case); *Harris N.A. v. Acadia Investments*, 2012 WL 1681985, at *2-3 (N.D. Ill. May 14, 2012) ($560-650 in a case involving default on note); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ($500+ in copyright action).[4]

### C. Plaintiff's Attorneys' Hourly Rates Have Been Adjudicated In Past Cases and Those Cases Support Plaintiff's Attorneys' Claimed Hourly Rates

Fields's attorneys' proposed hourly rates are also supported by the hourly rates awarded to them in previous cases. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) (noting that "evidence of fee awards the attorney has received in similar cases" may be used to establish an hourly rate). The rates that Fields's attorneys seek are commensurate with

---

[4]  *See also Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (employment law case approving hourly rate of $850 for senior attorney); *Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *14 (C.D. Cal. Oct. 11, 2016) (consumer class action approving hourly rates of $750 for 20+ years' experience, $625 for 14 years, $600 for 13 years, and $485 for 10 years); *Merino v. Beverage Plus America Corp.*, 2012 WL 4468182, at *2-3 (S.D.N.Y. 2012) (wage and hour case; approving hourly rates of $700 for 35 years' experience, $300 to $450 for 11 years, $275 to $300 for 5 years); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (First Amendment trademark litigation approving hourly rate of $700 for public interest attorney with 20+ years' experience).

past awards, adjusted for inflation and the increase in skill and reputation since those awards. *See Fox v. Barnes*, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ("[H]ourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that rates higher than those awarded three years ago are appropriate.").[5]

In August 2013, Judge Holderman in *Fox v. Barnes* approved hourly rates of $505 for Jon Loevy, $495 for Michael Kanovitz, $335 for Elizabeth Wang, $310 for Anand Swaminathan, $295 for Cindy Tsai, and $275 for Steven Art. 2013 WL 4401802, at *2-4 (N.D. Ill. Aug. 15, 2013); Ex. 18 (*Fox* Joint Fee Statement). Four and a half years ago, in *Jimenez v. City of Chicago*, this Court awarded hourly rates of $495 for Jon Loevy, $450 for Michael Kanovitz, $325 for Joel Feldman, $225 for Steven Art, and $125 for paralegal staff. 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012).

In 2004, this Court awarded Gorman the hourly rate of $450 in the case of *Jones vs. R.R. Donnelley*, 96 C 7717 (N.D. Ill.). *See* Ex. 12 (Gorman Declaration).

Counsel have gained years of expertise and litigation experience since most of these rates were adjudicated. Plaintiff submits the proposed rates here represent reasonable increases from these past adjudicated rates—increases far less than the natural progression of hourly rates one sees over a three- or four-year period. With respect to paralegal rates, there is no increase at all.

### D. The *Laffey* Matrix Further Supports Plaintiff's Claimed Hourly Rates

The *Laffey* Matrix, created by the U.S. Attorney's Office for the District of Columbia as a guideline for reasonable rates in fee-shifting cases, supports Plaintiff's claimed hourly rates as well. "The matrix is intended for use in cases in which a fee-shifting statute permits the

---

[5] Fields expects that Defendants will argue that current hourly rates should not be used to calculate the lodestar, given that this litigation has lasted seven years. But both the Supreme Court and the Seventh Circuit have rejected that argument and have endorsed the practice of awarding fees based on current (rather than historical) hourly rates when a case has been pending for years. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 744-45 (7th Cir. 2003).

prevailing party to recover 'reasonable' attorney's fees." Ex. 20 (USAO Attorney's Fees Matrix,

2015-2017, https://www.justice.gov/usao-dc/file/889176/download), Note 1. Though the Seventh

Circuit has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington,

D.C.," it "ha[s] left it to trial judges to exercise their discretion in evaluating its usefulness in any

particular case." *Montanez*, 755 F.3d at 554. Courts in this District consider the *Laffey* Matrix as

one among a number of factors in determining a reasonable hourly rate. *Handott v. City of*

*Chicago*, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (collecting cases).

The following chart sets out Plaintiff's attorneys' years of experience and compares the

hourly rate from the *Laffey* Matrix to the proposed hourly rates:

| Attorney | Grad Year (Experience) | *Laffey* Matrix Rate | Proposed Rate | Difference |
|---|---|---|---|---|
| Loevy & Loevy | | | | |
| Jon Loevy | 1993 (in 24th year) | $543 | $750 | + $207/hr |
| Anand Swaminathan | 2006 (in 11th year) | $465 | $400 | - $65/hr |
| Steven Art | 2009 (in 8th year) | $395 | $375 | - $20/hr |
| Cindy Tsai | 2007 (in 10th year) | $395 | $375 | - $20/hr |
| David Owens | 2010 (in 7th year) | $339 | $350 | + $11/hr |
| Tony Balkissoon | 2010 (in 7th year) | $339 | $350 | + $11/hr |
| Sam Heppell | 2014 (in 3rd year) | $322 | $250 | - $72/hr |
| Sarah Grusin | 2014 (in 3rd year) | $322 | $250 | - $72/hr |
| Dusan Sarapa | 2006 (in 11th year) | $465 | $230 | - $235/hr |
| Dibora Berhanu | 2014 (in 3rd year) | $322 | $220 | - $102/hr |
| Katie Roche | 2015 (in 2nd year) | $291 | $215 | - $76/hr |
| Margaret McWhorter | 2015 (in 2nd year) | $291 | $215 | - $76/hr |
| Law Office of H. Candace Gorman | | | | |
| H. Candace Gorman | 1983 (in 34th year) | $581 | $600 | + $19/hr |
| Ken Flaxman | 1972 (in 45th year) | $581 | $600 | + $19/hr |
| Melissa Dupee | 2002 (in 15th year) | $465 | $285 | - $180/hr |
| Chris Tinsley | 2013 (in 4th year) | $332 | $225 | - $107/hr |
| Monte Beaty | 2013 (in 4th year) | $332 | $225 | - $107/hr |
| Adrian Bleifuss | 2012 (in 5th year) | $332 | $220 | - $113/hr |
| Sandra Tsung | 2012 (in 5th year) | $332 | $125 | - $207/hr |
| Law Office of Leonard Goodman | | | | |
| Len Goodman | 1989 (in 28th year) | $543 | $500 | - $43/hr |
| Melissa Matuzak | 2010 (in 7th year) | $339 | $300 | - $39/hr |
| Molly Armour | 2008 (in 9th year) | $395 | $250 | - $145/hr |

Plaintiff's lawyers' proposed rates are all close to—and the majority are below—the rates set out in the *Laffey* Matrix. The proposed hourly rates should be approved on that basis as well.

### E.    Expert Analysis of Attorneys' Fees Supports Plaintiff's Hourly Rates

Recently, Plaintiff's counsel retained Bruce Meckler to opine on reasonable hourly rates in *Awalt v. Marketti, et al.*, No. 11 C 6142 (N.D. Ill.) (Durkin, J.). *See* Ex. 21 (Report of Bruce Meckler, Esq., in *Awalt v. Marketti, et al.*, October 31, 2016). Mr. Meckler is vice-chair of Cozen O'Connor's Commercial Litigation department and chair of Legal Fee Solutions LLC, former founder and co-chairman of Meckler Bulger Tilson Marick & Pearson, LLP, and an attorney fee and fee audit expert. Mr. Meckler's credentials to opine on reasonable attorneys' fees are beyond dispute, Ex. 21 at 1-3, and his methodology is comprehensive and well founded, *id.* at 3-12.

Mr. Meckler's report in *Awalt* surveys hourly rates in the market, drawing data from a wide variety of sources, and considers factors relevant to whether fees are reasonable under ABA and other rules of professional conduct. *Id.* at 3-7. He concludes that the prevailing market rates for the Loevy & Loevy attorneys should compare to the median rates, using one data set, or the upper-quartile rates, using another, for attorneys specializing in commercial litigation. *Id.* The following chart reproduces those rates from page 12 of Mr. Meckler's report:

| Years of Experience | Upper Quartile / Median Rates | Ninth Decile / Third Quartile Rates |
|---|---|---|
| Under 2 Years | $280 | $300 |
| 2 or 3 Years | $320 | $350 |
| 4 or 5 Years | $345 | $400 |
| 6 or 7 Years | $375 | $450 |
| 8 to 10 Years | $400 | $500 |
| 11 to 15 Years | $450 | $550 |

| Years of Experience | Upper Quartile / Median Rates | Ninth Decile / Third Quartile Rates |
|:---:|:---:|:---:|
| 16 to 20 Years | $500 | $650 |
| 21 to 30 Years | $550 | $675 |
| 31 or More Years | $590 | $700 |

Given his experience, the rate claimed by Jon Loevy ($750) is just above the ninth-decile/third-quartile rates recommended in Mr. Meckler's chart. The rates claimed by the remaining Loevy & Loevy attorneys are in line with or below the upper-quartile/median rates. Accordingly, Mr. Meckler's expert opinion provides support for the rates requested.[6] The rates claimed by the Law Office of H. Candace Gorman are also in line with or below the upper-quartile/median rates in Mr. Meckler's chart and provide support for the rates requested by Gorman.

### F. Attorney Qualifications and Accomplishments Justify the Proposed Rates

In addition to the evidence above, Fields's attorneys submit that their credentials, experience, and past successes justify hourly rates at the upper end of the spectrum. Evidence of qualifications and accomplishments is summarized here, but Fields's attorneys urge the Court to review the detailed information contained in their declarations. Exs. 2-14.

#### 1. H. Candace Gorman

H. Candace Gorman seeks the hourly rate of $600 for her work in this case. Gorman was lead counsel from 2010 through the aftermath of the first two trials and leading up to the third trial. It is the tremendous work put in by Gorman and her firm over seven years that laid the foundation for the remarkable outcome at the third trial. As attorney Locke Bowman stated in his

---

[6] While it was originally submitted on a different subject in connection with fee litigation in *Young v. Cook County*, No. 06 C 552 (N.D. Ill.), the report of Professor Theodore Eisenberg also bears consideration as additional evidence supporting Plaintiff's claimed hourly rates. *See* Ex. 19. Specifically, Professor Eisenberg sets out statistics showing the increased risk and degree of difficulty that comes with litigating civil rights cases. *See id.* ¶¶ 41-56.

affidavit supporting attorney Gorman's hourly rate, "I well know that the exceptional contributions of Jon Loevy and his colleagues at Loevy & Loevy were necessary to the achievement of the recent verdict. But the Loevy firm stood on Candace Gorman's shoulders in this case. Nothing would have been possible without her commitment and courage." Exhibit B to Gorman Affidavit, Ex. 12. An outline of the Fields litigation and services performed by Gorman and her firm on behalf of Mr. Fields is included in her affidavit. Ex. 12.

In the fall of 2015, Gorman sought the assistance of attorney Jon Loevy and his firm. Although Gorman remained co-lead counsel during most of the run-up to the third trial, her agreement with Loevy was that he would be lead counsel for the third trial itself. Gorman sought out the Loevy firm, not only because of Jon Loevy's excellent reputation, but also because this Court's rulings, in post- trial motions (after the second trial), changed the nature of the *Monell* claims substantially. With all of the basement files at issue for the third trial, Gorman felt it was imperative to have in place a team that could help provide the expertise and resources to successfully litigate and prove the *Monell* claims. The dedicated team of excellent civil rights attorneys that the Loevy firm offered fit that bill.

Gorman was born and raised in the City of Chicago where she attended Chicago public schools. After graduation from high school Gorman attended the University of Wisconsin obtaining a BA in Philosophy in 1976. Prior to law school Gorman enjoyed a career as a youth worker, working in a small inner city youth agency, doing outreach with Chicago gangs. Gorman later attended law school, graduating from John Marshall Law School in January 1983 and sworn into the Illinois Bar in April 1983 and has been a civil rights attorney her entire legal career. Over her thirty-four years of practice Gorman has obtained substantial relief in class actions and in many multi- and single plaintiff civil rights cases in this district.

Gorman is a member in good standing of the bar of the State of Illinois, the United States District Court for the Northern District of Illinois, the Seventh Circuit Court of Appeals, the District of Columbia Court of Appeals, and the U.S. Supreme Court. In 2008, Gorman became a member of the International Criminal Court in The Hague and was invited to the Court as a Visiting Professional to provide guidance and support to the Court regarding the role of victims before that Court. Gorman resided in The Hague from January 2008 through June 2009.

Gorman is a member of the American Constitution Society, has sat on its Illinois board of advisers since 2011, and was honored as its recipient of the Ruth Goldman award in 2010. In 2007 Gorman was awarded the Frederick Douglass Human Rights Award from the Southern Center for Human Rights (along with other Guantanamo attorneys) for her *pro bono* efforts on behalf of Guantanamo detainees. Gorman is a member of the National Police Accountability Project and its Chicago affiliate. In 2014 Gorman became a founding member of the *Committee for Transparent Police Files*—an effort by local civil rights and defense attorneys to bring transparency to the approximately 20 file cabinets Gorman discovered in the boiler-room of the CPD at 51st and Wentworth during the *Fields* litigation and the additional file cabinets recently located at other police department locations in the wake of the *Fields* litigation.

In addition, Gorman served on the Board of Directors and as president of the Women's Bar Association of Illinois, the Board of Directors for the Illinois Division of the National Employment Lawyers Association, the Board of Directors for the Federal Bar Association, the Merit Selection Panel for United States Magistrates, the Task Force Planning Committee for the Illinois Supreme Court's Study of Gender Bias in the Courtroom, and was also the legislative chair and commissioner for the Chicago Commission on Women.

Gorman began representing Fields in April 2010. To say that this case was hard fought would be a gross understatement. Not only was the case tried three times, but the discovery disputes led to the filing of more than 70 motions by the Plaintiff through the second trial (and more than a hundred substantive motions were filed in this case). Gorman's affidavit provides a synopsis of the litigation and a summary breakdown of the work provided by Gorman and her firm over the eight years of litigation. Ex. 12 at 3-14.

In early 2005, this Court awarded Gorman the hourly rate of $450 in the case of *Jones vs. R.R. Donnelley*. The *Jones* case was a case that Gorman successfully argued in the Supreme Court in 2004, receiving a unanimous decision and changing the statute of limitations in section 1981 civil rights litigation. Later that same year, Gorman raised her hourly rate to $500 per hour and that has been the rate that Gorman used in settlement negotiations in the litigation she was involved in up until 2016. Gorman has no court awarded fees between 2004 and the present (except fees related to sanction motions) as the cases she has been involved in all settled without the necessity of filing a fee petition. In support of her $600 hourly rate, Gorman submits her own affidavit and the affidavits of Flint Taylor and Locke Bowman. *See* Exhibits A and B to Ex. 12.

Finally, Gorman seeks prejudgment interest on attorneys' fees. The Seventh Circuit has long recognized that "prejudgment interest should be presumptively available to victims of federal law violations" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *United States v. Bd. Of Educ. of Consol. High Sch. Dist. 230. Palos Hills*, 983 F.2d 790, 799 (7th Cir. 1993) (internal quotation marks and citation omitted).

### 2. Loevy & Loevy Attorneys

<u>Jon Loevy ($750 per hour) (Columbia, 1993)</u>

Loevy was retained as co-counsel to Gorman starting after Fields was granted a new trial in 2015, and he was the lead trial lawyer (and co-lead counsel, along with Candace Gorman) throughout the lead up to and prosecution of the third trial. Loevy was integral to the development of Plaintiff's *Monell* claims and for pretrial litigation in advance of the most recent trial, writing many of the briefs. In addition to opening statement and closing arguments, Loevy examined most of the witnesses at this lengthy trial, almost all of whom were adverse to Fields. He was also deeply involved in the litigation of all legal issues as the trial progressed.

The hourly rate sought by Jon Loevy in this case is admittedly at the very top end of the pay scale for litigators. It is, however, within the range of rates for expert civil rights attorneys across the country. Where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country. *Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Applying that lens, the rate sought by Loevy is well within the acceptable range. *E.g.*, *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving top hourly rates of $700-$975); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) (prison disability discrimination case approving top hourly rates of $700-$800); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving top hourly rates of $753-$775); *Young v. Sarles*, 197 F. Supp. 3d 38, 45-52 (D.D.C. July 11, 2016) (section 1983 First Amendment case approving top hourly rates of $796); *Hunt v. Los Angeles*, No. 06 C 4691 (C.D. Cal. 2012) (Dkt. 214) (First

Amendment case approving hourly rate of $750); *Cervantes v. Los Angeles*, 2016 WL 756456, at
*2-3 (C.D. Cal. 2016) (section 1983 false arrest and excessive force case approving hourly rates
of $700 for senior trial attorney); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal.
2014) (section 1983 false arrest and excessive force case; approving top hourly rates of $725 and
$750); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section
1983 First Amendment case approving top hourly rates of $675-$775); *Multi-Ethnic Immigrant
Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First
and Fourth Amendment class action approving top hourly rates of $710-$800); *Pierce v. County
of Orange*, 905 F. Supp. 2d 1017, 1035 n.16 (C.D. Cal. 2012) (section 1983 jail class action
approving top hourly rates of $850 and $825 to two senior attorneys); *Californians for Disability
Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010)
(disability access class action approving hourly rates up to $835 for 18+ years' experience);
*Davis v. Prison Health Servs.*, 2012 WL 4462520, at *8-10 (N.D. Cal. 2012) (employment
discrimination case approving top hourly rates of $750); *Campbell v. Nat'l Passenger R.R. Corp.*,
718 F. Supp. 2d 1093, 1099-1103 (N.D.Cal. 2010) (employment discrimination case approving
hourly rate of $700); *Restivo v. Nassau County*, 2015 WL 7734100, at *3 (E.D.N.Y. 2015)
(section 1983 wrongful conviction case approving hourly rate of $700 for two senior trial
attorneys); *Kovach v. CUNY*, 2015 WL 3540798, at *2-5 (S.D.N.Y. 2015) (disability
discrimination case approving hourly rates of $700 for partner); *Valdivia v. Brown*, 848 F. Supp.
2d 1141, 1143 (E.D. Cal. 2011) (section 1983 prisoner due process class action approving hourly
rate of up to $800 for senior attorney); *Bourke v. Beshear*, 2016 WL 164626, at *5-6 (W.D. Ky.
2016) (section 1983 marriage case approving hourly rates of $700-$750 for senior attorneys).

As this Court is aware, top civil rights attorneys in Chicago have not traditionally reached the hourly rate levels that the foregoing cases demonstrate have apparently become fairly standard for experienced litigators in certain other jurisdictions. And to be clear, Plaintiff's counsel is not suggesting the Court should import wholesale the prevailing pay spectrums in California or New York. Rather, the point is that in recent years, the top civil rights litigators around the country (many of them based in California, New York, and Washington D.C.) are not infrequently being paid $700-$800/hour.

Against that backdrop, Plaintiff respectfully submits that Jon Loevy has earned the right to an hourly rate commensurate with this top tier. For some time now, Loevy has been recognized as a leader in the field of civil rights litigation. For more than a decade, he has been awarded hourly rates reflecting his accomplishments, despite that for much of that time he was more junior than other top civil rights litigators in the community. *See Garcia v. Chicago*, 2003 WL 22175620, at *2 (N.D. Ill. 2003) (Holderman, J.) ("Jon Loevy is an outstanding trial lawyer. His ability belies his years of experience, and he certainly should not be held in a lock-step position based on his law school graduation year with regard to his hourly rate.").

Based on the instrumental role he played in helping to transform this case into an extraordinary success, Loevy presently seeks a jump[7] in his hourly rate to catch up to the top national rates referenced above. Plaintiff respectfully submits that at this point in his career, Loevy's record (summarized in his declaration, attached as Exhibit 02) qualifies him as one of the leading civil rights trial attorneys in the country. Over the past 19 years, Loevy has won dozens of jury verdicts, totaling more than $150 million, including fifteen separate jury awards of at least $1 million or more, and five jury verdicts exceeding $20 million. *Id.* ¶¶ 6-32. Based on

---

[7] In 2013, Loevy was approved at a rate of $505 per hour for his work in *Fox*. 2013 WL 4401802, at *2-4. In addition, he was awarded $495 by this Court nearly five years ago in *Jimenez*. 2012 WL 5512266, at *2.

this record, Loevy was awarded the Law Bulletin's prestigious "Career Achievement" honor, putting him in a select group of attorneys in Illinois history who have won five or more Illinois jury verdicts greater than $5 million—Loevy has now won nine such verdicts. Ex. 2. He has also enjoyed considerable success as an appellate advocate. *Id.* ¶ 33.

Furthermore, Loevy's hourly rate has been used by other federal judges as a benchmark for the top hourly rate available for other attorneys in the field. *See*, *e.g.*, *Morjal v. City of Chicago*, 2013 WL 2368062, at *6 (N.D. Ill. May 29, 2013) (relying on Loevy's rates as a touchstone for other plaintiffs' lawyers); *Baker v. Ghidotti*, 11 C 4197, 2015 WL 1888004, at *3 (N.D. Ill. Apr. 24, 2015) ("As many courts have noted, Loevy is 'an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field'" and "[another attorney's petition] has not presented sufficient evidence to show that her rates are on par with Loevy's, even though she has practiced longer."); *Montanez v. Fico*, 931 F. Supp. 2d 869, 876 (N.D. Ill. 2013) (similar holding).

Additionally, Plaintiff urges the Court to consider that the hourly rate sought is on par with (or lower than) what Loevy's hourly rate would be if he worked at one of the City's larger or mid-sized law firms. *Cf. Legal Fees Cross New Mark: $1500 an Hour*, The Wall Street Journal, http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (last visited Mar. 24, 2017) (February 2016 article noting that large law firm partners bill up to $1,445 per hour). The fact is, the cost structure of Loevy's firm is comparable to some of those mid-sized firms. Loevy & Loevy now employs 34 lawyers, and at least half as many other employees. The expenses to run a firm of that size are substantial. The attorneys at our firm are all super-qualified, and warrant salaries commensurate with those at the best firms in the country. Commercial firms of this size routinely charge clients hourly rates commensurate with the costs

of running expensive organizations. And those firms enjoy advantages that we, as a purely contingency firm, do not, including steadier revenue streams and the ability to bill hours and pass on costs (and risks) directly to their clients.

Moreover, Loevy & Loevy is not a typical "for-profit" law firm. Devoted to civil rights, Loevy and his firm have devoted a significant amount of his and his firm's time to *pro bono* or low-damage civil rights matters. For example, Loevy has committed a substantial portion of his time and recoveries from past cases to the Exoneration Project, a nonprofit legal clinic at the University of Chicago Law School, which is devoted to *pro bono* representation of men and women who have been wrongly convicted of crimes that they did not commit. Most recently, earlier this month, Loevy was lead attorney for the Exoneration Project and, working for free, successfully obtained a not guilty verdict for an innocent man wrongfully accused of killing his wife following a two-week murder trial (*People v. Lovelace*, No. 2014 CF 488, Circuit Court of Adams County, verdict returned March 10, 2017). Ex. 2.[8]

Loevy's participation in the *Fields* case was essential to the result obtained. He is one of the leading civil rights lawyers in the United States. His hourly rate of $750 should be approved.

### Anand Swaminathan ($400 per hour) (Harvard, 2006)

Anand Swaminathan is a partner at Loevy & Loevy with eleven years of experience in civil rights, whistleblower, and employment cases. At trial in this case, Swaminathan performed direct and cross-examinations of witnesses, including defense expert Judith Roberts; worked on the presentation of Plaintiff's *Monell* case; and prepared direct and cross examinations for numerous *Monell* and non-*Monell* trial witnesses. Before trial, Swaminathan supervised *Monell*

---

[8] Loevy and his colleagues also use the firm's recoveries to pursue many cases that do not contribute to the firm's expensive cost structure on issues including, *inter alia*, the First Amendment, prisoners' rights, Freedom of Information Act, reform of the bail system, sentencing reductions for juveniles serving life without parole, and, soon, voting rights.

discovery, including developing Plaintiff's street file evidence and *Monell* expert report, and drafted and argued numerous discovery briefs and motions *in limine*.

Swaminathan seeks an hourly rate of $400. This rate is commensurate with the $410 per hour and $400 per hour rates that he has charged in the last year to clients who paid for his services on an hourly basis. *See* Ex. 3 ¶¶ 11-13. Swaminathan's proposed rate is also well below the United States Department of Justice's Laffey Matrix rate of $465 for attorneys with eleven years of experience, and the $450 rate supported by Mr. Meckler's analysis. *See supra*.

Swaminathan's rate is also supported by the rate of $385 per hour approved three years ago by the Seventh Circuit in *Montanez*, 755 F.3d 547. Without accounting for Swaminathan's additional years of experience, just adjusting the *Montanez* rate conservatively for inflation (2.5%) yields a rate that exceeds the $400 rate Swaminathan seeks. Likewise, Swaminathan was awarded rates of $300 and $310 by federal courts in New York and Chicago in 2011, 2012, and 2013. Ex. 3. Adjusting those rates for inflation alone yields a present day rate of between $340-350, before accounting for Swaminathan's additional four to six years of experience.

Swaminathan's rate is also justified by his experience and impressive achievements, which are set out in his declaration. Ex. 3. Swaminathan is a 2006 graduate of Harvard Law School, where he was awarded the Andrew L. Kaufman Award for performing more than 2,000 hours of volunteer legal work, the most in his graduating class. He is also a past law clerk to Judge Katz on the U.S. District Court for the Southern District of New York, and a member of the Legal Committee of the Center for Constitutional Rights.

Swaminathan is an experienced civil rights and whistleblower lawyer who has served as trial and litigation counsel in cases resulting in numerous seven and eight figure verdicts and settlements. For example, in February of 2017 Swaminathan resolved a police shooting case on

the eve of trial for $3.35 million, the largest resolution of a police shooting case in Wisconsin history by more than $1 million. *Robinson v. City of Madison*, 3:15 C 502 (W.D. Wis.). He was responsible for all aspects of the case including trial preparation, strategy, and settlement negotiation. He was also lead counsel, in partnership with the Center for Constitutional Rights, in the case of *Salaita v. Kennedy*, *et al.*, a First Amendment retaliation case involving a professor fired from the University of Illinois, which resulted in a $875,000 settlement.

Finally, Swaminathan's rate is further justified by the national rates for civil rights attorneys of his level of experience. *Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country). Applied here, the rate sought by Swaminathan is reasonable. *E.g.*, *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of $600 for ten years); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) (prison disability discrimination case approving hourly rates of $360 to $480 for 5-10 years); *Young v. Sarles*, 197 F. Supp. 3d 38, 45-52 (D.D.C. July 11, 2016) (section 1983 First Amendment case approving hourly rates of $661 for 11+ years, and $586 for 8+ years); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First Amendment case approving hourly rates of $375 for seven years); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (disability access class action approving hourly rates of $475-$570 for 5-10 years).

<u>Steve Art ($375 per hour) (Northwestern, 2009)</u>

Steve Art is a partner at Loevy & Loevy. He has worked at the firm since his 2009 graduation *magna cum laude* from Northwestern University School of Law, which was followed by two terms as a law clerk to Chief Judge Diane P. Wood of the Seventh Circuit.

In *Fields,* Art was primarily responsible for *Monell* discovery, *Monell* experts, drafting and arguing pretrial motions, and numerous aspects of the trial, including drafting and arguing jury instructions, writing most of the briefs filed during trial, the trial examination of Herschella Conyers, assisting Loevy in preparation of witnesses, and the coordination of other members of the trial team. Art also assisted Loevy in devising legal theories and case strategy throughout discovery and trial.

Art seeks a rate of $375 per hour. That rate is below that which Mr. Meckler opines is reasonable for a Loevy & Loevy attorney of Art's experience and skill. Ex. 21. It is also below the rate recommend by the *Laffey* matrix. *See supra.* It is in line with the rate of $385 approved for a ninth-year attorney more than three years ago in *Montanez*, 755 F.3d 547. Finally, this proposed rate is in line with Art's past adjudicated rates, adjusted for inflation and increased skill and experience. *See* Ex. 4 ¶ 13 (Art Declaration Explaining Past Adjudicated Rates).[9]

Art's requested rate is also justified by his considerable skill, experience, and achievements, set forth in more detail in his declaration. Ex. 4. In his time practicing at Loevy & Loevy, Art has become an experienced litigator who has achieved substantial successes for his

---

[9] The national market provides further support. *See Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of $500 for six years); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving hourly rates of $358 for six years, $325 for five years); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case, approving hourly rates of $400 for five years); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First Amendment case approving hourly rates of $375 for seven years); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years).

clients. In addition to the result in this case, Art was a lead litigator in *Rivera v. Lake County*, No. 12 C 8665 (N.D. Ill.), one of the largest settlements of a wrongful conviction case ever; he was one of the trial attorneys in *Fox*, which resulted in a favorable jury verdict; he was a lead litigator in *Awalt v. CHC, et al.*, No. 11 C 6142, which concluded with a substantial settlement; and he was trial and appellate counsel in *Julian v. Hanna, et al.*, a wrongful conviction case that settled for $3 million. Ex. 4 ¶ 8. In addition, as set out in detail in his declaration, Art is an appellate litigator who has worked on dozens of civil rights and criminal cases in the U.S. Supreme Court and the U.S. Courts of Appeals that have caused important developments in the law. Ex. 4 ¶ 9.

Art also spends significant time in service to the community. He is currently president of the board of directors of Chicago Appleseed Fund for Justice, a leading nonpartisan organization promoting systemic reform of courts, and he is a member and former chair of the Criminal Justice Advisory Committee of the Collaboration for Justice, a joint project of Appleseed and the Chicago Council of Lawyers. Art was awarded the Young Alumni Public Service Award by Northwestern University School of Law in 2016 in recognition of this and other work.

Given Art's qualifications, experience, work in this case, $375 per hour is justified.

<u>Cindy Tsai ($375 per hour) (Loyola, 2007)</u>

Cindy Tsai worked a limited number of hours in this case designing effective ways to present complex and detailed information to the jury. She is petitioning for a rate of $375 per hour. In addition to being $20 less per hour than the rate recommended by the *Laffey* Matrix, Tsai's proposed rate is justified in reference to her past retained and adjudicated rates, as well as other rates awarded to attorneys with comparable skill and experience. Three years ago, Tsai was awarded $295 per hour in *Fox*. Her requested rate of $375 is less than the $385 rate approved by the Seventh Circuit in *Montanez*, 755 F.3d 547, for an attorney with the same level of

experience. Moreover, Tsai's requested rate is $25 per hour less than the rate recommended by Mr. Meckler's expert report. Ex. 21. Tsai's rate should be approved.

<u>David Owens ($350 per hour) (Stanford, 2010)</u>

Owens seeks a rate of $350 per hour. He was recently awarded $330 per hour in *Holmes v. Slay*, No. 12 C 2333 (E.D Mo.). Owens graduated from Stanford University in 2010 with a J.D., as well as an M.A. in Philosophy. He was the *Senior Articles Editor* of the Stanford Law Review, a Member Editor of the Stanford Environmental Law Journal, received the Gerald Gunther Prize for Outstanding Performance in Federal Courts, earned Pro Bono distinction, and served as a fellow in the Levin Center for Public Interest.

Owens' litigation experience in § 1983 cases, criminal law, and in wrongful conviction matters began in law school. Owens worked at the American Civil Liberties Union and filed a successful *amicus* brief before an *en banc* panel of the Ninth Circuit Court of Appeals in a First Amendment case. Owens was also a member of the Stanford Supreme Court Litigation Clinic, and worked on civil rights and criminal matters, including representing Ignacio Flores-Figueroa in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009).

After graduating, Owens served as a law clerk for the Hon. Diane P. Wood of the United States Court of Appeals for the Seventh Circuit, and then as a clerk for the Hon. Myron H. Thompson of the United States District Court for the Middle District of Alabama.

Owens joined Loevy & Loevy in 2012. Since then, he has successfully litigated a number of civil rights and wrongful conviction cases, including a substantial settlement in *Caine v. City of Chicago*, 11 C 8996 (N.D. Ill). Owens's civil practice focuses principally on cases concerning wrongful convictions, and he represents such clients across the country. In addition, he has significant appellate experience. *See* Ex. 6.

At the same time, since fall 2012, Owens has had an appointment as a lecturer at the University of Chicago Law School, teaching in the school's wrongful conviction legal clinic, the Exoneration Project. In this capacity, Owens has, at times, actively represented 20 or more post-conviction clients, including several men convicted as juveniles who are seeking re-sentencing. Owens has conducted evidentiary hearings (essentially "bench trials" in post-conviction matters), oral advocacy, and complex investigations. Owens has also prevailed on an appeal, in *People v. Glover*, 2014 IL App (1st) 122847-U (unpublished order), where he was the principal author of the appellate briefs.

<u>Tony Balkissoon ($350 per hour) (Harvard, 2010)</u>

Tony Balkissoon graduated *cum laude* from Harvard Law School in 2010. He then litigated intellectual property cases at Sidley Austin, where in his final year his time was billed to his clients at $615/hour. Ex. 7. Balkissoon gained litigation experience faster than the typical Sidley associate, including helping to secure a $14 million federal jury verdict for an intellectual property plaintiff. Balkissoon also has significant appellate experience, having briefed cases in the Federal, Sixth, and Seventh Circuit Courts of Appeals. Before joining Loevy & Loevy in October 2016, Balkissoon gained additional invaluable experience and insight into federal court litigation, clerking for Judge Manish S. Shah of the Northern District of Illinois, and then Judge Ann Claire Williams of the Seventh Circuit.

In this case, Balkissoon was heavily involved in helping to prepare the expected adverse testimony of El Rukn hit men and the federal prosecutors who handled them. That work involved analyzing thousands of pages of decades-old testimony, and getting Loevy ready to present that material to the jury on the fly, through difficult cross-examinations of motivated adverse witnesses. Mr. Balkissoon also contributed significantly to the numerous briefs that were

researched and briefed on the fly at trial, and to the proposed jury instructions. Given all this, Mr.

Balkissoon's proposed rate of $350 per hour is reasonable and should be approved.

<u>Sarah Grusin (Yale, 2014) & Sam Heppell (Harvard, 2014) ($250 per hour)</u>

Sarah Grusin and Sam Heppell both joined Loevy & Loevy in 2015. Grusin graduated

from Yale Law School in 2014, where she was a recipient of the Benjamin Scharps Prize, which

is awarded to the best paper written by a third-year student, and the C. LaRue Munson Prize,

awarded for excellence in the investigation, preparation, and presentation of civil, criminal, or

administrative law cases. Grusin has published on eyewitness identifications, *A Recognition*

*Intentionally Evoked: Extending* Daubert *to Eyewitness Identifications*, 51 Willamette L. Rev. 1

(2014); and on section 1983 litigation, *Holding Health Insurance Exchanges Accountable*, 24

Annals of Health Law 337 (2015). Following law school, Grusin served as a law clerk for Judge

Pallmeyer of the U.S. District Court for Northern District of Illinois. Ex. 9. In this case, Grusin

was heavily involved in litigating the *Monell* discovery, including locating and interviewing

witnesses, reviewing the voluminous record of homicide files, preparing *Monell* experts for

deposition, briefing *Monell*-related discovery disputes, and drafting motions *in limine*.

Heppell graduated with honors from Harvard Law School in May 2014, where he

received numerous academic distinctions, including the Sears Prize (awarded to four students

with the highest first-year grades) and six Dean's Scholar prizes for outstanding course work.

Heppell also gained significant litigation experience while in law school, completing nearly

2,000 hours of *pro bono* service. The bulk of those hours were spent representing dozens of

clients as lead counsel in eviction and public benefits cases as a member of the Harvard Legal

Aid Bureau, including serving as lead counsel in two bench trials and briefing and arguing two

summary judgment motions which led to the dismissal of eviction actions brought against his

clients. After graduation, Heppell served as a law clerk for the Supreme Court of Canada. Ex. 8. At trial in this case, Heppell was responsible for designating and arguing objections for the numerous witnesses presented by deposition or prior testimony, and also contributed substantially to the numerous briefs that were researched and briefed under time pressure at trial.

The hourly rate of $250 requested for Grusin and Heppell is less than the rates recommended by Mr. Meckler (Ex. 21) and by the *Laffey* Matrix (Ex. 20). In addition, this rate is in line with rates historically awarded to attorneys with similar experience in the Northern District. *See Shakman v. Sheriff of Cook County*, 2010 WL 538293, at *4 (N.D. Ill. Feb. 4, 2010) ($245/hour to second-year lawyer). Grusin's rate of $250 was recently approved by the court in *Holmes v. Slay*, *supra*. Grusin's and Heppell's exemplary credentials would permit them to work at any law firm in the country, at many of which their clients would pay substantially more for their services. Their requested rate of $250 is amply justified.[10]

<u>Dusan Sarapa, Dibora Berhanu, Katie Roche & Margaret McWhorter</u>

Attorneys Sarapa, Berhanu, Roche, and McWhorter played a different role than the primary Loevy & Loevy attorneys, and have less experience. *See* Ex. 4 (Art Affidavit) ¶ 17. Accordingly, their proposed rates are lower. These lawyers performed much of the *Monell* case file analysis of the basement files, a time-consuming project, and one which required understanding and familiarity with criminal court files and procedures. Their project succeeded, and under all of the case law cited above, the proposed hourly rates are reasonable.

---

[10]  Again, the national civil rights awards provide additional helpful data points. *E.g.*, *Cervantes v. Los Angeles*, 2016 WL 756456, at *2-3 (C.D. Cal. 2016) (section 1983 false arrest and excessive force case approving hourly rates of $275 for two years' experience); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case, approving hourly rates of $350 for three years, and $325 for two years); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (disability access class action approving hourly rates of $290-$350 for 2-3 years); *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *8-10 (N.D.Cal. 2012) (employment discrimination case approving hourly rates of $300 for four years and $265 for three years).

<u>Loevy & Loevy Support Staff</u>

Plaintiff's lodestar includes the work of paralegals and investigators, whose hours are reflected in Exhibit 11. *Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 580 (2008) (paralegal fees recoverable at market rates); *Parish v. City of Elkhart*, 2011 WL 1360810, at *2 (N.D. Ind. Apr. 11, 2011) (approving investigator billing at the hourly rate for paralegals). The affidavits for all Loevy & Loevy support staff, setting out their extensive experience and their qualifications are Exhibit 11 to this petition. Plaintiff seeks an hourly rate of $125 for all paralegals, except for Mort Smith and Melinda Ek, who seek a rate of $150 per hour in light of their investigative experience and leadership role, respectively. These rates are below that set out in the *Laffey* Matrix, *see* Ex. 20, and they are below normal market rates for paralegals, *see Webb v. CBS Broadcasting, Inc.*, 2011 WL 4501366, at *3, 8 (N.D. Ill. Sep. 28, 2011) ($190 per hour); *Johnson v. Board of Educ.*, 2011 WL 2160944 (C.D. Ill. June 1, 2011) ($160-190 per hour).

### 3.     Other Lawyers from the Law Offices of H. Candace Gorman

The breakdown of hours for Gorman and her firm that she is submitting for compensation is as follows: 6,839 for Gorman, 1,170 for attorney Adrian Bleifuss, 1,128 for attorney Sandra Tsung, 235 for paralegal Rhea Dupée, 51 for paralegal Virginia Sherwood and 97 for law clerk Devin Ross. The total amount of time for the Gorman firm is 9,520 hours. As further explained in her affidavit, Gorman is seeking compensation for 188 hours spent by four attorneys who assisted in reviewing the hundreds of investigative files from the basement at 51st & Wentworth: Melissa Dupée, Chris Tinsley, Anna (Mangia) Carlozzi, Monte Beaty and Kenneth Flaxman, who assisted Gorman in other matters related to post second trial matters. *See* Exhibits C through G of Gorman Affidavit, Ex. 12. A breakdown of time spent is attached as exhibit H to Gorman's

affidavit.[11]  In addition, Gorman spent $19,830 in costs out of pocket as further described in her

affidavit. A summary of the costs expended is attached as Ex. I to Gorman's Affidavit, Ex. 12.

### 4. Lawyers from the Law Office of Leonard Goodman

<u>Len Goodman (Northwestern, 1989)</u>

Len Goodman was trial counsel during the first civil trial, which ended in a mistrial, and

throughout the second trial. As a criminal defense attorney, he has an established billing rate of

$500/hour, which he seeks here. *See* Ex. 13 (Goodman Declaration).

This rate is justified. Goodman has been practicing law for more than 25 years. He

graduated from Northwestern School of Law in 1989, spent four years in private practice, and in

1994 formed his own law office. Since starting his own practice, he has been the lead attorney in

at least 25 felony trials, winning multiple acquittals in both state and federal courts. Mr.

Goodman also has extensive appellate experiences, winning reversals on behalf of multiple

clients, and he has written and filed more than a dozen petitions for writ of certiorari in the

United States Supreme Court, including one that was granted and resulted in the reversal of his

client's drug conspiracy conviction. *See Eberhart v. United States*, 126 S. Ct. 403 (2005).

<u>Melissa Matuzak and Molly Armour</u>

 Melissa Matuzak and Molly Armour were both associates at Goodman's firm. Matuzak

seeks a rate of $300 per hour and Armour seeks a rate of $250 per hour. Matuzak and Armour

have both worked on high-profile and complex cases in federal court. Matuzak was sworn in in

May 2010 and immediately was hired as an associate attorney at Goodman's firm. She served as

second chair to Mr. Goodman in the *State of Illinois v. Sladjana Vuckovic*, 11 CR 5879 (Cook

---

[11]The Gorman numbers reflect the time expended after Gorman reviewed her own hours, those of her employees and those of the attorneys who assisted her after the second trial and after taking out charges which Gorman felt were excessive, redundant, or unnecessary billing. Gorman did not included in her lodestar time spent supervising work performed by her subordinates and she did not include as costs amounts paid to those individuals.

County, Illinois), which resulted in acquittal. She again served as second chair, and obtained an acquittal on murder charges, in *People of the State of Illinois v. Christopher Oliver*, 08 CF 451 (Coles County, Illinois), where she gave opening statements and presented Mr. Oliver's testimony. Matuzak started her own firm in January 2016 as a solo-practitioner where she focuses on criminal and post-conviction cases in state and federal court.

Molly Armour was sworn in as an attorney in December 2008. She has significant trial experience, working with Goodman on a multiple-defendant mortgage fraud case in federal court, and she has since tried complex cases in federal court. Armour is also a member of the Federal Defender Panel in the Northern District of Illinois. The rates for Matuzak and Armour are well below the average rate for 7-9 year civil rights associates in Chicago, and are also below the rates on the Laffey matrix.

## II.     FIELDS'S ATTORNEYS' BILLED HOURS ARE REASONABLE

The hours billed by Plaintiff's counsel are documented on the time sheets submitted as Exhibits 22 (Loevy & Loevy), 23 (Gorman), and 24 (Goodman).[12]  Given the complexity, duration, and contested nature of the case, as well as the outstanding result ultimately obtained, Plaintiff's hours are reasonable and they should be approved.[13]

### A.     Plaintiff's Claimed Hours Are Justified Given the Nature of the Litigation

This case was hard-fought on all sides. The litigation has lasted seven years and counting. Extremely contested litigation by its very nature requires a greater commitment of attorney time.

---

[12]  Plaintiff's billing records have been submitted for *in camera* review. If the Court wishes Plaintiff to file these records publicly, Plaintiff will do so.

[13]  It is important to make clear at the outset that Fields's attorneys understand they were required to exercise "billing judgment" in deciding what hours to submit to the Court in a fee petition. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, at 552-53 (7th Cir. 1999). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* Plaintiff's attorneys submit that their timesheets include only the core activities necessary to effectively prosecute the case, and not extraneous hours that would have been "excessive, redundant, or otherwise unnecessary" to the result in this case. *Hensley*, 461 U.S. at 434.

As the Court's docket reflects, there were hundreds of substantive, contested motions that this Court had to resolve throughout discovery, pretrial proceedings, and trial. Discovery lasted years, and Defendants contested Fields's right to discover documents and other critical information throughout. Gorman had to file a huge number of discovery motions to uncover critical evidence, including the street file at the center of the case. Expert discovery involved numerous expert reports and depositions. *Monell*-related discovery extended for months and required an exhaustive analysis of nearly 300,000 pages of more than 800 files in the possession of the CPD, the State's Attorney's Office, and the Public Defender. *Monell* discovery also required substantial, additional expert discovery.

In total, the parties completed more than 70 depositions. There were multiple appeals. There was substantial briefing on dispositive motions. There was extensive pretrial briefing on *Daubert* questions and motions *in limine*. Finally, there were three separate trial settings, each of which required substantial preparation and review of the prior trial transcripts.

Defendants' litigation style also forced a great expenditure of efforts by Fields and his attorneys. Defendants made every argument they could and fought Fields on every issue. Though that was their right, the Seventh Circuit has observed that "a party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees." *Johnson v. Kakvand*, 192 F.3d 656, 662 (7th Cir. 1999). Had Defendants' attorneys not challenged every issue, Plaintiff's attorneys would have naturally spent far fewer hours on the litigation. In other words, Plaintiff's counsels' lodestar was amply foreseeable to Defendants—a predictable consequence of their "Stalingrad-type" defense strategy. *See Torres v. O'Neill Cancel*, 524 F.3d 331, 338 (1st Cir. 2008) ("[Defendant], as was his right, mounted a Stalingrad-type defense,

employing four lawyers and battling the plaintiffs at every turn"). Accordingly, Plaintiff's attorneys' time billed represents a necessary and reasonable use of time.

> ### B. Defendants' Arguments For Percentage Reductions Should Be Rejected

A number of Defendants' objections in the joint fee statement appear to request an arbitrary percentage reduction of Fields's attorneys' hours billed in this case. In particular, Plaintiff expects that Defendants will argue that there should be a percentage reduction based on the number of attorneys who represented Fields throughout the case, for hours spent on the *Monell* case, and for hours spent by the Law Office of H. Candace Gorman and the Law Office of Leonard Goodman on the case. Leaving aside that defense counsel, too, had numerous attorneys bill time on the case, such percentage reductions are contrary to law and unwarranted.

The presumption of reasonableness that attaches to the lodestar calculation is strong. *Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *see also Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995) ("[Courts employ a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a reasonable fee," which is "wholly consistent" with the purposes of section 1988). The Supreme Court teaches that fees may be adjusted downward only in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554; *see also Pickett v. Sheridan*, 664 F.3d 632, 640 (7th Cir. 2012) ("Despite recognizing the lodestar method as 'not perfect,' the Supreme Court recently extolled its virtues and reaffirmed its dominant role in federal fee-shifting cases.").

There is no basis to make a percentage reduction here. In *Estate of Enoch v. Tienor*, 570 F.3d 821, 822 (7th Cir. 2009), the Seventh Circuit "held that a district court cannot take a meat cleaver to the requested attorneys' fees when the recovery ($635,000) was 'spectacular . . . in

realm of prison-related litigation[.]" *Richardson v. City of Chicago*, 740 F.3d 1099, 1103-04 (7th Cir. 2014) (quoting *Enoch*, 570 F.3d at 822). The Court has consistently rejected attempts to reduce the lodestar by a percentage where legitimate recovery has been obtained. *See Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (disapproving of a "meat-axe approach" to reducing lodestar fees).[14]

The propriety of percentage reductions usually arises in cases where the quality of the result is in question and the amount of related attorneys' fees is difficult to justify. This case is the opposite. Fields achieved an outstanding result—far greater than that at issue in *Enoch*, *supra*, where a percentage reduction was flatly rejected. The lodestar reflects the appropriate award, and any request by Defendants for a percentage reduction should be rejected. As the Seventh Circuit wrote in *Johnson v. GDF, Inc.*, a case reversing a lower court's decision to slash a presumptive lodestar, "[The defendant] knew (approximately) what it was up against and proceeded to trial, without an offer of judgment or any concession of liability. [The defendant] tested its luck and lost. Now it must pay for the attorney hours reasonably required to see the case through trial, to appeal, and for the collection of fees." 668 F.3d 927, 933 (7th Cir. 2012).

## C.  The Court Should Reject Any Argument That Fees Should Be Reduced By Reference to Claims Against State's Attorney Employees Who Were No Longer Defendants At Trial

Based on the joint fee statement, Fields also expects that Defendants will argue that the fee award should be reduced because time was spent litigating claims against employees of the Cook County State's Attorney's Office who were no longer defendants by the time the case went to trial. This argument is foreclosed by law and by the nature of Plaintiff's claims in the case.

---

[14]  *Cf. Schlacher v. Law Office of Phillip Rotche*, 574 F.3d 852, 857 (7th Cir. 2009) ("The district court . . . may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive."); *Pickett*, 664 F.3d at 644 ("[O]nce the court has determined that the rate claimed and hours spent are reasonable, the district court's supervisory authority over statutory fee awards does not permit it to reduce the lodestar to prevent the attorney from recovering a windfall.").

The Supreme Court has instructed that where claims for relief involve related legal theories or common facts, the Court assessing attorneys' fees under section 1988 cannot attempt to subdivide the fee award among discrete claims. As the Court explained in *Hensley*:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435. The Seventh Circuit has applied this rule without deviation. *See*, *e.g.*, *Dunning*, 62 F.3d at 874 (holding that a full fee award was warranted "[b]ecause of the interrelated nature of the two claims" and the fact that "[the plaintiff's] attorneys had to prepared for the 'litigation as a whole,' rather than merely preparing for a 'serious of discrete claims.'") (quoting *Riverside*, 477 U.S. at 569).[15] Courts in this district have recognized, when assessing an award of fees, that "it is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically[.]" *C.W. v. Board of Education of the City of Chicago*, 2012 WL 355360, at *8 (N.D. Ill. Feb. 1, 2012).

Even in cases where a plaintiff prevails on only a subset of claims, "when [those] claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee*, 142 F.3d at 413; *see also Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010) (noting that reductions of fee awards by "claim counting" are wholly impermissible under Supreme Court precedents); *Lenard v. Argento*, 808 F.2d 1242, 1245-46 (7th Cir. 1987) (noting that the Supreme Court has rejected "the mechanical claim-chopping approach" and noting that "[f]or tactical reasons and

---

[15] *See also Gautreaux*, 491 F.3d at 661-62 ("So long as the plaintiffs' lawyers' activities are factually related to issues on which the plaintiffs have achieved [success] and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees"); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim.").

out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. . . . [H]e is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.").

All of the claims in this case centered around the same proof that Fields was arrested, prosecuted, and convicted in violation of his constitutional rights and in violation of Illinois law. All of the work performed in the case was tied closely this operative set of facts, regardless of the particular defendants at issue. Removing particular individuals from the case who were no longer defendants at trial would not have changed the discovery and litigation of issues in the case. Certainly, Plaintiff had to go further to build the *Monell* claim against the City, but that argument cuts against the Defendants here.

Attorney time sought for discovery into and litigation of the claims against individuals who were not defendants at trial is inseparable, within the meaning of *Hensley* and its progeny, from the case against the Defendants who went to trial. *Gautreaux*, 491 F.3d at 661-62. Any argument from Defendants to the contrary is foreclosed by established law. Plaintiff is entitled to the full lodestar in this case.

## III. AN UPWARD DEPARTURE FROM THE LODESTAR IS WARRANTED IN THIS CASE

The Supreme Court recognizes that after the lodestar is calculated, a fee awarded can be adjusted upward or downward to account for the results obtained. *Hensley*, 461 U.S. at 434. In this case, for all of the arguments and discussion set forth above (and incorporated into this section by reference), if any adjustment of the lodestar is warranted by the *Hensley* factors, it would be an adjustment upward, not downward, particularly given the outstanding result. To that

end, Plaintiff proposes a 20% upward adjustment, proportional to the 20% downward adjustment the Defendants indicated they would be seeking during the meet and confer process.

## IV. FIELDS'S ATTORNEYS' CLAIMED COSTS ARE REASONABLE

Finally, in their years-long fight to vindicate Fields's rights, his attorneys spent substantial sums of money out of pocket on the costs of the case. In particular, Loevy & Loevy spent $135,527.24 in costs, the Law Office of H. Candace Gorman spent $19,830.00, and the Law Office of Leonard Goodman spent $112,177.04. These costs were reasonably expended by Plaintiff's attorneys. Plaintiff seeks to recover these costs under federal statutes and rules, including but not limited to 42 U.S.C. § 1988, 28 U.S.C. §§ 1920 & 1924, and Federal Rule of Civil Procedure 54. *See Downes v. Volkswagen of America*, 41 F.3d 1132, 1144 (7th Cir. 1994); *see also Heiar v. Crawford County*, 746 F.2d 1190, 1203-04 (7th Cir. 1984) (listing as examples of recoverable expenses postage, phone calls, copying, travel, and expert witnesses); *Smith v. Altman*, 2015 WL 5675376, at *1 (N.D. Ill. Sep. 21, 2015) ("Expert witness fees may be included, at the Court's discretion, in the award of attorneys' fees."); *Corcoran v. City of Chicago*, 2016 WL 5445694, at *5 (N.D. Ill. Sep. 15, 2015) (costs recoverable include computerized legal research). Spreadsheets listing each cost reasonably expended in this case are being submitted along with this petition as Exhibits 25 (Loevy & Loevy Costs),[16] 26 (Gorman Costs), and 27 (Goodman Costs).[17]

---

[16] Andy Thayer has reviewed these records in detail and has declared that they accurately represent the costs in this matter. *See* Ex. 11 at 18 (Thayer Declaration).

[17] These receipts have also been submitted for *in camera* review. Again, Plaintiff will file those records publicly if the Court wishes. The receipts are in the same order that the costs appear on the spreadsheets.

## CONCLUSION

Plaintiff respectfully requests the Court enter judgment as follows: (1) $2,595,847.50 in fees and $135,527.24 in costs for Fields's attorneys Loevy & Loevy and against Defendants; (2) $4,554,055.00 in fees and $19,830.00 in costs for Fields's attorneys the Law Office of H. Candace Gorman and against Defendants; and (3) $341,900.00 in fees and $112,177.04 in costs for Fields's attorneys the Law Office of Leonard Goodman and against Defendants.

RESPECTFULLY SUBMITTED,

**NATHSON FIELDS**

By:  /s/ Jon Loevy
Jon Loevy
*One of Plaintiff's Attorneys*

H. Candace Gorman
LAW OFFICE OF H. CANDACE
GORMAN
220 S. Halsted St., Suite 200
Chicago, Illinois 60661
(312) 427-2313
hcgorman@igc.org

Leonard Goodman
Melissa Matuzak
LAW OFFICE OF LEONARD GOODMAN
53 W. Jackson Blvd., Suite 1650
Chicago, Illinois 60604
(312) 986-1984
lcgoodman@rcn.com

Jon Loevy
Anand Swaminathan
Steven Art
Sam Heppell
Sarah Grusin
Tony Balkissoon
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
jon@loevy.com

*Counsel for Plaintiff Nathson Fields*

## CERTIFICATE OF SERVICE

I, Jon Loevy, an attorney, hereby certify that on March 27, 2017, I filed the foregoing

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS using the Court's CM/ECF

system, which effected service on all counsel of record.

/s/ Jon Loevy
Jon Loevy
*One of Plaintiff's Attorneys*

H. Candace Gorman
LAW OFFICE OF H. CANDACE
GORMAN
220 S. Halsted St., Suite 200
Chicago, Illinois 60661
(312) 427-2313
hcgorman@igc.org

Leonard Goodman
Melissa Matuzak
LAW OFFICE OF LEONARD GOODMAN
53 W. Jackson Blvd., Suite 1650
Chicago, Illinois 60604
(312) 986-1984
lcgoodman@rcn.com

Jon Loevy
Anand Swaminathan
Steven Art
Sam Heppell
Sarah Grusin
Tony Balkissoon
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
jon@loevy.com

*Counsel for Plaintiff Nathson Fields*