```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    NATHSON E. FIELDS,                )
                                        )
 4              Plaintiff,              )
                                        )
 5         v.                           )  No. 10 CV 01168
                                        )
 6    CITY OF CHICAGO, et al.,          )  Chicago, Illinois
                                        )  January 27, 2014
 7              Defendants.             )  9:43 a.m.

 8                       TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE MATTHEW F. KENNELLY
 9
      APPEARANCES:
10
      For the Plaintiff:         MR. LEONARD C. GOODMAN
11                               53 West Jackson Boulevard
                                 Suite 1650
12                               Chicago, Illinois 60604
                                 (312) 986-1984
13
                                 LAW OFFICE OF H. CANDACE GORMAN
14                               BY:  MS. H. CANDACE GORMAN
                                 220 South Halsted Street, Suite 200
15                               Chicago, Illinois 60661
                                 (312) 427-2313
16
      For Defendants City, et    DYKEMA GOSSETT, PLLC
17    al.:                       BY:  MR. PAUL A. MICHALIK
                                      MR. DANIEL M. NOLAND
18                               10 South Wacker Drive, Suite 2300
                                 Chicago, Illinois 60606
19
      For Defendants Wharrie     MR. STEPHEN L. GARCIA
20    and Kelley:                Assistant Cook County State's
                                 Attorney
21                               500 Richard J. Daley Center
                                 Chicago, Illinois 60602
22                               (312) 603-5475

23    Court Reporter:            Judith A. Walsh, CSR, RDR, F/CRR
                                 Official Court Reporter
24                               219 South Dearborn Street, Room 1944
                                 Chicago, Illinois 60604
25                               (312) 702-8865
                                 judith_walsh@ilnd.uscourts.gov
```

1        (Proceedings heard in open court:)
2             THE CLERK:  Case 10 C 1168, Fields versus City of
3   Chicago.
4             THE COURT:  Good morning.
5             MR. MICHALIK:  Good morning, your Honor.  Paul
6   Michalik on behalf of the City defendants.
7             MR. NOLAND:  Dan Noland on behalf of the City
8   defendants as well.
9             MR. GARCIA:  Good morning, your Honor.  Stephen
10  Garcia on behalf of defendants Wharrie and Kelley.
11            MR. GOODMAN:  Leonard Goodman on behalf of Nathson
12  Fields.
13            MS. GORMAN:  Candace Gorman on behalf of Nathson
14  Fields.
15            THE COURT:  So my question, there are a couple of
16  reasons for bringing you in.  One had to do with the Seventh
17  Circuit decision in which, I guess, they expressed they were
18  somewhat mystified by the fact that I had retained
19  jurisdiction over the -- one of the state law things.  And so
20  I was looking through the -- you know, I went online and
21  looked through the briefs to try to figure out whether anybody
22  had given them -- and it wasn't a real long ruling, but I did
23  actually explain why I did that.
24            Did anybody ever give them that ruling?  Not that you
25  would have had to because that really wasn't on appeal.  There

1 was a ruling in which I explained, it was about a four or
2 five-page ruling. I think I printed it out. It was --
3     MR. GARCIA: I guess the answer is no. I can't think
4 of any context it would have come up to give it to them --
5     THE COURT: It was October -- yeah, right. Did it
6 come up at oral argument? I didn't --
7     MR. GARCIA: No, not at all.
8     THE COURT: So this is just one of those things where
9 somebody looks through the record and says, "Gee, I can't
10 figure this out."
11     MR. GARCIA: Right.
12     THE COURT: Okay. Well, I did already explain it.
13 So I'll deal with that at an appropriate point in time.
14     Second topic is, I want to have -- and it's going to
15 have to be really, really fast, like, tomorrow or the next day
16 given the schedule that we're under. I need -- I want to hear
17 argument on a couple of specific points on the City
18 defendants' motion for summary judgment. And I'm going to
19 tell you what they are. It's conceivable I might add a third,
20 but I don't think so, and if I do, I'll let you know by e-mail
21 later today.
22     So the two issues are, number one, what I'll call the
23 causation issue relating to trial number one. And I assume
24 you know what I'm talking about when I say that; in other
25 words, the argument that there wasn't any potential causation

1  due to the *Brady*, alleged *Brady* violations.  Given what
2  happened with regard to that trial, I'm sort of being
3  deliberately general.  So you know what the argument is.  You
4  know what the argument I'm talking about is.  So I want to
5  hear argument about that.
6       And then the other one has to do, it's a much
7  narrower issue.  It has to do with the -- it's the
8  admissibility issue regarding Langston's testimony which I
9  believe was at the penalty phase.  There's an argument
10 regarding hearsay and admissibility under 804(b)(1), I think
11 it is.
12      And there's really two points I wanted to talk about
13 there.  One is, is the guy unavailable because there's a
14 statement that there's no indication he is, but it's all
15 pretty conclusory.  And then the argument -- and obviously,
16 this would depend on availability.  If the man's available,
17 then he's available.  The second issue has to do with the
18 other predicate under 804(b)(1) is similar motive to cross-
19 examine.
20      So maybe you know.  Where is Mr. Langston?  Is he
21 local?
22           MS. GORMAN:  There's two Mr. Langstons, and they both
23 testified at the penalty.  I think you're talking about Randy.
24           THE COURT:  Randy is the one I'm talking about.
25           MS. GORMAN:  He is available.  He's in prison.

|     |     |
| --- | --- |
| 1   | THE COURT: He's in prison. So he's not unavailable. |
| 2   | MS. GORMAN: He's alive. |
| 3   | MR. GOODMAN: He's available. |
| 4   | THE COURT: Where is he in prison? |
| 5   | MR. MICHALIK: I don't know, your Honor. He did |
| 6   | testify -- |
| 7   | THE COURT: Is he in prison within the state of |
| 8   | Illinois? |
| 9   | MR. MICHALIK: I believe he is. He did testify in |
| 10  | the certificate of innocence proceeding. |
| 11  | THE COURT: Okay. But, I mean, is he in the federal |
| 12  | prison or a state prison? |
| 13  | MS. GORMAN: State prison. |
| 14  | MR. NOLAND: State prison. |
| 15  | THE COURT: He's in a state prison. So presumably, |
| 16  | that is in Illinois. Okay. Well, maybe that's an easy one |
| 17  | then. So I guess maybe then you're going to need -- so let's |
| 18  | sort of collapse that. So you're going to need to tell me why |
| 19  | it is that you think his testimony, his former testimony is |
| 20  | available if he's -- or is admissible if he's available. I |
| 21  | mean, there may be, you know, a residual exception issue or |
| 22  | something like that. |
| 23  | But anyway, so those are the two things. Like I say, |
| 24  | it's conceivable I might add a third, but I think it's pretty |
| 25  | unlikely and, if so, I'll send an e-mail, I guess, to |

1  Ms. Gorman.  Which one of the two of you should I send it to?
2        MR. MICHALIK:  Either one, your Honor.
3        THE COURT:  Okay.  I'll send it to one of you and to
4  Mr. Garcia later today.  It would be probably this afternoon
5  sometime.
6        So those were the two things I wanted to discuss, but
7  since I have you here, is there anything any of you want to
8  discuss since I've got you here?
9        MR. MICHALIK:  There is, we did file a motion with
10 respect to our reply brief.
11       THE COURT:  Oh, there was an excess page thing.
12       MR. MICHALIK:  Right.
13       THE COURT:  Yes, yes, yes.  That's granted.
14       MR. MICHALIK:  Thank you, your Honor.
15       THE COURT:  Let me just get the docket number.  Pam,
16 that's at Docket No. 476.  That's granted.
17       And so there's a hearing date of January 30th which
18 we can vacate.
19       MS. GORMAN:  I guess it doesn't --
20       THE COURT:  So you eventually got it on file, yes.
21 So we had this problem on -- thanks for sending it by e-mail.
22       MR. MICHALIK:  We filed it on Saturday.
23       THE COURT:  It was good to have at least a few extra
24 hours on that.  Yeah, they were originally reporting that it
25 was a hacker attack, and then it turned out it's not a hacker

1  attack, it was an internal glitch, which is sort of
2  interesting.
3        MR. MICHALIK:  And it wasn't just this district
4  either.
5        THE COURT:  It was everything.
6        MR. GARCIA:  It was the Seventh Circuit site, too.
7        THE COURT:  It was everything.
8        MS. GORMAN:  Across the country.
9        THE COURT:  So every court, federal court site in the
10 entire United States of America.  And it was interesting
11 because I couldn't even -- because when I went home, I figured
12 well, I can get in -- I needed to get something here, and I'm
13 normally able to get in through a VPN connection here.  That
14 was down, too, so it was bad.  Anyway, anything
15 else anybody --
16       MS. GORMAN:  I guess it doesn't make any difference
17 if I want to object to their doing 38 pages when you ordered
18 15?
19       THE COURT:  No.  I mean, yeah, it might make a
20 difference but, you know, we're going to have argument about
21 it.  So, I mean, if there's something else that you -- if
22 there's something else that you would like to talk about at
23 argument because you think they got too many pages and there's
24 something that you want to bring up, here's what I want you to
25 do -- well, we're going to come up with a date in a second.

1    Let's come up with a date first.

2            You know, again, given the time crunch -- and,
3    frankly, the time crunch isn't so much my time crunch.  It's
4    your time crunch involving the pretrial order and things like
5    that.  So I could -- I could talk to you tomorrow in the
6    morning after my call or in the afternoon probably something
7    like 2:30-ish or something like that, or I could do it on
8    Wednesday at essentially the same -- Wednesday, I could do it
9    at 1:30 as opposed -- or after my morning call.  I won't let
10   it go past Wednesday.  So is it doable tomorrow?

11           MR. MICHALIK:  We can do it tomorrow afternoon, your
12   Honor.

13           THE COURT:  Tomorrow afternoon?

14           MS. GORMAN:  I think I've got the major burden on
15   this response.  I'd rather have until Wednesday.

16           THE COURT:  Okay.  So how about something like 10:30
17   on Wednesday?

18           MS. GORMAN:  That's perfect.

19           THE COURT:  Okay.  So argument on the motion -- just
20   check and make sure it works for you.  10:30 on this
21   Wednesday, which would be the 29th, I think.

22           MR. NOLAND:  Yes, your Honor.  Thank you.

23           THE COURT:  Okay.  So oral argument on the motion to
24   dismiss is set for that date.  So here's what you need to do,
25   Ms. Gorman.  If --

1         MS. GORMAN: I'm sorry. On the motion for summary --

2         THE COURT: Summary judgment, yeah. Motion for

3 summary judgment, right. My mistake.

4         Here's what you need to do. If there's some other

5 point that you want to argue, and what I'm really talking --

6 because I have veto power, okay, just to be clear. So what

7 I'm really talking about is if there's something that's

8 brought up in the reply, not something that's, you know, in

9 the original briefs, it's talked about, something that's

10 brought up in the reply you're thinking, "Wait a second, you

11 know, if Kennelly hadn't give them all those excess pages,

12 they wouldn't have been able to argue that, I really need to

13 respond to this," you let them know by noon tomorrow.

14         MS. GORMAN: Okay.

15         THE COURT: And let me know, too, so that I can look

16 at it and be prepared to ask whatever questions I need to ask.

17 And so the way you'd let me know is, just, you can do it by

18 e-mail, frankly. You've got the e-mail address from where

19 they sent the thing the other day. You can just use that one.

20         MS. GORMAN: Okay.

21         THE COURT: Okay. Anything else anybody can think of

22 to bring up?

23         MR. GARCIA: I guess, your Honor, with respect to my

24 clients, where I stand, I mean, the Seventh Circuit has

25 suggested, for instance, that defendant Kelley should be

1  dismissed.
2      THE COURT: Yeah, the defendant -- okay. So I'm
3  still trying to sort my way through it. Is that the same
4  issue as the relinquishment of jurisdiction?
5      MR. GARCIA: Not technically, no. I mean, the
6  jurisdiction overall --
7      THE COURT: I mean, the jurisdictional thing
8  regarding the state law claims, I'm going to chalk it up to
9  the court of appeals not understanding that I actually gave an
10 explanation because Judge Posner's opinion basically says,
11 "we're mystified" or something like that. Well, I can remove
12 the mystification.
13     MR. GARCIA: That was supplemental jurisdiction over
14 the claims.
15     THE COURT: That was supplemental jurisdiction.
16     MR. GARCIA: The issue right now pertains to his
17 immunity. The Seventh Circuit is suggesting that -- or
18 stating that he's immune, so --
19     THE COURT: Well, if they said he's immune, that's
20 kind of the end of the story, isn't it?
21     MR. GARCIA: It would seem to be --
22     THE COURT: Again, I'm still trying to work my way
23 through it but...
24     MR. GARCIA: I agree, so I don't know why they just
25 decided to remand it, but -- excuse me.

1    THE COURT: Well, we can all sort of ponder that one.
2    MR. GARCIA: Yes. And as to Wharrie, Judge Sykes has
3 pretty much invited the motion for a hearing en banc, which we
4 are going to do.
5    THE COURT: She's invited a motion for rehearing en
6 banc. Okay. All righty then. Well, so you've told me what
7 you're going to do. And I suppose then if there's a
8 possibility of a rehearing en banc then, maybe I shouldn't be
9 dismissing Kelley because maybe --
10    MR. GARCIA: It won't be as to --
11    THE COURT: Well, how do you know? I mean, if
12 there's a rehearing en banc, isn't it a rehearing en banc?
13    MR. GARCIA: Well, I suppose so.
14    THE COURT: They usually wouldn't say, "Oh, we're
15 just going to do it on this one little narrow point." They
16 just basically say, "We're going to rehear the whole kit and
17 caboodle." So if you're -- when are you -- you're going to
18 take the whole 21 days?
19    MR. GARCIA: It's actually 14, I believe.
20    THE COURT: You'll take the whole 14?
21    MR. GARCIA: Yeah.
22    THE COURT: Okay. Well, you're going to do what
23 you're going to do, and I'm just going to wait on Kelley to
24 see what they do. So...
25    MR. GARCIA: Okay.

12

1            THE COURT:  Don't anybody make any plans for March
2   3rd other than being here.
3            MS. GORMAN:  The 10th, March 10th.
4            THE COURT:  10th, whatever.  March 10th.  Okay.  See
5   you Wednesday.
6            MS. GORMAN:  Thank you.
7            MR. GOODMAN:  Thank you, Judge.
8        (Proceedings adjourned at 9:55 a.m.)
9                       *  *  *  *  *  *
10                      C E R T I F I C A T E
11       I, Judith A. Walsh, do hereby certify that the
12  foregoing is a complete, true, and accurate transcript of the
13  proceedings had in the above-entitled case before the
14  Honorable MATTHEW F. KENNELLY, one of the judges of said
15  Court, at Chicago, Illinois, on January 27, 2014.
16
17  */s/ Judith A. Walsh, CSR, RDR, F/CRR*          December 4, 2017
18  Official Court Reporter
19  United States District Court
20  Northern District of Illinois
21  Eastern Division
22
23
24
25