# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATHSON FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10 C 1168 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nathson Fields sued the City of Chicago, several Chicago police officers and officials, and two former Cook County prosecutors under 42 U.S.C. § 1983 and state law for claims arising from his prosecution for the 1984 murders of Talman Hickman and Jerome Smith. Fields was convicted and sentenced to death in 1986. His convictions were affirmed on appeal but were overturned on post-conviction review in 1998. Fields was acquitted on retrial in 2009. He filed this lawsuit in 2010.

After dismissals of a number of defendants, the present case went to trial in March 2014 on Fields's claims against the City of Chicago and three police officers. The Court declared a mistrial after seven days of trial when defendants introduced prejudicial testimony that the Court had excluded in a pretrial *in limine* ruling. The second trial, held in April 2014, included the same defendants plus one of the former county prosecutors. The trial ended in a finding for Fields on one of his claims against defendant David O'Callaghan and for the defendants on the other claims. The jury awarded Fields $80,000. The Court later ordered a new trial. The Court's ruling was

based on newly-discovered evidence concerning a key defense witness, who was released on parole shortly after the trial even though he had been expected to remain in prison for 13 more years, as well as the Court's conclusion that it had erroneously limited discovery on Fields's *Monell* claim against the City and had given the jury an erroneous instruction on the *Monell* claim.

Fields then retained new, additional counsel to represent him at the retrial. O'Callaghan also retained new counsel for the retrial. The case was retried in November-December 2016. The jury found for Fields against O'Callaghan and Murphy on one of his claims against them under section 1983; for Fields against the City on his *Monell* claim under section 1983; for Fields against O'Callaghan on a state-law claim for intentional infliction of emotional distress; and for the defendants on the remaining section 1983 and state law claims. The jury awarded Fields compensatory damages of $22,000,000, as well as punitive damages of $30,000 against O'Callaghan and $10,000 against Murphy.

Fields has now petitioned the Court for attorney's fees and expenses under 42 U.S.C. § 1988 and for costs under 28 U.S.C. § 1920. Fields seek to recover fees and expenses as follows (*see* Pl.'s Fee Pet'n at 39):

| Law firm | Fees | Expenses |
|----------|------|----------|
| Loevy & Loevy | $2,595,847.50 | $135,527.24 |
| Law Office of H. Candace Gorman | $4,554,055.00 | $19,830.00 |
| Law Office of Leonard Goodman | $341,900.00 | $112,177.04 |
| TOTAL | $7,491,802.50 | $267,534.28 |

Defendants object to the proposed fees and expenses; they contend the fee award should be $1,210,932 for the Loevy firm; $2,375,913 for the Gorman firm; and $126,463 for the Goodman firm, a total of $3,713,308. *See id.*, Ex. 1 (Joint Fee Stat.) at 3-5. They also request significant reductions on the requested costs and expenses. *See id.*

For the reasons described below, the Court reduces the Loevy firm's requested fees by a little under $600,000; the Gorman firm's requested fees by a little under $1,000,000; and the Goodman firm's requested fees by a little over $120,000. The total amount of fees awarded by the Court is approximately $5,571,500. The Court also reduces the requested costs and expenses by amounts to be calculated and resubmitted by counsel.[1]

## Discussion

The starting point for determination of a reasonable attorney's fee in a section 1983 case is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee applicant bears the burden of showing the reasonableness of the time requested as well as the hourly rates. *Id.* at 437.

The figure derived from multiplying the hours reasonably expended by a reasonable hourly rate is referred to as the "lodestar." A court can adjust the lodestar based on twelve factors described in *Hensley*. *Id.* at 434 n. 9. The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount

---

[1] The Court has considered all of defendants' objections and overrules them to the extent they are not specifically addressed in this opinion.

involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3. "However, 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434 n. 9).

## A.    Hourly rates

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). The focus is "the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*" *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original). *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

If the attorney has an actual billing rate that he or she typically charges and obtains for similar litigation, that is presumptively the attorney's hourly rate. *Pickett*, 664 F.3d at 640. In some situations, however, the attorney does not have an established market rate, for example, because he or she typically uses contingent fee arrangements or relies on statutory fee awards. When (as here) that is the case, a court should rely on the "next best evidence" of the attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (internal quotation marks omitted).

"The fee applicant bears the burden of 'produc[ing] satisfactory evidence—in

4

addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).  If the applicant satisfies this burden, then the opposing party has the burden to offer evidence "that sets forth a good reason why a lower rate is essential."  *Id.* (internal quotation marks omitted).

Fields supports some of his proposed rates by reference to the so-called "Laffey Matrix," a framework used by the United States Attorney's Office for the District of Columbia to determine reasonable hourly rates in fee-shifting cases.  As the Seventh Circuit noted in *Pickett*, however,

> [n]o circuit outside the D.C. Circuit has formally adopted the Laffey Matrix, and few have even commented on it.  While some circuits have applied the Laffey Matrix, other circuits have expressed concerns about the Matrix's utility outside its circuit of origin. . . .  The district courts [in this circuit] that have considered the Laffey Matrix have viewed it with differing levels of praise and skepticism. . . .  The Laffey Matrix is not without its critics. . . .  Even the D.C. Circuit has referred to the Matrix as "crude" and has recommended that plaintiffs provide affidavits, surveys, and past fee awards to enable the district court to refine the Matrix for the particular attorney.

*Pickett*, 664 F.3d at 649–50 (internal quotation marks and citations omitted).  Given these concerns and the Seventh Circuit's expressed preference for other, more direct measures of reasonable hourly rates, the Court does not find it appropriate to rely on the Laffey Matrix as evidence supporting Fields's proposed hourly rates.  *See also Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1040 (N.D. Ill. 2013) (Kennelly, J.).

The Court also declines to rely on an affidavit submitted by Bruce Meckler regarding rates for attorneys in commercial litigation.  The relevant frame of reference is civil rights / police misconduct litigation, not commercial litigation.

### 1. Loevy & Loevy attorneys

A little under a year ago, Jon Loevy advised this Court in another case—albeit not a police misconduct or civil rights case—that his hourly rate was $550. This was consistent with the best other evidence Fields has offered on Loevy's hourly rate, specifically, rates approved by this Court and others in this district for Loevy. This includes this Court's determination in 2012 that Loevy's appropriate hourly rate was $495, *see Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012), and Judge James Holderman's approval of a $505 rate for Loevy in 2013 in *Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802 (N.D. Ill. Aug. 15, 2013)—both police misconduct cases. The Court finds that Loevy's current market rate for litigation of this type is $550. He has not provided persuasive evidence supporting the much higher $750 rate that he requests. The same $550 rate applies for Michael Kanovitz; defendants do not challenge his proposed rate.

Anand Swaminathan, an attorney with 11 years of litigation experience, was awarded fees at a $310 hourly rate in the *Fox* case in 2013. Considering that, his additional experience in the meantime, and rates approved for attorneys of comparable skill and experience in other litigation, the Court finds that the appropriate hourly rate for Swaminathan is $360. The same $360 rate will apply to Joel Feldman, a lawyer with a similar experience level who charged only a small amount of time in this case.

The Court finds that the appropriate rate for Steven Art and Cindy Tsai, attorneys with about 8 years of litigation experience, is $325. This is consistent with the $310 rate approved for Swaminathan in the *Fox* case in 2013 when he had a little less experience than Art and Tsai have now and with the $295 rate approved for Tsai in 2013 in the *Fox*

case.  The Court approves the same rate ($325) for Karl Leonard, a lawyer with a roughly similar experience level who charged less than two hours on this case.

The appropriate market rates for the other attorneys with the Loevy firm are best determined by reference to the rates for the other, more experienced attorneys at the firm that the Court has just set.  Considering their relative levels of experience, the Court finds that the appropriate hourly rate for David Owens and Tony Balkissoon is $275; the appropriate hourly rate for Sarah Grusin and Sam Heppell is $225; the appropriate hourly rate for the four remaining Loevy & Loevy lawyers who worked on the case, Katie Roche, Margaret McWhorter, Dibora Berhanu, and Dusan Sarapa, is $200.

## 2.    Law Office of H. Candace Gorman

This Court approved an hourly rate of $450 for Candace Gorman back in 2005 in the case of *Jones v. R. R. Donnelly*, No. 96 C 7717.  Gorman argues, in part due to her acquisition of over ten more years of experience since then, that her appropriate hourly rate for this case is $600.  But *Jones* was an employment discrimination case.  It was a highly complex case, and Gorman achieved a very favorable result, but before the present case she had very limited experience in police misconduct-related civil rights litigation.  Her rate for the *Jones* case therefore cannot simply be adopted here.  And the Court finds no appropriate basis in the record to approve a rate for her that is higher than or the same as the rate for Jon Loevy, currently one of the top (if not *the* top) plaintiff's attorneys for police misconduct suits in Chicago.  The Court finds that Gorman's appropriate hourly rate for this case is $500.

With regard to the other attorneys at Gorman's firm, in this case in 2014, Gorman

claimed a rate of $150 for Adrian Bleifuss, a 2012 law school graduate, and $75 for Sandra Tsung, who was a law student when she did her work on the case. Neither Bleifuss nor Tsung performed any more services on this case after that fee petition. Gorman has offered no persuasive support for higher hourly rates than those she previously sought for the exact same work in this case. The Court adopts the rates Gorman proposed in 2014, which defendants do not oppose.

The time spent by four attorneys reviewing police department, public defender, and prosecutor files in connection with Fields's *Monell* claim will be compensated at $200, the same rates the Court has set for the newest associates from the Loevy firm.

### 3.     Law Offices of Leonard Goodman

After the 2014 trial, attorney Leonard Goodman (who participated in the 2014 partial trial as well as the completed 2014 trial, but not the 2016 trial) proposed hourly rates of $300 for himself, $225 for his associate Melissa Matuzak, and $150 for his associate Molly Armour. He now proposes, for the exact same work that was the subject of his earlier petition, $500 for himself, $300 for Matuzak, and $250 for Armour. Goodman has significant experience in criminal defense and appellate work but (apparently) no experience in civil rights work prior to this case. He, like Gorman, performed a significant service in taking on Fields's case, but he has not provided proper support for rates higher than the rates he previously proposed in this case for the exact same work. Defendants do not oppose those rates. The Court finds that the rates Goodman previously proposed are the appropriate rates.

### 4.     Other issues concerning hourly rates

*Review of State's Attorney / Public Defender / Police Department files for Monell*

*claim.* Defendants contend that the time spent by attorneys reviewing files of the State's Attorney, Public Defender, and Police Department should be compensated only at paralegal rates. Fields's attorneys reviewed and compared these files in connection with his *Monell* claim. The Court does not agree that this work is appropriately compensated at paralegal rates rather than attorney rates. The file review involved not just cataloguing or summarizing the files but also analyzing their content. This was a significant task appropriately compensated at attorney, not paralegal rates.

*Rates for plaintiff's paralegals and investigator.* Fields seeks compensation for paralegal time at rates of $125 for most of the paralegals with the Loevy firm and $150 for one of that firm's paralegals. This Court approved a $125 rate for paralegals with the Loevy firm several years ago in *Jimenez*, 2012 WL 5512266, at *5, and finds that Fields has adequately justified rates that high here. He has not sufficiently supported, however, his proposed $150 rate for a particular paralegal, Melinda Ek, so the Court reduces her rate to $125. The Court approves the rates ($125 and lower) sought for paralegals working with Gorman's firm.

The Court concludes that Fields has adequately shown that $150 is a reasonable hourly rate for Mort Smith, the investigator his attorneys employed. Smith has worked as an investigator for over 30 years, and the Court is satisfied from Fields's submissions that the work Smith did is appropriately compensated at a rate higher than that for the Loevy paralegals.

Finally, the Court agrees with defendants that there is no basis for compensating the work of Andy Thayer, the Loevy firm's office manager, on an hourly-rate basis. This is the sort of expense appropriate considered as part of non-separately-compensable

overhead. His time is eliminated from the recoverable amounts.

**B.      Compensable time**

In this section, the Court addresses defendants' objections to the attorney and paralegal time claimed by Fields.

### 1.      Work claimed to be unnecessary or unrelated to case

*Rule 26(a)(1) disclosures.* The Court overrules defendants' objection to the 51.25 hours Gorman spent preparing plaintiff's Rule 26(a)(1) disclosures. Gorman has adequately justified the time she spent on this work. *See* Gorman Reply at 4. This was a highly complex case that included numerous witnesses—Gorman identified 76 in the Rule 26(a)(1) disclosures—and a large quantity of relevant documents. Given the requirement under the Rule to not only identify witnesses and produce documents, but also describe the subjects of the identified witnesses' testimony, spending essentially a full week on the disclosures was reasonable.

*Preparation of amended, second amended, and third amended complaints.* Fields's original complaint was filed *pro se.* Gorman claims 130 hours for preparation of the amended complaint that she prepared and filed after she came into the case (including 20 hours for "researching the defendants"); 44.25 hours for preparation of the second amended complaint; and 29.5 hours for the third amended complaint. Defendants argue this time was excessive and seek a 60 percent reduction.

Gorman has provided a sufficient justification for what might appear, at first blush, to be an unusually large amount of time for preparation of the first amended complaint. *See* Gorman Reply at 2-3. Gorman was called upon to revise a *pro se* complaint that was nearly 80 pages long with 18 claims and 30 defendants. Both good

lawyering and compliance with Federal Rule of Civil Procedure 11 reasonably required an extensive amount of work to assess which claims should be maintained against which defendants. Gorman has explained in detail the work she and co-counsel did in this regard, and the explanation is sufficient to overcome the defendants' objections.

By contrast, Gorman has not explained the time needed to prepare the second and third amended complaints. To be sure, some work was required to deal with arguments made on motions to dismiss and conforming the pleadings to the evidence, but the total Gorman claims for this work is unreasonable. The Court reduces by one-half the time sought by Gorman for these tasks, cutting 37.25 hours of her time.

*Plaintiff's response to motion to dismiss.* Defendants argue that the 69 hours that Gorman spent responding to their motions to dismiss is excessive. The Court disagrees. The response was 29 pages long and was largely successful in sustaining Fields's key claims against the core defendants. Spending a week and a half on this was not unreasonable.

*Plaintiff's summary judgment motion on Monell claim.* Fields filed his own motion for summary judgment relating to liability on his *Monell* claim. This motion lacked merit and should not have been filed; the Court dealt with it in a single paragraph in its opinion on summary judgment because its lack of merit was so apparent. In her reply filed on the fee petition, Gorman contends that the summary judgment motion was later used as the response to defendants' own motion for summary judgment on the *Monell* claim. Even if true, that would not warrant compensation for all of the time spent on Fields's own summary judgment motion, or anywhere close to it; for example, a good deal of time necessarily was spent on Fields's opening Local Rule 56.1 statement,

which was required only because Fields affirmatively moved for summary judgment. That aside, this justification does not fly; the opening memorandum in support of Fields's summary judgment motion and his later response memorandum on defendants' motion do not bear a close resemblance.  And Gorman separately charged some 70 hours of time on responding to defendants' summary judgment motion, together with several dozen hours charged by associates.  The Court disallows the time spent on Fields's summary judgment motion, 335 hours for Gorman, 56.25 hours for Bleifuss, 5.5 hours for Matuzak, and 4 hours for Goodman.

*Time spent by Gorman on fee petition.*  Defendants object to 45 hours claimed by Gorman preparing her affidavit in support of the current fee petition and putting together her time records.  The Court agrees that the time is excessive, but not to the extent defendants claim.  The Court reduces this time by half, to 22.5 hours.

*Time spent related solely to claims against state's attorney defendants.*  The Court agrees with defendants that time spent by Gorman and Bleifuss that relates exclusively to claims against the state's attorney defendants, against whom Fields did not prevail, is not properly compensable.  In their response, defendants state that this involves 24.25 hours of Bleifuss's time and 10.75 hours of Gorman's.  Defs.' Resp. at 7. But the exhibit they cite in support, a spreadsheet purporting to list "work solely against defendant CCSAO," Defs.' Resp., Ex A3 (dkt. no. 1213-2, p. 19 of 54), lists only 14.75 hours of Bleifuss's time and 1.75 hours of Gorman's time.  The Court will reduce the fees only by that amount, not the larger and unsupported amount claimed in the text of defendants' response.

*Certain motions in limine.*  Before the 2016 trial, Fields filed but then, after oral

argument, withdrew a number of motions *in limine* concerning the non-*Monell* claims. Defendants argue the time spent on these motions should be excluded, a total of 131.75 hours. Though Fields ultimately withdrew the motions, they involved significant points that were appropriately aired, including at least some on which the Court ultimately ruled in Fields's favor. The Court declines to exclude this time. *Cf. Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) ("That the lawyers spent some time in blind alleys is irrelevant; this is inevitable . . . .").

*Motion for sanctions relating to state's attorney's document production.* Fields's attorneys claim about 300 hours in connection with their filing of a motion for sanctions relating to production of certain documents by the City of Chicago and the Cook County State's Attorney's Office. The motion was ultimately withdrawn. That by itself would not warrant excluding the time, as discussed in the previous paragraph. But this motion is not similar to the withdrawn motions *in limine*. The sanctions motion was premised on significantly overblown contentions, and in the Court's view it lacked any conceivable merit and should not have been filed. Fields argues that the motion was withdrawn only after defendants entered into a stipulation regarding the circumstances of production of the state's attorney's documents. But that misses the point. In filing the motion, counsel took a "shoot first and ask questions later" approach. There is no basis in the record, or for that matter in common sense, to believe that the stipulation could not have been obtained through negotiation, assuming the matter had any appreciable significance to begin with, which is questionable. Although it is true, as Fields argues, that fees may be awarded for losing arguments made in the course of obtaining a win, there is no law that precludes a court from excluding time that was not reasonably spent

13

because it involved meritless, and severable, activity by the side that won. The Court excludes this time: Gorman 12.75 hours; Swaminathan 20.0 hours; Grusin 61.5 hours; Roche 83.0 hours, Pfander 3.25 hours; Art 49.5 hours; and Loevy 80.75 hours.

*Miscellaneous issues regarding Gorman's time.* The Court overrules defendants' objection to time spent by Gorman and the Loevy firm reviewing police department files in 2014. Defendants say this time was not reasonably spent because post-trial motions after the 2014 trial were still pending. But as Gorman and Loevy accurately point out in their replies, if this work had not been done at that time, it would have had to be done, and would have been done, just a few months later, after the Court ordered a new trial, including on the *Monell* claim. The time is properly compensable.

The Court likewise overrules defendants' objection to a relatively small amount of time spent by attorney Bleifuss reviewing materials relating to defendant Murphy's worker's compensation claim. Gorman's reply adequately justifies this time. *See* Gorman Reply at 5.

The time that Gorman spent at an early stage of the case consulting with experienced plaintiff's civil rights attorney Kenneth Flaxman is properly compensable, as is Flaxman's time. It was reasonable for Gorman, at that point a sole practitioner with limited experience in police misconduct litigation, to consult with an attorney experienced in the field.[2]

Finally, part of the time for which Gorman seeks compensation was covered by an award of sanctions against defense counsel arising from the 2014 mistrial. Defense

---

[2] That said, Gorman's need to consult with another, more experienced attorney is further evidence supporting the Court's determination to set a lower hourly rate for her than the $600 rate she requested.

counsel paid that amount, a total of $63,000, plus $5,618 in expenses incurred by the Goodman firm.  The Court will deduct these amounts from the final totals awarded.

### 2.    Staffing levels, inter-attorney conferences, and block billing

Defendants object to the number of attorneys involved in the 2014 and 2016 trials as well as other proceedings; the amount of time apparently charged for inter-attorney conferences and e-mails; and "block billing."  Block billing refers to time entries where an attorney records an overall amount of time for several disparate tasks.  The Court concludes that although none of these individually is problematic, together they warrant an overall percentage reduction of the fees claimed by the Loevy firm.

### a.    Staffing

Fields had three attorneys participating directly in questioning witnesses and making arguments during the 2014 trial.  A fourth, Adrian Bleifuss, also participated, but his time in the courtroom was limited to taking notes.  Defendants argue that Bleifuss's work was unnecessary and not reasonably charged.  The Court disagrees.  Note-taking during a trial is a significant and important function in a case of this complexity.  Among other things, it assists the trial team in doing post-mortems at the end of each trial day and preparing for the trial days to come, and it enables trial counsel to maintain a record of issues that might need to be addressed in jury instructions and post-trial motions. The Court overrules this objection.

During the 2016 trial, Fields had up to seven attorneys and a paralegal in the courtroom each day:  attorneys Jon Loevy, Candace Gorman, Steven Art, Anand Swaminathan, Sam Heppell, Tony Balkissoon, and Katie Roche, and paralegal Sarah Pfander.  Defendants concede that the presence of Loevy, Gorman, Art, Swaminathan,

and Pfander was justified, but they object to the other three. The three attorneys whose billing during the trial period defendants argue was excessive are Heppell, who billed about 241 hours during this period on days when the case was on trial; Roche, who billed 293 hours, and Balkissoon, who billed 269 hours. These three lawyers were in the gallery during all (Roche) or significant parts of the 2016 trial.

Defendants, collectively, had five attorneys and one paralegal present in court daily during the 2016 trial, and a sixth attorney was present from time to time and charged somewhat under 100 hours during the trial. In addition, as Fields points out in his reply and as the Court itself observed, a supervisory-level lawyer with the City of Chicago Law Department was present in the gallery throughout the 2016 trial and consulted with defense trial counsel during breaks.

It is difficult to swallow defendants' contention that Fields significantly overstaffed the trial by having seven lawyers and a paralegal in court, when defendants themselves had the same or virtually the same number of attorneys available. This was a highly complex case that required mastery of an extensive factual record created by, among other things, two state court criminal trials, extensive federal criminal proceedings involving the El Rukn street gang, a seven-day trial in this case that ended in a mistrial, the full sixteen-day trial in 2014, and a massive quantity of documents mustered in preparing Fields's *Monell* claim. And counsel likewise had to master an extensive legal record consisting of numerous written opinions and detailed orders regarding legal, procedural, and evidentiary issues. The Court is persuaded by the Loevy attorneys' explanation that those who were not performing tasks in the courtroom were doing reasonable and necessary work to prepare the front-line lawyers to conduct complicated

witness examinations and deal with evidentiary issues, including conferring with them prior to and during those examinations.  *See* Loevy Reply at 13.

The Court is also unpersuaded that Fields's side regularly overstaffed depositions and status hearings.  First of all, in a case of this complexity, there is nothing in the least bit unreasonable in having a second lawyer present at witness depositions, as Fields did during the discovery phase of the case.  Second, the status hearings in this case were anything but routine events; they frequently involved discussion of significant issues.  From the Court's observation, the less-senior lawyers often participated directly or, if they did not participate directly, conferred with more senior counsel to enable them to deal with the Court's questions.  Defendants themselves typically had three or four lawyers present at each status.

### b.    Attorney conferencing and block billing

Unsurprisingly, the time entries for the Loevy attorneys include many, many entries for discussions and e-mails with other attorneys.  This is to be expected; it was a complex case, and counsel reasonably took a team approach to preparing for and conducting the trial.

The difficulty, however, comes from the combination of the number of attorneys involved (not just those who billed time for the trial, but also several others), the apparent quantity of attorney conferencing, and the use of block billing.  Block billing is not a prohibited practice, but it does not provide the best possible description of attorney time.  *See Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). The key question is whether the time records enable the Court to determine the reasonableness of the time claimed.  *See Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp.

3d 1000, 1024 (N.D. Ill. 2016).

The Court is, on the whole, persuaded that the tasks performed by attorneys at the Loevy firm were done reasonably and that the time claimed for these tasks was not unduly excessive. In this regard, it is worth noting that the Loevy firm first appeared in the case in mid-October 2015, at a point when the case was, at that point, set for trial in mid-May 2016.[3] Getting quickly up to speed in this highly complex case was an enormous undertaking that required mastering the record of a sixteen-day trial as well as a seven-day partial trial; extensive proceedings on summary judgment and motions *in limine*; the record of two state court criminal trials; and a massive discovery record including dozens of depositions, significant document production regarding Fields's claims against the individual officers, and literally hundreds of police, prosecutor, and defense attorney files relating to other criminal cases relied upon to support Fields's *Monell* claim. The Loevy firm attorneys were essentially in a trial-preparation mode the entire time they were in the case, making block billing easier to excuse. *See Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *9 (N.D. Ill. Apr. 16, 2012) ("The five-month period right before trial is unlikely to have involved much wasted time (on either side). The court is therefore inclined to be much more tolerant of time entries for this period that are lacking in specificity."); *see also Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 719 (N.D. Ill. 2016).

But the combination of these factors—the number of attorneys from the Loevy

---

[3] In late March 2016, the Court moved the trial date to early August 2016. The Court was later required, due to late-June back surgery and the anticipated recovery time, to move the date to November 2016. This, however, does not diminish the considerations set forth in the text; counsel still had to work on a hurry-up basis through at least the end of March 2016, and they were still on a short time frame thereafter.

firm involved in the case as a whole (11 who charged significant time), the number of entries relating to conferencing or e-mailing among counsel at the firm, and the fact that block-billed time entries largely do not enable the Court to determine the amount of time spent on these tasks—lead the Court to conclude that a modest percentage reduction in the overall time claimed is appropriate, to account for the likelihood of undue duplication of effort. The Court will reduce the overall attorney time claimed by the Loevy firm by 5 percent after other reductions are applied.

### 3. Administrative tasks

The Court sustains defendants' objection to billing of 234.92 hours by one of attorney Gorman's paralegals for scanning documents. *See Missouri v. Jenkins*, 491 U.S. 274, 288-90 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Gorman's response—the work also involved organizing the documents to upload them to a litigation support database—does not sufficiently explain why this was anything more than a clerical task. The Court eliminates this time.

Defendants also contend that eight attorneys from the Loevy firm have time entries for administrative work. But with one exception, defendants just point the Court to a pile of spreadsheets that include not just these but a mass of other objections. This objection is too perfunctory and is not sufficiently supported. The Court should not have to, and will not, comb through the spreadsheets to try to cull out and then analyze the particular entries that defendants contend involve administrative work. The objection is overruled, except for the one instance that defendants actually describe in their response to the fee petition: the Court eliminates 18.5 hours of attorney Heppell's time

spent on tasks that were, in fact, clerical or administrative in nature.

### 4.      Further adjustments to "lodestar" amount

Fields has not justified an upward adjustment to the fee award that results from calculation of the lodestar amount.  Their argument in support of an increase is perfunctory and not adequately supported, and it is therefore forfeited.  *See* Pl.'s Fee Pet'n at 37-38.  Defendants certainly have not justified any further reductions beyond those the Court has already ordered; the result that Fields obtained was exceptional.

Finally, defendants request a blanket 10 percent reduction of Gorman's time and a blanket 15 percent reduction of Goodman's time, arguing their entries are too vague to permit meaningful review.  The Court disagrees; the time entries are sufficient to permit the Court to determine that the tasks listed were reasonably performed and that the time is reasonably claimed.

## C.      Expenses and costs

### 1.      Taxable costs

Defendants argue that Fields has waived recovery of taxable costs by failing to file a bill of costs within 30 days of entry of the judgment.  This time limit, which is imposed by a local rule of this district, may be excused; in other words, it is not "jurisdictional."  It is appropriate to excuse the time limit here, a highly complex case in which fee-shifting applies and the requested costs were disclosed on the schedule governing submission of attorney's fees and expenses to the Court for its consideration. *See, e.g., NLFC, Inc. v. Devcom Mid–America, Inc.*, 916 F. Supp. 751, 762 (N.D. Ill. 1996).  Defendants are not prejudiced in the least by the supposedly "late" disclosure of proposed taxable costs.

"There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005); *accord, Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2011) (citing *Beamon*). Defendants object to plaintiffs' requested costs for photocopying, and in a one-sentence, small-type footnote, they offer what appears to be a partial objection to some of the requested costs for transcripts of certain depositions and court proceedings.

The Court overrules defendants' objection to charges for printing, copying, and scanning. These amount to a significant sum—just under $50,000—but that does not appear excessive given the massive volume of discovery, documentary evidence, and court filings involved in this highly complex case. The information Fields has provided to justify these amounts is sufficient. *See Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (a party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs."); *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698–99 (7th Cir. 2014) (overruling objection to photocopying costs, citing affidavit attesting that the claimed costs were necessarily incurred; there is no obligation to justify copying costs on a document-by-document basis). The affidavits attesting to the nature of these costs and the other support offered by Fields are sufficient.

The Court overrules defendants' footnote objections to Fields's requested transcript costs and, possibly, to other taxable costs. *See* Defs.' Resp. at 22 n.11, 21 n.10. The objections, which are conclusory and perfunctory, are insufficient to sustain defendants' burden to show that Fields's requested taxable costs are inappropriate.

The Court should not have to comb through not merely defendants' spreadsheets, but also the underlying materials, to flesh out their objections and evaluate them on a transcript-by-transcript basis.

The Court therefore approves the requested costs for printing, copying, and scanning; service of subpoenas and other process; witness fees; and transcripts and court reporter fees.

### 2. Other expenses

The Court overrules defendants' objections to expenses relating to attorney or paralegal use of taxis and Uber rides. The Loevy firm's offices are not located in the Chicago Loop or otherwise within walking distance of the courthouse and other relevant venues, and it was not unreasonable for lawyers to use these forms of transportation to go to and from court, as well as (for example) the Cook County Public Defender's office to review files. The same is true for parking fees charged in connection with court appearances and other case-related travel; these are properly recoverable as expenses under 42 U.S.C. § 1988. The Court has reviewed the justifications for these charges and finds them sufficient.

All expenses for meals must be deducted from the expenses claimed. Fields has made no attempt to justify recovering these as properly recoverable expenses; presumably those involved would have had to eat even had they not been involved in this case. In addition, expenses consisting of reimbursement to plaintiff Fields for out-of-pocket expenses (11/13/2016, $578.81; 11/20/2016, $504.95) likewise have not been justified and must be deducted.

Defendants also object to amounts paid by counsel for expert witness fees. In

*West Virginia University Hospitals v. Casey*, 499 U.S. 83 (1991), the Supreme Court held that 42 U.S.C. § 1988 does not authorize recovery of the fees of expert witness as part of the prevailing party's attorney's fees. *Id.* at 102. Rather, experts are limited to the fees provided by 28 U.S.C § 1920 and 28 U.S.C. § 1821. This is an unfortunate gap in the law that Congress has not plugged since *Casey*, but the Court is bound by the law as it is. None of the later Seventh Circuit cases cited by Fields was a suit under section 1983 in which fees are being sought under section 1988. For this reason, thus the fees for Fields's experts that exceed the ordinary $40-per-day witness fee under 28 U.S.C § 1821(b) must be reduced to that amount. The Court finds that the travel, subsistence, and lodging expenses for the expert witnesses are reasonable and properly recoverable under the law and approves them.

### Conclusion

The Court grants plaintiff's petition for attorney's fees and costs to the extent described in this opinion. The Court awards attorney's fees (including paralegal fees) as follows: $1,900,238.75 for Loevy & Loevy; $3,450,775.00 for the Law Office of H. Candace Gorman; and $220,500.00 for the Law Office of Leonard Goodman. *See* App'x 1 (spreadsheet). Plaintiff's counsel are directed to recalculate recoverable costs and expenses based on the Court's rulings in this opinion and are to provide a revised listing to defendants by no later than January 4, 2018 and to the Court by January 5, 2018. If defendants have any problem with the recalculation, they are to make a written submission to the Court by January 8, 2018.

Date: January 1, 2018

_____

MATTHEW F. KENNELLY
United States District Judge