```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                    Plaintiff,  )  Docket No. 10 C 1168
                                )
             vs.                )
                                )
CITY OF CHICAGO, et al.,        )  Chicago, Illinois
                                )  February 10, 2014
                    Defendants. )  10:00 a.m.


                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:

For the Plaintiff:    LAW OFFICES OF H. CANDACE GORMAN
                         BY:  MS. H. CANDACE GORMAN
                      220 South Halsted Street
                      Suite 200
                      Chicago, Illinois  60661

                      LEONARD GOODMAN LAW OFFICE, LLC
                         BY:  MR. LEONARD C. GOODMAN
                              MS. MELISSA A. MATUZAK
                      53 West Jackson Boulevard
                      Chicago, Illinois  60604

For the Defendant:    DYKEMA GOSSETT PLLC
                         BY:  MR. DANIEL M. NOLAND
                              MR. PAUL A. MICHALIK
                      10 South Wacker Drive
                      Suite 2300
                      Chicago, Illinois  60606

                      COOK COUNTY STATE'S ATTORNEY
                         BY:  MR. STEPHEN L. GARCIA
                      500 Richard J. Daley Center
                      Chicago, Illinois  60602
```

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(847) 373-5598

```
 1      (The following proceedings were had in open court:)
 2           THE CLERK:  Case 10 C 1168, Fields v. City of
 3  Chicago.
 4           THE COURT:  We have to hook Ms. Gorman in by phone, I
 5  guess.
 6           (Brief interruption.)
 7           THE COURT:  So, Ms. Gorman, can you give your name
 8  for the record, please?
 9           MS. GORMAN:  Candace Gorman for Mr. Fields.
10           THE COURT:  Other folks, go ahead.
11           MS. MATUZAK:  Melissa Matuzak for Mr. Fields.
12           MR. GOODMAN:  Leonard Goodman for Mr. Fields.
13           MR. NOLAND:  Dan Noland for the City defendants.
14           MR. MICHALIK:  Paul Michalik for the City defendants.
15           MR. GARCIA:  Stephen Garcia for defendants Wharrie
16  and Kelley and Cook County.
17           THE COURT:  Okay.  Just so you know, if we get into
18  anything substantive that Ms. Gorman is going to need to hear,
19  the only way she hears you is if you're in front of that
20  microphone because it's all piping through that.
21           So there's a motion that was noticed up for, I don't
22  know if was today or for later in the week, whatever, to file
23  a surreply.  I guess it's noticed up for, like, Thursday.
24           MR. GARCIA:  I think it's for Thursday, your Honor.
25           THE COURT:  Yes, that's granted.  So I don't need to
```

1　hear any more argument on the motion.  It started out as a
2　motion for default and sort of morphed into various other
3　things.
4　　　　　So, first of all, the motion for default, strictly
5　speaking, has been withdrawn.  That's document number 433.
6　And the reason it was withdrawn is that it became apparent
7　that the claim on which the default had been sought had itself
8　been withdrawn at some point earlier.  And so then what it
9　kind of morphed into was a motion or a request to re-add a
10　Monell policy claim against the county, a Brady claim
11　essentially, Brady v. Maryland claim.  And then
12　correspondingly that was a piece, although a fairly small
13　piece, frankly, of the plaintiff's motion for partial summary
14　judgment, which at the time it was filed sought summary
15　judgment on essentially a nonexistent claim that had been
16　withdrawn from the case.
17　　　　　So there has been discussion back and forth, and I
18　don't know, it's up to four briefs or maybe five at this point
19　out, how that should all be handled.  And my conclusion is
20　that an amendment at this point would be futile.  You know,
21　it's not up to me to decide what the law ought to be in this
22　area.  It's up to me to decide what the law is, and this is
23　one area of the law in which there is absolutely binding
24　authority from the Seventh Circuit.
25　　　　　The more recent case is Hernandez v. Joliet Police

1  Department, 197 F.3d 256, decided in 1999. And the essence of
2  it is that, first of all --
3      And there's references to I think a couple of
4  decisions by the Illinois Supreme Court on this, the names of
5  which escape me.
6      The essence of it is that, first of all, the State's
7  Attorney is not really the county when you are dealing with
8  something like this; it's the State's Attorney's Office. And
9  so there wouldn't be any basis for a suit against the county.
10     And then, secondly, the state's attorney, when acting
11 in his capacity as a prosecutor, is considered under Illinois
12 law to be not a county official but a state official. And as
13 a result of that, a state's attorney is entitled to immunity
14 under the Eleventh Amendment in a lawsuit for damages. And
15 like I say, it's not up to me to decide whether that ought to
16 be the law or not; it is the law. And so I'm denying leave to
17 amend because the amendment would be futile.
18     And to the extent that there is anything left of the
19 motion for partial summary judgment by the plaintiff, it's
20 denied. But that motion I think I already actually terminated
21 as a result of the other rulings. So that is that.
22     So I know, because I looked at the docket in the
23 Seventh Circuit, apparently they had a little bit of trouble
24 getting something on file last week. Have you gotten them on
25 file yet?

1    MR. GARCIA:  We filed it on Friday morning --
2    THE COURT:  And, of course, you don't have any clue
3 as to how long that's going to take them to rule?
4    MR. GARCIA:  I don't, Judge.
5    THE COURT:  So I guess, you know, at this point we
6 have to contemplate the possibility that the trial on the 10th
7 of March is going to be going ahead before the Seventh Circuit
8 has dealt with that motion, and as a result, it's not going to
9 be a trial that involves the two former state's attorney
10 defendants.  So I just wanted to make sure that's all out on
11 the table.
12    I couldn't figure out, frankly, because the docket in
13 the case is so darned long, whether I had set a date for the
14 final pretrial order.  I haven't?
15    MS. GORMAN:  You have not.
16    THE COURT:  Okay.  We probably don't have a date for
17 the final pretrial conference either.
18    MR. MICHALIK:  We do not.
19    THE COURT:  So the trial is starting on the 10th of
20 March.  I need the final pretrial order.  The due date for
21 that is going to be the 3rd of March.  And I'm going to set
22 the final pretrial conference for the 6th of March at 3:00 in
23 the afternoon.
24    So if you go on my web page, there's more details
25 about motions in limine, but I will just sort of give you the

1  executive summary.  The procedure is motions in limine are due
2  14 days before the pretrial conference, and responses are due
3  seven days before the pretrial conference.  There's some page
4  limits on motions in limine, and there's some what I will call
5  sort of quasi "meet and confer" requirements so that I don't
6  get a bunch of boilerplate stuff that people haven't talked
7  about.  In other words, there is essentially a requirement
8  that you ascertain that the other side is actually going to
9  offer the evidence that you're trying to exclude before you
10 spend the time and effort on a motion asking to exclude it.
11         I don't know if people have any kind of a clue at
12 this point as to -- it doesn't matter because I've got enough
13 time set aside, but I would just kind of like to know any kind
14 of a clue as to how long you think the trial is.
15         MS. GORMAN:  I'm guessing two weeks.
16         THE COURT:  Okay.
17         MR. NOLAND:  Possibly three.
18         THE COURT:  Let's assume for the moment that it
19 doesn't involve the state's attorney defendants, although my
20 guess is they're going to show up as witnesses one way or
21 another for one side or another.  Do you think more than two?
22 My guess is we could probably get it done in two, but we might
23 not, so it's probably right around the times you're talking
24 about.
25         MR. NOLAND:  The certificate of innocence, I guess,

1  trial hearing took I think eight days of testimony plus an
2  evidence deposition or two plus a lot of argument, so really
3  ten days.
4      THE COURT:  Okay.  Well, that's a reasonable
5  surrogate, I guess, in terms of --
6      MR. NOLAND:  Well, none of our clients were called.
7  None of the individual defendants were called.  So that's why
8  I think it's going to be longer.
9      THE COURT:  So who were the witnesses in that thing?
10 Was it mostly the people like Hawkins and those guys?
11     MR. NOLAND:  It was --
12     MS. GORMAN:  Yes.
13     MR. NOLAND:  It was Mr. Fields, Sandra Langston,
14 Derrick Kees, several El Rukn witnesses.
15     THE COURT:  Yes, okay.
16     MR. NOLAND:  There was a former state's attorney.
17     THE COURT:  Which one?
18     MR. NOLAND:  Bill Hogan testified.  State's Attorney
19 Jack Hynes, the felony review.
20     THE COURT:  Okay, got it.
21     MR. NOLAND:  Bill Hogan testified.  There was an ATF
22 agent who testified.  All the overhears and the Title IIIs
23 take time.
24     THE COURT:  Yes.  It's going to take more than two
25 weeks.  And, quite honestly, the odds are that you are going

1  to get some time limits from me.
2         So here's what I want to do in the short run.  Let me
3  just think this through here.
4     (Brief interruption.)
5         THE COURT:  You know, this is going to probably mess
6  up your thinking a little bit on the final pretrial order, but
7  what I'd like to get from you -- today is the 10th.
8         What I'd like to get from you by the 24th -- and it
9  can just be in the form of letters.  What I'd like you to do
10 is just sort of set out for me these are the witnesses that I
11 plan to call in my case in chief, and this is how long I think
12 my direct examination is going to take of each one of them.
13        Now, that's going to require you to do some talking
14 before that because each side -- you know, the defendants are
15 going to need to know who the plaintiff is planning to call in
16 their case, and vice versa in case there's a rebuttal case.
17 And I'm not --
18        What I will do with that -- and I probably have done,
19 you know, 10 or 12 cases now where I have had time limits -- I
20 just try to get from that, plus I think I got a pretty good
21 sense of what the case involves from dealing with all the
22 summary judgment materials, a reasonable estimate of what it
23 ought to take to try the case.  I will enter an order saying
24 these are your time limits and, you know, come argue if you
25 think you need more.

1 So if you can get me that by the 24th, and like I
2 say, it can just be -- you can just send letters over to
3 chambers, and copy each other, obviously.
4 MR. NOLAND: How does the Court usually handle if
5 they call some of our clients?
6 THE COURT: Yes. So the deal is going to be -- I
7 mean, I'm going to exercise my authority under whatever
8 subpart of 611 it is -- that once a witness is on the stand,
9 they're on the stand for all purposes. There's not going to
10 be any restriction on scope of cross. And the only way
11 somebody would get recalled is if there was something that
12 came up after that witness was done that people couldn't
13 anticipate that requires them to be recalled. So, generally
14 speaking --
15 So, for example, if the plaintiff calls the
16 defendants in the plaintiff's case, you're going to do your
17 whole examination of the defendant when he or she -- I guess
18 they're all he's in this case -- he is up there on the witness
19 stand. So that will give you a sense of that.
20 So, Ms. Gorman, is there anything you can think of
21 that you want to bring up?
22 MS. GORMAN: Yes, your Honor. The file cabinets in
23 the basement at 51st and Wentworth, you reserved that issue in
24 the past, and I guess my question is --
25 THE COURT: Well, when you say "that issue," you

1  know, what I said I think in probably a footnote in the
2  summary judgment ruling is I reserved the issue of the
3  admissibility of it.  Is that what you're talking about, or is
4  there some issue, other issue, that I reserved that you wanted
5  me to address now?
6         MS. GORMAN:  You reserved the admissibility about the
7  names of the victims.  That's the whole issue of --
8         THE COURT:  Yes, that's part of what I was referring
9  to in the footnote.
10         MS. GORMAN:  That's what you were referring to?
11         THE COURT:  Yes.
12         MS. GORMAN:  Okay.  But we also have the issue of all
13  of the file cabinets in the basement that I think are also
14  pertinent to the Monell claim.
15         THE COURT:  Yes, I understand.  I know that there's a
16  bunch of file cabinets in the basement.
17         When I'm saying, what's the issue you want me to
18  address, you need to be way more specific than that.
19         MS. GORMAN:  Well, I'm just wondering what other
20  relief we can get regarding those cabinets.  We weren't
21  allowed to go through any of those other cabinets.
22         THE COURT:  Well, so, you know, kind of the way this
23  works is if you want something, you ask; the other side
24  responds to it; and then I rule.
25         MS. GORMAN:  Okay.

1  THE COURT: I wouldn't be waiting too long to do
2  that.
3  MS. GORMAN: Got you.
4  THE COURT: You know, I know that there was a lot of
5  stuff said about that. A lot of it's a good long time ago. I
6  have a decent sense of what was said but not all the details,
7  and so you're just going to -- you know, if nothing else,
8  you're going to need to refresh my memory on some of the
9  particulars.
10 MS. GORMAN: One of the things you said --
11 THE COURT: I actually didn't mean right now.
12 MS. GORMAN: Okay.
13 THE COURT: I meant in whatever you file.
14 Well, I think if you go back when you talk about the
15 issue that I told you not to bring up again, I think there was
16 a sanctions request, and I think that's what I was referring
17 to. I could be wrong, but I think that's what I was referring
18 to when I talked about that.
19 MS. GORMAN: Okay.
20 THE COURT: And the second thing that I said was, you
21 know, what you --
22 One of the motions that you had filed, and the main
23 thing you were asking for, at least in my perception at that
24 point in time -- I think this was even the title of the
25 motion -- was you wanted to broadcast the names.

1  MS. GORMAN:  Correct.

2  THE COURT:  That was the thing I said to stop
3  bringing up, and I still think that, okay.  And that's a
4  different issue as to whether something is admissible at
5  trial.  And if something comes in at a trial that maybe a name
6  comes out -- but that's not what you were talking about at
7  that point.  You wanted to -- I don't know -- figuratively
8  speaking, take out an ad somewhere and say, here's all the
9  files I found in the basement, you know, come tell me what you
10 didn't get.  So that's not what we're talking about now.
11 We're talking about a trial that's going to start in four
12 weeks.  Okay.

13 MS. GORMAN:  Correct.

14 THE COURT:  So you need to focus on that.

15 Anything else that anybody wants to bring up who is
16 here?

17 MR. NOLAND:  Judge, I think I would be remiss if I
18 just didn't -- it would be our view that the issue with the
19 county and the issue with the City, there's going to be
20 tremendous overlap if, in fact, there ever is --

21 THE COURT:  So if I have to try the case twice, then
22 I have to try the case twice.  I can't control what they do on
23 the 27th floor of this building and how quickly they do it.

24 And, you know, if somebody wants to come in and file
25 a motion saying, you know, I would be unfairly prejudiced if

1   you tried this case, you know, in two parts, if that's what
2   ends up happening, then please file that motion and explain to
3   me why you think that, and I will consider it, obviously, and
4   I will deal with it.  And that goes for anybody involved in
5   the case on any side of it.
6          But as of right now, I mean, I've had this trial date
7   set for a long, long time, and I'm planning to go ahead with
8   it unless and until I decide otherwise.
9          So the way people get judges to decide things is they
10  file motions.
11         Mr. Goodman.
12         MS. GORMAN:  Your Honor, one other issue is Randy
13  Langston.  We need an order to bring him into Court for the
14  hearing.
15         THE COURT:  So what you are going to need to do is
16  you need to file a motion for writ of habeas corpus ad
17  prosequendum.  You need to give me along with that two things.
18  Number one -- and the format of these, somebody -- I'm
19  guessing you guys might have it.  Mr. Noland might have it.
20  He's nodding his head.  There is an order that I have to sign,
21  and then there is a writ that the clerk signs.  And, you know,
22  you can probably get the format for Mr. Noland and just fill
23  in the names.  But, again, don't wait too long to do that
24  because it has to go from me to the Clerk's office to the
25  Marshals Service to the Illinois Department of Corrections,

1 and we just need to make sure that there is enough time in
2 there to get all that done.
3     And particularly if he is downstate, what they
4 typically do is bring him up to a more nearby prison like
5 Stateville typically, you know, right before the date.
6     MS. GORMAN: And it looks like he's already still up
7 this morning, and it looks like he's in Kane County because of
8 his testifying.
9     THE COURT: Oh, he's a protected person. No?
10     MS. GORMAN: No.
11     THE COURT: Okay. You're telling me more than I need
12 to know right now because I have got 24 jurors waiting to come
13 into the courtroom.
14     MS. GORMAN: Okay, sorry.
15     THE COURT: Okay. Mr. Goodman.
16     MR. GOODMAN: I wanted to see if I could get a little
17 clarification on one issue with respect to paying witnesses.
18 And in your discussion, the first part of your discussion on
19 that issue, it seemed like we were not sufficiently clear in
20 laying out the issues, and so I just wanted to be heard very
21 briefly on that, if I may.
22     THE COURT: File a motion. It's called a motion to
23 reconsider. I'm not going to deal with it on the wing, on the
24 fly. I'm not going to do it.
25     MR. GOODMAN: Okay.

1     THE COURT: Okay. So get me what you're going to get
2 me by the 24th. Then we have got the dates for the final
3 pretrial order and the final pretrial conference. Take care.
4     MR. NOLAND: Thank you, your Honor.
5     MR. MICHALIK: Thank you, your Honor.
6     MS. GORMAN: Thank you.
7   (Which were all the proceedings had in the above-entitled
8 cause on the day and date aforesaid.)

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

*/s/ Laura M. Brennan*             November 7, 2017

Laura M. Brennan
Official Court Reporter             Date
Northern District of Illinois