1   IN THE UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF ILLINOIS
2   EASTERN DIVISION

3

4   NATHSON E. FIELDS,                    )

5                    Plaintiff,           )   Docket No. 10 C 1168
                                          )
6             vs.                         )
                                          )
7   CITY OF CHICAGO, et al.,              )   Chicago, Illinois
                                          )   February 26, 2014
8                    Defendants.          )   9:40 a.m.

9                    TRANSCRIPT OF PROCEEDINGS
10  BEFORE THE HONORABLE MATTHEW F. KENNELLY

11  APPEARANCES:
12

13  For the Plaintiff:    LEONARD GOODMAN LAW OFFICE, LLC
                          BY:  MS. MELISSA A. MATUZAK
14                        53 West Jackson Boulevard
                          Chicago, Illinois   60604
15

16  For the Defendant:    DYKEMA GOSSETT PLLC
                          BY:  MR. DANIEL M. NOLAND
17                             MR. TERRENCE M. BURNS
                          10 South Wacker Drive
18                        Suite 2300
                          Chicago, Illinois  60606
19

20

21

22

23

24        LAURA M. BRENNAN - Official Court Reporter
          219 South Dearborn Street - Room 2102
25             Chicago, Illinois  60604
                    (847) 373-5598

1      (The following proceedings were had in open court:)

2          THE CLERK:  Case number 10 C 1168, Fields v. City of

3   Chicago.

4          THE COURT:  Good morning.

5          MS. MATUZAK:  Good morning, your Honor; Melissa

6   Matuzak on behalf of Mr. Fields.

7          MR. NOLAND:  Good morning, your Honor; Dan Noland for

8   the City defendants.

9          MR. BURNS:  Good morning, your Honor; Terrence Burns

10  appearing on behalf of the City plaintiffs.

11         THE COURT:  Okay.  And I know it wasn't just this

12  motion; there's another couple that are noticed up for next

13  week, so I pulled them all out.  And I just wanted to sort of

14  talk it through with you in terms of logistics and whatnot.

15  And I guess this is less of a problem for the one that the

16  plaintiff filed involving Mr. Langston than it is for at least

17  one of the ones that the defendant filed, which is for

18  Mr. Nieto, N-i-e-t-o.

19         So my understanding of the practice when it relates

20  to IDOC, and you probably know this, too, is that it

21  depends -- whether they bring the person in to a closer-by

22  institution, typically Stateville, largely depends on where

23  the person is housed.

24         So if they're at Dixon, for example, and I had this

25  just happen the other week, they don't bring them to

1    Stateville.  They'll schlep them the three hours from Dixon

2    back and forth.  If they're coming from other places which are

3    farther away, depending on how far they are away, they will

4    schlep them to Stateville.

5           Now, I gather there's an exception for this one guy

6    because of the circumstances of his confinement, which I get,

7    and however they want to do it is fine.  But that leads to the

8    other question, and; that is, we've got to guess right on the

9    date.

10          And I just want to make sure you're sure that you're

11   guessing right because, particularly on that one guy, if the

12   idea is they're going to leave at 2:00 in the morning and

13   probably get back at 2:00 the next morning to wherever it is

14   they're going and coming from, you know, and he's only going

15   to -- and you're only wanting to have him here one day, we

16   have got to guess right.

17          So I don't remember what the date was.  I didn't

18   print out everything, just the motion.

19          MR. NOLAND:  We guessed Thursday, the 20th, which

20   would be --

21          THE COURT:  For both of them or just the one?

22          MR. NOLAND:  We did it for both of them, yes, for the

23   one who we were -- had been requested just to come in for the

24   day, we had suggested 9:45 a.m. because he had, you know --

25   they explained that they could leave early in the a.m. and get

1  him here.

2       THE COURT:  Right.

3       MR. NOLAND:  He did testify before Judge Biebel.  I

4  think he was on and off, both direct and cross, within an

5  hour.

6       THE COURT:  Okay.  All right.  Do you think they

7  guessed right?  I have no idea.  I have not seen any of the

8  stuff that I asked you to give me yet.  You have seen some of

9  it between the two sides.

10      MS. MATUZAK:  Right.  And we are actually -- I think

11  this afternoon we'll have a better -- we will have a better

12  idea.

13      THE COURT:  Should I hold off on this for a couple of

14  days maybe?  I mean, they need notice, but they don't need

15  three weeks' notice.  So maybe I should hold --

16      When do I have you -- I don't have you coming in

17  until next Thursday.  Maybe I should continue these motions

18  to, like, Monday after we get a little bit better picture of,

19  you know, who is what and who is calling whom.  And then we

20  can try to revisit the dates.  And if you need -- you will

21  know better than me.  If you need to readjust it, we can

22  readjust it.

23      Does that make sense?

24      MS. MATUZAK:  Yes, that's a good idea.

25      MR. NOLAND:  Yes.

1       THE COURT:  On the guy who is at Kane County, that's

2    Mr. Langston, so he's an IDOC person who has been writted to

3    Kane County?

4       MS. MATUZAK:  Yes.

5       THE COURT:  Have you talked to them, to anybody at

6    Kane County, about how he's going to get here?

7       MS. MATUZAK:  No.  And --

8       THE COURT:  Because I can just sort of anticipate the

9    problems.  Kane County is going to say, he's not our guy.

10   IDOC is going to say, we're not able to transport him.

11      MS. MATUZAK:  Well, my understanding --

12      THE COURT:  It's going to be one of these

13   bureaucratic things where everybody points to everybody else.

14      MS. MATUZAK:  And I have been trying to figure this

15   out.  My understanding from looking at Pacer is that Mr.

16   Langston is actually in federal custody.

17      THE COURT:  Oh.

18      MS. MATUZAK:  That's why he's at Kane County because

19   he had a violation of his supervised release.

20      THE COURT:  Oh, so he's got a supervised release

21   thing going on.

22      MS. MATUZAK:  Right.

23      THE COURT:  Oh.

24      MS. MATUZAK:  It appears that he does have a pending

25   violation in front of Judge Gettleman.

1      THE COURT:  So he's in the Kane County jail because
2   we have contracts with all sorts of jails, but he's a federal
3   prisoner.
4      MS. MATUZAK:  I believe -- yes, that is my
5   understanding.
6      THE COURT:  Do you have reason to think that is
7   wrong?
8      MR. BURNS:  No, that's correct, your Honor.  He's in
9   federal -- in violation.
10     THE COURT:  All right.  So then that writ --
11     Okay, here is my advice to you then.  I would talk to
12  the marshal, U.S. Marshal.  Good luck getting through to
13  somebody.  Okay, but you have time.  I will give you some time
14  to do that.  And figure out whether you need to tweak the
15  order and the writ to say the U.S. Marshal or the U.S. Marshal
16  and/or the Kane County Sheriff's Office or whatever.
17     So the way that people get in from these outlying
18  jails, the marshal -- they're brought in.  It's part of the
19  contract the marshal has with them, that the jail does the
20  transporting.  So if I'm down in the basement, I see a bus
21  from Kane County, I see a couple of buses from Kankakee and so
22  on.  In terms of where a writ goes, it's less clear.
23     MS. MATUZAK:  Okay.
24     THE COURT:  So you just need to sort of run that
25  down.  I mean, make sure you tell them that he's a witness in

1  a civil case, he's a federal prisoner, he's in the Kane County

2  jail, Judge Kennelly wants to know who to send the writ to.

3          And we'll probably backstop it, too, from our end,

4  but it would be better if you sort of ran it up the flag pole

5  in advance.

6          MS. MATUZAK:  No problem.

7          THE COURT:  Okay.  Anything else?

8          So other than coming back Monday to just sort of deal

9  with the dates, is there anything you want to talk about today

10 at all?

11         MR. BURNS:  Not at this time, Judge.

12         THE COURT:  Monday at 9:30 then.

13         MR. BURNS:  Thank you.

14         MS. MATUZAK:  Thank you.

15         MR. NOLAND:  Thank you.

16         THE COURT:  Thanks.

17         MR. NOLAND:  Judge, there was one thing.  The

18 responses to motions in limine are due tomorrow.

19         THE COURT:  Equal length of the original filings.

20         MR. NOLAND:  And would there be any chance we could

21 have until Friday on this?

22         THE COURT:  No, because given the length of the

23 original filings, I've got a lot of reading to do, so no

24 chance.  Sorry.

25         MR. NOLAND:  Thank you, your Honor.

1    MS. MATUZAK:  Thank you.

2    (Which were all the proceedings had in the above-entitled

3    cause on the day and date aforesaid.)

4

5

6    C E R T I F I C A T E

7

8    I hereby certify that the foregoing is a true and

9    correct transcript of the above-entitled matter.

10

11

12   */s/ Laura M. Brennan*                    November 8, 2017

13

14

15   _____          _____
     Laura M. Brennan
16   Official Court Reporter                    Date
     Northern District of Illinois
17

18

19

20

21

22

23

24

25