```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                Plaintiff,      )   Docket No. 10 C 1168
                                )
          vs.                   )
                                )
CITY OF CHICAGO, et al.,        )   Chicago, Illinois
                                )   June 2, 2011
                Defendants.     )   10:10 a.m.


                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:    LAW OFFICES OF H. CANDACE GORMAN
                          BY:  MS. H. CANDACE GORMAN
                      220 South Halsted Street
                      Suite 200
                      Chicago, Illinois  60661

                      LEONARD GOODMAN LAW OFFICE, LLC
                          BY:  MR. LEONARD C. GOODMAN
                      53 West Jackson Boulevard
                      Chicago, Illinois  60604

                      LAW OFFICE OF MOLLY ARMOUR
                          BY:  MS. MOLLY ARMOUR
                      4050 North Lincoln Avenue
                      Chicago, Illinois  60018


For the Defendant:    DYKEMA GOSSETT PLLC
                          BY:  MR. DANIEL M. NOLAND
                      10 South Wacker Drive
                      Suite 2300
                      Chicago, Illinois  60606
```

```
 1                    COOK COUNTY STATE'S ATTORNEY
                      BY:  MR. STEPHEN L. GARCIA
 2                    500 Richard J. Daley Center
                      Chicago, Illinois
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24         LAURA M. BRENNAN - Official Court Reporter
             219 South Dearborn Street - Room 2102
25                  Chicago, Illinois  60604
                       (847) 373-5598
```

1  (The following proceedings were had in open court:)
2  THE CLERK: 10 C 1168, Fields v. City.
3  THE COURT: Good morning.
4  MS. ARMOUR: Good morning, your Honor.
5  MS. GORMAN: Good morning, your Honor; Candace Gorman
6  for plaintiff.
7  MR. GOODMAN: Leonard Goodman and Molly Armour.
8  MR. NOLAND: Good morning, your Honor; Dan Noland for
9  the City defendants.
10  MR. GARCIA: Good morning, your Honor; Stephen Garcia
11  for the State's Attorney defendants.
12  THE COURT: Okay. So I think we wanted to talk about
13  a discovery schedule. Have you discussed that amongst all of
14  you?
15  MS. GORMAN: We have, your Honor.
16  MR. NOLAND: Yes, your Honor, we have talked about
17  it. We think we're going to ask for some period of time on
18  the case. This is --
19  THE COURT: You're obviously going to ask for some
20  period of time unless we're going to try it tomorrow.
21  MR. NOLAND: We were going to suggest May 2012, your
22  Honor, if I could explain.
23  THE COURT: May 2012 to conclude what?
24  MR. NOLAND: Close of fact discovery.
25  MS. GORMAN: That's their suggestion, not ours.

| | |
|---|---|
| 1 | THE COURT: I understand. |
| 2 | Before we get to the explanation for yours, what is |
| 3 | your proposal? |
| 4 | MS. GORMAN: We thought six to nine months would be |
| 5 | sufficient for discovery. |
| 6 | THE COURT: So if I took the high end of -- |
| 7 | The low end of that would be the 1st of December, and |
| 8 | the high end of that would be the 1st of March, and your date |
| 9 | was May the how many? End of May? |
| 10 | MR. NOLAND: End of May 2012. |
| 11 | THE COURT: Okay. So tell me your reason. |
| 12 | MR. NOLAND: Your Honor, I don't think any wrongful |
| 13 | conviction allegation case is a simple case. This case has a |
| 14 | couple added wrinkles. One, there is a touch of Greylord |
| 15 | involved in this case; and there is a touch, of course, of the |
| 16 | El Rukn investigation involved in this case. And there's |
| 17 | going to be -- |
| 18 | We have begun the document gathering process. |
| 19 | THE COURT: By touch of Greylord, you mean it is the |
| 20 | Judge Maloney aspect. |
| 21 | MR. NOLAND: Yes, your Honor. |
| 22 | THE COURT: It's more than a touch. |
| 23 | MR. NOLAND: Exactly. And I know you're familiar |
| 24 | with the complaint. We have those allegations. |
| 25 | We have begun the document gathering process. I |

1  think there's going to be certain challenges with respect to
2  that.  I think there's going to be certain challenges with
3  respect to finding just the witnesses in the underlying case
4  strewn throughout the country or in the prison system.
5         THE COURT:  In countries, in probably a lot of them
6  or some of them.
7         MR. NOLAND:  And I don't think it's going to be
8  simple at all.  And just based on our experience in these
9  types of cases, that's our suggestion of a realistic fact
10 discovery cutoff date, not to mention that there's the issue
11 of the State's Attorney defendants who have the interlocutory
12 appeal, and that is a result of the stay.
13        THE COURT:  I'm glad you brought that up because
14 let's assume that the interlocutory appeal is won by the
15 State's Attorney defendants.  I mean, basically they would be
16 in the positions if they had never been sued to begin with.
17 Would they still be deposed?  They're always deposed in these
18 cases, right?
19        MR. GARCIA:  That's correct, your Honor, but as I've
20 explained in a number of other cases -- I don't know that I've
21 had one in front of you so far -- the scope of inquiry would
22 be different, depending upon whether they're a defendant or
23 not a defendant.
24        THE COURT:  Flesh that out for me.
25        MR. GARCIA:  For instance, the deliberative process

1  privilege.  A number of questions can be asked about why you
2  talked --
3          THE COURT:  The deliberative process privilege might
4  not apply if they're actually in the case as defendants.
5          MR. GARCIA:  Correct.
6          THE COURT:  Ah, okay.  And is there a briefing
7  schedule yet upstairs?
8          MR. GARCIA:  Yes.  Our brief is due the 14th of June.
9  And going out from there, I can't remember the other dates.
10         THE COURT:  So you're talking about an argument date
11 in the fall --
12         MR. GARCIA:  Probably August, September.
13         THE COURT:  -- probably.
14         Okay.  Ms. Gorman, what are your thoughts about the
15 discovery period?
16         MS. GORMAN:  Your Honor, I've talked with the State's
17 Attorney, and they're agreeing to let me come and view the
18 documents --
19         THE COURT:  Look at the file.
20         MS. GORMAN:  -- without a subpoena or anything.
21         And they're going to make those available in the next
22 two weeks.  So I don't know what we're going to do about the
23 depositions.  I think we're going to wait to see what happens
24 with the appeal before we take State's Attorneys depositions.
25         THE COURT:  But you wouldn't necessarily have to put

1 all the depositions on hold.

2 MS. GORMAN: No.

3 THE COURT: Oftentimes in these sorts of cases, you
4 have to depose some of the witnesses in the underlying case
5 and, you know, those don't necessarily have to wait.

6 I will tell you what my concern is about giving you
7 right now as your first date out of the box a year. In 11
8 months you're going come back and say, we have gotten four
9 depositions done, because there was all of this lead time.
10 And, you know, I guess what --

11 And I'm not just talking about my life as a judge,
12 but what life before taught me is that the longer you set out
13 the deadline, the more likely it is that there's going to be a
14 lot of dead time before the deadline starts. Lawyers, like
15 everybody else, when the thing's staring you in the face, you
16 make things happen. So what I am inclined to do is give you a
17 date, give you a March 1 date, which is nine months.

18 I understand -- and I don't know as I sit here what
19 the number of witnesses are in the 26(a)(1s) and what the
20 number of witnesses are that will likely have to be deposed,
21 and I don't know exactly when the Seventh Circuit is going to
22 decide the interlocutory appeal. There is no -- I have no
23 control over that. So, I mean, I allow for the possibility
24 that I might have to move that date, but I'd rather have you
25 have a shorter date than a longer date at the beginning just

1 because I think it kicks things into gear quicker.
2     MS. GORMAN: Thank you, your Honor.
3     THE COURT: The fact discovery is to close on the 1st
4 of March of 2012.
5     I'm going to worry about expert dates later. I mean,
6 I know we're going to have to have them, but I think it makes
7 sense to wait a little while. You will have a better sense
8 once you get more into the documents what types of experts
9 you're going to need to have. And we can talk about that when
10 we get farther along.
11     So other than giving you a status date, is there
12 anything else we need to talk about this morning?
13     MS. GORMAN: Does the Court want copies of the
14 26(a)(1s)?
15     THE COURT: No. No, no, no. There is a reason why
16 we tell people not to file those things. I've got enough
17 paper.
18     So let's make it mid-August, Augie.
19     THE CLERK: August 17th at 9:30.
20     MR. NOLAND: Thank you, your Honor.
21     THE COURT: Does that date work okay?
22     MR. NOLAND: Yes, your Honor.
23     MS. GORMAN: Yes.
24     THE COURT: Okay, I will see you then.
25     MR. NOLAND: Thanks.

1        MR. GOODMAN:  Thank you.

2        MR. GARCIA:  Thank you, Judge.

3        MS. ARMOUR:  Thank you.

4   (Which were all the proceedings had in the above-entitled

5   cause on the day and date aforesaid.)

7        C E R T I F I C A T E

9     I hereby certify that the foregoing is a true and

10  correct transcript of the above-entitled matter.

13  */s/ Laura M. Brennan*                              November 2, 2017

16  Laura M. Brennan
Official Court Reporter                                        Date
Northern District of Illinois