```
             IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                 Plaintiff,     )  Docket No. 10 C 1168
                                )
         vs.                    )
                                )
CITY OF CHICAGO, et al.,        )  Chicago, Illinois
                                )  September 15, 2011
                 Defendants.    )  10:10 a.m.


                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:     LAW OFFICES OF H. CANDACE GORMAN
                         BY:  MS. H. CANDACE GORMAN
                       220 South Halsted Street
                       Suite 200
                       Chicago, Illinois  60661


                       LAW OFFICE OF MOLLY ARMOUR
                         BY:  MS. MOLLY ARMOUR
                       4050 North Lincoln Avenue
                       Chicago, Illinois  60018


For the Defendant:     DYKEMA GOSSETT PLLC
                         BY:  MR. DANIEL M. NOLAND
                       10 South Wacker Drive
                       Suite 2300
                       Chicago, Illinois  60606



           LAURA M. BRENNAN - Official Court Reporter
            219 South Dearborn Street - Room 2102
                  Chicago, Illinois  60604
                       (847) 373-5598
```

```
1        (The following proceedings were had in open court:)
2             THE CLERK:  10 C 1168, Fields v. City.
3             MS. GORMAN:  Good morning, your Honor; Candace Gorman
4    for the plaintiff.
5             MS. ARMOUR:  Molly Armour, also for the plaintiff.
6             MR. NOLAND:  Good morning, your Honor; Dan Noland for
7    the City defendants.
8             THE COURT:  So is there any objection to the
9    plaintiff's motion for a Privacy Act order?
10            MR. NOLAND:  No, your Honor.
11            The only suggestion I would make --
12            Just so there would be no confusion on production of
13   documents in the proposed order, it states the United States
14   will produce to the plaintiff certain documents, and I would
15   just suggest that to both sides.
16            THE COURT:  So here's what I would like you to do.
17   Tweak the order to add that, and send me an electronic version
18   using the directions on my web page, and I will get that
19   signed.  So the motion for a Privacy Act order is granted.
20            So on the City defendants' motion for a protective
21   order, I have the motion, I've got a response.  And is there
22   more you want to tell me about this, I guess, Mr. Noland?
23            MR. NOLAND:  Your Honor, the only thing I would reply
24   on would be the complaint register issue that could be an
25   issue that -- I don't know if your Honor has seen the briefing
```

1  on that before on other cases.  This has to do with the
2  amendment to the Illinois FOIA and its potential effect.
3  　　　　THE COURT:  So that doesn't have anything to do with
4  whether it's producible in the case.  It has to do with
5  whether there should be a protective order barring its
6  publication, if you will, in other words.
7  　　　　MR. NOLAND:  Yes.
8  　　　　THE COURT:  Okay.  So let me ask this question.  Does
9  anybody know as you stand there how many CR files there are
10 and what the nature or tenor of them is?
11 　　　　MR. NOLAND:  I have provided to the plaintiff's
12 counsel, attorney's eyes only, the agreement that the CR,
13 complaint register histories -- these go, you know, way back.
14 All these officers for the most part are retired.  And it
15 varied.  You know, there's a lot of officers.  And so my
16 recollection is some of the officers had maybe two or three on
17 there.  Other of the officers had more.
18 　　　　THE COURT:  Is it more than a dozen officers named in
19 the case?
20 　　　　MS. GORMAN:  I think it's about 14, I think.
21 　　　　THE COURT:  Yes, a little bit more.
22 　　　　So what's happened in quite a number of the cases in
23 which I had this issue is that once the stuff actually gets
24 disclosed, it turns out to be a nonissue either because --
25 well, in some cases it's been none of the stuff is relevant.

1  I mean, in other words, you may have an excessive force case
2  and somebody has a beef on, you know, not following up on, you
3  know, some sort of a call which turns out not even conceivably
4  relevant. And so the way I've resolved it in quite a number
5  of cases is I've looked at the stuff in camera, which I'm not
6  necessarily, you know, suggesting, and just said it's not
7  relevant, you don't have to produce it at all.
8        I don't know what the volume is of the stuff, you
9  know, paper wise. You probably don't even know yet yourself.
10       MR. NOLAND: I don't know. I don't even have them.
11       THE COURT: It could be a lot.
12       MR. NOLAND: I gave them the histories with the
13  thought process that we would have a meet-and-confer on which
14  ones they would like us to order and copy, and then we could
15  have our debate among counsel about that.
16       I would guess that -- this is a guess -- that there's
17  probably roughly a hundred files between all the officers.
18       THE COURT: Let's scratch the review in camera at
19  least for the moment. So I don't --
20       My first thought on this is I don't think state law
21  governs the issue. I mean, I think it's an element of what I
22  have to decide, but it's a federal case involving federal
23  claims, so I don't think state law governs the issue.
24       On the other hand, I guess one of the -- you know,
25  it's not particularly uncommon for there to be protective

1  orders that involve information that may not be protected by a
2  legal privilege but as to which somebody has some sort of
3  legitimate claim of confidentiality, and it's not at all
4  unusual, you know, to have that happen.  Frankly, half the
5  cases I have sitting in this room probably have protective
6  orders on stuff where there isn't a statute that says this is
7  protective.
8       So why do you think that you need to be able to
9  disclose the CR files to other people other than your client,
10 of course?
11      MS. GORMAN:  Well, first of all, my client is an
12 important --
13      THE COURT:  No, I understand that.
14      MS. GORMAN:  I would also like the ability to go and
15 talk with these people who have filed complaints.  And it's my
16 understanding of the way this is drafted, I wouldn't even be
17 allowed to do that.
18      THE COURT:  Yes, but you haven't even seen it yet.  I
19 mean, you don't know that you are going -- it's anything
20 you're going to need to do.
21      I guess my inclination would be to enter the order,
22 and then you will get the stuff and you will look at it, and
23 if you think, you know, having done that, that it's
24 unreasonably restrictive because you need to interview some of
25 the people and I will deal with it then.  That's what I would

1 be inclined to do.

2 So explain to me why I should restrict the material
3 that Mr. Fields gets. Is there some suggestion --

4 And I read everything you said, and, I mean, I'm
5 familiar with that case, okay. I've heard about it before,
6 and back from my past life, I am very familiar with cases in
7 which stuff that was turned over in discovery down at 26th
8 Street ended up in, you know, somebody's car and that wasn't
9 related to the case. I mean, I am very familiar with all
10 those issues.

11 But is there some reason to think that there is any
12 current involvement by Mr. Fields in any of this sort of
13 activity?

14 MR. NOLAND: I have no information with respect to
15 that, your Honor. It's simply based on past information. I
16 felt it was my responsibility to bring it to the Court's
17 attention.

18 THE COURT: Mr. Fields is here, right?
19 MS. GORMAN: Yes.
20 THE COURT: So he's hearing what I'm saying.

21 I mean, if I enter a protective order and stuff gets
22 out, very, very bad things are going to be happening to
23 people; namely, they're going to be leaving the courtroom by
24 the side door which leads to a lockup rather than the back
25 door. I really don't see any good reason at this point in

```
 1  time so far removed from the events that we're talking about
 2  to restrict the plaintiff's ability to discuss stuff with
 3  their client and to show it to them.
 4          Go ahead.
 5          MR. NOLAND:  Just so there's --
 6          From the plaintiff's response, I just want to make
 7  sure there was no misunderstanding of what we were suggesting
 8  in the order.  What we were suggesting is the plaintiff
 9  himself could see any materials with respect to the
10  investigation of the Hickman-Smith murder.
11          THE COURT:  Which is a subset, though.
12          MR. NOLAND:  That's this case.
13          THE COURT:  Yes.
14          MR. NOLAND:  And also the Vaughn-White murder, or
15  murders, that was another case with which Mr. Fields was
16  initially implicated and then no longer; and then a third
17  case, which is the Watkins case, which is the case where he
18  was convicted.  As it turns out, that is actually Dixmoor
19  City's records, not CPD records.
20          The records that I was suggesting not be provided to
21  him were these other unrelated El Rukn investigations and
22  murders, all these other cases, which I didn't see why
23  Mr. Fields himself would need to see those records.  There is
24  no information that he was specifically involved in those
25  crimes.  It was simply --
```

1  The concern was simply why provide the information
2  when I don't see any reason why he necessarily would have to
3  have them.
4  THE COURT: Let me give you the answer. It's pretty
5  simple. If the stuff wasn't relevant, you would have been in
6  here objecting to relevance and I would have been deciding
7  that it wasn't relevant or that it was relevant. You haven't
8  objected to it. That sounds like to me that you're not
9  disputing the proposition that it's relevant, and we're
10 talking about a lawyer talking to their client about relevant
11 material.
12 Do I need to explain further why they need to look at
13 it? I mean, seriously.
14 MR. NOLAND: I think that they can have that
15 discussion without providing the material.
16 THE COURT: I don't. I don't, and so that's the end
17 of it, okay. So there's not going to be any restrictions on
18 what Mr. Fields can see. He is subject to the protective
19 order, just like everybody else.
20 And as far as the rest of it is concerned, you know,
21 on the CRs and whatnot, I want to enter it the way it is now,
22 and then you can come in and ask me to modify it.
23 So here's what I'm going to need from you. What I'm
24 going to need is the tweaked order on the Privacy Act thing.
25 And then embody what I -- incorporate what I just said into a

1  revised version of the other protective order.  Get me
2  something electronically.  I will enter both of them, and we
3  will be on about it.
4          And I'm going to see you in a few weeks, right, for a
5  status?
6          MS. GORMAN:  You're going to see us next week because
7  someone else has a motion.
8          THE COURT:  Oh, that's right, yes, another motion to
9  quash a subpoena or something like that.  So I will see you
10 then.  Okay, take care.
11         MS. GORMAN:  Your Honor, could I just clarify one
12 issue?
13         THE COURT:  Yes.
14         MS. GORMAN:  Because one of the packets of documents
15 that the government -- that the City has labeled as
16 confidential was actually street files related to my client.
17 What they're saying is that --
18         THE COURT:  When you say "the government," do you
19 mean --
20         MS. GORMAN:  I mean the City.
21         THE COURT:  The City.
22         MS. GORMAN:  They marked those as confidential.  Now
23 it seems like they're saying that they're not even claiming
24 that that should have been confidential in the first place.
25         THE COURT:  Can't you talk about this yourselves

1 without me?
2     MS. GORMAN:  That's fine, your Honor.
3     THE COURT:  Thank you.  Fine.
4     MR. NOLAND:  Thank you, your Honor.
5     MS. GORMAN:  Thank you.
6
7 (Which were all the proceedings had in the above-entitled
8 cause on the day and date aforesaid.)
9
10
11     C E R T I F I C A T E
12
13 I hereby certify that the foregoing is a true and
14 correct transcript of the above-entitled matter.
15
16
17 */s/ Laura M. Brennan*    November 2, 2017
18
19 _____    _____
20 Laura M. Brennan
   Official Court Reporter    Date
   Northern District of Illinois
21
22
23
24
25