```
                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                 Plaintiff,     )   Docket No. 10 C 1168
                                )
         vs.                    )
                                )
CITY OF CHICAGO, et al.,        )   Chicago, Illinois
                                )   October 4, 2011
                 Defendants.    )   10:15 a.m.


                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:      LEONARD GOODMAN LAW OFFICE, LLC
                        BY:  MR. LEONARD C. GOODMAN
                        53 West Jackson Boulevard
                        Chicago, Illinois   60604

                        LAW OFFICE OF MOLLY ARMOUR
                        BY:  MS. MOLLY ARMOUR
                        4050 North Lincoln Avenue
                        Chicago, Illinois   60018


For the Defendant:      DYKEMA GOSSETT PLLC
                        BY:  MR. DANIEL M. NOLAND
                        10 South Wacker Drive
                        Suite 2300
                        Chicago, Illinois   60606


For Herschella Conyers: LAW OFFICES OF JEAN MACLEAN SNYDER
                        BY:  MS. JEAN MACLEAN SNYDER
                        4845 South Kenwood Avenue
                        Chicago, Illinois   60615
```

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(847) 373-5598

```
 1        (The following proceedings were had in open court:)
 2             THE CLERK:  10 C 1168, Fields v. City.
 3             MR. GOODMAN:  Good morning.
 4             THE COURT:  Good morning.
 5             MR. GOODMAN:  Leonard Goodman and Molly Armour for
 6   Nathson Fields.
 7             MS. SNYDER:  Jean Maclean Snyder on my own behalf and
 8   on behalf of Herschella Conyers, who is a wonderful lawyer but
 9   not a member of the federal trial bar.
10             THE COURT:  You don't have to be a member of the
11   trial bar to do anything other than try a case, seriously.
12             MS. SNYDER:  Okay, well.
13             MR. NOLAND:  Dan Noland for the defendants.
14             THE COURT:  Okay.  So I would really, really like to
15   deal with this today rather than setting briefing schedules
16   and whatnot.
17             So let me ask Mr. Noland just a couple of basic
18   questions.  Is there any contention that the privileges, work
19   product or attorney/client, have been waived?
20             MR. NOLAND:  I am not making that argument at this
21   time, your Honor.
22             THE COURT:  All right.
23             MR. NOLAND:  If I can just --
24             I'm not certain.  It could be down the line, perhaps
25   some --
```

1    THE COURT: If you find --
2    But, in other words, you're not saying, like, the
3 filing of a lawsuit waives it or anything that the plaintiff
4 has done in the case so far that you're aware of waives it.
5    MR. NOLAND: That's right.
6    THE COURT: Okay, fair enough.
7    In terms of the documents, I guess I got the
8 impression from what you submitted, Ms. Snyder and Ms.
9 Conyers, that at some point in time you segregated out all of
10 the privilege stuff. You didn't turn that over even to the
11 plaintiff's lawyers. You just gave them the nonprivilege
12 stuff.
13    MS. SNYDER: Correct.
14    THE COURT: So the privilege stuff has all been
15 segregated somewhere.
16    MS. SNYDER: Um, yes.
17    THE COURT: Well, you hesitated. Is it still
18 segregated?
19    MS. SNYDER: It is still segregated.
20    THE COURT: Okay. So in order for you to turn over,
21 even though you say it's duplicative, which it probably is,
22 you know, 99 or more percent, to turn over the nonprivilege
23 stuff, assuming that whatever expense you incur to turn over
24 the nonprivilege stuff got done, that wouldn't require you to
25 review anything else, I take it, would it, because you have

1  already segregated the privilege stuff.
2      MS. SNYDER: I have never turned over documents where
3  I didn't have to spend a fair amount of time organizing them,
4  and that would be the case again.
5      THE COURT: Yes, but taking you at what you just
6  said, you didn't even then turn over the documents to the
7  plaintiff's attorneys without organizing them.
8      MS. SNYDER: Correct.
9      THE COURT: So assuming you did a thorough job
10 then --
11     MS. SNYDER: I certainly did.
12     THE COURT: -- I might tell you that if you want to
13 redo it, that might be on your tab, okay.
14     So why do you need a privilege log absent some sort
15 of a contention that you haven't made yet and that I would let
16 you make later -- if you make it later, you know, in some sort
17 of a timely way that it has been waived, why do you need a
18 privilege log from nonparties unless you want to pay for it?
19     MR. NOLAND: One thing that I would be interested in
20 is any meetings with witnesses, anything that they're claiming
21 work product with meetings with witnesses. Actually Ms.
22 Snyder told me there shouldn't be too much with respect to
23 that issue.
24     The issue in this case is Brady, and I would like to
25 --

1          What I asked her for is a very general privilege log
2   with categories.  So, for instance, redwell trial notes,
3   something like that would be fine with me just so I know
4   generally what they're asserting privilege over.  And another
5   thing could be redwell research, that is fine with me as well.
6   I'm not looking for anything else.
7          THE COURT:  But the Brady claim isn't related to the
8   trial that they did; it's related to the earlier one, right,
9   or am I wrong about that?
10         MR. NOLAND:  I think it's related to the entire
11  process, both trials.
12         THE COURT:  So there's an allegation that Brady
13  material was withheld in the second trial.
14         MR. NOLAND:  I believe --
15         THE COURT:  Is there?
16         MR. GOODMAN:  Well, I suppose the answer is yes
17  because --
18         THE COURT:  In other words, the one at which --
19         He was acquitted in the second trial, right?
20         MS. SNYDER:  Correct.
21         THE COURT:  Okay.
22         MR. GOODMAN:  I don't believe there was any
23  additional discovery between the first trial and the second
24  trial.
25         So to the extent that street files --

1  THE COURT: You might want to talk to your lawyer
2  there. Your lawyer is trying to talk to you, Mr. Goodman.
3  Okay.
4  MR. GOODMAN: I mean, to the extent that street files
5  were not turned over at the first trial --
6  THE COURT: They weren't turned over in the second
7  trial either. Okay.
8  So let me go back to what you were saying,
9  Mr. Noland. You said that the allegation, or at least one of
10 the allegations, is the failure to turn over Brady material.
11 And I could answer this question if I were you, but I want you
12 to answer it.
13 What is it that you think might exist in the witness
14 interviews or whatever, in other words, the stuff as to which
15 a privilege would be claimed that would shed some light on
16 that, that you might be able to get in discovery?
17 MR. NOLAND: Witness interviews would be.
18 For instance, if they're claiming that the officers
19 withheld some type of material as far as witness interviews,
20 witnesses to the case, if the plaintiff's attorneys had that
21 material, there is no Brady claim.
22 THE COURT: And he's right about that. I mean, he's
23 pretty clearly right.
24 So Mr. Noland said a second ago that what he wants in
25 terms of a privilege log is not the sort of, you know, chapter

1  and verse privilege log that you might have to do if you were
2  actually representing the litigant in this case, but something
3  more general.
4      Can you give me a sense of the amount of work that
5  that would entail on your part?
6      MS. SNYDER:  Well, if it's a general -- if it's
7  general categories, that won't take a lot of time.  I mean, we
8  have several hundred documents --
9      THE COURT:  Well, I'm not surprised.  Right.
10     MS. SNYDER:   -- that are privileged, but if we just
11 have to say abstracts of testimony, analysis of federal
12 transcripts --
13     THE COURT:  Yes, but my guess is based on what you
14 said, Mr. Noland, it's not going to stop there because you're
15 then going to want to know, well, what about this witness and
16 what about that witness and what about this.
17     MR. NOLAND:  Well, if it's abstracts of testimony
18 from trials --
19     THE COURT:  No, I understand, but I mean --
20     MR. NOLAND:  -- that would be fine.  What I'd like to
21 --
22     THE COURT:  I'm talking about the witness interview
23 thing.  In other words, you might see something that says
24 "file of witness interviews."  It's not going to stop there.
25 You're going to want to know what witnesses.

1          MR. NOLAND:  Witness interviews, I would like the
2    witnesses and the dates and times and what a traditional
3    privilege log would look like.
4          THE COURT:  Hang on a second here.
5       (Brief interruption.)
6          THE COURT:  So why shouldn't you have to pay for
7    that, in other words, pay whatever attorney's fees it costs
8    for them to create that?
9          MR. NOLAND:  Your Honor, they were Mr. Fields'
10   counsel.
11         THE COURT:  Pro bono attorneys in a different case.
12         MR. NOLAND:  Agreed.
13         THE COURT:  Right.
14         MR. NOLAND:  I believe that with respect to similar
15   subpoenas I sent to Mr. Stainthorp or the appellate
16   defenders's office, and there was another lawyer I can't
17   recall -- oh, Mr. -- I can't remember his name -- Jack
18   Smeeton --
19         THE COURT:  Yes.
20         MR. NOLAND:  -- the plaintiff's counsel, because of
21   the aligned interest representing the same party, your Honor
22   granted the motion.  There was no requirement of fees because
23   the plaintiff's counsel took care of that.
24         THE COURT:  Did anybody ask for it?
25         MR. NOLAND:  No.

1    THE COURT: Okay.
2    MR. NOLAND: I don't --
3    THE COURT: I don't remember anybody asking for it.
4    MR. NOLAND: We're doing what we can to make it a --
5 not an undue burden on Ms. Snyder and Ms. Conyers. So I don't
6 think that under the circumstances what we're asking for now
7 is unreasonable in any way.
8    THE COURT: Well, you know, it all depends on where
9 you sit. I mean, I can sort of imagine if somebody were to
10 ask me now --
11    When did you try this case, how many years ago?
12    MS. SNYDER: 2009, and we litigated for eight years.
13    THE COURT: So you were involved in it for eight
14 years.
15    I mean, if somebody asked me to go pull a file out of
16 storage in a case that I had tried and, you know, put together
17 some sort of a log of whatever might be work product or
18 attorney/client, it would take more than a minute and a half.
19 I don't --
20    So this is the way I look at this. I don't think
21 it's appropriate to say you can't have anything because, first
22 of all, the stuff that I think that Mr. Noland is really
23 looking for is stuff that you have not turned over to the
24 plaintiff's lawyers. It's the stuff on which you're claiming
25 work product, which may or may not end up being protectable

1  work product if it's just a witness interview, okay.
2          Hang on a second.
3          (Brief interruption.)
4          THE COURT:  Sorry.  That was another pro bono lawyer
5  there.  I didn't want to make him spend any more time.
6          So that's the first thing.
7          And so I don't think it would be appropriate for me
8  to say that a claim with Brady material in it, given what Mr.
9  Goodman said a few minutes ago, that you just can't even find
10 out what the stuff is even in a general way.
11         On the other hand, I don't think that the fact that
12 somebody undertook to represent somebody in one case means
13 that they are on their own dime when they're called on to
14 cough up stuff in another case that somebody might want,
15 particularly if we're talking about material that that lawyer
16 hasn't even turned over to the plaintiff's lawyers, which they
17 say they haven't.  So what that says to me is that you're
18 going to have to pay for it.
19         So my suggestion is this:  That you go back and
20 ponder how long it's going to take you to do this.  Discuss
21 with Mr. Noland what you think the tab is going to be.  Mr.
22 Noland will figure out what he wants to do.  Then you will
23 come back in a little while and report.
24         And we have got a status set for two weeks anyway.
25 We can just continue it to that date.  Maybe you will work it

1  all out in a way that you all are comfortable with.  You can
2  work it out without my involvement.  That's fine.  You can
3  just come back and say, we have worked it out, Judge, never
4  mind.  If not, just be prepared to talk to me on the 18th of
5  October about what I should do.
6              MS. SNYDER:  Okay.
7              THE COURT:  Okay.
8              MR. NOLAND:  Your Honor, the subpoena has been
9  outstanding for a couple of months.  I would like to see the
10 nonprivileged materials.
11             THE COURT:  Yes, that's reasonable.  You have to got
12 to get the stuff that you already gave.
13             Why aren't you satisfied with them saying to these
14 guys, just give them the stuff we gave you?
15             MR. GOODMAN:  We already have.
16             THE COURT:  Well, but did you identify, this is the
17 stuff we got from Snyder and Conyers?
18             MR. GOODMAN:  I don't know.  There were two boxes
19 that we got from Ms. Snyder --
20             THE COURT:  So if they were able to say --
21             MR. GOODMAN:  -- turned over.
22             THE COURT:  If they were able to say, this is the
23 stuff we got from Snyder and Conyers, it's box A and box B or
24 it's Bates number 1 through 8 million, why wouldn't that be
25 good enough on that?

1	MR. NOLAND: If they sent me a letter confirming
2	that, that would be fine.
3	THE COURT: Okay. Why don't you try do that, if it's
4	doable. If it's not doable, come up with another mechanism
5	and we can talk about that, too. Okay, I'll see you on the
6	18th.
7	MR. NOLAND: There is a reference to police reports
8	in the motion to quash about things that are being withheld.
9	That would be something in particular I would be interested
10	in.
11	THE COURT: Police reports? Just point me where you
12	are looking at.
13	MS. SNYDER: I will say that all police reports we
14	had, each and every version, the multiple versions, were
15	obtained from the State's Attorney's office.
16	MR. NOLAND: At the top of page 6, your Honor.
17	THE COURT: Top of page 6.
18	MS. SNYDER: We have no street files.
19	THE COURT: Where are these documents right now?
20	MS. SNYDER: Some of them are in Ms. Conyers' office.
21	Some of them are in my office.
22	THE COURT: They're like in a box or in boxes or
23	files?
24	MS. SNYDER: They're in boxes and file cabinets.
25	THE COURT: So would there be some reason why I

1  shouldn't say on the nonprivilege stuff, just set them in a
2  room with them?
3              MS. SNYDER:  We can do that.
4              THE COURT:  You ought to try to find a way to do
5  that.
6              I will see you in two weeks.
7              MR. NOLAND:  Thanks, Judge.
8              MS. ARMOUR:  Thank you.
9              MR. GOODMAN:  Thank you.
10             MS. SNYDER:  Judge Kennelly, Ms. Conyers points out
11 that some of her materials may have been sent to a warehouse
12 or some other place.  So it may take a little bit of time to
13 retrieve.
14             THE COURT:  It may take a little time to get them
15 back, all right.
16             MS. SNYDER:  Thank you, your Honor.
17             MR. NOLAND:  Thank you.
18
19    (Which were all the proceedings had in the above-entitled
20 cause on the day and date aforesaid.)
21
22
23
24
25

# C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

*/s/ Laura M. Brennan*                    November 2, 2017

---

Laura M. Brennan
Official Court Reporter                     Date
Northern District of Illinois