```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


NATHSON E. FIELDS,              )
                                )
                  Plaintiff,    )   Docket No. 10 C 1168
                                )
            vs.                 )
                                )
CITY OF CHICAGO, et al.,        )   Chicago, Illinois
                                )   September 24, 2014
                  Defendants.   )   9:50 a.m.


                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:


For the Plaintiff:      LAW OFFICES OF H. CANDACE GORMAN
                          BY:  MS. H. CANDACE GORMAN
                        220 South Halsted Street
                        Suite 200
                        Chicago, Illinois  60661


For the Defendant:      DYKEMA GOSSETT PLLC
                          BY:  MR. DANIEL M. NOLAND
                               MR. PAUL A. MICHALIK
                        10 South Wacker Drive
                        Suite 2300
                        Chicago, Illinois  60606
```

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(312) 435-5785

1  (The following proceedings were had in open court:)
2  THE CLERK: Case number 10 C 1168, Fields v. City of
3  Chicago.
4  MS. GORMAN: Good morning, your Honor; Candace Gorman
5  for Mr. Fields.
6  MR. NOLAND: Good morning, your Honor; Dan Noland for
7  the defendants.
8  MR. MICHALIK: Paul Michalik for the City defendants.
9  THE COURT: Give me just a second here. Just bear
10 with me.
11  (Brief interruption.)
12  THE COURT: Okay. So the primary thing on the table
13 at this point is the plaintiff's motion for interim attorney's
14 fees. And I'm not persuaded that it should be granted at this
15 point, and here are the reasons why.
16  So, first of all, it is true, as far as it goes, that
17 once there is a judgment in favor of the plaintiff that a fee
18 award can be entered. But the case is still pending in front
19 of me, and there are motions, posttrial motions, on both sides
20 that I do not have responses to yet. They're not due, I
21 think, for another probably week or so. And looking at the
22 motions, which I've done on both of them, they are both
23 straight-faced motions. They're not -- neither one of them is
24 the kind -- well, there's actually two on the plaintiff's side
25 and one on the defense side. So none of them are the kind of

1 motion where I would look at it and I would say, there is just
2 no way that is going to be granted.  And it's conceivable that
3 I will think something different when I get responses to
4 those.  But as I sit here right now, to borrow the language
5 of, I believe it was Judge Posner, in one of the cases that is
6 cited, "the judgment is defeasible."  I think that was the
7 language he used in the case that was cited.

8 You know, the cases in which interim fees were
9 awarded, I don't see any of them as being like this one.  The
10 most recent Seventh Circuit case that is cited is the -- I
11 don't know how you pronounce this -- Dupuy, D-u-p-u-y, v.
12 Samuels.  But that is basically a situation where the district
13 judge had granted a preliminary injunction and had made all
14 sorts of findings, and that was essentially -- what the Court
15 of Appeals essentially concluded is that the judge said what
16 they were going to say about that.  It amounted to the last
17 word on the topic.

18 We don't have that in this case.  If I end up
19 granting the defendant's motion, the judgment goes away.  And
20 I'm not honestly even sure what happens at this point if I
21 grant the plaintiff's motion because there are different
22 aspects of it.  There are some parts of it that would revive
23 claims that the plaintiff lost on, but part of it essentially
24 attacks the judgment that was entered saying that, given the
25 finding of liability, the damages amount is inadequate.

1  And so if I were to grant that --

2  And it's not an off-the-wall crazy motion. If I were
3  to grant that, as I sit here right now, I'm not quite sure
4  what would happen. I don't know whether it's the type of
5  situation where I would just say, okay, the liability finding
6  stands and we have a new trial on damages or whether it would
7  be something different from that because, you know, honestly,
8  in some ways, this is a case in which the liability part and
9  damages part are very, arguably at least, very much
10 intertwined.

11  So I'm looking at a situation where, as I see it,
12 there is a possibility that if I grant either side's motion,
13 posttrial motion, that the judgment for all practical purposes
14 could go away, and I not persuaded otherwise at this point.
15 So the motion isn't one that I think can appropriately be
16 granted.

17  I'm not going to terminate the motion because that
18 could change, you know, once I start getting responses to
19 these things, but for now it's denied. So the order is simply
20 going to say that the motion for interim attorney's fees is
21 denied without prejudice. I guess that will be the shorthand
22 that will cover what I just said.

23  MS. GORMAN: Thank you, your Honor.

24  THE COURT: So the other thing that is on the
25 table --

1   And when are the responses due on the posttrial
2   motions, like within a week or so, right?
3   MS. GORMAN:  Yes.
4   MR. MICHALIK:  A week from Friday.
5   THE COURT:  Yes, a week from Friday.  That's what I
6   thought, early October.
7   The other thing that is on the table is the second
8   posttrial motion that Ms. Gorman filed, and that's the one on
9   which there is a -- she had asked for discovery.  I had asked
10  Ms. Gorman to put that in writing.  She did that a couple of
11  weeks ago, and I said this was something we would talk about
12  today.
13  So, talk.
14  MR. NOLAND:  Judge, we don't think they have met any
15  more close to the burden of getting posttrial discovery.  It's
16  exceptional circumstances to do that.  They would have to have
17  a prima facie showing that there would be a success on the
18  merits of the post -- of that newly discovered evidence when
19  they don't even have any newly discovered evidence that they
20  have advanced.  They have not explained whether or not there
21  is any false testimony.  They have not tied anything together.
22  They have not submitted any evidence.  Much of it is --
23  Due diligence certainly wasn't used.  For instance,
24  on the issue of the applicable special order, evidence came
25  out at the first trial with respect to that issue and with

1 respect to the applicability of 86-3, or Chapter 18. And the
2 plaintiff's counsel chose not to follow up on it at the second
3 trial knowing -- having that information. So that certainly
4 was -- due diligence wouldn't be applicable there.
5 　　　　THE COURT: I will tell you that what you just said
6 was at least a question I had in my mind about that.
7 　　　　Let me segue over to the other part of it. And I
8 acknowledge what you said before, and I think I made the
9 comment at the time that the case was up in court previously
10 on the issue relating to Mr. Hawkins. I think -- I don't
11 remember whether I came right out and asked Ms. Gorman, what
12 is your information. And my recollection of it was that --
13 　　　　And I may botch this, but my recollection of it, as I
14 sit here today, is that Ms. Gorman said she wasn't really
15 prepared to put that in the public record, might be willing to
16 submit it to me ex parte, in camera. I kind of probably said
17 something like, I'm not really sure I can do that, and that's
18 where I kind of left it.
19 　　　　And so I gather that when you say there is no
20 evidence that has been submitted, that's part of what you're
21 talking about.
22 　　　　MR. NOLAND: That's part of what -- that colloquy is
23 part of what I'm talking about.
24 　　　　THE COURT: Yes. So what about that? I mean, I will
25 just tell you, you know, if a witness testified -- and I have

1 not gone back to confirm this in the testimony. Let's just
2 say hypothetically that Mr. Hawkins testified, I have to do
3 another 20 years in prison, and then he gets out a month
4 later. I mean, that would be a legitimate posttrial issue. I
5 don't really have anything right now other than basically your
6 say-so. And you're not a witness, and you're not evidence.
7 And so before --
8 And, you know, the issue of discovery on that, as I
9 thought about it, it's not going to be a simple and
10 uncomplicated thing. My memory of Mr. Hawkins is that they
11 wouldn't even disclose what prison he was in because he's in
12 witness security. And so presumably if he has been let out,
13 it's not going to be an easy thing to find out. It could well
14 be impossible to find out where the man is. And so before --
15 And it's not going to -- probably not even going to
16 involve any party to this case. I mean, if I was trying to
17 get discovery about that, I wouldn't ask these people. I
18 would ask somebody in this building probably, and they're
19 going to, in all likelihood, resist it.
20 And so before I, you know, sort of start opening cans
21 of worms sitting all around the room, which I'm prepared to do
22 if there's a basis for it, I want to know that there's a basis
23 for it. And so I guess my inclination on this is that you
24 have got to show me something here.
25 MS. GORMAN: Okay. What would you like me to show?

1  THE COURT: Well, when I say you have got to show me
2 something, I don't think you can show it just to me. I
3 think -- you know, it's an adversary system, after all. You
4 know, you're asking to undo, at least in part, the result of a
5 trial that other people were involved in that are standing to
6 your left and their clients. And, you know, it's really -- I
7 mean, I can't rule out that there might be authority somewhere
8 that says, well, there are certain unusual circumstances where
9 a lawyer can submit something to a judge ex parte in this kind
10 of situation, but you would have to find that for me.
11  MS. GORMAN: Your Honor, I'm prepared to tell the
12 Court and counsel, I was reluctant to put this person in the
13 middle. It was Mr. Hawkins' brother.
14  THE COURT: Okay.
15  MS. GORMAN: Mr. Hawkins' brother said that his
16 brother, Earl Hawkins, was released.
17  THE COURT: Okay.
18  MS. GORMAN: And so that's my information.
19  THE COURT: What is Mr. Hawkins' brother's name?
20  MS. GORMAN: Roosevelt.
21  THE COURT: Also Hawkins?
22  MS. GORMAN: Correct.
23  THE COURT: Is that information directly from the
24 gentleman to you or is it --
25  MS. GORMAN: To my client.

1 THE COURT: To your client.

2 MS. GORMAN: Right.

3 And so I tried to do some searching on my own. I've
4 talked to a couple other people who knew Hawkins. Everybody
5 that I talked to said they had heard he was out, but no one
6 had seen him.

7 THE COURT: Well, if he's in a witness security
8 program, it wouldn't be surprising, even if he was out, that
9 no one had seen him because you wouldn't expect him to go back
10 into the community where he had come from before.

11 Okay, then. So now that you have heard that, what
12 would you like to tell me?

13 MR. NOLAND: Well, if the plaintiff intends to move
14 forward on this issue, I think that they would need to set
15 forth what, if any, testimony -- or I guess what the facts are
16 of what they have of what, if any, testimony was inaccurate at
17 the trial, or false, and what's the use of --

18 THE COURT: Well, let's just talk about real life
19 here, not hypotheticals, okay.

20 So let's just say -- and I don't remember what
21 exactly Mr. Hawkins testified. It has been represented to me
22 that he said he had 28 years to do, okay. Is that wrong? I
23 mean, I'm sure somebody asked him either in a deposition or in
24 a trial.

25 MS. GORMAN: In deposition and at trial, he testified

1    that -- I think it was 2028 is when he, but that's my --
2         MR. NOLAND:  The testimony on this with respect to
3    Hawkins is at page 2,679 of the transcript --
4         THE COURT:  Okay.
5         MR. NOLAND:  -- or thereabouts.  It might be in other
6    pages as well.
7         THE COURT:  Yes.  It says what?
8         MR. NOLAND:  It goes on.
9         THE COURT:  I can look at it.
10        MR. NOLAND:  Yes.  And I don't know if this is every
11   single part about it.
12        THE COURT:  Okay, fair enough.
13   (Brief interruption.)
14        MS. GORMAN:  I show the transcript page is 3,072.  I
15   think that was the argument to the jury that he was going to
16   be in until 2028.
17        THE COURT:  Just walk around.
18   (Brief interruption.)
19        THE COURT:  2026.  He says, "I'm going to be in jail
20   until 2026," on page 2,679.  So that's 14 or 12 -- 12 years, I
21   guess.  He originally says 2028, and then he says, "no, I
22   thought my paper said I'm in jail until 2026."
23        Well, okay.  So now I'm talking about something real.
24   So I'm just going to tell you -- and I'm not 100 percent
25   intimately familiar with the law on, you know, false testimony

1  by a nonparty witness in a civil case, but it's --
2         There is at least some authority for the proposition
3  that it can be, in appropriate circumstances, a basis for a
4  new trial.  I think I know that much.  And given --
5         I mean, in terms of the way the case was litigated,
6  given the centrality, I think, of Mr. Hawkins' testimony to
7  the contention that Mr. Fields actually had committed the
8  murders, his testimony is important.  And if the man says on
9  the witness stand, I'm going to be in prison until 2026, and
10 six months later he turns up on the street, that doesn't
11 happen because somebody accidentally left the door open.  It
12 happens for a reason.  And presumably it happens because
13 somebody made a decision that his sentence should be reduced.
14        Now, I don't know how that actually happens.  I don't
15 remember whether he was serving a state sentence or a federal
16 sentence or a combination of the two.
17        MS. GORMAN:  It was just federal.
18        THE COURT:  Yes, so presumably people don't get out
19 of prison unless they're let out, unless somebody goes back to
20 court and says, "Judge, now, reduce his sentence to time
21 served," and there might be a record of that.  I don't know
22 how that works in a case involving somebody who is in this
23 kind of a status of confidential security status.
24        But, I mean, if it turns out that that's what
25 happens, I'm just going to tell you, I am going to get to the

1 bottom of it because it is a -- it may end up -- I may end up
2 concluding at the end of the day that if that state of affairs
3 is the case, that it doesn't have any effect on the trial, but
4 I'm not going to do determine that in a vacuum. I mean,
5 particularly -- well, I'm not even going to go there. I'm
6 just giving you the bottom line on it.
7     So here is what I think needs to happen. I think you
8 need -- you're going to need to supplement this motion to give
9 me, you know, the further information that you have provided.
10 And just to be blunt, it's going to need to be in the form of
11 an affidavit, and it's probably not your affidavit, okay. It
12 could be your client's affidavit.
13     MS. GORMAN: I understand.
14     THE COURT: I'm not necessarily saying you have to go
15 to Roosevelt Hawkins although I think you should assume that
16 somebody is going to go talk to Roosevelt Hawkins, or whoever
17 you want to submit it from. I don't know if there is similar
18 information. You said some things in here about Mr. Keys, I
19 think, if I'm recalling correctly.
20     MS. GORMAN: No, it was Mr. --
21     THE COURT: Clay. Clay, Clay, Clay, yes.
22     MS. GORMAN: And that one, you know, as I told the
23 Court last time, I don't have --
24     THE COURT: Okay, you don't have the same kind of
25 information. Well, if you do, then you would need to give

1  that to me.
2          Then I'm going to give the defendant a chance to
3  address it before I decide whether -- and this may be
4  incorporated.  I don't know if this is part of what you're
5  responding to next week or not.
6          MR. MICHALIK:  I think they are.
7          THE COURT:  So just respond to what you have got
8  right now, and then if you need to supplement it later, you
9  will supplement it later, and then we'll kind of figure out
10 where to go from there.
11         So how soon do you think you can get me something, on
12 the plaintiff's side?
13         MS. GORMAN:  Your Honor, if I could have until --
14         THE COURT:  Just tell me.  I don't care.
15         MS. GORMAN:  I'm just looking at my calendar.  If I
16 could have until the 8th of October?
17         THE COURT:  Sure, that's fine.
18         So the plaintiff has until the 8th of October to
19 supplement -- it's the --
20         Pam, I will tell you which document number it is.
21 It's the later filed one.  I know it's here somewhere.  Yes,
22 it's docket number 746.
23         And then the defendant has until, let's just say, a
24 week after that, which would be the 15th of October, to file a
25 supplement to your response to the motion.  And it's going to

1 come in piecemeal, but it just makes sense to do it that way.
2 　　　　And then I want you to come back a week after that,
3 so let's say then the 22nd for a status, the 22nd of October,
4 if that date is okay.
5 　　　　Is that date okay?
6 　　　　MS. GORMAN:  That's fine.
7 　　　　THE COURT:  All right.
8 　　　　MS. GORMAN:  Your Honor, on the Monell issue?
9 　　　　THE COURT:  Yes.  So I think you have now gotten a
10 preview of part of what Mr. Noland's response is going to be
11 on that:  No due diligence.  And so you will address that when
12 you address it.
13 　　　　MS. GORMAN:  Okay.
14 　　　　THE COURT:  Not today, though.
15 　　　　MS. GORMAN:  So they're supplementing -- or they're
16 filing a response.
17 　　　　THE COURT:  I mean, that is going to be part your
18 response to all this stuff.
19 　　　　MR. MICHALIK:  It is, your Honor.  That was one of
20 the arguments that was raised earlier in the motion.
21 　　　　THE COURT:  Yes, understood.  And you may have other
22 arguments, too, but that is going to be one of them, and so
23 you will see that, and then you will reply to it.
24 　　　　Okay.  Anything else for today?
25 　　　　All right, take care.  Thanks.

      MR. NOLAND:  Thanks, Judge.

      MS. GORMAN:  Thank you.

      MR. MICHALIK:  Thank you.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

                   C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

*/s/ Laura M. Brennan*                        April 12, 2018

_____       _____

Laura M. Brennan
Official Court Reporter                      Date
Northern District of Illinois